# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC,<br><br>      Plaintiffs,<br><br>      v.<br><br>HyperBranch Medical Technology, Inc.,<br><br>      Defendant. | Civil Action No.  15-819-LPS-CJB<br><br>**REDACTED - PUBLIC VERSION** |

## PLAINTIFFS' RESPONSIVE LETTER BRIEF
## TO HONORABLE CHRISTOPHER J. BURKE REGARDING DISCOVERY ISSUES

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

Jason S. Shull
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
James L. Higgins (#5021) [jhiggins@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC*

February 5, 2016
Redacted Version:   February 12, 2016

01:18245318.1

CONTAINS HIGHLY CONFIDENTIAL INFORMATION – OUTSIDE COUNSEL EYES ONLY

Dear Judge Burke:

Plaintiffs respectfully oppose HyperBranch's application for relief concerning three discovery issues (Mr. Grimm's opening letter brief, D.I. 77) as follows:

**Discovery Issue #1 – Defendant's Improper Attempt to Shift its Discovery Costs.**

The essence of this discovery dispute is that HyperBranch is improperly attempting to shift onto the plaintiffs the burden, cost and expense of obtaining documents from third-party Medtronic, Inc.

Plaintiff Confluent Surgical, Inc. is an exclusive licensee of the patents in suit. Using this patented technology, Confluent developed the DuralSeal® product line of surgical sealants. Dr. Steven Bennett, a named inventor of one of the patents in suit, was an employee of Confluent from 2000 until 2006, when Confluent was sold to Covidien LP. In 2006, Dr. Bennett and other Confluent employees became employees of Covidien. Although it remained a legal entity, Confluent for practical purposes ceased to exist as an actual operating company after the sale. **Bennett Dep. (Ex. 1) at 102:21 – 105:2.** On January 15, 2014, pursuant to a Stock Purchase Agreement (Ex. F to D.I 77), an Agreement and Bill of Sale **(Ex. 2)** and a Transition Services Agreement **(Ex. 3),** plaintiff Integra Life Sciences Corporation acquired ownership of Confluent's stock and certain assets and documentation related to the DuraSeal® product line from Covidien.[1] Although Covidien acquired all of Confluent's assets, employees, and facilities in 2006, when Covidien sold Confluent to Integra in 2014, only some of the assets and documentation were transferred to Integra. Other assets and documentation remained with Covidien. **Bennett Dep. at 109:21 – 111:19.** Dr. Bennett, who had remained a Covidien employee from 2006 until 2014, became an employee of Integra in 2014. Dr. Bennett is the only person associated with the Integra and Confluent plaintiffs that was ever an employee of Confluent. Sometime after Integra's acquisition of Confluent's stock and the DuraSeal® product line, Covidien was acquired by Medtronic, Inc. HyperBranch served a subpoena on Medtronic with virtually the same document requests as those served on the Plaintiffs. **Medtronic Subpoena (Ex. 4).** As shown by the email correspondence between HyperBranch's counsel and Medtronic's counsel (Ex. A to D.I. 77), Medtronic has already produced documents responsive to HyperBranch's subpoena that Medtronic located after a reasonable search. HyperBranch, however, has requested that Medtronic perform a far more exhaustive search for additional documents. Medtronic's counsel has indicated it will perform the additional search, provided HyperBranch agrees to pay for the cost of further production of documents, which HyperBranch refuses to do. *Id.* HyperBranch now seeks to improperly shift the burden, cost and expense of obtaining its further third-party document production onto the plaintiffs.

---

[1] The Transition Services Agreement (Ex. 2) set time lime limits after closing during which Covidien was required to assist Integra by providing documents and other services. **Tan Dep. (Ex. 5) at 170:1-7; 172:4-12)**.

CONTAINS HIGHLY CONFIDENTIAL INFORMATION – OUTSIDE COUNSEL EYES ONLY

It is clear HyperBranch has already been accorded access to documents physically maintained by third-party Medtronic/Covidien via a Rule 45 subpoena. *See* Exs. A, B, C and D to D.I. 77. Third-party Medtronic objected to the overly broad scope of requested documents, yet still produced documents in a reasonable and good faith effort to comply with the subpoena. Further, Medtronic also indicated its willingness to search for additional responsive non-privileged documents (and if found, then produce such documents, provided HyperBranch pays for the cost of the search and production. *See* Ex. A to D.I. 77. Faced with having to pay the costs of its overbroad discovery requests, HyperBranch is now trying to improperly shift those costs to Plaintiffs simply because Plaintiffs may also have access to the same documents.[2]

