IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., ) <br> INTEGRA LIFESCIENCES SALES LLC, ) <br> CONFLUENT SURGICAL, INC., and ) <br> INCEPT LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HYPERBRANCH MEDICAL ) <br> TECHNOLOGY, INC., ) <br> ) <br> Defendant. ) | C.A. No. 15-819 (LPS) (CJB) <br><br> **REDACTED VERSION** |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM
<u>THOMAS C. GRIMM REGARDING DISCOVERY ISSUES</u>**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP <br> Thomas C. Grimm (#1098) <br> Jeremy A. Tigan (#5239) <br> 1201 N. Market Street <br> P.O. Box 1347 |
| OF COUNSEL: <br> Jonathan Graves <br> Kevin Lake <br> COOLEY LLP <br> One Freedom Square <br> Reston Town Center <br> 11951 Freedom Drive <br> Restin, VA 20190 <br> (703) 456-8000 <br><br> Adam Pivovar <br> COOLEY LLP <br> 1299 Pennsylvania Avenue, NW <br> Suite 700 <br> Washington, DC 20004 <br> (202) 842-7889 | Wilmington, DE 19899-1347 <br> (302) 658-9200 <br> tgrimm@mnat.com <br> jtigan@mnat.com <br> *Attorneys for Hyperbranch* <br> *Medical Technology, Inc.* |

**Confidential Version Filed: February 3, 2016
Public Version Filed: April 4, 2016**

Dear Judge Burke:

HyperBranch respectfully requests that the Court grant the requested relief concerning the following three discovery issues. Lead counsel and Delaware counsel for HyperBranch and Plaintiffs held a meet-and-confer on February 1, 2016 in an effort to resolve these disputes but were unsuccessful in doing so.

HyperBranch requests an order compelling Plaintiffs to (i) obtain documents within their control concerning Plaintiff Confluent's activities and knowledge of HyperBranch and the Accused Products from the 2006–2014 timeframe; (ii) provide a Rule 30(b)(6) witness who is appropriately knowledgeable about Confluent's early awareness of HyperBranch and the Accused Products, and (iii) provide a complete and accurate response to HyperBranch's contention interrogatory regarding Plaintiffs' claimed invention dates.

### Discovery Issue #1: *Plaintiffs' failure to obtain and produce documents in their control from Covidien/Medtronic related to Plaintiff Confluent from 2006-2014*

A critical (if not dispositive) issue in the present preliminary injunction dispute is whether Plaintiffs will suffer irreparable harm. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F. 3d 1343, 1350 (Fed. Cir. 2001) ("Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm."). Undue delay in filing suit, even on the order of months, has been found to negate an assertion of irreparable harm. *See, e.g., High Tech Med. Instr., Inc. v. New Image Indus., Inc.*, 49 F. 3d 1551, 1557–58 (Fed. Cir. 1995) (reversing grant of a preliminary injunction based in part on plaintiff's 17-month delay in seeking relief).

From 2006–2014, Plaintiff Confluent was owned and operated by Covidien (which later was acquired by Medtronic). In early 2014, Covidien sold Confluent to Integra. Recognizing *the possibility* that highly relevant information regarding the material 2006-2014 timeframe may still be in the possession of Medtronic/Covidien, HyperBranch served a subpoena on Medtronic/Covidien. Thereafter, HyperBranch asked Plaintiffs to confirm whether they had a right to obtain documents from Medtronic/Covidien related to the Confluent business from the 2006–2014 timeframe. Plaintiffs' counsel represented that Plaintiffs had no right to obtain any documents from Medtronic/Covidien under the acquisition agreement, and that any such right had lapsed shortly after the acquisition. HyperBranch had no way to confirm the veracity of that representation because at that time Plaintiffs had yet to produce a copy of the acquisition agreement. HyperBranch therefore continued to pursue the Confluent-related documents from the 2006–2014 timeframe directly from Medtronic/Covidien pursuant to the subpoena.

After Medtronic/Covidien made a small, partial production of documents in response to the subpoena, it became clear that there remained a substantial amount of Confluent-related information at Covidien/Medtronic relevant to the issues in this case from the 2006–2014 timeframe. Medtronic's counsel has confirmed that there remains additional Confluent-related information at Covidien/Medtronic that was not included within the initial production. (Ex. A at 1.)

