# Exhibit A

**Eskola, Melissa**

| | |
|---|---|
| **From:** | Parker, Crystal Lohmann <Crystal.Parker@ropesgray.com> |
| **Sent:** | Wednesday, January 27, 2016 10:00 AM |
| **To:** | Pivovar, Adam; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon |
| **Cc:** | Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra |
| **Subject:** | RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic |

Adam,

I write in response to your below email.

Regarding your question on Section 5.10 of the Stock Purchase Agreement, Medtronic reads that agreement as permitting Integra to request from Covidien access to pre-divestiture documents it believes are necessary to prepare or defend itself in its suit with HyperBranch.

Regarding your prior request that Medtronic confirm whether or not it is in possession of documents belonging to former employees who now work for Plaintiffs, Medtronic has confirmed that it has custodian documents for the four custodians – Steven Bennett, William (Bill) Delaney, Barbara Lindner, and Federic LeRoy – listed in your January 13, 2016 email. We are in the process of confirming whether any custodial documents still exist for Art Driscoll. Please note however that while your email describes Ms. Lindner as a former Covidien employee, our records indicate that she is still employed at Covidien. As we have repeatedly stated, Medtronic has made a reasonable effort to collect and produce responsive documents to HyperBranch and will request that HyperBranch pay for any additional discovery it now seeks from third party Medtronic. We understand from your response below that HyperBranch is not willing to pay for expenses associated with the production of additional documents it is requesting to the extent Plaintiffs have the right to request such documents from Medtronic. HyperBranch, however, is open to potentially reimbursing expenses for documents that Plaintiffs do not have the right to request. If that is not correct, please let us know.

Finally, regarding your inquiry into any contact with Plaintiffs regarding the HyperBranch subpoena, counsel at Ropes & Gray notified counsel for Plaintiffs of the subpoena received from HyperBranch and spoke with Plaintiffs about issues involving that subpoena. For example, following your suggestion that HyperBranch had not received any discovery from Plaintiffs, Ropes & Gray confirmed with Plaintiffs that they had produced documents, including documents duplicative of those sought from Medtronic, to HyperBranch and were making witnesses available for deposition. Ropes & Gray also provided Plaintiffs with a copy of Medtronic's December 30 document production at the same time it was produced to HyperBranch and notified Plaintiffs of our positions regarding which witnesses could be shown Medtronic documents marked as Confidential or Highly Confidential in deposition.

I am traveling for business this afternoon and Thursday but am available to confer on Friday if you believe such a call is still necessary.

Sincerely,

Crystal

**Crystal Lohmann Parker**
**ROPES & GRAY LLP**
T +1 212 596 9023 | F +1 646 728 1684
1211 Avenue of the Americas
New York, NY 10036-8704

Crystal.Parker@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Pivovar, Adam [mailto:apivovar@cooley.com]
**Sent:** Tuesday, January 26, 2016 5:48 PM
**To:** Parker, Crystal Lohmann; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Hi Crystal,

Thank you for responding to my emails. HyperBranch has been and will continue to be reasonable regarding our document requests for the production of what is indisputably relevant and responsive information in the possession of Medtronic/Covidien relating to Plaintiffs' request for a preliminary injunction. However, we cannot move forward to facilitate a reasonable production of responsive documents from Medtronic/Covidien in a vacuum. In that regard, we cannot begin to respond to your question until you have answered, in good faith, our previously posed questions.

By this point in time, you must certainly know whether Medtronic/Covidien or any attorneys acting on its behalf have had communications with Plaintiffs or any attorneys acting on behalf of any of the Plaintiffs regarding HyperBranch's subpoenas served on Medtronic.

Whether Medtronic/Covidien believes that Integra/Confluent either does or does not have a right to obtain information from Medtronic/Covidien related to the Confluent business line is also highly material to your question. Our review of section 5.10 of the Stock Purchase Agreement, cited below, appears to give Confluent the unequivocal right to obtain these documents:

> Section 5.10 Post-Closing Information. For a period of six (6) years following the Closing, (i) upon written request delivered to Purchaser, Purchaser shall, and Purchaser shall cause the Company and the Affiliates of Purchaser to, afford to Seller and its Representatives reasonable access during regular normal business hours to the properties, books and records and employees of Purchaser, the Company and the Affiliates of Purchaser with respect to the Business to the extent necessary to prepare or defend any judicial or administrative proceeding related to the Business, or to enable Seller and its Representatives to satisfy Seller's and its Affiliates' financial reporting and regulatory obligations and (ii) upon written request delivered to Seller, Seller shall, and cause its Affiliates to, afford to Purchaser, its Affiliates and their Representatives reasonable access during regular normal business hours to the properties, books and records and employees thereof with respect to the Business to the extent necessary to prepare or defend any judicial or administrative proceeding related to the Business, or to enable Purchaser, its Affiliates and their Representatives to satisfy Purchaser's and its Affiliates' financial reporting and regulatory obligations, provided in the case of each of clause (i) and (ii) that (x) such access does not unreasonably disrupt the normal operations of the applicable Person and (y) the foregoing Persons may comply with their own document retention policies, and the destruction of any item referred to in this Section 5.10 solely as a result of such compliance will not result in a breach of this Section 5.10.

Please let us know if you disagree that this term of the licensing agreement gives Integra/Confluent the right to obtain information from Medtronic/Covidien for the purposes of the present litigation. Additionally, please recall that we have discussed previously the fact that Medtronic/Covidien has made documents and information in Medtronic/Covidien's possession related to the Confluent business available to Integra long after the sale of Confluent.

I suggest we have a meet and confer on these issues.  I can be available anytime on Wednesday from 3-6 pm ET or Thursday from 10-12 AM ET.  Please let me know if you are available at those times.

Regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

**From:** Parker, Crystal Lohmann [mailto:Crystal.Parker@ropesgray.com]
**Sent:** Friday, January 22, 2016 2:27 PM
**To:** Pivovar, Adam; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Adam,

We are looking in to the issues raised in your below emails including whether custodial documents for former employees exist at Medtronic.  However, as we have repeatedly discussed, HyperBranch and Medtronic have agreed to limit HyperBranch's document requests to a reasonable search and production by third-party Medtronic using agreed upon search terms, which search and production Medtronic has already been completed at substantial cost to Medtronic.  To the extent that HyperBranch now plans to seek additional discovery from third-party Medtronic, including the documents of individuals that were employed by Covidien/Confluent and that moved to Integra as part of Covidien's sale of Confluent, we remain willing to discuss that discovery but will request that such discovery be performed at the cost of HyperBranch.

To facilitate our discussions, please confirm whether HyperBranch is willing to pay for the additional discovery it now seeks.

Sincerely,

Crystal


**Crystal Lohmann Parker**
**ROPES & GRAY LLP**
T +1 212 596 9023 | F +1 646 728 1684
1211 Avenue of the Americas
New York, NY 10036-8704
Crystal.Parker@ropesgray.com
www.ropesgray.com


This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Pivovar, Adam [mailto:apivovar@cooley.com]
**Sent:** Wednesday, January 20, 2016 5:20 PM
**To:** Parker, Crystal Lohmann; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Hi Crystal,

I write following up on my email below as we have yet to receive a response.  Can you please provide Medtronic's responses to my questions below?

Thank you,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

**From:** Pivovar, Adam
**Sent:** Thursday, January 14, 2016 7:46 PM
**To:** Parker, Crystal Lohmann; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Hi Crystal,

While we are disappointed in Medtronic's position, I appreciate your prompt response to my call.

We were informed by counsel from Integra that they have no right under the Confluent sales agreement to obtain documents from Covidien/Medtronic.  However, our review of the agreement indicates otherwise.  Does Medtronic agree that Integra has no right to obtain documents or information from Covidien/Medtronic pursuant to the agreement for the purposes of litigation related to Confluent?  Please advise.

Likewise, please confirm whether you or anyone else acting on behalf of Medtronic in response to our subpoena has had any contact with any of the Plaintiffs or Plaintiffs' counsel since service of the subpoena regarding the production of documents.

As one additional matter, please add Art Driscoll to the list of former Covidien employees that would have had responsive information to HyperBranch's subpoena but whose custodial files were not previously investigated.

I look forward to your responses to our inquiries, which should facilitate our discussions.

Regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

**From:** Parker, Crystal Lohmann [mailto:Crystal.Parker@ropesgray.com]
**Sent:** Thursday, January 14, 2016 6:41 PM
**To:** Pivovar, Adam; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Adam,

I am writing in response to the voicemail you left me earlier this afternoon again requesting permission to show Medtronic's documents to Plaintiffs' witnesses who are not the sender or recipient of the documents.

As stated in my below email, HyperBranch does not have permission to show any Medtronic document marked as Confidential or Highly Confidential to any witness that is not the sender or recipient of that document.

Sincerely,

Crystal


**Crystal Lohmann Parker**
**ROPES & GRAY LLP**
T +1 212 596 9023 | F +1 646 728 1684
1211 Avenue of the Americas
New York, NY 10036-8704
Crystal.Parker@ropesgray.com
www.ropesgray.com


This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**From:** Parker, Crystal Lohmann
**Sent:** Wednesday, January 13, 2016 4:47 PM
**To:** 'Pivovar, Adam'; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Adam,

I am writing to follow up on our call yesterday in which you asked whether HyperBranch may show documents produced by Medtronic to Plaintiffs' fact witnesses during deposition.

Where Plaintiffs' witness was the sender or recipient of a document produced by Medtronic, the document may be shown to that witness.  Where a document consists of a chain of emails the witness must be present on the top email of the chain in order to be shown the entire document.

HyperBranch does not have permission to show any Medtronic document marked as Confidential or Highly Confidential to any witness that is not the sender or recipient of that document.

Sincerely,

Crystal

**From:** Pivovar, Adam [mailto:apivovar@cooley.com]
**Sent:** Wednesday, January 13, 2016 4:19 PM
**To:** Parker, Crystal Lohmann; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Hi Crystal,

As per our discussion yesterday, the following individuals are former Covidien employees that were involved with Confluent and the DuraSeal product line and who's custodial files are likely to include information responsive to HyperBranch's document subpoena.

1. Steve Bennett
2. William (Bill) Delaney
3. Barbara Lindner
4. Federic LeRoy

I look forward to hearing from you regarding the information at Medtronic/Covidien regarding these individuals. I would also appreciate an update from you, as soon as reasonably possible, whether Medtronic will consent to our use of the produced documents with any of Plaintiffs' employees during deposition as we discussed yesterday.

Best regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC 20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

**From:** Parker, Crystal Lohmann [mailto:Crystal.Parker@ropesgray.com]
**Sent:** Monday, January 11, 2016 9:56 PM
**To:** Pivovar, Adam; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Adam,

I am available to speak at 4:00 tomorrow.

Crystal

**Crystal Lohmann Parker**
**ROPES & GRAY LLP**
T +1 212 596 9023 | F +1 646 728 1684
1211 Avenue of the Americas
New York, NY 10036-8704
Crystal.Parker@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Pivovar, Adam [mailto:apivovar@cooley.com]
**Sent:** Monday, January 11, 2016 9:52 PM
**To:** Parker, Crystal Lohmann; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Hi Crystal,

Thank you for the response. Please let me know if you are available to hold a discussion at 4:00 PM tomorrow (Tuesday). If so, I will circulate dial in information.

To make our discussion more productive, we would like to discuss whether the documents from your initial production that could not be imaged can be made available to us in native format and to get confirmation that your searches re the four Medtronic custodians were not limited to searches of email.

Regarding the remaining issues, we have repeatedly requested information regarding the scope of information that remains at Medtronic/Covidien related to the issues in the case that were not otherwise transferred to Integra with the sale of Confluent. In particular, we have requested that you please inform us of what information from the custodial files and email of the employees that moved to Integra remains in the possession of Medtronic/Covidien. To date, we have not received any response from you for these requests regarding the scope, nature, extent, or location of such information. We have always maintained that such information, to the extent it exists, remains responsive to HyperBranch's document requests and have never conceded or agreed with Medtronic that such information was not subject to production in response to the subpoenas contrary to your characterization below. To the extent such information exists, it remains subject to our subpoena and we're willing to work with you in a reasonable manner to fulfill the production of such materials, but can only do so once we have full disclosure from you regarding the responsive materials in Medtronic's possession.

I look forward to speaking with you.

Regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC 20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

**From:** Parker, Crystal Lohmann [mailto:Crystal.Parker@ropesgray.com]
**Sent:** Friday, January 08, 2016 5:31 PM
**To:** Pivovar, Adam; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Adam,

I hope you're having a nice new year as well.

Regarding your first question, we did not produce native versions of the documents marked "This Document Could Not Be Imaged" in your list below because there are no readable native files for these documents. These documents were

extracted by the processing software from other documents we produced and the extraction resulted in an unsupported file with no readable content. For example, for certain documents we produced that contain a graph or figure, the processing software attempted to extract these graphs or figures as separate files, and these extractions are not readable as stand-alone files. Thus, they were produced with a "This Document Could Not Be Imaged" placeholder with their family members that contain readable versions of these graphs and figures.

With respect to your second and third questions, HyperBranch and Medtronic have already agreed to limit HyperBranch's document requests to a *reasonable* search and production by third-party Medtronic using agreed upon search terms, which search and production Medtronic has already completed. At substantial cost to Medtronic, the email archives, local drives, and network drives for each of the four custodians listed in your email were searched using the agreed upon search terms. To the extent that HyperBranch now plans to seek additional discovery from third-party Medtronic, including the documents of individuals that were employed by Covidien/Confluent and that moved to Integra as part of Covidien's sale of Confluent, we are willing to discuss that discovery over the phone but will request that such discovery be performed at the cost of HyperBranch. We are not willing to incur additional cost, especially in the absence of an explanation as to why such additional discovery is necessary in light of discovery you have already received in this case. I am generally available to discuss this issue over the phone on Tuesday, January 12 after 2:00 p.m..

Sincerely,
Crystal

**Crystal Lohmann Parker**
**ROPES & GRAY LLP**
T +1 212 596 9023 | F +1 646 728 1684
1211 Avenue of the Americas
New York, NY 10036-8704
Crystal.Parker@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

**From:** Pivovar, Adam [mailto:apivovar@cooley.com]
**Sent:** Friday, January 08, 2016 10:21 AM
**To:** Parker, Crystal Lohmann; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Hi Crystal,

I write following up on the voicemail I left for you this morning regarding the issues raised in my email below. Can you please let us know the status of Medtronic/Covidien's response to those issues and a time you are available to discuss the scope of residual material in Medtronic/Covidien's possession. If you would like to speak live, please feel free to drop me a line at my office number below.

Best regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC 20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212

Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

**From:** Pivovar, Adam
**Sent:** Wednesday, January 06, 2016 12:36 PM
**To:** 'Parker, Crystal Lohmann'; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Sica, Vincent; z/HyperBranch-Integra
**Subject:** RE: Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Hi Crystal,

I hope you are having a nice start to 2016. We have received last week's production of documents from Covidien in response to HyperBranch's subpoena and have begun our initial review. Thank you.

As part of our initial review, however, we have a few requests and questions. First, we have a problem with the following listed documents. Each merely says "This Document Could Not Be Imaged" and we do not otherwise have native versions of the documents. We request that you please provide us with readable, native versions of the listed documents at your earliest convenience.

- COV0000118
- COV0000203
- COV0000204
- COV0000205
- COV0000206
- COV0000207
- COV0000208
- COV0000218
- COV0000219
- COV0000220
- COV0000221
- COV0000222
- COV0000223
- COV0000224
- COV0000225
- COV0000226

Second, it appears that your production was limited to documents retrieved from the search of the email files of four custodians: (1) Jason Fortier; (2) Terri Wells; (3) Les Hull; and (4) Valentino Tramontano. Can you please let us know if your production was limited to these email archives as it appears or if additional document repositories were searched.

Third, as we discussed, there are a number of individuals that were employed by Covidien/Confluent and that moved to Integra as part of Covidien's sale of Confluent to Integra. It is our understanding that Covidien/Medtronic did not transfer all of the files in its possession related to Confluent/DuraSeal to Integra as part of the Confluent transaction. Accordingly, we believe a discussion regarding the Confluent-related documents that remain in Covidien's possession and were not otherwise transferred to Integra would be helpful. Please let me know when you are available to hold a discussion regarding such documents.

Please let me know if you have any specific questions. I look forward to hearing from you.

