# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC, | |
| Plaintiffs, | |
| v. | C.A. No.  15-819-LPS-CJB |
| HYPERBRANCH MEDICAL TECHNOLOGY, INC., | |
| Defendant. | |

**PLAINTIFFS' OBJECTIONS AND ANSWERS
TO HYPERBRANCH'S FIRST SET OF INTERROGATORIES (NOS. 1-7)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the District of Delaware, and subject to their rights to supplement these objections later in discovery, Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC (collectively "Plaintiffs," as well as "Integra," "Integra Sales," "Confluent," and "Incept," respectively) hereby object to Defendant HyperBranch Medical Technology's ("HyperBranch") First Set of Interrogatories served on September 23, 2016, including each and every definition, instruction, and interrogatory contained therein (collectively "HyperBranch's First Set of Interrogatories").  The fact that Plaintiffs provide an answer to an interrogatory does not constitute an admission or acknowledgement that the interrogatory is proper, that the answers sought are within the bounds of discovery, or that requests for similar information will be treated in a similar fashion. Plaintiffs do not waive any objection by producing such documents, things, or answers, and Plaintiffs reserve the right to continue investigating these matters, to supplement their objections, and to object to future discovery on the same or related matters.  Plaintiffs further reserve the

right to object to the admissibility of any answer produced pursuant to these interrogatories, in whole or in part, on any ground including without limitation materiality, relevance, and privilege.

## GENERAL OBJECTIONS

Plaintiffs incorporate by reference their General Objections and Objections to Specific Definitions to HyperBranch's Requests for Production.  Each of these General Objections is incorporated into the specific objections set forth below, whether or not separately set forth therein.

1.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks to impose upon Plaintiffs any obligation or responsibility broader than, different from, or in addition to those obligations and requirements mandated by the Federal Rules of Civil Procedure, the Federal Rules of Evidence (collectively, the "Federal Rules"), and the Local Rules for the United States District Court for the District of Delaware (the "Local Rules").

2.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law.  Plaintiffs do not intend to produce such privileged or protected documents or information.  To the extent that any document or information which is properly subject to any such privilege or protection is inadvertently produced in connection with an answer to an interrogatory, such inadvertent disclosure is not to be construed as a waiver of such privilege or protection, and such document and information, and all copies thereof, shall be returned to counsel for Plaintiffs, in accordance with Fed. R. Evid. 502(b), Fed. R. Civ. P. 26(b)(5)(B), and any relevant Order entered by the Court.  Further,

Plaintiffs will limit their privilege log to pre-lawsuit privileged or protected documents or information, if any exist.

3.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent they contain misstatements of fact and/or inaccurate assumptions.  Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it is overly broad, unduly burdensome, or oppressive.  Plaintiffs further object to each and every definition, instruction, and interrogatory to the extent it calls for information that is irrelevant to any claim or defense in this action.

4.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks information already in the possession, custody, or control of HyperBranch as being overly broad, unduly burdensome, expensive, and inconsistent with the Federal Rules.

5.      Plaintiffs object to each and every definition, instruction, and interrogatory as being unduly burdensome to the extent it seeks facts, documents, and/or information that is publicly available, unreasonably cumulative or duplicative, or already known and equally available to HyperBranch.

6.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it is vague, ambiguous, fails to describe the information sought with the required reasonable particularity, or is so unintelligible that Plaintiffs cannot ascertain what information is responsive.

7.      Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it seeks to impose upon Plaintiffs an obligation to investigate or discover information, materials, or documents from any entity other than Plaintiffs, including, but not limited to, third parties or non-parties.

01:19460568.1

8.     Plaintiffs' agreement to furnish information in response to HyperBranch's Interrogatories shall not be deemed to constitute an admission as to its relevancy, nor is it intended to waive any right to object to its admissibility at trial.

9.     Plaintiffs object to each interrogatory that requests "each," "every," or "all" (and to similar overly broad terms) information or documents as overbroad and unduly burdensome. Plaintiffs will undertake a diligent and reasonable investigation to gather information in their possession, custody, or control that is responsive to the non-objectionable portions of each interrogatory.

10.    Plaintiffs object to each and every definition, instruction, and interrogatory to the extent it contains subparts, is compound and conjunctive, and is otherwise inconsistent with or exceeds the number of interrogatories permitted by any relevant Order entered by the Court. The Court has set a limit of 25 interrogatories for each side. In answering any or all of these Interrogatories or subparts, Plaintiffs do so without waiver of their right to object to and refuse to answer any future Interrogatories on the grounds that such Interrogatories are in excess of the number permitted by the Federal and Local Rules and the Court's Scheduling Order.

11.    In addition to these General Objections, Plaintiffs have specific objections as set forth below. By stating these specific objections, Plaintiffs do not waive any of the General Objections that may also be applicable to specific interrogatories.

## OBJECTIONS TO SPECIFIC DEFINITIONS

1.     Plaintiffs object to the definition of the terms "Plaintiffs," "You," and "Yours" to the extent those terms are overly broad and purport to require Plaintiffs to provide information and/or documents that are not currently within their possession, custody, or control. Plaintiffs object to the definitions of the terms "Plaintiffs," "You," and "Yours" as seeking the disclosure

of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law, in that the definitions specifically cover "attorneys."

2.      Plaintiffs object to the definition of "Accused Products" as overbroad, unduly burdensome, and irrelevant to any issue in this matter as "any and all products, activities, services, processes, systems, apparatuses, or things that Plaintiffs accuse of infringing the Asserted Patents in this Action, including Adherus Autospray Dural Sealant, Adherus Dural Sealant, and Adherus Spinal Sealant" include information, products, and/or documents that are not currently within the possession, custody, or control of Plaintiffs. Indeed, this definition explicitly includes documents and things which are in the exclusive control of Defendant and Third Parties.

3.      Plaintiffs object to the definition of the term "each" to the extent that the definition purports to impose a meaning broader than the definition provided in the Federal Rules.

4.      Plaintiffs object to the definition of "Prior Art" as overbroad, unduly burdensome, and irrelevant to any issue in this matter as "all things, patents, publications, disclosures, sales, or other acts or occurrences included within the broadest meaning of 35 U.S.C. § 102 (or any subpart thereof) and 35 U.S.C. § 103" and "publications, patents, patent applications, inventions by others, uses, sales or offers for sale, and disclosures" purports to require Plaintiffs to provide information and/or documents that are not currently within their possession, custody, or control.

## OBJECTIONS AND ANSWERS TO SPECIFIC INTERROGATORIES

**INTERROGATORY NO. 1 [9].** On a claim-by-claim basis for each and every claim of the Asserted Patents, identify each individual who You contend contributed to the conception of the invention set forth in each claim, including all supporting facts and evidence of the contribution to the conception of each claim by the identified individual(s) and the dates of such contribution(s).

01:19460568.1

5

## OBJECTION AND ANSWER TO INTERROGATORY NO. 1 [9]:

Plaintiffs incorporate their General Objections and Objections to Specific Definitions by reference. Plaintiffs object to this interrogatory to the extent it purports to be a single interrogatory as it contains multiple and distinct subparts. Plaintiffs further object to this interrogatory to the extent it purports to be HyperBranch's first interrogatory. HyperBranch previously served Interrogatory Nos. 1-6 on October 23, 2015, and Interrogatory Nos. 7-8 on December 9, 2015. Thus, this interrogatory is HyperBranch's ninth interrogatory. Plaintiffs further object to this interrogatory as being unreasonably cumulative or duplicative, or already known to HyperBranch. *See* Interrogatory No. 1 served by HyperBranch on October 23, 2015. Plaintiffs further object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law. Plaintiffs further object to the interrogatory as overbroad and unduly burdensome in that it requests identification of "all supporting facts and evidence of the contribution to the conception of each claim." Plaintiffs further object to this interrogatory as premature and irrelevant to the extent it is a contention interrogatory that seeks to impose a burden on Plaintiffs to provide a rebuttal position on conception of the inventions claimed in the patents-in-suit prior to the provision of any contention of invalidity of the claims that Defendant is required to provide on November 4, 2016. Validity, including validity of conception and proper inventorship is presumed by the issuance of the patent. Defendant bears the burden of establishing through its invalidity contentions that there is an issue as to validity that would require Plaintiffs to prove an earlier date of invention or confirm the contribution of a listed inventor to the claims of the patents-in-suit. To date, Defendants validity contentions have not met that burden. Plaintiffs

01:19460568.1

also object to this interrogatory to the extent it calls for legal argument and/or expert testimony, which Plaintiffs may provide, in due course and in accordance with the Court's Scheduling Order.

Subject to and without waiving its objections, Plaintiffs incorporate by reference their response to Interrogatory No. 1 served on November 13, 2015 and all supplements thereto and the Rebuttal Expert Report of Dr. Jimmy Mays and further respond that based on present information Chandrashekhar P. Pathak, Amarpreet S. Sawhney, and Peter G. Edelman contributed to the conception of one or more claims of the '034 Patent, the '406 Patent, the '5,705 Patent, the '566 Patent and the '418 Patent.  Plaintiffs further respond that based on present information Amarpreet S. Sawhney, Steven Bennett, and Peter G. Edelman contributed to the conception of one or more claims of the '3,705 Patent.  Defendants' present invalidity contentions do not place in dispute the conception or the named inventor's individual contributions to conception of any of the claims. Accordingly, Plaintiffs presently intend to rely on the effective filing date for each of patents-in-suit (including those patents and patent applications to which priority is claimed), including any evidence presented during prosecution of the patents-in-suit (including those patents and patent applications to which priority is claimed), the recitation of the named inventors on the face of each of the patents-in-suit, and the prior sworn deposition testimony (including exhibits used in those depositions) in this matter of the named inventors to identify the dates and individuals contributing to the conception of each of the claims of the patents-in-suit and the prior sworn testimony and multiple expert reports, rebuttal expert reports, and/or declarations of Dr. Jimmy Mays that have previously been provided in this matter.  Plaintiffs further respond that they have produced non-privileged documents pursuant to Federal Rule of Civil Procedure 33(d) (including the patents-in-suit, the

01:19460568.1

patents and applications from which the patents-in-suit claim priority, the prosecution histories of these patents and patent applications, and the laboratory notebooks and the reports summarizing the laboratory work and notebooks of the inventors and individuals working under their direction (*See, e.g.,* Experimental Reports or Technical Documents having an ER[###] or TD-[###] identification)) from which HyperBranch may derive or ascertain information responsive to this interrogatory.  Investigation of the facts is ongoing and Plaintiffs reserve the right to supplement this response to identify additional information and/or documents as more facts arise in discovery or as Defendant's invalidity contentions are fully and completely provided, in accordance with the Rules.

**INTERROGATORY NO. 2 [10].** On a claim-by-claim basis for each and every claim of the Asserted Patents, identify what You contend to be the effective filing date for the claim, including all supporting facts and evidence for the identified effective filing date such as, without limitation, the specific page and lines of any prior filed applications that you contend supports Your identified effective filing date for each claim.

## OBJECTION AND ANSWER TO INTERROGATORY NO. 2 [10]:

Plaintiffs incorporate their General Objections and Objections to Specific Definitions by reference.  Plaintiffs object to this interrogatory to the extent it purports to be a single interrogatory as it contains multiple and distinct subparts.  Plaintiffs further object to this interrogatory to the extent it purports to be HyperBranch's second interrogatory.  HyperBranch previously served Interrogatory Nos. 1-6 on October 23, 2015, and Interrogatory Nos. 7-8 on December 9, 2015.  Thus, this interrogatory is HyperBranch's tenth interrogatory.  Plaintiffs further object to this interrogatory as being unreasonably cumulative or duplicative, or already known to HyperBranch.  *See* Plaintiffs' Responses and Supplemental Responses to Interrogatory Nos. 1 and 8 and Rebuttal Expert Report of Dr. Jimmy Mays, hereby incorporated by reference in their entirety.  Plaintiffs further object to this interrogatory to the extent it seeks the disclosure

of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law.   Plaintiffs further object to the interrogatory as overbroad and unduly burdensome and premature at this stage of the litigation in that it requests identification of "all of the factual and legal bases for that contention, and identify all documents and evidence you claim supports that contention."  ."  Plaintiffs further object to this interrogatory as premature and irrelevant to the extent it is a contention interrogatory that seeks to impose a burden on Plaintiffs to provide a rebuttal position on the effective filing date of each claim prior to the disclosure of any invalidity contention by the Defendant that puts at issue the effective filing date of any claim on which Defendant has the burden of proof and is required to provide its full and complete invalidity contentions.  Validity of the claims is presumed by the issuance of the patent. Defendant bears the burden of establishing through its invalidity contentions that there is an issue as to validity that would require Plaintiffs to prove an earlier effective filing date.  To date, Defendants validity contentions have not met that burden.  Plaintiffs further object to this Interrogatory to the extent it contains subparts which, together with the other Interrogatories, exceed the limit under the Federal Rules.  Plaintiffs also object to this interrogatory to the extent it calls for legal argument and/or expert testimony, which Plaintiffs may provide, in due course and in accordance with the Court's Scheduling Order.

Subject to and without waiving its objections, Plaintiffs rely on the disclosures provided in the patents-in-suit including the related U.S. applications provided on the front of each of the patents in suit to provide an effective filing date for each of the claims.  Particularly, the related U.S. applications listed on the face of the patents-in-suit show that the effective filing date for many of the limitations found in the claims of the patents-in-suit may extend back to at least as

early as December 4, 1998 and possibly as early as September 23, 1996. For example, many of the limitations claimed in the patents-in-suit can expressly be found in the text of the related U.S. applications. (*See, e.g.*, visualization agent, precursors, biodegradable polymers, biodegradable polymeric crosslinkers, nucleophilic functional groups, electrophilic functional groups, hydrogel film thickness, and many others). Plaintiffs further respond that they have produced non-privileged documents pursuant to Federal Rule of Civil Procedure 33(d) for which the burden of deriving or ascertaining the answer will be substantially the same for HyperBranch as it is for plaintiffs, namely the patents-in-suit, the patents and applications from which the patents-in-suit claim priority, and prosecution histories of these patents and patent applications.

Plaintiffs also identify Exhibits 57 and 58 to the previous deposition of the inventors along with the transcripts of those depositions (i.e., Amar Sawhney and Steven Bennett) as providing further information related to the effective filing date of the claims of the patents-in-suit. *See, e.g.*, Steve Bennett deposition transcript at pp. 147-48.

Investigation of the facts is ongoing and Plaintiffs reserve the right to supplement this response to identify additional information and/or documents as more facts arise in discovery and as rebuttal if Defendant meets its burden of setting forth a preliminary contention of invalidity that puts at issue the effective filing date of one or more claims of the patents-in-suit in accordance with the rules and the Scheduling Order in this matter..

**INTERROGATORY NO. 3 [11].** On a claim-by-claim basis, describe in detail the complete basis for Your contention that each Asserted Claim is not invalid in view of Defendant's invalidity contentions.

