IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., <br> INTEGRA LIFESCIENCES SALES LLC, <br> CONFLUENT SURGICAL, INC., and <br> INCEPT LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HYPERBRANCH MEDICAL <br> TECHNOLOGY, INC., <br><br> Defendant. | C.A. No. 15-819 (LPS) (CJB) <br><br> **PUBLIC VERSION** |

**REPLY LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
IN SUPPORT OF HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S
MOTION TO STRIKE PLAINTIFFS' NEW IDENTIFICATION OF EVIDENCE
REGARDING PRIORITY DATES AND NEW BIOCOMPATIBILITY THEORY**

OF COUNSEL:

Jonathan G. Graves
Stephen C. Crenshaw
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Restin, VA 20190
(703) 456-8000

Adam M. Pivovar
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7889

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com
*Attorneys for HyperBranch Medical Technology, Inc.*

**Confidential Version Filed: November 13, 2017**

**Public Version Filed: March 16, 2018**

Dear Judge Burke:

Plaintiffs' opposition letter continues their pattern of refusing to take responsibility for their own discovery failures. Plaintiffs admit that they never presented the requested priority date evidence or their biocompatibility theory in response to HyperBranch's contention interrogatories on priority date and invalidity, yet seek to blame HyperBranch for Plaintiffs' hide-the-ball tactics. HyperBranch is not the party who should accept the consequences for Plaintiffs' repeated failures to comply with their basic discovery obligations.

First, regarding priority dates, Plaintiffs do not (and cannot) point to a disclosure during fact discovery of the new evidence relied on by their experts. Instead, Plaintiffs misleadingly refer to their supplemental interrogatory responses, generically citing inventor testimony and deposition exhibits that are not relied on in Dr. Mays' rebuttal report. (*Compare* D.I. 380-1, Ex. 2 at 15–16 (identifying "Exhibits 57 and 58 to the previous deposition of the inventors along with the transcripts of those depositions (i.e., Amar Sawhney and Steven Bennett)" and "Steve Bennett deposition transcript at pp. 147–48"), *with* D.I. 376, Ex. 6 (Dr. Mays' Rpt.) at 147–54 (citing only the '034 patent), 174–77 (citing only the provisional application).) Notably, Plaintiffs' interrogatory responses do not provide even a bare citation to the priority documents Dr. Mays relies on. Plaintiffs' mere production of documents, without any guidance as to what portions Plaintiffs were relying on, did not provide notice of the alleged support Plaintiffs' expert now seeks to rely on for their priority date assertions.

Plaintiffs' attempt to shift the blame for their deficient responses to HyperBranch is unavailing.[1] Plaintiffs argue it was HyperBranch's responsibility to move to compel sufficient discovery responses, but the Federal Rules of Civil Procedure place the burden of "fully" responding to each interrogatory *on the responding party* and require timely supplementation of those responses. (*See* Fed. R. Civ. P. 33(b)(3), 26(e)(1)(A).) Moreover, "the burden [was] on [Plaintiffs] to come forward with evidence to prove entitlement to claim priority to an earlier filing date." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305–06 (Fed. Cir. 2008). Merely identifying dates (without identifying the underlying factual basis) did not obviate Plaintiffs' obligation to provide complete supplemental responses identifying the portions of the priority documents on which they intended to rely. And a mapping of each limitation to a priority document is not an issue of expert analysis—it is simply a factual identification of support from each priority document properly addressed in responses to contention interrogatories.

Second, regarding Plaintiffs' new biocompatibility theory, Plaintiffs again fail to present any evidence of disclosure of this theory or evidence supporting it during fact discovery. Instead, Plaintiffs again attempt to distract the Court by blaming their deficient disclosures on HyperBranch's failure to file a motion to compel. But Plaintiffs do not address or deny HyperBranch's reasonable reliance on Plaintiffs' assertion that they would supplement their

---

[1] Plaintiffs cite several cases alleging that sanctions for discovery failures are inappropriate without a previous motion to compel. Notably, in *U.S. v. Certain Real Property Located at Rte. 1, Bryant, Ala.*, 126 F.3d 1314 (11th Cir. 1997), the overturned sanction was the entry of a **default judgment** against the claimants. No such case-determinative sanction has been requested by HyperBranch.

