## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., )
INTEGRA LIFESCIENCES SALES LLC, )
CONFLUENT SURGICAL, INC., and )
INCEPT LLC, )
                )
          Plaintiffs, )
                )
      v. )           Civil Action No. 15-819-LPS-CJB
                )
HYPERBRANCH MEDICAL )
TECHNOLOGY, INC., )
                )
          Defendant. )

### MEMORANDUM ORDER

At Wilmington this **23rd day of March, 2018**.

**WHEREAS**, the Court has considered the following: (1) Plaintiffs' "Motion to Strike

the New Invalidity Theory in the First Supplemental Expert Report of Dr. Lowman Regarding

Biocompatibility," ("Plaintiffs' Motion to Strike") (D.I. 510), and the parties' related letter

submissions, (D.I. 511, 517, 537); and (2) Defendant's "Motion to Strike Plaintiffs' Improper

Interrogatory Response Shifting Asserted Priority Dates," ("Defendant's Motion to Strike") (D.I.

522), and the parties' related letter submissions, (D.I. 524, 547, 552);

**NOW, THEREFORE, IT IS HEREBY ORDERED** as follows:

1.     Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide

information . . . as required by Rule 26[](e), the party is not allowed to use that information . . . to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless." In considering whether to exclude evidence relating to an untimely or

otherwise improper disclosure, the United States Court of Appeals for the Third Circuit has

directed district courts to weigh certain factors, known as "the *Pennypack* factors": (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). Because "[t]he exclusion of critical evidence is an extreme sanction," the Third Circuit has explained that it should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted).

      2.      Plaintiffs' Motion to Strike, filed pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, (D.I. 510 at 1), is DENIED. Plaintiffs request that the Court: (1) strike a new invalidity theory (asserting that claim 10 of United States Patent No. 7,009,034 (the "'034 patent") is anticipated by Jacobs) first disclosed in Defendant's expert Dr. Anthony Lowman's "First Supplemental Expert Report and Declaration [] Regarding Plaintiffs' New 'Biocompatible' Hydrogel Theory and Contentions Arising Thereunder[;]" and (2) preclude Defendant from offering any testimony, evidence, and/or argument regarding that theory in connection with trial and/or any dispositive motion. (*Id.* (internal quotation marks omitted)) Plaintiffs first argue that the theory (hereafter, the "Jacobs anticipation theory") violates the Court's October 27, 2017 Oral Order (the "Oral Order"), which noted that "[t]o the extent that, in the future, Defendant attempts to use a reference not listed in the chart of 24 Invalidity Grounds to establish disclosure of a

2

claim limitation in the prior art, it will be precluded from doing so." (D.I. 511 at 1 (emphasis omitted)) And second, Plaintiffs argue that the Jacobs anticipation theory should be stricken because Jacobs is not prior art under pre-AIA 35 U.S.C. § 102(a). (*Id.* at 2)

3.      Taking up Plaintiffs' latter argument first, the Court agrees with Defendant that that argument relates to a dispute about a legal issue—one not appropriate for resolution on a motion to strike. (D.I. 517 at 5) Indeed, Plaintiffs' argument in that regard does not rely on Rules 26 or 37, but instead on substantive "patent law[.]" (D.I. 511 at 2) Such an issue is more fairly adjudicated on summary judgment, for instance. *See, e.g.*, *Intellectual Ventures I, LLC v. Canon Inc.*, 143 F. Supp. 3d 143, 167 (D. Del. 2015) (resolving, via a motion for summary judgment, whether a reference is prior art to the asserted patent); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 367 (D. Del. 2015) (same).

4.      Plaintiffs' remaining argument (that Defendant's Jacobs anticipation theory violates the Court's Oral Order) is not persuasive, because that Order was issued prior to the Court's consideration of the parties' dispute regarding Plaintiffs' new biocompatible hydrogel theory. (*See* D.I. 517 at 2) Plaintiffs themselves have acknowledged that they did not develop this "biocompatibility theory" of validity until September 2017, a fact that the Court has previously noted in multiple orders. (December 14, 2017 Oral Order; January 24, 2018 Oral Order) Plaintiffs argue that because Jacobs had been listed in HyperBranch's contentions as a reference that constituted prior art and/or evidence of the state of the art, HyperBranch could have selected it as one of its 24 Prior Art Grounds back on June 1, 2017. (D.I. 537 at 1) But that line of argument is not a fair one, since HyperBranch could not have known as of June 1, 2017 that Plaintiffs would be belatedly identifying their new biocompatibility theory three months

3

later.  Dr. Lowman's supplemental report details why, in his opinion, Jacobs discloses, *inter alia*, claim 10's required feature of a "'biocompatible' hydrogel." (D.I. 510, ex. 1 at ¶¶ 110-16)[1] Presumably, if Plaintiffs had timely disclosed their biocompatibility theory, Defendant would have tailored its selections of prior art grounds accordingly—but Plaintiffs did not. (D.I. 517 at 4 ("HyperBranch's identification of relevant prior art in response to a new validity theory, claim construction, and identification of evidence by Plaintiffs is appropriate and would not have been necessary had Plaintiffs disclosed their validity theories during fact discovery as requested."))[2]

