# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP.,    )
INTEGRA LIFESCIENCES SALES LLC,  )
CONFLUENT SURGICAL, INC., and    )
INCEPT LLC,    )
    )
    Plaintiffs,    )
    )
    v.    )    Civil Action No. 15-819-LPS-CJB
    )
HYPERBRANCH MEDICAL    )
TECHNOLOGY, INC.,    )
    )
    Defendant.    )

## MEMORANDUM ORDER

In this action filed by Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales

LLC, Confluent Surgical, Inc. and Incept LLC (collectively, "Plaintiffs" or "Integra") against

Defendant HyperBranch Medical Technology, Inc. ("Defendant" or "HyperBranch"), presently

before the Court are: (1) Defendant's *Daubert* Motion to exclude testimony offered by Plaintiffs'

proffered expert, Dr. Dennis J. Rivet, II, (D.I. 394) ("Defendant's Motion"); (2) Plaintiffs'

*Daubert* Motion to exclude testimony offered by Defendant's proffered expert, Dr. Jonathan

Flombaum, (D.I. 396); and (3) Plaintiffs' *Daubert* Motion to exclude testimony offered by

Defendant's proffered expert, Dr. Anthony Lowman, (*id.*) ("Plaintiffs' Motion Regarding Dr.

Flombaum and Dr. Lowman" and together with Defendant's Motion, "the Motions"). For the

following reasons, the Court DENIES Defendant's Motion and GRANTS-IN-PART Plaintiffs'

Motion Regarding Dr. Flombaum and Dr. Lowman, as set out below.[1]

---

[1]    Under the circumstances here, the resolution of these *Daubert* Motions is
properly treated as non-dispositive, and the Motions are resolved by the Court pursuant to 28
U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). *See, e.g.*, *Withrow v. Spears*, 967 F. Supp. 2d
982, 987 n.1 (D. Del. 2013) (citing cases).

## I.     PROCEDURAL BACKGROUND

Plaintiffs filed the instant case on September 15, 2015.  (D.I. 1)  Plaintiffs allege

infringement of United States Patent Nos. 7,009,034, 7,332,566, 7,592,418, 8,003,705 and

8,535,705 ("the asserted patents").[2]  On September 25, 2015, Chief Judge Leonard P. Stark

referred this case to the Court to hear and resolve all pretrial matters, up to and including the

resolution of case-dispositive motions.  (D.I. 15)

Briefing on the instant Motions were completed on December 21, 2017.  (D.I. 460, 463)

A 7-day trial is set to begin on May 29, 2018.  (D.I. 660)

## II.     STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of qualified expert testimony,

providing that an expert witness may testify if:  "(a) the expert's scientific, technical, or other

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case."  Fed. R. Evid. 702.  Rule 702's requirements have been

examined in detail by the Supreme Court of the United States in *Daubert v. Merrell Dow

Pharms., Inc.*, 509 U.S. 579 (1993), and have been said to embody "three distinct substantive

restrictions on the admission of expert testimony:  qualifications, reliability, and fit."  *Elcock v.

Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also B. Braun Melsungen AG v. Terumo

Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010).

---

[2]     Plaintiffs originally also alleged infringement of United States Patent No. 6,566,406, but Plaintiffs do not appear to currently be asserting any claims from that patent. (*See, e.g.*, D.I. 402 at ix)

In terms of expert qualifications, an inquiry under Rule 702 must address whether the expert witness has "'specialized knowledge' regarding the area of testimony." *Elcock*, 233 F.3d at 741 (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). The basis of this specialized knowledge may be "practical experience as well as academic training and credentials." *Id.* (internal quotation marks and citations omitted). At a minimum, however, "a proffered expert witness . . . must possess skill or knowledge greater than the average layman." *Id.* (internal quotation marks and citations omitted). The United States Court of Appeals for the Third Circuit has tended to apply this standard liberally. *Id.*; *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

With regard to the second requirement of reliability, Rule 702 mandates that the relevant expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590; *see also Schneider*, 320 F.3d at 404. The information provided by experts should be "ground[ed] in the methods and procedures of science" and be "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also Schneider*, 320 F.3d at 404.[3] In examining this requirement, a court's focus must be on "principles and methodology" rather than on the conclusions generated by the expert. *Daubert*, 509 U.S. at 595; *see also Daddio v. Nemours Found.*, 399 F. App'x 711, 713 (3d Cir. 2010).

