## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEGRA LIFESCIENCES CORP., | : | |
| INTEGRA LIFESCIENCES SALES LLC, | : | |
| CONFLUENT SURGICAL, INC., and | : | **UNSEALED ON** |
| INCEPT LLC, | : | **JUNE 4, 2018** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | C.A. No. 15-819-LPS-CJB |
| | : | |
| HYPERBRANCH MEDICAL | : | |
| TECHNOLOGY, INC., | : | |
| | : | |
| Defendant. | : | |

Karen L. Pascale, James L. Higgins, YOUNG CONWAY STARGATT & TAYLOR LLP, Wilmington, DE

Robert F. Altherr, Jr., Christopher B. Roth, BANNER & WITCOFF, LTD., Washington, DC

Jason S. Shull, BANNER & WITCOFF, LTD., Chicago, IL

John P. Iwanicki, BANNER & WITCOFF, LTD., Boston, MA

     Attorneys for Plaintiffs


Thomas C. Grimm, Jeremy A. Tigan, Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Jonathan G. Graves, COOLEY LLP, Reston, VA

Adam M. Pivovar, James P. Hughes, Stephen C. Crenshaw, Lisa F. Schwier, Nicholas G. Lockhart, Naina Soni, COOLEY LLP, Washington, DC

     Attorneys for Defendant


## MEMORANDUM OPINION

May 8, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are the parties' objections (D.I. 651, 653, 663, 664, 673) to two

Memorandum Orders (D.I. 586, 601) and two Reports and Recommendations (D.I. 652, 658)

issued by Magistrate Judge Burke between March 20 and March 29, 2018.  For the reasons

discussed below, the Court will deny the parties' objections and adopt the decisions of Judge

Burke.

## I.     LEGAL STANDARDS

### A.     *Daubert* Motions

Federal Rule of Evidence 702 requires that expert testimony be (1) based upon sufficient

facts or data, (2) the product of reliable principles and methods, and (3) the reliable application of

those principles and methods to the facts of the case.  "Where there is a logical basis for an

expert's opinion testimony, the credibility and weight of that testimony is to be determined by the

jury, not the trial judge." *In re TMI Litig.*, 193 F.3d 613, 713 (3d Cir. 1999) *amended*, 199 F.3d

158 (3d Cir. 2000) (citation omitted).  The weight and credibility of an expert's testimony may be

challenged through "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596

(1993).  Proponents of expert evidence do not have to "demonstrate to the judge by a

preponderance of the evidence that the assessments of their experts are correct, they only have to

demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli R.R.*

*Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).

A *Daubert* motion to exclude testimony presents a non-dispositive matter.  Objections to

a Magistrate Judge's recommendation on a non-dispositive motion are subject to a "clearly

erroneous and contrary to law" standard of review, pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). Under a "clearly erroneous" standard, the court will only set aside factual findings when it is "left with the definite and firm conviction that a mistake has been committed." *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007) (internal quotation marks omitted). Accordingly, it is "the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (internal quotation marks omitted).

A Magistrate Judge's order is contrary to law "when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins.*, Co., 237 F.R.D. 545, 548 (D.N.J. 2006); *see also Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009) (stating "a magistrate judge's decision typically is entitled to deference" while "a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo") (internal quotation marks omitted).

The Third Circuit has explained that on appeal it "afford[s] a district court's application and interpretation of Rule 702 plenary review," but "review[s] the [trial] court's decision to admit or reject testimony under an abuse of discretion standard." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000) (internal citations omitted). A court "abuses its discretion" if "its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or the improper application of law to fact." *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 322 (3d Cir. 2012). An abuse of discretion also occurs when "no reasonable person would adopt the

2

district court's view." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000); *Oddi*, 234 F.3d at 146.