The purpose of party discovery is to enable a party to discover and inspect material information which by reason of an opponent's control they would not otherwise have access to or be unavailable for judicial scrutiny. *S.E.C. v. Samuel H. Sloan & Co.*, 369 F.Supp. 994, 995-996 (S.D.N.Y. 1973). Notwithstanding whether documents are in a party's possession, custody or control, numerous courts limit a party's obligation to produce documents that are equally accessible to the requesting party. *See e.g.*, *Valenzuela v. Smith*, 2006 WL 403842 at *2 (E.D. Cal. Feb. 16, 2006) ("Defendants ... will not be compelled to produce documents that are equally available to plaintiff."); *Baum v. Village of Chittenango*, 218 F.R.D. 36, 40–41 (N.D.N.Y.2003) ("[C]ompelling discovery from another is unnecessary when the documents sought are equally accessible to all."); *Bleecker v. Standard Fire Ins. Co.*, 130 F.Supp.2d 726, 738 (E.D.N.C.2000) ("Discovery is not required when documents are in the possession of or are readily obtainable by the party seeking a motion to compel."); S.E.C. v. *Samuel H. Sloan & Co.*, 369 F.Supp. 994, 995–96 (S.D.N.Y.1973) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties."); *Blair v. Travelers Ins. Co.*, 9 F.R.D. 99, 99 (W.D.Mo.1949) (motion for production denied where "[n]early all the documents sought can be obtained by the plaintiff as easily as they can be obtained by the defendant"). Courts have also found that limiting production required from a party is proper even when the only access the requesting party has is via a Rule 45 subpoena to a third party. *See*, e.g., *S.E.C. v. Samuel H. Sloan & Co.*, 369 F.Supp.2d at 995; *S.E.C. v. Strauss*, 2009 WL 3459204, *11-12 (S.D.N.Y. 2009) ("the need for a subpoena does not diminish [HyperBranch's] obligation to obtain the materials on [its] own.") As in *S.E.C. v. Strauss*, the only thing preventing HyperBranch's access to the requested documents is HyperBranch's refusal to pay for its own discovery.

HyperBranch has access to every non-objectionable, non-privileged, relevant document from the 2006-2014 period that it has requested via Plaintiffs' production to date or via HyperBranch's third-party subpoena to Medtronic. Although it appears unnecessary, Plaintiffs are willing to write a letter to Medtronic stating that HyperBranch should be permitted access to these documents in Medtronic's possession pursuant to Section 5.10 of the Stock Purchase Agreement. The only thing precluding HyperBranch's access to the documents is

---

[2]   Plaintiffs have already produced more than **650,000 pages of documents** responsive to HyperBranch's overly broad document requests at a cost to Plaintiffs of **$ 199,741.**

CONTAINS HIGHLY CONFIDENTIAL INFORMATION – OUTSIDE COUNSEL EYES ONLY

HyperBranch's refusal to pay for its own discovery. As such, HyperBranch's motion to compel should be denied.

**Discovery Issue #2 – Plaintiffs Presented Knowledgeable and Prepared 30(B)(6) Witnesses.**

HyperBranch asserts that Confluent's Rule 30(b)(6) designee was inadequately prepared to provide testimony on behalf of Confluent with respect to the 2006-2014 timeframe. During that timeframe, Confluent did not exist as an actual operating company. It had no employees, no building, and no assets (other than rights in intellectual property). **Bennett Dep. (Ex. 1) at 102:21 – 105:2.** All activities related to Confluent's former business were taken over and conducted by Covidien from 2006-2014. Notwithstanding this fact, HyperBranch in its letter briefing and during the 30(b)(6) deposition of Confluent and the Integra plaintiffs makes the improper assumption that information or documents known or maintained by third party Covidien during the 2006-2014 timeframe are *de facto* equally known or maintained by Confluent. HyperBranch does this to further its own litigation agenda, not only in an attempt to attribute knowledge and information from a third party to the current plaintiffs but also to try to have Plaintiffs pay for Defendant's discovery from a third party as discussed *supra*. In its opening letter brief, HyperBranch compares the Tan 30(b)(6) testimony to Ex. D to D.I. 77. Ex. D is a chain of emails between *Covidien* employees not *Confluent* employees. Similarly Ex. B and Ex. C to D.I. 77 are also Covidien documents, not Confluent documents. It is not reasonable to expect that a Confluent Rule 30(b)(6) designee should be able to testify regarding matters known to third party Covidien. If HyperBranch wants to know what Covidien was aware of during the 2006-2014 timeframe, then HyperBranch should depose Covidien/Medtronic.