The truncated production from Medtronic/Covidien leaves no doubt that Covidien employees acting on behalf of Confluent were actively engaged in investigations of HyperBranch and the Accused Products going back to at least 2009. (*See, e.g.*, Ex. B (December 9, 2009 email: "Did you receive the NuSeal samples from Tulin yet"); Ex. C (laboratory notebook re "Gel Performance testing of NuSeal"); Ex. D.) Neither Confluent nor any of the other plaintiffs produced these damaging documents to HyperBranch. Moreover, Medtronic/Covidien, which has manufactured the Confluent dural sealant products for Integra since Integra's acquisition of Confluent, designated these documents as Highly Confidential and refused HyperBranch's request for permission to use them during the depositions of Plaintiffs' fact witnesses. Thus, HyperBranch has been deprived of the opportunity to ask Confluent's 30(b)(6) witnesses about the contents of highly relevant Confluent documents.

Plaintiffs' assertion that they have no ability to obtain documents from Medtronic/Covidien for purposes of this litigation does not appear to have been made in good faith. (*See* Ex. E at 162:2–20.) There is no reasonable dispute that Plaintiffs have control over Confluent-related documents that remain at Covidien/Medtronic. Control over the documents is confirmed by a cursory review of the recently produced Stock Purchase Agreement ("SPA") governing Integra's acquisition of the Confluent "Business" from Covidien. Section 5.10 of the Stock Purchase Agreement states the following:



Ex. F at 37. Indeed, counsel for Medtronic/Covidien has agreed that Plaintiffs have the contractual right to obtain documents from Medtronic pursuant to section 5.10. (*See* Ex. A at 1 ("Regarding your question on Section 5.10 of the Stock Purchase Agreement, Medtronic reads that agreement as permitting Integra to request from Covidien access to pre-divestiture documents it believes are necessary to prepare or defend itself in its suit with HyperBranch.").) Furthermore, Plaintiffs have already retrieved documents from Medtronic/Covidien outside of this litigation. For instance, deposition testimony from Plaintiffs' 30(b)(6) witness confirmed that documents related to the Confluent business have been retrieved from Medtronic/Covidien in the past year. (Ex. G at 106:10–17 ("Q: Do you know if Integra has a right to get documents or these reports that you mentioned that remain at Covidien from Covidien? A: They do. And I have some of them. Q: How did you get them? A: I physically went there and got them. Q: When? A: Last year.").) Additional evidence of Plaintiffs' right to obtain documents from Medtronic/Covidien is the fact that they have recently requested lab notebooks from Medtronic/Covidien. (Ex. H at 1 ("Pursuant to Section 5.10 of the October 25, 2013 Stock Purchase Agreement, Integra has requested that Covidien provide Integra access to any laboratory notebooks identified in Exhibit 63 to Mr. Bennett's deposition that Covidien still has in its possession.").)

The case law firmly establishes that a party with a contractual right to obtain documents from another has "control" over those documents for purposes of the Fed. R. Civ. P. 34(a). *See Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 442 (D.N.J.1991). There is control if a "party has the legal right or ability to obtain the documents from another source upon demand." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004)." "[A] litigating party has control of documents if a contractual obligation requires a non-party to provide requested documents to the litigating party upon demand." *Haskins v. First Am. Title Ins. Co.*, No. CIV. 10-5044 RMB/JS, 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012) (citing *Mercy Catholic*, 380 F.3d at 160-161).

It is readily apparent that Plaintiffs have made no attempt to obtain from their manufacturing partner Medtronic/Covidien and produce to HyperBranch documents in response to HyperBranch's document requests regarding the Confluent business. (*See* Ex. E at 45:20–46:2.) The Court should therefore compel Plaintiffs to obtain and produce responsive Confluent-related documents from the 2006–2014 timeframe that remain at Medtronic/Covidien, including a search of email of Covidien custodians working on behalf of Confluent using the same search terms as have already been applied by Plaintiffs for their own custodians.