Best regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC 20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

**From:** Parker, Crystal Lohmann [mailto:Crystal.Parker@ropesgray.com]
**Sent:** Wednesday, December 30, 2015 3:00 PM
**To:** Pivovar, Adam; JTigan@MNAT.com; skraftschik@mnat.com; Graves, Jon; Lake, Kevin
**Cc:** Badke, Bradford J.; Fukuda, Ching-Lee; Parker, Crystal Lohmann; Sica, Vincent
**Subject:** Integra v. HyperBranch, 1:15-cv-819-LPS (D. Del.)--Subpoena of Third-Party Medtronic

Counsel,

Pursuant to HyperBranch's November 20, 2015 subpoena to third-party Medtronic, Medtronic is producing documents bates stamped as COV0000001 - COV0003623.

You will receive an Accellion link to the production in a separate email momentarily. You will need to create an Accellion username and password to download the production. Once you have downloaded the production, the password for the zip file is 47P22-#dN10{49y.

This production contains documents designated as Confidential and Highly Confidential pursuant to the Protective Order in the above referenced action. Please treat them accordingly.

Sincerely,

Crystal Parker

**Crystal Lohmann Parker**
**ROPES & GRAY LLP**
T +1 212 596 9023 | F +1 646 728 1684
1211 Avenue of the Americas
New York, NY 10036-8704
Crystal.Parker@ropesgray.com
www.ropesgray.com

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT B

## FULLY REDACTED

# EXHIBIT C

## FULLY REDACTED

# EXHIBIT D

## FULLY REDACTED

# EXHIBIT E

## FULLY REDACTED

# EXHIBIT F

## FULLY REDACTED

# EXHIBIT G

## FULLY REDACTED

# Exhibit H

**Eskola, Melissa**

**From:** Christopher Roth <Croth@bannerwitcoff.com>
**Sent:** Wednesday, January 27, 2016 10:06 AM
**To:** Pivovar, Adam
**Cc:** z/HyperBranch-Integra; Tigan, Jeremy A.; Grimm, Thomas; Carlos Goldie; Kraftschik, Stephen; Pascale, Karen (kpascale@ycst.com); John Iwanicki; Graves, Jon; Robert F. Altherr; Jason Shull
**Subject:** RE: Integra/HyperBranch - production of documents

Counsel,

Pursuant to Section 5.10 of the October 25, 2013 Stock Purchase Agreement, Integra has requested that Covidien provide Integra access to any laboratory notebooks identified in Exhibit 63 to Mr. Bennett's deposition that Covidien still has in its possession. Once access is granted, we will advise you as to when production will occur.

Regards,

Christopher B. Roth | Attorney
tel: 202.824.3113 | fax: 202.824.3001
**Banner & Witcoff, Ltd.** | croth@bannerwitcoff.com

IMPORTANT/CONFIDENTIAL: This message may be privileged, confidential, or exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by return e-mail.

---

**From:** Pivovar, Adam [mailto:apivovar@cooley.com]
**Sent:** Thursday, January 21, 2016 1:44 PM
**To:** Jason Shull; Christopher Roth; Robert F. Altherr
**Cc:** z/HyperBranch-Integra; Tigan, Jeremy A.; Grimm, Thomas; Carlos Goldie; Kraftschik, Stephen; Pascale, Karen (kpascale@ycst.com); John Iwanicki; Graves, Jon
**Subject:** RE: Integra/HyperBranch - production of documents

Counsel:

In addition to the documents discussed at the Tan deposition and the Augmenix and Ocular documents, please also produce all Confluent lab notebooks discussed during the deposition of Dr. Bennett. These should include, without limitation, the lab notebooks identified in Exhibit 63 of the Bennett deposition. This information is responsive to at least HyperBranch's RFP No. 4. Please let us know when we can expect the production of these documents. If it is your contention that you need not produce lab notebooks, please indicate the grounds for your refusal to do so.

Regards,
Adam

---

**From:** Graves, Jon
**Sent:** Thursday, January 21, 2016 10:50 AM
**To:** Pivovar, Adam; Jason Shull; Christopher Roth; Robert F. Altherr
**Cc:** z/HyperBranch-Integra; Tigan, Jeremy A.; Grimm, Thomas; Carlos Goldie; Kraftschik, Stephen; Pascale, Karen (kpascale@ycst.com); John Iwanicki
**Subject:** RE: Integra/HyperBranch - production of documents

Bob:

To clarify, as discussed at the conclusion of the Tan deposition yesterday, we are requesting identification of the two pieces of written correspondence from Integra to Dr. Sawnhey that Ms. Tan testified about yesterday: notice sent before the January 2015 letter to HyperBranch, and notice sent before the filing of suit.

**Jonathan G. Graves**
Partner
Cooley LLP ♦ One Freedom Square ♦ Reston Town Center
11951 Freedom Drive ♦ Reston, VA 20190-5656
Direct: 703-456-8119 ♦ Fax: 703-456-8100 ♦ Cell: 703-447-3639
Bio: www.cooley.com/jgraves ♦ Practice: IP Litigation www.cooley.com/litigation

---

**From:** Pivovar, Adam
**Sent:** Wednesday, January 20, 2016 6:34 PM
**To:** Jason Shull; Christopher Roth; Robert F. Altherr
**Cc:** z/HyperBranch-Integra; Tigan, Jeremy A.; Grimm, Thomas; Carlos Goldie; Kraftschik, Stephen; Pascale, Karen (kpascale@ycst.com); John Iwanicki; Graves, Jon
**Subject:** Integra/HyperBranch - production of documents

Counsel:

During today's deposition of Ms. Tan, she testified that there was correspondence with Mr. Sawhney regarding the institution of the present suit. It was also indicated by Mr. Altherr that this correspondence was produced as part of the litigation. However, we have been unable to find the pre-suit correspondence with Mr. Sawhney in the production. Can you please identify the bates numbers to identify these documents?

Furthermore, we have yet to receive any production from Augmenix or Ocular in response to our subpoenas. Can you please let us know when the production of documents from those entities will be produced.

Regards,
Adam

**Adam M. Pivovar, Ph.D.**
Cooley LLP
1299 Pennsylvania Avenue, NW • Suite 700
(enter from 12th and E Streets)
Washington, DC 20004-2400
Direct: (202) 842 7889 • Fax: (202) 842 7899 • Cell: (301) 518 9212
Bio: www.cooley.com/apivovar • Practice: www.cooley.com/litigation

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# Exhibit I

Case 1:15-cv-00819-LPS Document 124-1 Filed 04/04/16 Page 23 of 61 PageID #: 6305

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., and INCEPT LLC,

Plaintiffs,

v.

HYPERBRANCH MEDICAL TECHNOLOGY, INC.,

Defendant.

C.A. No. 15-819 (LPS) (CJB)

**DEFENDANT'S NOTICE OF RULE 30(b)(6) DEPOSITION TO PLAINTIFF INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC.**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), counsel for Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") will take the deposition of designated representative(s) of Plaintiffs Integra LifeSciences Corp., Integra Lifesciences Sales LLC, and Confluent Surgical, Inc. ("Plaintiffs"). The deposition will take place at the offices of Cooley LLP, located at 1114 Avenue of the Americas, New York, NY 10036, on December 21, 2015, commencing at 9:00 a.m., or at such other time as mutually agreed upon by the parties, and will be taken upon oral examination before an officer authorized by law to administer oaths, and will continue from day to day thereafter, excluding weekends and holidays, until it is completed. The deposition will be recorded stenographically, by video, and/or by instant visual display of testimony using LiveNote software or equivalent technology.

Plaintiffs each have a duty to designate one or more officers, directors, managing agents, employees or other persons with sufficient knowledge to testify on its behalf of as to matters

known or reasonably available to it considering the subject matter described in Exhibit A attached hereto.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Stephen J. Kraftschik

Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com
*Attorneys for HyperBranch Medical Technology, Inc.*

OF COUNSEL:

Jonathan G. Graves
Kevin A. Lake
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Restin, VA 20190
(703) 456-8000

Adam M. Pivovar
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 842-7889

December 1, 2015
9677307

Case 1:15-cv-00819-LPS-CJB Document 53 Filed 12/01/15 Page 3 of 18 PageID #: 1777

**EXHIBIT A**

**DEFINITIONS**

Defendant hereby incorporates by reference all definitions in Defendant's First Interrogatories to Plaintiffs as though fully set forth herein. Defendant further states:

1. "INTEGRA," "PLAINTIFFS," "YOU," and "YOUR" means Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc. and all officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing, as well as all affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned or controlled by any of the foregoing, and all predecessors and successors in interest to such entities.

2. "HYPERBRANCH" or "Defendant" means HyperBranch Medical Technology, Inc.