<u>**OBJECTION AND ANSWER TO INTERROGATORY NO. 3 [11]:**</u>

Plaintiffs incorporate their General Objections and Objections to Specific Definitions by reference. Plaintiffs object to this interrogatory to the extent it purports to be a single interrogatory as it contains multiple and distinct subparts. Plaintiffs further object to this

01:19460568.1

10

interrogatory to the extent it purports to be HyperBranch's third interrogatory. HyperBranch previously served Interrogatory Nos. 1-6 on October 23, 2015, and Interrogatory Nos. 7-8 on December 9, 2015. Thus, this interrogatory is HyperBranch's eleventh interrogatory. Plaintiffs further object to this interrogatory as being unreasonably cumulative or duplicative, or already known to HyperBranch. *See* Response to HyperBranch Interrogatory Nos. 4 and 7 and Rebuttal Expert Report of Dr. Jimmy Mays. Plaintiffs further object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law. Plaintiffs further object to the interrogatory as overbroad and unduly burdensome and premature at this stage of the litigation in that it requests identification of "describe in detail the complete basis for Your contention." Plaintiffs further object to this interrogatory as premature, irrelevant, overbroad, and unduly burdensome to the extent it is a contention interrogatory that seeks to impose a burden on Plaintiffs to provide a rebuttal position on the validity of each claim prior to the disclosure of any invalidity contention by the Defendant that puts at issue the validity of the claim which Defendant has the burden of proof and is required to provide its full and complete invalidity contentions. Validity of the claims is presumed by the issuance of the patent. Defendant bears the burden of establishing through its invalidity contentions that there is an issue as to validity that would require Plaintiffs to prove a rebuttal position. To date, Defendants validity contentions have not met that burden. Plaintiffs also object to this interrogatory as premature, irrelevant, overbroad, and unduly burdensome as Defendant's present invalidity contentions do not provide the complete factual basis for its invalidity contentions for which it bears the burden of proof. Plaintiffs also object to this

interrogatory to the extent it calls for legal argument and/or expert testimony, which Plaintiffs may provide, in due course and in accordance with the Court's Scheduling Order.

Investigation of the facts is ongoing and the Defendants have not provided their contentions sufficient to put at issue the presumption of validity accorded the claims of a duly issued patent.  Plaintiffs reserve the right to supplement this response to identify additional information and/or documents as more facts arise in discovery and in rebuttal to any properly asserted contention of invalidity initially raised by Defendants, to which it has the burden of proof, as required by the Rules and the Scheduling Order in this matter.

**INTERROGATORY NO. 4 [12].** Describe in detail all rights that have been held in the Asserted Patents, including a description of the histories of such rights, the persons or entities holding such rights, and all agreements and other documents reflecting such rights (identified by Bates numbers).

## OBJECTION AND ANSWER TO INTERROGATORY NO. 4 [12]:

Plaintiffs incorporate their General Objections and Objections to Specific Definitions by reference.  Plaintiffs object to this interrogatory to the extent it purports to be a single interrogatory as it contains multiple and distinct subparts.  Plaintiffs further object to this interrogatory to the extent it purports to be HyperBranch's fourth interrogatory.  HyperBranch previously served Interrogatory Nos. 1-6 on October 23, 2015, and Interrogatory Nos. 7-8 on December 9, 2015.  Thus, this interrogatory is HyperBranch's twelfth interrogatory.  Plaintiffs also object to this interrogatory to the extent it is overly broad and unduly burdensome as being duplicative of previous HyperBranch Interrogatory No. 5.  Plaintiffs further object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law.  Plaintiffs further object to the interrogatory as overbroad and unduly burdensome in that it requests that Plaintiffs "[d]escribe in

01:19460568.1

12

detail all rights that have been held in the Asserted Patents . . . and all agreements and other documents reflecting such rights."

Subject to and without waiving its objections, Plaintiffs respond by incorporating by reference in their entirety the previous responses and supplements thereto to HyperBranch Interrogatory No. 5. The original rights in the earliest priority documents set forth on the face of the patents-in-suit resided with Mr. Chandrashekhar P. Pathak and commenced as of the filing dates of each of the respective filing dates of the provisional applications identified on the faces of the patents-in-suit. These rights were transferred by Mr. Pathak on September 18, 1998. The last significant transfer of any rights in the patents in suit occurred in 2013, the same year where some rights in the patents-in-suit were effectively transferred to plaintiffs Integra LifeSciences Corp. and Integra LifeSciences Sales LLC via the Stock Purchase Agreement of Covidien Group S.A.R.L. by Integra Life Sciences Corporation. Plaintiffs further respond that that they have produced non-privileged documents pursuant to Federal Rule of Civil Procedure 33(d) for which the burden of ascertaining the above requested information is substantially the same for HyperBranch as it is for Plaintiffs. These documents include, for example, the documents identified in Plaintiffs Objections and Response to HyperBranch Interrogatory No. 5 (and supplemental responses thereto) along with the following documents: INT00294034-54, INT00650909-18, INT00651004-05, INT00704790-805, INT00637241-91, INT00477543-93, INT00289244-46, INT00481381-504, INT00289335-42, INT00283427-29, INT00289347-68, INT00289426-46, INT00284501-08, INT00289402-25, INT00704658-723, INT00704724-89, INT00635834-INT00636011, INT00294242-61, and INT00635902-61. Investigation of the facts is ongoing and Plaintiffs reserve the right to supplement this response to identify additional information and/or documents as more facts arise in discovery in accordance with the Rules

**INTERROGATORY NO. 5 [13].** Describe in detail the amount, method of calculation, and all facts and evidence supporting any calculation for any damages You claim in this Action, and specifically identify and explain the damages suffered by each particular Plaintiff.

## OBJECTION AND ANSWER TO INTERROGATORY NO. 5 [13]:

Plaintiffs incorporate their General Objections and Objections to Specific Definitions by reference.  Plaintiffs object to this interrogatory to the extent it purports to be a single interrogatory as it contains multiple and distinct subparts.  Plaintiffs further object to this interrogatory to the extent it purports to be HyperBranch's fifth interrogatory.  HyperBranch previously served Interrogatory Nos. 1-6 on October 23, 2015, and Interrogatory Nos. 7-8 on December 9, 2015.  Thus, this interrogatory is HyperBranch's thirteenth interrogatory.  Plaintiffs further object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law.  Plaintiffs also object to this interrogatory to the extent it constitutes a contention interrogatory that is overly broad, unduly burdensome, and premature at this stage of discovery.  Plaintiff further object to this Interrogatory as seeking information that is properly the subject of expert discovery and expert testimony in advance of the schedule set for the disclosure of expert reports and expert discovery as set forth in  the Scheduling Order entered by the Court.  Plaintiffs reserve the right to supplement this response to identify additional information and/or documents as more facts arise in discovery in accordance with the Rules.

Subject to and without waiver of the foregoing objections and general objections, Plaintiffs respond that such computations cannot be completed until full and complete information is obtained from Defendant.  In this case, damages cannot be computed by providing a monetary number as Plaintiffs damages includes aspects for which monetary damages are insufficient to account for the losses due to Defendant's infringing activity.  For infringement in

01:19460568.1

the United States, the monetary damages that only encompass a small portion of the total harm suffered by plaintiffs and would be equal to at least plaintiff's lost profits (or no less than a reasonable royalty) and damages outside of the United States are not less than a reasonable royalty in accordance with 35 U.S.C. §284.  Plaintiffs also believe that discovery will establish that this is a case of willful infringement due at least in part to Defendant's receiving notice of infringement in January 2015 and defendant willfully disregarding that notice coupled with Defendant's continuing and increasing infringement after receiving notice of infringement.  At least Defendant's willful infringement makes this an exceptional case which warrants Plaintiffs to recover up to 3 times their actual damages and their attorneys fees along with pre and post judgment interest and costs.  Investigation of the facts is ongoing and Plaintiffs reserve the right to supplement this response to identify additional information and/or documents as more facts arise in discovery in accordance with the Rules.

**INTERROGATORY NO. 6 [14].** Describe the complete factual and legal basis for Your assertions that any alleged infringement by Defendant is willful.

**<u>OBJECTION AND ANSWER TO INTERROGATORY NO. 6 [14]:</u>**

Plaintiffs incorporate their General Objections and Objections to Specific Definitions by reference.  Plaintiffs object to this interrogatory to the extent it purports to be HyperBranch's sixth interrogatory.  HyperBranch previously served Interrogatory Nos. 1-6 on October 23, 2015, and Interrogatory Nos. 7-8 on December 9, 2015.  Thus, this interrogatory is HyperBranch's fourteenth interrogatory.  Plaintiffs further object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law.  Plaintiffs further object to this Interrogatory as it constitutes a premature contention interrogatory that is overbroad and unduly burdensome and premature at this stage of

the litigation in that it requests identification of "the complete factual and legal basis for Your assertions that any alleged infringement is willful."  Subject to and without waiver of the foregoing specific and general objections, Plaintiffs respond that discovery will establish that this is a case of willful infringement due at least in part to Defendant's receiving notice of infringement in January 2015 and defendant willfully disregarding that notice coupled with Defendant's continuing and increasing infringement after receiving notice of infringement.  Plaintiffs further incorporate by reference their response to Interrogatory No. 13 as if fully recited herein. Investigation of the facts is ongoing and Plaintiffs reserve the right to supplement this response to identify additional information and/or documents as more facts arise in discovery in accordance with the Rules.

**INTERROGATORY NO. 7 [15].** Describe the complete factual and legal basis for Your assertion that this is an exceptional case under 35 U.S.C. § 285.

<u>**OBJECTION AND ANSWER TO INTERROGATORY NO. 7 [15]:**</u>

Plaintiffs incorporate their General Objections and Objections to Specific Definitions by reference.  Plaintiffs object to this interrogatory to the extent it purports to be HyperBranch's seventh interrogatory.  HyperBranch previously served Interrogatory Nos. 1-6 on October 23, 2015, and Interrogatory Nos. 7-8 on December 9, 2015.  Thus, this interrogatory is HyperBranch's fifteenth interrogatory.  Plaintiffs further object to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, attorney work-product doctrine, common interest privilege, or any other applicable privilege or protection, as provided by any applicable law.  Plaintiffs further object to the interrogatory as overbroad and unduly burdensome and premature at this stage of the litigation in that it requests identification of "the complete factual and legal basis for Your assertion."  Plaintiffs respond that this is an exceptional case at least because Defendants infringement has been willful and incorporate their

response to Interrogatory No. 13 as if set forth herein.  Investigation of the facts is ongoing and

Plaintiffs will supplement this response to identify additional information and/or documents as

more facts arise in discovery in accordance with the Rules.

AS TO OBJECTIONS ONLY:

DATED:  October 27, 2016

_/s/ Karen L. Pascale_

*An Attorney for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

Karen L. Pascale (#2903) [kpascale@ycst.com]
James L. Higgins (#5021) [jhiggins@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

Robert F. Altherr, Jr. [raltherr@bannerwitcoff.com]
Christopher B. Roth [croth@bannerwitcoff.com]
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki [jiwanicki@bannerwitcoff.com]
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason Shull [jshull@bannerwitcoff.com]
**BANNER & WITCOFF, LTD.**
Ten South Wacker
Suite 3000
Chicago, IL 60606
Telephone (312) 463-5000

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on October 27, 2016, I caused true and correct copies of the foregoing document to be served upon the following counsel of record by e-mail:

| |
|---|
| *For Defendant HyperBranch Medical Technology, Inc.:* |
| |
| Thomas C. Grimm                                                          tgrimm@mnat.com<br>Jeremy A. Tigan                                                             jtigan@mnat.com<br>Stephen J. Kraftschik                                           skraftschik@mnat.com<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347 |
| |
| COOLEY LLP                                    zHyperBranchIntegra@cooley.com |
| Jonathan G. Graves<br>Kevin A. Lake<br>Stephen C. Crenshaw<br>One Freedom Square<br>Reston Town Center<br>11951 Freedom Drive<br>Reston, VA 20190-5656 |
| Adam M. Pivovar<br>1299 Pennsylvania Avenue, NW<br>Suite 700<br>Washington, DC 20004 |
| Scott A. Sukenick<br>1114 Avenue of the Americas<br>New York, NY 10036-7798 |

/s/ Karen L. Pascale
Karen L. Pascale (#2903) [kpascale@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

01:17886261.1

EXHIBIT 2



Adam M. Pivovar                                                                                    Via Email
+1 202 842 7889
apivovar@cooley.com


November 2, 2016


Christopher B. Roth
Banner & Witcoff, Ltd.
1100 13th Street, NW
Suite 1200
Washington, DC 20005

**Re:  Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC v. Hyper Branch Medical Technology, Inc.**

Counsel,

I write following up on yesterday's meet-and-confer regarding Plaintiffs' failure to comply with its discovery obligations in this case.  We discussed Plaintiffs' deficient responses to HyperBranch's Interrogatory Nos. 1, 2, and 5.

With respect to Interrogatory No. 1, Plaintiffs' position is that they do not need to identify who contributed to the conception of each claimed invention on a claim-by-claim basis because the interrogatory constitutes an alleged "rebuttal contention interrogatory" for which no response is required until inventorship of the patents is put into dispute.  HyperBranch disagrees that the law permits Plaintiffs to refuse to provide the requested discovery as it is reasonably calculated to lead to the discovery of evidence.  Nor does HyperBranch agree that the interrogatory is a rebuttal contention interrogatory that requires inventorship to be placed into dispute before Plaintiffs are obligated to comply with their discovery obligations in this case.

Plaintiffs did not contend that they were unable to provide the information requested in interrogatory No. 1 on a claim-by-claim basis.  Plaintiffs' refusal to identify which of the named inventors contributed to the conception of the claims in the patents-in-suit on a claim-by-claim basis is apparently meant to prejudice HyperBranch by running out the clock on upcoming deadlines.  HyperBranch reserves its right to seek any relief from the present case schedule in view of Plaintiffs' unwillingness to comply with its discovery obligations.

Second, Plaintiffs stated that they would not respond to interrogatory No. 2 until mid-December.  That is simply untenable.  Once HyperBranch puts the priority issues of all of the 105 presently asserted claims into dispute in its invalidity contentions (which are due November 4),   Plaintiffs should provide a supplemental response to Interrogatory No. 2 within two weeks so that HyperBranch can reasonably consider Plaintiffs' positions prior to any additional deadlines in the case.  Please let us know if you will agree to this timeframe for your supplemental response.  Otherwise, again, HyperBranch reserves its right to seek any relief from the Court due to the prejudice that is caused by Plaintiffs' failure to timely comply with its discovery obligations in this case.

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700  Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

138677166



Christopher B. Roth
November 2, 2016
Page Two

Third, regarding Interrogatory No. 5, you stated that as of November 1, 2016, Plaintiffs have no factual evidence of any lost profits due to actual sales that were allegedly lost to sales by HyperBranch.  Rather, Plaintiffs are relying solely on the theory that the relevant market is only a "two party" market and that such lost sales are presumed under such circumstances.  If Plaintiffs have any evidence of any actual sales that have been lost to HyperBranch in its possession as of November 1, 2016, it should supplement its interrogatory response to identify any such lost sales to support its allegation of lost profit damages immediately.  Else, we will accept and hold you to your representation that no such evidence was known by Plaintiffs as of November 1, 2016.

Regards,

Adam M. Pivovar

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com

138677166

EXHIBIT 3



1100 13TH St. NW, Suite 1200
WASHINGTON, D.C. 20005-4051

TEL: 202-824-3000
FAX: 202-824-3001
www.bannerwitcoff.com

CHRISTOPHER ROTH
CRoth@bannerwitcoff.com

November 4, 2016

*Via Email (apivovar@cooley.com)*

Adam M. Pivovar, Ph.D.
Cooley LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC  20004-2400
apivovar@cooley.com

        Re:    **Integra LifeSciences Corp. et al v. HyperBranch Medical Technology,
               Inc. (C.A. No. 15-819-LPS-CJB)**

Adam,

        We disagree with HyperBranch's positions with respect Plaintiffs' responses to
Interrogatory Nos. 1 [9], 2 [10], and 5 [13], and with your characterization of the parties'
meet-and-confer with respect to those interrogatory responses.