Plaintiffs also rely on *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, Case No. 12-CV-03587-WHO (N.D. Cal. Feb. 20, 2015), but fail to note that there the Plaintiff sought to strike discussion of a prior art combination that *was* disclosed in invalidity contentions, although that disclosure included an additional reference that was later dropped. Here, Plaintiffs chose not to answer Interrogatory No. 3 and provided only dates in response to Nos. 1 and 2.

validity responses during fact discovery—which they never did. Moreover, Plaintiffs again ignore their obligation to fully respond to this interrogatory by identifying the facts, documents, and witnesses they would rely on to rebut invalidity at trial. *See, e.g.*, *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 844 F. Supp. 987, 990 (D. Del. 1994) ("Where an interrogatory seeks a disclosure of each fact supporting a contention, and an identification of each document evidencing that fact and each person with knowledge of that fact, the Court will look to Wesley–Jessen's response as identifying the facts, documents and witnesses it may rely on at trial as containing or offering evidence supporting that contention, and Wesley–Jessen should expect that the Court will not allow it to offer into evidence in its case in chief documents or testimony supporting that contention that are not disclosed in its response."). Because Plaintiffs failed to provide *any* substantive response during fact discovery, HyperBranch reasonably assumed that Plaintiffs had not developed any validity rebuttal and had no reason to file a motion to compel.

Plaintiffs also allege that "all of the factual information relied on by Plaintiffs' experts to rebut the prior art invalidity positions was already known to Defendant and Dr. Lowman." (D.I. 380 at 3.) HyperBranch disputes this assertion because Wallace does not stand for the proposition that Plaintiffs contend. Nevertheless, Wallace's disclosures are not the issue here. HyperBranch's knowledge of the existence of Wallace did not and could not put HyperBranch on notice of Plaintiffs' biocompatibility theory. Indeed, HyperBranch's entire purpose for serving a contention interrogatory was to seek out Plaintiffs' validity theories. *See Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 544 (D. Kan. 2006) (contention interrogatories "may be used to narrow and define the issues for trial. More specifically, contention interrogatories may enable the propounding party to determine the proof required to rebut the responding party's position.") (citations omitted).

Plaintiffs' misdirection regarding HyperBranch's knowledge is even more questionable given Plaintiffs' admissions in the parallel *Inter Partes* Review proceeding regarding their new biocompatibility theory. In a motion to submit supplemental information to the Patent Trials and Appeals Board, Plaintiffs stated that they "had no reason to look to Wallace in search of such [biocompatibility] information. It was not until late September 2017 after Hyperbranch served its opening expert report on invalidity in the parallel district court litigation that Patent Owner first appreciated the relevance of Wallace to the present IPR." (Ex. 11 at 4.) This representation directly undermines Plaintiffs' argument here that HyperBranch was on notice of Plaintiffs' biocompatibility theory during fact discovery.

Plaintiffs argue a lack of surprise or prejudice based on their production of the '034 patent and provisional application and **HyperBranch's** production of Wallace. But the production of documents alone (especially where such documents are not cited in Plaintiffs' interrogatory responses) is not a disclosure of the evidence or theories Plaintiffs intend to rely on at trial. The new disclosure of such evidence and theories clearly prejudices HyperBranch, which had a mere 11 days to respond to this new evidence and theories without the benefit of fact discovery (and during which time HyperBranch's expert Dr. Lowman was on a two week trip to China (Ex. 12 at 71:25–72:3 ("I was in the middle of a two-week trip to China"); 171:11–12 ("This is my reply report . . . . I was in China."); 204:13–18 ("[T]he biocompatibility was kind of a new issue Dr. Mays has disclosed. So again, I think I first saw it when I was in China. So I've spent not as much time as I would like"))). Plaintiffs cannot be permitted to blame and prejudice HyperBranch for Plaintiffs' blatant disregard of their discovery obligations. Given these circumstances, the Court should grant HyperBranch's motion to strike the newly identified evidence and theory.

Respectfully,

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)

TCG/dam
cc:  Counsel of Record (by CM/ECF and email)
11439170