     5.     Defendant's Motion is GRANTED.  On December 1, 2016, in connection with a prior discovery dispute, the Court granted Defendant's request for an order compelling Plaintiffs to "supplement their interrogatory responses by December 9, 2016, to identify . . . the asserted priority date for the asserted claims on a claim-by-claim basis or be held to the presumptive date the patent applications were filed with respect to priority." (D.I. 199 at 3; *see also* D.I. 380, ex. 1 at 17-18)  The Court explained that "[i]t's an important issue in the case . . . when the priority date is for those claims, so that the accused infringer can know as to what date it must use as its target to find prior art that precedes that date that might be potentially invalidating." (D.I. 380, ex. 1 at 17-18); *see also, e.g., OpenTV, Inc. v. Apple Inc.*, Case No. 15-cv-02008-EJD (NC), 2016 WL 3196643, at *2 (N.D. Cal. June 9, 2016) ("A patent holder's asserted priority and conception

---

[1]     A round of supplemental expert reports was permitted to allow HyperBranch and its experts "a full and fair opportunity to develop non-infringement and invalidity positions in light of Plaintiffs' new 'biocompatibility' theory and any claim constructions the Court may adopt in response to that theory." (D.I. 467 at 3; *see also* December 28, 2017 Oral Order)

[2]     As for the *Pennypack* factors, Plaintiffs did not even address them in their opening letter brief, (*see* D.I. 511; D.I. 517 at 1, 3), and the Court finds that they do not apply here where HyperBranch's single additional prior art ground was necessitated by Plaintiffs' own untimely disclosure of its biocompatibility theory.

date is pivotal to the accused infringer's assessment of relevant prior art.").

      6.     In response to the Court's order, on December 9, 2016, Plaintiffs identified November 9, 2001 as the priority date for claim 10 of the '034 patent. (D.I. 524, ex. 2, Plaintiffs' Supplemental Objections and Answers to HyperBranch's Interrogatories Nos. 1 and 2) HyperBranch represents that by that time, it had identified numerous publications to support its invalidity and state of the art arguments which would be prior art under a November 2001 date, but would be antedated by a February 2001 date (and as such, Plaintiffs at that time had every motivation to ascertain the accurate, earliest priority date for claim 10). (D.I. 524 at 2 & n.2; D.I. 552 at 1-2) Then, over a year later on February 18, 2018, Plaintiffs asserted for the first time that claim 10 of the '034 patent is actually entitled to an *earlier* priority date of at least February 2001. (D.I. 524 at 1) Plaintiffs' explanation for their late-disclosed earlier priority date (that "HyperBranch's failure to identify Jacobs as an anticipatory reference meant that Plaintiffs[] had no reason to have to develop contentions for conception and reduction to practice earlier [] than the filing date of the '034 patent"), (D.I. 547 at 4), flies in the face of the Court's prior order, and is not otherwise persuasive. *See, e.g., Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, Case No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618, at *10 (E.D. Tex. June 20, 2017) (finding that plaintiff did not adequately explain its delay in disclosing an earlier priority date, where plaintiff earlier "had an incentive to trace the [asserted] patent's priority date to as far back as possible in light of other asserted prior art references allegedly made public in 1997 [that plaintiff] has known about . . . since January 2015").

      7.     The Court finds that the *Pennypack* factors weigh in favor of striking Plaintiffs' belated shift in the asserted priority date. There can be no dispute that HyperBranch would be

prejudiced by such a shift, as HyperBranch's entire invalidity case against claim 10 of the '034 patent has relied on a priority date of November 9, 2001. (D.I. 524 at 2) With trial set to begin in less than one month, such prejudice to HyperBranch could not be cured without substantially disrupting trial. (*Id.* at 2-3) With respect to the fourth *Pennypack* factor, this is not the first time that Plaintiffs have made an unduly late change to their positions in this case; while their actions here may not rise to the level of bad faith or willfulness, at a minimum, they are part of a developing pattern of untimeliness. Thus, even if this fourth factor could not be said to favor exclusion of the evidence, it surely would not provide *support* for Plaintiffs' position, either. As for the final *Pennypack* factor, Plaintiffs may still challenge HyperBranch's Jacobs anticipatory defense by asserting, for example, that it does not disclose the required elements, or that it does not qualify as prior art for other reasons (the Court does not understand its ruling here to preclude Plaintiffs' argument that Jacobs is not prior art under pre-AIA 35 U.S.C. § 102(a)). (*See* D.I. 511 at 2; D.I. 524 at 3 (HyperBranch asserting with respect to this factor that "Plaintiffs may still argue that HyperBranch's prior art references do not qualify as prior art" and not requesting that the paragraphs of Dr. Mays' Surreply Supplemental Report and Declaration relating to that issue be stricken); *id.*, ex. 5 at ¶¶ 3-4)

8.     Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **March 28, 2018** for review by the Court, along with a motion for redaction that includes a clear, factually-detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking

6

closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Order.

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

7