The third requirement of expert testimony, the "fit" requirement, "goes primarily to relevance" as the testimony must "assist the trier of fact to understand the evidence or to

---

[3]     The Supreme Court later held in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), that the obligations imposed by *Daubert* extended to not only scientific expert testimony but rather to all expert testimony. 526 U.S. at 147.

3

determine a fact in issue" and have "a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92 (internal quotation marks omitted); *see also Schneider*, 320 F.3d at 404. The standard for fit, however, is not a high one; it is met "when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (citations omitted).

Overall, "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG*, 749 F. Supp. 2d at 222 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008)). Nonetheless, the burden is placed on the party offering expert testimony to show, by a preponderance of proof, that it meets each of the standards for admissibility. *Id.* (citing *Daubert*, 509 U.S. at 592 n.10).[4]

## III.   DISCUSSION

### A.    Defendant's Motion

Defendant moves to exclude those portions of Dr. Rivet's testimony in which he opines

---

[4]      Neither party sought an evidentiary hearing as to the Motions or suggested that the factual record was insufficiently developed such that a hearing of that type was required. The Third Circuit has held that a trial court need not conduct an evidentiary hearing on a *Daubert* challenge if the record is sufficient to allow the Court to make a determination on the issues in dispute. *See, e.g.*, *Oddi v. Ford Motor Co.*, 234 F.3d 136, 151-55 (3d Cir. 2000); *Maldonado v. Walmart Store No. 2141*, Civil Action No. 08-3458, 2011 WL 1790840, at *13 n.10 (E.D. Pa. May 10, 2011). Here, the relevant expert reports were provided to the Court, as was certain of the experts' deposition testimony regarding those reports. The parties also ably addressed issues relating to the relevant expert reports in their briefing. In light of this, the Court has determined that the record before it is sufficient to allow for a decision on the admissibility of these experts' testimony under *Daubert*. *See, e.g.*, *Furlan v. Schindler Elevator Corp.*, 516 F. App'x 201, 205-06 (3d Cir. 2013); *Oddi*, 234 F.3d at 151-55; *Maldonado*, 2011 WL 1790840, at *13 n.10.

on whether the use of Defendant's products (the "Accused Products")[5] by other neurosurgeons would be covered by the asserted patents, and what other neurosurgeons would understand from Defendant's training materials. (D.I. 402 at 52-53; D.I. 463 at 28)[6] Defendant's assault on Dr. Rivet's testimony is presented via two different lines of attack.

First, Defendant asserts that Dr. Rivet's testimony is not based on a scientific methodology and should be excluded as unreliable, chiefly because Dr. Rivet has never personally used the Accused Products. (D.I. 402 at 52-53; *see also* D.I. 463 at 30) Instead, Dr. Rivet: (1) reviewed the Instructions for Use ("IFUs") for the Accused Products, as well as two videos depicting assembly and use of the Adherus AutoSpray Dural Sealant in a cranial operation, and (2) relied upon conversations with colleagues who used the accused Adherus AutoSpray Extended Tip (ET) Dural Sealant. (D.I. 417, ex. 165 at ¶¶ 31-35) Defendant asserts, with little supporting explanation, that such evidence is either "unreliable or irrelevant[.]" (D.I. 402 at 53)

It is not clear to the Court, however, *why* it is that this evidence is "unreliable or irrelevant." The above-referenced evidence relates (fairly directly) to how the Accused Products work and how they are used. To be sure, that evidence does not include Dr. Rivet's own firsthand experience with using the products at issue. But while having such experience might be beneficial for an expert testifying about whether a product infringes a patent claim, it is not a

---

[5]     The Accused Products are HyperBranch's Adherus Dural Sealant, Adherus Spinal Sealant, Adherus AutoSpray Dural Sealant, and Adherus AutoSpray Extended Tip (ET) Dural Sealant. (D.I. 402 at vii-viii)