### B.    Summary Judgment Motions

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party carries its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions,

3

conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

A Magistrate Judge has authority to make a report and recommendation as to resolution of a case-dispositive motion, such as a motion for summary judgment. *See* § 636(b)(1)(B); *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 444 (3d Cir. 2005). The District Judge must consider timely objections to a Magistrate Judge's order. Fed. R. Civ. P. 72. When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts *de novo* review. *See* § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Because a motion for summary judgment is considered a dispositive matter, the conclusions of the Magistrate Judge in connection with such a motion are reviewed *de novo. See N.L.R.B. v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992). The Court may accept, reject, or modify the recommendations of the Magistrate Judge. *See* § 636(b)(1);

4

*Hill v. Beyer*, 62 F.3d 474, 481 (3d Cir. 1995). The Court may also receive further evidence or return the matter to the Magistrate Judge with instructions for further proceedings. *See* § 636(b)(1).

## II.   DISCUSSION

### A.   Order Relating to Parties' *Daubert* Motions Directed to Damages Experts Kidder and Jarosz (D.I. 586)

#### 1.   Defendant's motion to exclude testimony of Jarosz (D.I. 395)

Defendant HyperBranch Medical Technology, Inc. ("HyperBranch" or "Defendant") seeks to exclude the opinions of Plaintiffs Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC's (collectively, "Plaintiffs" or "Integra") damages expert, John C. Jarosz, relating to his reasonable royalty and price erosion calculations. (D.I. 402 at 45-52) Specifically, HyperBranch contends Mr. Jarosz improperly invokes the Entire Market Value Rule and fails to apportion damages on a claim-by-claim basis in his reasonable royalty opinion and puts forth an unreliable price erosion theory that does not fit the evidence of the case. (*Id.*) In a Memorandum Order dated March 20, 2018, Judge Burke denied HyperBranch's motion, finding its arguments went "to the weight of the evidence, and not to the admissibility of Mr. Jarosz's opinions." (D.I. 586 at 5)

HyperBranch objects that the Order clearly erred in allowing Mr. Jarosz to present his price erosion theory. (D.I. 651 at 5) According to HyperBranch, Mr. Jarosz's opinion "suffer[s] from two fatal flaws:" (1) he does not analyze the actual cause of the price decline nor confirm that his formula actually captures the lost profits Integra would have made but for HyperBranch's alleged infringement and (2) his calculations do not fit the facts of the case because they exclude the very testimony which allegedly establishes price erosion in the first instance. (*Id.* at 1) As a

5

non-dispositive motion, the Court reviews the Order for clear errors of law and clearly erroneous findings of fact. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(a); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). The Court finds no such error.

First, HyperBranch contends Mr. Jarosz's price erosion calculation "ignores the core premise of any lost profits analysis" by failing to determine what Integra would have made ***but for*** the alleged infringement. (D.I. 651 at 6) Instead of analyzing ***why*** certain accounts experienced price declines and whether those declines were related to HyperBranch activity, or alternatively, were due to Integra's own discounting schemes, Mr. Jarosz, in the view of HyperBranch, "simply lumps all accounts experiencing any decline into a single price erosion cohort." (*Id.*)

The Court agrees with the Order: "[t]here will surely be plenty of fodder for cross-examination with respect to Mr. Jarosz's price erosion opinions . . . [b]ut Mr. Jarosz has an articulable explanation" surrounding his calculations and his choices "do not fall below *Daubert*'s liberal standard of admissibility." (D.I. 586 at 11-12) Furthermore, as Integra showed, in reaching his price erosion calculation, Mr. Jarosz considered, *inter alia*, the state of the relevant marketplace when HyperBranch launched its Adherus products, HyperBranch's actions specifically targeting Plaintiffs' customers, the price difference between HyperBranch's and Integra's prices, and whether any price decline occurring when Adherus entered the market was later recovered. (D.I. 667 at 3-4) While HyperBranch may disagree with each step of Mr. Jarosz's calculations, none of HyperBranch's arguments show that the "principles and methodology" supporting his calculation are unreliable. *See Daubert*, 509 U.S. at 595. To the contrary, Integra has adduced evidence from which damages may be proven to a reasonable

probability. *See Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985); *see also generally* D.I. 667 at 2 (Integra arguing: "the fact of price erosion is supported by economic logic and common sense. HyperBranch entered the U.S. marketplace with the only FDA-approved synthetic dural sealant alternative to DuraSeal, and it consciously and aggressively undercut DuraSeal's prices.").