Ms. Tan was prepared for and was deposed as the 30(b)(6) designee on a number of topics for the Integra and Confluent plaintiffs, including topics 2-6. Confluent has had no employees since 2006 and currently has no employees. The only current employee of any of the Integra plaintiffs that had been an employee of Confluent and would have first-hand knowledge as to the activities of Confluent is Dr. Steven Bennett. In preparation for her deposition, Ms. Tan talked with Mr. Bennett regarding his knowledge of Confluent and also reviewed Confluent documents. **Tan Dep. (Ex. 5) at 36:1-8**. By speaking to the only person employed by any of the Integra plaintiffs who was an employee of Confluent (and the only Integra employee able to provide any first-hand knowledge of Confluent documents that Ms. Tan reviewed prior to her deposition), Ms Tan was as prepared as any current employee of the Integra entities could be regarding knowledge of Confluent with respect to topics 2-6.[3]

---

[3] Ms. Tan also testified as to information conveyed to her in the past by third parties (Mr. Ferguson, IP Counsel for Covidien) regarding knowledge with respect to its intellectual property portfolio and certain more relevant patents contained in that portfolio. (**Tan Dep. (Ex. 5) at 38:8-19; 40:13-41:5**)

CONTAINS HIGHLY CONFIDENTIAL INFORMATION – OUTSIDE COUNSEL EYES ONLY

**Discovery Issue #3 – Defendant Lacks a Good Faith Basis to Allege that Plaintiffs' Response to Interrogatory No. 8 is Inadequate.**

Notwithstanding Plaintiffs' numerous objections to Defendant's Interrogatory No. 8, Plaintiffs nonetheless responded fully to each of the multiple questions contained within that interrogatory with respect to the claims at issue in the preliminary injunction phase, including Claim 6 of the '3,705 Patent. *See* Ex. J to D.I. 77, p. 6 ( "…U.S. Patent No. 8,003,705 – at least as early as November 9, 2001… Plaintiffs further respond that they have produced non-privileged documents pursuant to Federal Rules of Civil Procedure 33(d) from which HyperBranch may derive or ascertain information responsive to this interrogatory, namely the patents-in-suit, the patents and applications from which the patents-in-suit claim priority, and prosecution histories of these patents and patent applications.").

There is nothing adverse between Plaintiff's supplemental response to Interrogatory No. 8 and Mr. Bennett's testimony regarding his inventive contribution to claim 6 of the '3,705 Patent. Particularly, whether someone is an **inventor** depends on the **claims**. Whereas, **priority** depends on what is disclosed in the **specification**. Therefore, one can properly be an inventor of one patent in a patent family and not an inventor on another patent family member, even though all of the patent family can properly claim the same priority date. Thus, it is proper that if Mr. Bennett's contributions were not actually claimed in the '034 Patent filed on November 9, 2001, he would not be identified as an inventor of the '034 patent, even though Mr. Bennett's contributions were described in the '034 specification. When Mr. Bennett's contributions were included in a claim (*e.g.*, in the '3,705 Patent, including claim 6), that claim is entitled to priority back to at least the November 9, 2001 filing date of the '034 Patent to which the '3,705 Patent properly claims priority.

Mr. Bennett's deposition testimony does not contradict a conception date of at least as early as November 9, 2001 for claim 6 of the '3,705 patent. At his deposition, Mr. Bennett was questioned about a December 13, 2000 Experimental Report Ex. 58 that he had authored (**Ex. 6**), and a December 21, 2000 Experimental Report Ex. 57 that he had authored (**Ex. 7**). Mr. Bennett testified that he "contributed to the conception of the invention embodied in Claim 6 of the '3705 Patent" and that "the patent is a combination of these two reports." **Bennett Dep. (Ex. 1) 147:1 – 148:18.** These two Experimental Reports, each dated prior to November 9, 2001 (the filing date of the application that issued as the '034 Patent and the date to which priority for Claim 6 of the '3,705 is claimed) corroborate Mr. Bennett's testimony and support plaintiffs' interrogatory response that conception was at least as early as November 9, 2001. Mr. Bennett's testimony clearly does not support a conception date of May 29, 2008, as HyperBranch argues. As such, HyperBranch has no basis to allege that the Interrogatory response was inadequate and the Court should deny HyperBranch's request to essentially dictate facts contrary to the evidence.

Respectfully submitted,

*/s/ Karen L. Pascale*

Karen L. Pascale (No. 2903)

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on February 12, 2016, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF (which will send notification that such filing is available for viewing and downloading to all registered counsel), and in addition caused true and correct copies of the foregoing document to be served upon the following counsel of record by e-mail:

*For Defendant HyperBranch Medical Technology, Inc.:*

| | |
|---|---|
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

COOLEY LLP                         zHyperBranchIntegra@cooley.com

Jonathan Graves
Kevin Lake
Stephen C. Crenshaw
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656

Adam Pivovar
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004

*/s/ Karen L. Pascale*
Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
*Attorneys for Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical Inc., and Incept LLC*

01:17776460.1