### Discovery Issue #2: *Plaintiffs' failure to adequately prepare its 30(b)(6) witnesses regarding Plaintiff Confluent's activities from the 2006–2014 timeframe*

Plaintiff Confluent's 30(b)(6) designees were inadequately prepared to provide testimony on behalf of Confluent with respect to the 2006–2014 timeframe. In particular, Eva Tan, a legacy Integra employee with no firsthand knowledge of Confluent from prior to the acquisition, was designated for topics regarding Confluent's first awareness and knowledge of HyperBranch, the Accused Products, and Plaintiff's currently asserted allegations of infringement. (*See* Ex. I at 7 (Topics 2–6).) Given her lack of any knowledge of Confluent's activities from the 2006–2014 timeframe, and Plaintiffs' failure to obtain Confluent-related documents from Medtronic/Covidien, she provided testimony that is plainly inadequate in view of information that was known to Confluent while it was owned by Covidien. (*Compare* Ex. E at 79:1–80:2 (Tan 30(b)(6) testimony that Confluent was unaware of HyperBranch's manufacturing of the Accused Products until 2013) with Ex. D at 3–4 (February 2010 email regarding the Accused Products with a detailed description of HyperBranch and the Accused Products).)

Hence, while Ms. Tan was able to testify to Confluent's knowledge of potential infringement of the asserted patents by HyperBranch at least more than two years before filing suit (*see* Ex. E at 32:21–33:3), it is readily apparent that Confluent's knowledge about HyperBranch and the Accused Products goes back several years earlier—to at least 2009. Yet, she was unable to be adequately examined regarding Confluent's knowledge because the information demonstrating that knowledge is embodied in Confluent documents that were only produced by Medtronic/Covidien. (*See* Ex. E at 28:10–30:16; Ex. G at 58:10–59:9).

For at least the foregoing reasons, HyperBranch requests that the Court order Plaintiffs to provide a Corporate witness on behalf of Confluent that is adequately prepared to provide testimony regarding HyperBranch's 30(b)(6) Topic Nos. 2–6 regarding Confluent's notice of HyperBranch, the Accused Products, and its presently asserted allegations of infringement. This

should be ordered to occur after Plaintiffs have produced all of the relevant Confluent-related documents from Medtronic/Covidien.

### Discovery Issue #3: *Plaintiffs' inadequate response to Interrogatory No. 8*

HyperBranch's Interrogatory No. 8 asks Plaintiffs to identify the alleged priority date for the presently asserted claims and any evidence that Plaintiffs intend to rely on to support that date. Plaintiffs initially identified a priority date for claim 6 of the '3,705 patent as May 29, 2008, but later supplemented the response to identify an earlier date of November 9, 2001. (Exs. J at 7–9, K at 6–7.)

"Conception is the touchstone of inventorship, each joint inventor must generally contribute to the conception of the invention." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F. 3d 1456, (Fed. Cir. 1998). Dr. Bennett, a named inventor on the '3,705 patent and Integra and Confluent's 30(b)(6) designee regarding conception of the asserted claims, expressly testified to his conception of claim 6 of the '3,705 patent. (Ex. G at 147:2–11 ("Q Okay. Do you believe that you contributed to the conception of the invention embodied in Claim 6 of the '3,705 Patent? A Yes."); 148:14–18; 134:8–13).

Plaintiffs' supplemental response of any date earlier than May 29, 2008 is directly adverse to Dr. Bennett's testimony. Dr. Bennett is not named as an inventor on the November 9, 2001 application and, as such, Plaintiffs' supplemental response effectively negates his role inventing the claimed subject matter. Moreover, it ignores the extensive evidence that was explored in detail with Dr. Bennett during deposition supporting his inventorship.

Based on Dr. Bennett's testimony, HyperBranch does not believe that Plaintiffs have a good faith basis to assert a priority date for the '3,705 patent prior to May 29, 2008. Plaintiffs should therefore be compelled to either abandon their alleged earlier priority date or identify the evidence they intend to rely on to negate Dr. Bennett's inventive contributions to the claim, information requested in the interrogatory but not supplied by Plaintiffs.

Respectfully,

*Thomas C. Grimm*
Thomas C. Grimm (#1098)

TCG/dam
cc: Clerk of the Court (by hand delivery)
      Counsel of Record (by e-mail)
9819897

- 4 -