3. The term "the '034 patent" shall mean U.S. Patent No. 7,009,034.

4. The term "the '418 patent" shall mean U.S. Patent No. 7,592,418.

5. The term "the '566 patent" shall mean U.S. Patent No. 7,332,566.

6. The term "the '406 patent" shall mean U.S. Patent No. 6,566,406.

7. The term "the '3,705 patent" shall mean U.S. Patent No. 8,003,705.

8. The term "the '5,705 patent" shall mean U.S. Patent No. 8,535,705.

9. "ASSERTED PATENTS" or "PATENTS-IN-SUIT" means the '034, '418, '566, '406, '3,705 and '5,705 patents.

10. The "PATENT FAMILY" refers to the PATENTS-IN-SUIT and all underlying patents and patent applications, including published and unpublished applications, abandoned applications and patents, parents, continuations, continuations-in-part, divisionals, reissues,

foreign counterparts, and any other patents or patent applications claiming priority to any PATENT-IN-SUIT or to which any PATENT-IN-SUIT claims priority, whether directly or indirectly.

11.  "DOCUMENT" shall include, without limitation, all written, graphic or otherwise recorded material, including without limitation, electronically stored information regardless of the form of storage medium, microfilms or other film records or impressions, tape recordings or computer cards, floppy disks or printouts, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

12.  "THING" refers to any tangible object, other than a document, and includes objects of every kind and nature including, but not limited to, prototypes, models, and specimens.

13.  "COMMUNICATION" shall mean, without limitation, any transmission, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction,

information, demand or question by any medium, whether by written, oral or other means, including but not limited to, electronic communications and electronic mail ("E-mail").

14.     The term "PERSON" shall refer to any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

15.     "INFRINGE" and "INFRINGEMENT" means direct infringement, contributory infringement, infringement by inducement, literal infringement, and infringement by the doctrine of equivalents.

16.     "PRIOR ART" shall mean the subject matter described in 35 U.S.C. §§ 102 and 103, including but not limited to publications, patents, physical products, devices, systems, prototypes, uses, sales, and offers for sale, and any DOCUMENTS or OTHER ITEMS evidencing any of the foregoing.

17.     "ACCUSED PRODUCT(S)" means any and all products, activities, services, processes, systems, apparatuses, or things that Plaintiff identified as allegedly infringing any of the PATENTS-IN-SUIT, including in its Complaint, Motion for Preliminary Injunction and supporting materials, Asserted Patents, and Identification of Six (6) Claims for Preliminary Injunction Proceedings, and any supplements thereto, and in any Infringement Contentions or supplements thereto that Plaintiff has served or will serve in these actions. "ACCUSED PRODUCT(S)" includes, without limitation, the Adherus Dural Sealant and Adherus AutoSpray Dural Sealant, as well as any previous names for such products including "NuSeal" or "NuSeal 100."

18.     "LICENSE" means any authorization to make, have made, use, offer to sell, sell, or import any product or process, (a) the unlicensed manufacture, use or sale of which could

infringe any United States or foreign patent, or (b) that is claimed in any United States or foreign patent application, or (c) that is the subject of a trade secret, including, without limitation, any agreement (whether in the form of a grant, sublicense, bilateral contract, option, offer to make a unilateral contract, stipulation in a legal action or other proceeding, statement that patent rights will not be asserted with respect to particular subject matter, or agreement to sell or distribute any patented product) and any schedule, addendum, or amendment thereto, and any modification thereof.

19. The term "SIX ASSERTED CLAIMS" refers to each and every claim of the PATENTS-IN-SUIT that PLAINTIFF identified in its Identification of Six (6) Claims for Preliminary Injunction Proceedings.

20. "USPTO" means the United States Patent and Trademark Office, any subsidiaries, employees, and/or agents working on its behalf.

21. "INVENTOR(S)" means any of the persons identified as an inventor on the face of any PATENT-IN-SUIT, or any other PERSON who materially and substantively contributed to the conception, reduction to practice, or development of the invention(s) claimed in any of the PATENTS-IN-SUIT, including, without limitation, Chandrashekhar P. Pathak, Amarpreet S. Sawhney, Peter G. Edelman, Steven Bennett, and Stephen C. Rowe.

22. "Reflect," "reflecting," "relate to," "refer to," "relating to," and "referring to" shall mean relating to referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

23. "Concerning" means constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring to (directly or indirectly), dealing with, or

pertaining to in any way.

24. “Include” and “including” shall mean including without limitation.

25. Use of the singular also includes the plural and vice-versa.

26. The words “or” and “and” shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these Interrogatories.

27. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

28. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

**INSTRUCTIONS**

1. Unless the Topic specifically states otherwise, references to the singular shall include the plural and vice versa; references to one gender shall include the other gender; references to the past including the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

2. If, in responding to these Topics, you claim any ambiguity in interpreting either a Topic, or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but you shall set forth as part of your response to the Topic the language deemed to be ambiguous and the interpretation chosen to be used in responding to the Topic.

3. If, in responding to these Topics, you assert a privilege to any particular Topic, you must identify the nature of the privilege (including attorney work product) that is being claimed, and, if the privilege is governed by state law, indicate the state's privilege rule being invoked. In addition, you must sufficiently describe and identify the privilege to permit Defendants and the Court to make an informed decision as to whether the matter is indeed privileged.

4. If Plaintiff does not possess information to answer any Topic, Plaintiff is under a duty to make a reasonable effort to obtain such information.

Case 1:15-cv-00819-LPS-CJB Document 53 Filed 12/01/15 Page 9 of 18 PageID #: 1783

**DEPOSITION TOPICS**

1. All facts and circumstances related to YOUR decision to file the present litigation and Motion for Preliminary Injunction, including any pre-filing investigation performed by YOU.

2. The earliest date on which YOU became aware of the existence of any ACCUSED PRODUCTS, including all facts and circumstances related to YOUR first awareness of any ACCUSED PRODUCTS and the identity of persons with such knowledge.

3. The earliest date on which YOU became aware of alleged INFRINGEMENT by any ACCUSED PRODUCTS, including all facts and circumstances related to YOUR first awareness of any alleged INFRINGEMENT by any ACCUSED PRODUCTS and the identity of persons with such knowledge.

4. All facts and circumstances related to YOUR purchase and use of any ACCUSED PRODUCTS, and the identity of persons with such knowledge.

5. All facts and circumstances related to YOUR knowledge of HyperBranch's efforts to obtain regulatory approval for any of the ACCUSED PRODUCTS, including both domestically and abroad.

6. All facts and circumstances related to YOUR knowledge of HyperBranch's manufacture, use and/or sale of any of the ACCUSED PRODUCTS, including both domestically and abroad.

7. The chemical properties, physical properties, features, and functionality of any products developed, offered for sale, or sold by YOU that are alleged to embody any of the SIX ASSERTED CLAIMS.

8.      All facts and circumstances surrounding products developed, manufactured, designed, sold, or offered for sale by YOU that are allegedly covered by the SIX ASSERTED CLAIMS.

9.      The commercial success or lack thereof of any products developed, offered for sale, or sold by YOU that are alleged to embody any of the SIX ASSERTED CLAIMS or any of the claims of any of the patents within the PATENT FAMILY, including quantity of sales, number of deployments, and the identity of and commercial relationship with any customers.

10.     The first sale, first offer for sale, first public use, first public disclosure or first public display of any apparatus and/or method embodying the purported invention(s) of the SIX ASSERTED CLAIMS, including the date of such offer to sell, sale, public use, public disclosure or public display, the identification of the product or process that was the subject of the offer to sell, sale, public use, public disclosure or public display, and the identification of the PERSON to whom such activity was directed.

11.     All efforts by YOU or others to license, sell or convey any rights to the ASSERTED PATENTS, including any discussions with third parties concerning any proposed terms for a license that would include any rights to make, use, sell, offer to sell, import, or otherwise distribute a product embodying the purported invention(s) claimed in the ASSERTED PATENTS.

12.     All facts and circumstances surrounding any agreement related to any patent in the PATENT FAMILY, including but not limited to any license, settlement agreement, covenant not to sue, or transfer of ownership, whether contemplated, negotiated, or executed.

13.    All COMMUNICATIONS with the INVENTORS, assignors, assignees, licensees, and owners of the ASSERTED PATENTS regarding the ASSERTED PATENTS, ACCUSED PRODUCTS, and/or HYPERBRANCH.