        Plaintiffs have fully complied with their discovery obligations.  Plaintiffs' responses
to Interrogatory Nos. 1 [9], 2 [10], and 5 [13] are not deficient and provide no basis for
HyperBranch to seek relief from the current case schedule.

        With respect to Interrogatory No. 1 [9] and No. 2 [10], the law is clear that
HyperBranch has the burden of proving invalidity of the claims of the patents-in-suit.  As
discussed in the meet and confer, it is Plaintiffs' position that HyperBranch's Interrogatory
No. 1 [9] in effect seeks Plaintiffs' rebuttal contention regarding the validity of the inventors'
conception and reduction to practice for all the claims.  Similarly, Interrogatory No. 2 [10] in
effect seeks Plaintiffs' rebuttal contention regarding the effective filing dates of all of the
claims of the patents-in-suit.  As currently drafted, however, HyperBranch's invalidity
contentions do not put into dispute the named inventors' conception and contributions to any
claims, or the effective filing dates of the patents-in-suit.  In other words, HyperBranch is
improperly attempting to shift the burden of proof by asking Plaintiffs to disprove
preemptively an invalidity contention that has not yet been made.  Unless and until
HyperBranch provides invalidity contentions that put these issues in dispute, Interrogatory
Nos. 1 [9] and 2 [10], which seek "all supporting facts and evidence" on a claim-by-claim
basis, are premature, irrelevant, overly broad, and unduly burdensome.  If HyperBranch has
any case law or other support for its position  that Plaintiffs are obligated to provide this
information prior to being served with invalidity contentions that put into dispute the named
inventors' conception and contributions to any claims and the effective filing dates of the
patents-in-suit, please provide it immediately.

November 4, 2016
Page 2 of 2

Notwithstanding the above, Plaintiffs agreed that they would supplement their response to Interrogatory No. 2[10] as if it had been  served simultaneously with HyperBranch's invalidity contentions of November 4 (i.e., by December 8) so long as HyperBranch's invalidity contentions contain sufficient detail to put into dispute the effective filing dates of the patents-in-suit.  Plaintiffs are unaware of any basis allowing HyperBranch to arbitrarily reduce the time frame provided for Plaintiffs to answer or supplement a response to a rebuttal contention interrogatory simply by serving the rebuttal contention interrogatory prior to serving the contention itself.  If HyperBranch has any case law or other support for that proposition, please provide it immediately.

With respect to Interrogatory No. 5 [13], your statement that Plaintiffs have no factual evidence of lost profits is an inaccurate summary of Plaintiffs' statements during the meet and confer.  Specifically, Plaintiffs informed you that it is their current understanding that the relevant U.S. market at issue in this case is a two party market.  In a two party market, lost sales are presumed, such that each sale made by the accused infringer is a potential sale lost by the patent owner.  From that perspective, much of the evidence of lost sales is likely to be found in HyperBranch's own sales records.  As Plaintiffs further informed you, and as set forth in their response to Interrogatory No. 5 [13],  that this interrogatory is directed to information that is properly the subject of expert discovery and Plaintiffs will provide the requested information consistent with the dates in the Court's Scheduling Order for the disclosure of expert reports and expert discovery.

Regards,

Christopher Roth

cc:     Thomas C. Grimm (tgrimm@mnat.com)
        Karen Pascale (kpascale@ycst.com)

# EXHIBIT 4

1

```
 1              UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF DELAWARE
 3
 4   CALLWAVE COMMUNICATION LLC,  :  CA NO. 12-1701-RGA
 5                               :  12-1702,12-1703,
 6          Plaintiff,          :  12-1704, 12-1788,
 7                               :  13-711
 8   v.                          :  October 30, 2014
 9                               :
10   AT&T MOBILITY LLC, et al.,  :  8:38 o'clock p.m.
11                               :
12          Defendants.         :
13   ...........................:
14
15
16            TRANSCRIPT OF DISCOVERY DISPUTE
17      BEFORE THE HONORABLE RICHARD G. ANDREWS
18            UNITED STATES DISTRICT JUDGE
19
20
21   APPEARANCES:
22
23   For Plaintiff:   PEPPER HAMILTON LLP
24               BY:  EDMOND D. JOHNSON, ESQ
25               BY:  GREGORY S. BISHOP, ESQ
```

3

```
 1           For Defendant T-Mobile
 2
 3           MORGAN LEWIS & BOCKIUS
 4           BY:  COLM F. CONNOLLY, ESQ
 5           BY:  ANDREW C. WHITNEY, ESQ
 6           For Defendant BlackBerry
 7
 8           SEITZ ROSS ARONSTAM & MORITZ
 9           BY:  BENJAMIN J. SCHLADWEILER, ESQ
10              -and-
11           DENTONS LLP.
12           BY:  DANIEL A. VALENZUELA, ESQ
13           BY:  MARK C. NELSON, ESQ
14              -and-
15           NORTON ROSE & FULBRIGHT
16           BY:  JOSEPH P. ZAMMIT, ESQ
17           BY:  DANIEL S. LEVENTHAL, ESQ
18           For Defendant AT&T
19
20           SEITZ ROSS ARONSTAM & MORITZ
21           BY:  BENJAMIN J. SCHLADWEILER, ESQ.
22              -and-
23           WILEY REIN LLP
24           BY:  KARIN A HESSLER, ESQ.
25           BY:  KEVIN P. ANDERSON, ESQ.
```

2

```
 1             BY:  NOAH V. MALGERI, ESQ
 2             BY:  SUPARNA DATTA, ESQ
 3
 4
 5   For Defendants:   MORRIS, NICHOLS, ARSHT & TUNNELL
 6             BY:  KAREN JACOBS, ESQ
 7             BY:  STEPHEN J. KRAFTSCHIK, ESQ
 8                -and-
 9           DENTONS LLP
10             BY:  KIRK R. RUTHENBERG, ESQ
11           For Defendant Sprint
12
13           MORRIS, NICHOLS, ARSHT & TUNNELL
14             BY:  JACK B. BLUMENFELD, ESQ
15             BY:  PAUL SAINDON, ESQ
16                -and-
17           WINSTON & STRAWN
18             BY:  SCOTT R. SAMAY, ESQ
19           For Defendant Google
20
21           CONNOLLY GALLAGHER LLP
22             BY:  ARTHUR G. CONNOLLY, III, ESQ
23                -and-
24           DENTONS LLP
25             BY:  KIRK R. RUTHENBERG, ESQ
```