[6]     Specifically, the opinions at issue in Defendant's Motion are found in paragraphs 2, 4 and 31-38 of Dr. Rivet's opening expert report, (D.I. 417, ex. 165), and paragraphs 3, 9 and 14-18 of Dr. Rivet's rebuttal expert report, (*id.*, ex. 160). (D.I. 402 at 53 n.19)

prerequisite to offering such testimony. (D.I. 443 at 38-39 (citing cases)); *see also Tormenia v. First Inv'rs Realty Co.*, 251 F.3d 128, 135 (3d Cir. 2000) ("Rule 702 does not require that experts have personal experience with the object of the litigation in which they testify, nor does it require that experts eschew reliance on a plaintiff's account of factual events that the experts themselves did not observe."). Defendant may explore any concerns regarding what Dr. Rivet did and did not observe, or what he did or did not consider, via cross-examination. *See, e.g., Iplearn, LLC v. Blackboard Inc.*, C.A. No. 11-876 (RGA), 2014 WL 4954462, at *2 (D. Del. Sept. 29, 2014) (noting that an expert "need not use the [allegedly infringing product] if, as here, he has familiarized himself with it in other ways. Reviewing source code and other materials can be sufficient. Whether [the expert] should have based his expert opinion on personal use with the product, rather than source code and other materials, is fodder for cross-examination, not a *Daubert* issue for this Court").

Second, Defendant asserts that Dr. Rivet's testimony (regarding the extent to which a surgeon using the Accused Products would understand to stop using the product when a "uniform, even coating" has been applied, such that a "predetermined thickness" has been reached) amounts to unreliable speculation. (D.I. 402 at 55 (citing D.I. 417, ex. 165 at ¶¶ 35-38)) It argues that this testimony amounts to giving an opinion as to what is going on in the mind of another neurosurgeon, and that Dr. Rivet "merely relies on his sense of sight in watching videos and his intuition of what the users in those videos are thinking." (*Id.*; *see also* D.I. 463 at 28-29)

The Court finds that Dr. Rivet's testimony here passes muster under the liberal standards of *Daubert*, however. Dr. Rivet has extensive experience as a neurosurgeon, has personally performed over 4,000 cranial and/or spinal surgeries, and has used Plaintiffs' patented DuraSeal

6

product hundreds of times in the course of those surgeries. (D.I. 417, ex. 165 at ¶¶ 7-11; D.I. 456, ex. 15 at 54) As Plaintiffs point out, this personal, relevant experience—coupled with Dr. Rivet's review of the IFUs and videos relating to the Accused Products—could help a jury understand: (1) that a neurosurgeon like him would receive training before using devices like the Accused Products, and (2) how (in Dr. Rivet's opinion) a neurosurgeon like him would then utilize the Accused Products in an infringing manner. (D.I. 443 at 37-38; D.I. 417, ex. 165 at ¶¶ 18, 20-24, 31-38) That Dr. Rivet's methodology did not consist of a "'testable hypothesis" for which there are "'standards controlling the technique's operation'" is not dispositive of the admissibility of his opinions. *See Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 203 F. Supp. 3d 499, 543, 545 (E.D. Pa. 2016) (finding that an expert's testimony had a "sufficient foundation for reliability" where he "based his testimony on his review of the relevant evidence and his expertise"); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[A]n expert might draw a conclusion from a set of observations based on extensive and specialized experience."); Fed. R. Evid. 702 advisory committee's note to 2000 amendments ("Nothing [in Rule 702] is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony").

Because Defendant's concerns regarding Dr. Rivet's testimony are more appropriately addressed by vigorous cross-examination during trial, the Court will deny Defendant's Motion.

**B.      Plaintiffs' Motion Regarding Dr. Flombaum and Dr. Lowman**

**1.      Opinions that are Purportedly Inconsistent with the Court's Claim Construction**

Plaintiffs contend that a significant portion of Dr. Lowman's and Dr. Flombaum's non-infringement opinions are based on an erroneous claim construction and should thus be precluded as unreliable, irrelevant, unhelpful and confusing to the jury.  (D.I. 397 at 5-6)  Where expert testimony is in fact inconsistent with a court's claim construction, it should be excluded under the *Daubert* standard on these grounds.  *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016); *Personalized User Model, L.L.P. v. Google Inc.*, C.A. No. 09-525-LPS, 2014 WL 807736, at *1-2 (D. Del. Feb. 27, 2014).  When assessing whether an expert applied a court's claim construction appropriately, the focus should not be on whether the expert used identical words for the term (as compared to the words used in the court's construction); instead, it should be on whether the expert employed the same effective meaning for the term as that expressed in the court's construction.  *Cf. Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008); *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, CIVIL ACTION NO. 6:11-cv-492-RWS-KNM, 2017 WL 4020591, at *4-5 (E.D. Tex. Sept. 13, 2017).