Second, HyperBranch contends Mr. Jarosz's calculation contradicts the facts of the case by excluding from his analysis certain hospitals identified as allegedly suffering price erosion. (D.I. 651 at 8) HyperBranch particularly faults the expert for only selectively relying on Integra's Director of Marketing and Global Franchise Lead for Dural Repair, Curtis Lenox. (*See id.* at 2, 3, 8-10) Integra responds that the customer-by-customer analysis HyperBranch seeks is not feasible here due to the volume of customers at issue; and, regardless, substantial evidence supports Mr. Jarosz's conclusion of widespread price erosion.

Again, the Court finds no clear errors of law or clearly erroneous findings of fact. HyperBranch's concern regarding which customers were, or were not, captured by Mr. Jarosz's calculation "goes to the weight to be given to Mr. Jarosz's opinions regarding price erosion, and not their admissibility." (D.I. 586 at 11) HyperBranch will be able to pursue each of these theories on cross-examination.

The Court will overrule HyperBranch's objections (D.I. 651), adopt the Order (D.I. 586), and deny HyperBranch's *Daubert* motion relating to Mr. Jarosz (D.I. 395).

### 2.    Plaintiffs' motion to exclude testimony of Kidder (D.I. 396)

Integra seeks to exclude portions of testimony from HyperBranch's damages expert witness, Douglas Kidder, relating to his apportionment analysis and reasonable royalty rate

7

reduction.  (D.I. 397 at 10-13)  As the Court granted HyperBranch's letter motion to strike Mr.

Jarosz's market share apportionment opinion in a prior memorandum order ("the March 13, 2018

Memorandum Order"), the March 20, 2018 Order solely addressed Integra's second argument

relating to Mr. Kidder's reasonable royalty opinion and recommended Integra's motion be

denied.  (D.I. 586 at 12-15)

      Integra contends Judge Burke erred in failing to address its first argument relating to Mr.

Kidder's apportionment analysis because the March 13, 2018 Memorandum Order only

addressed testimony by Integra's expert, Mr. Jarosz, not HyperBranch's expert, Mr. Kidder.  (D.I.

653 at 1)[1]  The Court sees no clear error of law or clearly erroneous findings of fact in the

Order's decision to address only Integra's reasonable royalty argument.  *See* 28 U.S.C.

§ 636(b)(l); Fed. R. Civ. P. 72(a); *Haines*, 975 F.2d at 91.  As HyperBranch acknowledges,

"[b]ecause Plaintiffs are now precluded from advancing their lost sales theories at trial, Mr.

Kidder's rebuttal testimony is no longer necessary" and he will not need to "present his

challenged opinions at trial."  (D.I. 668 at 1-2)  Accordingly, there was no need for the Order to

consider Integra's arguments on the apportionment issue.

      The Court will overrule Integra's objections (D.I. 653), adopt the Order (D.I. 586), and

deny Integra's *Daubert* motion relating to Mr. Kidder (D.I. 396).

**B.**      **Order Regarding New Invalidity Theory
and Asserted Priority Dates (D.I. 601)**

      In a Memorandum Order issued March 23, 2018, Judge Burke denied Integra's motion to

strike the new invalidity theory in the first supplemental expert report of Dr. Lowman regarding

---

[1]Integra does not object to the Order's finding on Mr. Kidder's reasonable royalty opinion.

"biocompatibility" (D.I. 510) and granted HyperBranch's motion to strike Plaintiffs' improper

interrogatory response shifting asserted priority dates (D.I. 522). (D.I. 601 at 1)  Integra objects

to both rulings. (D.I. 663 at 1-2)  As both motions relate to non-dispositive issues, the Court

reviews the Order for clear errors of law and clearly erroneous findings of fact. *See* 28 U.S.C.

§ 636(b)(l); Fed. R. Civ. P. 72(a); *Haines*, 975 F.2d at 91.