14.    YOUR COMMUNICATIONS with Covidien regarding the ASSERTED PATENTS, ACCUSED PRODUCTS, and/or HYPERBRANCH.

15.    YOUR COMMUNICATIONS with Covidien regarding the acquisition of Confluent.

16.    YOUR COMMUNICATIONS with Covidien regarding the DuraSeal product line.

17.    Any alleged notice (actual or constructive) that YOU or others provided to the Defendant as to any ASSERTED PATENT or patent within THE PATENT FAMILY.

18.    All facts and circumstances surrounding any alleged COMMUNICATIONS between HyperBranch and YOU.

19.    All facts and circumstances surrounding any potential acquisition of HyperBranch by YOU and/or any of the named plaintiffs in the present litigation.

20.    Preparation by YOU and YOUR witnesses to testify regarding these Topics, and any documents reviewed or relied upon in connection with such preparation.

21.    The alleged conception, reduction to practice, and/or diligence to reduce to practice each alleged invention purportedly disclosed and claimed in the SIX ASSERTED CLAIMS.

22.    YOUR corporate structure, including the identities of corporate officers, department heads, managers, directors, representative directors, board members, and individual employees, in the United States and elsewhere, including subsidiaries.

23.     YOUR relationship to the prior owners and/or licensees, if any, of the ASSERTED PATENTS.

24.     YOUR business model, business strategies, revenue sources, shareholders, and investors, in the United States and abroad.

25.     YOUR revenue and profit projections relating to the ASSERTED PATENTS, including for any products allegedly embodying one or more of the SIX ASSERTED CLAIMS.

26.     YOUR current and projected financial condition.

27.     The factual bases for any allegations, for each alleged invention purportedly covered by the SIX ASSERTED CLAIMS, of secondary indicia of nonobviousness, including: (1) commercial success; (2) long-felt need; (3) failed attempts by others; (4) copying; (5) unexpected results; (6) praise; (7) the taking of licenses by others; (8) expressions of surprise by experts and those skilled in the art; (9) evidence of the patentee proceeding contrary to the accepted wisdom of the Prior Art; and (10) the connection or nexus between each of the above factors (1) through (9) and such allegations.

28.     YOUR knowledge of any PRIOR ART related to the ASSERTED PATENTS, including YOUR knowledge of the content, subject matter, functionalities, or features of any PRIOR ART, the date YOU became aware of the PRIOR ART, and any purported utility or advantages of the inventions claimed in the ASSERTED PATENTS over the PRIOR ART.

29.     The dates on which HYPERBRANCH allegedly first became aware of each of the PATENTS-IN-SUIT, and the facts and circumstances surrounding HYPERBRANCH's first awareness.

30.     YOUR efforts to identify, collect, and produce responsive documents in this lawsuit.

Case 1:15-cv-00819-LPS-CJB Document 53 Filed 12/01/15 Page 13 of 18 PageID #: 1787

31. YOUR document retention and destruction policies, whether formal or informal, from 2008 to present.

32. The planning and development of products covered by the PATENTS-IN-SUIT, or the use of which is covered by the PATENTS-IN-SUIT, including, without limitation, strategic planning, requirements development, market studies and surveys, customer input, consumer testing, and product demonstrations.

33. The conception, design, development, function, operation, structure, use, and architecture of products covered by the PATENTS-IN-SUIT, or the use of which is covered by the PATENTS-IN-SUIT, including but not limited to the conception, design, development, function, operation, structure, use, and architecture of any component or subcomponent thereof, and the identity of persons involved therewith.

34. Identification and explanation of all changes made to all versions and editions of products covered by the PATENTS-IN-SUIT, or the use of which is covered by the PATENTS-IN-SUIT, since January 1, 2009.

35. The identity (name, address, present employer, telephone number, and email address) of former employees or third parties who were involved in the design, development, implementation, marketing, and/or management of products covered by the PATENTS-IN-SUIT, or the use of which is covered by the PATENTS-IN-SUIT, and an explanation of such involvement of each such person.

36. The location and nature of information within YOUR possession, custody or control regarding actual use of the ACCUSED PRODUCTS by any person other than HYPERBRANCH.

37.     All information regarding YOUR knowledge of the actual uses of the ACCUSED PRODUCTS by any person other than HYPERBRANCH.

38.     All information regarding actual use of the ACCUSED PRODUCTS by HYPERBRANCH, including, without limitation, use in conjunction with the development, testing, marketing, sales, and/or support of the ACCUSED PRODUCTS.

39.     Any harm or hardship YOU would suffer if HYPERBRANCH is not preliminarily enjoined from making, using, selling, or offering for sale in the United States, or importing into or exporting from the United States, the ACCUSED PRODUCTS.

40.     Any harm or hardship to the public if HYPERBRANCH is not enjoined from making, using, selling, offering for sale, in the United States, or importing into or exporting from the United States, the ACCUSED PRODUCTS.

41.     All facts and circumstances concerning the contents of all conversations involving John Jarosz and any officer, employee or other representative of YOU or any other named plaintiff, including the conversation among John Jarosz, Curtis Lenox and Tom Harrison referenced in the Declaration of John C. Jarosz.

42.     All facts and circumstances concerning YOUR plans "to employ both a large number of sales representatives and a direct (and dedicated) set of specialists to educate consumers (surgeons and other personnel in the surgical suite) regarding the benefits of applying DuraSeal® in dural repair, and to provide unmatched support for the product line" as referenced in paragraph 51 of the Declaration of John C. Jarosz.

43.     All facts and circumstances concerning YOUR attempts to "re-position[] (through new marketing and educational efforts) and poise[] DuraSeal® for substantial near-term growth,

much beyond that which had been realized prior to the acquisition" as referenced in paragraph 67 of the Declaration of John C. Jarosz.

44.     All facts and circumstances concerning any diversion of efforts "from promoting new growth of DuraSeal® to defending existing business" as referenced in paragraph 67 of the Declaration of John C. Jarosz.

45.     All facts and circumstances concerning any "[d]iversion of Integra resources" that has occurred due to the "impact of Adherus" as referenced in paragraph 69 of the Declaration of John C. Jarosz.

46.     All facts and circumstances concerning any "re-direct[ion] of [Integra] efforts toward defending the DuraSeal® franchise" and consequences thereto as referenced in paragraphs 71-74 of the Declaration of John C. Jarosz.

47.     All facts and circumstances concerning any "move [of] DuraSeal® to a different and lower growth path than it should have been on if not for competition from Adherus" as referenced in paragraph 76 of the Declaration of John C. Jarosz.

48.     All facts and circumstances concerning DuraSeal's role "as a complement to the rest of Integra's product portfolio, in particular to Integra's DuraGen® dural graft product line" as referenced in paragraph 84 of the Declaration of John C. Jarosz.

49.     All facts and circumstances concerning the use of DuraSeal with a duraplasty material, including but not limited to the use of DuraSeal with DuraGen.

50.     All facts and circumstances concerning negative clinical outcomes associated with the use of DuraSeal, including without limitation infections, pinched nerves, overswelling, leakage, and premature degradation.

Case 1:15-cv-00819-LPS-CJB Document 53 Filed 12/01/15 Page 16 of 18 PageID #: 1790

51. All facts and circumstances concerning any negative comments concerning the physical properties of the DuraSeal hydrogel, including without limitation the mechanical strength, hydrophilicity, pH, elasticity, and adhesion of the hydrogel.

52. All facts and circumstances concerning any complaints or negative comments regarding the delivery device provided with the DuraSeal product.

53. All facts and circumstances concerning the acquisition of Confluent Surgical, Inc. and its DuraSeal® product line by YOU, including financial analyses, valuations, strategic planning, and projections related to the acquisition of Confluent, past, current and future sales of the DuraSeal® product line, and the projected effect of the acquisition on sales of Plaintiffs' products (including any synergistic relationship between sales of any Covered Product and Complementary Products).

54. The size of the U.S. dural closure market and the market share of each of Plaintiffs' products within the U.S. dural closure market from 2006 to the present.

55. The Declaration of Curtis Lenox executed on September 13, 2015 and submitted as Exhibit 3 to Plaintiffs' Motion for a Preliminary Injunction ("the Declaration of Curtis Lenox").

56. All facts and circumstances concerning the "under-marketed" status of the DuraSeal® product line as referenced in paragraph 8 of the Declaration of Curtis Lenox.