4

```
 1             BY:  ROBERT J. SCHEFFEL, ESQ
 2           For Defendant Verizon
 3
 4
 5   Court Reporter:     LEONARD A. DIBBS
 6             Official Court Reporter.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

5

1        P R O C E E D I N G S

2

3        THE COURT:  Good morning, everyone.  Please be seated.

4        This is the time when we're going to address some

08:37:06 5  issues that have arisen between the parties.

6        There are quite a few different issues, and some of

7   them, maybe all of them are briefed, and I have a couple of

8   questions on a couple of things.

9        But since I understand that you all want to get this

08:37:22 10  done, let me tell you -- in regards to Michael Craig, as I

11   understand it, the last dispute between the parties had some

12   sort of agreed-upon language, and CallWave was saying three

13   months, and Google was saying a year.

14        And, so, it seems to me that there is a need for a

08:37:52 15  Development Bar and really the only question is how long.  There

16   is no particular magic.  It's just a judgment call.

17        And, so, in that regard, I'm going to say six months,

18   all right?

19        MR. BISHOP:  Your Honor, there was a dispute over the

08:38:12 20  language itself.

21        THE COURT:  Oh, is there?

22        MR. BISHOP:  Yes.  We were suggesting the same language

23   that was in the prosecution bar that --

24        MR. BLUMENFELD:  We agreed to that language.  We will

08:38:24 25  just take out the parenthetical.

6

1        THE COURT:  Okay.  All right.

2        So, looking at the letter -- wait a second.

3        All right.

4        So looking at the letter that's from CallWave that is

08:38:44 5  dated October 28th, Docket Item 179 in the 12-1701 case, the

6   first thing that was raised by CallWave was the defendants' none

7   answers to collective Interrogatory No. 5.

8        I looked around in the papers that were attached with

9   CallWave's letter, and I didn't even see Interrogatory No. 5,

08:39:16 10  but I deduced from the answer, more or less, what it said.  It

11   seems to me it's grossly overbroad and combines every issue in

12   the case in one interrogatory, and I'm going to sustain the

13   defendants' position on that.

14        Okay.  So, the indemnification documents, am I correct

08:39:44 15  in thinking this is between AT&T and CallWave, and it has to do

16   with indemnification documents that relate to a case where there

17   is no indemnification litigation?

18        MR. ZAMMIT:  That's correct, your Honor.

19        THE COURT REPORTER:  And your name, sir?

08:40:04 20        MR. ZAMMIT:  Joseph Zammit.

21        THE COURT:  All right.

22        So, to the extent there is some argument about waiver

23   here, I don't think there has been a waiver.  And, frankly, I'm

24   surprised that CallWave was pursuing that argument.

08:40:14 25        In terms of the indemnification, is it the case that

7

1   -- has AT&T produced anything?

2        MR. ZAMMIT:  Yes, your Honor.

3        THE COURT:  What have you produced?

4        MR. ZAMMIT:  We've answered an interrogatory indicating

08:40:28 5  the parties from whom AT&T has sought indemnification, and it's

6   also produced the underlying contract in which the

7   indemnification provision appears.

8        THE COURT:  All right.

9        And, so, your position, Mr. --

08:40:44 10        MR. BISHOP:  Bishop.

11        THE COURT:  -- Bishop.  Thank you.  Sorry about that.

12        Your position, Mr. Bishop, is that besides getting

13   these contracts, that you should get whatever correspondence

14   that goes back and forth, because maybe one side or the other

08:41:04 15  has done something that can be used in admission against them in

16   terms of interpretation of these -- either interpretation of

17   these patents, scope, or some concession about product

18   infringing.

19        MR. BISHOP:  Or who's undertaking what actions.  Kind

08:41:20 20  of thing.

21        So, for example, they might be discussing, we're not

22   indemnified, because we don't do this part of it.  You do that

23   part.  That kind of thing.

24        THE COURT:  And, so, this is just a shot in the dark

08:41:25 25  that these things exist?

8

1        MR. BISHOP:  Well, it's -- we don't know if any exist.

2   They haven't told us that they exist.  But we're assuming there

3   was at least a letter going to them asking for indemnification

4   and a response back saying that there would be.

08:41:48 5        We had this same issue with respect to --

6        THE COURT:  To the other one?

7        MR. BISHOP:  Yes.

8        THE COURT:  So I guess what I'm wondering is, to the

9   extent you've asked for lots of different things, I think I'm

08:42:04 10  going to deny the request.

11        The initial letter that you write to each of these

12   companies that you contract with, or you think that you contract

13   with, they're not privileged, right?

14        MR. ZAMMIT:  Your Honor, they fall within the work-

08:42:22 15  product privilege.

16        First of all, we take the position that it's

17   irrelevant.

18        THE COURT:  Yes, yes, I got that.

19        MR. ZAMMIT:  We put this in the context that all of

08:42:28 20  this correspondence is between counsel.

21        THE COURT:  Well, you know, it's counsel doing business

22   for the corporation.

23        MR. ZAMMIT:  Right.  But whatever arguments, theories,

24   assessments, whatever, might be contained in that

08:42:40 25  correspondence.

9

1          First of all, it's not relevant, because the facts are
2     relevant.  There is no claim of indirect or joint infringement
3     in this case or any claim of willful infringement, so there is
4     no question of subjective intent or anything like that.  so
08:42:56 5     whether or not there's infringement is really a completely
6     separate issue from whatever plaintiff counsel may have taken.
7          And, moreover, it's work-product privilege.
8          THE COURT:  All right.
9          Here's what I'd like to do.
08:43:10 10         Whatever the letters are -- how many people have you --
11    we're on the public record here, so, if you want, you can just
12    signal me with your fingers -- how many people have you ask for
13    indemnification?
14         MR. ZAMMIT:  It's a number, your Honor.
08:43:26 15         I can't give you an exact number, but it's probably in
16    excess of five.
17         THE COURT:  The letters that you wrote to them asking
18    for indemnification, and their response, can you submit them
19    in-camera, and I will look at them and see if I see anything
08:43:42 20    that is privileged, but I don't think they're privileged, or I'm
21    not persuaded that they're privileged?
22         I also do highly doubt that they're relevant.
23         But it seems to me it's worthwhile that I could
24    actually, because, in my experience, these letters are usually
08:44:00 25    two pages long, so I can actually look at them and make a

10

1     determination.
2          And if I determine that they're either privileged, or
3     that they don't actually do the sorts of things that Mr. Bishop
4     is hoping that they do, then I will deny the request, and give
08:44:18 5     them back to you.
6          And if I think otherwise, I'll tell you all, okay?
7          MR. ZAMMIT:  Okay, your Honor.
8          Do you want just the initial letter and response to it,
9     or do you want the entire -- there may be more than two letters.
08:44:32 10         THE COURT:  Well, no, I thought there may be -- for
11    time being, why don't you just give me the initial letter and
12    the response.
13         MR. ZAMMIT:  All right.
14         THE COURT:  And, you know, when you submit them,
08:44:40 15    submit them to chambers, and do a letter that just says, you
16    know, you're submitting -- describe, again, without saying
17    exactly what they are, and file a copy with the clerk, so that
18    there's a record that you are giving them to me.
19         MR. ZAMMIT:  I understand.
20         THE COURT:  Okay?
21         MR. ZAMMIT:  Yes, your Honor.
22         MR. BISHOP:  Your Honor, just one correction.
23         I heard him say that there was no claim of joint
24    infringement.  That's not our position, but it doesn't matter
08:45:10 25    today.  I wanted to put it on the record.

11

1          THE COURT:  So, the other thing was, the CallWave using
2     documents in the Northern District of California action, and I
3     think this is one where -- I forget -- was this the one where
4     the defendants said, we haven't actually met and conferred on
08:45:32 5     this?
6          MR. RUTHENBERG:  That's correct, your Honor.
7          THE COURT:  Okay.
8          THE COURT REPORTER:  I'm sorry.  Your name?
9          MR. RUTHENBERG:  Kirk Ruthenberg.
08:45:40 10         THE COURT:  Have you met-and-conferred?
11         MR. BISHOP:  Well, we tried to, your Honor.
12         I offered many times to meet-and-confer.  I haven't
13    heard back at all from AT&T.
14         THE COURT:  All right.
08:45:48 15         MR. BISHOP:  We have an impasse with T-Mobile and
16    Sprint.
17         THE COURT:  Okay.  So, let's do this.
18         I have the impression that, based on the answering
19    letter said, that there was some documents that they would not
08:46:06 20    object to you using.
21         What they object to was just you can use anything that
22    they produced.
23         And my impression from the letters is, you haven't
24    specifically asked to be able to use these pages -- those pages.
08:46:20 25         MR. BISHOP:  Here's the issue, your Honor.

12

1          That process takes we found weeks sometimes to get
2     approval out of T-Mobile or Sprint.  AT&T hasn't even responded
3     to my request.
4          So we're talking about trying to get discovery.
08:46:36 5          THE COURT:  Okay.  Well, I can take care of that.
6          You identify the documents that you want.
7          Can you do it by the close of business tomorrow?
8          MR. BISHOP:  Well, the documents that I've identified
9     are the ones that are actually Location Lab's documents that
08:46:50 10    they authored.
11         THE COURT:  Okay.  Well, it seems to me, from what they
12    said, that is not something that particularly concerns them.
13         MR. BISHOP:  Well, they haven't told me that and they
14    didn't say that in the letter.
08:47:00 15         THE COURT:  Well, I thought I read that in the letter.
16         MR. RUTHENBERG:  Your Honor, what they have done is
17    described a broad category of documents.  We need specific
18    documents.
19         THE COURT:  Mr. Bishop, specify what the documents are
08:47:16 20    that you want.  You're representing right now that they are
21    Location Lab's documents.
22         I understood, and I think it must have been in writing,
23    because I don't know where else I would have gotten the
24    understanding from, that is not really what defendants are
08:47:34 25    concerned about.  They're concerned about their own documents.

13

1    And, so, you ask by -- what did I say -- 6:00 o'clock
2    tomorrow for whatever it is you want.
3            And you respond by Monday at 6:00 o'clock that you are
4    either going to give them, or that you're not going to give
08:47:52 5   them, and why.
6            You know, if there remains a dispute, file the letters
7    with me on Tuesday, and arrange a convenient time to call in,
8    and I'll -- we'll resolve it over the phone, okay?
9            MR. BISHOP:  Your Honor, if I could make a suggestion?
08:48:12 10          There are documents that we have identified, and those
11   are documents that Location Labs either e-mailed
12   them to, or either sent to, or received from Location Labs.
13          I think what you're indicating is that you believe
14   they're in agreement with those.
08:48:28 15          That can it take care of the issue that I have
16   immediately in moving to compel in the Northern District.
17          THE COURT:  Well, hold on a second.  Let me see.
18          Am I right, or am I wrong?
19          MR. RUTHENBERG:  Your Honor, we have three different
08:48:40 20   clients here.  Three different clients to consult.
21   They have different views of the category of documents, but
22   there is a procedure under the Protective Order for specifying
23   specific documents.
24          All they have to do is give us the Bates range, and we
08:48:58 25   will look at the documents, and respond to it in that timely

14

1    fashion.
2            THE COURT:  Okay.  So, let's do that, because, you
3    know, that's my impression is saying, documents authored by
4    Location Labs -- and I'm guessing that there are millions of
08:49:12 5   documents that have been floated back and forth in this case
6    already -- that's not very helpful.  And just leaving aside
7    whatever the procedure is, though I guess if there is a
8    procedure, you should follow it.
9            So ask, get a response, see what is actually in
08:49:36 10   dispute.
11          And, as I said, you know, if it doesn't work, file the
12   letters, and I'm available to talk to you some time next week.
13          MR. BISHOP:  Here's the issue I'm trying to address.
14          It's not just this one issue to compel.  We're being --
08:49:54 15   we're having a difficult time getting discovery out of Location
16   Labs.
17          And if every time I need to use a document in that
18   case, which is the same lawyers as there is --
19          THE COURT:  Yes, yes.  I get the impression of what
08:50:04 20   they said is that there is some kind of wall, so they got some
21   lawyers do doing that, and some lawyers doing this.
22          MR. BISHOP:  But there's --
23          THE COURT:  In any event, we don't have much time here.
24          Let's do what I said for the immediate.
08:50:16 25          If we end up on the phone next week, you can bring up

15

1    this other stuff, okay?
2            MR. BISHOP:  There is a procedure, so that we can get a
3    quick response when I need to use documents in that case.
4            THE COURT:  All right.
08:50:26 5           Well, let's try this on this, and see how that goes,
6    and if it goes well, then maybe you can talk to each other about
7    a procedure.  And if it doesn't go well, then maybe you can tell
8    the procedures to me, and I will come up with one, okay?
9            MR. RUTHENBERG:  Thank you, your Honor.
08:50:44 10          THE COURT:  All right.  So I think that takes care of
11   CallWave's letter.
12          Then there's the defendants' letter, which is dated
13   October 28th.  It's Docket Item 181 in the case of 12-1701.
14          So we've got this priority date dispute.
08:51:10 15          As I understand it, there has been some kind of
16   response that says you can find the answer in the papers we
17   produced.  To me that's not good enough.
18          And, so, my initial inclination, upon reading
19   defendants' letter, was to just deem the matter forfeited, but I
08:51:32 20   think instead the better course is, Mr. Bishop, provide answers
21   specifying what the conception and priority dates are, or
22   conception and reduction to practice priority dates.
23          If you can't do any better than you've done so far,
24   then it will be the date the patent application was filed, but I
08:51:56 25   will give you until Tuesday at 6:00 p.m. to try to do better.

16

1            MR. BISHOP:  So, just to be clear, your Honor.
2            We've answered, to the best we can, on '933 and the
3    '970.  It's the call processing.
4            THE COURT:  Well, so, does that mean on those that you
08:52:10 5   are still at -- at least as early as the filing date of the
6    provisional application?
7            MR. BISHOP:  This where we're at right now.
8            THE COURT:  If that's the best you can do, then that's
9    the best that you can ever do.
08:52:22 10          MR. BISHOP:  So you're saying that for this contention,
11   that it's final.
12          THE COURT:  Well, actually, what I'm saying is that the
13   filing date, the conception and reduction to practice occurred
14   on the filing date of the provisional application to which the
08:52:40 15   '933 patent claims priority.
16          MR. BISHOP:  And if we find additional facts through
17   discovery?
18          THE COURT:  Well, that's too bad, because the inventors
19   are people that you have contact with.
08:52:54 20          So I recall earlier in the case that you represented
21   that they were cooperative and I think there's this question
22   about accepting subpoenas.
23          So, yes, if you can't do any better than you've done by
24   Tuesday, that that part of the case is fixed.
08:53:10 25          MR. BISHOP:  Could I just ask until Friday, your Honor?

17

1        THE COURT:  Okay, Friday.

2        All right.

3        MS. JACOBS:  Your Honor, could we just ask as well that

4   we be given a basis for claiming back to the provisional filing

08:53:22  5   date as well?

6        There has to be a basis for claiming back to that

7   provisional.

8        THE COURT:  Well, I think that claiming to the

9   provisional is a lot more from what I -- because this has come

08:53:40 10   up in other cases -- isn't it, essentially, that the provisional

11   has to contain the same things that makes it into the later

12   actual application?

13        MS. JACOBS:  If there is a direct chain and subject

14   matter hasn't been added along the way.

08:53:56 15        THE COURT:  Right.  Right.

16        So, you know, when he says it's a provisional date,

17   because part of what you're looking for is, you would like to

18   have the contentions solid, so you can do discovery relating to

19   that.

08:54:16 20        To me saying, the filing date of the provisional

21   application, it may be that there's extra work has to be done,

22   so you prove that is the case, but it is a date that gives you a

23   target, which is what I think is actually balanced.

24        So, the only thing I see in this letter is, if you were

08:54:32 25   looking for a target, so I think you're now just trying to add

18

1   on.

2        MS. JACOBS:  I think it's a different issue for the

3   call processing track, but I understand your comments to be

4   directed to -- counsel's comments to be directed to the '933 and

08:54:44  5   '970.  The call processing track is much more complicated than

6   that.

7        THE COURT:  Okay.  Well, the only thing I -- okay.

8        All right.

9        So, then, there's also defendants' request about what

08:54:58 10   it says in Interrogatories No. 2 and 3.

11        It says, CallWave has refused to identify the first

12   sale, offer for sale, public use, public disclosure of any

13   apparatus or method * the patents in suit, or identify products

14   and services made by CallWave, or its licensees *and by the

08:55:18 15   patents-in-suit.

16        MS. JACOBS:  I'm sorry, your Honor.

17        Back to the last interrogatory.

18        There has not been an identification of the provision.

19   And, in particular, there are several provisionals for the call

08:55:30 20   processing track.

21        That was my point in saying that there hasn't been any

22   identification.

23        THE COURT:  Well, okay.  So, if the provisional

24   application is not clear on which provisional application, then

08:55:38 25   make it clear on which provisional you're talking

19

1   about.

2        MR. BISHOP:  Absolutely, your Honor.  That's what we'll

3   be doing by Friday.

4        THE COURT:  Sorry, Ms. Jacobs, I didn't understand your

08:55:50  5   point.

6        All right.

7        So has CallWave, or I suppose its predecessors, ever

8   actually made anything embodying the patents-in-suit?

9        MR. BISHOP:  Yes, your Honor.  CallWave was an

08:56:04 10   operating company that had products.

11        Our position on this in the interrogatory is that some

12   of those products for which we have a contention that, for

13   example, for secondary considerations of non-obvious, or if we

14   were seeking lost profits, it would be relevant, and we would

08:56:26 15   have a contention, and we would submit that.

16        What the interrogatory asks for is, any product that

17   anybody has.  Even if we're not relying on it, they want us to

18   make a contention out of it.

19        THE COURT:  Well, I mean the thing is, you may not be

08:56:40 20   relying on it for that purpose, but maybe they're relying on it

21   for a different purpose.

22        Is there an interrogatory that has established what are

23   the products, or do the defendants know what it is CallWave,

24   generally speaking, has made in the past?

08:56:56 25        MS. JACOBS:  We have documents that that is part of

20

1   what Interrogatory No. 2 is asking, what are the products and

2   when was their first sale.

3        And, your Honor, as far as that, that's part of what we

4   need is to explore on-sale issues and whatnot.

08:57:08  5        THE COURT:  Well, and I got that that's what you were

6   driving at.

7        How many, Mr. Bishop, how many different kinds of

8   products, you know, ball park has CallWave made?

9        MR. BISHOP:  Well, my understanding -- and Mr. Malgeri

08:57:22 10   can speak more cogently to this -- is that they made a call

11   processing system, and these products came out of that call

12   processing -- I'm sorry -- these patents came out of that call

13   processing system.

14        My point on all this is that we don't -- it's not up to

08:57:42 15   us to determine which ones they think might be prior art, and to

16   say that we contend that these are prior art, and here's the

17   date of first sale.

18        If they have one that they're interested in, we're

19   happy to give them any facts they want about that.

08:57:56 20        THE COURT:  So you described a call processing system.

21        Is that something you've given them a date on?

22        MR. BISHOP:  We've given them the documents.  If they

23   contends that it embodies the patent, or if we contend that it

24   embodies the patent, then we're happy to give them the date of

08:58:18 25   first sale, or whatever it is they're contending, or that we're

21

1  contending.

2       But what their interrogatory has asked for is for us

3  make contentions that we don't.

4       THE COURT:  Well, no.  I understand what you said

08:58:26  5  there.

6       Hold on a minute.

7       MS. JACOBS:  It's actually --

8       THE COURT:  Hold on a minute, Ms. Jacobs.

9       (Pause)

08:58:34  10      Do you think, Ms. Jacobs, that there are other systems,

11  or products related to other systems, besides whatever it is Mr.

12  Bishop has just been talking about?

13      MR. BISHOP:  I am not aware of any from CallWave.

14      What we don't know is whether, given the breadth of

08:59:02  15  what they claimed their system is, whether they have contended

16  that other, for example, have they sought out or accused anybody

17  else of infringement in a way that they're saying that this is

18  an embodiment, and that --

19      THE COURT:  Well, you're getting their licenses, and

08:59:18  20  you're getting their -- it's not hard to see if they sued

21  anybody else besides from the defendants in this case.

22      How else would they accuse people of infringement?

23      MR. BISHOP:  Well, what we don't know is if they sent

24  letters to somebody, accusing them of infringement, that hasn't

08:59:36  25  resulted in a license, or they have produced had some licenses.

22

1       THE COURT:  Well, sorry.  If you sent letters to people

2  saying that their products infringe, you know, CallWave is

3  saying that their products infringe, then you don't actually

4  have to do any contention interrogatories.  There's something or

09:00:08  5  there is a record of you're saying -- CallWave is saying that

6  some product infringes.

7       So I think I understand what your initial objection is.

8       Do --

9       MR. BISHOP:  To the extent there are even such

09:00:28  10  documents, my understanding is they have been produced, and if

11  they haven't, we don't have an objection to producing those

12  subject to it.

13      THE COURT:  All right.

14      So produce any letters, if you haven't already, that

09:00:38  15  accuse other people, you know, sort of privately accused other

16  people of infringing whatever the relevant patents are for this

17  system that you were talking about, and that has products that

18  have spun off, which I take it you're saying is an embodiment,

19  or has some embodiments in at least some of the patents, right?

09:01:04  20      MR. BISHOP:  Well, the patent spun out of the

21  development of that product, so there may be some that embody

22  that.

23      THE COURT:  Okay.  So, for those, the products that are

24  associated with that, which I assume is a finite number that is

09:01:18  25  probably not very big, can you produce for them the first sale,

23

1  offer for sale, public disclosure, that sort of thing?

2       MR. BISHOP:  That's right.  We can do that, your Honor.

3       THE COURT:  Okay.

4       MS. JACOBS:  Yes.  And that addresses the offer for

09:01:34  5  sale, your Honor.

6       We also asked for Interrogatory 3 on the embodiment,

7  and that's not asking -- we're not asking them to scan the

8  marketplace and tell us what products does CallWave have its

9  licenses or who has been authorized, so we can explore the --

09:01:52  10      THE COURT:  Well, you've got the licenses.

11      MS. JACOBS:  We think we do.  What I don't know, again,

12  if there has been some other form of authorization.

13      It ought to be a simple question of who --

14      THE COURT:  Well, I'm sure you're right, but what other

09:02:06  15  kinds of authorization are there besides licenses?

16      MS. JACOBS:  For example, a vendor relationship, or

17  something that might be short of a license.

18      So, in other words, if there was a --

19      THE COURT:  Yes, yes, okay.

09:02:20  20      MS. JACOBS:  So distributor, for example.

21      MR. BISHOP:  Well, your Honor, if she's asking for

22  licenses of people that have licensed the patent, then I

23  understand that question, and we've given them the license.

24      THE COURT:  Right.  I heard that.

09:02:36  25      MR. BISHOP:  If she's asking us what products CallWave

24

1  contends embody it, I don't know how to put any bounds around

2  that, because we don't have contentions.

3       THE COURT:  All right.

4       So, basically, then, as I understand the breakdown of

09:02:52  5  these two interrogatories, the prior discussion sort of covers

6  Interrogatory No. 2, and there's an agreement by CallWave to

7  produce it -- partly, I think, it's CallWave saying we actually

8  produced most of that already, but if there are any letters

9  accusing others of infringement, and whatever dates, relevant

09:03:18  10  dates you can come up for, for things relating to this system

11  that you described, you'll do that.

12      In terms of the second, or what's Interrogatory No.

13  3 -- what is it, again, that you want there?

14      MR. BISHOP:  It's the embodiment.  What's relevant to

09:03:34  15  marking.  What we're looking for there is either the CallWave

16  product, the CallWave licenses that are authorized by CallWave,

17  so we can look at what products are out there that may be in the

18  stream of commerce that should have been marked with a patent

19  number.

09:03:50  20      THE COURT:  Well, so, basically, you're asking for

21  things that you didn't mark with a patent number, and,

22  therefore, you either messed up, or you don't think they're

23  covered, now that they're are covered?

24      MS. JACOBS:  It's one example, your Honor, of relevant

09:04:04  25  to marking issues.

25