As the Court has previously explained, certain of the asserted claims—the "Predetermined Thickness claims," (*see* D.I. 555 at 1)—require a "visualization agent" that causes a visually "observable change" that is correlated with a thickness of hydrogel, such that the "observable change" can be used to indicate that a "predetermined thickness" of the hydrogel has been deposited (i.e., the "predetermined thickness requirement"), (*id.* at 6).  In light of this, the Court finds that Dr. Lowman's statement (challenged here by Plaintiffs) that the predetermined thickness claims have three requirements—(1) the visualization agent causes the visual change, (2) a correlation requirement, and (3) a naked eye indication requirement—does not contradict the Court's claim construction.  (D.I. 397 at 7-8; D.I. 398, ex. 3 at ¶ 136)  Indeed,

8

the Court used similar language to describe the predetermined thickness requirement in its recent opinion addressing the parties' summary judgment motions with respect to the Predetermined Thickness claims.  (*See* D.I. 555 at 6)

Yet the Court agrees with Plaintiffs that there are two sets of these experts' statements (those further dissecting what, in their view, the predetermined thickness requirement entails) that effectively narrow the Court's constructions.  The Court addresses these two such instances below.

First, Dr. Lowman opines that the claims "require a *precise and distinctive* change in color (or transparency) that is observable to the human eye and correlates with a distinct thickness of the deposited material."  (*See, e.g.*, D.I. 398, ex. 1 at ¶ 388 (emphasis added))  Dr. Flombaum adopts this opinion.  (*See, e.g.*, *id.*, ex. 2 at ¶ 27 ("As Dr. Lowman has informed me, the [Predetermined Thickness] Claims require a precise and distinctive color (or transparency) change that correlates with a distinct thickness of the deposited material."))  This adds unnecessary words to the Court's construction, which construed "observable change" to mean "change in the color or transparency of the hydrogel observable to the human eye."  (D.I. 307 at 37; *see also* D.I. 379)  And requiring a "precise and distinctive" change seems to suggest that a change that is something more than "observable to the human eye" and correlated to a "predetermined thickness" is required—which is not correct.

Second, Dr. Lowman opines that the claims require that "a human must match a *specific* color (or transparency) to [] another color (or transparency) that represents the color (or transparency) of the hydrogel at a 'predetermined thickness' from memory."  (D.I. 398, ex. 1 at ¶ 402 (emphasis added))  And Dr. Flombaum adopts this opinion.  (*See, e.g.*, *id.*, ex. 2 at ¶ 28

("[W]hen depositing the hydrogel material, a user would be required to match a specific and distinct color (or intensity) from memory that is correlated with a predetermined thickness to that of a color (or intensity) previously observed.")) In the Court's view, however, this is not necessarily required by the claims.[7]

Dr. Lowman's (and Dr. Flombaum's) specific color matching requirement, as it is articulated above, could be used to unduly limit a "predetermined thickness" to a *single* thickness, for example—and that would be contrary to the Court's construction. (D.I. 460 at 3 (Plaintiffs' reply brief noting that "one would expect particular thicknesses in the range to have different colors and/or transparencies")) In construing the "predetermined thickness" term, the Court resolved a dispute between the parties in Plaintiffs' favor regarding whether "predetermined thickness" must constitute a single particular thickness (i.e., with one specific numerical value), as Defendant had argued, or whether it can encompass ranges of predetermined thickness, as Plaintiffs had argued. (D.I. 307 at 24)

Moreover, as the Court recently explained in resolving the parties' summary judgment motions regarding the Predetermined Thickness claims, a reasonable juror could agree with Dr.

---

[7]    Plaintiffs also challenge Dr. Lowman's (and Dr. Flombaum's) statements that: (1) "[t]he claims thus require a user to be able to observe and discriminate in real-time and from memory colors or transparencies as the thickness of the hydrogel increases and know, from memory, when the 'test' color or transparency has been observed to indicate that the 'predetermined thickness['] has been . . . achieved and to stop applying additional thickness[;]" and (2) the claims "require a user to be able to very accurately and consistently perform color (or transparency) matching from memory"—i.e., "[t]he same color matching that one cannot perform in buying paint to match the color of one's walls from memory." (*See, e.g.*, D.I. 398, ex. 3 at ¶ 136 (emphasis omitted); *id.*, ex. 1 at ¶¶ 396, 399; *see also id.*, ex. 2 at ¶¶ 19-20, 28) The Court views these opinions similarly to the experts' opinion that "a human must match a *specific* color (or transparency) to [] another color (or transparency) that represents the color (or transparency) of the hydrogel at a 'predetermined thickness' from memory" and reaches the same conclusion as to them.