First, Integra contends the Order wrongly denied its motion to strike a new invalidity

theory asserting that claim 10 of the '034 patent is anticipated by Jacobs[2] because HyperBranch

identified Jacobs in December 2016 and June 2017 but later chose not to cite it in its final

election of 24 Prior Art Invalidity Grounds. (D.I. 663 at 2-3)  Accordingly, Integra asserts,

Plaintiffs should not be prejudiced now by HyperBranch's late assertion of Jacobs. (*Id.* at 3-4)

Integra contends Judge Burke's ruling is "based on the incorrect assumption that HyperBranch

could not have relied on Jacobs ***but for*** Plaintiffs' rebuttal position" regarding biocompatibility.

(*Id.* at 4)  The Court disagrees.

As the Order stated, "Plaintiffs themselves have acknowledged that they did not develop

th[eir] 'biocompatibility theory' of validity until September 2017;" therefore, "HyperBranch

could not have known as of June 1, 2017 [when it served its final invalidity contentions] that

Plaintiffs would be belatedly identifying their new biocompatibility theory three months later."

(D.I. 601 at 3-4)  While HyperBranch did cite Jacobs in its first supplemental invalidity grounds

in December 2016 and its final invalidity contentions in June 2017, HyperBranch should not be

penalized for later excluding Jacobs from its 24 Invalidity Grounds when the purpose for which it

---

[2]"SprayGel™ as New Intraperitoneal Adhesion Prevention Method for Use in Laparoscopy and Laparotomy," VR Jacobs, E Lehmann-Willenbrock, M Kiechle, L Mettler, ISGE 10 Convention, Chicago March 2001.

has been reasserted now is due entirely to Integra's late disclosure of a new validity theory. The Court agrees with HyperBranch when it states: "[t]hat HyperBranch *technically could have* identified Jacobs in its election of 24 Prior Art Invalidity Grounds is of no import – Plaintiffs had not yet provided a reason for HyperBranch to do so." (D.I. 685 at 2)[3]

Second, Integra contends HyperBranch's motion to strike should be denied because Integra's supplemental response to Interrogatory No. 1 identifying the earlier priority date was provided in response to HyperBranch's belated reliance on Jacobs, HyperBranch's assertion that Dunn was incorporated by reference into Jacobs, and Dr. Lowman's subsequent opinion that Dunn inherently teaches forming a hydrogel within 5 seconds after contact with the substrate. (D.I. 663 at 6-7) Integra contends Judge Burke erred by "failing to consider Plaintiffs' explanation that the reason they did not earlier identify February 2001 as a conception date for claim 10 is that Dunn does not expressly teach 'the hydrogel forms within 5 seconds after contact with the substrate.'" (*Id.* at 8)

As Judge Burke noted, Integra had a duty under the Court's December 1, 2016 order to investigate the basis for their asserted priority dates of each claim and "supplement their interrogatory responses by December 9, 2016." (D.I. 601 at 4) On December 9, 2016, Integra conceded that Dunn did not teach the 5 second hydrogel requirement, and, thus, that the earliest priority date was November 9, 2001. (*See* D.I. 663 at 8) ("Plaintiffs reviewed Dunn and found that it was a basis for alleging an earlier conception date of February 2001 for claim 6. Dunn, however, did not expressly teach the 5 second hydrogel formation time of claim 10.") That

---

[3]As Integra did not address the *Pennypack* factors in its opening letter brief (*see* D.I. 511; D.I. 517 at 1, 3; D.I. 601 at 4 n.2), the Court will not address its objections based on that ground here. *See* D. Del. LR 7.1.3(c)(2).

"Plaintiffs did not have the benefit of [HyperBranch's] *Dr. Lowman's* opinion" has no bearing

on Integra's ability to identify what it contended was the proper priority date. (D.I. 663 at 8)

(emphasis added)  As Plaintiffs admit in their objections, "they had already considered Dunn,

determined that Dunn did not expressly teach 'the hydrogel forms within 5 seconds after contact

with the substrate' and so did not assert a conception date on that basis." (*Id.*)

Accordingly, the Court will overrule Integra's objections as to both motions (D.I. 663),

adopt the Order (D.I. 601), deny Integra's motion to strike (D.I. 510), and grant HyperBranch's

motion to strike (D.I. 522).