57. All facts and circumstances concerning the "channel weakness" of "sales growth of the DuraSeal® product line under Covidien" as referenced in paragraph 9 of the Declaration of Curtis Lenox.

58. All facts and circumstances concerning YOUR use of "its specialty sales force to educate surgeons and hospitals about the clinical benefits of DuraSeal versus fibring glue and to

Case 1:15-cv-00819-LPS-CJB Document 53 Filed 12/01/15 Page 17 of 18 PageID #: 1791

offer DuraSeal as part of a complete portfolio of exclusive dural repair solutions to meet the needs of the entire dural closure market as referenced in paragraph 9 of the Declaration of Curtis Lenox.

59. All facts and circumstances concerning how and whether "[t]he efforts by Integra's specialty sales team along with Integra's significant investment in education and promotion have poised the DuraSeal® product line for substantial near-term growth" as referenced in paragraph 9 of the Declaration of Curtis Lenox.

60. All facts and circumstances concerning how "[s]hould HyperBranch be allowed to use this patented technology produce [sic] a similar PEG hydrogel product, DuraSeal would quickly become a commodity" as referenced in paragraph 10 of the Declaration of Curtis Lenox.

61. All facts and circumstances concerning YOUR diversion of "its efforts from promoting new growth of DuraSeal® use in the United States via education of individual surgeons and hospitals about the benefits of DuraSeal compared to fibrin glues to defending Integra's existing dural sealant business from the anticipated lower cost Hyperbranch [sic] products both at the GPO and individual hospital/doctor level" as referenced in paragraph 11 of the Declaration of Curtis Lenox.

62. All facts and circumstances concerning how and whether "many surgeons used [Adherus Autospray Dural Sealant] off label in the spine, resulting in a number of adverse events… [making] it extremely likely that inadvertent or intentional off-label use of the Adherus Autospray Dural Sealant in spinal procedures will cause patient injury (e.g., pain or paralysis)" as referenced in paragraph 13 of the Declaration of Curtis Lenox.

63. All documents concerning any of the foregoing topics, including, but not limited to all information required to authenticate such documents.

64. All persons with knowledge concerning the foregoing topics.

# Exhibit J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC,

Plaintiffs,

v.

HyperBranch Medical Technology, Inc.,

Defendant.

C.A. No. 15-819-LPS-CJB

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO HYPERBRANCH'S SECOND SET OF INTERROGATORIES (Nos. 7-8)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the District of Delaware, and subject to their rights to supplement these objections later in discovery, Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC (collectively "Plaintiffs," as well as "Integra," "Integra Sales," "Confluent," and "Incept," respectively) hereby object to Defendant HyperBranch Medical Technology's ("HyperBranch") Second Set of Interrogatories, including each and every definition, instruction, and interrogatory contained therein (collectively "HyperBranch's Second Set of Interrogatories"). The fact that Plaintiffs may eventually provide an answer to an interrogatory does not constitute an admission or acknowledgement that the interrogatory is proper, that the answers sought are within the bounds of discovery, or that requests for similar information will be treated in a similar fashion. Plaintiffs do not waive any objection by producing such documents, things, or answers, and Plaintiffs reserve the right to continue investigating these matters, to supplement their objections, and to object to future discovery on the same or related matters. Plaintiffs further reserve the right to object to the

admissibility of any answer produced pursuant to these interrogatories, in whole or in part, on any ground including without limitation materiality, relevance, and privilege.

**GENERAL OBJECTIONS**

Plaintiffs incorporate by reference their General Objections and Objections to Specific Definitions to HyperBranch's Requests for Production. Each of these General Objections is incorporated into the specific objections set forth below, whether or not separately set forth therein.

1. Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks to impose upon Plaintiffs any obligation or responsibility broader than, different from, or in addition to those obligations and requirements mandated by the Federal Rules of Civil Procedure, the Federal Rules of Evidence (collectively, the "Federal Rules"), and the Local Rules for the United States District Court for the District of Delaware (the "Local Rules").

2. Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law. Plaintiffs do not intend to produce such privileged or protected documents or information. To the extent that any document or information which is properly subject to any such privilege or protection is inadvertently produced in connection with an answer to an interrogatory, such inadvertent disclosure is not to be construed as a waiver of such privilege or protection, and such document and information, and all copies thereof, shall be returned to counsel for Plaintiffs, in accordance with Fed. R. Evid. 502(b), Fed. R. Civ. P. 26(b)(5)(B), and any relevant Order entered by the Court. Further, Plaintiffs will limit their privilege log to pre-lawsuit privileged or protected documents or information, if any exist.

3.     Plaintiffs object to each and every definition, instruction, and interrogatory to the extent they contain misstatements of fact and/or inaccurate assumptions.  Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it is overly broad, unduly burdensome, or oppressive.  Plaintiffs further object to each and every definition, instruction, and interrogatory to the extent it calls for information that is irrelevant to any claim or defense in this action.

4.     Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks information already in the possession, custody, or control of HyperBranch as being overly broad, unduly burdensome, expensive, and inconsistent with the Federal Rules.

5.     Plaintiffs object to each and every definition, instruction, and interrogatory as being unduly burdensome to the extent it seeks facts, documents, and/or information that is publicly available, unreasonably cumulative or duplicative, or already known and equally available to HyperBranch.

6.     Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it is vague, ambiguous, fails to describe the information sought with the required reasonable particularity, or is so unintelligible that Plaintiffs cannot ascertain what information is responsive.

7.     Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks to impose upon Plaintiffs an obligation to investigate or discover information, materials, or documents from any entity other than Plaintiffs, including, but not limited to, third parties or non-parties.

8.     Plaintiffs' agreement to furnish information in response to HyperBranch's Interrogatories shall not be deemed to constitute an admission as to its relevancy, nor is it intended to waive any right to object to its admissibility at trial.

9. Plaintiffs object to each interrogatory that requests "each," "every," or "all" (and to similar overly broad terms) information or documents as overbroad and unduly burdensome. Plaintiffs will undertake a diligent and reasonable investigation to gather information in their possession, custody, or control that is responsive to the non-objectionable portions of each interrogatory.

10. Plaintiffs object to each interrogatory to the extent that it seeks discovery which is irrelevant or immaterial to resolution of Plaintiffs' Motion for Preliminary Injunction as overbroad, unduly burdensome, and irrelevant. Plaintiffs will only provide information in their possession, custody, or control that is relevant to the preliminary injunction phase of this case and/or the six (6) claims selected for the preliminary injunction phase.

11. Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it contains subparts, is compound and conjunctive, and is otherwise inconsistent with or exceeds the number of interrogatories permitted by any relevant Order entered by the Court. The Court has set a limit of 10 interrogatories during the preliminary injunction phase of this case. In answering any or all of these Interrogatories or subparts, Plaintiffs do so without waiver of their right to object to and refuse to answer any future Interrogatories on the grounds that such Interrogatories are in excess of the number permitted by the Federal and Local Rules and the Court's Scheduling Order.

12. In addition to these General Objections, Plaintiffs have specific objections as set forth below. By stating these specific objections, Plaintiffs do not waive any of the General Objections that may also be applicable to specific interrogatories.

**OBJECTIONS TO SPECIFIC DEFINITIONS**

1. Plaintiffs object to the definition of the terms "Plaintiffs," "You," and "Yours" to the extent those terms are overly broad and purport to require Plaintiffs to provide information

and/or documents that are not currently within their possession, custody, or control. Plaintiffs object to the definitions of the terms "Plaintiffs," "You," and "Yours" as seeking the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law, in that the definitions specifically cover "attorneys."

2.      Plaintiffs object to the definition of "Related Application" as overbroad, unduly burdensome, and irrelevant to any issue in this matter as "any application incorporating by reference the Asserted Patents" purports to require Plaintiffs to provide information and/or documents that are not currently within their possession, custody, or control.

3.      Plaintiffs object to the definition of "Covered Products" as overbroad, unduly burdensome, and irrelevant to any issue in this matter as "any past, current, or future technology, product, or prototype, release or unreleased, that You believe or have believed embodies, falls within the scope of, or is made or practiced in accordance with the subject matter of any invention claimed in the Asserted Patents, including but not limited to Plaintiffs' DuraSeal® product line, any unaccused products of Defendant, and any products made, used, or sold by any Third Party" include information, products, and/or documents that are not currently within the possession, custody, or control of Plaintiffs. Indeed, this definition explicitly includes documents and things which are in the exclusive control of Defendant and Third Parties, as well as documents and things from the "future."