```
 1          For example, if there was -- if CallWave authorized a
 2     distributor to make product, and there is no patent marking,
 3     that would be relevant to the marking issue.
 4          THE COURT:  Have you asked them if they have any
09:04:20  5   distributors for these products?
 6          MR. BISHOP:  Well, that is what this interrogatory is
 7     asking for.  Tell us who's authorized and what products were
 8     authorized.
 9          THE COURT:  So, let's just take that in two parts.
09:04:34 10   Do you have authorized distributors, if you know?
11          MR. BISHOP:  I don't know, as we sit here.
12          MR. MALGERI:  Your Honor, undoubtedly there were some
13     authorized distributors of the products.
14          This is Mr. Malgeri from Pepper Hamilton.
09:04:46 15          At the time that the company was operational, the
16     predecessor company was a public company, and did produce
17     products that were in the stream of commerce.  They were widely
18     available.
19          But I think the heart of the question is, which
09:05:02 20   products practiced the patents, or were authorized under the
21     patents, and that legal question, your Honor, requires some sort
22     of a mapping of products with -- with patent --
23          THE COURT:  Well, no, no, no.
24          So I don't think, necessarily, at least I'm not seeing
09:05:16 25   that you have to do that.  I think you have -- what I'm thinking
```

26

```
 1     is, you do have to produce something that allows the defendants,
 2     if they want to try to do that.
 3          MR. MALGERI:  Yes, your Honor, we wholeheartedly agree.
 4          To the extent that we have any information from which
09:05:32  5   any of those conclusions can be gleaned, it's been produced.
 6          We have no contentions regarding that question.
 7          THE COURT:  Well, when you say have been produced,
 8     let's say in the million documents you produced, you mean it's
 9     in there somewhere?
09:05:44 10          MR. MALGERI:  Correct, your Honor.  Correct.
11          MS. JACOBS:  Your Honor, it is more than a million
12     pages that have been produced, and I think given the -- you
13     know, it's not of the same burden to simply ask, and to have
14     access to all the people of who was authorized.
09:06:02 15          THE COURT:  Hold on a minute.
16          When was CallWave an operating company?
17          MR. MALGERI:  Your Honor, they were operating in the
18     name of CallWave up until about, I think, 2008.  I could be a
19     little off, but I think around 2008.  They subsequently changed
09:06:16 20   their name, but I think it was around 2008 or so.
21          THE COURT:  All right.
22          So you told me, Mr. Malgeri, that you had already
23     produced somewhere in this million plus pages of documents, or
24     whatever it is, information about what?
09:06:46 25          MR. MALGERI:  Well, any information that we have that
```

27

```
 1     is relevant to the products that were sold by the predecessor
 2     company, we've produced.
 3          THE COURT:  All right.
 4          So...
09:07:04  5          MR. MALGERI:  And I'm not sure if those documents --
 6     there's -- I think that -- and, so, that's the factual aspect of
 7     the discovery request, so far as we understand it, which has
 8     been satisfied, your Honor.
 9          To the extent that there's a component of the
09:07:16 10   interrogatory that asks for a contention, or some type of an
11     application of law to this fact, we don't have such a thing.
12          THE COURT:  So, if you haven't already, can you produce
13     -- not just saying it's in there somewhere -- but either, if it
14     is in, you know, a document of a page or two, or five or ten, or
09:08:06 15   something less than a hundred, you know, say, here's are where
16     all our authorized distributors are listed, or if it is not
17     there, then you list them?
18          And if you have a document or documents that say what
19     were they were authorized to distribute, identify them, and then
09:08:32 20   I think it's up to the defendants to go from there.
21          Can you do that?
22          MR. MALGERI:  Yes, your Honor, I think that's
23     reasonable.
24          THE COURT:  So, then, the last thing is, Mayor Dan and
09:08:46 25   *Location Net, because, as I understand it, Mr. Dan has agreed,
```

28