10

Mays' application of the relevant constructions and view a "'change in the color . . . of the hydrogel observable to the human eye'" as being satisfied by a hydrogel that goes from a "'green tint with gaps'" to an "even green color[.]" (D.I. 555 at 23)  Yet it does not jibe with Dr. Lowman's requirement for the matching of a "specific" color or transparency to another color or transparency (because Dr. Mays' articulation does not necessarily describe a change to one "specific" shade of green).[8]  Because expert testimony that is inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact, these portions of Dr. Lowman's and Dr. Flombaum's opinions described above (which narrow the predetermined thickness requirement beyond the Court's construction) are stricken.[9]  *See, e.g., Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 634-35 (D. Del. 2017).[10]

---

[8]    The Court further notes that the specific color/transparency matching-from-memory requirement that Dr. Lowman and Dr. Flombaum describe appears inconsistent with the teaching in the patents that an observable change could relate to a viewer being unable to see a feature or thing (or to see it less clearly) after the composition is applied, which, as the Court explained in construing the terms, would also amount to a change in the *transparency* of the hydrogel. (D.I. 307 at 35-37)  That kind of "observable change" need not necessarily result in the observation of one "specific" transparency, every time.

[9]    Plaintiffs' Motion also sought to exclude as inconsistent with the Court's claim construction Dr. Lowman's asserted opinion that the claims require a "'categorical change in color'"—i.e., an actual change between different colors such as a change from blue to red. (D.I. 397 at 8)  If Dr. Lowman was presenting such an opinion, then the Court would side with Plaintiffs.  However, Defendant responded that Dr. Lowman does not opine that the claims *require* a categorical change in color, (D.I. 445 at 9), and Plaintiffs do not further press the issue in their reply brief, (D.I. 460 at 4 n.3).

[10]    Plaintiffs also assert that Dr. Flombaum's opinions should be excluded because he is a psychologist with no relevant experience, skill or training in the pertinent art, and is therefore not qualified to testify in this case. (D.I. 397 at 4-5; D.I. 460 at 1-2)  While Defendant does not dispute that Dr. Flombaum is not an expert with respect to hydrogels, Defendant responds that Dr. Flombaum is an expert in human color perception and color memory, which are fields that are directly related to the predetermined thickness requirement.  Thus, Defendant contends that Dr. Flombaum's opinions will assist the factfinder in understanding the technical issues in

2.    **Opinions that Purportedly Should be Excluded Based on a Failure to Disclose Facts or Data**

Plaintiffs next seek to exclude two additional opinions in Dr. Lowman's reports, on the ground that Dr. Lowman did not put forward sufficient facts or data to bolster those opinions.

The first relates to Dr. Lowman's opinion wherein he disagrees with Plaintiffs' experts' contention that barium sulfate is not "biocompatible." (D.I. 398, ex. 6 at ¶ 203) Dr. Lowman explains that: (1) he has personally used barium sulfate in hydrogels as part of the hydrogel products under development by his company; (2) his company has introduced barium sulfate-containing hydrogels into animal models; and (3) he was involved in a human clinical trial in 2007 (in collaboration with Synthes) that utilized a hydrogel with barium sulfate. (*Id.*)[11] Each of these experiences has contributed to Dr. Lowman's conclusion that barium sulfate is biocompatable. (*Id.*) Plaintiffs assert that this opinion should be excluded because Dr. Lowman failed to disclose any facts or data regarding the above-referenced product development efforts/clinical trial, nor the criteria he used to determine that such hydrogels were biocompatible. (D.I. 460 at 4; *see also* D.I. 397 at 9)

If a witness is relying solely or primarily on experience, then the witness "must explain

---

dispute, such as how the appearance of materials varies and why humans cannot reliably discriminate between closely-related colors from memory. (D.I. 445 at 1-6) However, based on the Court's conclusion above, the Court need not address this portion of Plaintiffs' Motion because above it has struck all of the substantive portions of Dr. Flombaum's opinions. (*See, e.g.*, D.I. 460 at 2 (Plaintiffs pointing out that while Defendant argues that Dr. Flombaum is properly qualified as an expert on "'human perception of color and the ability of humans to match colors based on memory,'" the "so-called color matching 'technical issue' is premised on improperly adding additional requirements to the Court's claim construction"))