### C.    Report and Recommendation Regarding Construction of "Biocompatible" Claim Terms (D.I. 652)

The parties dispute the proper construction for the "biocompatible hydrogel/composition"

limitation of certain claims in the '034 and '5,705 patents. (*See* D.I. 652 at 2-3)  In a Report and

Recommendation dated March 27, 2018, Judge Burke recommended adopting HyperBranch's

proposal and construing the limitation as "a hydrogel/composition formed from crosslinked

biocompatible precursors." (*Id.* at 3)  Integra objects that the Report erred by dismissing or

ignoring intrinsic evidence that supports its proposed construction: "not harmful to living tissue."

(D.I. 664 at 1)  The Court's review is *de novo*.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(3); *St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 691

F. Supp. 2d 538, 541-42 (D. Del. 2010).

Integra contends the Report improperly dismissed or ignored two references in the

intrinsic record: U.S. Patent No. 6,312,725 ("Wallace") and U.S. Patent No. 5,874,500 ("Rhee").

(D.I. 664 at 1-3)  Both Wallace and Rhee are cited in the '034 and '5,705 patents.  Wallace

defines "biocompatible" as "the ability of the compositions of the present invention to be applied

11

to tissues without eliciting significant inflammation and fibrosis or other adverse tissue responses." (*Id.* at 2)  The inventive compositions in Rhee are described as being "comprised of biocompatible, non-immunogenic components which leave no toxic, potentially inflammatory or immunogenic reaction products at the tissue site of administration."  Rhee at 3:33-35.

The Report found Wallace was not part of the intrinsic record because the parent patent to the '034 and '5,705 patents, the '406 patent, "recites methods for preparing 'a biocompatible crosslinked polymer hydrogel,' and . . . does not cite to Wallace, nor was Wallace cited during prosecution of the '406 patent."  (D.I. 652 at 8 n.6) (internal citations omitted)  Judge Burke concluded that "[g]enerally, identical claim terms in related patents are construed consistently, and thus, because it does not appear that the patentee relied on Wallace to give meaning to 'biocompatible' in the '406 patent, one would not expect that Wallace would inform the meaning of the term in the '034 patent or the '5,705 patent."  (*Id.*) (*citing Abtox, Inc. v. Exitron Corp.*, 131 F.3d 1009, 1010 (Fed. Cir. 1997))

The intrinsic record includes the prosecution history of a parent patent.  *See Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) (parent application prosecution history relevant to understanding scope of claims).  Contrary to Integra's assertion that "*Abtox* provides no support for the Magistrate Judge dismissing the only piece of intrinsic evidence to the '034 and '5,705 patents expressly defining 'biocompatible'" (D.I. 664 at 2), the Federal Circuit in *Abtox* stated that "[t]he prosecution history relevant to this [claim construction] dispute includes not only the two distinct Jacob patent applications, ***but also the parent application***."  *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1027 (Fed. Cir. 1990) (emphasis added), *opinion amended on reh'g*, 131 F.3d 1009 (Fed. Cir. 1997) ("To properly construe the claims, the district court needed

12

only to focus on the meaning of the claim language . . . as interpreted in light of the specification and the parent application."). As Wallace is absent from the '406 patent prosecution history, the Report properly concluded that it was not part of the intrinsic record in construing an identical term from the '406 patent – biocompatible – in the context of the '034 and '5,705 patents. *See Kimberly-Clark Corp. v. Tyco Int'l, Inc.*, 4 F. App'x 946, 950 (Fed. Cir. 2001) ("Because that statement [that the preferred material was liquid pervious], when made in the Enloe I specification, plainly did not mean that the claims of that patent should be read to include fluid pervious flaps, it cannot reasonably be read to have assumed a different meaning when it was carried over into the specifications of Enloe II and Enloe III.").