4.      Plaintiffs object to the definitions of the terms "Document" and "Thing" to the extent that the definitions purport to impose a meaning broader than the definition provided in the Federal Rules.

## OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

**INTERROGATORY NO. 7.** For each asserted claim of the Patents-in-Suit, state in full your contentions in response to each contention of invalidity by Defendant in this action, provide all of the factual and legal bases for your contentions, and identify all documents and evidence you claim supports your contentions.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 7:** Plaintiffs

incorporate their General Objections and Objections to Specific Definitions by reference.

Plaintiffs object to this interrogatory to the extent it seeks the disclosure of information protected

by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or

any other applicable privilege or protection, as provided by any applicable law.  Plaintiffs object

to this interrogatory to the extent that it seeks discovery which is irrelevant or immaterial to

resolution of Plaintiffs' Motion for Preliminary Injunction as overbroad, unduly burdensome,

and irrelevant, for at least the reason that it seeks information regarding all asserted claims rather

than the six selected for the preliminary injunction phase of this case.  Plaintiffs further object to

the interrogatory as overbroad and unduly burdensome at this preliminary stage of the litigation

in that it requests identification of "all of the factual and legal bases for your contentions, and

identify all documents and evidence you claim supports your contentions."  Plaintiffs further

object to this Interrogatory to the extent it contains subparts which, together with the other

Interrogatories, exceed the limit under the Federal Rules.  Plaintiffs object to this interrogatory to

the extent that it seeks a legal conclusion or legal analysis.  Plaintiffs object to the interrogatory

to the extent that it seeks expert testimony or information that requires expert analysis to identify

or obtain.  Plaintiffs object to this interrogatory to the extent it calls for legal argument and/or

expert testimony, which Plaintiffs may provide, in due course and in accordance with the

Scheduling Order entered by the Court in this matter. (D.I. 28).  Plaintiffs further object to this

interrogatory as premature and potentially irrelevant because it requires Plaintiffs to provide the

basis for responsive contentions before Defendant has yet to provide the complete factual basis for its contentions for which it bears the burden of proof, even though Defendant's contentions were due under the Scheduling Order prior to the current responses of Plaintiffs.

Subject to and without waiving its objections, Plaintiffs respond that they are willing to meet and confer to discuss appropriately narrowing the scope of information requested in this interrogatory. Furthermore, it is HyperBranch's burden to invalidate patents, not Plaintiffs to prove the patents are valid. HyperBranch has not yet served sufficient invalidity contentions, interrogatory answers, expert reports, or any other discovery or disclosures that show by clear and convincing evidence that each claim limitation is allegedly disclosed in the "prior art." Also, "prior art" previously identified by Plaintiffs was disclosed to the USPTO during the patent filing process, so the UPTO confirmed such identified "prior art" was not relevant. The file history also contains a detailed record as to why the patents issued over the "prior art." Plaintiffs further respond that they have produced non-privileged documents pursuant to Federal Rule of Civil Procedure 33(d) from which HyperBranch may derive or ascertain information responsive to this interrogatory, namely the prosecution histories of the patents-in-suit. Plaintiffs reserve the right to supplement this response as additional facts arise in discovery in accordance with the Rules and the Court's Scheduling Order.

**INTERROGATORY NO. 8.** For each asserted claim of the Patents-in-Suit, identify the priority date that you allege for the claim, provide all of the factual and legal bases for that contention, and identify all documents and evidence you claim supports that contention.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8:** Plaintiffs object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law. Plaintiffs object to this interrogatory to the extent that it seeks discovery which is irrelevant or immaterial to resolution

of Plaintiffs' Motion for Preliminary Injunction as overbroad, unduly burdensome, and irrelevant, for at least the reason that it seeks information regarding all asserted claims rather than the six selected for the preliminary injunction phase of this case.  Plaintiffs further object to the interrogatory as overbroad and unduly burdensome and premature at this stage of the litigation in that it requests identification of "all of the factual and legal bases for that contention, and identify all documents and evidence you claim supports that contention."  Plaintiffs further object to this Interrogatory to the extent it contains subparts which, together with the other Interrogatories, exceed the limit under the Federal Rules.  Plaintiffs object to the extent the interrogatory seeks information already in the possession, custody, or control of HyperBranch as being overly broad, unduly burdensome, expensive, and inconsistent with the Federal Rules.

Plaintiffs further object to this interrogatory to the extent it is duplicative of Interrogatory No. 1.  Plaintiffs also object to this interrogatory as premature, irrelevant, overbroad, and unduly burdensome as Defendant's present invalidity contentions do not provide the complete factual basis for its invalidity contentions for which it bears the burden of proof, even though Defendant's contentions were due under the Scheduling Order prior to the current response of Plaintiffs  and fail to place in dispute the respective priority date of any of the six claims selected for the preliminary injunction phase of the current matter.  Plaintiffs also object to this interrogatory to the extent it calls for legal argument and/or expert testimony, which Plaintiffs may provide, in due course and in accordance with the Scheduling Order entered by the Court in this matter. (D.I. 28).

Subject to and without waiving its objections, Plaintiffs respond that based on present information, Plaintiffs presently intend to rely on the following priority dates: U.S. Patent No. 6,566,406 – December 4, 1998; U.S. Patent No. 7,009,034 – September 23, 1996; U.S. Patent No. 7,332,566 – September 23, 1996; U.S. Patent No. 7,592,418 – September 23, 1996; U.S.

Patent No. 8,003,705 – May 29, 2008; U.S. Patent No. 8,535,705 – December 4, 1998. Plaintiffs further respond that they have produced non-privileged documents pursuant to Federal Rule of Civil Procedure 33(d) from which HyperBranch may derive or ascertain information responsive to this interrogatory, namely the patents-in-suit, the patents and applications from which the patents-in-suit claim priority, and prosecution histories of these patents and patent applications. Plaintiffs reserve the right to supplement this response as additional facts arise in discovery in accordance with the Rules and the Court's Scheduling Order.

AS TO OBJECTIONS ONLY:

Dated: December 30, 2015

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
James L. Higgins (#5021) [jhiggins@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC*

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

**CERTIFICATE OF SERVICE**

I, Karen L. Pascale, Esquire, hereby certify that on December 30, 2015, I caused true and correct copies of the foregoing document to be served upon the following counsel of record by e-mail:

***For Defendant HyperBranch Medical Technology, Inc.:***

Thomas C. Grimm — tgrimm@mnat.com
Jeremy A. Tigan — jtigan@mnat.com
Stephen J. Kraftschik — skraftschik@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

COOLEY LLP — zHyperBranchIntegra@cooley.com

Jonathan Graves
Kevin Lake
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656

Adam Pivovar
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004

*/s/ Karen L. Pascale*
Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
*Attorneys for Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical Inc., and Incept LLC*

# Exhibit K

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HyperBranch Medical Technology, Inc.,<br><br>Defendant. | C.A. No. 15-819-LPS-CJB |

**PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSE TO HYPERBRANCH'S INTERROGATORY NO. 8**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the District of Delaware, and subject to their rights to supplement these objections later in discovery, Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC (collectively "Plaintiffs," as well as "Integra," "Integra Sales," "Confluent," and "Incept," respectively) hereby supplement their response to Defendant HyperBranch Medical Technology's ("HyperBranch") Interrogatory No. 8. The fact that Plaintiffs are supplementing their response to any interrogatory does not constitute an admission or acknowledgement that the interrogatory is proper, that the answers sought are within the bounds of discovery, or that requests for similar information will be treated in a similar fashion. Plaintiffs, in supplementing their responses, do not waive any objection by producing such documents, things, or answers, and Plaintiffs reserve the right to continue investigating these matters, to supplement their objections and responses, and to object to future discovery on the same or related matters. Plaintiffs further reserve the right to object to the

admissibility of any answer produced pursuant to these interrogatories, in whole or in part, on any ground including without limitation materiality, relevance, and privilege

## GENERAL OBJECTIONS

Plaintiffs incorporate by reference their General Objections and Objections to Specific Definitions to HyperBranch's Requests for Production. Each of these General Objections is incorporated into the specific objections set forth below, whether or not separately set forth therein.

1. Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks to impose upon Plaintiffs any obligation or responsibility broader than, different from, or in addition to those obligations and requirements mandated by the Federal Rules of Civil Procedure, the Federal Rules of Evidence (collectively, the "Federal Rules"), and the Local Rules for the United States District Court for the District of Delaware (the "Local Rules").

2. Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law. Plaintiffs do not intend to produce such privileged or protected documents or information. To the extent that any document or information which is properly subject to any such privilege or protection is inadvertently produced in connection with an answer to an interrogatory, such inadvertent disclosure is not to be construed as a waiver of such privilege or protection, and such document and information, and all copies thereof, shall be returned to counsel for Plaintiffs, in accordance with Fed. R. Evid. 502(b), Fed. R. Civ. P. 26(b)(5)(B), and any relevant Order entered by the Court. Further, Plaintiffs will limit their privilege log to pre-lawsuit privileged or protected documents or information, if any exist.

3.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent they contain misstatements of fact and/or inaccurate assumptions.  Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it is overly broad, unduly burdensome, or oppressive.  Plaintiffs further object to each and every definition, instruction, and interrogatory to the extent it calls for information that is irrelevant to any claim or defense in this action.

4.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks information already in the possession, custody, or control of HyperBranch as being overly broad, unduly burdensome, expensive, and inconsistent with the Federal Rules.

5.      Plaintiffs object to each and every definition, instruction, and interrogatory as being unduly burdensome to the extent it seeks facts, documents, and/or information that is publicly available, unreasonably cumulative or duplicative, or already known and equally available to HyperBranch.

6.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it is vague, ambiguous, fails to describe the information sought with the required reasonable particularity, or is so unintelligible that Plaintiffs cannot ascertain what information is responsive.

7.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks to impose upon Plaintiffs an obligation to investigate or discover information, materials, or documents from any entity other than Plaintiffs, including, but not limited to, third parties or non-parties.

8.      Plaintiffs' agreement to furnish information in response to HyperBranch's Interrogatories shall not be deemed to constitute an admission as to its relevancy, nor is it intended to waive any right to object to its admissibility at trial.

9. Plaintiffs object to each interrogatory that requests "each," "every," or "all" (and to similar overly broad terms) information or documents as overbroad and unduly burdensome. Plaintiffs will undertake a diligent and reasonable investigation to gather information in their possession, custody, or control that is responsive to the non-objectionable portions of each interrogatory.

10. Plaintiffs object to each interrogatory to the extent that it seeks discovery which is irrelevant or immaterial to resolution of Plaintiffs' Motion for Preliminary Injunction as overbroad, unduly burdensome, and irrelevant. Plaintiffs will only provide information in their possession, custody, or control that is relevant to the preliminary injunction phase of this case and/or the six (6) claims selected for the preliminary injunction phase.

11. Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it contains subparts, is compound and conjunctive, and is otherwise inconsistent with or exceeds the number of interrogatories permitted by any relevant Order entered by the Court. The Court has set a limit of 10 interrogatories during the preliminary injunction phase of this case. In answering any or all of these Interrogatories or subparts, Plaintiffs do so without waiver of their right to object to and refuse to answer any future Interrogatories on the grounds that such Interrogatories are in excess of the number permitted by the Federal and Local Rules and the Court's Scheduling Order.

12. In addition to these General Objections, Plaintiffs have specific objections as set forth below. By stating these specific objections, Plaintiffs do not waive any of the General Objections that may also be applicable to specific interrogatories.

**OBJECTIONS TO SPECIFIC DEFINITIONS**

1. Plaintiffs object to the definition of the terms "Plaintiffs," "You," and "Yours" to the extent those terms are overly broad and purport to require Plaintiffs to provide information

and/or documents that are not currently within their possession, custody, or control. Plaintiffs object to the definitions of the terms "Plaintiffs," "You," and "Yours"  as seeking the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law, in that the definitions specifically cover "attorneys."

2.       Plaintiffs object to the definition of "Related Application" as overbroad, unduly burdensome, and irrelevant to any issue in this matter as "any application incorporating by reference the Asserted Patents" purports to require Plaintiffs to provide information and/or documents that are not currently within their possession, custody, or control.

3.       Plaintiffs object to the definition of "Covered Products" as overbroad, unduly burdensome, and irrelevant to any issue in this matter as "any past, current, or future technology, product, or prototype, release or unreleased, that You believe or have believed embodies, falls within the scope of, or is made or practiced in accordance with the subject matter of any invention claimed in the Asserted Patents, including but not limited to Plaintiffs' DuraSeal® product line, any unaccused products of Defendant, and any products made, used, or sold by any Third Party" include information, products, and/or documents that are not currently within the possession, custody, or control of Plaintiffs. Indeed, this definition explicitly includes documents and things which are in the exclusive control of Defendant and Third Parties, as well as documents and things from the "future."

4.       Plaintiffs object to the definitions of the terms "Document" and "Thing" to the extent that the definitions purport to impose a meaning broader than the definition provided in the Federal Rules.

**OBJECTIONS AND SUPPLEMENTAL RESPONSES TO SPECIFIC INTERROGATORIES**

**INTERROGATORY NO. 8.** For each asserted claim of the Patents-in-Suit, identify the priority date that you allege for the claim, provide all of the factual and legal bases for that contention, and identify all documents and evidence you claim supports that contention.

**SUPPLEMENTAL OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8:**

Plaintiffs object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law. Plaintiffs object to this interrogatory to the extent that it seeks discovery which is irrelevant or immaterial to resolution of Plaintiffs' Motion for Preliminary Injunction as overbroad, unduly burdensome, and irrelevant, for at least the reason that it seeks information regarding all asserted claims rather than the six selected for the preliminary injunction phase of this case. Plaintiffs further object to the interrogatory as overbroad and unduly burdensome and premature at this stage of the litigation in that it requests identification of "all of the factual and legal bases for that contention, and identify all documents and evidence you claim supports that contention." Plaintiffs further object to this Interrogatory to the extent it contains subparts which, together with the other Interrogatories, exceed the limit under the Federal Rules. Plaintiffs object to the extent the interrogatory seeks information already in the possession, custody, or control of HyperBranch as being overly broad, unduly burdensome, expensive, and inconsistent with the Federal Rules.

Plaintiffs further object to this interrogatory to the extent it is duplicative of Interrogatory No. 1. Plaintiffs also object to this interrogatory as premature, irrelevant, overbroad, and unduly burdensome as Defendant's present invalidity contentions do not provide the complete factual basis for its invalidity contentions for which it bears the burden of proof, even though

Defendant's contentions were due under the Scheduling Order prior to the current response of Plaintiffs and fail to place in dispute the respective priority date of any of the six claims selected for the preliminary injunction phase of the current matter.   Plaintiffs also object to this interrogatory to the extent it calls for legal argument and/or expert testimony, which Plaintiffs may provide, in due course and in accordance with the Scheduling Order entered by the Court in this matter. (D.I. 28).

Subject to and without waiving its objections, Plaintiffs respond that based on present information, Plaintiffs presently allege the following priority dates: U.S. Patent No. 6,566,406 – at least as early as December 4, 1998; U.S. Patent No. 7,009,034 – at least as early as September 23, 1996; U.S. Patent No. 7,332,566 – at least as early as September 23, 1996; U.S. Patent No. 7,592,418 – at least as early as September 23, 1996; U.S. Patent No. 8,003,705 – at least as early as November 9, 2001; U.S. Patent No. 8,535,705 – at least as early as December 4, 1998. Plaintiffs further respond that they have produced non-privileged documents pursuant to Federal Rule of Civil Procedure 33(d) from which HyperBranch may derive or ascertain information responsive to this interrogatory, namely the patents-in-suit, the patents and applications from which the patents-in-suit claim priority, and prosecution histories of these patents and patent applications.  Plaintiffs reserve the right to supplement this response as additional facts arise in discovery in accordance with the Rules and the Court's Scheduling Order.

AS TO OBJECTIONS ONLY:

Dated: January 13, 2016

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
James L. Higgins (#5021) [jhiggins@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC*

**CERTIFICATE OF SERVICE**

I, Karen L. Pascale, Esquire, hereby certify that on January 13, 2016, I caused true and correct copies of the foregoing document to be served upon the following counsel of record by e-mail:

***For Defendant HyperBranch Medical Technology, Inc.:***

Thomas C. Grimm — tgrimm@mnat.com
Jeremy A. Tigan — jtigan@mnat.com
Stephen J. Kraftschik — skraftschik@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

COOLEY LLP — zHyperBranchIntegra@cooley.com

Jonathan Graves
Kevin Lake
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656

Adam Pivovar
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004

*/s/ Karen L. Pascale*
Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
*Attorneys for Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical Inc., and Incept LLC*