```
 1     or I guess agreed is the right word, to show up in the U.S for a
 2     deposition some time in the near future; is that right?
 3          MR. BISHOP:  That's right.  We haven't picked a date
 4     yet.
09:09:02  5          THE COURT:  I'm sure you can pick a date between
 6     yourselves.
 7          And, so, a significant part of the dispute, at least in
 8     the first letter was Mr. Dan.  And, so, if he shows up and he's
 9     deposed, then he can show up and testify at the trial, too.
09:09:18 10          So, it struck me that the only thing that was actually
11     left was the question about Location Net's documents; is that
12     right.
13          MR. RUTHENBERG:  Yes, your Honor.
14          THE COURT:  And, so, they're an Israeli company, and
09:09:36 15   they've got this agreement, I think it was referred to as a
16     cross-license, agreement; is that the right term?
17          MR. RUTHENBERG:  Yes, your Honor.  A patent cross-
18     license agreement.
19          THE COURT:  And, so, CallWave lawyers do not represent
09:10:08 20   Location Net.
21          Is there something -- you know, I sometimes hear in
22     particular countries that it's hard to get discovery in this
23     country, not so hard in that country.  If you -- but I have not
24     heard anything about Israel one way or the other -- if you
09:10:30 25   follow the international processes for trying to get documents
```

29

1  from Location Net, what's likely to happen?

2      MR. RUTHENBERG:  Your Honor, we looked at that, and

3  that's an option.

4      And one of the reasons that we're raising this is

09:10:46  5  because of the concern, in reading some of the materials from

6  Israel, indicating that it could take up a year to get those

7  documents, and, obviously, that goes beyond the discovery

8  cutoff.

9      THE COURT:  Well, you know, that's something I wouldn't

09:11:02 10  be too concerned about that, because -- I mean there obviously

11  is a relation between, because of the cross-patent agreement,

12  cross-license agreement, or whatever, between Mr. Dan's company

13  and CallWave, and -- well, actually, let me just stop there for

14  a second.

09:11:36 15      Based on what happened so far, what kind of documents

16  do you think Location Net has that are not already in the

17  possession of CallWave?

18      MR. RUTHENBERG:  Well, your Honor, we haven't gone

19  through them, and we don't know.  When we asked -- they accepted

09:11:52 20  services on behalf of Mark Dan, but they said they're only going

21  to produce his personal documents.

22      THE COURT:  Right.  Right.  I gathered that that's --

23      MR. RUTHENBERG:  And I don't, to the extent there are

24  documents about the prosecution of the patent, or, you know,

09:12:06 25  reduction to practice, et cetera, we don't know whether they're

30

1  claiming that those are in the files of Location Net or in the

2  files of Mayor Dan.

3      THE COURT:  Well, so, if they're -- they're not going

4  to be allowed to say there are documents supporting conception,

09:12:28  5  reduction to practice, at some earlier date, even if the

6  interrogatories gets changed in the next week, but also say,

7  well, the documents are in Israel, and then, you know, and bring

8  them to trial or something.

9      There's enough of a relationship, so that I don't think

09:12:56 10  I would allow that, but I'm -- but it should be the case that if

11  there are actually documents supporting the earlier conception

12  and reduction to practice, I assume Mr. Dan and Location Net

13  will probably voluntarily produce them, because they help

14  CallWave's case.

09:13:22 15      So, you know, I'm -- so.

16      MR. RUTHENBERG:  We've asked --

17      THE COURT:  So, go ahead.

18      MR. RUTHENBERG:  We've asked about the categories of

19  documents.  There are other categories of documents.  Location

09:13:36 20  Net continues to be the owner patent of patent.  They have an

21  interest where they have been identified in response to

22  interrogatories as having an interest in this litigation.

23      THE COURT:  Well, I figured as much.  That seems to be

24  a sensible conclusion.

09:13:54 25      MR. RUTHENBERG:  And we should be able to get discovery

31

1  regarding their interest.  So far we have not been told what

2  their interest is in response to interrogatories.

3      THE COURT:  All right.

4      Well, here's what I think you ought to do.

09:14:06  5      I think you ought to pursue your option to try to get

6  the documents through processes involving Israel.  It is not

7  going to be a sword and a shield.

8      So, there may be some things that you never get to,

9  because you can't get them through Israel.  If you can't get to

09:14:32 10  them, then CallWave can't use them either.

11      But I'm not persuaded right now that there's some way

12  for me to coerce an Israeli company to do something in relation

13  to this case.

14      All I can do is sort of negatively coerce by telling

09:15:00 15  CallWave, and if they can't get them to do something, then I'm

16  not going to allow them to do something later on.

17      MR. RUTHENBERG:  And the only -- and I understand that,

18  your Honor.

19      The only category of documents, I guess, that focus a

09:15:20 20  little bit more on are *Myer Dan's documents and his -- what we

21  don't want is for him to say, I don't have any documents,

22  because they're all in the files of Location Net, you know,

23  they're in the same room, but they are in the file cabinet that

24  is --

09:15:26 25      THE COURT:  Well, as I understand it, he's agreed to

32

1  come over, and be deposed, essentially, as the inventor.

2      And if he has inventive documents, and there is

3  documents, there is a subpoena, and I guess you will get them.

4      If they are the documents of the company and he doesn't

09:15:48  5  -- so, I don't think I can say, so you're coming over here in

6  your individual capacity, but why don't you reach into the

7  company documents and bring them, too.

8      MR. RUTHENBERG:  Right.  To the extent that he has in

9  his possession and control over those documents, we would expect

09:16:04 10  them to be produced in response to the subpoena, even if they're

11  in the filing cabinet of Location Net, but he still has the

12  right to control them.

13      MR. BISHOP:  I can't speak on behalf of Location Net,

14  but I can speak on behalf of Mr. Dan, and if he's got the

09:16:20 15  documents personally, he'll produce those.

16      THE COURT:  Well, actually, if you can speak on his

17  behalf, does he was any documents?

18      MR. BISHOP:  The documents he -- we're having them

19  produced right now, as I understand it.

09:16:32 20      THE COURT:  Okay.  So the answer is, yes, he has some

21  documents?

22      MR. MALGERI:  It may be that there are none to produce,

23  your Honor.

24      The initial indication is that there are probably -- he

09:16:42 25  doesn't have any in his personal possession that haven't already

33

1   been produced, and that's all his documents.
2            THE COURT:  Okay.
3            MR. RUTHENBERG:  Your Honor, for example, we would
4   expect to see the inventorship file, lab notebooks, things of
09:17:00  5   that type.  I'm not aware that those have been produced by
6   CallWave.
7            THE COURT:  So what is the relevance of those, other
8   than if you're trying to get an earlier conception or reduction
9   to practice?
09:17:10  10           MR. RUTHENBERG:  Well, your Honor, I don't know whether
11   we're trying to get an earlier reduction to practice.
12           THE COURT:  Well, right.  So.
13           MR. RUTHENBERG:  It's within the --
14           THE COURT:  Mr. Ruthenberg, we're both trying to talk
09:17:24  15   at the same time.
16           MR. RUTHENBERG:  I'm sorry.
17           THE COURT:  I have precedence.
18           Isn't it the case, you know, the inventorship file,
19   okay, that's essentially related to the conception and reduction
09:17:40  20   to practice, that's going to take care of itself, I think,
21   because either they're going to come up with an earlier date,
22   and they're going to want to produce them, or they're not going
23   to come up with an earlier date, and that's going to be a moot
24   issue, right?
09:18:00  25           MR. RUTHENBERG:  Probably, your Honor, I'm not sure.

34

1            THE COURT:  Okay.  Well, I mean I'm asking the
2   question.
3            MR. RUTHENBERG:  And at this point -- I mean we always
4   like to look at the inventor's --
5            THE COURT:  Well, no, I --
6            MR. RUTHENBERG:  -- files -- sorry.
7            THE COURT:  No, no, no.  I'm sorry this time.  You
8   should speak.
9            MR. RUTHENBERG:  Okay.  We want to know who else may
09:18:18  10   have been on the development team, who has -- who may have other
11   information, maybe we want to depose.  I mean there are all
12   kinds of information that would be in the file about the
13   background of the invention.
14           THE COURT:  Well, right, so --
09:18:36  15           MR. RUTHENBERG:  Prior art could be in the file.
16           THE COURT:  So, here's the thing.
17           I think the purposes that you are seeking for, you
18   know, while, you know, they are traditional things to ask for,
19   are likely to be of very marginal importance.
09:18:50  20           If it turns out to be more important than I'm thinking
21   it's going to be, then I think you're going to get them anyhow,
22   because they're going to need them to add an earlier date.
23           And, so, yes, he may have prior art, but you've got a
24   team I'm sure who's spending lots of money finding prior art,
09:19:16  25   so, you know -- so I'm not going to do -- and, so, on the other

35

1   hand, then you have the fact that this is an Israeli company,
2   and I have a certain hesitation to about ordering people in
3   foreign countries to do things.
4            So I'm going to -- so, as I said, you should follow the
09:19:38  5   processes to try to get documents from an Israeli company, and I
6   guess otherwise, we'll see how things go.
7            MR. RUTHENBERG:  I guess, your Honor, the only -- I
8   just want to make sure that when they say they're accepting
9   service of the subpoena on Myer* Dan, that they're under the
09:19:58  10   same obligation that they would be for any witness who's
11   producing documents.
12           So, to the extent that we can establish that he does
13   have possession, custody, or control of certain files, he has an
14   obligation to produce those, and we may have to show that at a
09:20:14  15   later time.
16           THE COURT:  Well, so, that seems like an issue for
17   another day.  There's a lot of hypotheticals.  I have enough
18   trouble with the concrete without going into the hypotheticals,
19   okay?
09:20:26  20           MR. RUTHENBERG:  Yes, your Honor.
21           THE COURT:  All right.
22           That resolves all the issues that are in these various
23   things?
24           MR. BISHOP:  Your Honor, just one point.
09:20:38  25           On our Interrogatory No. 5, we didn't -- I thought that

36

1   you were going to give a chance to make argument, and I don't
2   want to make argument now, but --
3            THE COURT:  No, no.  You know, when you asked -- when
4   there's nothing that aggravates me more than having grossly
09:20:56  5   overbroad, improper interrogatories, and then the parties start
6   negotiating, and there's some moving target that I'm supposed to
7   be ruling on.
8            You know, you can ask -- defendants said, ask the
9   proper question, okay?  And they'll argue with whatever question
09:21:14  10   you ask.
11           You know, give yourself a chance by asking something
12   that infringes a proper question.
13           MR. BISHOP:  Well, my only question is, the purpose of
14   that interrogatory was to find out what their defenses are.  If
09:21:26  15   they could just answer, and tell us what defenses they're going
16   to pursue, we can ask more narrowly-tailored questions.
17           THE COURT:  Well, you know what their defenses are.
18           Some of them are already in their answer, aren't they?
19           MR. BISHOP:  Well, we've got quite a few, and I've
09:21:40  20   only got ten interrogatories, and that's the issue that we have.
21           THE COURT:  All right.
22           The question of which ones are they going to pursue,
23   that seems like a different question than the question you were
24   actually asking.
09:21:52  25           MR. BISHOP:  Well, the question was, what are your

1    defenses and what are your facts to support it?

2         I'm happy to ask more specific questions about the

3    facts, but I need to know what those defenses are, in order to

4    be more specific, because I don't know which ones they are going

5    to pursue.

6         THE COURT:  All right.  Okay.

7         Well, thank you.  We'll be in recess.

8         (The proceedings adjourned at 9:22 o'clock a.m.)

9                   * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'**