[11]    Defendant also points out that Dr. Lowman identified barium sulfate as a component in the Rhee '500 patent for inclusion in hydrogels that would enhance visualization after being applied within a patient's body. (D.I. 445 at 11; *see also* D.I. 403 at ¶¶ 92, 110, 151)

how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note to 2000 amendments (citation omitted); *see also, e.g.*, *Ruggiero v. Yamaha Motor Corp., U.S.A.*, Civil Action No. 15-49 (JBS/KMW), 2017 WL 1197755, at *6 (D.N.J. Mar. 31, 2017). Here, though, Dr. Lowman did not simply state that barium sulfate containing hydrogels are "biocompatible." Instead, he provided some explanation in his expert report as to why he came to this conclusion based on his personal experience, and he fleshed out additional details regarding that experience during his deposition. (D.I. 398, ex. 6 at ¶ 203; *see also* D.I. 429, ex. 39 at 169-74)[12] While Dr. Lowman's explanation certainty could have been more robust, Plaintiffs' concerns regarding the lack of data may be explored on cross-examination. *See, e.g., Figueroa v. Boston Sci. Corp.*, 254 F. Supp. 3d 361, 368-69 (S.D.N.Y. 2003) (finding that a lack of data to support an expert's opinions was not fatal to the admissibility of his testimony, where he had extensive experience, education and knowledge in the relevant field and also reviewed relevant literature, as an expert may base his opinion on experience alone and the lack of textual authority for the expert's opinion goes to the weight of the expert's testimony).

The second opinion at issue here is the following, which was disclosed in Dr. Lowman's rebuttal report on non-infringement:

> I have received and used DuraSeal kits to test the use of the product. The AutoSpray product is, in my view, a substantially

---

[12] During the portion of his deposition in which he was questioned about this opinion, Plaintiffs' counsel did not appear to follow up with any further questions about *why* these development efforts/clinical trial results impacted Dr. Lowman's view on biocompatibility.

> superior feature to the DuraSeal product. Application was not
> nearly as easy or consistent.
> (*See* https://www.youtube.com/watch?v=8ecOgre8vG4)

(D.I. 398, ex. 3 at ¶ 47 n.3)  Plaintiffs assert that Dr. Lowman's opinion in this regard is not

reliable because he failed to disclose any facts or data regarding his "tests" of the DuraSeal

product.  (D.I. 397 at 9; D.I. 460 at 5)

However, Dr. Lowman explained in his deposition that he used the DuraSeal product

(and an Adherus AutoSpray product) to test out "how they handled[.]"  (D.I. 429, ex. 39 at 188)

And in his report, he cited to video depicting the application of DuraSeal (presumably to provide

visual support consistent with his experience as to why the product was not "easy or consistent"

in use).  (D.I. 398, ex. 3 at ¶ 47 n.3; D.I. 445 at 12 (Defendant noting that the video "shows that

the DuraSeal applicator does not provide an even or easy way to apply material"))  The subject

matter here does not appear particularly complex, and Plaintiffs' attorneys had the opportunity to

question Dr. Lowman about this test during his deposition.  (D.I. 429, ex. 39 at 188-89)  Dr.

Lowman's testimony here should be permitted pursuant to *Daubert*'s liberal standard of

admissibility.  At trial, Plaintiffs can challenge Dr. Lowman's opinion through cross-examination

and presentation of contrary evidence.  *See Exelis Inc. v. Cellco P'ship*, C.A. No. 09-190-LPS,

2012 WL 6043494, at *13 (D. Del. Nov. 6, 2012) ("'Where there is a logical basis for an expert's

opinion testimony, the credibility and weight of that testimony is to be determined by the jury,

not the trial judge.'") (quoting *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir.

1983)).

## IV.    CONCLUSION

For the reasons set out above, the Court hereby ORDERS that Defendant's Motion be

14

DENIED and Plaintiffs' Motions Regarding Dr. Flombaum and Dr. Lowman be GRANTED-IN-PART, as set out above.

This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a) and D. Del. LR 72.1. The parties may serve and file specific written objections by no later than **April 13, 2018**; responses are due by no later than **April 23, 2018.** The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **April 9, 2018** for review by the Court, along with a motion for redaction that includes a detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: April 4, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

15