Integra cited various patents that it considered "other intrinsic evidence" relevant to construing the "biocompatible hydrogel/composition" terms in the '034 and '5,705 patents, including Rhee.[4] (D.I. 544 at 3-5) Judge Burke addressed some of Integra's "other intrinsic evidence," finding that the cited references "typically describ[e] 'biocompatibility' of a *high* degree" and that such a heightened biocompatibility requirement was not present in the patents-in-suit. (D.I. 652 at 10-11) While not specifically listed in the Report, Rhee similarly imposes a heightened biocompatibility requirement by requiring "*no* toxic, potentially inflammatory or immunogenic reaction products at the tissue site of administration." Rhee at 3:33-35 (emphasis added). Moreover, Rhee cites to previously-issued, commonly-owned U.S. Patent 5,324,775, which explains that "[t]he terms 'biologically inert polymers', 'biocompatible polymers' and 'biologically inert biocompatible polymers' are used interchangeably" and encompass both natural and synthetic polymers that are "biologically inert, insoluble, nontoxic and *do not*

---

[4]Contrary to Wallace, Rhee was cited by the '406 patent.

13

*generate any immune reaction* when incorporated into a living being such as a human." '775

Patent at 4:59-5:3 (emphasis added). As the Report found, such a heightened requirement is

inconsistent with the patent-in-suit and would exclude a composition from the prior art. (*See* D.I.

652 at 11 n.8) The Report, therefore, properly rejected Integra's construction.

Accordingly, the Court will overrule Integra's objections (D.I. 664), adopt the Report

(D.I. 652), and construe "biocompatible hydrogel/composition" as "a hydrogel/composition

formed from crosslinked biocompatible precursors."

### D.  Report and Recommendation Regarding Two-Player Market (D.I. 658)

As addressed above, in the March 13, 2018 Memorandum Order, the Court adopted Judge

Burke's recommendation and granted HyperBranch's motion to strike portions of Mr. Jarosz's

expert report relating to a market share apportionment theory for lost profits. (D.I. 554) In the

Report preceding that Order, Judge Burke noted that the Court "would permit Plaintiffs to submit

a supplemental damages expert report in which they could pursue the lost profits theory . . . based

on a two-player market – if Plaintiffs wished to do so and thought they could do so credibly."

(D.I. 384 at 26) Plaintiffs submitted a supplemental expert report on November 28, 2017.

In response to Mr. Jarosz's supplemental expert report, HyperBranch seeks summary

judgment of no two-player market and to exclude Mr. Jarosz's opinions and testimony regarding

lost profits based on a two-player market and price erosion based on a market apportionment

theory. (D.I. 450 at 1) In a Report and Recommendation dated March 29, 2018, Judge Burke

recommended granting in part and denying in part HyperBranch's motion, finding that "the

overwhelming evidence here – drawn from time periods both before and after the Accused

Products went to market in the United States in 2015 – indicates that 'fibrin glue is an alternative

14

to the DuraSeal products at issue in the but-for world' and that 'no two-player market exists.'"

(D.I. 658 at 1-2, 5)  The Report thus recommended granting HyperBranch's motion as related to

lost profits, but, based on a prior order in which the Court declined to strike Mr. Jarosz's price

erosion testimony (D.I. 586), recommended denying HyperBranch's motion as related to price

erosion.  (*See* D.I. 658 at 12 n.4)[5]

Integra objects that Judge Burke did not draw all reasonable inferences in favor of

Plaintiffs, improperly weighed the evidence, and made credibility determinations.  (D.I. 673 at 1)

According to Integra, a reasonable jury could have concluded from the evidence that the relevant

market is for ***synthetic*** dural sealants – excluding fibrin glue – which is a two-supplier market.

(*Id.* at 7, 10)  The Court has considered Integra's objections *de novo*, *see* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(3); *St. Clair*, 691 F. Supp. 2d at 541-42, and finds a reasonable

jury could not find for Integra on this issue.

Contrary to Integra's objection that "[t]he Magistrate Judge paints a one-sided view of the

facts and ignores ample evidence in the record" (D.I. 673 at 6), Judge Burke reviewed both

parties' evidence and considered the record in its entirety – including Defendant's witnesses and

documents, testimony from Defendant's distributors of the Accused Products, third-party

statements such as the testimony of a hospital representative, Plaintiffs' Rule 30(b)(6) witness'

testimony, Plaintiffs' internal documents from 2016 and 2017, and the parties' litigation over

Defendant's motion to strike – in reaching his decision (*see, e.g.,* D.I. 658 at 4-7, 9 n.3).[6]  While

---

[5]As addressed above, the Court will adopt Judge Burke's earlier finding on price erosion.