**'933** [3] - 16:2, 16:15, 18:4
**'970** [2] - 16:3, 18:5

**1**

**12-1701** [2] - 6:5, 15:13
**12-1701-RGA** [1] - 1:4
**12-1702,12-1703** [1] - 1:5
**12-1704** [1] - 1:6
**12-1788** [1] - 1:6
**13-711** [1] - 1:7
**179** [1] - 6:5
**181** [1] - 15:13

**2**

**2** [3] - 18:10, 20:1, 24:6
**2008** [3] - 26:18, 26:19, 26:20
**2014** [1] - 1:8
**28th** [2] - 6:5, 15:13

**3**

**3** [3] - 18:10, 23:6, 24:13
**30** [1] - 1:8

**5**

**5** [3] - 6:7, 6:9, 35:25

**6**

**6:00** [3] - 13:1, 13:3, 15:25

**8**

**8:38** [1] - 1:10

**9**

**9:22** [1] - 37:8

**A**

**a.m** [1] - 37:8
**able** [2] - 11:24, 30:25
**absolutely** [1] - 19:2
**accepted** [1] - 29:19
**accepting** [2] - 16:22, 35:8

**access** [1] - 26:14
**accuse** [2] - 21:22, 22:15
**accused** [2] - 21:16, 22:15
**accusing** [1] - 21:24, 24:9
**action** [1] - 11:2
**actions** [1] - 7:19
**actual** [1] - 17:12
**add** [2] - 17:25, 34:22
**added** [1] - 17:14
**additional** [1] - 16:16
**address** [2] - 5:4, 14:13
**addresses** [1] - 23:4
**adjourned** [1] - 37:8
**admission** [1] - 7:15
**aggravates** [1] - 36:4
**agree** [1] - 26:3
**agreed** [5] - 5:12, 5:24, 27:25, 28:1, 31:25
**agreed-upon** [1] - 5:12
**agreement** [7] - 13:14, 24:6, 28:15, 28:16, 28:18, 29:11, 29:12
**ahead** [1] - 30:17
**al** [1] - 1:10
**allow** [2] - 30:10, 31:16
**allowed** [1] - 30:4
**allows** [1] - 26:1
**ANDERSON** [1] - 3:25
**ANDREW** [1] - 3:5
**ANDREWS** [1] - 1:17
**answer** [5] - 6:10, 15:16, 32:20, 36:15, 36:18
**answered** [2] - 7:4, 16:2
**answering** [1] - 11:18
**answers** [2] - 6:7, 15:20
**anyhow** [1] - 34:21
**apparatus** [1] - 18:13
**APPEARANCES** [1] - 1:21
**application** [9] - 15:24, 16:6, 16:14, 17:12, 17:21, 18:24, 18:25, 27:11
**approval** [1] - 12:2
**argue** [1] - 36:9
**argument** [4] - 6:22,

6:24, 36:1, 36:2
**arguments** [1] - 8:23
**arisen** [1] - 5:5
**ARONSTAM** [2] - 3:8, 3:20
**arrange** [1] - 13:7
**ARSHT** [2] - 2:5, 2:13
**art** [5] - 20:15, 20:16, 34:15, 34:23, 34:24
**ARTHUR** [1] - 2:22
**aside** [1] - 14:6
**aspect** [1] - 27:6
**assessments** [1] - 8:24
**associated** [1] - 22:24
**assume** [2] - 22:24, 30:12
**assuming** [1] - 8:2
**AT&T** [7] - 1:10, 3:18, 6:15, 7:1, 7:5, 11:13, 12:2
**attached** [1] - 6:8
**authored** [3] - 12:10, 13:11, 14:3
**authorization** [2] - 23:12, 23:15
**authorized** [11] - 23:9, 24:16, 25:1, 25:7, 25:8, 25:10, 25:13, 25:20, 26:14, 27:16, 27:19
**available** [2] - 14:12, 25:18
**aware** [2] - 21:13, 33:5

**B**

**background** [1] - 34:13
**bad** [1] - 16:18
**balanced** [1] - 17:23
**ball** [1] - 20:8
**Bar** [1] - 5:15
**bar** [1] - 5:23
**based** [2] - 11:18, 29:15
**basis** [2] - 17:4, 17:6
**Bates** [1] - 13:24
**BEFORE** [1] - 1:17
**behalf** [4] - 2:2, 30:13, 32:14, 32:17
**BENJAMIN** [2] - 3:9, 3:21
**best** [3] - 16:2, 16:8, 16:9
**better** [4] - 15:20, 15:23, 15:25, 16:23
**between** [7] - 5:5,

5:11, 6:15, 8:20, 28:5, 29:11, 29:12
**beyond** [1] - 29:7
**big** [1] - 22:25
**Bishop** [8] - 7:10, 7:11, 7:12, 10:3, 12:19, 15:20, 20:7, 21:12
**BISHOP** [43] - 1:25, 5:19, 5:22, 7:10, 7:19, 8:1, 8:7, 10:22, 11:11, 11:15, 11:25, 12:8, 12:13, 13:9, 14:13, 14:22, 15:2, 16:1, 16:7, 16:10, 16:16, 16:25, 19:2, 19:9, 20:9, 20:22, 21:13, 21:23, 22:9, 22:20, 23:2, 23:21, 23:25, 24:14, 25:6, 25:11, 28:3, 32:13, 32:18, 35:24, 36:13, 36:19, 36:25
**bit** [1] - 31:20
**BlackBerry** [1] - 3:6
**BLUMENFELD** [2] - 2:14, 5:24
**BOCKIUS** [1] - 3:3
**bounds** [1] - 24:1
**breadth** [1] - 21:14
**breakdown** [1] - 24:4
**briefed** [1] - 5:7
**bring** [3] - 14:25, 30:7, 32:7
**broad** [1] - 12:17
**burden** [1] - 26:13
**business** [2] - 8:21, 12:7
**BY** [23] - 1:24, 1:25, 2:1, 2:2, 2:6, 2:7, 2:10, 2:14, 2:15, 2:18, 2:22, 2:25, 3:4, 3:5, 3:9, 3:12, 3:13, 3:16, 3:17, 3:21, 3:24, 3:25, 4:1

**C**

**CA** [1] - 1:4
**cabinet** [2] - 31:23, 32:11
**California** [1] - 11:2
**CallWave** [31] - 5:12, 6:4, 6:6, 6:15, 6:24, 11:1, 18:11, 18:14, 19:7, 19:9, 19:23, 20:8, 21:13, 22:2, 22:5, 23:8, 23:25, 24:6, 24:7, 24:15, 24:16, 25:1, 26:16,

26:18, 28:19, 29:13, 29:17, 31:10, 31:15, 33:6
**CALLWAVE** [1] - 1:4
**CallWave's** [3] - 6:9, 15:11, 30:14
**camera** [1] - 9:19
**capacity** [1] - 32:6
**care** [4] - 12:5, 13:15, 15:10, 33:20
**case** [17] - 6:5, 6:12, 6:16, 6:25, 9:3, 14:5, 14:18, 15:3, 15:13, 16:20, 16:24, 17:22, 21:21, 30:10, 30:14, 31:13, 33:18
**cases** [1] - 17:10
**categories** [2] - 30:18, 30:19
**category** [3] - 12:17, 13:21, 31:19
**certain** [2] - 35:2, 35:13
**cetera** [1] - 29:25
**chain** [1] - 17:13
**chambers** [1] - 10:15
**chance** [2] - 36:1, 36:11
**changed** [2] - 26:19, 30:6
**claim** [3] - 9:2, 9:3, 10:23
**claimed** [1] - 21:15
**claiming** [4] - 17:4, 17:6, 17:8, 30:1
**claims** [1] - 16:15
**clear** [3] - 16:1, 18:24, 18:25
**clerk** [1] - 10:17
**clients** [1] - 13:20
**close** [1] - 12:7
**coerce** [2] - 31:12, 31:14
**cogently** [1] - 20:10
**collective** [1] - 6:7
**COLM** [1] - 3:4
**combines** [1] - 6:11
**coming** [1] - 32:5
**comments** [2] - 18:3, 18:4
**commerce** [2] - 24:18, 25:17
**COMMUNICATION** [1] - 1:4
**companies** [1] - 8:12
**company** [13] - 19:10, 25:15, 25:16, 26:16, 27:2, 28:14, 29:12, 31:12, 32:4, 32:7, 35:1, 35:5

**compel** [2] - 13:16, 14:14
**completely** [1] - 9:5
**complicated** [1] - 18:5
**component** [1] - 27:9
**conception** [7] - 15:21, 15:22, 16:13, 30:4, 30:11, 33:8, 33:19
**concern** [1] - 29:5
**concerned** [3] - 12:25, 29:10
**concerns** [1] - 12:12
**concession** [1] - 7:17
**conclusion** [1] - 30:24
**conclusions** [1] - 26:5
**concrete** [1] - 35:18
**confer** [1] - 11:12
**conferred** [2] - 11:4, 11:10
**CONNOLLY** [3] - 2:21, 2:22, 3:4
**considerations** [1] - 19:13
**consult** [1] - 13:20
**contact** [1] - 16:19
**contain** [1] - 17:11
**contained** [1] - 8:24
**contend** [2] - 20:16, 20:23
**contended** [1] - 21:15
**contending** [2] - 20:25, 21:1
**contends** [2] - 20:23, 24:1
**contention** [6] - 16:10, 19:12, 19:15, 19:18, 22:4, 27:10
**contentions** [4] - 17:18, 21:3, 24:2, 26:6
**context** [1] - 8:19
**continues** [1] - 30:20
**contract** [3] - 7:6, 8:12
**contracts** [1] - 7:15
**control** [1] - 32:9, 32:12, 35:13
**convenient** [1] - 13:7
**cooperative** [1] - 16:21
**copy** [1] - 10:17
**corporation** [1] - 8:22

**correct** [5] - 6:14, 6:18, 11:6, 26:10
**correction** [1] - 10:22
**correspondence** [1] - 7:13, 8:20, 8:25
**counsel** [3] - 8:20, 8:21, 9:6
**counsel's** [1] - 18:4
**countries** [2] - 28:22, 35:3
**country** [2] - 28:23
**couple** [2] - 5:7, 5:8
**course** [1] - 15:20
**Court** [2] - 4:5, 4:6
**COURT** [98] - 1:1, 5:3, 5:21, 6:1, 6:19, 6:21, 7:3, 7:8, 7:11, 7:24, 8:6, 8:8, 8:18, 8:21, 9:8, 9:17, 10:10, 10:14, 10:20, 11:1, 11:7, 11:8, 11:10, 11:14, 11:17, 12:5, 12:11, 12:15, 12:19, 13:17, 14:2, 14:19, 14:23, 15:4, 15:10, 16:4, 16:8, 16:12, 16:18, 17:1, 17:8, 17:15, 18:7, 18:23, 19:4, 19:19, 20:5, 20:20, 21:4, 21:8, 21:19, 22:1, 22:13, 22:23, 23:3, 23:10, 23:14, 23:19, 23:24, 24:3, 24:20, 25:4, 25:9, 25:23, 26:7, 26:15, 26:21, 27:3, 27:12, 27:24, 28:5, 28:14, 28:19, 29:9, 29:22, 30:3, 30:17, 30:23, 31:3, 31:25, 32:16, 32:20, 33:2, 33:7, 33:12, 33:14, 33:17, 34:1, 34:5, 34:7, 34:14, 34:16, 35:16, 35:21, 36:3, 36:17, 36:21, 37:6
**covered** [2] - 24:23
**covers** [1] - 24:5
**Craig** [1] - 5:10
**cross** [4] - 28:16, 28:17, 29:11, 29:12
**cross-license** [2] - 28:16, 29:12
**cross-patent** [1] - 29:11
**custody** [1] - 35:13
**cutoff** [1] - 29:8

# D

**Dan** [8] - 27:24, 27:25, 28:8, 29:20, 30:2, 30:12, 32:14, 35:9
**Dan's** [2] - 29:12, 31:20
**DANIEL** [2] - 3:12, 3:17
**dark** [1] - 7:24
**date** [18] - 15:14, 15:24, 16:5, 16:13, 16:14, 17:5, 17:16, 17:20, 17:22, 20:17, 20:21, 20:24, 28:3, 28:5, 30:5, 33:21, 33:23, 34:22
**dated** [2] - 6:5, 15:12
**dates** [4] - 15:21, 15:22, 24:9, 24:10
**DATTA** [1] - 2:2
**deduced** [1] - 6:10
**deem** [1] - 15:19
**Defendant** [6] - 2:11, 2:19, 3:1, 3:6, 3:18, 4:2
**defendants** [7] - 11:4, 12:24, 19:23, 21:21, 26:1, 27:20, 36:8
**Defendants** [2] - 1:12, 2:5
**defendants'** [5] - 6:6, 6:13, 15:12, 15:19, 18:9
**defenses** [5] - 36:14, 36:15, 36:17, 37:1, 37:3
**DELAWARE** [1] - 1:2
**DENTONS** [3] - 2:9, 2:24, 3:11
**deny** [2] - 8:10, 10:4
**depose** [1] - 34:11
**deposed** [2] - 28:9, 32:1
**deposition** [1] - 28:2
**describe** [1] - 10:16
**described** [3] - 12:17, 20:20, 24:11
**determination** [1] - 10:1
**determine** [2] - 10:2, 20:15
**development** [2] - 22:21, 34:10
**Development** [1] - 5:15
**DIBBS** [1] - 4:5
**different** [9] - 5:6,

8:9, 13:19, 13:20, 13:21, 18:2, 19:21, 20:7, 36:23
**difficult** [1] - 14:15
**direct** [1] - 17:13
**directed** [2] - 18:4
**disclosure** [2] - 18:12, 23:1
**DISCOVERY** [1] - 1:16
**discovery** [8] - 12:4, 14:15, 16:17, 17:18, 27:7, 28:22, 29:7, 30:25
**discussing** [1] - 7:21
**discussion** [1] - 24:5
**dispute** [6] - 5:11, 5:19, 13:6, 14:10, 15:14, 28:7
**DISPUTE** [1] - 1:16
**distribute** [1] - 27:19
**distributor** [2] - 23:20, 25:2
**distributors** [4] - 25:5, 25:10, 25:13, 27:16
**District** [2] - 11:2, 13:16
**DISTRICT** [3] - 1:1, 1:2, 1:18
**Docket** [2] - 6:5, 15:13
**document** [3] - 14:17, 27:14, 27:18
**documents** [54] - 6:14, 6:16, 11:2, 11:19, 12:6, 12:8, 12:9, 12:17, 12:18, 12:19, 12:21, 12:25, 13:10, 13:11, 13:21, 13:23, 13:25, 14:3, 14:5, 15:3, 19:25, 20:22, 22:10, 26:8, 26:23, 27:5, 27:18, 28:11, 28:25, 29:7, 29:15, 29:21, 29:24, 30:4, 30:7, 30:11, 30:19, 31:6, 31:19, 31:20, 31:21, 32:2, 32:3, 32:4, 32:7, 32:9, 32:15, 32:17, 32:18, 32:21, 33:1, 35:5, 35:11
**done** [6] - 5:10, 7:15, 12:16, 15:23, 16:23, 17:21
**doubt** [1] - 9:22
**driving** [1] - 20:6

# E

**e-mailed** [1] - 13:11
**early** [1] - 16:5
**EDMOND** [1] - 1:24
**either** [10] - 7:16, 10:2, 13:4, 13:11, 13:12, 24:15, 24:22, 27:13, 31:10, 33:21
**embodies** [2] - 20:23, 20:24
**embodiment** [4] - 21:18, 22:18, 23:6, 24:14
**embodiments** [1] - 22:19
**embody** [2] - 22:21, 24:1
**embodying** [1] - 19:8
**end** [1] - 14:25
**entire** [1] - 10:9
**ESQ** [23] - 1:24, 1:25, 2:1, 2:2, 2:6, 2:7, 2:10, 2:14, 2:15, 2:18, 2:22, 2:25, 3:4, 3:5, 3:9, 3:12, 3:13, 3:16, 3:17, 3:21, 3:24, 3:25, 4:1
**essentially** [3] - 17:10, 32:1, 33:19
**establish** [1] - 35:12
**established** [1] - 19:22
**et** [2] - 1:10, 29:25
**event** [1] - 14:23
**exact** [1] - 9:15
**exactly** [1] - 10:17
**example** [8] - 7:21, 19:13, 21:16, 23:16, 23:20, 24:24, 25:1, 33:3
**excess** [1] - 9:16
**exist** [3] - 7:25, 8:1, 8:2
**expect** [2] - 32:9, 33:4
**experience** [1] - 9:24
**explore** [2] - 20:4, 23:9
**extent** [8] - 6:22, 8:9, 22:9, 26:4, 27:9, 29:23, 32:8, 35:12
**extra** [1] - 17:21

# F

**fact** [2] - 27:11, 35:1
**facts** [5] - 9:1, 16:16, 20:19, 37:1, 37:3
**factual** [1] - 27:6

**fall** [1] - 8:14
**far** [5] - 15:23, 20:3, 27:7, 29:15, 31:1
**fashion** [1] - 14:1
**few** [2] - 5:6, 36:19
**figured** [1] - 30:23
**file** [8] - 10:17, 13:6, 14:11, 31:23, 33:4, 33:18, 34:12, 34:15
**filed** [1] - 15:24
**files** [5] - 30:1, 30:2, 31:22, 34:6, 35:11
**filing** [6] - 16:5, 16:13, 16:14, 17:4, 17:20, 32:11
**final** [1] - 16:11
**fingers** [1] - 9:12
**finite** [1] - 22:24
**first** [9] - 6:6, 8:16, 9:1, 18:11, 20:2, 20:17, 20:25, 22:25, 28:8
**five** [2] - 9:16, 27:14
**fixed** [1] - 16:24
**floated** [1] - 14:5
**focus** [1] - 31:19
**follow** [3] - 14:8, 28:25, 35:4
**FOR** [1] - 1:2
**foreign** [1] - 35:3
**forfeited** [1] - 15:19
**forget** [1] - 11:3
**form** [1] - 23:12
**forth** [2] - 7:14, 14:5
**frankly** [1] - 6:23
**Friday** [3] - 16:25, 17:1, 19:3
**FULBRIGHT** [1] - 3:15
**future** [1] - 28:2

## G

**GALLAGHER** [1] - 2:21
**gathered** [1] - 29:22
**generally** [1] - 19:24
**given** [6] - 17:4, 20:21, 20:22, 21:14, 23:23, 26:12
**gleaned** [1] - 26:5
**Google** [2] - 2:19, 5:13
**GREGORY** [1] - 1:25
**grossly** [2] - 6:11, 36:4
**guess** [7] - 8:8, 14:7, 28:1, 31:19, 32:3, 35:6, 35:7
**guessing** [1] - 14:4

## H

**Hamilton** [1] - 25:14
**HAMILTON** [1] - 1:23
**hand** [1] - 35:1
**happy** [3] - 20:19, 20:24, 37:2
**hard** [3] - 21:20, 28:22, 28:23
**hear** [1] - 28:21
**heard** [4] - 10:23, 11:13, 23:24, 28:24
**heart** [1] - 25:19
**help** [1] - 30:13
**helpful** [1] - 14:6
**hesitation** [1] - 35:2
**HESSLER** [1] - 3:24
**highly** [1] - 9:22
**hold** [4] - 13:17, 21:6, 21:8, 26:15
**Honor** [46] - 5:19, 6:18, 7:2, 8:14, 9:14, 10:7, 10:21, 10:22, 11:6, 11:11, 11:25, 12:16, 13:9, 13:19, 15:9, 16:1, 16:25, 17:3, 18:16, 19:2, 19:9, 20:3, 23:2, 23:5, 23:21, 24:24, 25:12, 25:21, 26:3, 26:10, 26:11, 26:17, 27:8, 27:22, 28:13, 28:17, 29:2, 29:18, 31:18, 32:23, 33:3, 33:10, 33:25, 35:7, 35:20, 35:24
**HONORABLE** [1] - 1:17
**hoping** [1] - 10:4
**hundred** [1] - 27:15
**hypotheticals** [2] - 35:17, 35:18

## I

**identification** [2] - 18:18, 18:22
**identified** [3] - 12:8, 13:10, 30:21
**identify** [4] - 12:6, 18:11, 18:13, 27:19
**III** [1] - 2:22
**immediate** [1] - 14:24
**immediately** [1] - 13:16
**impasse** [1] - 11:15
**importance** [1] - 34:19
**important** [1] - 34:20

**impression** [4] - 11:18, 11:23, 14:3, 14:19
**improper** [1] - 36:5
**in-camera** [1] - 9:19
**inclination** [1] - 15:18
**indemnification** [9] - 6:14, 6:16, 6:17, 6:25, 7:5, 7:7, 8:3, 9:13, 9:18
**indemnified** [1] - 7:22
**indicating** [3] - 7:4, 13:13, 29:6
**indication** [1] - 32:24
**indirect** [1] - 9:2
**individual** [1] - 32:6
**information** [5] - 26:4, 26:24, 26:25, 34:11, 34:12
**infringe** [1] - 22:2, 22:3
**infringement** [8] - 9:2, 9:3, 9:5, 10:24, 21:17, 21:22, 21:24, 24:9
**infringes** [2] - 22:6, 36:12
**infringing** [2] - 7:18, 22:16
**initial** [6] - 8:11, 10:8, 10:11, 15:18, 22:7, 32:24
**instead** [1] - 15:20
**intent** [1] - 9:4
**interest** [4] - 30:21, 30:22, 31:1, 31:2
**interested** [1] - 20:18
**international** [1] - 28:25
**interpretation** [2] - 7:16
**Interrogatories** [1] - 18:10
**interrogatories** [7] - 22:4, 24:5, 30:6, 30:22, 31:2, 36:5, 36:20
**interrogatory** [10] - 6:12, 7:4, 18:17, 19:11, 19:16, 19:22, 21:2, 25:6, 27:10, 36:14
**Interrogatory** [7] - 6:7, 6:9, 20:1, 23:6, 24:6, 24:12, 35:25
**invention** [1] - 34:13
**inventive** [1] - 32:2
**inventor** [1] - 32:1

**inventor's** [1] - 34:4
**inventors** [1] - 16:18
**inventorship** [2] - 33:4, 33:18
**involving** [1] - 31:6
**irrelevant** [1] - 8:17
**Israel** [5] - 28:24, 29:6, 30:7, 31:6, 31:9
**Israeli** [4] - 28:14, 31:12, 35:1, 35:5
**issue** [12] - 6:11, 8:5, 9:6, 11:25, 13:15, 14:13, 14:14, 18:2, 25:3, 33:24, 35:16, 36:20
**issues** [5] - 5:5, 5:6, 20:4, 24:25, 35:22
**Item** [2] - 6:5, 15:13
**itself** [2] - 5:20, 33:20

## J

**JACK** [1] - 2:14
**Jacobs** [3] - 19:4, 21:8, 21:10
**JACOBS** [13] - 2:6, 17:3, 17:13, 18:2, 18:16, 19:25, 21:7, 23:4, 23:11, 23:16, 23:20, 24:24, 26:11
**JOHNSON** [1] - 1:24
**joint** [2] - 9:2, 10:23
**JOSEPH** [1] - 3:16
**Joseph** [1] - 6:20
**JUDGE** [1] - 1:18
**judgment** [1] - 5:16

## K

**KAREN** [1] - 2:6
**KARIN** [1] - 3:24
**KEVIN** [1] - 3:25
**kind** [5] - 7:19, 7:23, 14:20, 15:15, 29:15
**kinds** [3] - 20:7, 23:15, 34:12
**kirk** [1] - 11:9
**KIRK** [2] - 2:10, 2:25
**KRAFTSCHIK** [1] - 2:7

## L

**lab** [1] - 33:4
**Lab's** [2] - 12:9, 12:21
**Labs** [4] - 13:11, 13:12, 14:4, 14:16
**language** [4] - 5:12,

5:20, 5:22, 5:24