[6]As Judge Burke explained:

If any further confirmation was needed that all of this

15

Integra is correct that all reasonable inferences must be drawn in its favor as the non-movant, the inferences Integra seeks the Court to draw are unreasonable in light of the evidence, and are not to be credited in the summary judgment analysis. *See Elwell v. PP&L, Inc.*, 47 F. App'x. 183, 188 (3d Cir. 2002) (stating that Court "may only consider ***reasonable*** inferences [and] may not improperly consider those inferences that are unreasonable").

As the Report stated, "[w]hen even Plaintiffs' own Rule 30(b)(6) witness and their own internal documents repeatedly and unambiguously state that fibrin glue vigorously competes with DuraSeal (and vice versa), it is going to be hard for Plaintiffs' expert to persuasively argue otherwise." (D.I. 658 at 9)  The Court agrees with HyperBranch that "Plaintiffs cannot point to a single piece of evidence – not one document, not one line of fact witness testimony – that affirmatively states the relevant market includes only DuraSeal and Adherus." (D.I. 692 at 5-6) Even Plaintiffs' expert, Mr. Jarosz, conceded that his opinion is that "the most appropriate way to estimate damages is what is reflected in my August 25th report," i.e., that the relevant market included fibrin glue. (*See* D.I. 453 Ex. 2 at 156; *see also* D.I. 658 at 10-11 (summarizing Mr. Jarosz's testimony that he "feel[s] somewhat more comfortable" with his earlier opinion that fibrin glue would have replaced certain Adherus sales in "but for" world than he does with opinion in his supplemental report contending that market is more refined))

---

> evidence shows that the relevant market is at least a three-player market (i.e., the two synthetic dural sealants and fibrin glue), ***Plaintiffs*** provided that confirmation during the litigation over the motion to strike. There, Plaintiffs cited much of the same record evidence the Court has referenced above, in order to explain why HyperBranch should have long understood that the appropriate market includes more than just DuraSeal and Adherus[.]

(D.I. 658 at 7) (emphasis added; internal quotation marks omitted)

Mr. Jarosz further acknowledges that his supplemental opinion that the market consists only of DuraSeal and Adherus products is solely a result of his prior opinion being stricken. (*See* D.I. 453 Ex. 2 at 156) (stating his original report is "the most appropriate way to estimate damages" but that "[t]he magistrate judge has a somewhat different view") While Judge Burke's earlier order entitled Plaintiffs an opportunity to attempt to press a two-player market theory, to remain in the case Plaintiffs' position has to be credible. (D.I. 384 at 26) ("[T]he Court would permit Plaintiffs to submit a supplemental damages expert report in which they could pursue the lost profits theory they disclosed throughout the case – one based on a two-player market – if Plaintiffs wished to do so and thought they could do so *credibly*.") (emphasis added) Based on all of the evidence in the record establishing fibrin glue as a viable alternative in the market, redefining the market to exclude fibrin glue (the only way to get to a two-player market) is not credible. As the Report found, "there can be no genuine dispute that such a market [the relevant market] would, in fact, have included fibrin glue. Just as HyperBranch's documents and witnesses have emphatically said it does, and just as Plaintiffs' documents and witnesses have emphatically said it does, and just as Plaintiffs' counsel in the past has emphatically said it does. A reasonable fact-finder, under these circumstances, could not conclude otherwise." (D.I. 658 at 11)

Accordingly, the Court will overrule Integra's objections (D.I. 673), adopt the Report (D.I. 658), grant HyperBranch's motion for summary judgment of no two-player market (D.I. 450), exclude Mr. Jarosz's opinions and testimony regarding lost profits based on a two-player market (*id.*), and allow Mr. Jarosz's opinions on price erosion.

**III.**     **CONCLUSION**

For the reasons discussed herein, the parties' objections  (D.I. 651, 653, 663, 664, 673) to the two Memorandum Orders (D.I. 586, 601) and two Reports and Recommendations (D.I. 652, 658) issued by Magistrate Judge Burke from March 20, 2018 through March 29, 2018 will be overruled and Judge Burke's decisions will be adopted.

18