**last** [3] - 5:11, 18:17, 27:24
**law** [1] - 27:11
**lawyers** [4] - 14:18, 14:21, 28:19
**least** [5] - 8:3, 16:5, 22:19, 25:24, 28:7
**leaving** [1] - 14:6
**left** [1] - 28:11
**legal** [1] - 25:21
**lEONARD** [1] - 4:5
**less** [2] - 6:10, 27:15
**letter** [16] - 6:2, 6:4, 6:9, 8:3, 8:11, 10:8, 10:11, 10:15, 11:19, 12:14, 12:15, 15:11, 15:12, 15:19, 17:24, 28:8
**letters** [1] - 9:10, 9:17, 9:24, 10:9, 11:23, 13:6, 14:12, 21:24, 22:1, 22:14, 24:8
**LEVENTHAL** [1] - 3:17
**LEWIS** [1] - 3:3
**license** [6] - 21:25, 23:17, 23:23, 28:16, 28:18, 29:12
**licensed** [1] - 23:22
**licensees** [1] - 18:14
**licenses** [7] - 21:19, 21:25, 23:9, 23:10, 23:15, 23:22, 24:16
**likely** [2] - 29:1, 34:19
**list** [1] - 27:17
**listed** [1] - 27:16
**litigation** [2] - 6:17, 30:22
**LLC** [2] - 1:4, 1:10
**LLP** [6] - 1:23, 2:9, 2:21, 2:24, 3:11, 3:23
**Location** [17] - 12:9, 12:21, 13:11, 13:12, 14:4, 14:15, 27:25, 28:11, 28:20, 29:1, 29:16, 30:1, 30:12, 30:19, 31:22, 32:11, 32:13
**look** [5] - 9:19, 9:25, 13:25, 24:17, 34:4
**looked** [2] - 6:8, 29:2
**looking** [5] - 6:2, 6:4, 17:17, 17:25, 24:15
**lost** [1] - 19:14

# M

**magic** [1] - 5:16
**mailed** [1] - 13:11
**MALGERI** [9] - 2:1,
25:12, 26:3, 26:10,
26:17, 26:25, 27:5,
27:22, 32:22
**Malgeri** [3] - 20:9,
25:14, 26:22
**mapping** [1] - 25:22
**marginal** [1] - 34:19
**MARK** [1] - 3:13
**Mark** [1] - 29:20
**mark** [1] - 24:21
**marked** [1] - 24:18
**marketplace** [1] -
23:8
**marking** [4] - 24:15,
24:25, 25:2, 25:3
**materials** [1] - 29:5
**matter** [3] - 10:24,
15:19, 17:14
**Mayor** [2] - 27:24,
30:2
**mean** [7] - 16:4,
19:19, 26:8, 29:10,
34:1, 34:3, 34:11
**meet** [1] - 11:12
**meet-and-confer** [1]
- 11:12
**messed** [1] - 24:22
**met** [2] - 11:4, 11:10
**met-and-conferred**
[1] - 11:10
**method** [1] - 18:13
**Michael** [1] - 5:10
**might** [4] - 7:21,
8:24, 20:15, 23:17
**million** [3] - 26:8,
26:11, 26:23
**millions** [1] - 14:4
**minute** [3] - 21:6,
21:8, 26:15
**Mobile** [3] - 3:1,
11:15, 12:2
**MOBILITY** [1] - 1:10
**Monday** [1] - 13:3
**money** [1] - 34:24
**months** [2] - 5:13,
5:17
**moot** [1] - 33:23
**moreover** [1] - 9:7
**MORGAN** [1] - 3:3
**MORITZ** [2] - 3:8,
3:20
**morning** [1] - 5:3
**MORRIS** [2] - 2:5,
2:13

**most** [1] - 24:8
**moving** [2] - 13:16,
36:6
**MR** [89] - 5:19, 5:22,
5:24, 6:18, 6:20, 7:2,
7:4, 7:10, 7:19, 8:1,
8:7, 8:14, 8:19, 8:23,
9:14, 10:7, 10:13,
10:19, 10:21, 10:22,
11:6, 11:9, 11:11,
11:15, 11:25, 12:8,
12:13, 12:16, 13:9,
13:19, 14:13, 14:22,
15:2, 15:9, 16:1, 16:7,
16:10, 16:16, 16:25,
19:2, 19:9, 20:9,
20:22, 21:13, 21:23,
22:9, 22:20, 23:2,
23:21, 23:25, 24:14,
25:6, 25:11, 25:12,
26:3, 26:10, 26:17,
26:25, 27:5, 27:22,
28:3, 28:13, 28:17,
29:2, 29:18, 29:23,
30:16, 30:18, 30:25,
31:17, 32:8, 32:13,
32:18, 32:22, 33:3,
33:10, 33:13, 33:16,
33:25, 34:3, 34:6,
34:9, 34:15, 35:7,
35:20, 35:24, 36:13,
36:19, 36:25
**MS** [12] - 17:3, 17:13,
18:2, 18:16, 19:25,
21:7, 23:4, 23:11,
23:16, 23:20, 24:24,
26:11
**must** [1] - 12:22
**Myer** [2] - 31:20, 35:9

# N

**name** [4] - 6:19,
11:8, 26:18, 26:20
**narrowly** [1] - 36:16
**narrowly-tailored** [1]
- 36:16
**near** [1] - 28:2
**necessarily** [1] -
25:24
**need** [7] - 5:14,
12:17, 14:17, 15:3,
20:4, 34:22, 37:3
**negatively** [1] -
31:14
**negotiating** [1] -
36:6
**NELSON** [1] - 3:13
**Net** [10] - 27:25,
28:20, 29:1, 29:16,

30:1, 30:12, 30:20,
31:22, 32:11, 32:13
**Net's** [1] - 28:11
**never** [1] - 31:8
**next** [3] - 14:12,
14:25, 30:6
**NICHOLS** [2] - 2:5,
2:13
**NO** [1] - 1:4
**NOAH** [1] - 2:1
**non** [1] - 19:13
**non-obvious** [1] -
19:13
**none** [2] - 6:6, 32:22
**Northern** [2] - 11:2,
13:16
**NORTON** [1] - 3:15
**notebooks** [1] - 33:4
**nothing** [1] - 36:4
**number** [5] - 9:14,
9:15, 22:24, 24:19,
24:21

# O

**o'clock** [4] - 1:10,
13:1, 13:3, 37:8
**object** [2] - 11:20,
11:21
**objection** [2] - 22:7,
22:11
**obligation** [2] -
35:10, 35:14
**obvious** [1] - 19:13
**obviously** [2] - 29:7,
29:10
**occurred** [1] - 16:13
**October** [3] - 1:8,
6:5, 15:13
**OF** [2] - 1:2, 1:16
**offer** [3] - 18:12,
23:1, 23:4
**offered** [1] - 11:12
**Official** [1] - 4:6
**on-sale** [1] - 20:4
**one** [13] - 6:12, 7:14,
8:6, 10:22, 11:3,
14:14, 15:8, 20:18,
24:24, 28:24, 29:4,
35:24
**ones** [4] - 12:9,
20:15, 36:22, 37:4
**operating** [3] -
19:10, 26:16, 26:17
**operational** [1] -
25:15
**option** [2] - 29:3,
31:5
**Order** [1] - 13:22
**order** [1] - 37:3

**ordering** [1] - 35:2
**otherwise** [2] - 10:6,
35:6
**ought** [3] - 23:13,
31:4, 31:5
**overbroad** [2] - 6:11,
36:5
**own** [1] - 12:25
**owner** [1] - 30:20

# P

**p.m** [2] - 1:10, 15:25
**page** [1] - 27:14
**pages** [5] - 9:25,
11:24, 26:12, 26:23
**papers** [2] - 6:8,
15:16
**parenthetical** [1] -
5:25
**park** [1] - 20:8
**part** [7] - 7:22, 7:23,
16:24, 17:17, 19:25,
20:3, 28:7
**particular** [3] - 5:16,
18:19, 28:22
**particularly** [1] -
12:12
**parties** [4] - 5:5,
5:11, 7:5, 36:5
**partly** [1] - 24:7
**parts** [1] - 25:9
**past** [1] - 19:24
**patent** [15] - 15:24,
16:15, 20:23, 20:24,
22:20, 23:22, 24:18,
24:21, 25:2, 25:22,
28:17, 29:11, 29:24,
30:20
**patents** [9] - 7:17,
18:13, 18:15, 19:8,
20:12, 22:16, 22:19,
25:20, 25:21
**patents-in-suit** [2] -
18:15, 19:8
**PAUL** [1] - 2:15
**Pause** [1] - 21:9
**people** [10] - 9:10,
9:12, 16:19, 21:22,
22:1, 22:15, 22:16,
23:22, 26:14, 35:2
**Pepper** [1] - 25:14
**PEPPER** [1] - 1:23
**personal** [2] - 29:21,
32:25
**personally** [1] -
32:15
**persuaded** [2] - 9:21,
31:11
**phone** [2] - 13:8,

14:25
**pick** [1] - 28:5
**picked** [1] - 28:3
**Plaintiff** [2] - 1:6,
1:23
**plus** [1] - 26:23
**point** [5] - 18:21,
19:5, 20:14, 34:3,
35:24
**position** [7] - 6:13,
7:9, 7:12, 8:16, 9:6,
10:24, 19:11
**possession** [4] -
29:17, 32:9, 32:25,
35:13
**practice** [8] - 15:22,
16:13, 29:25, 30:5,
30:12, 33:9, 33:11,
33:20
**practiced** [1] - 15:20
**precedence** [1] -
33:17
**predecessor** [2] -
25:16, 27:1
**predecessors** [1] -
19:7
**priority** [4] - 15:14,
15:21, 15:22, 16:15
**privately** [1] - 22:15
**privilege** [2] - 8:15,
9:7
**privileged** [5] - 8:13,
9:20, 9:21, 10:2
**procedure** [5] -
13:22, 14:7, 14:8,
15:2, 15:7
**procedures** [1] -
15:8
**proceedings** [1] -
37:8
**process** [1] - 12:1
**processes** [3] -
28:25, 31:6, 35:5
**processing** [8] -
16:3, 18:3, 18:5,
18:20, 20:11, 20:12,
20:13, 20:20
**produce** [12] - 22:14,
22:25, 24:7, 25:16,
26:1, 27:12, 29:21,
30:13, 32:15, 32:22,
33:22, 35:14
**produced** [18] - 7:1,
7:3, 7:6, 11:22, 15:17,
21:25, 22:10, 24:8,
26:5, 26:7, 26:8,
26:12, 26:23, 27:2,
32:10, 32:19, 33:1,
33:5
**producing** [2] -

22:11, 35:11
**product** [8] - 7:17, 8:15, 9:7, 19:16, 22:6, 22:21, 24:16, 25:2
**products** [22] - 18:13, 19:10, 19:12, 19:23, 20:1, 20:8, 20:11, 21:11, 22:2, 22:3, 22:17, 22:23, 23:8, 23:25, 24:17, 25:5, 25:7, 25:13, 25:17, 25:20, 25:22, 27:1
**profits** [1] - 19:14
**proper** [2] - 36:9, 36:12
**prosecution** [2] - 5:23, 29:24
**Protective** [1] - 13:22
**prove** [1] - 17:22
**provide** [1] - 15:20
**provision** [2] - 7:7, 18:18
**provisional** [11] - 16:6, 16:14, 17:4, 17:7, 17:9, 17:10, 17:16, 17:20, 18:23, 18:24, 18:25
**provisionals** [1] - 18:19
**public** [5] - 9:11, 18:12, 23:1, 25:16
**purpose** [3] - 19:20, 19:21, 36:13
**purposes** [1] - 34:17
**pursue** [4] - 31:5, 36:16, 36:22, 37:5
**pursuing** [1] - 6:24
**put** [3] - 8:19, 10:25, 24:1

## Q

**questions** [3] - 5:8, 36:16, 37:2
**quick** [1] - 15:3
**quite** [2] - 5:6, 36:19

## R

**raised** [1] - 6:6
**raising** [1] - 29:4
**range** [1] - 13:24
**reach** [1] - 32:6
**read** [1] - 12:15
**reading** [2] - 15:18, 29:5
**really** [3] - 5:15, 9:5, 12:24
**reasonable** [1] -

27:23
**reasons** [1] - 29:4
**received** [1] - 13:12
**recess** [1] - 37:7
**record** [4] - 9:11, 10:18, 10:25, 22:5
**reduction** [8] - 15:22, 16:13, 29:25, 30:5, 30:12, 33:8, 33:11, 33:19
**referred** [1] - 28:15
**refused** [1] - 18:11
**regard** [1] - 5:17
**regarding** [2] - 26:6, 31:1
**regards** [1] - 5:10
**REIN** [1] - 3:23
**relate** [1] - 6:16
**related** [2] - 21:11, 33:19
**relating** [2] - 17:18, 24:10
**relation** [2] - 29:11, 31:12
**relationship** [2] - 23:16, 30:9
**relevance** [1] - 33:7
**relevant** [10] - 9:1, 9:2, 9:22, 19:14, 22:16, 24:9, 24:14, 24:24, 25:3, 27:1
**relying** [2] - 19:17, 19:20
**remains** [1] - 13:6
**Reporter** [2] - 4:5, 4:6
**REPORTER** [2] - 6:19, 11:8
**represent** [1] - 28:19
**represented** [1] - 16:20
**representing** [1] - 12:20
**request** [5] - 8:10, 10:4, 12:3, 18:9, 27:7
**requires** [1] - 25:21
**resolve** [1] - 13:8
**resolves** [1] - 35:22
**respect** [1] - 8:5
**respond** [2] - 13:3, 13:25
**responded** [1] - 12:2
**response** [10] - 8:4, 9:18, 10:8, 10:12, 14:9, 15:3, 15:16, 30:21, 31:2, 32:10
**resulted** [1] - 21:25
**RICHARD** [1] - 1:17
**ROBERT** [1] - 4:1
**room** [1] - 31:23

**ROSE** [1] - 3:15
**ROSS** [2] - 3:8, 3:20
**ruling** [1] - 36:7
**Ruthenberg** [2] - 11:9, 33:14
**RUTHENBERG** [28] - 2:10, 2:25, 11:6, 11:9, 12:16, 13:19, 15:9, 28:13, 28:17, 29:2, 29:18, 29:23, 30:16, 30:18, 30:25, 31:17, 32:8, 33:3, 33:10, 33:13, 33:16, 33:25, 34:3, 34:6, 34:9, 34:15, 35:7, 35:20

## S

**SAINDON** [1] - 2:15
**sake** [9] - 18:12, 20:2, 20:4, 20:17, 20:25, 22:25, 23:1, 23:5
**SAMAY** [1] - 2:18
**satisfied** [1] - 27:8
**scan** [1] - 23:7
**SCHEFFEL** [1] - 4:1
**SCHLADWEILER** [2] - 3:9, 3:21
**scope** [1] - 7:17
**SCOTT** [2] - 2:18
**seated** [1] - 5:3
**second** [4] - 6:2, 13:17, 24:12, 29:14
**secondary** [1] - 19:13
**see** [10] - 6:9, 9:19, 13:17, 14:9, 15:5, 17:24, 21:20, 33:4, 35:6
**seeing** [1] - 25:24
**seeking** [2] - 19:14, 34:17
**SEITZ** [2] - 3:8, 3:20
**sensible** [1] - 30:24
**sent** [3] - 13:12, 21:23, 22:1
**separate** [1] - 9:6
**service** [1] - 35:9
**services** [2] - 18:14, 29:20
**several** [1] - 18:19
**shield** [1] - 23:17
**short** [1] - 23:17
**shot** [1] - 7:24
**show** [3] - 28:1, 28:9, 35:14
**shows** [1] - 28:8
**side** [1] - 7:14
**signal** [1] - 9:12
**significant** [1] - 28:7

**simple** [1] - 23:13
**simply** [1] - 26:13
**sit** [1] - 25:11
**six** [1] - 5:17
**so..** [1] - 27:4
**sold** [1] - 27:1
**solid** [1] - 17:18
**sometimes** [2] - 12:1, 28:21
**somewhere** [3] - 26:9, 26:23, 27:13
**sorry** [9] - 7:11, 11:8, 18:16, 19:4, 20:12, 22:1, 33:16, 34:6, 34:7
**sort** [6] - 5:12, 22:15, 23:1, 24:5, 25:21, 31:14
**sorts** [1] - 10:3
**sought** [2] - 7:5, 21:16
**speaking** [1] - 19:24
**specific** [4] - 12:17, 13:23, 37:2, 37:4
**specifically** [1] - 11:24
**specify** [1] - 12:19
**specifying** [2] - 13:22, 15:21
**spending** [1] - 34:24
**Sprint** [3] - 2:11, 11:16, 12:2
**spun** [2] - 22:18, 22:20
**start** [1] - 36:5
**STATES** [2] - 1:1, 1:18
**STEPHEN** [1] - 2:7
**still** [2] - 16:5, 32:11
**stop** [1] - 29:13
**STRAWN** [1] - 2:17
**stream** [2] - 24:18, 25:17
**struck** [1] - 28:10
**stuff** [1] - 15:1
**subject** [2] - 17:13, 22:12
**subjective** [1] - 9:4
**submit** [4] - 9:18, 10:14, 10:15, 19:15
**submitting** [1] - 10:16
**subpoena** [3] - 32:3, 32:10, 35:9
**subpoenas** [1] - 16:22
**subsequently** [1] - 26:19
**sued** [1] - 21:20
**suggesting** [1] - 5:22

**suggestion** [1] - 13:9
**suit** [3] - 18:13, 18:15, 19:8
**SUPARNA** [1] - 2:2
**support** [1] - 37:1
**supporting** [2] - 30:4, 30:11
**suppose** [1] - 19:7
**supposed** [1] - 36:6
**surprised** [1] - 6:24
**sustain** [1] - 6:12
**sword** [1] - 31:7
**system** [6] - 20:11, 20:13, 20:20, 21:15, 22:17, 24:10
**systems** [2] - 21:10, 21:11

## T

**T-Mobile** [3] - 3:1, 11:15, 12:2
**tailored** [1] - 36:16
**target** [3] - 17:23, 17:25, 36:6
**team** [2] - 34:10, 34:24
**ten** [2] - 27:14, 36:20
**term** [1] - 28:16
**terms** [3] - 6:25, 7:16, 24:12
**testify** [1] - 28:9
**THE** [99] - 1:2, 1:17, 5:3, 5:21, 6:1, 6:19, 6:21, 7:3, 7:8, 7:11, 7:24, 8:6, 8:8, 8:18, 8:21, 9:8, 9:17, 10:10, 10:14, 10:20, 11:1, 11:7, 11:8, 11:10, 11:14, 11:17, 12:5, 12:11, 12:15, 12:19, 13:17, 14:2, 14:19, 14:23, 15:4, 15:10, 16:4, 16:8, 16:12, 16:18, 17:1, 17:8, 17:15, 18:7, 18:23, 19:4, 19:19, 20:5, 20:20, 21:4, 21:8, 21:19, 22:1, 22:13, 22:23, 23:3, 23:10, 23:14, 23:19, 23:24, 24:3, 24:20, 25:4, 25:9, 25:23, 26:7, 26:15, 26:21, 27:3, 27:12, 27:24, 28:5, 28:14, 28:19, 29:9, 29:22, 30:3, 30:17, 30:23, 31:3, 31:25, 32:16, 32:20, 33:2, 33:7, 33:12, 33:14,

33:17, 34:1, 34:5,
34:7, 34:14, 34:16,
35:16, 35:21, 36:3,
36:17, 36:21, 37:6
  **theories** [1] - 8:23
  **therefore** [1] - 24:22
  **they've** [2] - 28:15,
36:19
  **thinking** [3] - 6:15,
25:25, 34:20
  **three** [3] - 5:12,
13:19, 13:20
  **timely** [1] - 13:25
  **today** [1] - 10:25
  **tomorrow** [2] - 12:7,
13:2
  **track** [3] - 18:3, 18:5,
18:20
  **traditional** [1] -
34:18
  **TRANSCRIPT** [1] -
1:16
  **trial** [2] - 28:9, 30:8
  **tried** [1] - 11:11
  **trouble** [1] - 35:18
  **try** [5] - 15:5, 15:25,
26:2, 31:5, 35:5
  **trying** [7] - 12:4,
14:13, 17:25, 28:25,
33:8, 33:11, 33:14
  **Tuesday** [3] - 13:7,
15:25, 16:24
  **TUNNELL** [2] - 2:5,
2:13
  **turns** [1] - 34:20
  **two** [5] - 9:25, 10:9,
24:5, 25:9, 27:14
  **type** [2] - 27:10, 33:5

# U

  **U.S** [1] - 28:1
  **under** [3] - 13:22,
25:20, 35:9
  **underlying** [1] - 7:6
  **understood** [1] -
12:22
  **undertaking** [1] -
7:19
  **undoubtedly** [1] -
25:12
  **UNITED** [2] - 1:1,
1:18
  **up** [15] - 14:25, 15:8,
17:10, 20:14, 24:10,
24:22, 26:18, 27:20,
28:1, 28:8, 28:9, 29:6,
33:21, 33:23

# V

  **VALENZUELA** [1] -
3:12
  **various** [1] - 35:22
  **vendor** [1] - 23:16
  **Verizon** [1] - 4:2
  **views** [1] - 13:21
  **voluntarily** [1] -
30:13

# W

  **wait** [1] - 6:2
  **waiver** [2] - 6:22,
6:23
  **wall** [1] - 14:20
  **week** [3] - 14:12,
14:25, 30:6
  **weeks** [1] - 12:1
  **whatnot** [1] - 20:4
  **WHITNEY** [1] - 3:5
  **wholeheartedly** [1] -
26:3
  **widely** [1] - 25:17
  **WILEY** [1] - 3:23
  **willful** [1] - 9:3
  **WINSTON** [1] - 2:17
  **witness** [1] - 35:10
  **wondering** [1] - 8:8
  **word** [1] - 28:1
  **words** [1] - 23:18
  **work-product** [1] -
9:7
  **worthwhile** [1] - 9:23
  **write** [1] - 8:11
  **writing** [1] - 12:22
  **wrote** [1] - 9:17

# Y

  **year** [2] - 5:13, 29:6
  **yourself** [1] - 36:11
  **yourselves** [1] - 28:6

# Z

  **Zammit** [1] - 6:20
  **ZAMMIT** [13] - 3:16,
6:18, 6:20, 7:2, 7:4,
8:14, 8:19, 8:23, 9:14,
10:7, 10:13, 10:19,
10:21