# EXHIBIT 1

Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| |
|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>          Plaintiffs,<br><br>     v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>          Defendant. |

C.A. No.  15-819-LPS-CJB

**<u>JOINT STATEMENT OF UNCONTESTED FACTS</u>**

1.      No party contests that subject matter jurisdiction, personal jurisdiction and venue are proper for purposes of this litigation.

2.      Incept LLC ("Incept") is a Delaware Limited Liability Company with its principal place of business in Lexington, Massachusetts.

3.      Confluent Surgical, Inc. ("Confluent") is a Delaware corporation with a principal place of business at 311 Enterprise Drive, Plainsboro, New Jersey, 08536.

4.      Integra LifeSciences Corporation ("Integra") is a Delaware corporation with a principal place of business at 311 Enterprise Drive, Plainsboro, New Jersey, 08536.

5.      Integra LifeSciences Sales LLC ("Integra Sales") is a Delaware corporation with a principal place of business at 311 Enterprise Drive, Plainsboro, New Jersey, 08536.

6.      Confluent and Integra Sales are directly or indirectly controlled by or under common control with Integra.

7.      U.S. Patent No. 7,009,034 ("the '034 patent) is entitled "Biocompatible

1

Crosslinked Polymers."

8.      The application for the '034 patent was filed with the United States Patent and Trademark Office on November 9, 2001.

9.      The application for the '034 patent is a continuation-in-part of application No. 09/147,897, filed as application No. PCT/US97/16897 on Sep. 22, 1997, now abandoned, application No. 10/010,715, which is a continuation in part of application No. 09/454,900, filed on December 3, 1999, now Pat. No. 6,566,406.

10.     Incept is listed as the owner by assignment of the '034 patent.

11.     The '034 patent issued on March 7, 2006.

12.     The '034 patent expires on November 13, 2018.

13.     U.S. Patent No. 7,592,418 ("the '418 patent") is entitled "Biocompatible Crosslinked Polymers with Visualization Agents."

14.     The application for the '418 patent was filed with the United States Patent and Trademark Office on February 13, 2008.

15.     The application for the '418 patent is a continuation of application No. 11/293,892, filed on Dec. 2, 2005, now Pat. No. 7,332,566, which is a continuation of application No. 10/010,715, filed on Nov. 9, 2001, now Pat. No. 7,009,034, which is a continuation-in-part of application No. 09/454,900, filed on December 3, 1999, now Pat. No. 6,566,406, which is a continuation-in-part of application No. 09/147,897, filed as application No. PCT/US97/16897 on Sep. 22, 1997, now abandoned.

16.     Incept is listed as the owner by assignment of the '418 patent.

17.     The '418 patent issued on September 22, 2009.

18.     The '418 patent expired on September 22, 2017.

19.     U.S. Patent No. 7,332,566 ("the '566 patent") is entitled "Biocompatible Crosslinked Polymers with Visualization Agents."

20.     The application for the '566 patent was filed with the United States Patent and Trademark Office on December 2, 2005.

21.     The application for the '566 patent is a continuation of application No. 10/010,715, filed on Nov. 9, 2001, now Pat. No. 7,009,034, and a continuation-in-part of application No. 09/454,900, filed on December 3, 1999, now Pat. No. 6,566,406, which is a continuation-in-part of application No. 09/147,897, filed as application No. PCT/US97/16897 on Sep. 22, 1997, now abandoned.

22.     Incept is listed as the owner by assignment of the '566 patent.

23.     The '566 patent issued on February 19, 2008.

24.     The '566 patent expired on September 22, 2017.

25.     U.S. Patent No. 8,003,705 ("the '3,705 patent) is entitled "Biocompatible Hydrogels Made with Small Molecule Precursors."

26.      The application for the '3,705 patent was filed with the United States Patent and Trademark Office on May 29, 2008.

27.     The application for the '3,705 patent is continuation-in-part of application No. 12/069,821, filed on Feb. 13, 2008, now Pat. No. 7,592,418, which is a continuation of application No. 11/293,892, filed on Dec. 2, 2005, now Pat. No. 7,332,566, which is a

3

continuation of application No. 10/010,715, filed on Nov. 9, 2001, now Pat. No. 7,009,034, and a

continuation-in-part of application No. 09/454,900, filed on December 3, 1999, now Pat.

No. 6,566,406, which is a continuation-in-part of application No. 09/147,897, filed as application

No. PCT/US97/16897 on Sep. 22, 1997, now abandoned.

28.     Incept is listed as the owner by assignment of the '3,705 patent.

29.     The '3,705 patent issued on August 23, 2011.

30.     The '3,705 patent expires on March 3, 2019.

31.     Confluent and its affiliates under the license are the exclusive licensees of the

'034, '418, '566, and '3,705 patents in the field of "use as a surgical sealant to seal against leaks

of cerebro spinal fluid, air, urine, bile, blood or bowel contents from organs or tissues or to seal

against open surgical bleeding (non-vascular access)" with rights to enforce for infringement.

32.     HyperBranch is a corporation organized under the laws of the State of Delaware

with its principal place of business located at 800-12 Capitola Drive, Durham, North Carolina.

33.     HyperBranch has sold a surgical sealant under the following product names:

Adherus Spinal Sealant, Adherus Dural Sealant, Adherus AutoSpray Dural Sealant, and Adherus

AutoSpray Extended Tip (ET) Dural Sealant.

34.     There is no express license between HyperBranch and any Plaintiff to allow

HyperBranch to practice the claims of the patents-in-suit.

35.     HyperBranch received correspondence dated January 26, 2015 from Integra that

included a listing of patent numbers, including the '418 patent, the '034 patent, the '566 patent,

and the '3,705 patent.

36.     HyperBranch made its first sale of the Adherus AutoSpray Dural Sealant in the

United States after July 1, 2015.

37.     HyperBranch made its first sale of the Adherus AutoSpray Extended Tip (ET) Dural Sealant in the United States after November 1, 2016.

38.     HyperBranch received a CE Mark for Adherus Dural Sealant (then called NuSeal 100) in July 2009.

39.     HyperBranch received a CE Mark for Adherus Spinal Sealant in April 2010.

40.     HyperBranch received a CE Mark for Adherus AutoSpray Dural Sealant in May 2012.

41.     Adherus Spinal Sealant and Adherus Dural Sealant are not approved by the FDA for use in the United States.

42.     Adherus Spinal Sealant and Adherus Dural Sealant have never been sold by HyperBranch in the United States.

43.     HyperBranch has not sold Adherus Spinal Sealant outside the U.S. since at least July 1, 2014.

44.     Integra Sales has sold surgical sealants under the following product names: DuraSeal Dural Sealant, DuraSeal Xact Spinal Sealant, and DuraSeal Exact Spinal Sealant.

45.     DuraSeal Dural Sealant is not approved by the FDA for use in the United States in spinal neurosurgeries.

46.     DuraSeal Dural Sealant received FDA approval in April 2005.

47.     DuraSeal Xact Spinal Sealant received FDA approval in September 2009.

48.     DuraSeal Dural Sealant received a CE mark in June 2003.

49.     DuraSeal Exact Spinal Sealant received a CE mark in March 2007.

50.     DuraSeal Exact Spinal Sealant is not approved by the FDA for use in the United

States in cranial neurosurgeries.

# EXHIBIT 2

**EXHIBIT 2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>        Defendant. | C.A. No. 15-819-LPS-CJB |

## PLAINTIFFS' STATEMENT OF CONTESTED FACTS

The following statement of contested facts that remain to be litigated is based on the parties' pleadings, documentary and testimony evidence, and on Plaintiffs' current understanding of HyperBranch's claims and defenses and the Court's rulings to date. Pursuant to Fed. R. Civ. P. 26(a)(3) and agreement of the parties, Plaintiffs submit the attached statement of contested facts. Plaintiffs reserve the right to revise, amend, supplement, or modify their statement of contested facts based upon any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments. Plaintiffs further reserve the right to supplement this statement to rebut or otherwise address the contested facts identified by HyperBranch. Should the Court determine that any issue identified in this statement is more properly considered an issue of law, it shall be so considered and Plaintiffs incorporate it by reference into its Statement

**EXHIBIT 2**

of Issues of Law.  Plaintiffs contend that the issues of fact (or mixed questions of fact and law) that remain to be litigated at trial and decided by the jury are as follows[1]:

## I.   STATEMENT OF ISSUES OF FACT

### A.  Infringement

1.   Whether HyperBranch directly (either literally or under the doctrine of equivalents) infringes any of the asserted claims of the patents-in-suit through its acts involving one or more of the accused products.

2.   Whether HyperBranch indirectly infringed any of the asserted claims of the patents-in-suit by inducing another's infringement.

3.   Whether HyperBranch indirectly infringed any of the asserted claims of the patents-in-suit by contributing to another's infringement.

4.   When HyperBranch became aware of the patents-in-suit.

5.   Whether HyperBranch's customers and ultimate end users (either within or outside of the United States) of the accused products directly infringe any claims of the patents-in-suit when using the products as directed, encouraged, and intended by HyperBranch.

6.   Whether HyperBranch knew about any of the patents containing any of the asserted claims prior to the filing of this lawsuit.

7.   Whether HyperBranch's infringement of any asserted claim was willful.

---

[1] In its Statement of Contested Facts, Plaintiffs also include the issue of equitable estoppel or license.  Plaintiffs contend that these issues are not issues to be decided by the jury, and therefore are not properly the subject of the parties' statements of contested facts to be decided during the upcoming jury trial.

**EXHIBIT 2**

**B. Validity**

1.  Whether HyperBranch can prove by clear and convincing evidence that any asserted claim is invalid for failure to comply with one or more conditions of patentability set forth in 35 U.S.C. § 112, specifically lack of enablement, written description, definiteness.

2.  Whether HyperBranch can prove that the references asserted by HyperBranch against any asserted claim are prior art to that asserted claim.

3.  Whether the invention claimed in any asserted claim was reduced to practice prior to the priority date of any reference asserted by HyperBranch against that asserted claim.

4.  Whether the invention claimed in any asserted claim was conceived prior to the priority date of any reference asserted by HyperBranch against that asserted claim with diligence from conception until the invention was reduced to practice.

5.  The scope and content of the prior art asserted by HyperBranch against any asserted claim.

6.  The level of ordinary skill in the art.

7.  The differences between any of the asserted claims and the prior art asserted by HyperBranch against that asserted claim.

8.  Whether HyperBranch can prove corroboration for any non-patent and non-publication references asserted against any asserted claim,

**EXHIBIT 2**

9. Whether HyperBranch can prove by clear and convincing evidence that any asserted claim is anticipated by a single reference as asserted by HyperBranch against that asserted claim.

10. Whether HyperBranch can prove by clear and convincing evidence that any asserted claim is invalid as obvious in view of any reference of combination of references asserted by HyperBranch against that asserted claim.

11. Whether HyperBranch can prove that a person of ordinary skill would be motivated to combine the references as relied on by HyperBranch in its obviousness combinations against any asserted claim.

12. Whether HyperBranch can prove that a person of ordinary skill in the art would modify the prior art asserted by HyperBranch to arrive at the inventions of the asserted claim against which such prior art is asserted.

13. Whether HyperBranch can prove that a person of ordinary skill in the art would have had a reasonable expectation of success in modifying or combining the prior art asserted by HyperBranch to arrive at the invention of the asserted claim against which such prior art is asserted.

14. Whether objective evidence of non-obviousness tends to show any asserted claim is not obvious, the extend of any proffered objective evidence of nonobviousness, and whether there is a nexus between that evidence and the invention claimed in any asserted claim.

15. Whether the references or combinations of references asserted by HyperBranch

EXHIBIT 2

are enabled for each element of the claim against which HyperBranch has asserted them.

**C.  Damages / Remedy**

16. The appropriate measures of damages as compensation to Plaintiffs for HyperBranch's infringement (either direct or indirect) of any of the asserted claims within the United States.

17. The total amount of damages that Plaintiffs are entitled to as compensation for HyperBranch's indirect infringement of any of the asserted claims where the direct infringement occurred outside the United States.

18. The period of damages due and owing to Plaintiffs for HyperBranch's infringement of any of the asserted claims.

19. The total amount of enhanced damages that Plaintiffs are entitled to for HyperBranch's willful infringement of any asserted claim.

20. Whether Plaintiffs are entitled to permanent injunction.

21. Whether Plaintiffs are entitled to their attorneys' fees and cost.

**D.  Equitable Estoppel**

1. Whether HyperBranch can prove as a matter of equity that it is entitled to preclude any recovery by Plaintiffs in this litigation.

2. Whether HyperBranch can prove that Plaintiff communicated in a misleading manner that HyperBranch did not infringe any of the asserted claims through its

EXHIBIT 2

actions with the accused products or that Plaintiff would not sue HyperBranch for its actions with the accused products and whether HyperBranch can prove that it relied on that communication.

3.  Whether HyperBranch can prove that it would be materially harmed if the Plaintiffs are allowed to assert a claim of infringement of any one or more of the asserted claims that is inconsistent with positions taken by Plaintiffs in previous communications with HyperBranch.

## II.   STATEMENT OF INTENDED PROOF

Plaintiffs will offer the following proof at trial.

### A.  Background

1.  The research and development activities of Plaintiffs.

2.  The history of Plaintiffs including their history of commercialization of technology associated with the patents-in-suit.

3.  The relationships between one or more of the Plaintiffs.

4.  The work and research leading to, and development and invention of, the patents-in-suit, the state of the art at the time of invention, and the relevant technological background necessary to understand the patent and evaluate its contribution to the state of the art.

### B.  Infringement

1.  Proof that HyperBranch directly infringed (either literally or under the doctrine of equivalents) one or more of the asserted claims by making, using, selling, and/or

**EXHIBIT 2**

offer to sell the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant.

2.  Proof that HyperBranch contributorily infringed one or more of the asserted claims in the United States by selling or offering for sale the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant through its distribution channels to an end user who directly infringes one or more of the asserted claims literally or under the doctrine of equivalents.

3.  Proof that the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant have no substantial, noninfringing uses.

4.  Proof that the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant constitute a material part of an asserted claim.

5.  Proof that HyperBranch was aware of a patent having any asserted claim prior to the filing of this lawsuit.

6.  Proof that the end users of the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant in the United States directly infringe an asserted claim.

7.  Proof that HyperBranch induced infringement of one or more asserted claims in the United States by inducing its end users of the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant to directly infringe one or more asserted claims literally or under the doctrine of equivalents.

**EXHIBIT 2**

8. Proof that HyperBranch took action during the time that one or more of the asserted claims was in force specifically intending to cause the infringing acts of its end users of the accused products.

9. Proof that HyperBranch is liable for §271(f)(1) infringement of one or more U.S. Patent No. 7,332,566 ("the '566 patent") claim 4 and U.S. Patent No. 8,003,705 ("the '3705 patent") claims 4, 6 and 13 through its supply of the components of the accused products from the United States to a place outside of the United States, which make up all or a substantial portion of one or more asserted claims.

10. Proof that HyperBranch took action intentionally to cause one or more of its end users outside of the United States to assemble one or more of the accused products.

11. Proof that the acts encouraged by HyperBranch abroad with respect to one or more of the accused products would constitute direct infringement of one or more of U.S. Patent No. 7,332,566 ("the '566 patent") claim 4 and U.S. Patent No. 8,003,705 ("the '3705 patent") claims 4, 6 and 13   if it had been done in the United States.

12. Proof that HyperBranch is liable for §271(f)(2) infringement of one or more of U.S. Patent No. 7,332,566 ("the '566 patent") claim 4 and U.S. Patent No. 8,003,705 ("the '3705 patent") claims 4 and 6 through its supply of the components of the accused products from the United States to a place outside of the United States, which make up all or a substantial portion of one or more

8

EXHIBIT 2

asserted claims.

13. Proof that the only substantial use for the combination of the components of the accused products would infringe if the combination occurred in the United States and knows that the only substantial use of the accused product may be covered by one or more of U.S. Patent No. 7,332,566 ("the '566 patent") claim 4 and U.S. Patent No. 8,003,705 ("the '3705 patent") claims 4 and 6.

14. Proof that HyperBranch intends for the components of one or more of accused products to be used in the accused products that would directly infringe one or more of U.S. Patent No. 7,332,566 ("the '566 patent") claim 4 and U.S. Patent No. 8,003,705 ("the '3705 patent") claims 4 and 6 if it had been used in the United States.

15. Proof that HyperBranch's infringement was willful.

## C. Validity

1. Proof rebutting HyperBranch's burden of clear and convincing evidence that any of the asserted claims are invalid for failure to comply with the enablement, written description or definiteness requirements of 35 U.S.C. § 112.

2. Proof rebutting HyperBranch's burden of clear and convincing evidence that any of the asserted claims are invalid as anticipated by the prior art asserted by HyperBranch against any such asserted claim.

3. Proof rebutting HyperBranch's burden of clear and convincing evidence that any of the asserted claims are invalid as obvious to a person of ordinary skill in the art

**EXHIBIT 2**

at the time of the invention under 35 U.S.C. §103(a) in view of the prior art asserted by HyperBranch against any such asserted claim, including proof that a person of ordinary skill would not be motivated to combine the references relied on by HyperBranch against any such asserted claim and proof of objective indicia of non-obviousness.

4. Proof rebutting HyperBranch's burden of proof that one or more references asserted by HyperBranch against one or more asserted claims are prior art to any such asserted claim.

5. Proof rebutting HyperBranch's burden of proof that any prior art references or combinations relied on by HyperBranch are enabled.

**D. Damages / Remedy**

1. Proof supporting a reasonable royalty in terms of a base and per unit royalty rate that fairly compensates Plaintiffs for HyperBranch's infringement of any one or more of the asserted claims under 35 U.S.C. §271(f)(1) or (f)(2) including proof of the value attributable to the asserted claims from the value of the accused products as a whole.

2. Proof supporting damages of no less than a reasonable royalty reflecting the harm (including lost profits and/or price erosion) caused to Plaintiffs that fairly compensates Plaintiffs for HyperBranch's infringement direct or indirect infringement of the asserted claims in the United States.

3. Proof of the profits (including price erosion on sales Plaintiffs maintained)

Plaintiffs would have made but for HyperBranch's infringement of any one or more of the asserted claims.

4. Proof as to the period during which Plaintiffs are entitled to damages for infringement.

5. Proof of Plaintiffs' total damages as compensation for direct and indirect infringement of any one or more of the asserted claims.

6. Proof that Plaintiffs are entitled to enhanced damages for HyperBranch's willful infringement of one or more of the asserted claims.

7. Proof that Plaintiffs are entitled to their attorneys' fees and costs.

8. Proof that Plaintiffs are entitled to a permanent injunction against further infringement by HyperBranch through its sales of one or more of the accused products including proofs that one or more Plaintiffs will suffer an irreparable injury from the continued infringement of HyperBranch; that remedies available at law are inadequate to compensate for that injury; that when balancing the hardships between Plaintiffs and HyperBranch an equitable remedy is warranted; and that the public interest will not be disserved by a permanent injunction.

**E. Equitable Estoppel**

1. Proof rebutting HyperBranch's burden of proof that Plaintiffs communicated to HyperBranch about a lack of infringement of the asserted claims or that HyperBranch would not be sued by Plaintiffs, that HyperBranch could reasonably rely on such communication and/or that HyperBranch would be materially

**EXHIBIT 2**

harmed if the Plaintiffs are allowed to assert their infringement claims.

2.   Proof showing that any finding of equitable estoppel would be unfair in light of

the conduct of the parties.

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>       Plaintiffs,<br><br>    v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>       Defendant. | C.A. No.  15-819-LPS-CJB |

## DEFENDANT'S STATEMENT OF CONTESTED FACTS

Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") provides the following statement of contested facts that remain to be litigated at trial.  This statement is based on the parties' pleadings, documentary and testimony evidence, and HyperBranch's current understanding of Plaintiffs' claims and defenses and the Court's rulings to date.  Pursuant to Fed. R. Civ. P. 26(a)(3) and agreement of the parties, HyperBranch submits the attached statement of contested facts.  HyperBranch reserves the right to revise, amend, supplement, or modify its statement of contested facts based upon any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments.  HyperBranch further reserves the right to supplement this statement to rebut or otherwise address the contested facts identified by Plaintiffs.  Should the Court determine that any issue identified in this statement is more properly considered an issue of law, it shall be so considered and HyperBranch incorporates it by reference into its Statement of Issues of Law.  HyperBranch contends that the issues of fact (or

1

mixed questions of fact and law) that remain to be litigated at trial and decided by the jury are as follows:

## I.   STATEMENT OF ISSUES OF FACT

### A.   Infringement

#### 1.   U.S. Patent No. 7,009,034 (the "'034 Patent")

1.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

2.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

3.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

4.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

5.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

6.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

7.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

8.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

9.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 10 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than

HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

10.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

11.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

12.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

13.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

14.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under

the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

15.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

16.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

17.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

18.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

19.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

20.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

21.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 20 of the '034 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

### 2.      U.S. Patent No. 7,332,556 (the "'566 Patent")

22.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

23.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim

by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

24.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

25.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

26.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

27.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

28.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

29.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

30.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

31.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

32.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally

or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

33.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

34.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

35.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

36.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their

activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

37.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

38.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

39.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

40.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

41.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 4 of the '566 Patent (either literally or under the doctrine of equivalents), that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

### 3.     U.S. Patent No. 7,592,418 (the "'418 Patent")

42.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

43.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

44.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

45.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under

the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

46.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

47.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

48.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

49.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

50.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally

or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

51.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

52.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

53.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 8 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

54.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

55.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

56.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

57.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

58.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

59.      Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim

14

by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

60.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

61.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

62.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

63.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents) and that HyperBranch directly infringes that claim by making, using, selling or offering to sell those products.

64.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 23 of the '418

Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

65.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant satisfies all the limitations of claim 23 of the '418 Patent (either literally or under the doctrine of equivalents), that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

### 4.     U.S. Patent No. 8,003,705 (the "'3,705 Patent")

66.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

67.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

68.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

69.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

70.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

71.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

72.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

73.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell

17

that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

74.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

75.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

76.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

77.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

78.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that

an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

79.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

80.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

81.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

82.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

83.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

84.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

85.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 4 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

86.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

87.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity

other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

88.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

89.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

90.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

91.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

92.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

93.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

94.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

95.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

96.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent and

that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

97.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

98.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

99.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

100.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

101.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

102.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

103.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

104.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

105.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 6 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were

conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

106.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

107.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

108.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

109.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

110.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using,

selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

111.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

112.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

113.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

114.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

115.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus Spinal Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity

outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

116.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

117.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

118.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

119.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

120.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

121.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent and that HyperBranch directly infringes that claim by making, using, selling or offering to sell that product.

122.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch induces such infringement.

123.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity other than HyperBranch directly infringes that claim by making, using, selling or offering to sell that product, and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

124.     Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly

infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch induces such infringement.

125.    Whether Plaintiffs can show by a preponderance of the evidence that the Adherus AutoSpray Extended Tip (ET) Dural Sealant literally satisfies all the limitations of claim 13 of the '3,705 Patent, that an entity outside the U.S. (other than HyperBranch) would directly infringe that claim by making, using, selling or offering to sell that product if their activities were conducted in the U.S., and that HyperBranch contributes to such infringement by supplying components that have no other substantial non-infringing use.

126.

B.    **Invalidity**

1.    **The '034 Patent**

127.    Whether HyperBranch can prove by clear and convincing evidence that claim 10 of the '034 Patent is anticipated in light of at least the following references:

a.    U.S. Patent No. 5,874,500 (hereafter, "Rhee '500");

b.    "SprayGelTM as New Intraperitoneal Adhesion Prevention Method for Use in Laparoscopy and Laparotomy," VR Jacobs, E Lehmann-Willenbrock, M Kiechle, L Mettler, ISGE 10 Convention, Chicago March 2001 ("Jacobs").

128.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 10 of the '034 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

a.    Rhee '500;

b.    Rhee '500 and U.S. Patent No. 5,292,362 ("Bass '362");

c.      Rhee '500 and WO 98/35631 ("Pathak WO 1998").

129.    Whether HyperBranch can show by clear and convincing evidence that claim 10 of the '034 Patent is invalid under 35 U.S.C. § 112, specifically for lack of lack of enablement, written description, and/or definiteness.

130.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 10 of the '034 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

a.      the scope and content of the prior art;

b.      the level of ordinary skill in the art;

c.      the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

d.      objective evidence of nonobviousness.

131.    Whether Plaintiffs can meet their burden of production to show that an invention practicing the full scope of claim 10 of the '034 Patent was conceived and diligently reduced to practice at least as early as February 2001.[1]

132.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 20 of the '034 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

---

[1] HyperBranch disputes that Plaintiffs are entitled to assert that claim 10 of the '034 Patent was conceived or reduced to practice in February 2001.  Despite being compelled by the Court to provide such conception dates in December 2016, Plaintiffs did not disclose their reliance on this conception and reduction to practice date until February 2018, less than two months prior to trial.

      a.    Tse, D.T., et al., "Cyanoacrylate Adhesive Used to Stop CSF Leaks During Orbital Surgery," Archives of Ophthalmology 102(9):1337-39 (1984) ("Tse") and WO 2000/033764 ("Pathak WO 2000").

133.    Whether HyperBranch can show by clear and convincing evidence that claim 20 of the '034 Patent is invalid under 35 U.S.C. § 112, specifically for lack of enablement, written description, and/or definiteness.

134.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 20 of the '034 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

      a.    the scope and content of the prior art;

      b.    the level of ordinary skill in the art;

      c.    the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

      d.    objective evidence of nonobviousness.

135.    Whether Plaintiffs can meet their burden of production to show that claim 20 of the '034 Patent is entitled to a priority date earlier than the presumptive priority date by demonstrating written description and enablement for the full scope of the claim in an ancestor patent application.

**2.    The '418 Patent**

136.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 8 of the '418 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

a.      Tse and Pathak WO 2000.

137.    Whether HyperBranch can show by clear and convincing evidence that claim 8 of the '418 Patent is invalid under 35 U.S.C. § 112, specifically for lack of enablement, written description, and/or definiteness.

138.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 8 of the '418 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

a.      the scope and content of the prior art;

b.      the level of ordinary skill in the art;

c.      the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

d.      objective evidence of nonobviousness.

139.    Whether Plaintiffs can meet their burden of production to show that claim 8 of the '418 Patent is entitled to a priority date earlier than the presumptive priority date by demonstrating written description and enablement for the full scope of the claim in an ancestor patent application.

140.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 23 of the '418 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

a.      Tse and Pathak WO 2000.

141.    Whether HyperBranch can show by clear and convincing evidence that claim 23 of the '418 Patent is invalid under 35 U.S.C. § 112, specifically for lack of enablement, written description, and/or definiteness.

142.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 23 of the '418 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

    a.    the scope and content of the prior art;

    b.    the level of ordinary skill in the art;

    c.    the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

    d.    objective evidence of nonobviousness.

143.    Whether Plaintiffs can meet their burden of production to show that claim 23 of the '418 Patent is entitled to a priority date earlier than the presumptive priority date by demonstrating written description and enablement for the full scope of the claim in an ancestor patent application.

### 3.    The '566 Patent

144.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 4 of the '566 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

    a.    Tse and Pathak WO 2000.

145.    Whether HyperBranch can show by clear and convincing evidence that claim 4 of the '566 Patent is invalid under 35 U.S.C. § 112, specifically for lack of enablement, written description, and/or definiteness.

146.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 4 of the '566 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

    a.    the scope and content of the prior art;

    b.    the level of ordinary skill in the art;

    c.    the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

    d.    objective evidence of nonobviousness.

147.    Whether Plaintiffs can meet their burden of production to show that claim 4 of the '566 Patent is entitled to a priority date earlier than the presumptive priority date by demonstrating written description and enablement for the full scope of the claim in an ancestor patent application.

**4.    The '3,705 Patent**

148.    Whether HyperBranch can prove by clear and convincing evidence that claim 4 of the '3,705 Patent is anticipated in light of at least the following references:

    a.    U.S. Patent Pub. No. 2007/0196454 (hereafter, "Stockman '454").

149.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 4 of the '3,705 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

a.     Stockman '454.

150.    Whether HyperBranch can show by clear and convincing evidence that claim 4 of the '3,705 Patent is invalid under 35 U.S.C. § 112, specifically for lack of enablement, written description, and/or definiteness.

151.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 4 of the '3,705 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

a.     the scope and content of the prior art;

b.     the level of ordinary skill in the art;

c.     the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

d.     objective evidence of nonobviousness.

152.    Whether Plaintiffs can meet their burden of production to show that claim 4 of the '3,705 Patent is entitled to a priority date earlier than the presumptive priority date by demonstrating written description and enablement for the full scope of the claim in an ancestor patent application.

153.    Whether HyperBranch can prove by clear and convincing evidence that claim 6 of the '3,705 Patent is anticipated in light of at least the following references:

a.     U.S. Patent Pub. No. 2007/0196454 (hereafter, "Stockman '454").

154.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 6 of the '3,705 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

        a.      Stockman '454.

155.    Whether HyperBranch can show by clear and convincing evidence that claim 6 of the '3,705 Patent is invalid under 35 U.S.C. § 112, specifically for lack of enablement, written description, and/or definiteness.

156.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 6 of the '3,705 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

        a.      the scope and content of the prior art;

        b.      the level of ordinary skill in the art;

        c.      the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

        d.      objective evidence of nonobviousness.

157.    Whether Plaintiffs can meet their burden of production to show that claim 6 of the '3,705 Patent is entitled to a priority date earlier than the presumptive priority date by demonstrating written description and enablement for the full scope of the claim in an ancestor patent application.

158.    Whether HyperBranch can prove by clear and convincing evidence that claim 13 of the '3,705 Patent is anticipated in light of at least the following references:

        a.      U.S. Patent Pub. No. 2007/0196454 (hereafter, "Stockman '454").

159.    Whether HyperBranch can prove by clear and convincing evidence that the invention of claim 13 of the '3,705 Patent would have been obvious to one of ordinary skill in the art at the time of the alleged invention in light of the state of the art the following prior art references or combinations of references:

a.      Stockman '454.

160.    Whether HyperBranch can show by clear and convincing evidence that claim 13 of the '3,705 Patent is invalid under 35 U.S.C. § 112, specifically for lack of enablement, written description, and/or definiteness.

161.    Facts underlying the Court's ultimate determination concerning the obviousness of the "invention" claimed in claim 13 of the '3,705 patent, as set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966):

a.      the scope and content of the prior art;

b.      the level of ordinary skill in the art;

c.      the differences between the "inventions" of claim 10 of the '034 patent and the prior art; and

d.      objective evidence of nonobviousness.

162.    Whether Plaintiffs can meet their burden of production to show that claim 13 of the '3,705 Patent is entitled to a priority date earlier than the presumptive priority date by demonstrating written description and enablement for the full scope of the claim in an ancestor patent application

C.    **Damages / Remedy**

163.    In the event one or more of the asserted claims is found infringed and not invalid, whether Plaintiffs are entitled to a reasonable royalty based on a hypothetical negotiation and, if so, the amount.

164.    In the event one or more of the asserted claims is found infringed and not invalid, whether Plaintiffs are entitled to lost profits from price erosion and, if so, the amount.

165.    In the event one or more of the asserted claims is found infringed and not invalid, whether Plaintiffs can prove by a preponderance of the evidence that they have provided the

notice required under 35 U.S.C. § 287(a) in order to recover damages for infringement occurring prior to the filing of this action.

166.    In the event one or more of the asserted claims is found infringed and not invalid, whether Plaintiffs are entitled to their costs.

167.    In the event one or more of the asserted claims is found infringed and not invalid, whether Plaintiffs are entitled to their attorneys' fees.

168.    In the event one or more of the asserted claims is found not infringed or invalid, whether HyperBranch is entitled to its costs.

169.    In the event one or more of the asserted claims is found not infringed or invalid, whether HyperBranch is entitled to its attorneys' fees.

170.    In the event one or more of the asserted claims is found infringed and not invalid, whether Plaintiffs are entitled to a determination that HyperBranch's infringement was egregious such that Plaintiffs are entitled to enhanced damages for willful infringement and, if so, the amount.

171.    In the event one or more of the asserted claims is found infringed and not invalid, whether Plaintiffs are entitled to, and the amount of, any prejudgment or post-judgment interest.

D.    **Equitable Estoppel**

172.    Whether Plaintiffs' infringement claims and requests for relief are barred by the doctrine of equitable estoppel.

173.    Whether Plaintiffs engaged in misleading conduct that reasonably led HyperBranch to believe that Plaintiffs would not sue HyperBranch for its actions with the accused products, and whether HyperBranch suffered material economic and/or evidentiary prejudice as a result of Plaintiffs' conduct.

## II.   STATEMENT OF INTENDED PROOF

HyperBranch will offer the following proof at trial.

### A.  Background

174.    The research and development activities of HyperBranch that led to the development of the Adherus Dural Sealant, Adherus Spinal Sealant, Adherus AutoSpray Dural Sealant, and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant.

175.    The history of communications between Plaintiffs (or any named inventors of the patents-in-suit) and HyperBranch regarding the patents-in-suit.

### B.  Non-infringement

176.    Rebuttal of any evidence offered by Plaintiffs that HyperBranch directly infringed (either literally or under the doctrine of equivalents) one or more of the asserted claims by making, using, selling, and/or offer to sell the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant.

177.    Rebuttal of any evidence offered by Plaintiffs that HyperBranch contributorily infringed one or more of the asserted claims in the United States by selling or offering for sale the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant through its distribution channels to an end user who allegedly directly infringes one or more of the asserted claims literally or under the doctrine of equivalents.

178.    Rebuttal of any evidence offered by Plaintiffs that the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant have no substantial, noninfringing uses.

179.    Rebuttal of any evidence offered by Plaintiffs that the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant constitute a material part of an asserted claim.

180.     Rebuttal of any evidence offered by Plaintiffs that the end users of the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant in the United States directly infringe an asserted claim.

181.     Rebuttal of any evidence offered by Plaintiffs that HyperBranch induced infringement of one or more asserted claims in the United States by inducing its end users of the Adherus AutoSpray Dural Sealant and/or Adherus AutoSpray Extended Tip (ET) Dural Sealant to allegedly directly infringe one or more asserted claims literally or under the doctrine of equivalents.

182.     Rebuttal of any evidence offered by Plaintiffs that HyperBranch took action during the time that one or more of the asserted claims was in force specifically intending to cause the infringing acts of its end users of the accused products.

183.     Rebuttal of any evidence offered by Plaintiffs that HyperBranch is liable for §271(f)(1) infringement of one or more of claim 4 of the '566 patent and/or claims 4, 6, and/or 13 of the '3,705 patent through its supply of the components of the accused products from the United States to a place outside of the United States, which make up all or a substantial portion of one or more asserted claims.

184.     Rebuttal of any evidence offered by Plaintiffs that HyperBranch took action intentionally to cause one or more of its end users outside of the United States to assemble one or more of the accused products.

185.     Rebuttal of any evidence offered by Plaintiffs that the acts allegedly encouraged by HyperBranch abroad with respect to one or more of the accused products would constitute direct infringement of one or more of claim 4 of the '566 patent and/or claims 4, 6, and/or 13 of the '3,705 Patent if it had been done in the United States.

186. Rebuttal of any evidence offered by Plaintiffs that HyperBranch is liable for §271(f)(2) infringement of one or more of claim 4 of the '566 Patent and/or claims 4, 6, and/or 13 of the '3,705 Patent through its supply of the components of the accused products from the United States to a place outside of the United States, which make up all or a substantial portion of one or more asserted claims.

187. Rebuttal of any evidence offered by Plaintiffs that the only substantial use for the combination of the components of the accused products would infringe if the combination occurred in the United States and that HyperBranch allegedly knows that the only substantial use of the accused product may be covered by one or more of claim 4 of the '566 Patent and/or claims 4 and/or 6 of the '3,705 Patent.

188. Rebuttal of any evidence offered by Plaintiffs that HyperBranch intends for the components of one or more of accused products to be used in the accused products that would directly infringe one or more of claim 4 of the '566 Patent and/or claims 4 and/or 6 of the '3,705 Patent if it had been used in the United States.

189. Rebuttal of any evidence offered by Plaintiffs that HyperBranch's alleged infringement was willful.

C. **Invalidity**

190. Proof that the prior art references asserted against the patents-in-suit are prior art under 35 U.S.C. § 102.

191. Proof of the scope and content of the prior art asserted against the patents-in-suit.

192. Proof of the level of ordinary skill in the art at the time of the alleged inventions of the patents-in-suit.

1. **The '034 Patent**

193. Proof that claim 10 of the '034 Patent is anticipated by Rhee '500.

194.     Proof that claim 10 of the '034 Patent is anticipated by Jacobs.

195.     Proof that claim 10 of the '034 Patent is obvious over Rhee '500.

196.     Proof that claim 10 of the '034 Patent is obvious over the combination of Rhee '500 and Bass '362.

197.     Proof that claim 10 of the '034 Patent is obvious over the combination of Rhee '500 and Pathak WO 1998.

198.     Proof that claim 10 of the '034 Patent is invalid under 35 U.S.C. § 112 for lack of lack of enablement, written description, and/or definiteness.

199.     Proof that claim 20 of the '034 Patent is obvious over the combination of Tse and Pathak WO 2000.

200.     Proof that claim 20 of the '034 Patent is invalid under 35 U.S.C. § 112 for lack of enablement, written description and/or definiteness.

201.     Rebuttal of any evidence offered by Plaintiffs that there is objective evidence of nonobviousness for claims 10 and/or 20 of the '034 Patent.

202.     Rebuttal of any evidence offered by Plaintiffs that there is a nexus between any objective evidence of nonobviousness and claims 10 and/or 20 of the '034 Patent.

### 2.     The '418 Patent

203.     Proof that claim 8 of the '418 Patent is obvious over the combination of Tse and Pathak WO 2000.

204.     Proof that claim 8 of the '418 Patent is invalid under 35 U.S.C. § 112 for lack of enablement, written description and/or definiteness.

205.     Proof that claim 23 of the '418 Patent is obvious over the combination of Tse and Pathak WO 2000.

206.     Proof that claim 23 of the '418 Patent is invalid under 35 U.S.C. § 112 for lack of enablement, written description and/or definiteness.

207.     Rebuttal of any evidence offered by Plaintiffs that there is objective evidence of nonobviousness for claims 8 and/or 23 of the '418 Patent.

208.     Rebuttal of any evidence offered by Plaintiffs that there is a nexus between any objective evidence of nonobviousness and claims 8 and/or 23 of the '418 Patent.

### 3.     The '566 Patent

209.     Proof that claim 4 of the '566 Patent is obvious over the combination of Tse and Pathak WO 2000.

210.     Proof that claim 4 of the '566 Patent is invalid under 35 U.S.C. § 112 for lack of enablement, written description and/or definiteness.

211.     Rebuttal of any evidence offered by Plaintiffs that there is objective evidence of nonobviousness for claim 4 of the '566 Patent.

212.     Rebuttal of any evidence offered by Plaintiffs that there is a nexus between any objective evidence of nonobviousness and claim 4 of the '566 Patent.

### 4.     The '3,705 Patent

213.     Proof that claim 4 of the '3,705 Patent is anticipated by Stockman '454.

214.     Proof that claim 4 of the '3,705 Patent is obvious over Stockman '454.

215.     Proof that claim 4 of the '3,705 Patent is invalid under 35 U.S.C. § 112 for lack of enablement, written description and/or definiteness.

216.     Proof that claim 6 of the '3,705 Patent is anticipated by Stockman '454.

217.     Proof that claim 6 of the '3,705 Patent is obvious over Stockman '454.

218.     Proof that claim 6 of the '3,705 Patent is invalid under 35 U.S.C. § 112 for lack of enablement, written description and/or definiteness.

219.     Proof that claim 13 of the '3,705 Patent is anticipated by Stockman '454.

220.     Proof that claim 13 of the '3,705 Patent is obvious over Stockman '454.

221.     Proof that claim 13 of the '3,705 Patent is invalid under 35 U.S.C. § 112 for lack of enablement, written description and/or definiteness.

222.     Rebuttal of any evidence offered by Plaintiffs that there is objective evidence of nonobviousness for claims 4, 6, and/or 13 of the '3,705 Patent.

223.     Rebuttal of any evidence offered by Plaintiffs that there is a nexus between any objective evidence of nonobviousness and claims 4, 6, and/or 13 of the '3,705 Patent.

D.     **Damages / Remedy**

224.     Rebuttal of any evidence offered by Plaintiffs regarding a reasonable royalty in terms of a base and per unit royalty rate that would fairly compensate Plaintiffs if any asserted claim is found to be infringed and not invalid.

225.     Proof of what reasonable royalty rate would fairly compensate Plaintiffs if any asserted claim is found to be infringed and not invalid.

226.     Rebuttal of any evidence offered by Plaintiffs regarding lost profits from price erosion.

227.     Rebuttal of any evidence offered by Plaintiffs regarding the period during which Plaintiffs are entitled to damages for infringement.

228.     Rebuttal of any evidence offered by Plaintiffs regarding total damages as compensation for direct and indirect infringement of any one or more of the asserted claims.

229.     Rebuttal of any evidence offered by Plaintiffs that Plaintiffs are entitled to enhanced damages for HyperBranch's alleged willful infringement of one or more of the asserted claims.

230.     Rebuttal of any evidence offered by Plaintiffs that Plaintiffs are entitled to their attorneys' fees and costs.

231.     Rebuttal of any evidence offered by Plaintiffs that Plaintiffs are entitled to a permanent injunction against further infringement by HyperBranch.

E.     **Equitable Estoppel**

232.     Proof that Plaintiffs, through misleading conduct (including communications, inaction, and silence), led HyperBranch to reasonably conclude that HyperBranch would not be sued by Plaintiffs for patent infringement, and that HyperBranch suffered material economic and/or evidentiary prejudice as a result of Plaintiffs' conduct.

233.     Proof showing that any finding of equitable estoppel would be fair in light of the conduct of the parties.

# EXHIBIT 4

Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>        Defendant. | C.A. No.  15-819-LPS-CJB |

## PLAINTIFFS' STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED

1

**Exhibit 4**

## Table of Contents

I.   Claim Construction ................................................................................... 10

   A.   Issues of law .................................................................................. 10

   B.   Legal Authority .............................................................................. 10

II.   Infringement ......................................................................................... 12

   C.   Issues of Law ................................................................................. 12

   D.   Legal Authority .............................................................................. 12

     1.   Generally .................................................................................. 12

     2.   Literal Infringement ................................................................. 13

     3.   Infringement Under the Doctrine of Equivalents ..................... 13

     4.   Direct Infringement ................................................................. 15

     5.   Induced Infringement (within the United States) ..................... 16

     6.   Infringement Pursuant to 35 U.S.C. § 271(f)(1) ...................... 17

     7.   Contributory Infringement (within the United States) .............. 18

     8.   Infringement Pursuant to 35 U.S.C. § 272(f)(2) ...................... 19

     9.   Willful Infringement ................................................................ 20

III.   Conception, Reduction to Practice, Diligence and Priority Date / Prior Art ........................ 21

   A.   Issue of Law .................................................................................. 21

   B.   Legal Authority .............................................................................. 22

IV.   Validity ................................................................................................ 24

   A.   Issues of Law ................................................................................. 24

   B.   Legal Authority .............................................................................. 26

     1.   Generally (Presumption and Burden of Proof) ......................... 26

     2.   Anticipation ............................................................................ 27

     3.   Obviousness ............................................................................ 29

     4.   Compliance with Requirements of 35 U.S.C. § 112 (Written Description, Enablement, and Definiteness) ................................................................... 33

V.   Other Affirmative Defenses ................................................................... 37

   A.   Issues of Law ................................................................................. 37

   B.   Legal Authority .............................................................................. 37

     1.   Equitable Estoppel Through Implied License ........................... 37

Exhibit 4

VI.  Damages ................................................................................................................ 38

   A.    Issue of Law ............................................................................................... 38

   B.    Legal Authority .......................................................................................... 38

      1.    Reasonable Royalty................................................................................ 39

      2.    Lost Profits (including price erosion)..................................................... 40

      3.    Pre-suit Damages ................................................................................... 43

      4.    Post-Trial Accounting ........................................................................... 44

      5.    Costs, Prejudgment, and Post Trial Interest ......................................... 45

      6.    Enhanced Damages and Attorneys' Fees .............................................. 46

VII. Injunctive Relief ..................................................................................................... 48

   A.    Issue of Law ............................................................................................... 48

   B.    Legal Authority .......................................................................................... 48

**Exhibit 4**

## TABLE OF AUTHORITIES

Cases

. *Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) .............. 19

*3M v. Johnson & Johnson Orthopaedic, Inc.*, 22 U.S.P.Q.2d 1401, 1408 (D. Minn. 1991), aff'd 976 F.2d 1559 (Fed. Cir. 1992) ....................................................................................................................... 35

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041, (Fed. Cir. 1992) .............................. 37

*Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1103-04 (Fed. Cir. 2002) ............................................................. 14

*ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984) ........................................ 30

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.* .............................................................................. 49

*Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-28 (Fed. Cir. 2008) ...................................................... 49

*Advanced Cardiovascular Sys., Inc. v, Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001) ..... 12, 15

*Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000)................................ 28

*Ajinomoto Co. v. Archer- Daniels-Midland Co.*, No. 95-218-SLR, 1996 WL 621830, at *5 (D. Del. Oct. 21, 1996) ......................................................................................................................................................... 26

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir.1999) ........................................................... 27

*Alza Corp. v. Andrx Pharms, LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) ........................................................ 34

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) .......................... 26, 27

*Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 25-26 (Fed. Cir. 2000) ................................ 27, 28

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327-28 (Fed. Cir. 2014)....................................................... 40

*Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015) ......................................................... 49

*Apple Inc. v. Samsung Electronics Co.*, 786 F.3d 983, 1004 (Fed. Cir. 2015)............................................... 42

*Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-630, 2017 WL 2720220, at *10 (N.D. Cal. June 23, 2017) .................................................................................................................................................... 21, 47

*Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).................................................. 33

*Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 956 (Fed. Cir. 1997) ........................................ 30

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)............................................. 38

*Arris Group, Inc. v. British Telecoms, PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011) ....................................... 18

*AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010).......................................................... 17

*Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999)......................................................... 28

*Baxter Healthcare Corp. v. Septramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995)................................ 13, 16

*BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993)....................................... 41

*Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015) ......................................... 36

*BOC Health Care, Inc. v. Nellcor Inc.*, 892 F. Supp. 598, 603 (D. Del. 1995), aff'd, 98 F.3d 1357 (Fed. Cir. Sep. 13, 1996) ........................................................................................................................................... 31

*Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) ................................ 34

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008) ..................................................... 16

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 674-75 (Fed. Cir. 1990).................... 19

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).............................. 26

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1362-63 (Fed.Cir.2009) (en banc)........... 19

*Chalumeau Power Systems LLC v. Alcatel-Lucent*, 2014 WL 4675002, at *2 (D. Del. Sept. 12, 2014)........ 48

4

**Exhibit 4**

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1311-12 (Fed. Cir. 1998) ........................................................................................................................................................ 17

*Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) ................................................................ 26

*Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) ................................. 17

*Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) .................. 12

*Cross Med Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). ............. 13

*Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002) ..................................... 28

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001) 43

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) ................................. 15

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) .......................... 39

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988) ......................... 33

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009) ................................ 41

*DermaFocus LLC v. Ulthera, Inc.*, 201 F.Supp.3d 465, 473 (D. Del. 2016) ................................... 21

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ................................. 49

*Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d at 1381-82 (Fed. Cir. 2003) ................................. 39

*Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 648 (1915) ................................. 39

*DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) ..................................... 16, 17

*Dynacore Holdings Corp. v. US. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004) .......................... 13

eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 394 (2006) ..................................................... 48

*Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000) ..................................... 32

*Eisai Co. Ltd. V. Dr. Reddy's Laboratories, Ltd.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008) .............................. 31

*Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357 (Fed. Cir. 2017) ................................. 16

*EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 104 (D. Del. 2016) ................................. 22

*Endo Pharm. Inc. v. Actavis Inc.*, C.A. No. 14-1381-RGA, 2017 WL 3731001, at *3–5 (D. Del. Aug. 30, 2017). ....................................................................................................................................................... 22

*Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226- 27 (Fed. Cir. 2014) ......................................... 40

*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed. Cir. 2003) ................................................. 43

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998) ........................... 14

*Evonik Degussa GmbH v. Materia, Inc.*, Civ. No. 09-636 (NLH/JS), 2017 WL 3434156, at *1 (D. Del. Aug. 9, 2017) ....................................................................................................................................................... 49

*Exxon Research & Engineering Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir.2001) ......................... 36

*Faulkner v. Gibbs*, 199 F.2d 635, 638 (9th Cir. 1952) ................................................................... 39

*Ferguson Beauregard/ Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003) ....................................................................................................................................... 16

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 122 S. Ct. 1831, 1842 (2002) ......................... 14

*Finish Eng'g Co. v. Zerpa Indus., Inc.*, 806 F.2d 1041, 1044-45 (Fed. Cir. 1986) ........................................ 33

*Finjan, Inc. v. Blue Coat Systems, Inc.*, 2016 WL 3880774, *16 (N.D. Cal. 2016) ........................................ 47

*Funai Elec. Co. v. Daewoo Electronics Corp.*, 616 F.3d 1337, 1368-69 (Fed. Cir. 2009) .............................. 15

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995) ............................ 21, 37

*Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983) ..................................................... 45

*Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017) ................................... 20

*Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 726 (Fed. Cir. 1990) ................................. 32

5

**Exhibit 4**

*Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1347 (Fed. Cir.2004) .......................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ..............................................................17

*Golden Blount, Inc. v. Robert H Peterson*, 438 F.3d 1354, 1362 (Fed. Cir. 2006)...........................12, 17, 19

*Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684, 694 (1966) .....................................................29

*Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999).........................41

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) ................................................14

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932 (2016)................................20, 21, 47

*Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294-95 (Fed.Cir. 1992) .....................................37

*Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990) ............................19, 27

*Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d. 1336, 1343 (Fed.Cir. 2001) .................................................19

*Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996))........................................47

*Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993)..........................................................11

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986).........................23, 34

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) .........................................................49

*In re Antor Media Corp.*, 689 F.3d 1282, 1290 (Fed. Cir. 2012) ...................................................................28

*In re Arkley*, 455 F.2d 586, 587-88 (C.C.P.A 1972) ......................................................................................28

*In re Cyclobenzapine Hydrochloride Extended Release Capsule Patent Litig.*, 676 F.3d 1063, 1068-69 (Fed.
Cir. 2012).................................................................................................................................................30

*In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999) ...................................................................................32

*In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988) .........................................................................................32

*In re Katz*, 687 F.2d 450, 454-456 (C.C.P.A. 1982) ......................................................................................22

*In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000)......................................................................................31

*In re Omeprazole Patent Litig. v. Apotex Corp.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008).............................22

*In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998) .....................................................................................31

*In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) ..................................................................47

*In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)..........................................................................................34

*In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981) ............................................................................................23

*In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989) ............................................................................................11

*Innogenetics, N. V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir. 2008) ...........................................31

*Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991).................................................26

*Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed. Cir. 1985) ................................................31

*Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984) ..........................................................................27

*Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ..................................................................16

*Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ..................................................12

*Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978-979 (Fed. Cir. 1986) .......................................................21

*King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995) .........................................................41

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406, 127 S. Ct. 1727, 1734 (2007) ...............................29, 30, 31

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed. Cir. 1993) ............................................21

*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) ...................................................41

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006).............................18, 47

*Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993) ..................................................46

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ................................................38

**Exhibit 4**

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996).....................................................22, 23

*Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 554 (Fed. Cir. 1990) ...............................16

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995)....................................10, 15

*Mass. Inst. of Tech. v. AB Fortia, et al.*, 774 F.2d 1104, 1109 (Fed. Cir. 1985)........................................23

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017) ....................................21, 41

*Metabolite Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1364–65 (Fed. Cir. 2004) ................17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)..................................17, 19

*Meyers v. Asics Corp*, 974 F.2d 1304, 1309 (Fed.Cir.1992) ..........................................................................37

*Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960)....................................................................13

Microprocessor Enhancement Corp. v. Texas Instruments, Inc., 520 F.3d 1367, 1374 (Fed. Cir. 2008)....35

*Microsoft Corp. v. AT & T Corp.*, 550 US 437, 453 (2007) ...........................................................................18

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) .................................................................26

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002).................................23

*Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992)
..................................................................................................................................................................21

*Minnesota Mining & Mfg. Co., v. Johnson & Johnson Orthopaedics*, 976 F.2d 1559, 1579 (Fed. Cir. 1992)
..................................................................................................................................................................43

*Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1376-77 (Fed. Cir. 2003) ...............................22

*Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994) .................................39

*Moleculon Res. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986)....................................................13

*Monarch Knitting Machinery Corp. v. Sulzer Morat Gmbh*, 139 F.3d 877, 885 (Fed. Cir. 1998) ...............32

*Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001).......................................24

*Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed.Cir.1993).................................................36

*Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) ..............................................16

*Mycogen Plant Science, Inc. v. Monsanto Co.*, 61 F. Supp. 2d. 199, 255 (D. Del. 1999) ............................36

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.,* 7 F.3d 1571, 1579-80 (Fed. Cir. 1993)....................................36

*nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004), *aff'd*, 436 F.3d 1317 (Fed.
Cir. 2006).................................................................................................................................................46

*Nickson Indus., Inc. v. ROL Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988)............................................46

*Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990) ........................................34

*Novo Nordisk v. Bio-Tech. General*, 424 F.3d 1347 (Fed. Cir. 2005) ..........................................................28

*Nystrom v.TREX Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005) ........................................................................11

*Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) ....................................................27

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) .....................................48

Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1576 (Fed. Cir. 1986) .............................35

*Ortho-McNeil Pharmaceutical Inc. v. Mylan Labs*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) .........................31

*Otsuka Pharmaceutical Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1292 (Fed. Cir. 2012)............................31

*Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1270-71 (Fed. Cir. 1999) ....................14

*Pacific Furniture Mfg. Co. v. Preview Furniture Corp.*, 800 F.2d 1111, 1114 n.9 (Fed. Cir. 1986)..............21

*Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995) ..............................................15

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005).....................................34

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) ..............................40

**Exhibit 4**

*Parallel Iron LLC v. NetApp Inc.*, 2014 WL 4540209, at *3 (D. Del. Sept. 12, 2014) ................................... 47

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007) .............................. 30

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) .......................................................... 10, 11, 15

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) ............................... 31

*Read Corporation v. Portec Inc.*, 970 F.2d 816, 826–27 (Fed.Cir.1992) ...................................................... 46

*Ricoh Co. Ltd. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1341-42 (Fed. Cir. 2008) ............................ 17, 19

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ........................................................ 40, 41

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ............................................ 49

*Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000) ............................................................... 29, 33

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997) ........................................... 14

*Sanofi-Aventis Deutschland Gmbh v. Glenmark Pharms. Inc.*, USA, 821 F. Supp. 2d 681, 694 (D.N.J. 2011)
............................................................................................................................................................................ 49

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) ............................... 37

*SEB, S.A. v. Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1376 (Fed. Cir. 2010) .................................... 17

*Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996) ................................................... 46

*Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.* ............................................................... 39, 40

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, CIV.A. 03-241 JJF, 2004 WL 2213562 (D. Del.
Sept. 28, 2004) ................................................................................................................................................ 39

*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F. 2d 1573, 1578-80 (Fed. Cir. 1989) .................................. 42

*Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1258 (Fed. Cir. 2000) ........................................................ 13, 42

*SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365 (Fed. Cir. 2013) .......................................................... 43

*Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1359-60 (Fed. Cir. 2007) ....... 31

*Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002) .................................. 11

*Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999) ........................................... 46

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir.
2012) ................................................................................................................................................................ 39

*Travel Sentry Inc. v. Tropp,* 877 F.3d 1370, 1382-1386 (Fed. Cir. 2017) .................................................... 16

*Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1446-47 (Fed. Cir. 1990) .............................................. 39

*Tristrata Tech., Inc. v. ICN Pharm., Inc.*, 313 F. Supp. 2d 405, 411-12 (D. Del. 2004) ............................... 20

*TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400 (D. Del. 2009) ............................................... 20, 46

*TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986) ............................................................. 42

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) .............................................. 40

*Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000) ........................................... 34

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) ................................... 13, 14

*Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005) ............................ 12

*Water Techs. Corp. v. Calco Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1998) .................................................. 17, 20

*Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364 (Fed. Cir. 2001) .................................................... 20

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ................................................................ 20

*Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1366 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1541
(2012) ............................................................................................................................................................... 36

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001) ............................... 13

8

**Exhibit 4**

*Westerngeco LLC v. ION Geophysical Corp.*, Case No. 4:09-cv-1827, 2012 WL 2568167, *2 (S.D. Tex. June 29, 2012) ................................................................................................................... 18, 20

*Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010), cert. denied 131 S. Ct. 1531 (2011) ...... 29

*Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000) ............ 31

*Zimmer Surgical, Inc. v. Stryker Corp.*, No. 16-679-RGA, 2017 WL 3736750, at *2 (D. Del. Aug. 30, 2017) 21

Statutes

28 U.S.C. § 1961 ................................................................................................................... 45

28 U.S.C. §1920 ................................................................................................................... 45

35 U.S.C § 271(f)(1) ................................................................................................................... 18

35 U.S.C. § 102 ................................................................................................................... 27

35 U.S.C. § 103(a) ................................................................................................................... 29

35 U.S.C. § 112 ................................................................................................................... 33, 35

35 U.S.C. § 271(a) ................................................................................................................... 15

35 U.S.C. § 271(c) ................................................................................................................... 18

35 U.S.C. § 271(f)(2) ................................................................................................................... 20

35 U.S.C. § 282(a) ................................................................................................................... 26

35 U.S.C. § 284 ................................................................................................................... 38, 46

35 U.S.C. § 287 ................................................................................................................... 45

35 U.S.C. §271(b) ................................................................................................................... 16

35 U.S.C. 283 ................................................................................................................... 48

**Exhibit 4**

Plaintiffs respectfully submit the following list of issues of law that remain to be litigated based on the arguments they currently expect to make to establish infringement (and other issues in their case in chief) as well as Plaintiffs' current understanding of the arguments that Defendant is likely to make in an attempt to prove non-infringement and/or invalidity.  Should the Court determine that any issue identified in this list is more properly considered an issue of fact, it shall be so considered and Plaintiffs incorporate them by reference into Plaintiffs' Statement of Issues of Fact to be litigated. Plaintiffs reserve the right to revise, modify, supplement, or change the issues of law to be litigated in light of the Court's rulings and in light of Defendant's identification of issues of law and fact to be litigated.  To the extent that Defendant intends or attempts to introduce different or additional legal arguments to those identified below, Plaintiffs reserve their rights to contest those legal arguments and to present any and all rebuttal evidence in response to those arguments without being bound by this summary of remaining legal issues.

I.    **Claim Construction**

   A.  **Issues of law**

   What is the proper construction of "biocompatible degradable hydrogel" as used in the preamble of one or more of the asserted claims.

   What is the proper construction of "suitable to coat a tissue of a patient" as used in the preamble of one or more of the asserted claims.

   B.  **Legal Authority**

Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). Claim terms are accorded their ordinary and accustomed meaning as would be understood by one of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Intrinsic evidence consists of the words of the claims themselves, the remainder of the

**Exhibit 4**

specification and the prosecution history. *Phillips*, 415 F.3d at 1314. In some cases, the ordinary

meaning of claim language as understood by a person of skill in the art may be readily apparent

even to lay judges. Claim construction in such cases involves little more than the application of

the widely accepted meaning of commonly understood words. *Id.*, at 1314.

Importantly, the person of ordinary skill in the art is deemed to read the claim terms not

only in the context of the particular claim in which the disputed term appears, but in the context

of the entire patent, including the specification. *Id.*, at 1313. This means that the words of the

claims are given their plain meaning unless that meaning is inconsistent with the specification. *In

re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989); *Nystrom v.TREX Co.*, 424 F.3d 1136, 1145 (Fed.

Cir. 2005); *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002).

Claims must be read in view of the specification, of which they are a part as "[t]he specification

'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the

single best guide to the meaning of a disputed term'." *Phillips*, 415 F.3d at 1315. The

construction that stays true to the claim language and most naturally aligns with the patent's

description of the invention will be, in the end, the correct construction. *Id.*, at 1316. (citations

omitted).

"[A]n invention is construed not only in the light of the claims, but also with reference to

the file wrapper or prosecution history [including the cited prior art] in the Patent Office." *Id.*, at

1316.  However, "[i]t is improper for a court to add extraneous limitations to a claim, that is,

limitations added wholly apart from any need to interpret what the patentee meant by particular

words or phrases in the claim." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir.

1993).  "The patentee is entitled to the full scope of his claims, and we will not limit him to his

preferred embodiment or import a limitation from the specification into the claims." *Kara Tech.*

Exhibit 4

*Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *Computer Docking Station Corp.*

*v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008).  Additionally, "claims should rarely, if ever,

be construed to exclude a preferred embodiment." *See Glaxo Group Ltd. v. Apotex, Inc.*, 376

F.3d 1339, 1347 (Fed. Cir.2004).

## II.    Infringement

### C.  Issues of Law

Whether HyperBranch has literally infringed any Asserted Claim of the patents-in-suit

Whether HyperBranch has infringed any Asserted Claim of the patents-in-suit under the doctrine of equivalents

Whether HyperBranch has directly infringed any Asserted Claim of the patents-in-suit

Whether HyperBranch has contributed to the infringement of any Asserted Claim of the patents-in-suit in the United States

Whether HyperBranch has induced infringement of any Asserted Claim of the patents-in-suit in the United States

Whether HyperBranch has contributed to the infringement of any Asserted Claim of the patents-in-suit outside the United States

Whether HyperBranch has induced infringement of any Asserted Claim of the patents-in-suit outside of the United States

### D.  Legal Authority

#### 1.  Generally

Plaintiffs bear the burden of proving by a preponderance of the evidence (i.e., that it is

more likely than not) that HyperBranch infringes an asserted claim of the patents-in-suit.

*Advanced Cardiovascular Sys., Inc. v, Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir.

2001); *Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005).

The requisite proof of infringement can be, and often is, established by circumstantial as well as

direct evidence. *Golden Blount, Inc. v. Robert H Peterson*, 438 F.3d 1354, 1362 (Fed. Cir. 2006)

Exhibit 4

("Circumstantial evidence can support a finding of infringement.") (citations omitted); *see also*

*Dynacore Holdings Corp. v. US. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004)

(holding plaintiff could prove predicate act of direct infringement by demonstrating defendant's

products necessarily or inherently infringe); *Moleculon Res. Corp. v. CBS, Inc.*, 793 F.2d 1261,

1272 (Fed. Cir. 1986) ("It is hornbook law that direct evidence of a fact is not necessary.").

"Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and

persuasive than direct evidence." *Id.* at 1272 (quoting *Michalic v. Cleveland Tankers, Inc.*, 364

U.S. 325, 330 (1960)).

### 2.   Literal Infringement

An accused product literally infringes if it contains each and every limitation of the

asserted patent claim. *Baxter Healthcare Corp. v. Septramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir.

1995); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001).

Infringement is determined on an element by element basis; if each and every element of the

claim is present in the accused device, then the device literally infringes the claims. *Cross Med*

*Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

### 3.   Infringement Under the Doctrine of Equivalents

"Under this doctrine, a product or process that does not literally infringe upon the express

terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between

the elements of the accused product or process and the claimed elements of the patented

invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

Infringement under the doctrine of equivalents is a question of fact. *Stryker Corp. v. Davol Inc.*,

234 F.3d 1252, 1258 (Fed. Cir. 2000). The jury must determine whether the differences between

the accused products and the claim elements are insubstantial. *Warner-Jenkinson Co.*, 520 U.S.

at  39-40.  This analysis is performed on an element-by-element basis. *Id.* at 29. "The doctrine of

**Exhibit 4**

equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997). "[A] patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950); see also *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1270-71 (Fed. Cir. 1999), *Warner-Jenkinson Co.*, 520 U.S. at 40; *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998). Evidence that a person of ordinary skill in the art would consider the element of the accused product to be interchangeable with the claim limitation is also evidence supporting a finding of infringement under the doctrine of equivalents. *Warner- Jenkinson Co.*, 520 U.S. at 36-37 (*citing Graver Tank*, 339 U.S. at 857).

One may not use the doctrine of equivalents to vitiate a claim limitation entirely. *See Warner- Jenkinson Co.*, 520 U.S. at 39 n. 8; *Ethicon Endo-Surgery, Inc.*, 149 F.3d at 1316-17. Further, prosecution history estoppel prevents a patentee from using the doctrine of equivalents to recapture subject matter that was relinquished during prosecution of the patent. *Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1103-04 (Fed. Cir. 2002). If the claimed invention was limited during prosecution, and the patentee cannot overcome the presumption of estoppel, then the patentee is not entitled to the surrendered range of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 122 S. Ct. 1831, 1842 (2002). Yet not every amendment results in prosecution history estoppel. Id. at 740 (explaining that the patentee "bear[s] the burden of showing that the amendment does not surrender the particular equivalent in question."). For example, a patentee can still rely on the doctrine of equivalents by showing that an asserted

Exhibit 4

claim limitation is only peripherally related to the reason for the narrowing amendment. *Funai*

*Elec. Co. v. Daewoo Electronics Corp.*, 616 F.3d 1337, 1368-69 (Fed. Cir. 2009); *see also Pall*

*Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995)

### 4. Direct Infringement

35 U.S.C. § 271 states:

> Except as otherwise provided in this title, whoever without authority makes, uses,
> offers to sell, or sells any patented invention, within the United States, or imports
> into the United States any patented invention during the term of the patent
> therefor, infringes the patent.

35 U.S.C. § 271(a).  A patentee "must establish by a preponderance of the evidence that the

accused device infringes one or more claims of the patent either literally or under the doctrine of

equivalents." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336

(Fed. Cir. 2001). Determining infringement entails a two-step analysis. Initially, the claims at

issue are interpreted to define their scope. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454

(Fed. Cir. 1998) (en banc); see generally *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)

(en banc). An infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.*,

52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The first step is to

define the disputed the terms of the patent consistent with how those terms would be understood

by a person of ordinary skill in the art. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.

Cir. 2005) (en banc). The Court construed a number of the disputed claim terms in a series of

reports and recommendations beginning on July 27, 2017 and ending on August 30, 2017 which

were adopted by the Court on November 8, 2017. The second step in the infringement analysis is

to compare the accused product with the properly construed claims. *Markman*, 52 F.3d at 976.

Whether the claims, as construed by the Court, are infringed is a question of fact to be

determined by the jury. *Ferguson Beauregard/ Logic Controls, Div. of Dover Res., Inc. v. Mega*

15

Exhibit 4

*Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003). The jury must examine the evidence to

determine whether the accused product infringes the properly construed claims. *See Broadcom*

*Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008).  Those who manufacture, sell, or

use a patented method, for example, are liable for infringement. *See Joy Techs., Inc. v. Flakt,*

*Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). A product claim is directly infringed if "each limitation in

the asserted claim" is "found present in the accused device." *Baxter Healthcare Corp. v.*

*Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995). "A method claim is directly infringed

only by one practicing the patented method." *Joy Techs.*, 6 F.3d at 775 (emphasis in original).  A

party who exercises direction or control over the entire process may be liable as a direct infringer

even if they do not personally perform every step. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d

1318, 1329 (Fed. Cir. 2008); *Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357

(Fed. Cir. 2017) (attributing the performance of a method step to physicians because they

directed their patients to use accused product in a particular manner); *see also Travel Sentry Inc.*

*v. Tropp,* 877 F.3d 1370, 1382-1386 (Fed. Cir. 2017).

### 5.   Induced Infringement (within the United States)

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35

U.S.C. §271(b). A patentee "has the burden of showing that the alleged infringer's actions

induced infringing acts and that he knew or should have known his actions would induce actual

infringements." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)

(*quoting Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 554 (Fed. Cir. 1990)).

The patentee must prove that the accused infringer "knew of the patent" and had a "specific

intent . . . to induce infringement." *Id.* at 1304-05. The "knowledge-of-the-patent" requirement

can be satisfied by showing that the accused infringer manifested a "deliberate indifference to"

or "knew of and disregarded" a risk that its activities were covered by a patent. *SEB, S.A. v.*

Exhibit 4

*Montgomery Ward & Co., Inc.*, 594 F.3d 1360, 1376 (Fed. Cir. 2010). Inducing infringement

requires proof that the defendant "knew of the patent and that 'the induced acts constitute patent

infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). "While proof of intent is

necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *DSU*

*Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006*); see also, Ricoh Co. Ltd. v.*

*Quanta Computer, Inc.*, 550 F.3d 1325, 1341-42 (Fed. Cir. 2008); *Water Techs. Corp. v. Calco*

*Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1998). Inducement may be found where there is "[e]vidence of

active steps taken to encourage direct infringement," which can in turn be found in "advertising

an infringing use or instructing how to engage in an infringing use." *Metro-Goldwyn-Mayer*

*Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (citations and internal quotation marks

omitted).  While proof of intent is necessary, direct evidence is not required; rather,

circumstantial evidence may suffice. Inducement may be shown by an accused infringer's

actions encouraging or instructing another on how to use an accused device in a way that

infringes a patent such as through the provision of user manuals or advertisements. *Golden*

*Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1361-64 (Fed. Cir. 2006); *see also*

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1311-12 (Fed.

Cir. 1998); *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010); *Metabolite*

*Labs, Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1364–65 (Fed. Cir. 2004).

### 6. Infringement Pursuant to 35 U.S.C. § 271(f)(1)

"Section 271(f) states:

> whoever without authority supplies or causes to be supplied in or from the United
> States all or a substantial portion of the components of a patented invention,
> where such components are uncombined in whole or in part, in such manner as to
> actively induce the combination of such components outside of the United States
> in a manner that would infringe the patent if such combination occurred within

17

Exhibit 4

the United States, shall be liable as an infringer.

35 U.S.C § 271(f)(1); *Microsoft Corp. v. AT & T Corp.*, 550 US 437, 453 (2007) *citing* 35

U.S.C. §271(f)(1).  "Actively induce[ing] the combination" of the components can be found

from distribution of instructions for use and training provided to foreign end users. *See Liquid*

*Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006) (affirming

infringement verdict under 35 U.S.C. § 271(f) and explaining that distribution of "engineering

manual . . . replete with examples" of infringing use was substantial evidence of inducement);

*Westerngeco LLC v. ION Geophysical Corp.*, Case No. 4:09-cv-1827, 2012 WL 2568167, *2

(S.D. Tex. June 29, 2012) (actively "induce [the] combination is shown throughout instruction

manuals that ION and Fugro issued and distributed, which instruct end users to use the steering

modes of the ′520 patent .").

### 7.  Contributory Infringement (within the United States)

35 U.S.C. § 271(c) states:

> Whoever offers to sell or sells within the United States or imports into the United
> States a component of a patented machine, manufacture, combination, or
> composition, or a material or apparatus for use in practicing a patented process,
> constituting a material part of the invention, knowing the same to be especially
> made or especially adapted for use in an infringement of such patent, and not a
> staple article or commodity of commerce suitable for substantial noninfringing
> use, shall be liable as contributory infringer.

35 U.S.C. § 271(c).  Under section 271(c), plaintiffs must establish that: "(a) the supplier's

product was used to commit acts of direct infringement; (b) the product's use constituted 'a

material part of the invention'; (c) the supplier knew its product was 'especially made or

especially adapted for use in an infringement' of the patent; and (d) the product is 'not a staple

article or commodity of commerce suitable for substantial noninfringing use.'" *Arris Group, Inc.*

*v. British Telecoms, PLC*, 639 F.3d 1368, 1376 (Fed. Cir. 2011) (citing 35 U.S.C. § 271(c)). For

example, a product, or component of a product, that is "specially adapted for use in [a] patented

18

**Exhibit 4**

process and with no substantial non-infringing use, would plainly be 'good for nothing else' but infringement," making its seller liable. *Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (*quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 913, 932 (2005)). The components of a patented invention are the patented invention's constituent parts, elements, and ingredients. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1362-63 (Fed.Cir.2009) (en banc). The plaintiff must show that the alleged contributory infringer had knowledge that the accused component was especially made for or adapted for a particular use and knowledge of the patent that prescribes that use. *Golden Blount, Inc.*, 438 F.3d at 1361-64. Knowledge, not intent, is required for contributory infringement. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990). In addition, it must be shown that the accused component is not a staple article suitable for substantial noninfringing use. *Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986). A suggested non-infringing use must not be farfetched, illusory, impractical or merely experimental. *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d. 1336, 1343 (Fed.Cir. 2001). Under § 271(c), the Federal Circuit has held that in order to take advantage of the "substantial noninfringing use" exception, an alleged infringer must show both that "the device at issue, in theory, could be used in a way so as not to infringe the asserted method claim" and "that the device was actually used in the non-infringing way." *Golden Blount*, 438 F.3d at 1363, *citing C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 674-75 (Fed. Cir. 1990).

### 8.  Infringement Pursuant to 35 U.S.C. § 272(f)(2)

35 U.S.C § 271(f)(2) states:

> Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or

Exhibit 4

adapted and intending that such component will be combined outside of the
United States in a manner that would infringe the patent if such combination
occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(2). Section 272(f)(2) requires only that the infringer intend that a component

will be combined, it does not require an actual combination or assembly of components.

*Waymark Corp. v. Porta Systems Corp.*, 245 F.3d 1364 (Fed. Cir. 2001). A contributory

infringer need not actually combine or assemble the components; a party can intend that a

shipped component ultimately will be included in an assembled product even if the combination

never occurs. *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400 (D. Del. 2009).

**9. Willful Infringement**

There is "no precise rule or formula" for determining whether an accused infringer's

infringement was willful. *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1932

(2016). Willful infringement is a question of fact to be decided by the jury, and the patentee has

the burden of proving willful infringement by a preponderance of evidence. *WBIP, LLC v.

Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); *Halo,* 136 S. Ct. at 1934. Willful infringement

can be established either by direct evidence or by circumstantial evidence. *See, e.g., Georgetown

Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017); *Water Techs. Corp. v.

Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988); *Tristrata Tech., Inc. v. ICN Pharm., Inc.*, 313 F.

Supp. 2d 405, 411-12 (D. Del. 2004). An accused infringer is liable for willful infringement of a

patent if the accused infringer knew or should have known of the patent and nevertheless

engaged in conduct that infringed the patent without regard for the consequences. *Halo*, at 1931-

1934. "[P]roof that [an accused infringer] acted despite a risk of infringement that was 'either

known or so obvious that it should have been known to the accused infringer'" is sufficient to

establish willful infringement. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358,

1362-64 (Fed. Cir. 2016) (*citing Halo*, 136 S. Ct. at 1930).

**Exhibit 4**

Willful infringement requires an evaluation of the accused infringer's state of mind is to be evaluated at the time of the accused infringer's challenged conduct. *Halo*, 136 S. Ct. at 1933; *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-630, 2017 WL 2720220, at *10 (N.D. Cal. June 23, 2017). As such, either pre-suit or post-suit conduct can independently serve as a basis for willful infringement. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017); *Zimmer Surgical, Inc. v. Stryker Corp.*, No. 16-679-RGA, 2017 WL 3736750, at *2 (D. Del. Aug. 30, 2017); *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-630, 2017 WL 2720220, at *11 (N.D. Cal. June 23, 2017); *DermaFocus LLC v. Ulthera, Inc.*, 201 F.Supp.3d 465, 473 (D. Del. 2016).  An accused infringer's challenged conduct that began prior to the issuance of a patent (or awareness of the patents) is no defense to willful infringement if the accused infringer continues to infringe post issuance. *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995); *Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992); *Pacific Furniture Mfg. Co. v. Preview Furniture Corp.*, 800 F.2d 1111, 1114 n.9 (Fed. Cir. 1986) ("The fact that Preview may have started its infringement before the patents issued (or before appellants were aware of the patents) does not bar an award of increased damages or attorney fees."); *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 978-979 (Fed. Cir. 1986); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed. Cir. 1993) ("[C]ontinu[ing] the accused activities after patent issuance" can support a finding of willfulness because "[t]he law imposes an affirmative duty of due care to avoid infringement of the known patent rights of another.").

III. **Conception, Reduction to Practice, Diligence and Priority Date / Prior Art**
   A. **Issue of Law**

Whether each reference asserted against an asserted claim is "prior art" to that asserted claim

Whether each reference asserted against an asserted claim is a "printed publication"

Exhibit 4

Whether Plaintiffs can show by a preponderance of evidence that an asserted claim was reduced to practice prior to the priority date of any reference asserted against that asserted claim.

Whether Plaintiffs can show by a preponderance of evidence that an asserted claim was conceived prior to the priority date of any reference asserted against it and Plaintiffs were diligent in working to reduce the invention to practice

## B. Legal Authority

A threshold question in any anticipation or obviousness analysis is whether the allegedly invalidating reference is prior art, which is a question of law for the Court. *See Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1376-77 (Fed. Cir. 2003). To qualify as a prior art reference under 35 U.S.C. § 102(b), a device must have been "in public use or on sale in this country[] more than one year prior to the date of the application for patent" and a patent or other printed publication must have "described" the invention "in this or a foreign country" before that time. To be considered prior art under 102(a) the invalidating activities must occur before the invention of the patent. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996). Therefore, for a reference to be prior art under 102(a), it must not be the work of the inventor(s) or those acting on their direction. *In re Katz*, 687 F.2d 450, 454-456 (C.C.P.A. 1982).  A reference is not prior art under 102(a) if the inventors can establish an earlier reduction by the inventors *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 104 (D. Del. 2016); *Endo Pharm. Inc. v. Actavis Inc.*, C.A. No. 14-1381-RGA, 2017 WL 3731001, at *3–5 (D. Del. Aug. 30, 2017).

To be considered prior art under (whether the references is asserted as anticipatory art under § 102 or obviousness art under § 103), a reference must have been sufficiently accessible to the public interested in the art before the critical date. *In re Omeprazole Patent Litig. v. Apotex Corp.*, 536 F.3d 1361, 1381 (Fed. Cir. 2008). "For prior art to anticipate . . . because it is 'known,' the knowledge must be publicly accessible." *Minnesota Min. & Mfg. Co. v. Chemque,*

**Exhibit 4**

*Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002). Likewise, "[f]or purposes of anticipation, a use must

be accessible to the public." *Id.* "Although 'public use' for purposes of § 102(b) is defined

differently from 'use' for purposes of § 102(a), both require actual use by someone at some

point." *Id.* at 1307. A document "may be deemed a printed publication upon a satisfactory

showing that it has been disseminated or otherwise made available to the extent that persons

interested and of ordinary skill in the subject matter or art, exercising reasonable diligence can

locate it and recognize and comprehend therefrom the essentials of the claimed invention without

need of further research or experimentation." *Mass. Inst. of Tech. v. AB Fortia, et al.*, 774 F.2d

1104, 1109 (Fed. Cir. 1985) (*quoting In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)). "The

proponent of the publication bar must show that prior to the critical date the reference was

sufficiently accessible, at least to the public interested in the art, so that such a one by examining

the reference could make the claimed invention without further research or experimentation." *In

re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986).

Conception is the "formation, in the mind of the inventor, of a definite and permanent

idea of a complete and operative invention, as it is hereafter to be applied in practice." *Hybritech,

Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed. Cir. 1986). "Actual reduction to

practice requires that the claimed invention work for its intended purpose[,] and . . . constructive

reduction to practice occurs when a patent application on the claimed invention is filed." *Id.*

Where a party is first to conceive but second to reduce to practice, "that party must demonstrate

reasonable diligence toward reduction to practice from a date just prior to the other party's

conception to its reduction to practice." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed.

Cir. 1996). "Proof of reasonable diligence, however, does not require a party to work constantly

on the invention or to drop all other work." *Mycogen* 252 F.3d at 1316. Further, "there need not

Exhibit 4

necessarily be evidence of activity on every single day if a satisfactory explanation is

evidenced." *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001).

IV.    **Validity**

A.  **Issues of Law**

Whether HyperBranch can prove by clear and convincing evidence that each of the asserted claims is invalid

Whether HyperBranch can overcome, by clear and convincing evidence, the presumption that the asserted claims are valid

Whether HyperBranch can overcome the heavier burden of proving invalidity where the alleged prior art asserted as a basis for invalidity has already been considered by the United States Patent and Trademark Office during prosecution of the patents-in-suit.

Whether HyperBranch can prove by clear and convincing evidence that each reference asserted against an asserted claim is prior art under 35 U.S.C. § 102 or 103.

Whether HyperBranch can prove by clear and convincing evidence that any reference asserted by HyperBranch as anticipatory prior art to an asserted claim: (1) discloses each and every limitation of the asserted claim either expressly or inherently; and (2) does so in a manner that would enable a person of ordinary skill in the art at the time of the invention to practice the claimed invention with undue experimentation

Whether HyperBranch can prove by clear and convincing evidence that, prior to the priority date for any asserted claim, the invention claimed in any asserted claim (including each and every limitation therein) was (1) known or in public use by others in the United States; or (2) patented or described in a printed publication before the priority date

To the extent HyperBranch argues that any claim limitation of any asserted claim is inherent in any alleged prior art reference asserted against such claim by HyperBranch, whether HyperBranch can prove by clear and convincing evidence that each such claim limitation is necessarily present in the alleged prior art reference.

Whether HyperBranch can prove by clear and convincing evidence that the differences between the subject matter of any of the asserted claims and any prior art references relied upon (alone or in combination) are such that any of the asserted claims would have been obvious to a person of ordinary skill in the art at the time of invention.

24

## Exhibit 4

Whether HyperBranch can prove by clear and convincing evidence that the invention described in any of the asserted claims was obvious to a person of ordinary skill in the art at the time of invention in light of (1) the scope and content of the alleged prior art; (2) the differences between such claim and the alleged prior art; (3) the level of ordinary skill in the art at the time of invention; and (4) the objective evidence of nonobviousness.

Whether HyperBranch can prove by clear and convincing evidence that any alleged prior art reference alone or in combination with other alleged prior art reference (1) discloses each and every element, either expressly or inherently, of any asserted claim, and (2) does so in a way that would enable a person of ordinary skill in the art to practice the claimed invention without undue experimentation.

Whether HyperBranch can prove by clear and convincing evidence that a person of ordinary skill in the art would have been motivated to combine and could combine the teachings of the alleged prior art to obtain the invention of any asserted claim.

Whether HyperBranch can prove by clear and convincing evidence that a person of ordinary skill in the art would have had a reasonable expectation of success in combining the alleged prior art to obtain the invention of any asserted claim.

Whether any objective indicia of non-obviousness exist with respect to the inventions of any of the asserted claims, such as (a) whether any of the inventions claimed in the patents-in-suit fulfilled a long-felt but unresolved need; (b) whether others in the field tried but failed to solve the problems that were solved by the inventions claimed in the patents-in-suit; (c) whether others copied the inventions claimed in the patents-in-suit; (d) whether others licensed the inventions claimed in the patents-in-suit; (e) whether any commercial embodiment of the inventions claimed in the patents-in-suit was a commercial success; (f) whether there was praise by others skilled in the art of any of the inventions claimed in any claims of the patents-in-suit; (g) whether the inventions claimed in the patents-in suit exhibited unexpected benefits.

Whether HyperBranch can overcome Plaintiffs' showing that objective considerations of non-obviousness support the non-obviousness of the inventions of the asserted claims.

Whether HyperBranch can prove by clear and convincing evidence that any asserted claim is invalid under 35 U.S.C. § 112 as failing to fulfill the written description requirement.

Whether HyperBranch can prove by clear and convincing evidence that any asserted claim is invalid under 35 U.S.C. § 112 as failing to fulfill the enablement requirement.

25

Exhibit 4

Whether HyperBranch can prove by clear and convincing evidence that any asserted claim is invalid under 35 U.S.C. § 112 as failing to fulfill the definiteness requirement.

## B. Legal Authority

### 1. Generally (Presumption and Burden of Proof)

The patents-in-suit are presumed valid. 35 U.S.C. § 282(a). To overcome that presumption of validity, a party challenging a patent must prove facts supporting a determination of invalidity by "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). "Clear and convincing evidence has been described as evidence which proves in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual contentions are [sic] highly probable.'" *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991) (alterations in original) (*quoting Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Further, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282(a). Because of the presumption of validity, a patentee responding to a challenge to the patent's validity need only submit sufficient evidence to rebut any proof of invalidity offered by the challenger, and, "where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998). "[T]he burden of persuasion is and remains always upon the party asserting invalidity." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) (citation and emphasis omitted). "It is not necessary that the court hold a patent valid; it is only necessary that it hold that the patent challenger has failed to carry its burden." *Ajinomoto Co. v. Archer- Daniels-Midland Co.*, No. 95-218-SLR, 1996 WL 621830, at *5 (D. Del. Oct. 21, 1996)

Exhibit 4

(*citing Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984)), *aff'd*, 228 F.3d 1338 (Fed.

Cir. 2000). When the Examiner of record has already considered during patent prosecution a

reference offered to invalidate a patent, the accused infringer "has the added burden of

overcoming the deference that is due to a qualified government agency presumed to have

properly done its job . . . and whose duty it is to issue only valid patents." *Am. Hoist & Derrick

Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *see also Hewlett- Packard Co.

v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990); *Al-Site Corp. v. VSI Int'l, Inc.*,

174 F.3d 1308, 1323 (Fed. Cir.1999) ("the challenger's 'burden is especially difficult when the

prior art was before the PTO examiner during prosecution of the application.'" (quoting *Hewlett-

Packard*, 909 F.2d at 1467)).

## 2.   Anticipation

Section 102 of Title 35 of the United States Code provides, in relevant part, that:

> A person shall be entitled to a patent unless - (a) the invention was known or used
> by others in this country, or patented or described in a printed publication in this
> or a foreign country, before the invention thereof by the applicant for patent, or
> (b) the invention was patented or described in a printed publication in this or a
> foreign country or in public use or on sale in this country, more than one year
> prior to the date of the application for patent in the United States.

35 U.S.C. § 102.  The first step in an invalidity analysis based on anticipation in view of a prior

art reference is to determine the meaning and scope of the pertinent claims. *Oakley, Inc. v.

Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). Each claim must be viewed as a whole,

and it is improper to ignore any element of the claim. *Apple Computer, Inc. v. Articulate Sys.,

Inc.*, 234 F.3d 14, 25-26 (Fed. Cir. 2000). After determining the meaning and scope of the

claims, each claim limitation must be compared to the reference to determine whether the

reference anticipates the claim. *Oakley*, 316 F.3d at 1339.

A patent claim is anticipated if all the elements or limitations of a given claim are found

**Exhibit 4**

within a single prior art reference as viewed through the eyes of a person with ordinary skill in the field of invention. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000); *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999). "A patent is invalid for anticipation when the same device or method, having all of the elements contained in the claim limitations, is described in a single prior art reference." *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002).   Invalidity for anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted). Further, an anticipating reference "must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of the invention." *Crown*, 289 F.3d at 1375.  Anticipation requires that the reference must disclose the invention "without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference." *In re Arkley*, 455 F.2d 586, 587-88 (C.C.P.A 1972).

"In order to anticipate, a prior art disclosure must also be enabling, such that one of ordinary skill in the art could practice the invention without undue experimentation." *Novo Nordisk v. Bio-Tech. General*, 424 F.3d 1347 (Fed. Cir. 2005). "Enablement of prior art requires that the reference teach a skilled artisan to make or carry out what it discloses in relation to the claimed invention . . . [A] prior art reference need not enable its full disclosure; it only needs to enable the portions of its disclosure alleged to anticipate the claimed invention." *In re Antor Media Corp.*, 689 F.3d 1282, 1290 (Fed. Cir. 2012). "If a patentee presents evidence of

Exhibit 4

nonenablement that a trial court finds persuasive, the trial court must then exclude that particular

prior art patent in any anticipation inquiry, for then the presumption has been overcome." *Amgen*

*Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

### 3. Obviousness

Section 103 of Title 35 of the United States Code provides, in relevant part, that:

> A patent may not be obtained though the invention is not identically disclosed or
> described as set forth in section 102 of this title, if the differences between the
> subject matter sought to be patented and the prior art are such that the subject
> matter as a whole would have been obvious at the time the invention was made to
> a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a) (2011); *see also Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir.

2010), cert. denied 131 S. Ct. 1531 (2011). Obviousness is question of law based on underlying

factual determinations.  These underlying factual determinations include: (1) the scope and

content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the

claimed invention and the prior art; and (4) the extent of any proffered objective indicia of

nonobviousness, termed "secondary considerations."  *Graham v. John Deere Co.*, 383 U.S. 1,

17-18, 86 S. Ct. 684, 694 (1966).  Under § 103, the scope and content of the prior art are to be

determined; differences between the prior art and the claims at issue are to be ascertained; and

the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness

or nonobviousness of the subject matter is determined. Such secondary considerations as

commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give

light to the circumstances surrounding the origin of the subject matter sought to be patented. *KSR*

*Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406, 127 S. Ct. 1727, 1734 (2007) (*quoting Graham v.*

*John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). Before finding a patent claim as

invalid for obviousness, a court must consider all of these factors. *Ruiz v. A.B. Chance Co.*, 234

F.3d 654, 663 (Fed. Cir. 2000).

Exhibit 4

The obviousness analysis takes place at the time of the invention, and focuses on evidence existing before the time of the invention. *See KSR Int'l*, 550 U.S. at 420. An obviousness determination is made "from the viewpoint of a person of ordinary skill [not the inventor] in the field of the invention." *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 956 (Fed. Cir. 1997). "[A] patent composed of several elements is not proved obvious merely by demonstrating that each element was, independently, known in the prior art." *KSR Int'l*, 550 U.S. at 418. "[I]nventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *Id.* at 418-19. Obviousness requires "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR Int'l*, 550 U.S. at 418. Where a challenger seeks to invalidate a patent based on obviousness, it must demonstrate "by clear and convincing evidence" that a "skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzapine Hydrochloride Extended Release Capsule Patent Litig.*, 676 F.3d 1063, 1068-69 (Fed. Cir. 2012) (citing *Proctor & Gamble Co. v. Teva Pharm.USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007). When a patent's validity is challenged, "[o]bviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching or suggestion supporting the combination." *Id.* at 1372, *quoting ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984). When the claimed invention combines the unpredictable arts, the alleged prior art must provide specific and particular reasons to modify or combine the prior art. *See*

30

**Exhibit 4**

*Eisai Co. Ltd. V. Dr. Reddy's Laboratories, Ltd.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008); *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009); *Otsuka Pharmaceutical Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1292 (Fed. Cir. 2012); *Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1359-60 (Fed. Cir. 2007). The use of hindsight is prohibited in the obviousness analysis. *KSR Int'l.*, 550 U.S. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning."); *Innogenetics, N. V. v. Abbott Labs.*, 512 F.3d 1363, 1374 n.3 (Fed. Cir. 2008); *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1343 (Fed. Cir. 2000) (using "the claimed invention itself as a blueprint for piecing together elements in the prior art to defeat the patentability of the claimed invention" is impermissible hindsight reasoning). The obviousness analysis must avoid using the teachings of the patent-in-suit because "[t]he invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1138 (Fed. Cir. 1985); *Ortho-McNeil Pharmaceutical Inc. v. Mylan Labs*, 520 F.3d 1358, 1364 (Fed. Cir. 2008); *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) Therefore, "[i]t is critical that the question of obviousness not be viewed in the light of the accomplished result." *BOC Health Care, Inc. v. Nellcor Inc.*, 892 F. Supp. 598, 603 (D. Del. 1995), *aff'd*, 98 F.3d 1357 (Fed. Cir. Sep. 13, 1996). Rather, evidence must be provided that a "skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed." *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998).

When considering the validity of a patent under 35 U.S.C. §103, the Federal Circuit has explained that:

Exhibit 4

> Measuring a claimed invention against the standard established by section 103
> requires the oft-difficult but critical step of casting the mind back to the time of
> the invention, to consider the thinking of one of ordinary skill in the art, guided
> only by the prior art references and the then-accepted wisdom in the field.

*Ecolochem, Inc. v. S. California Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000), *quoting In re*

*Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999).  Courts "cannot use hindsight reconstruction to

pick and choose among isolated disclosures in the prior art to deprecate the claimed invention."

Id. at 1371, quoting *In re Fine*, 837 F.2d 1071, 1075 (Fed. Cir. 1988).  Further, the Federal

Circuit's case law makes clear that:

> [T]he best defense against hindsight-based obviousness analysis is the rigorous
> application of the requirement for a showing of a teaching or motivation to
> combine the prior art references.  Combining prior art references without evidence
> of such a suggestion, teaching, or motivation simply takes the inventor's
> disclosure as a blueprint for piecing together the prior art to defeat patentability—
> the essence of hindsight.

*Ecolochem*, 227 F.3d at 1371-72.

Furthermore, the Federal Circuit has stated that other indicia, such as "teaching away"

and skepticism of those in the art, are probative evidence of non-obviousness.  *Monarch Knitting*

*Machinery Corp. v. Sulzer Morat Gmbh*, 139 F.3d 877, 885 (Fed. Cir. 1998). A prior art

reference may be considered to teach away when a person of ordinary skill upon reading the

reference, would be discouraged from following the path set out in the reference, or would be led

in a direction divergent from the path that was taken by the applicant.  General skepticism of

those in the art—not amounting to teaching away—is also "relevant and persuasive evidence" of

nonobviousness.  *Id.* (Internal citations omitted), *citing Gillette Co. v. S.C. Johnson & Son, Inc.*,

919 F.2d 720, 726 (Fed. Cir. 1990).  Other secondary considerations, like commercial success,

industry acquiescence, unexpected results, and long felt need, are also probative evidence of non-

obviousness.  *Monarch*, 139 F.3d at 883-85. The objective evidence of non-obviousness, the

32

Exhibit 4

evidence of secondary considerations, "when present, must be considered in determining

obviousness" and "may often be the most probative and cogent evidence in the record." *Ruiz v.*

*A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000). "The commercial response to an invention

is significant to determinations of obviousness, and is entitled to fair weight." *Demaco Corp. v.*

*F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988). Secondary

considerations, like commercial success, "provide objective evidence of how the patented device

is viewed in the marketplace, by those directly interested in the product." Id. Significant

evidence of commercial success (or any other secondary consideration such as industry

recognition and acceptance), by itself, is sufficient to preclude a finding of obviousness. *Finish*

*Eng'g Co. v. Zerpa Indus., Inc.*, 806 F.2d 1041, 1044-45 (Fed. Cir. 1986). Where a patentee

asserts that commercial success supports its contention of nonobviousness, there must be a

sufficient relationship between the commercial success and the patented invention, a "nexus."

*Demaco Corp.*, 851 F.2d at 1392. A prima facie showing of a nexus is made "when the patentee

shows both that there is commercial success and that the thing [] that is commercially successful

is the invention claimed in the patent." *Id.*

### 4. Compliance with Requirements of 35 U.S.C. § 112 (Written Description, Enablement, and Definiteness)

35 U.S.C. § 112 states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112. The written description must reasonably convey "to those skilled in the art that

the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms.,*

*Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Sufficient disclosure varies

33

Exhibit 4

"depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id.* In determining whether a specification contains an adequate written description, "one must make an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.'" *Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (*quoting Ariad*, 598 F.3d at 1351). Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed. *See, e.g., Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000).

Enablement is determined as of the effective filing date of the patent's application. *Alza Corp. v. Andrx Pharms, LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010). The test for enablement requires factual "determinations of whether a person skilled in the pertinent art, using the knowledge available to such a person and the disclosure in the patent document, could make and use the invention without undue experimentation." *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990). The specification need not disclose what is well known in the art. *See, e.g., Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1385 (Fed. Cir. 1986). Enablement requires that the specification teach those in the art to make and use the invention without undue experimentation. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *Id.*

34

Exhibit 4

The definiteness requirement in 35 U.S.C. § 112 provides:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112. Although compliance with the second paragraph of § 112 is "generally" a question of law, "[u]nderlying this conclusion of law are findings of facts concerning the prior art, the particular invention, and how the claims would be read by those of ordinary skill in the art." 3M v. Johnson & Johnson Orthopaedic, Inc., 22 U.S.P.Q.2d 1401, 1408 (D. Minn. 1991), aff'd 976 F.2d 1559 (Fed. Cir. 1992); see also Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1576 (Fed. Cir. 1986). "Because a claim is presumed valid, a claim is indefinite only if the claim is insolubly ambiguous, and no narrowing construction can properly be adopted." Microprocessor Enhancement Corp. v. Texas Instruments, Inc., 520 F.3d 1367, 1374 (Fed. Cir. 2008).

A party asserting indefiniteness must demonstrate by clear and convincing evidence, that the claim, when read in light of the specification and the prosecution history, "fail to inform, with reasonable clarity, those skilled in the art about the scope of the invention." *See, Nautilus*, 134 S. Ct. at 2124. In discussing the reasonable certainty standard in *Biosig Instruments, Inc. v. Nautilus*, the Federal Circuit offered the following guidance:

In the wake of Nautilus II, judges have had no problem operating under the reasonable certainty standard. For example, Judge Bryson, sitting by designation in Texas, stated: "Indefiniteness is a legal determination; if the court concludes that a person of ordinary skill in the art, with the aid of the specification, would understand what is claimed, the claim is not indefinite." *Freeny v. Apple Inc.*, No. 2:13-CV-00361-WCB, 2014 WL 4294505, at *4 (E.D.Tex. Aug. 28, 2014) (describing the question as whether "a person of ordinary skill can discern from the claims and specification what the bounds of the claim are with reasonable certainty"). After listing numerous fact-specific examples, Judge Bryson noted that "[c]ontrary to the defendant's suggestion, [the Nautilus II] standard does not render all of the prior Federal Circuit and district court cases inapplicable" an "all

35

Exhibit 4

that is required is that the patent apprise [ordinary-skilled artisans] of the scope of the invention." Id. at *5.

*Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015); *Exxon Research & Engineering Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir.2001). "[P]roof of indefiniteness must meet 'an exacting standard.' Thus, '[a]n accused infringer must . . . demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art.' 'By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity . . . and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.'" *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1366 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1541 (2012) "Whether a claim is invalid for indefiniteness requires a determination whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed.Cir.1993); *see also Mycogen Plant Science, Inc. v. Monsanto Co.*, 61 F. Supp. 2d 199, 255 (D. Del. 1999). "[I]f the claims, read in light of the specification, reasonably apprise those skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more." *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.,* 7 F.3d 1571, 1579-80 (Fed. Cir. 1993) (*citing Shatterproof Glass Corp. v. Libbey-Owens Ford, Co.*, 758 F.2d 613, 624, (Fed. Cir. 1985), *cert. dismissed*, 474 U.S. 976 (1985) (*quoting Georgia-Pacific Corp. v. United States Plywood Corp.,* 258 F.2d 124, 136 (2d Cir. 1958), cert. denied, 358 U.S. 884 (1958)). As the Federal Circuit has held, the fact that "some claim language may not be precise ... does not automatically render a claim invalid. When a word of degree is used the district court must

36

Exhibit 4

determine whether the patent's specification provides some standard for measuring that degree."

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984).

V.   **Other Affirmative Defenses**

    A.   **Issues of Law**

        Whether HyperBranch can prove that as a matter of equity, Plaintiffs should be estopped from asserting infringement of any one or more of the asserted claims because Plaintiffs gave an affirmative grant of consent to make, use and sell the accused products to HyperBranch.

    B.   **Legal Authority**

        1.   **Equitable Estoppel Through Implied License**

Equitable estoppel requires the alleged infringer to prove by a preponderance of the evidence that (1) the patent owner, through misleading conduct, led the alleged infringer to reasonably infer that the patent owner did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on this conduct; and (3) due to the reliance, the alleged infringer will be materially prejudiced if the patent owner is allowed to proceed on its claim. *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F. 3d 770, 776 (Fed. Cir. 1995); *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041, (Fed. Cir. 1992).  Proof of reliance on this conduct is "essential" to equitable estoppel. *Id.*  In order to show reliance, the accused infringer must have had a relationship or communication with the plaintiff which lulls the accused infringer into a sense of security in going ahead with [its investments]." *Id.*; *see also Aukerman*, 960 F.2d at 1042-43.  The accused infringer must show that its actions were based solely on its reliance on the patentee's conduct and not on its own business judgement (such as its own belief that the accused products do not infringe or that the claims are invalid), even if that business judgement is later bound to be wrong. *Id.*, at 776-77*; Meyers v. Asics Corp*, 974 F.2d 1304, 1309 (Fed.Cir.1992), *overruled on other grounds by Aukerman*, 960 F.2d at 1038-39; *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294-95 (Fed.Cir. 1992).

Exhibit 4

VI.  **Damages**

  A.  **Issue of Law**

   Plaintiffs' damages for HyperBranch's direct infringement including the dollar amount that will compensate Plaintiffs for infringement of one or more of the asserted claims.

   Plaintiffs' damages for HyperBranch's indirect infringement, including the dollar amount that will compensate Plaintiffs for the infringement of one or more of the asserted claims.

   The damages period for HyperBranch's direct infringement.

   The damages period for HyperBranch's indirect infringement.

   Whether Plaintiffs are entitled to pre-suit damages pursuant to 35 U.S.C. § 287

   Whether Plaintiffs are entitled to an accounting of damages for postverdict infringement and, if so, the dollar amount of such accounting

   Whether Plaintiffs are entitled to an award of prejudgment and postjudgment interest and the dollar amount of such award.

   Whether Plaintiffs are entitled to a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and whether Plaintiffs are entitled to an award of attorneys' fees.

   Whether Plaintiffs are entitled to costs and, if so, the dollar amount of such costs.

  B.  **Legal Authority**

   35 U.S.C. § 284 states that on a finding of infringement a patentee shall be awarded:

   damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

35 U.S.C. § 284. This provision has been interpreted to mean that the holder of an infringed patent should be placed in the same financial position it would have been in had its patent not been infringed. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (the statutory measure of "damages" is "the difference between [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).   If

Exhibit 4

infringement is found, the patent holder is entitled to receive as damages the value of the asset

that was taken. *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1446-47 (Fed. Cir. 1990)

(indicating that the measure of damages in a patent case is the value of "that which the defendant

has appropriated"). *See also*, *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641,

648 (1915); *Faulkner v. Gibbs*, 199 F.2d 635, 638 (9th Cir. 1952). "[T]he amount of a prevailing

party's damages is a finding of fact on which the plaintiff bears the burden of proof by a

preponderance of the evidence." *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926

F.2d 1161, 1164 (Fed. Cir. 1991).

### 1.   Reasonable Royalty

"The statute is unequivocal that the district court must award damages in an amount no

less than a reasonable royalty." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d at 1381-82 (Fed.

Cir. 2003); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327

(Fed. Cir. 1987). The reasonable royalty may be based on the "supposed result of hypothetical

negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc.*

*v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit

has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon

the fifteen factors set forth in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.

Supp. 1116, 1120 (S.D.N.Y.1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*,

CIV.A. 03-241 JJF, 2004 WL 2213562 (D. Del. Sept. 28, 2004). "[I]n conducting the

hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the

infringement began." *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D.

Del. 1994). "[T]he patentee ... must in every case give evidence tending to separate or apportion

the defendants profits and the patentee's damages between the patented features and the

unpatented features . . . or show that the entire market value of the whole machine, as a

39

Exhibit 4

marketable article, is properly and legally attributable to the patented feature." *Uniloc USA, Inc.*

*v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Apportionment may be achieved in

any number of legally-acceptable ways:

> Logically, an economist could do this in various ways—by careful selection of the
> royalty base to reflect the value added by the patented feature, where that
> differentiation is possible; by adjustment of the royalty rate so as to discount the
> value of the product's non-patented features; or by a combination thereof. The
> essential requirement is that the ultimate reasonable royalty award must be based
> on the incremental value that the patented invention adds to the end product.

*Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1226- 27 (Fed. Cir. 2014).  If the evidence

at trial falls short of supporting a party's specific royalty estimate, "the fact finder is still required

to determine what royalty is supported by the record." *Apple Inc. v. Motorola, Inc.*, 757 F.3d

1286, 1327-28 (Fed. Cir. 2014).

> [T]he factual determination of a reasonable royalty, however, need not be
> supported, and indeed, frequently is not supported by the specific figures
> advanced by either party.... [T]he district court may reject the extreme figures
> proffered by the litigants as incredible and substitute an intermediate figure as a
> matter of its judgment from all of the evidence.

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167–68 (Fed.Cir.1991).


## 2.   Lost Profits (including price erosion)

The *Panduit* test establishes the traditional framework for analyzing lost profits:

> To obtain as damages the profits on sales he would have made absent the
> infringement, i. e., the sales made by the infringer, a patent owner must prove: (1)
> demand for the patented product, (2) absence of acceptable noninfringing
> substitutes, (3) his manufacturing and marketing capability to exploit the demand,
> and (4) the amount of the profit he would have made.

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).  "A

showing under Panduit permits a court to reasonably infer that the lost profits claimed were in

fact caused by the infringing sales, thus establishing a patentee's prima facie case with respect to

'but for' causation." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citations

**Exhibit 4**

omitted). "A patentee need not negate every possibility that the purchaser might not have purchased a product other than its own, absent the infringement." Id. "The patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement. *Id.*; *see also King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995). In circumstances where "the patent owner and the infringer were the only suppliers" in the relevant market "causation may be inferred." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983). Once the patentee establishes this reasonable inference, for example under the Panduit and/or Lam tests, "it has sustained the burden of proving entitlement to lost profits due to the infringing sales." *Rite-Hite*, 56 F.3d at1545. "The burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales." *Id.*  A lost profits analysis is necessarily a "but-for" inquiry that requires a reconstruction of the market as it would have developed, taking into account (where relevant) any alternative actions the infringer may have undertaken had it not infringed. *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341 (Fed. Cir. 1999).  The claimant must prove what would have happened in a but-for infringement world, not what theoretically could have happened (i.e., show that "but for" the infringement it would have made additional sales). *BIC Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993).  "[T]he first Panduit factor simply asks whether demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'" *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009), *citing Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995)).  However, the first Panduit factor does not require that the demand for the patented product is attributable to the patented technology.  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017).

41

Exhibit 4

Regarding the second Panduit factor, "[t]o be deemed acceptable, the alleged acceptable noninfringing substitute must not have a disparately higher price than or possess characteristics significantly different from the patented product." *Apple Inc. v. Samsung Electronics Co.*, 786 F.3d 983, 1004 (Fed. Cir. 2015) (citations omitted); *see also TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986). "[T]he mere existence of a competing device does not necessarily make the device an acceptable substitute . . . a product on the market which lacks the advantages of the patented product can hardly be termed an acceptable substitute." *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 (Fed. Cir. 1996) (*quoting Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360 (Fed. Cir. 1991)).  When there are multiple competitors in a market, a patentee is entitled to lost profits based on the infringing sales apportioned according to its "share of the market." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F. 2d 1573, 1578-80 (Fed. Cir. 1989).  The courts found that a lost profits analysis should allocate the allegedly infringing sales among the potential alternative suppliers – applying lost profits based on lost units damages to those sales that are shown to have been lost by the patent holder and reasonable royalty damages to the remaining sales. *State Industries, Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989), cert. denied, 493 U.S. 1022 (1990); See *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898 (Fed. Cir. 1986).

To recover lost profits on a theory of price erosion, a patentee must show that "but for" infringement, it would have sold its product at a higher price. The patentee must also "present evidence of the (presumably reduced) amount of product the patentee would have sold at the higher price." Moreover, "the patentee's price erosion theory must account for the nature, or definition, of the market, similarities between any benchmark market and the market in which price erosion is alleged, and the effect of the hypothetically increased price on the likely number

42

Exhibit 4

of sales at that price in the market." *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed.

Cir. 2003) (internal citations omitted). *See also generally SynQor, Inc. v. Artesyn Techs., Inc.*,

709 F.3d 1365 (Fed. Cir. 2013).  While the Federal Circuit requires "credible economic analysis"

or "sound economic proof" to prove price erosion damages, it does not require a mathematical

calculation of a product's price elasticity of demand, which is defined as the percentage change

in quantity demanded associated with a given percentage change in price. *Crystal Semiconductor*

*Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001); *Ericsson,*

*Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed. Cir. 2003).  Rather, the claimant can satisfy its

burden by showing that, but for the infringement, it would have sold its product at a higher price

by offering other credible evidence, including evidence that the claimant had a history of

charging and customers accepting its higher price when not competing against the infringer, the

infringer was unable to offer an acceptable substitute that does not infringe the patent-in-suit,

there were no other acceptable, non-infringing alternatives in the marketplace besides the

infringer and the claimant, and / or there are barriers to entry in the relevant marketplace.

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1359 (Fed.

Cir. 2001) ("Economists can define hypothetical markets, derive a demand curve, and make price

erosion approximations without relying on inapposite benchmarks.") *See, e.g., Brooktree*, 977

F.2d at 1579-80 (price erosion calculated based on the selling price of the same product before

the infringer entered the market); *Minnesota Mining & Mfg. Co., v. Johnson & Johnson*

*Orthopaedics*, 976 F.2d 1559, 1579 (Fed. Cir. 1992) (price erosion was calculated based on pre-

infringement prices because the patentee and infringer occupied almost the entire market);

*Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed. Cir. 2003)

    **3.  Pre-suit Damages**

Exhibit 4

Under 35 U.S.C. § 287, "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented" through a variety of methods, stating:

> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287. This Court has held that the initial burden falls on the "alleged infringer (seeking to limit damages) to come forward with particular unmarked products allegedly triggering § 287. Without such a threshold showing, the universe of products for which [Plaintiffs] would have to establish compliance with, or inapplicability of, the marking statute would be unbounded." *MobileMedia Ideas, LLC v. Apple Inc.*, No. CV 10-258-SLR, 2016 WL 3958723, at *5 (D. Del. July 21, 2016); see also *Unova Inc. v. Hewlett-Packard*, 2006 WL 5434534, at *1 (C.D. Cal. Feb. 16, 2006) ("The party claiming failure to mark, however, must show that the allegedly nonmarked articles were, in fact, patented articles.").  In conducting this analysis, "first, the scope of the claims must be ascertained and then the trier must decide whether the claims cover the accused device." *ADC Telecommc'ns, Inc. v. Siecor Corp.*, 954 F. Supp. 820, 832 (D. Del. 1997).

### 4. Post-Trial Accounting

A patentee should also be entitled to an accounting of damages for post-verdict sales of products found to infringe the patents-in-suit. In patent cases, post-verdict accounting is standard practice. *Edwards Lifesciences AG v. CoreValve, Inc.*, No. 08–91–GMS, 2011 WL 446203, at *16 (D. Del. Feb. 7, 2011), *aff'd in part, remanded in part*, 699 F.3d 1305 (Fed. Cir. 2012) ("The court will grant . . . an accounting of the number of [infringing] devices made, used, sold ... through the date of the order accompanying this memorandum."); *see also Mikohn Gaming*

Exhibit 4

*Corp. v. Acres Gaming, Inc.*, 2001 U.S. Dist. LEXIS 23416, *52- 65 (D. Nev. Aug. 1, 2001).

Courts in this District have permitted additional discovery to properly complete a post-trial

accounting of damages. *TruePosition Inc. v. Andrew Corp.*, No. Civ. 05–747–SLR, 2009 WL

1651042, at *1 n. 2 (D. Del. June 10, 2009), *aff'd*, 389 Fed. Appx. 1000 (Fed. Cir. 2010).

### 5.  Costs, Prejudgment, and Post Trial Interest

35 U.S.C. § 287.  Pursuant to Federal Rule of Civil Procedure 54(d), costs should be allowed to

the prevailing party. Under 28 U.S.C. § 1920, the prevailing party may recover the following

costs:

> (1) fees of the clerk and marshal;
>
> (2) fees for printed or electronically recorded transcripts necessarily obtained for
>
> use in this case;
>
> (3) fees and disbursements for printing and witnesses;
>
> (4) fees for exemplification and the costs of making copies of any materials where
>
> the copies are necessarily obtained for use in the case;
>
> (5) docket fees under 28 U.S.C. § 1923; and
>
> (6) compensation of court appointed experts, compensation of interpreters, and
>
> salaries, fees, expenses, and costs of special interpretation services under 28
>
> U.S.C. § 1828.

28 U.S.C. §1920; *See also* D. Del. LR 54.1.

Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed

on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961.  The

Supreme Court has explained that "prejudgment interest should ordinarily be awarded where

necessary to afford the plaintiff full compensation for the infringement." *Gen. Motors Corp. v.*

*Devex Corp.*, 461 U.S. 648, 654 (1983). Prejudgment interest is not a penalty but "serves to

Exhibit 4

make the patent owner whole, for damages properly include the foregone use of money of which

the patentee was wrongly deprived." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574

(Fed. Cir. 1996). Accordingly, awarding "prejudgment interest is the rule, not the exception." *Id.*

"[P]rejudgment interest should be awarded from the date of infringement to the date of

judgment." *Nickson Indus., Inc. v. ROL Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (*citing*

*Gen. Motors*, 461 U.S. at 656).

Section 1961(a) of Title 28 of the United States Code states that "[i]nterest shall be

allowed on any money judgment in a civil case recovered in a district court." "Post-judgment

interest is awarded on monetary judgments recovered in all civil cases," including ones for patent

infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).

Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue

on the date of the entry of judgment. *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97

(3d Cir. 1993). Courts in this district routinely award post-judgment interest in patent

infringement cases. *See nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D.

Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006); *TruePosition Inc. v. Andrew Corp.*, 611 F.

Supp. 2d 400, 414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010).

### 6.  Enhanced Damages and Attorneys' Fees

Section 284 also provides for enhanced "damages up to three times the amount found or

assessed." 35 U.S.C. § 284. In determining whether to award enhanced damages, a Court should

consider "egregiousness of the defendant's conduct based on all the facts and circumstances."

*Read Corporation v. Portec Inc.*, 970 F.2d 816, 826–27 (Fed.Cir.1992), abrogated in part on

other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995).

Despite that there is no "rigid formula for awarding enhanced damages under § 284," Plaintiffs

must prove enhanced damages by a "preponderance of the evidence." *Halo*, 136 S.Ct. at 1932-

Exhibit 4

34.   The factors Courts consider when determining whether an infringer's behavior was

egregious include:

> (1) whether the infringer deliberately copied the invention; (2) whether the
> infringer, when aware of the patent, investigated and formed a good faith belief of
> invalidity or noninfringement; (3) the infringer's behavior as a party to litigation;
> (4) defendant's size and financial condition; (5) closeness of the case; (6) duration
> of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's
> motivation for harm; and (9) whether defendant attempted to conceal its
> misconduct.

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (citing *Read*

*Corp. v. Portec. Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992), *superseded on other grounds* as

recognized in *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996));

*see also Apple Inc. v. Samsung Electronics Co., Ltd.*, Case No. 12-CV-00630-LHK, 2017 WL

2720220, at *14 (2017).  A patentee may obtain enhanced damages under 35 U.S.C. § 284 where

it establishes that the defendant's infringement was "willful." *Halo*, 136 S. Ct. at 1931; *In re*

*Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). However, willfulness is not required

for enhanced damages. *Halo*, 136 S. Ct. at 1931-33; *Finjan, Inc. v. Blue Coat Systems, Inc.*, 2016

WL 3880774, *16 (N.D. Cal. 2016). "The subjective willfulness of a patent infringer, intentional

or knowing, may warrant enhanced damages, without regard to whether his infringement was

objectively reckless." *Halo*, 136 S. Ct. at 1933.

Section 285 of Title 35 of the United States Code provides for the awarding of

"reasonable attorney fees to the prevailing party" when the case is determined to be exceptional.

To be a "prevailing party," a party "must win a dispute within the case in favor of it that

materially alters the legal relationship between the parties at the time of the judgment." *Parallel*

*Iron LLC v. NetApp Inc.*, 2014 WL 4540209, at *3 (D. Del. Sept. 12, 2014). In *Octane Fitness,*

*LLC v. ICON Health & Fitness, Inc.*, the Supreme Court held that "an 'exceptional' case is

Exhibit 4

simply one that stands out from others with respect to the substance strength of a party's

litigating position (considering both the governing law and the facts of the case or the

unreasonable manner in which the case was litigated.)" *Octane Fitness, LLC v. ICON Health &*

*Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  The Supreme Court added: "District courts may

determine whether a case is exceptional in the case-by-case exercise of their discretion." *Id*.

Further, the prevailing party must prove entitlement to attorney fees under § 285 by a

preponderance of the evidence. *Id.* at 1758; *see also Chalumeau Power Systems LLC v. Alcatel-*

*Lucent*, 2014 WL 4675002, at *2 (D. Del. Sept. 12, 2014).

## VII.   Injunctive Relief

### A.  Issue of Law

Whether Plaintiffs' are entitled to injunctive relief for HyperBranch's infringement of
one or more of the asserted claims.

### B.  Legal Authority

35 U.S.C. § 283 states:

The several courts having jurisdiction of cases under this title may grant
injunctions in accordance with the principles of equity to prevent the violation of
any right secured by patent, on such terms as the court deems reasonable.

35 U.S.C. 283.  "[T]he decision whether to grant or deny injunctive relief rests within the

equitable discretion of the district courts, and that such discretion must be exercised consistent

with traditional principles of equity. . . ." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394

(2006). According to well-established principles of equity, a plaintiff seeking a permanent

injunction must satisfy a four-factor test before a court may grant such relief. "[A] plaintiff must

demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such

as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391.

**Exhibit 4**

"Where two companies are in competition against one another, the patentee suffers the harm - often irreparable - of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "The patentee's unwillingness to license the patented technology also weighs in favor of a finding of irreparable harm." *Evonik Degussa GmbH v. Materia, Inc.*, Civ. No. 09-636 (NLH/JS), 2017 WL 3434156, at *1 (D. Del. Aug. 9, 2017) (citing Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 702 F.3d 1351, 1363-64 (Fed. Cir. 2012)); See also *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-28 (Fed. Cir. 2008); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012) S*anofi-Aventis Deutschland Gmbh v. Glenmark Pharms. Inc.*, USA, 821 F. Supp. 2d 681, 694 (D.N.J. 2011).

Balancing the hardships between the parties "assesses the relative effect of granting or denying an injunction on the parties." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015). Factors that may be considered "include[ ] the parties' sizes, products, and revenue sources." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010). However, "[a] party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011); *Evonik*, 2017 WL 3434156 at *3. Furthermore, the balance of the hardships does not favor the defendant when "[a]ny harms Defendants may suffer as a result of an injunction 'were almost entirely preventable and were the result of its own calculated risk.'" *Sanofi-Aventis Deutschland GmbH*, 821 F. Supp. 2d at 695 (*quoting Sanofi-Synthelabo v. Apotex*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)); see also *Apple*, 809 F.3d at 647 (*quoting Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)); *Sanofi-Aventis Deutschland GmbH*, 821 F. Supp. 2d at 696.

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>        Defendant. | C.A. No.  15-819-LPS-CJB |

## DEFENDANT'S STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED

# TABLE OF CONTENTS

**Pg.**

I.  Claim Construction ........................................................................................................ 1

    A.  Issues ............................................................................................................... 1

    B.  Legal Authority ............................................................................................... 1

II. Infringement ................................................................................................................... 3

    A.  Issues ............................................................................................................... 3

    B.  Legal Authority ............................................................................................... 4

        1.  Direct Infringement .............................................................................. 4

        2.  Literal Infringement ............................................................................. 5

        3.  Infringement Under the Doctrine of Equivalents ................................ 6

        4.  Indirect Infringement - Induced Infringement ..................................... 8

        5.  Indirect Infringement - Contributory Infringement ............................ 9

        6.  Indirect Infringement – Outside the U.S. Pursuant to 35 U.S.C. § 271(f)(1) ....................................................................................... 10

        7.  Indirect Infringement – Outside the U.S. Pursuant to 35 U.S.C. § 271(f)(2) ....................................................................................... 11

        8.  Willful Infringement .......................................................................... 11

III. Priority Date, Conception, Reduction to Practice, and Diligence ................................ 13

    A.  Issues ............................................................................................................. 13

    B.  Legal Authority ............................................................................................. 13

        1.  Determining the Priority Date for a Continuation-in-Part Application .............. 13

        2.  Conception .......................................................................................... 14

        3.  Reduction to Practice ......................................................................... 16

        4.  Diligence Between Conception and Reduction to Practice ................ 17

IV. Invalidity ...................................................................................................................... 18

    A.  Issues ............................................................................................................. 18

    B.  Legal Authority ............................................................................................. 19

        1.  Presumption of Validity ..................................................................... 19

        2.  What Constitutes Prior Art ................................................................. 20

        3.  Anticipation ........................................................................................ 23

        4.  Obviousness ........................................................................................ 24

        5.  Written Description ............................................................................. 27

        6.  Enablement ......................................................................................... 29

        7.  Indefiniteness ..................................................................................... 30

# TABLE OF CONTENTS

**Pg.**

V.    Equitable Estoppel ............................................................................................... 31

A.    Issues of Law .................................................................................................... 31

B.    Legal Authority ................................................................................................ 31

VI.   Damages ................................................................................................................ 32

A.    Issues of Law .................................................................................................... 32

B.    Legal Authority ................................................................................................ 33

1.    Damages Generally .............................................................................. 33

2.    Lost Profits ........................................................................................... 33

3.    Reasonable Royalty Damages .............................................................. 36

4.    Apportionment ..................................................................................... 37

5.    Pre-Suit Damages ................................................................................ 39

6.    Post-Trial Accounting .......................................................................... 39

7.    Prejudgment Interest, Postjudgment Interest, and Costs ..................... 40

8.    Attorneys' Fees .................................................................................... 41

9.    Enhancement Under 35 U.S.C. § 284 .................................................. 42

10.   Attorneys' Fees Under 35 U.S.C. § 285 .............................................. 46

VII.  Injunctive Relief .................................................................................................. 47

A.    Issues of Law .................................................................................................... 47

B.    Legal Authority ................................................................................................ 47

# TABLE OF AUTHORITIES

**Pg.**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ............................................................................ 31

*ABT Sys., LLC v. Emerson Elec. Co.*,
  797 F.3d 1350 (Fed. Cir. 2015) .............................................................. 25, 26, 27

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*,
  346 F.3d 1075 (Fed. Cir. 2003) .............................................................................. 3

*Adenta GmbH v. OrthoArm, Inc.*,
  501 F.3d 1364 (Fed. Cir. 2007) ............................................................................ 22

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
  228 F.3d 1338 (Fed. Cir. 2000) ............................................................................ 13

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) .............................................................................. 5

*Allergan, Inc. v. Apotex Inc.*,
  754 F.3d 952 (Fed. Cir. 2014) ....................................................................... 15, 16

*Alloc, Inc. v. Int'l Trade Comm'n*,
  342 F.3d 1361 (Fed. Cir. 2003) ............................................................................ 10

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
  651 F.3d 1318 (Fed. Cir. 2011) .............................................................................. 6

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
  725 F.2d 1350 (Fed. Cir. 1984) ............................................................................ 20

*Amgen, Inc. v. Chugai Pharmaceutical Co.*, Ltd.,
  927 F.2d 1200 (Fed. Cir. 1991) ............................................................................ 30

*Andreaggi v. Relis*,
  408 A.2d 455 (N.J. Super. Ct. Ch. Div. 1979) ..................................................... 15

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ............................................................................ 38

*Apple, Inc. v. Samsung Elecs. Co.*,
  678 F.3d 1314 (Fed. Cir. 2012) ............................................................................ 48

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ..................................................................... 28, 29

## TABLE OF AUTHORITIES

**Pg.**

*Aro Mfg. Co. v. Covertible Top Replacement Co.*,
377 U.S. 476 (1964) ........................................................................ 10

*Atlantic Res. Mktg. Sys., Inc. v. Troy*,
659 F.3d 1345 (Fed. Cir. 2011) ...................................................... 28

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
181 F.3d 1291 (Fed.Cir.1999) ........................................................ 14

*Baxter Int'l, Inc. v. COBE Labs., Inc.*,
88 F.3d 1054 (Fed. Cir. 1996) ........................................................ 22

*Beachcombers v. WildeWood Creative Prods., Inc.*,
31 F.3d 1154 (Fed. Cir. 1994) ........................................................ 22

*Beckman Instruments, Inc. v. LKB Produkter AB*,
892 F.2d 1547 (Fed. Cir. 1989) ...................................................... 27

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986) ........................................................ 41

*Boston Scientific Corp. v. Johnson & Johnson*,
647 F.3d 1353 (Fed. Cir. 2011) ...................................................... 28

*Bradford Co. v. Conteyor N. Am., Inc.*,
603 F.3d 1262 (Fed. Cir. 2010) ...................................................... 14

*Brown v. Barbacid*,
436 F.3d 1376 (Fed. Cir. 2006) ...................................................... 18

*Burroughs Wellcome Co. v. Barr Labs.*, Inc.,
40 F. 3d 1223 (Fed. Cir. 1994) ................................................. 15, 16

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
911 F.2d 670 (Fed. Cir. 1990) .......................................................... 9

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998) ...................................................... 23

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
2002 WL 1801525 (S.D. Ind. July 5, 2002) ................................... 36

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
576 F.3d 1348 (Fed. Cir. 2009) ...................................................... 11

*Cedarapids, Inc. v. CMI Corp.*,
No. C98-0110 MJM, 1999 WL 33656876 (N.D. Iowa Oct. 26, 1999) .................................... 32

# TABLE OF AUTHORITIES

**Pg.**

*Centricut, LLC v. Esab Group, Inc.*,
  390 F.3d 1361 (Fed. Cir. 2004) ..................................................... 4

*Chiron Corp. v. Genetech, Inc.*,
  363 F.3d 1247 (Fed. Cir. 2004) .................................................. 20

*Clock Spring, L.P. v. Wrapmaster, Inc.*,
  560 F.3d 1317 (Fed. Cir. 2009) .................................................. 22

*Coleman v. Dines*,
  754 F.2d 353 (Fed. Cir. 1985) .................................................... 16

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015) ............................................................... 9

*Concrete Appliances Co. v. Gomery*,
  269 U.S. 177 (1925) .................................................................. 26

*Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*,
  291 F.3d 1317 (Fed. Cir. 2002) .................................................. 28

*Cooper v. Goldfarb*,
  154 F.3d 1321 (Fed. Cir. 1998) .................................................. 17

*Cordance Corp. v. Amazon.com, Inc.*,
  658 F.3d 1330 (Fed. Cir. 2011) .................................................. 15

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ............................................ 36, 40

*Cubist Pharms., Inc. v. Hospira, Inc.*,
  75 F. Supp. 3d 641 (D. Del. 2014) ............................................. 24

*DeMarini Sports, Inc. v. Worth, Inc.*,
  239 F.3d 1314 (Fed. Cir. 2001) ................................................... 5

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009) ................................................... 8

*Dominion Res. Inc. v. Alstom Grid, Inc.*,
  2016 WL 5674713 (E.D. Pa. Oct. 3, 2016) ................................. 44

*Dow Chemical Co. v. Nova Chemicals Corp. (Canada)*,
  803 F.3d 620 (Fed. Cir. 2015) .................................................... 31

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ................................................... 9

## TABLE OF AUTHORITIES

**Pg.**

*Eaton v. Evans*,
204 F.3d 1094 (Fed. Cir. 2000) ................................................................. 17

*eBay, Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......................................................................... 47, 48

*Elan Pharm., Inc. v. Mayo Found. for Med. Educ. & Research*,
346 F.3d 1051 (Fed. Cir. 2003) ................................................................. 24

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
323 F.3d 956 (Fed. Cir. 2002) .................................................................. 29

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) .................................................................. 30

*Ericsson, Inc. v. D–Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ......................................................... 37, 38, 39

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
149 F.3d 1309 (Fed. Cir. 1998) .................................................................. 4

*Fenner Invs. Ltd. v. Cellco P'ship*,
778 F.3d 1320 (Fed. Cir. 2015) .................................................................. 3

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
344 F.3d 1359 (Fed. Cir. 2003) .................................................................. 7

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
2016 WL 3880774 (N.D. Cal. July 18, 2016) .................................................. 44

*Fitzgerald v. Arbib*,
268 F.2d 763 (C.C.P.A. 1959) ................................................................... 18

*Fox Grp., Inc. v. Cree, Inc.*,
700 F.3d 1300 (Fed. Cir. 2012) ................................................................. 17

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) ................................................................. 40

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ................................................................. 10

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010) ................................................................. 43

*Gen. Elec. Co. v. Wabash Appliance Corp.*,
304 U.S. 364 (1938) ............................................................................ 30

**TABLE OF AUTHORITIES**

**Pg.**

*Gen. Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) .................................................................................. 40, 41

*Genentech, Inc. v. Novo Nordisk A/S*,
108 F.3d 1361 (Fed. Cir. 1997) ............................................................... 29

*Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l*,
618 F.3d 1294 (Fed. Cir. 2010) ............................................................... 26

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................................ 37

*Gillespie v. Dywidag Sys. Int'l, USA*,
501 F.3d 1285 (Fed. Cir. 2007) ................................................................. 3

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ................................................................................ 9, 10

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966) ................................................................................... 25, 26

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ......................................................... 34, 35, 36

*Greatbatch Ltd. v. AVX Corp.*,
2016 WL 7217625 (D. Del. Dec. 13, 2016) ......................................... 12, 43, 45

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
897 F.2d 508 (Fed. Cir. 1990) ................................................................. 46

*Hahn v. Wong*,
892 F.2d 1028 (Fed. Cir. 1989) ............................................................... 16

*Halo Electronics., Inc. v. Pulse Electronics., Inc.*,
136 S. Ct. 1923 (2016) ......................................................................... passim

*Henkel Corp v. Procter & Gamble Co.*,
560 F.3d 1286 (Fed. Cir. 2009) ............................................................... 17

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
134 S. Ct. 1744 (2014) ............................................................................. 46

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
78 F.3d 1575 (Fed. Cir. 1996) ................................................................. 43

*Hoganas AB v. Dresser Indus., Inc.*,
9 F.3d 948 (Fed. Cir. 1993) ....................................................................... 7

## TABLE OF AUTHORITIES

**Pg.**

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
  523 F.3d 1304 (Fed. Cir. 2008) ........................................................................ 6

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009) ...................................................................... 28

*Impulse Tech. Ltd. v. Microsoft Corp.*,
  C.A. No. 11-586-RGA, 2015 WL 5568616 (D. Del. Sept. 22, 2015) ................................... 8

*In re Antor Media Corp.*,
  689 F.3d 1282 (Fed. Cir. 2012) ................................................................. 24, 27

*In re Bayer*,
  568 F.2d 1357 (CCPA 1978) ........................................................................ 23

*In re Garner*,
  508 F.3d 1376 (Fed. Cir. 2007) ...................................................................... 17

*In re Glass*,
  492 F.2d 1228 (C.C.P.A. 1974) ....................................................................... 30

*In re Gosteli*,
  872 F.2d 1008 (Fed. Cir. 1989) ...................................................................... 28

*In re GPAC Inc.*,
  57 F.3d 1573 (Fed. Cir. 1995) ....................................................................... 27

*In re Jolley*,
  308 F.3d 1317 (Fed.Cir.2002) ................................................................. 15, 18

*In re Morsa*,
  803 F.3d 1374 (Fed. Cir. 2015) ...................................................................... 24

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ................................................................. 40, 43

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988) ....................................................................... 30

*In re Wright*,
  999 F.2d 1557 (Fed. Cir. 1993) ...................................................................... 29

*Integrated Tech. Corp. v. Rudolph Techs., Inc.*,
  734 F.3d 1352 (Fed. Cir. 2013) ....................................................................... 7

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
  274 F.3d 1371 (Fed. Cir. 2001) ....................................................................... 8

## TABLE OF AUTHORITIES

**Pg.**

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) ................................................................ 16

*Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*,
    586 F.3d 1376 (Fed. Cir. 2009) ................................................................ 24

*Kaufman Co. v. Lantech, Inc.*,
    926 F.2d 1136 (Fed. Cir. 1991) ................................................................ 34

*Kendall v. Searles*,
    173 F.2d 986 (C.C.PA. 1949) .................................................................... 18

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
    780 F.3d 1376 (Fed. Cir. 2015) ................................................................ 24

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016) .............................................................................. 44

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 298 (2007) ............................................................................ 25, 26

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983) ................................................................ 40

*LaserDynamics, Inc. v.  Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ........................................................ 37, 38, 39

*Leapfrog Enterprises, Inc. v. Fischer-Price, Inc.*,
    485 F.3d 1157 (Fed. Cir. 2007) ................................................................ 25

*Leggett & Platt, Inc. v. VUTEK, Inc.*,
    537 F.3d 1349 (Fed. Cir. 2008) ................................................................ 24

*Life Techs. Corp. v. Promega Corp.*,
    137 S. Ct. 734 (2017) ................................................................................ 11

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    134 S. Ct. 2111 (2014) ................................................................................ 5

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) ................................................................ 18

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006) ................................................................ 43

*Litchfield v. Eigen*,
    535 F.2d 72 (C.C.P.A. 1976) .................................................................... 18

## TABLE OF AUTHORITIES

Pg.

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
424 F.3d 1336 (Fed. Cir. 2005) ................................................................ 28

*MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*,
687 F.3d 1377, 103 U.S.P.Q. 2d 1769 (Fed. Cir. 2012) ........................... 29

*Markman v. Westview Instrs., Inc.*,
517 U.S. 370 (1996) .................................................................................... 2

*Mas-Hamilton Grp v. LaGard, Inc.*,
156 F.3d 1206 (Fed. Cir. 1998) .................................................................. 6

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
2016 WL 6542726 (D. Del. Oct. 31, 2016) ............................................... 12

*Maxwell v. J. Baker, Inc.*,
86 F.3d 1098 (Fed. Cir. 1996) ................................................................... 39

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) .................................................................. 3

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) ................................................................ 16

*Medrad, Inc. v. MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005) .................................................................. 2

*Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*,
136 S. Ct. 893 (2016) ............................................................................... 34

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
125 S. Ct. 2764 (2005) ............................................................................... 9

*Micro Chemical, Inc. v. Lextron, Inc.*,
318 F.3d 1119, 65 U.S.P.Q. 2d 1695 (Fed. Cir. 2003) ............................. 35

*Microsoft Corp. v. i4i Ltd. P'Ship*,
131 S. Ct. 2238 (2011) ............................................................................. 20

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011) ................................................................................... 20

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
357 F.3d 1340 (Fed. Cir. 2004) .................................................................. 2

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002) .................................................................. 9

## TABLE OF AUTHORITIES

**Pg.**

*Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
976 F.2d 1559 (Fed. Cir. 1992) ........................................................... 23

*Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*,
336 F.3d 1373 (Fed. Cir. 2003) ........................................................... 21

*Monsanto Co. v. Mycogen Plant Sci., Inc.*,
261 F.3d 1356 (Fed. Cir. 2001) ........................................................... 18

*Moore U.S.A., Inc. v. Standard Register Co.*,
229 F.3d 1091 (Fed. Cir. 2000) ........................................................... 8

*Mosel Vitelic Corp. v. Micron Tech., Inc.*,
No. 98-449-GMS, 2000 WL 1728346 (D. Del. Mar. 14, 2000) ................. 5

*Nat'l Research Dev. Corp. v. Varian Assocs., Inc.*,
822 F. Supp. 1121 (D.N.J. 1993) ........................................................ 22

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) ..................................................................... 31

*Norian Corp. v. Stryker Corp.*,
363 F.3d 1321 (Fed. Cir. 2004) ..................................................... 12, 45

*Novo Nordisk Pharms., Inc. v. Bio-Tech. Gen. Corp.*,
424 F.3d 1347 (Fed. Cir. 2005) ........................................................... 24

*Novozymes A/S v. Genencor Int'l, Inc.*,
474 F. Supp. 2d 592 (D. Del. 2007) .................................................... 34

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ........................................................... 41, 42, 47

*Odetics, Inc. v. Storage Tech. Corp.*,
185 F.3d 1259 (Fed. Cir. 1999) ........................................................... 43

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006) ....................................................... 5, 22

*Panduit Corp. v. Stahlin Bros. Fibre Works*,
575 F.2d 1152 (6th Cir. 1978) ........................................................... 34

*Pfaff v. Wells Elecs., Inc.*,
525 U.S. 55 (1998) ........................................................................... 22

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........................................................... 2

# TABLE OF AUTHORITIES

**Pg.**

*Poly-Am., L.P. v. GSE Lining Tech., Inc.*,
383 F.3d 1303 (Fed. Cir. 2004) ................................................................. 33, 34

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) ...................................................................... 40

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008) ...................................................................... 14

*Price v. Symsek*,
988 F.2d 1187 (Fed.Cir.1993) .................................................................. 17, 18

*Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*,
566 F.3d 989 (Fed. Cir. 2009) ........................................................................ 16

*Quaker City Gear Works, Inc. v. Skil Corp.*,
747 F.2d 1446 (Fed. Cir. 1984) ...................................................................... 32

*Radio Sys. Corp. v. Lalor*,
709 F.3d 1124 (Fed. Cir. 2013) ...................................................................... 31

*Read Corp. v. Portec. Inc.*,
970 F.2d 816 (Fed. Cir. 1992) ........................................................................ 43

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ........................................................................ 37

*Rheox, Inc. v. Entact, Inc.*,
276 F.3d 1319 (Fed. Cir. 2002) ........................................................................ 3

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) ........................................................................ 34

*Robocast, Inc. v. Apple Inc.*,
39 F. Supp. 3d 552 (D. Del. 2014) .................................................................. 24

*Sanofi-Synthelabo v. Apotex, Inc.*,
550 F.3d 1075 (Fed. Cir. 2008) ...................................................................... 25

*Schneider (Europe) AG v. SciMed Life Sys., Inc.*,
852 F. Supp. 813 (D. Minn. 1994) .................................................................. 36

*Scott v. Koyama*,
281 F.3d 1243, 61 U.S.P.Q. 2d 1856 (Fed. Cir. 2002) .................................. 17

*Seal-Flex, Inc. v. Athletic Track & Court Const.*,
172 F.3d 836 (Fed. Cir. 1999) .......................................................................... 5

**TABLE OF AUTHORITIES**

Pg.

*Sextant Avionique, S.A. v. Analog Devices, Inc.*,
  172 F.3d 817 (Fed. Cir. 1999) ................................................................ 7

*Shu-Hui Chen v. Bouchard*,
  347 F.3d 1299 (Fed. Cir. 2003) ...................................................... 16, 18

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
  225 F.3d 1349 (Fed. Cir. 2000) ...................................................... 20, 26

*Singh v. Brake*,
  317 F.3d 1334 (Fed. Cir. 2003) .......................................................... 15

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
  926 F.2d 1161 (Fed. Cir. 1991) ...................................................... 33, 35

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) .......................................................................... 10

*Southwall Techs., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995) ............................................................. 2

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
  511 F.3d 1186 (Fed. Cir. 2008) .................................................. 23, 24, 37

*SSL Servs. LLC v. Citrix Sys. Inc.*,
  769 F.3d 1073 (Fed. Cir. 2014) .......................................................... 42

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*,
  2004 WL 2213562 (D. Del. Sept. 28, 2004) .......................................... 37

*Standard Oil Co. v. Am. Cyanamid Co.*,
  774 F.2d 448 (Fed. Cir. 1985) .......................................................... 27

*Stickle v. Heublein, Inc.*,
  716 F.2d 1550 (Fed. Cir. 1983) .......................................................... 44

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.*,
  175 F.3d 974 (Fed. Cir. 1999) ............................................................. 8

*Stryker Corp. v. Zimmer, Inc.*,
  837 F.3d 1268 (Fed. Cir. 2016) .......................................................... 43

*Stumbo v. Eastman Outdoors, Inc.*,
  508 F.3d 1358 (Fed. Cir. 2007) ........................................................... 6

*Suffolk Techs., LLC v. AOL Inc.*,
  752 F.3d 1358 (Fed. Cir. 2014) .......................................................... 23

## TABLE OF AUTHORITIES

**Pg.**

*Symbol Techs., Inc. v. Opticon, Inc.*,
935 F.2d 1569 (Fed. Cir. 1991) ........................................................... 27

*SynQor, Inc. v. Artesyn Techs., Inc.*,
709 F.3d 1365 (Fed. Cir. 2013) ........................................................... 36

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*,
492 F.3d 1350 (Fed. Cir. 2007) ........................................................... 27

*Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP & IPR Pharms., Inc.*,
661 F.3d 1378 (Fed. Cir. 2011) ........................................................... 17

*Toro Co. v. White Consol. Indus., Inc.*,
266 F.3d 1367 (Fed. Cir. 2001) ............................................................. 6

*Transclean Corp. v. Bridgewood Servs., Inc.*,
290 F.3d 1364 (Fed. Cir. 2002) ........................................................... 33

*Transmatic, Inc. v. Gulton Indus., Inc.*,
180 F.3d 1343 (Fed. Cir. 1999) ........................................................... 41

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
699 F.3d 1340 (Fed. Cir. 2012) ........................................................... 37

*Trustees of Boston Univ. v. Everlight Elecs. Co.*,
2016 WL 3976617 (D. Mass. July 22, 2016) ................................... 44, 46

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
374 F.3d 1151 (Fed. Cir. 2004) ........................................................... 21

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*,
204 F.3d 1360 (Fed. Cir. 2000) ............................................................. 4

*Underwater Devices Inc. v. Morrison-Knudsen Co.*,
717 F.2d 1380 (Fed. Cir. 1983) ........................................................... 40

*Unisplay S.A. v. Am. Elec. Sign Co.*,
69 F.3d 512 (Fed. Cir. 1995) ............................................................... 39

*Vehicle IP, LLC v. AT&T Mobility LLC et al.*,
2016 WL 7647522 (D. Del. Dec. 30, 2016) ................................... 12, 45

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ....................................................... 38, 39

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ............................................................... 2

## TABLE OF AUTHORITIES

**Pg.**

*Vulcan Eng'g Co. v. Fata Aluminum, Inc.*,
   278 F.3d 1366 (Fed. Cir. 2002) ................................................................. 45

*Waldemar Link v. Osteonics Corp.*,
   32 F.3d 556 (Fed. Cir. 1994) ................................................................... 14

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
   103 F.3d 1571 (Fed. Cir. 1997) ................................................................. 7

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ............................................................................ 6, 8

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
   778 F.3d 1365 (Fed. Cir. 2015) ................................................................ 34

*Waymark Corp. v. Porta Sys. Corp.*,
   245 F.3d 1364 (Fed. Cir. 2001) ................................................................ 11

*WBIP, LLC v. Kohler Co.*,
   829 F.3d 1317 (Fed. Cir. 2016) ................................................... 12, 43, 45, 46

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016) ..................................................... 12, 44, 45

*Wiesner v. Weigert*,
   666 F.2d 582 (C.C.P.A. 1981) ................................................................. 18

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015) ................................................................ 38

*Wright v. United States*,
   53 Fed. Cl. 466 (2002) ........................................................................ 39

*Wyers, Inc. v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010) ................................................................ 27

*Wyeth and Cordis Corp. v. Abbott Laboratories*,
   720 F.3d 1380, 107 U.S.P.Q. 2d 1273 (Fed. Cir. 2013) ........................................ 29

*Zygo Corp. v. Wyko Corp.*,
   79 F.3d 1563 (Fed. Cir. 1996) ................................................................. 36

**Statutes**

35 U.S.C § 271(f)(1) ........................................................................ 10, 11

35 U.S.C § 271(f)(2) ............................................................................ 11

## TABLE OF AUTHORITIES

**Pg.**

35 U.S.C. § 102 ...................................................................................................... 23

35 U.S.C. § 103(a) .................................................................................................. 27

35 U.S.C. § 112 .......................................................................................... 27, 29, 30

35 U.S.C. § 271(b) ................................................................................................... 8

35 U.S.C. § 271(c) ................................................................................................... 9

35 U.S.C. § 282(a) ................................................................................................. 20

35 U.S.C. § 284 .......................................................................................... 33, 42, 43

35 U.S.C. § 287 ...................................................................................................... 39

35 U.S.C. § 298 .................................................................................................. 9, 46

**Statutes**

35 U.S.C § 271(f)(1) .......................................................................................... 10, 11
35 U.S.C § 271(f)(2) ................................................................................................ 11
35 U.S.C. § 102 ...................................................................................................... 23
35 U.S.C. § 103(a) .................................................................................................. 27
35 U.S.C. § 112 .......................................................................................... 27, 29, 30
35 U.S.C. § 271(b) ................................................................................................... 8
35 U.S.C. § 271(c) ................................................................................................... 9
35 U.S.C. § 282(a) ................................................................................................. 20
35 U.S.C. § 284 .......................................................................................... 33, 42, 43
35 U.S.C. § 287 ...................................................................................................... 39
35 U.S.C. § 298 .................................................................................................. 9, 46

Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") respectfully submits the following Statement of Issues of Law That Remain To Be Litigated based on HyperBranch's current understanding of the claims and counterclaim defenses of Plaintiffs Integra LifeSciences Corp., Integra LifeSiences Sales LLC, Confluent Surgical, Inc., and Incept LLC ("Plaintiffs").

To the extent HyperBranch's Statement of Issues of Fact That Remain To Be Litigated set forth in Exhibit 3 contains issues of law, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of fact, HyperBranch incorporates such issue by reference into Exhibit 3. By including a fact herein, HyperBranch does not assume the burden of proof or production with regard to that fact. HyperBranch reserves the right to revise this statement in light of the Court's rulings and in light of Plaintiffs identification of issues of law and fact to be litigated. To the extent that Plaintiffs intend or attempt to introduce different or additional legal arguments to those identified below, HyperBranch reserves its right to contest those legal arguments and to present any and all rebuttal evidence in response to those arguments without being bound by this summary of remaining legal issues.

## I.   Claim Construction

### A.   Issues

- What is the proper construction of "biocompatible degradable hydrogel" as used in the preamble of one or more of the asserted claims.

- What is the proper construction of "suitable to coat a tissue of a patient" as used in the preamble of one or more of the asserted claims.

### B.   Legal Authority

Claim construction is a matter of law to be determined by the judge. *Markman v. Westview*

*Instrs., Inc.*, 517 U.S. 370, 384, 390 (1996).  Claim terms are construed by giving words of the claim the meaning they would have to one of ordinary skill in the art in view of the intrinsic record consisting of the claims, specification, and file history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313–14 (Fed. Cir. 2005); *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

A court, however, "cannot construe the claims to cover subject matter broader than that which the patentee itself regarded as comprising its inventions and represented to the PTO." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004).  Following this mandate, "evidence extrinsic to the patent and prosecution history, such as expert testimony, cannot be relied on to change the meaning of the claims when that meaning is made clear" in the intrinsic record.  *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995). "The claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely. . . .  Allowing the public record to be altered or changed by extrinsic evidence introduced at trial, such as expert testimony, would make this right meaningless."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (internal citations omitted).

Arguments made during prosecution must also be considered when a court engages in claim construction:

> Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to capture the scope of the actual invention that is disclosed, described, and patented . . . . [T]he interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner relied on them, or how much weight they were given.

2

*Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323, 1325 (Fed. Cir. 2015); *see also MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir. 2007) ("Prosecution arguments . . . which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not."); *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) ("The patentee is held to what he declares during the prosecution of his patent."); *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1078 (Fed. Cir. 2003) ("Statements made during prosecution which clearly disclaim a particular claim interpretation will limit the scope of the claims."); *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("Arguments and amendments made during prosecution of a patent application must be examined to determine the meaning of terms in the claims.").

## II.   Infringement

### A.   Issues

- Whether HyperBranch has directly infringed any Asserted Claim of the patents-in-suit

- Whether HyperBranch has literally infringed any Asserted Claim of the patents-in-suit

- Whether HyperBranch has infringed any Asserted Claim of the patents-in-suit under the doctrine of equivalents

- Whether HyperBranch has induced infringement of any Asserted Claim of the patents-in-suit in the United States

- Whether HyperBranch has contributed to the infringement of any Asserted Claim of the patents-in-suit in the United States

3

- Whether HyperBranch has induced infringement of any Asserted Claim of the patents-in-suit outside of the United States

- Whether HyperBranch has contributed to the infringement of any Asserted Claim of the patents-in-suit outside the United States

- Whether HyperBranch willfully infringed any Asserted Claim of the patents-in-suit after January 2015

**B.     Legal Authority**

Although infringement is a question of fact, limitations on the applicability of the doctrine of equivalents—including whether a patentee is estopped from asserting the doctrine of equivalents based on statements or amendments made during prosecution, whether a finding of equivalence would vitiate a claim limitation, and whether a finding of equivalence would ensnare the prior art—are questions of law.  HyperBranch contends that Plaintiffs are not entitled to rely on the doctrine of equivalents due to

**1.     Direct Infringement**

"[I]t is axiomatic that the *patentee* bears the burden of proving infringement."  *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) (emphasis in original).  Infringement must be proven by a preponderance of the evidence.  *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).  To determine whether a patentee has met this burden, courts apply a two-part test:  "First, the claim must be properly construed to determine its scope and meaning.  Second, the claim as properly construed must be compared to the accused device or process."  *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted).

"To show infringement of a patent, a patentee must supply sufficient evidence to prove that

4

the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).  The patentee fails to carry its burden "when two scenarios are equally likely" because "no jury could determine which one was more likely than not." *Mosel Vitelic Corp. v. Micron Tech., Inc.*, No. CIV.A. 98-449-GMS, 2000 WL 1728346, at *2 (D. Del. Mar. 14, 2000).

Under Supreme Court law, a method claim "is not infringed unless all the steps are carried out." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use.").  A party does not directly infringe a method claim based on actions of a third party unless "it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method" or "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  "Whether a single actor directed or controlled the acts of one or more third parties is a question of fact," not law.  *Id.*

### 2.    Literal Infringement

Literal infringement requires the presence of each limitation, exactly as written in the claim.  *See DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, *i.e.*, when the properly construed claim reads on the accused device exactly." (internal quotation marks omitted)).  "If even *one limitation* is missing or not met as claimed, there is no

literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (emphasis added) (citation omitted).

### 3.    Infringement Under the Doctrine of Equivalents

Under the doctrine of the equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1312 (Fed. Cir. 2008); *see also Toro Co. v. White Consol. Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) ("To infringe a claim under the doctrine of equivalents, an accused device must include an equivalent for each literally absent claim limitation."). To prove equivalence, the patentee must "show[] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result" as the corresponding limitation claimed in the patent. *Id.* The doctrine of equivalents must be applied to each individual element of a claim, not to the invention as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). A patentee must present "particularized testimony and linking argument" to support a theory of infringement under the doctrine of equivalents. *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1338-39 (Fed. Cir. 2011).

Prosecution history estoppel stands "as a legal limitation on the doctrine of equivalents." *Warner-Jenkinson*, 520 U.S. at 30. Prosecution history estoppel "prevents a patentee from recapturing through the doctrine of equivalents the subject matter that the applicant surrendered during prosecution." *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1356 (Fed.

Cir. 2013)).  Prosecution history estoppel may bar the patentee from relying on the doctrine of equivalents if, during prosecution, the patentee made a narrowing amendment to satisfy any requirement of the Patent Act.  "[A] narrowing amendment made for a reason of patentability" creates a presumption that the patentee has "surrender[ed] the entire territory between the original claim limitation and the amended claim limitation."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1365 (Fed. Cir. 2003) (en banc).  The patentee may overcome that presumption only by demonstrating that "the equivalent would have been unforeseeable at the time of the amendment," "the rationale underlying the amendment bore no more than a tangential relation to the equivalent in question," or "there was some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question."  *Id.* (alterations in original).

Similarly, a patentee may be barred from relying on the doctrine of equivalents if, during prosecution, the patentee made arguments that effectively narrowed the scope of the patent claims. "[A]rguments made during prosecution without amendments to claim language—if sufficient to evince a clear and unmistakable surrender of subject matter—may estop an applicant from recapturing that surrendered matter under the doctrine of equivalents."  *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 828 n.3 (Fed. Cir. 1999); *see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) ("Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel."); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951-52 (Fed. Cir. 1993) ("The essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent.").

The doctrine of equivalents also may not be relied on if a finding of infringement by equivalents "would entirely vitiate a particular claim element." *Warner-Jenkinson*, 520 U.S. at 39 n.8; *see also Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (explaining that "all claim limitations are not entitled to an equal scope of equivalents [and] many limitations warrant little, if any, range of equivalents" and holding that allowing a "minority … to be equivalent to a majority would vitiate the ['majority'] requirement"); *Impulse Tech. Ltd. v. Microsoft Corp.*, C.A. No. 11-586-RGA, 2015 WL 5568616, at *3 (D. Del. Sept. 22, 2015) (applying claim vitiation where "[t]he accused product operates in essentially the opposite fashion of that described in the claims").

Additionally, the doctrine of "[e]nsnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009). If a hypothetical patent claim, constructed on the basis of the patentee's doctrine of equivalents theory to literally cover the accused device, would be unpatentable as anticipated or obvious, then "the patentee has overreached, and the accused device is noninfringing as a matter of law." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001). "[T]he burden of persuasion that the hypothetical claim does not ensnare the prior art remains with the patentee." *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999). Ensnarement is a question of law to be decided by the Court, not the jury. *DePuy Spine*, 567 F.3d at 1324.

### 4.    Indirect Infringement - Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys.*,

*Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). Induced infringement requires proof of actual infringement. Thus, "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) (citation omitted). This requires showing that the alleged infringer had "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015) (explaining that indirect infringement "requires proof the defendant knew the [accused] acts were infringing"). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2780 (2005)). "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer … intended to induce infringement of the patent." 35 U.S.C. § 298.

### 5. Indirect Infringement - Contributory Infringement

35 U.S.C. § 271(c) defines the acts that constitute contributory infringement as the sale, offer to sell, or import of a product that can be used in a patented method if the product is "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). To establish liability for contributory infringement, a patentee must prove the following four elements: (1) the accused infringer sold or offered to sell in the United States, or imported into the United States, a component of a patented device or composition, or a material or apparatus

that is a component for use in practicing a patented process; (2) the component is a material part of the invention; (3) the accused party knew that the component was especially made or adapted for use in a manner that would infringe the patent when the party sold, offered or imported the component; and (4) the component is not a staple article of commerce capable of substantial non-infringing use.  *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

Contributory infringement requires proof of direct infringement and also requires that the accused product have "no use except through practice of the patented method." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441 (1984) ("Unless a commodity has no use except through practice of the patented method, the patentee has no right to claim that its distribution constitutes contributory infringement.") (citation and internal quotation marks omitted). "[A] violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global-Tech,* 563 U.S. at 763 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

### 6.     Indirect Infringement – Outside the U.S. Pursuant to 35 U.S.C. § 271(f)(1)

Section 271(f)(1) states:

> Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C § 271(f)(1).  Under Section 271(f)(1), Plaintiffs have the burden of proving both that the "combination of such components outside of the United States" would infringe "if such combination occurred within the United States" and that HyperBranch "actively induce[d] the

combination of such components." *Id.*

"§ 271(f)(1) does not cover the supply of a single component of a multicomponent invention." *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 743 (2017).  Section 271(f) also does not apply to method or process claims.  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1364 (Fed. Cir. 2009) ("[Because one cannot supply the step of a method, Section 271(f) cannot apply to method or process patents.").

### 7. Indirect Infringement – Outside the U.S. Pursuant to 35 U.S.C. § 271(f)(2)

Section 271(f)(2) states:

Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C § 271(f)(2).  Section 271(f) does not apply to method or process claims.  *Cardiac Pacemakers, Inc.*, 576 F.3d at 1364 ("[Because one cannot supply the step of a method, Section 271(f) cannot apply to method or process patents.").

Under Section 271(f)(2), Plaintiffs have the burden of proving both that the "combin[ation] outside the United States" would infringe "if such combination occurred within the United States," *id.*, and that HyperBranch "shipped the[] [components] with the intent that they be combined." *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001).

### 8. Willful Infringement

In order to demonstrate willful infringement, Plaintiffs must prove by a preponderance of the evidence that HyperBranch infringed "deliberate[ly]," in a "consciously wrongful" manner,

and "without any reason to suppose [its] conduct [was] arguably defensible." *Halo Elecs.., Inc. v. Pulse Elecs.., Inc.,* 136 S. Ct. 1923, 1932, 1933 (2016); *see also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (willful infringement is a question of fact). Plaintiffs must prove that HyperBranch "acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'" *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo*, 136 S. Ct. at 1930). "To determine whether an accused infringer's conduct was subjectively willful, the Court must 'measure[]' the accused infringer's 'culpability . . . against the knowledge of the actor at the time of the challenged conduct.'" *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. No. 09-80-LPS, 2016 WL 6542726, at *15 (D. Del. Oct. 31, 2016) (quoting *Halo*, 136 S. Ct. at 1933). An accused infringer's conduct may only be found to amount to willful infringement if it is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 136 S. Ct. at 1932.

Awareness of the patents-in-suit, without more, cannot establish willful infringement. *See Vehicle IP, LLC v. AT&T Mobility LLC*, 227 F. Supp. 3d 319, 331 (D. Del. 2016) ("Vehicle IP does not identify other evidence, beyond pre-suit knowledge of the patent, that could show that the TCS Defendants' infringement was 'egregious,' 'deliberate,' 'wanton,' or otherwise characteristic of the type of infringement that warrants the Court exercising its discretion to impose the 'punitive' sanction of enhanced damages."); *Greatbatch Ltd. v. AVX Corp.*, C.A. No. 13-723-LPS, 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) ("[A] party's pre-suit knowledge of a patent is not sufficient, by itself, to find 'willful misconduct' of the type that may warrant an award of enhanced damages."); *see also Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332-33 (Fed. Cir. 2004) (affirming JMOL of no willfulness despite stipulation that defendant had knowledge of the

asserted patents); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000) (affirming finding of no willfulness despite defendant's knowledge of asserted patent).

### III.    Priority Date, Conception, Reduction to Practice, and Diligence

####    A.    Issues

- Whether Plaintiffs have shown by a preponderance of the evidence that claim 10 of the '034 Patent was conceived by at least November 9, 2001

- Whether Plaintiffs have shown by a preponderance of the evidence that claim 20 of the '034 Patent is entitled to a priority date of December 3, 1999

- Whether Plaintiffs have shown by a preponderance of the evidence that claim 4 of the '566 Patent is entitled to a priority date of December 3, 1999

- Whether Plaintiffs have shown by a preponderance of the evidence that claims 8 and/or 23 of the '418 Patent are entitled to a priority date of December 3, 1999

- Whether Plaintiffs have shown by a preponderance of the evidence that claims 4, 6, and/or 13 of the '3,705 Patent are entitled to a priority date of November 9, 2001

####    B.    Legal Authority

#####        1.    Determining the Priority Date for a Continuation-in-Part Application

"A [continuation-in-part application] contains subject matter from a prior application and may also contain additional matter not disclosed in the prior application. . . .  Subject matter that arises for the first time in the [continuation-in-part] application does not receive the benefit of the filing date of the parent application." *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir.1999).  Whether a continuation-in-part application can claim priority to an earlier-filed application is a question of law based on underlying questions of fact.  *See Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010) ("Determination of a priority date is

13

purely a question of law if the facts underlying that determination are undisputed.  However, determination whether a priority document contains sufficient disclosure to comply with the written description aspect of 35 U.S.C. § 112, first paragraph, is a question of fact." (internal citation omitted)); *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) ("Compliance with the written description requirement [for purpose of establishing priority] is a question of fact."); *Waldemar Link, GmbH & Co. v. Osteonics Corp.*, 32 F.3d 556, 558 (Fed. Cir. 1994) ("However, 'compliance with the written description aspect of that requirement is a question of fact.'  The fact finder must determine if one skilled in the art, reading the original specification, would immediately discern the limitation at issue in the parent." (internal citation omitted)).

Plaintiffs bear the burden of proving that a continuation-in-part application is entitled to claim priority to an earlier filing date.  *See PowerOasis*, 522 F.3d at 1305-06 (placing the burden of proof of entitlement to an earlier filing date for a continuation-in-part application on the patent owner).  "[W]hen a priority date dispute arises, the trial court must examine closely the prosecution history to discover the proper date for each claim at issue."  *Waldemar Link*, 32 F.3d at 559.  If an independent claim of a continuation-in-part application is not adequately supported in the prior application, claims depending therefrom generally also will be unsupported.  *Augustine Med.*, 181 F.3d at 1303 (holding dependent claims were not entitled to the filing date of the parent application where the independent claim lacked adequate support in the parent application).

### 2.     Conception

"Conception is the touchstone of inventorship, the completion of the mental part of invention."  *Burroughs Wellcome Co. v. Barr Labs.*, Inc., 40 F. 3d 1223, 1227-28 (Fed. Cir. 1994).  "Conception is complete only when the [idea] is so clearly defined in the inventor's mind that only

14

ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Id.* at 1228. The rules of patent law conception "ensure that patent rights attach only when an idea is so far developed that the inventor can point to a definite, particular invention," and only when those rights attach can an inventor assign those rights to another. *Id.* "A conception must encompass all limitations of the claimed invention." *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003); *see also Andreaggi v. Relis*, 408 A.2d 455, 464 (N.J. Super. Ct. Ch. Div. 1979) ("[T]his court concludes that where an inventor or inventors have conceived the basic ideas, have drawn the schematics for the electrical circuitry, have assembled the hardware to do the work, and have documented the means of executing the idea, there is invention.").

"While defendants bear the burden of persuasion to show that the [prior art] references are prior art to the [asserted] patent by clear and convincing evidence, the patentee nevertheless must meet its burden of production to demonstrate an earlier conception date." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014). "Conception 'must be proven by evidence showing what the inventor has disclosed to others and what that disclosure means to one of ordinary skill in the art.'" *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334 (Fed. Cir. 2011) (quoting *In re Jolley*, 308 F.3d 1317, 1321 (Fed.Cir.2002)) (affirming the District Court's grant of JMOL that the asserted patent was not entitled to an earlier conception date).

"It is well established that when a party seeks to prove conception via the oral testimony of a putative inventor, the party must proffer evidence corroborating that testimony." *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003). The inventor "must provide independent corroborating evidence in addition to his own statements and documents." *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989); *see also Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009). "Because it is a mental act, courts require corroborating evidence

of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Burroughs*, 40 F.3d at 1228.

"[B]ecause of the danger in post-hoc rationales by an inventor claiming priority, the court requires objective evidence to corroborate an inventor's testimony concerning his understanding of the invention." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1065 (Fed. Cir. 2005). "[T]he corroboration requirement provides an additional safeguard against courts being deceived by inventors who may be tempted to mischaracterize the events of the past through their testimony." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170 (Fed. Cir. 2006). It is "prophylactic in application" and "provides a bright line for both district courts and the PTO to follow in addressing the difficult issues related to invention dates." *Id.*

"[W]hether a putative inventor's testimony has been sufficiently corroborated is determined by a 'rule of reason' analysis, in which 'an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached.'" *Chen*, 347 F.3d at 1309 (citations omitted). The corroboration must be independent of the inventor's testimony. *See Allergan, Inc.*, 754 F.3d at 968 ("The only corroboration of the claimed invention is the oral testimony of an inventor, which we must treat with skepticism due to the possibility of an inventor's self-interest in obtaining or maintaining an existing patent."). "The rule of reason . . . does not dispense with the requirement for some evidence of independent corroboration." *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985).

### 3.    Reduction to Practice

"Whether an invention has been reduced to practice is a question of law based on underlying facts." *Henkel Corp v. Procter & Gamble Co.*, 560 F.3d 1286, 1288 (Fed. Cir. 2009); *see also Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) ("Priority, conception, and

reduction to practice are questions of law which are based on subsidiary factual findings."). "Reduction to practice in the United States requires that the invention be embodied in tangible form in the United States, not simply reported." *Scott v. Koyama*, 281 F.3d 1243, 1247 (Fed. Cir. 2002).

"The test for establishing reduction to practice requires that 'the prior inventor must have (1) constructed an embodiment or performed a process that met all the claim limitations and (2) determined that the invention would work for its intended purpose.'" *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1305 (Fed. Cir. 2012) (quoting *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP*, 661 F.3d 1378, 1383 (Fed. Cir. 2011)).  Reduction to practice cannot be based on an equivalent of a claim element rather than the exact element recited by claim.  *See Eaton v. Evans*, 204 F.3d 1094, 1098 (Fed. Cir. 2000) (holding the PTO Board erred when it relied on an equivalent element to find a reduction to practice).

"In order to establish an actual reduction to practice, an inventor's testimony must be corroborated by independent evidence." *Cooper*, 154 F.3d at 1330.  As with conception, "[s]ufficiency of corroboration is determined by using a 'rule of reason' analysis, under which all pertinent evidence is examined when determining the credibility of an inventor's testimony." *In re Garner*, 508 F.3d 1376, 1380 (Fed. Cir. 2007) (citing *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed.Cir.1993)).  "[C]orroboration of the existence of the device is not sufficient in this case to establish corroboration of reduction to practice.  It is also necessary to corroborate that the device worked for its intended purpose." *Id.* at 1381.

### 4.    Diligence Between Conception and Reduction to Practice

In evaluating diligence, "[t]he basic inquiry is whether, on all of the evidence, there was reasonably continuing activity to reduce the invention to practice." *Brown v. Barbacid*, 436 F.3d

17

1376, 1380 (Fed. Cir. 2006).  Diligence requires corroboration, which "may be provided by sufficient independent circumstantial evidence." *In re Jolley*, 308 F.3d at 1328.  The time period for which diligence must be shown by the party first to conceive is from a date just prior to the effective date of the prior art reference to the date of reduction to practice by the party first to conceive.  *Chen*, 347 F.3d at 1309.  The party alleging prior invention must be able to show diligence throughout the "entire critical period."  *See Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001) (citing *Fitzgerald v. Arbib*, 268 F.2d 763, 766 (C.C.P.A. 1959)).  "[A]n inventor's testimony on the question of diligence must be corroborated." *Kendall v. Searles*, 173 F.2d 986, 993 (C.C.PA. 1949).  Corroboration is determined by application of a rule of reason, which requires that an "evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004) (finding that a notebook diagram inconclusive of what circuitry the patentee developed failed to corroborate the patentee's claim).

"[E]vidence of constant effort is not required to establish reasonable diligence" but unexplained delays may indicate a lack of diligence. *Wiesner v. Weigert*, 666 F.2d 582, 589 (C.C.P.A. 1981) (diligence not shown where only explanation for delay explained was inventor testimony that efforts continued during the critical period).  Additionally, efforts toward a solution of the problem at hand by different means than those represented by the patent claim is not credited as diligence.  *See Litchfield v. Eigen*, 535 F.2d 72, 76 (C.C.P.A. 1976).

IV.    **Invalidity**

    A.    **Issues**

- Whether the references asserted against the '034 Patent are "prior art" under 35 U.S.C. §§ 102(a), (b), or (e) or 103(a)

- Whether claim 10 of the '034 Patent is invalid as anticipated by an enabled prior art reference

- Whether claim 10 of the '034 Patent is invalid as obvious over one or more prior art references, either alone or in combination

- Whether claim 10 of the '034 Patent is invalid under 35 U.S.C. § 112

- Whether claim 20 of the '034 Patent, claim 4 of the '566 Patent, and/or claims 8 and/or 23 of the '418 Patent are invalid as obvious over one or more prior art references, either alone or in combination

- Whether claim 20 of the '034 Patent, claim 4 of the '566 Patent, and/or claims 8 and/or 23 of the '418 Patent are invalid under 35 U.S.C. § 112

- Whether claims 4, 6, and/or 13 of the '3,705 Patent are invalid as obvious over one or more prior art references, either alone or in combination

- Whether claims 4, 6, and/or 13 of the '3,705 Patent are invalid under 35 U.S.C. § 112

- Whether Plaintiffs have meet their burden of production of evidence of secondary considerations of non-obviousness with respect to any of the asserted claims and have established a nexus between those secondary considerations and the alleged inventions of the claims

**B.     Legal Authority**

**1.     Presumption of Validity**

Under § 282 of the Patent Act, patents are presumed valid and a party challenging the validity of a patent must prove invalidity by clear and convincing evidence.  35 U.S.C. § 282(a); *see also Microsoft Corp. v. i4i Ltd. P'Ship*, 131 S. Ct. 2238, 2242 (2011).  The presumption of

19

validity and the clear and convincing burden of proof are "static and in reality different expressions of the same thing—a single hurdle to be cleared." *Chiron Corp. v. Genetech, Inc*., 363 F.3d 1247, 1258 (Fed. Cir. 2004) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc*., 725 F.2d 1350, 1360 (Fed. Cir. 1984)).  Thus, the presumption of validity "does not constitute 'evidence' to be weighed against the challenger's evidence." *Id.* at 1258-1259.

While § 282 requires an invalidity defense to be proven by clear and convincing evidence, "the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain" when a party relies on prior art not before the Patent Office during prosecution.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011); *see also SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp*., 225 F.3d 1349, 1355-1356 (Fed. Cir. 2000) (explaining that "[w]hile the presentation at trial of a reference that was not before the examiner does not change the presumption of validity, the alleged infringer's burden may be more easily carried because of this additional reference").  The Supreme Court has recognized that "if the PTO did not have all material facts before it, its considered judgment may lose significant force." *Microsoft*, 564 U.S. at 111.

### 2.    What Constitutes Prior Art

Section 102 of the Patent Act (pre-AIA) provides, in relevant part, as follows:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or ….

(e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the

applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent ….

35 U.S.C. § 102(a), (b), (e).

Whether an allegedly invalidating reference is prior art is "a question of law based on underlying facts." *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1376 (Fed. Cir. 2003); *see also TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("Whether a reference was published prior to the critical date, and is therefore prior art, is a question of law based on underlying fact questions."). Under the pre-AIA version of 35 U.S.C. § 102, a patent or other printed publication is prior art under § 102(b) if it "describe[s]" the invention "in this or a foreign country . . . more than one year prior to the date of the application for patent." Here, the critical § 102(b) date for each of the patents-in-suit are disputed because Plaintiffs have not yet established that the patents-in-suit, which claim priority through continuation-in-part applications, are entitled to the filing date of the patent applications. Section 102(a), on the other hand, does not limit invalidating public uses, offers for sale, or printed descriptions to one year before filing; those invalidating activities must simply occur "before the invention of the patent." The invention date for purposes of § 102(a) is normally the effective filing date of the asserted patent. However, as described above, the parties dispute the effective filing date of each of the patents-in-suit based on their claiming priority through a continuation-in-part application. Further, as discussed above, Plaintiffs recently asserted a new conception date for claim 10 of the '034 Patent, which the parties also dispute.

Public use and public knowledge are not demanding standards. *See Nat'l Research Dev. Corp. v. Varian Assocs., Inc.*, 822 F. Supp. 1121, 1129 (D.N.J. 1993), *aff'd in part, vacated in part*, 17 F.3d 1444 (Fed. Cir. 1994) ("It does not take much to trigger the 'public use' statutory bar to a patent."). Public use includes "any use" of a device "by a person other than the inventor who

21

is under no limitation, restriction or obligation of secrecy to the inventor." *Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1058 (Fed. Cir. 1996) (holding use of centrifuge in a laboratory where co-workers and visitors saw it in operation qualified as "public use"); *see also Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1328 (Fed. Cir. 2009) (holding public use requirement satisfied where "during the 1989 demonstration, all elements of the repair method in claim 1 of the [] Patent were performed"); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1372 (Fed. Cir. 2007) (display of bracket at "1994 Florida trade show" is public use); *Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1159-60 (Fed. Cir. 1994) (displaying an invention at a dinner party is public use). While § 102(b) uses slightly different language (*i.e.*, "public use"), the same standard governs whether a reference is "known or used by others" under § 102(a). *See Ormco Corp.*, 463 F.3d at 1305-06 (reversing finding of no "use by others" under § 102(a) because "Dr. Truax promoted his system to other orthodontists through seminars and clinics and distributed his instruction sheet at those clinics"). In addition, a device known or used by others must be "ready for patenting." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998). That requirement is satisfied if the device is reduced to practice or the persons who conceived of the device have "prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.*

Slightly different standards govern whether a reference qualifies as a printed publication under §§ 102(a) and (b). Dissemination and public accessibility are the touchstones to the legal determination whether a prior art reference is a printed publication. *See Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1364 (Fed. Cir. 2014). "A given reference is 'publicly accessible' upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising

reasonable diligence, can locate it." *Id.* (quoting *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008)).

Section 102(e) invalidates claims "described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent."  A patent or patent application can invalidate the claims, in other words, even if it was not prior art under §§ 102(a) or (b). *See In re Bayer*, 568 F.2d 1357, 1361 (CCPA 1978).

### 3.    Anticipation

An alleged invention must be new to satisfy the requirements of patentability.  *See C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998).  A patent is not new or novel, however, if it was disclosed in a § 102 prior art reference.  *See generally* 35 U.S.C. § 102.  A reference anticipates if it is shown "that each element of the claim in issue is found, either expressly or under principles of inherency, in a single prior art reference, or that the claimed invention was previously known or embodied in a single prior art device or practice." *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992).  "Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claims limitations, it anticipates." *Leggett & Platt, Inc. v. VUTEK, Inc.*, 537 F.3d 1349, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).

"The disclosure in an assertedly anticipating reference must be adequate to enable possession of the desired subject matter." *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Research*, 346 F.3d 1051, 1055 (Fed. Cir. 2003).  "For a prior-art reference to be enabling, it need not enable the claim in its entirety, but instead the reference need only enable a single embodiment

of the claim." *In re Morsa*, 803 F.3d 1374, 1377 (Fed. Cir. 2015).  Anticipatory enablement is a

less demanding standard than enablement under 35 U.S.C. § 112.  *See SRI*, 511 F.3d at 1194

(referencing "the lower enablement standard for prior art").  In particular, anticipatory enablement

does not require "actual performance" of the enabling disclosure.  *Novo Nordisk Pharms., Inc. v.*

*Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005); *In re Antor Media Corp.*, 689 F.3d

1282, 1290 (Fed. Cir. 2012).  "'Rather, anticipation only requires that those suggestions be enabled

to one of skill in the art.'" *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1383

(Fed. Cir. 2015) (quoting *Novo Nordisk*, 424 F.3d at 1355).  The "knowledge of the art" at the

critical or priority date of the '892 patent is relevant to that inquiry.  *Iovate Health Scis., Inc. v.*

*Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1383 (Fed. Cir. 2009); *see also*

*Novo Nordisk*, 424 F.3d at 1356 (finding anticipatory enablement based on what "would have been

understood by one of ordinary skill in the art").  Finally, "both claimed and unclaimed materials

disclosed in a [prior art] patent are presumptively enabling." *In re Antor Media Corp.*, 689 F.3d at

1287; *see also Cubist Pharms., Inc. v. Hospira, Inc.*, 75 F. Supp. 3d 641, 661 & n.10 (D. Del.

2014); *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 565 (D. Del. 2014).

### 4.    Obviousness

Section 103 of the Patent Act (pre-AIA) provides:

> A patent may not be obtained though the invention is not identically disclosed or
> described as set forth in section 102 of this title, if the differences between the
> subject matter sought to be patented and the prior art are such that the subject matter
> as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a).  "[O]bviousness is a matter of law based on findings of underlying fact."

*Sanofi-Synthelabo v. Apotex, Inc*., 550 F.3d 1075, 1085 (Fed. Cir. 2008).  The underlying factual

considerations include

> the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained and the level of ordinary skill in the pertinent art resolved.  Against this background, the obviousness or nonobviousness of the subject matter is determined.  Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)); *see also ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1357 (Fed. Cir. 2015).  Obviousness can be established by noting that "there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." *KSR,* 550 U.S. at 420. Furthermore, it is not only the specific problem motivating the patentee which is relevant, but rather "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.*  In addition, because "[a] person of ordinary skill is also a person of ordinary creativity," he will be able to "fit the teachings of multiple patents together like pieces of a puzzle," regardless of whether each piece of prior art was designed to solve the problem at hand. *Id.* at 420-21; *see also Leapfrog Enters., Inc. v. Fischer-Price, Inc*., 485 F.3d 1157, 1161-1162 (Fed. Cir. 2007).

Because obviousness is to be judged under "an expansive and flexible approach" driven by "common sense," an award of patentability requires "more than the predictable use of prior art elements according to their established functions." *KSR*, 550 U.S. at 415-418.  This flexible standard expands the obviousness analysis beyond just "published articles and the explicit content of issued patents." *Id.* at 419.  As the Supreme Court has articulated, a patent that merely combines "familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416 (recognizing that when a patent claims a structure already

25

known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result). Similarly, where a person of ordinary skill in the art simply pursues "known options" from a "finite number of identified, predictable solutions," obviousness under § 103 results. *Id.* at 421.

Secondary considerations, if present, are also relevant to the obviousness analysis. *ABT*, 797 F.3d at 1361. Simultaneous or near-simultaneous invention by others is a particularly important secondary consideration that supports holding the claimed invention obvious. *See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305-06 (Fed. Cir. 2010) ("Independently made, simultaneous inventions, made 'within a comparatively short space of time,' are persuasive evidence that the claimed apparatus 'was the product only of ordinary … skill.'") (quoting *Concrete Appliances Co. v. Gomery*, 269 U.S. 177, 184 (1925)). Other secondary considerations include commercial success, licensing, praise, long-felt need, failure of others, unexpected results, teaching away, and copying. *See KSR*, 550 U.S. at 406 (quoting *Graham*, 383 U.S. at 17-18 ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.")). In order for these objective indicia of nonobviousness "to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention." *SIBIA Neurosciences*, 225 F.3d at 1359 (quoting *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). However, even if secondary considerations exist, they cannot overcome a "strong prima facie case of obviousness." *Wyers, Inc. v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).

One consideration that is not relevant to the obviousness inquiry is enablement. Even "'[a] non-enabling reference may qualify as prior art for the purpose of determining obviousness,'" *ABT*,

797 F.3d at 1360 n.2 (quoting *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991), "and even 'an inoperative device … is prior art for all that it teaches'." *Id.* (quoting *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989)); *see also Antor Media*, 689 F.3d at 1292.

Obviousness is judged from the perspective of a person of ordinary having skill in the art at the time the alleged invention was made. *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1354-55 (Fed. Cir. 2007) ("An invention is not patentable, inter alia, 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art'" (quoting 35 U.S.C. § 103(a))).  A person of ordinary skill is a hypothetical person who is "presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

### 5.    Written Description

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  Section 112 of the Patent Act provides that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same."  35 U.S.C. § 112, ¶ 1.  The written description must reasonably convey "to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Specifically, the written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Id.*  (citing *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1989)); *see also LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345

(Fed. Cir. 2005) ("[The written description] must describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, *i.e.*, that the patentee invented what is claimed."). In determining whether a specification contains an adequate written description, "one must make an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.'" *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (citing *Ariad*, 598 F.3d at 1351). "A broad claim is invalid [for lack of adequate written description] when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Carnegie Mellon Univ. v. Hoffman-La Roche Inc.*, 541 F.3d 1115, 1127 (Fed. Cir. 2008) (quoting *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002); *see also Atlantic Res. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1354-55 (Fed. Cir. 2011) (invalidating claims covering gun accessory without "receiver sleeve attachment point" because specification disclosed only accessory with such an attachment point); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1378 (Fed. Cir. 2009) ("[A] person of skill in the art would not understand the inventor . . . to have invented a spikeless medical valve."); *LizardTech*, 424 F.3d at 1345 (invalidating a claim that was "directed to creating a seamless array of DWT coefficients generically" because the specification taught only "a particular method" of creating such a seamless array). Whether a patent claim satisfies the written description requirement is a question of fact. *Ariad*, 598 F.3d at 1351.

The mere fact that a claim is "an original claim[] does not necessarily satisfy [the written description] requirement." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002). Where "a purported description of an invention does not meet the requirements of the statute, the fact that it appears as an original claim or in the specification does not save it. A claim

does not become more descriptive by its repetition, or its longevity." *Id.* at 968-969.

### 6.    Enablement

A patent claim is invalid if the patent does not enable a person of ordinary skill in the art to make or use the alleged invention.   Section 112 of the Patent Act provides that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same."   35 U.S.C. § 112, ¶ 1.   "Enablement is a question of law based on underlying facts."   *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013).   The party alleging a lack of enablement must prove "non-enablement by clear and convincing evidence."   *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012).

"Claims are not enabled when, at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation."   *Wyeth & Cordis Corp.*, 720 F.3d at 1384; *see also Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) ("To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation."). Publications arising after the filing date cannot be used to show enablement.   *See In re Glass*, 492 F.2d 1228, 1232 (C.C.P.A. 1974); *In re Wright*, 999 F.2d 1557, 1562–63 (Fed. Cir. 1993). Additionally, § 102(e) prior art "[a]s of its filing date[, ] does not show what is known generally to 'any person skilled in the art.'"   *In re Glass*, 492 F.2d at 1231-32 (holding 102(e) prior art was not part of the knowledge of a person of ordinary skill in the art for purposes of determining enablement).

The Federal Circuit has eight "[f]actors to be considered in determining whether a

disclosure would require undue experimentation":

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).   The Wands factors "are illustrative, not mandatory.  What is relevant depends on the facts."  *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991).

### 7.   Indefiniteness

The Patent Act requires that a patent claim "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112, ¶ 2.  This definiteness requirement is intended to provide notice to the public of the precise bounds of the patent rights claimed by the patentee.  If a claim fails to inform those skilled in the art of the scope of the invention with reasonable certainty, the claim is invalid.  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012); *see also Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369 (1938) ("The inventor must inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not." (internal quotation marks omitted)).  The test for determining whether the claims are sufficiently definite is whether the "patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).  "Indefiniteness is a question of law." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 803 F.3d 620, 625 (Fed. Cir. 2015).

## V.      Equitable Estoppel

### A.      Issues of Law

- Whether Plaintiffs are equitably estopped from enforcing the patents-in-suit against HyperBranch based on Plaintiffs' communications to HyperBranch regarding the making, using, and selling of the Accused Products

### B.      Legal Authority

Equitable estoppel is an equitable defense "committed to the sound discretion of the trial judge." *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013) (quoting *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc)).

Under the doctrine of equitable estoppel, the owner of a patent may forfeit its right to any relief from an alleged infringer where: (1) the patent holder communicates something in a misleading way to the alleged infringer about the lack of infringement or about not being sued; (2) the alleged infringer relies upon the misleading communication from the patent holder; and (3) the alleged infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication. *Id.* The patentee's misleading communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence and such conduct may include action or inaction. *A.C. Aukerman*, 960 F.2d at 1028. The defendant bears the burden of proving each of the elements of equitable estoppel by a preponderance of the evidence. *Id.* at 1046.

Although equitable estoppel is normally decided by the judge, the Court may try equitable estoppel to an advisory jury. The Federal Rules of Civil Procedure provide that "[i]n an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury; or (2) may, with the parties consent, try any issue by a jury whose verdict has the same effect

31

as if a jury trial had been a matter of right . . . ."  Fed. R. Civ. P. 39(c).  Moreover, trial to the jury

is appropriate when factual determinations underlying a finding of equitable estoppel are

intertwined with other legal issues.  *See Cedarapids, Inc. v. CMI Corp.*, No. C98-0110 MJM, 1999

WL 33656876, at *3 (N.D. Iowa Oct. 26, 1999) ("In this case, the issues of laches, estoppel and

willfulness are intertwined with common factual determinations. . . .   Therefore, the court finds

that separate trials would be a waste of judicial time and resources.").  For example, when a

defendant "has chosen to assert the equitable defenses of laches and estoppel, willfulness bears not

only on the amount of damages if infringement is proven, but also on whether [the Plaintiff] should

be equitably estopped."  *Id.*  In such a circumstance, "a jury's fact findings common to a legal

claim and an equitable defense are to be accepted by the court in ruling on the equitable matter."

*Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1456 (Fed. Cir. 1984).

VI.     **Damages**

   A.     **Issues of Law**

- If one or more of the patents-in-suit is/are found to be valid and infringed, whether
  Plaintiffs are entitled to monetary damages and the amount of damages based on
  lost profits or price erosion

- If one or more of the patents-in-suit is/are found to be valid and infringed, whether
  Plaintiffs are entitled to monetary damages and the amount of damages based on a
  reasonable royalty

- If one or more of the patents-in-suit is/are found to be valid and infringed, whether
  Plaintiffs are entitled to any pre-suit damages pursuant to 35 U.S.C. § 287

- If one or more of the patents-in-suit is/are found to be valid and infringed, whether
  Plaintiffs are entitled to an award of prejudgment interest, postjudgment interest,

32

and/or costs and the amount of such award(s)

- If one or more of the patents-in-suit is/are found to be valid and infringed, whether Plaintiffs are entitled to a finding that this case is exceptional under 35 U.S.C. § 285 and whether Plaintiffs are entitled to an award of attorneys' fees

- If one or more of the patents-in-suit is/are found to be valid and infringed and HyperBranch is found to have willfully infringed one or more of the patents-in-suit, whether Plaintiffs are entitled to enhanced damages

### B.   Legal Authority

#### 1.   Damages Generally

Upon a finding of patent infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  The amount of a prevailing patentee's damages is a finding of fact on which the patentee bears the burden of proof by a preponderance of the evidence.  *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002); *see also SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

#### 2.   Lost Profits

"[T]he patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits."  *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (en banc) ("Normally, if the patentee is not selling a product, by definition there can be no lost profits.").  A patent holder or exclusive licensee may only recover its own lost profits; it cannot recover lost profits due to sales of products made by a licensee.

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015), *vacated on other grounds, Medtronic Sofamor Danek USA, Inc. v. NuVasive, Inc.*, 136 S. Ct. 893 (2016)) ("Under our case law a patentee may not claim, as its own damages, the lost profits of a related company."); *Poly-Am.*, 383 F.3d at 1311; *see also Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 604 (D. Del. 2007).

"To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).  This requires evidence sufficient to show "a reasonable probability that the patentee would have made the sale … had the defendant not made the infringing sale." *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1144 (Fed. Cir. 1991) (affirming denial of lost profits damages where patentee "failed to show the amount of profit the patentee would have made if the [defendant] had made the infringing sales").  "Under the entire market value rule applicable to lost profits awards, a patentee must prove the invention in suit created consumer demand for the patented and infringing products." *Rite-Hite*, 56 F.3d at 1557.

The traditional framework for establishing lost profits damages is under the four-factor *Panduit* test.

> To obtain as damages the profits on sales he would have made absent the infringement, i. e., the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made.

*Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978).  Where the patentee relies on a two-supplier market theory, "the two-supplier market test collapses the first two Panduit factors into one 'two suppliers in the relevant market' factor." *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124, 65 U.S.P.Q. 2d 1695 (Fed. Cir. 2003).  Accordingly, when

34

relying on a two-supplier market, a patentee must show:

> 1) the relevant market contains only two suppliers, 2) its own manufacturing and marketing capability to make the sales that were diverted to the infringer, and 3) the amount of profit it would have made from these diverted sales.

*Id.*   The existence of a two-player market may be rebutted by showing other non-infringing alternatives.  *See, e.g.*, *Grain Processing Corp.*, 185 F.3d at 1349, 51 U.S.P.Q. 2d at 1562 (holding that the existence of a non-infringing substitute prevented recovery under a two-supplier market theory).

The lost profits analysis requires detailed consideration of the market—it is necessary to determine what would have occurred had there never been any infringement.  *See Grain Processing* at 1350.  While such a market reconstruction is a hypothetical exercise, *Grain Processing* teaches that it must not "laps[e] into pure speculation." *Id.*  Hence, a determination of lost profits "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Id.*

An alleged infringer cannot be considered to have simply stood still in the absence of infringement: "a fair and accurate reconstruction of the 'but for' market also must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed." *Id.* at 1350-51.  In particular, "[w]ithout the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative." *Id.* at 1351.

Moreover, a patentee is not entitled to recover lost profits damages if it fails to establish that there are no acceptable non-infringing substitutes for the patented product.  *See SmithKline Diagnostics*, 926 F.2d at 1165.  A damages expert's analysis "must consider the impact of such alternate technologies on the market as a whole." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1381 (Fed. Cir. 2013).   Non-infringing substitutes that were available during the

infringement period "can preclude or limit lost profits."  *Grain Processing Corp.*, 185 F.3d at 1353; *see also id.* at 1351 ("[A] rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether.").

The universe of non-infringing alternatives "is not limited . . . to substitute technologies." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 2002 WL 1801525, at \*77 (S.D. Ind. July 5, 2002), *aff'd in part and rev'd in part on other grounds*, 381 F.3d 1371 (Fed. Cir. 2004).  The Federal Circuit has held that a damages expert may "reconstruct" the "but for" market based on any theory supported by "reliable economic evidence."  *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1355 (Fed. Cir. 2001).  The universe of noninfringing alternatives has been held to include alternative technologies, licensed products, and actions an alleged infringer could have taken to either acquire or maintain a license to the asserted patent. *See, e.g. Cardiac Pacemakers*, 2002 WL 1801525, at \*77 ("[T]he reasonable non-infringing alternative was not to close on the merger. . . . Accordingly, the jury reasonably found that no lost profits had been proven."); *Schneider (Europe) AG v. SciMed Life Sys., Inc.*, 852 F. Supp. 813, 858 (D. Minn. 1994) ("A licensed product is an acceptable non-infringing alternative as of the time that it is licensed."), *aff'd*, 60 F.3d 839 (Fed. Cir. 1995); *Crystal Semiconductor*, 246 F.3d at 1355 ("This court has affirmed … a wide variety of reconstruction theories.").

Once a defendant posits a non-infringing alternative, the burden is on the patentee to prove that it is not acceptable.  *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996).

### 3.    Reasonable Royalty Damages

A reasonable royalty is the amount that the defendant would have paid for a license to the asserted patents if the parties had negotiated a license at the time of first alleged infringement.  *See*

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 & n.2 (Fed. Cir. 2012). This is often referred to as the "hypothetical negotiation." *See, e.g.*, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon the fifteen factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004); *see also Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014). A reasonable royalty must be calculated as of the date infringement began, but the Court may consider events and facts that occurred after the infringement began. *St. Clair Intellectual Prop. Consultants, Inc.*, 2004 WL 2213562, at *2. "[A] reasonable royalty analysis requires a court to hypothesize, not to speculate." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention. Thus, the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *Id.* (internal citation omitted); *see also Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("What is taken from the owner of a utility patent (for purposes of assessing damages under § 284) is only the patented technology, and so the value to be measured is only the value of the infringing features of an accused product."); *SRI Int'l, Inc.*, 179 F. Supp. 3d at 369 (excluding licenses that "are a product of litigation, as such settlements reflect the parties' consideration of multiple factors unrelated to valuation issues").

### 4.    Apportionment

Under Title 35, Section 284 of the United States Code, damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no

more." *Ericsson, Inc.*, 773 F.3d at 1226. "When the accused infringing products have both patented and unpatented features, measuring [the value of the patented technology] requires a determination of the value added by such features. . . .  The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson*, 773 F.3d at 1226.  "No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

"Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics*, 694 F.3d 51 at 67.  Thus, a reasonable royalty must be based not on the entire product, but instead on the "smallest salable patent-practicing unit." *Id*.  This principle—called apportionment—is "the governing rule" "where multi-component products are involved." *Ericsson*, 773 F,3d at 1226. "Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature," the patentee is required "to estimate what portion of the value of that product is attributable to the patented technology." *Virnetx, Inc.*, 767 F.3d at 1327.

"[U]sing sufficiently comparable licenses is a generally reliable method of estimating the value of a patent." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 (Fed. Cir. 2014) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  "Prior licenses … are almost never perfectly analogous to the infringement action" and "allegedly comparable licenses may cover more patents than are at issue in the action." *Ericsson*, 773 F.3d at 1227; *see also VirnetX*, 767 F.3d at 1330 ("[W]e have never required identity of circumstances"

38

for a license to be "sufficiently comparable to the hypothetical license at issue in suit." (internal quotation marks omitted)). Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace. *LaserDynamics*, 694 F.3d at 79. Likewise, a patentee's license proposals "should carry considerable weight in calculating a reasonable royalty rate." *Unisplay S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995); *see also Wright v. United* States, 53 Fed. Cl. 466, 475 (2002) ("[T]he Court is swayed by the fact that an actual proffer by Plaintiff constitutes credible evidence of a ceiling on a hypothetical royalty rate.").

### 5.    Pre-Suit Damages

Under 35 U.S.C. § 287, a patentee "making, offering for sale, or selling within the United States any patented article . . . or importing any patented article into the United States," may recover "no damages" unless (1) the accused infringer "was notified of the infringement and continued to infringe thereafter," or (2) the patentee marked any articles covered by the patents-in-suit in compliance with the statute's marking requirements. Otherwise, a patentee may only recover pre-suit damages if it has never made, sold, offered for sale, or imported any articles covered by the patent-in-suit. The patentee bears the "burden of pleading and proving at trial that [it] complied with the statutory requirements" of 35 U.S.C. § 287. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

### 6.    Post-Trial Accounting

The Federal Circuit recognizes a plaintiff's right to a post-trial accounting of infringing sales if a patent is found valid and infringed. *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales of the infringing

product does not fully compensate the patentee because it fails to account for post-verdict sales.")
However, a "right to a post-verdict accounting is not an unlimited after-hours hunting license."
*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1380-81 (Fed.
Cir. 2013).  District Courts are to limit the scope of a post-trial accounting to "post-verdict
infringing sales, if any, which are substantially related to the direct infringement by [the
Defendant] which the district court finds supported by the existing record."  *Id.*

### 7.      Prejudgment Interest, Postjudgment Interest, and Costs

"Prejudgment interest is awarded to compensate for the delay in payment of the damages,
and not to punish the infringer."  *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed.
Cir. 1983).  Although prejudgment interest "should ordinarily be awarded," the Court has
discretion to limit, or deny entirely, prejudgment interest where appropriate.  *Gen. Motors Corp.
v. Devex Corp.*, 461 U.S. 648, 655-57 (1983).  "For example, it may be appropriate to limit
prejudgment interest, or perhaps even deny it altogether, where the patent owner has been
responsible for undue delay in prosecuting the lawsuit."  *Id.* at 657; *see also Crystal Semiconductor
Corp.*, 246 F.3d at 1362 ("[T]he district court acted within its discretion in denying Crystal
prejudgment interest.").  "[P]rejudgment interest cannot be awarded on the punitive or enhanced
portion of a damages award."  *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380,
1389 (Fed. Cir. 1983), *overruled on other grounds by In re Seagate Tech., LLC*, 497 F.3d 1360
(Fed. Cir. 2007); *Lam*, 718 F.2d at 1066.  The applicable interest rate is left to the discretion of the
Court; however, in exercising its discretion, the Court "must be guided by the purpose of
prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as
he would have been had the infringer entered into a reasonable royalty agreement.'"  *Bio-Rad
Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (quoting *Gen. Motors*,

461 U.S. at 654).

"Postjudgment interest is awarded on monetary judgments recovered in all civil cases." *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Pursuant to 28 U.S.C. § 1961, interest shall be computed daily to the date of payment and shall be compounded annually.

Federal Rule of Civil Procedure 54(d) states that "costs should be allowed to the prevailing party." Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *See also* D. Del. LR 54.1.

### 8.    Attorneys' Fees

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court construed the text of 35 U.S.C. § 285 and rejected the prevailing framework for evaluating whether a case is "exceptional" under Section 285 as unduly restrictive. 134 S. Ct. 1749, 1755 (2014). The Court held that, in accordance with its ordinary meaning, an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated," to be determined at the district court's discretion under the totality of the circumstances based on a preponderance of the evidence. *Id*. at 1756, 1758.

The Court in *Octane Fitness* also rejected the litigation misconduct portion of the previous standard as too restrictive because "sanctionable conduct is not the appropriate benchmark." *Id.* at 1756.  Rather, a district court may award fees in the rare case in which a party's unreasonable conduct is "exceptional" enough to justify an award of fees for conduct that may not be independently sanctionable. *Id.* at 1757.

"[A] district court may award minimal or no fees after considering the amount of success to the prevailing party." *SSL Servs. LLC v. Citrix Sys. Inc.*, 769 F.3d 1073, 1087 (Fed. Cir. 2014).

### 9.    Enhancement Under 35 U.S.C. § 284

Under certain circumstances where the defendant has engaged in reprehensible behavior or bad faith, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.  As the Supreme Court recently clarified in *Halo Electronics, Inc.* , 136 S. Ct. 1923, the only sort of "willful misconduct" that can warrant enhanced damages is conduct that is "egregious"—for example, "the 'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." *Id.* at 1932, 1934; *see also id.* at 1932 (explaining that enhanced damages are "not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior").  "The district court has the discretion to decide whether the case is sufficiently egregious to warrant enhancing damages and to decide the amount of enhancement that is warranted (up to the statutory limit of treble damages)." *WBIP, LLC*, 829 F.3d at 1342.  Even "a finding of willfulness does not require an award of enhanced damages; it merely permits it." *In re Seagate Tech., LLC*, 497 F.3d at 1368 (en banc), *abrogated on other grounds*, *Halo Electronics., Inc., Inc.*, 136 S. Ct. 1923 (citing 35 U.S.C. § 284); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999)); *Funai*

*Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1376-77 (Fed. Cir. 2010) (affirming denial of enhanced damages after a jury finding of willfulness); *Greatbatch Ltd.*, C.A. No. 13-723-LPS, 2016 WL 7217625, at *6 ("A finding of willfulness may be a necessary—but is not a sufficient—condition to permit the Court to exercise its discretion.").   Enhanced damages represent a "'punitive' or 'vindictive' sanction" reserved for "egregious" or "malicious" misdeeds. *Halo*, 136 S. Ct. at 1932.

"[T]he decision to enhance damages is a discretionary one that the district court should make based on the circumstances of the case." *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016). "Courts consider several factors when determining whether an infringer has acted in bad faith and whether damages should be increased.  They include: '(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; ... (3) the infringer's behavior as a party to the litigation;' (4) 'defendant's size and financial condition;' (5) 'closeness of the case;' (6) 'duration of defendant's misconduct;' (7) 'remedial action by the defendant;' (8) 'defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.'" *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (quoting *Read Corp. v. Portec. Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992), *superseded on other grounds as recognized in Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)).  The Supreme Court has "eschew[ed] any rigid formula for awarding enhanced damages under § 284." *Halo*, 136 S. Ct. at 1934.  However, "the Read factors present useful guideposts in determining the egregious[ness] of the defendant's conduct. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2016 WL 3880774, at *16 (N.D. Cal. July 18, 2016) (finding "[t]he Read factors do not support a finding of egregiousness

43

misconduct"); *Dominion Res. Inc. v. Alstom Grid, Inc.*, 2016 WL 5674713, at *21 (E.D. Pa. Oct. 3, 2016) ("While Halo changed the test for determining willful misconduct in enhanced damages, we continue to use the Read factors to aid our discretion."); *Trustees of Boston Univ. v. Everlight Elecs. Co.*, 2016 WL 3976617, at *2 (D. Mass. July 22, 2016) ("While the Read factors remain helpful to this Court's analysis, the touchstone for awarding enhanced damages after Halo is egregiousness.").

Whether an accused infringer has reasonable litigation defenses is relevant to whether or not its conduct is "egregious" enough to enhance damages. *WesternGeco LLC*, 837 F.3d at 1363 (observing that, after *Halo*, "objective reasonableness is one of the relevant factors" in determining whether to enhance damages); *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-1989 (2016) (in exercising discretion to award attorney's fees under the Copyright Act, a district court should give "substantial weight" to the reasonableness of the defendant's litigation positions).

To show willfulness, a patentee must prove that the alleged infringer acted without a "reasonable basis for believing it had a right to do the acts." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1565 (Fed. Cir. 1983) ("[M]ore is necessary to support a finding of 'willfulness' than that the infringing acts were not inadvertent. The court must determine that the infringer acted in disregard of the patent, that is, that the infringer had no reasonable basis for believing it had a right to do the acts."); *see also Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002) ("The tort of willful infringement arises upon deliberate disregard for the property rights of the patentee. … When it is found that the infringer acted without a reasonable belief that its actions would avoid infringement, the patentee has established willful infringement, which may be accompanied by enhanced damages."); *Read*, 970 F.2d at 826 ("[T]his court has approved such

44

awards where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement is willful."). Reasonable defenses that were known to the accused infringer at the time of the alleged culpable conduct are thus highly relevant to assessing an accused infringer's subjective intent. *See Greatbatch Ltd.*, C.A. No. 13-723-LPS, 2016 WL 7217625, at *4 (holding that "reasonable defenses … known to [the accused infringer] at the time of the challenged, culpable conduct" are "pertinent to assessing … subjective intent"). Beyond that, relevant factors include whether the alleged infringer acted consistently "with the standards of commerce for its industry," "made a good-faith effort to avoid infringing the patent," or "tried to cover up its infringement." *WesternGeco*, 837 F.3d at 1363 n.2. "[A] party's pre-suit knowledge of a patent is not sufficient, by itself, to find 'willful misconduct' of the type that may warrant an award of enhanced damages." *Vehicle IP, LLC*, C.A. No. 09-1007-LPS, 2016 WL 7647522, at *8; *see also Norian Corp.*, 363 F.3d at 1332 ("Willful infringement is not established by the simple fact of infringement, even though [the defendant] stipulated that it had knowledge of [the plaintiff's] patents. The patentee must present threshold evidence of culpable behavior." (citation omitted)).

A finding of willful infringement does not require that damages be enhanced. *See Halo*, 136 S. Ct. at 1933 ("[N]one of this is to say that enhanced damages must follow a finding of egregious misconduct."); *WBIP, LLC*, 829 F.3d at 1341 n.13 ("[T]his is not to say that a jury verdict of willful infringement ought to result in enhanced damages."). Indeed, as *Halo* indicates, willfulness is, at most, a factor the Court may consider when deciding whether to exercise its discretion to award enhanced damages under 35 U.S.C. § 284. *See Halo*, 136 S. Ct. at 1931-1932 (Section 284 "contains no explicit limit or condition" on a district court's discretion except that enhanced damages are "reserved for egregious cases of culpable behavior"); *see also Trustees of Boston Univ.*, C.A. No. 12-11935-PBS, 2016 WL 3976617, at *2 ("[T]he touchstone for awarding

45

enhanced damages after *Halo* is egregiousness.").

"The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent …." 35 U.S.C. § 298. "Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit.  Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) (citation omitted).

The Supreme Court's decision in *Halo* makes clear that "willfulness" is no longer a separate claim but is just one factor for the Court to consider in deciding whether to enhance damages under § 284.  *Id.* at 1933.  This is apparent from *Halo*'s unitary abuse-of-discretion standard for reviewing enhanced damages determinations, which leaves no room for "substantial evidence" review of a jury's verdict.  *See id.* at 1934.[1]  This is the same system the Supreme Court adopted for exceptional case findings under 35 U.S.C. § 285—a system that gives the jury no role.  *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014).

Evidence of HyperBranch's allegedly "willful" infringement conduct is therefore not relevant to any issue that the jury must decide.

### 10.    Attorneys' Fees Under 35 U.S.C. § 285

The court in exceptional cases may award reasonable attorney fees to the prevailing party."

---

[1] In *WBIP, LLC*, the Federal Circuit "[did] not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury."  829 F.3d at 1341.  But the court did not consider *Halo*'s new, unitary standard of review.

35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness, LLC*, 134 S. Ct. at 1756. A prevailing party must establish its entitlement to fees under Section 285 by a preponderance of the evidence. *Id.* at 1758.

## VII. Injunctive Relief

### A. Issues of Law

- Whether Plaintiffs have shown they are entitled to a permanent injunction against HyperBranch

### B. Legal Authority

"[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity. . . ." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. "[A] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391. A patentee's prolonged or undue delay in commencing legal proceedings and seeking injunctive relief evinces a lack of irreparable harm. *See Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325-26 (Fed. Cir. 2012).

47

# EXHIBIT 6

**Plaintiffs' Objection Key for Deposition Designations and Exhibits**

| Text | Description of Basis for Objection |
|---|---|
| IM | Improper Designation |
| IN | Incomplete |
| 106 | Federal Rule of Evidence 106 |
| 402 | Federal Rule of Evidence 402 |
| 403 | Federal Rule of Evidence 403 |
| 602 | Federal Rule of Evidence 602 |
| 611 | Federal Rule of Evidence 611 |
| 701 | Federal Rule of Evidence 701 |
| 801 | Federal Rule of Evidence 801 |
| 802 | Federal Rule of Evidence 802 |
| 805 | Federal Rule of Evidence 805 |
| 901 | Federal Rule of Evidence 901 |
| 1002 | Federal Rule of Evidence 1002 |
| CON | Question contrary to court's claim construction |
| MD | Exhibit is not a single document rather it is multiple documents (all objections reserved with respect to each document) |
| Oct. 27, 2017 Oral Order limiting invalidity contentions | Document is outside the scope of art identified in invalidity contentions (all rights reserved to request limiting instruction if exhibit not excluded) |
| ill | Illegible copy (all objections reserved) |
| Incomplete | Exhibit is missing one or more pages |
| DE / Duplicative | Duplicate of exhibit (all objections to all other copies of the exhibit are incorporated) |
| MIS | Mischaracterizes Prior Testimony or Exhibit |
| Inspect at Trial | All objections to the exhibit are reserved until inspection of exhibit complete |
| Exhibit not provided | All objections reserved until exhibit is provided |
| AC | Privileged Attorney Client Communication and/or Attorney Work Product |
| F | Lack of foundation |
| LC | Legal Conclusion |
| S or CS | Calls for Speculation |
| V | Vague, Ambiguous or Misleading |
| AA | Asked and Answered / Cumulative |
| ARG | Argumentative |
| BE | Best Evidence |
| LO | Improper Lay Opinion |

| AFN | Assumes Facts not in Evidence |
|---|---|
| L | Leading |
| C | Compound |
| MIL | Subject Matter Addressed by one of Plaintiff's Motions in Limine |
| TEX (##) | Testimony based on subject matter directed to content of exhibit identified as number marked at deposition. Plaintiffs incorporate all objections to exhibit and testimony should be excluded if exhibit is not admitted |
| DIFF | Counter designation is improper as it is directed to a subject different than the original designation |
| NP | Not produced in discovery |
| DEMO | If admitted at all, then it is only properly admitted as a demonstrative exhibit |
| INADOP | Objections reserved as exhibit is directed to opinion testimony that is/has been excluded or otherwise not presented at trial |

**DEFENDANT'S OBJECTION KEY**

*Integra v. HyperBranch*, No. 15-819-LPS-CJB

| Code | Objection |
|------|-----------|
| 106 | Incomplete - This exhibit or testimony is objectionable because it is incomplete writing or recorded statement (FRE 106) |
| 402 | Not Relevant - This exhibit or testimony is objectionable because it is not relevant to any claim or defense (FRE 402) |
| 403 | Confusing and Unduly Prejudicial - This exhibit or testimony is objectionable because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence (FRE 403) |
| 404 | Impermissible character evidence |
| 408 | Compromise and offer to compromise (FRE 408) |
| 602 | Lack of Personal Knowledge - This exhibit or testimony is objectionable because it constitutes testimony on a matter as to which the witness lacks personal knowledge (FRE 602) |
| 608 | Opinion and Reputation Evidence/Bolstering (FRE 608(a)) |
| 611 | Argumentative/Leading (FRCP 611(a); 611(c)) |
| 701 | Improper Opinion - This exhibit or testimony is objectionable because it is opinion testimony by a lay witness that is not reasonably based on perception and helpful to a clear understanding of the witness' testimony or the determination of a fact in dispute (FRE 701) |
| 702-705 | Inadmissible Opinion (FRE 702-705) |
| 801 and 802 | Hearsay - This exhibit or testimony is objectionable because it is a statement made by one other than the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted and not subject to any hearsay exception (FRE 801 and 802) |
| 901 | Authenticity - This exhibit or testimony is objectionable because it has not been authenticated (FRE 901) |
| AA | Asked and answered |
| AC, WP | Attorney client privilege and/or work product immunity (FRE 501-502) |
| BE, 1002 | Best Evidence - This exhibit is objectionable because it is being used to prove the content of a writing and it is not the original writing (FRE 1002) |
| CS | Calls for speculation |
| CT | Cumulative Testimony |
| DE | Demonstrative - This exhibit is objectionable because it is demonstrative evidence and therefore not properly admitted into evidence |
| E | Evidentiary - This exhibit or testimony is objectionable because it assumes facts not in evidence. |
| F | Lacks foundation |
| IA | Incomplete answer or question |
| ILL | Illegible - This exhibit is objectionable because it is illegible |

| Code | Objection |
|------|-----------|
| IMP | Impeachment - This exhibit or testimony is objectionable except for use as impeachment |
| LC | Calls for legal conclusion |
| MD | Multiple Documents - This exhibit is objectionable because it is a combination of more than one document |
| MIL | Exhibit or testimony is the subject of a pending *motion in limine* |
| ND, NR | This exhibit or testimony is objectionable because it is a deposition transcript and hence is not properly admitted into evidence |
| NTP | Violation of Scheduling Order-Not Timely Produced. All or part of the proposed exhibit is objected to because the proposed exhibit was not timely produced during discovery. |
| OB | Overbroad/violates Local Rules/Court's Orders |
| QW | Question withdrawn |
| V | Vague, ambiguous and misleading |

EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>　　　　Defendant. | C.A. No.  15-819-LPS-CJB |

**PLAINTIFFS' CASE-IN-CHIEF DEPOSITION DESIGNATIONS**

The following Plaintiffs' case-in-chief deposition designation is based on the parties' pleadings, documentary and testimony evidence, and on Plaintiffs' current understanding of HyperBranch's claims and defenses and the Court's rulings to date.  Pursuant to Fed. R. Civ. P. 26(a)(3) and agreement of the parties, Plaintiffs submit the attached statement of contested facts. Plaintiffs reserve the right to revise, amend, supplement, or modify their case-in-chief deposition designations based upon any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments.  Plaintiffs further reserve the right to supplement this statement to rebut or otherwise address the contested facts identified by HyperBranch.  All irrelevant and redundant material, including objections and colloquy of counsel will be eliminated from the deposition designations below when the designations are read to or viewed by the jury.  Plaintiffs further reserve the right to designate any portion of the deposition transcripts of Defendant's 30(b)(6) representatives, officers, or employees should they fail to be in attendance at trial in this matter.  Plaintiffs further reserve the right to later provide designations from any deposition for use in its rebuttal case and to use any portion of any deposition transcript for purposes of impeachment.

**Chandrashekar Pathak – (Inventor) – May 12, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|:---:|:---:|:---:|:---:|
| 7:11-17 | | | |
| 39:3-10 | | 39:11-21 | S; 402; 403 |
| 48:14-22 | | | |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 54:3-5 | | | |
| 55:12-56:3 | | 56:8-16 | DIFF, 402 |
| 63:6-8 | | | |
| 253:12-257:8 | | 24:13-21; 246:10-250:10 | DIFF (as to 24:13-21); 402; 403 |
| 258:7-267:14 | | 24:13-21; 246:10-250:10 | DIFF (as to 24:13-21); 402; 403 |
| 269:2-270:21 | | | |
| 271:2-272:5 | | 288:6-12; 288:15-289:11; 289:14-290:7; 290:10-15; 290:18-292:12; 292:15-18; 292:21-22; 293:2-18; 293:21-294:15; 294:18-295:8; 293:11-16; 295:22-296:8; 296:11-297:3; 297:6-8 | 288:6-12 – DIFF, S, 701; Incomplete Hypothetical 288:15-289:11 -- DIFF, S, 701; Incomplete Hypothetical 290:10-15 – DIFF, IN, S, 701; Incomplete hypothetical 290:18-292:12 – DIFF, S, 701 292:15-18 – DIFF, S, 701 292:21-22 – DIFF, S, 701 293:2-18 – 294:18-295:8 – DIFF, S, 701 293:11-16 – DIFF 295:22-296:8 – DIFF, S, 701, AA 296:11-297:3 – DIFF, S, 701, AA 297:6-8 – DIFF, 701 |
| 273:13-277:17 | | 288:6-12; 288:15-289:11; 289:14-290:7; 290:10-15; 290:18-292:12; 292:15-18; 292:21-22; 293:2-18; 293:21-294:15; 294:18-295:8; 293:11-16; 295:22-296:8; 296:11-297:3; 297:6-8 | 288:6-12 – DIFF, S, 701; Incomplete Hypothetical 288:15-289:11 -- DIFF, S, 701; Incomplete Hypothetical 290:10-15 – DIFF, IN, S, 701; Incomplete hypothetical 290:18-292:12 – DIFF, S, 701 292:15-18 – DIFF, S, 701 |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 292:21-22 – DIFF, S, 701<br>293:2-18 –<br>294:18-295:8 – DIFF, S, 701<br>293:11-16 – DIFF<br>295:22-296:8 – DIFF, S, 701, AA<br>296:11-297:3 – DIFF, S, 701, AA<br>297:6-8 – DIFF, 701 |
| 279:2-22 | | 288:6-12; 288:15-289:11; 289:14-290:7; 290:10-15; 290:18-292:12; 292:15-18; 292:21-22; 293:2-18; 293:21-294:15; 294:18-295:8; 293:11-16; 295:22-296:8; 296:11-297:3; 297:6-8 | 288:6-12 – DIFF, S, 701; Incomplete Hypothetical<br>288:15-289:11 -- DIFF, S, 701; Incomplete Hypothetical<br>290:10-15 – DIFF, IN, S, 701; Incomplete hypothetical<br>290:18-292:12 – DIFF, S, 701<br>292:15-18 – DIFF, S, 701<br>292:21-22 – DIFF, S, 701<br>293:2-18 –<br>294:18-295:8 – DIFF, S, 701<br>293:11-16 – DIFF<br>295:22-296:8 – DIFF, S, 701, AA<br>296:11-297:3 – DIFF, S, 701, AA<br>297:6-8 – DIFF, 701 |
| 280:17-281:16 | | | |
| 283:14-286:22 | | | |

**Jason Fortier – February 11, 2016**

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 8:11-20 | | | |
| 15:5-18:1 | LC | | |
| 18:5-7 | | | |
| 20:6-14 | | | |
| 21:20-23:2 | | | |
| 24:22-28:5 | LC, CS, 602 | | |
| 39:22-40:12 | | | |
| 86:5-18 | | | |
| 102:11-103:11 | | | |
| 161:10-13 | | | |
| 183:19-184:11 | | | |
| 187:12-189:19 | CS, 602 | | |
| 193:11-196:21 | V | | |
| 196:22-197:14 | | | |
| 197:15-199:16 | 402 | | |
| 201:12-202:16 | | | |

**Carl Hardwidge, M.D. – April 18, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:8-10 | | | |
| 8:1-14 | 402, AC/WP | | |
| 10:10-11:4 | | 11:5-9 | |
| 15:6-16 | 402; 602; F | 14:11-15:5 | |
| 16:9-14 | 402; 602; E; F | 14:11-15:5 | |
| 16:16-18:5 | | 13:22-14:10; 30:14-31:14 | 30:14-31:14 – 402; 403; 611, 701; MIL; CON (see DI 555, pp. 16 and n.11) |
| 21:3-6 | | 13:22-14:10; 19:17-21; 21:7-19; 27:21-28:8; 29:4-19; 29:21-30:7 | |
| 22:17-19 | | 19:17-21; 21:20-22:8 | |
| 23:15-18 | | 18:6-11; 19:1-4 | 18:6-11 – 701; F |
| 23:19-24:9 | | 30:14-31:14 | 402; 403, 611, 701, MIL; CON (see DI 555, pp. 16 and n.11) |

**Dr. Jay Howington – May 16, 2017**

4

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 4:23-5:3 | | | |
| 5:19-6:14 | | 6:15-7:23 | |
| 16:1-19 | | | |
| 17:14-16 | | | |
| 18:13-20 | F, E | 18:8-12; 18:21-23; 19:8-20:5 | |
| 20:9-21:4 | 701, AF | 21:9-21:21; 21:24-22:2 | 21:9-21 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>21:24-22:2 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 22:19-23:11 | 701, AF | 23:16-24:21; 25:13-16 | |
| 26:20-28:5 | 701, AF, CS, 602 | | |
| 31:21-32:14 | | 30:22-31:20; 32:15-21 | 30:22-31:20 – 402; 403 |
| 33:10-16 | 701, AF | | |
| 38:21-40:2 | 701, AF, 801/802 | | |
| 40:22-46:13 | E, F, 602, 701, AF, CS, 611, 801/802 | 45:7-14; 50:17-23; 51:22-52:1 | 45:7-14 – IM (part of original designation)<br>50:17-23 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br>51:22-52:1 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 47:1-22 | CT, 611, 403 | 52:4-11; 53:5-7 | |
| 48:16-22 | 701, 602, CS | | |
| 50:6-16 | 701, AF, F, E, 602, CS | 50:17-23; 51:22-52:1 | 50:17-23 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>51:22-52:1 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 50:24-51:18 | 701, AF, F, E, 602, CS | 51:22-52:1 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 53:13-55:4 | 701, AF, F, E, 602, CS, CT, AA | 55:9-21 | 55:9-21 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); AA |

**William Delaney – June 20, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 7:18-20 | | | |
| 8:7-22 | | | |
| 11:1-23 | | | |
| 15:20-16:14 | | | |
| 26:15-20 | | 26:21-24 | 26:21-24 – IM (complete question answer not designated) |
| 103:22-104:5 | | 104:6-11 | |
| 111:19-112:18 | | 112:19-113:18 | |

**Peter Edelman – May 23, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:17-20 | | | |
| 34:11-22 | | | |

**Christine L'Heureux (30(b)(6) Designee of St. Francis Hospital) – May 30, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 5:8-11 | | | |
| 6:19-24 | | | |
| 20:15-21:21 | 106, 601 | 21:22-22:1 | |
| 22:2-18 | | | |

**Dr. John Tew, Jr. – March 21, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:7-10 | | | |
| 11:1-13 | | 11:14-21 | |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 14:18-15:18 | | 12:16-13:4; 14:9-17 | |
| 17:24-18:3 | LC, 701, 611 | | |
| 18:9-21:23 | F, E, 602, 701 | 19:24-20:17; 21:24-22:4 | 19:24-20:17 – IM (part of original designation) |
| 23:4-24:1 | IA, 801/802, 701 | 24:2-25:3; 25:15-25:25 | 25:15-25:25 -- 402; 403, 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 27:24-29:16 | F, 602, CS, 801/802 | | |
| 49:19-51:18 | F, E, V, CS, 701, 602 | 52:7-12; 53:11-54:3; 54:5-20 | |
| 52:23-53:2 | F, E, V, CS, 701, 602 | 52:7-12; 53:11-54:3; 54:5-20 | |
| 54:5-17 | F, E, V, CS, 701, 602, IA | 52:7-12; 53:11-54:3; 54:5-20 | 54:5-20 – IM (encompasses original designation) |
| 68:14-70:3 | F, V, E, 611, 701, 602 | 70:13-24 | 70:13-24 – IM (encompasses original designation) |
| 70:14-71:14 | F, V, E, 611, 701, 602 | 70:13-24 | 70:13-24 – IM (encompasses original designation) |
| 73:4-16 | F, 611, 402, 403 | 73:17-74:7; 74:8-13 | |
| 76:19-77:9 | F, V, 611, 402, 403, 701 | | |
| 78:10-79:14 | F, 611, 402, 403, V | | |
| 85:19-87:14 | 611, 701, CS | | |
| 90:2-91:3 | F, E, CS, 701, 602 | 91:24-93:15; 92:6-97:20 | |
| 94:1-14 | F, E, CS, 602, 701, V, IA | 94:1-16; 94:17-95:1; 92:6-97:20 | |
| 95:2-21 | F, E, CS, 602, 701 | 92:6-97:20 | |

**Dr. Alexander West – March 24, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 4:23-5:2 | IA | 4:23-5:1 | |
| 16:21-23 | F, E, V, 402 | | |
| 17:17-20 | F, E, V, 402, 403 | | |
| 17:25-18:14 | IA, 611 | | |
| 22:19-23:9 | F, E, V, 701, CS | 22:6-18; 23:10-20 | |
| 23:21-24:14 | F, E, CS, 701 | 23:10-20; 25:23-27:12 | |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 42:23-43:3 | F, E, V, 701 | 41:22-42:6; 43:4-44:4 | 43:4-44:4 – TEX; 402; 403; 702/703; IM (references a document that is a basis for opinion that is not identified or produced with declaration); AFN; 801; 802 |

**Sasha Bartlett – (30(b)(6) Severn) – June 14, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 7:4-11 | | | |
| 8:11-21 | | 8:24-9:5; 31:2-4 | 31:2-4 – DIFF |
| 9:6-11:8 | | | |
| 12:7-13:4 | 602; CS; F | | |
| 17:7-18:5 | | 15:16-16:11; 21:22-22:4; 24:22-25; 25:4-25; 31:2-4; 31:19-33:6; 39:21-40:4; 40:9-16; 40:20-25 | 31:2-4 -- DIFF 39:21-40:4 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:9-401:16 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:20-25 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 18:16-20:21 | 602; CS; F | 15:16-16:11; 21:22-22:4; 24:22-25; 25:4-25; 31:2-4; 31:19-33:6; 39:21-40:4; 40:9-16; 40:20-25 | 31:2-4 -- DIFF 39:21-40:4 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:9-401:16 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:20-25 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 27:12-28:5 | | 28:6-11; 28:13-18; 29:13-17; 31:2-4; 39:21-40:4; 40:9-16; 40:20-25 | 31:2-4 -- DIFF 39:21-40:4 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:9-401:16 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:20-25 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 29:19-30:15 | | 15:16-16:11; 21:22-22:4; 24:22-25; 25:4-25; 31:2-4; 31:19-33:6; 39:21-40:4; 40:9-16; 40:20-25 | 31:2-4 -- DIFF 39:21-40:4 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:9-401:16 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:20-25 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 30:22-25 | | 15:16-16:11; 21:22-22:4; 24:22-25; 25:4-25; 31:2-4; 31:19-33:6; 39:21-40:4; 40:9-16; 40:20-25 | 31:2-4 -- DIFF 39:21-40:4 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:9-401:16 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) 40:20-25 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 38:12-19 | | 15:16-16:11; 21:22-22:4; 24:22-25; 25:4-25; 31:2-4; 31:19-33:6; 39:21-40:4; 40:9-16; 40:20-25 | 31:2-4 -- DIFF 39:21-40:4 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |

9

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 40:9-401:16 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br>40:20-25 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |

**Paul Grundy – (30(b)(6) University Hospital, UK) – June 15, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:21-23 | | | |
| 7:22-8:10 | | | |
| 8:16-18 | | | |
| 10:12-14:7 | F, 106, 602, 701 | 14:8-14:24 | |
| 15:16-16:19 | 106, 701 | 16:21-17:11; 18:12-22 | |
| 19:23-23:25 | 403, 602, 701 | | |
| 25:19-24 | F, 106, 602 | | |
| 26:22-27:13 | F, 106, 602 | 27:15-23 | |
| 31:13-19 | 701, LC | | |
| 38:25-39:21 | | 41:6-12 | 41:6-12 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 41:15-42:3 | 106 | 41:6-12; 42:5-21 | 41:6-12 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>42:5-21 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 42:23-43:15 | 602 | | |
| 50:20-51:25 | | | |

**George Strang – (30(b)(6) Severn) – June 12, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:2-5 | | | |
| 7:5-16 | | 7:20-24 | |
| 8:25-9:10 | | 9:11-14 | |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 9:15-14:18 | 402; | 15:12-17; 32:8-33:2; 33:19-24; 34:12-21; 39:14-40:7; 40:12-21 | 39:14-40:7 – DIFF, 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>40:12-21 – DIFF, 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 16:10-17:25 | | 18:2-8; 31:7-14; 39:14-40:7; 40:12-21 | 39:14-40:7 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>40:12-21 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 20:17-25:10 | | 26:23-27:4; 39:14-40:7; 40:12-21 | 39:14-40:7 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>40:12-21 – DIFF 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 28:17-30:20 | | 32:8-33:2; 33:19-24; 34:12-21; 39:14-40:7; 40:12-21 | 39:14-40:7 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>40:12-21 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE |
| 31:15-32:7 | | 18:2-8; 31:7-14; 32:8-33:2; 33:19-24; 34:12-21; 39:14-40:7; 40:12-21 | 32:8-33:2 – DIFF 39:14-40:7 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>40:12-21 – DIFF; 402; 403, 611; 701, MIL; |

EXHIBIT 6

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | CON (see DI 555, pp. 16 and n.11); BE |
| 34:22-35:22 | | 32:8-33:2; 33:19-24; 34:12-21 | 32:8-33:2 – DIFF |
| 36:13-39:3 | CS | 26:23-27:4 | |

**Terry Maxwell – (30(b)(6) St. Joseph's Hospital) – April 26, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:16-18 | | | |
| 7:23-8:15 | | | |
| 13:3-6 | | | |
| 13:20-14:3 | | | |
| 16:11-17:11 | | | |
| 22:10-23 | F, 602, 701, 801, 802, | | |
| 32:2-10 | F, 602 | | |
| 33:4-16 | | | |
| 36:20-37:19 | | 38:5-18 | |
| 43:7-14 | F, 403, 701, MIL | 42:10-43:2 | |
| 50:18-51:7 | 106 | 50:3-17 | |

**Madelyn Uy – (30(b)(6) UCSD) – April 11, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:7-10 | | | |
| 7:7-17 | ND | | |
| 17:15-22:12 | ND, 602, 801, 802 | | |
| 22:24-24:4 | F, 602, 801, 802 | 24:5-10; 26:13-25 | |
| 27:3-15 | | | |
| 29:5-29:15 | LC, 602, CS | 26:13-25 | |
| 33:2-22 | | 49:10-12 | 49:10-12 – DIFF |
| 45:5-16 | 602, 801, 802 | | |
| 47:21-48:7 | V, CS, 602 | | |
| 68:20-22 | | 48:9-11 | 48:9-11 – DIFF |
| 77:18-24 | CS, 602 | | |

## EXHIBIT 6

**Kost Elisevich – (30(b)(6) Spectrum Health) – April 25, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 7:9-12 | | | |
| 9:8-11 | 402, IMP | | |
| 10:14-21 | | | |
| 11:7-12:14 | | | |
| 13:6-14:24 | CS, 602 | | |
| 15:18-17:2 | IA, CS, 602, 701, AF | 15:18-17:3 | |
| 17:23-18:11 | F, 602, 402, CS | | |
| 19:19-21:23 | CS, 601, AF | 23:17-24:20 | |
| 25:12-27:15 | CS, 701, AF, V, 611 | 28:10-21; 29:23-30:6 | |
| 27:23-28:8 | CS, 701, AF, V, 611 | 28:10-21; 29:23-30:6 | |
| 30:8-13 | CT, CS, 701, AF, AA | | |
| 31:4-33:13 | 701, CS, AF, F, 801/802 | 46:7-20; 57:24-58:14; 64:25-65:7; 65:17-66:8 | 46:7-20 – DIFF<br><br>64:25-65:7 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>65:17-66:8 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 35:14-36:7 | 701, CS, AF, F, 602 | | |
| 38:6-9 | F, E | | |
| 38:17-21 | | | |
| 38:25-40:12 | CS, 602 | 40:14-16 | |
| 41:21-42:22 | 801, 802 | 70:14-71:14; 75:5-12 | 75:5-12 – V; 402; 403 |
| 44:8-13-46:5 | 602, CS, V, 611, 701, F, AF | 46:7-20; 57:24-58:14; 64:25-65:7; 65:17-66:8 | 64:25-65:7 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>65:17-66:8 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 56:7-57:22 | 602, 701, CS, V, 611, AF | 46:7-20; 57:24-58:14; 64:25-65:7; 65:17-66:8 | 64:25-65:7 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |

13

EXHIBIT 6

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 65:17-66:8 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 76:20-77:5 | CS, V, 403, 402 | 75:25-76:19; 77:25-78:9 | |
| 79:4-12 | CS, V, F, 602 | | |

**John Nail – (30(b)(6) Armamentarium) – May 10, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 13:15-19 | | | |
| 15:19-16:24 | | | |
| 17:13-19:5 | | | |
| 19:20-24 | | | |
| 20:21-21:12 | | | |
| 22:15-26:10 | F, LC, V, 402, 602, 701, 801, 802 | | |
| 26:12-31:7 | F, LC, V, 402, 602, 701, 801, 802 | | |
| 32:16-24 | CS, 602, 801, 802 | | |
| 32:25-37:3 | F, LC, CS, V, 106, 402, 602, 701, 801, 802 | 37:4-7 | |
| 37:8-40:12 | F, CS, 602, 801, 802 | | |
| 40:22-43:25 | F, CS, LC, 602, 701, 801, 802 | | |
| 44:3-48:22 | F, CS, 602, 801, 802 | | |
| 49:23-51:12 | F, CS, 106, 602, 801, 802 | 51:13-25 | |
| 52:2-11 | | | |
| 54:14-56:21 | F, CS, 106, 602 | 56:22-57:6 | |
| 57:7-62:8 | F, CS, AA, 602, 611, 801, 802 | | |
| 66:9-71:19 | F, CS, QW, 602, 611, 801, 802 | | |
| 72:9-73:10 | | | |
| 75:23-77:8 | 402, 403, 602, 801, 802 | 77:9-18 | |
| 78:4-24 | F, 402, 403, 602, 801, 802 | 78:25-79:7 | |
| 81:15-85:17 | F, 402, 602, 611, 801, 802 | | |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 89:19-96:24 | F, CS, 402, 602, 801, 802 | | |
| 97:8-100:3 | F, CS, 403, 602, 801, 802 | | |
| 100:5-101:22 | | | |
| 103:22-106:8 | F, CS, 403, 602, 801, 802 | 102:25-103:10 | 102:25-103:10 -- DIFF |
| 109:19-111:2 | V, CS, 602 | 108:5-9 | |
| 112:12-23 | CS, 602 | | |
| 151:8-11 | | 150:17-151:6; 153:4-153:3 | 152:4-153:3 – 402; 403; 801; 802 |

**Hoi Sang U – (MD at UCSD) – May 1, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 7:11-15 | | | |
| 8:10-9:6 | | | |
| 10:8-11:3 | F, CS, 602, 801, 802 | | |
| 11:23-19 | F, CS, 602, 801, 802 | | |
| 14:24-15:25 | F, CS, 602, 801, 802 | | |
| 17:20-18:22 | | | |
| 19:16-20:20 | 602 | 20:21-24 | |
| 22:11-21 | | | |
| 23:2-21 | F, CS, LC, 602, 801, 802 | | |
| 26:15-28:13 | CS, LC, 701 | 29:12-30:3; 35:23-36:2 | 35:23-36:2 – DIFF; 402; 403; S |
| 31:22-32:9 | CS, LC, 701 | 35:23-36:2 | 35:23-36:2 – DIFF; 402; 403; S |
| 33:3-10 | CS, LC, 701 | 35:23-36:2 | 35:23-36:2 – DIFF; 402; 403; S |
| 37:7-11 | LC | | |
| 37:15-39:13 | F, CS, 106, 801, 802 | | |
| 40:2-18 | F, CS, LC | 35:23-36:2 | 35:23-36:2 – DIFF; 402; 403; S |
| 43:19-44:1 | | | |
| 45:5-46:7 | CS, LC, 701 | | |
| 48:23-49:24 | | | |
| 56:8-57:1 | LC, 701 | 35:23-36:2; 57:3-58:7 | 35:23-36:2 – 402; 403; S |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
|  |  |  | 57:3-57:8 -- 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 58:18-59:8 | CS, 602 |  |  |
| 60:7-61:18 | CS, 602 |  |  |
| 64:22-65:25 | F, CS, LC, 106, 701, 801, 802 |  |  |

**Brett Pfeiffle – (Spectrum Health) – April 25, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:7-11 |  |  |  |
| 7:3-8:6 |  | 8:7-15 |  |
| 9:18-12:5 | IA | 8:24-9:17; 9:18-12:3; 12:12-13:13 |  |
| 14:5-24 |  | 14:25-15:3 |  |
| 15:4-23 |  | 15:24-16:5 |  |
| 16:14-18 | 402, IMP |  |  |
| 17:15-19:2 | E, F, CS, 402, 602 |  |  |
| 21:6-25:21 | E, F, V, 611. 602, CS | 25:23-26:5 |  |
| 28:16-30:30 | F, LC, 701, 801/802, CS, 602 | 28:7-28:14; 31:2-14 |  |
| 44:20-45:9 | F, 602, CS, 402, 403 |  |  |

**Emad Shenouda – (MD at University Hospital, UK) – June 21, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:8-10 |  |  |  |
| 7:15-21 |  |  |  |
| 8:5-18 |  |  |  |
| 9:19-10:20 | 106 | 10:21-11:3 |  |
| 11:12-22 |  |  |  |
| 13:5-14:24 | F, LC, 701 |  |  |
| 15:24-16:5 | V, LC, 701 |  |  |
| 18:3-10 | V | 18:11-19 |  |
| 23:15-24:9 |  | 22:3-14; 29:9-12 | 22:3-14 – IM (complete question / answer not transcribed, see 22:15-18) |

16

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 29:9-12 -- 402; 403; 611; MIL; 701; BE |
| 26:5-12 | LC, 701 | 22:3-14; 29:9-12 | 22:3-14 – IM (complete question / answer not transcribed, see 22:15-18)<br><br>29:9-12 -- 402; 403; 611; MIL; 701; BE |
| 27:17-28:2 | | 29:9-12; 30:12-30:25 | 29:9-12 – DIFF; 402; 403; 611; MIL; 701; BE<br><br>30:12-25 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 31:16-32:11 | LC, 701 | 22:3-14; 29:9-12; 30:12-30:25 | 22:3-14 – IM (complete question / answer not transcribed, see 22:15-18)<br><br>29:9-12 – DIFF; 402; 403; 611; MIL; 701; BE<br><br>30:12-25 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |

**Paul Grundy – (MD University Hospital UK) – June 15, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:21-23 | | | |
| 7:20-8:22 | | | |
| 10:12-12:9 | F, 106, 602, 701 | 14:8-14:24 | |
| 12:15-13:21 | F, 106, 602, 701 | | |
| 15:16-16:19 | 106, 701 | 16:21-17:11; 18:12-22 | |
| 19:23-20:18 | 403, 602, 701 | | |
| 20:20-23:25 | 403, 602, 701 | | |
| 25:2-29:3 | F, 106, 602 | 29:4-9 | |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 31:13-19 | 701, LC | | |
| 32:6-33:7 | | 33:8-14 | |
| 39:15-41:4 | 106 | 41:6-12 | 41:6-12 -- 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 41:15-42:3 | 701, LC | 42:5-21 | 42:5-21 – 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 42:23-43:15 | 602 | | |
| 50:20-51:25 | | | |

**Kerry Potter – (30(b)(6) of Southwest Surgical) – May 2, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:15-17 | | | |
| 11:3-12:2 | 402; 602; 801; 802; 901; IMP; | | |
| 12:10-12 | | | |
| 13:14-20 | | 13:21-24; 24:7-25:3 | 24:7-25:3 – DIFF |
| 14:9-21 | | 13:21-24; 24:7-25:3 | |
| 14:22-22:21 | | 26:18-28:2; 139:33-140:4 | 139:33-140:4 – 402; 403; 801; 802 |
| 22:22-23:25 | 402 | 26:18-28:2; 139:33-140:4 | 139:33-140:4 – 402; 403; 801; 802 |
| 28:3-9 | | 26:18-28:2; 128:22-130:14; 130:19-133:11; 139:33-140:4 | 128:22-130:14 – DIFF; 402; 403; 801; 802 130:19-133:11 – DIFF; 402; 403; 801; 802 139:33-140:4 – 402; 403; 801; 802 |
| 28:19-29:20 | | 29:21-24; 128:22-130:14; 130:19-133:11; 139:33-140:4 | 128:22-130:14 – DIFF; 402; 403; 801; 802 130:19-133:11 – DIFF; 402; 403; 801; 802 139:33-140:4 – 402; 403; 801; 802 |
| 30:20-31:5 | IA | 31:6-31:9 (completeness) | |
| 31:20-33:20 | 602; F; CS | 139:33-140:4 | 139:33-140:4 – 402; 403; 801; 802 |

18

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 35:13-37:10 | 602; F; CS | 37:11-18; 139:33-140:4 | 139:33-140:4 – 402; 403; 801; 802 |
| 37:19-39:18 | 602; F; CS | 39:19-41:4 | |
| 42:23-44:22 | V | 39:15-41:4; 126:7-127:5 | 126:7-127:5 – DIFF; 402; 403, 611, 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 45:19-49:5 | | 39:15-41:4; 126:7-127:5 | 126:7-127:5 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 49:13-54:24 | 602; F; CS | 39:15-41:4; 126:7-127:5 | 126:7-127:5 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 55:13-57:4 | | 57:5-8; 126:7-127:5 | 126:7-127:5 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 57:16-20 | | 126:7-127:5 | 39:19-41:4 – DIFF 126:7-127:5 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 58:9-60:21 | 602; F; CS | 60:22-61:2; 126:7-127:5 | 126:7-127:5 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 61:3-61:8 | IA | 61:9-10 (completeness); 60:22-61:2 | |
| 61:19-66:9 | 602; F; CS | 126:7-127:5 | 126:7-127:5 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 68:8-20 | V | | |
| 68:21-71:14 | IA; 602 | 71:15-16 (completeness) | |
| 72:3-19 | 602; F; CS | | |
| 74:5-76:9 | F; CS | | |
| 77:13-79:19 | | 126:7-127:5 | 126:7-127:5 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |

## EXHIBIT 6

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 79:20-80:14 | | 80:18-81:3 | |
| 81:24-83:15 | | 84:13-18 | |
| 84:19-86:4 | 402 | | |
| 87:12-89:5 | 106; 602 | 89:6-89:9 (completeness); 89:15-21; ; 128:22-130:14; 130:19-133:11 | 128:22-130:14 – DIFF; 402; 403; 801; 802 130:19-133:11 – DIFF; 402; 403; 801; 802 |
| 90:4-10 | | | |
| 91:5-92:22 | 106 | 92:23-24 (completeness); 126:7-127:5 | 126:7-127:5 – DIFF; 402; 403, 611, 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| 95:15-96:8 | | 96:9-14; 96:19-22 | |
| 96:23-99:15 | 602; 801/802 | 100:2-15; 136:3-139:21 | 136:3-139:21 – DIFF |
| 107:14-110:12 | | | |
| 110:18-112:19 | | | |
| 115:15-116:4 | IA | 116:5-7 (completeness) | |
| 123:21-124:7 | | | |

## Jeffrey Clark – (30(b)(6) of HyperBranch) – March 25, 2016

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 12:11-14 | | | |
| 13:13-14:12 | 402, 403, 611, IMP, F | | |
| 26:4-8 | | | |
| 34:18-20 | | | |
| 35:11-23 | F, E | | |
| 37:13-22 | V, F, E | | |
| 38:25-39:11 | V, F, E | | |
| 42:1-13 | F, E, IA, 402, 403 | | |
| 45:1-2 | | | |
| 51:18-52:7 | V, F, E, IA | | |
| 84:17-85:1 | F, V, E, CS, 602, 402, 403 | 83:18-84:16 | |
| 103:20-104:4 | V, F, E, 602, CS | | |
| 112:18-114:2 | CS, V, F, E | | |
| 116:18-23 | IA, 611 | 116:16-117:10; 117:11-24 | |
| 118:3-15 | 611 | | |
| 139:20-142:3 | V, F, E, 611 | | |

EXHIBIT 6

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 168:8-14 | F, E, 611, 602, CS, 801/802 | 168:15-169:5 | |
| 194:23-195:3 | F, E, V, 602, CS, 801/802 | 192:1-7; 193:14-23; 194:12-22; 195:4-14; 195:15-22 | |
| 195:23-196:23 | F, E, V, 602, CS, 801/802 | 192:1-7; 193:14-23; 194:12-22; 195:4-14; 195:15-22 | |
| 199:19-201:25 | F, E, 602, CS, 801/802, 611 | 192:1-7; 193:14-23; 194:12-22; 195:4-14; 195:15-22; 202:1-18 | |
| 203:15-204:9 | F, E, 602, CS, 801/802, 611, IA | 192:1-7; 193:14-23; 194:12-22; 195:4-14; 195:15-22; 202:1-18 | |
| 242:23-243:5 | F, E, 611 | 242:18-22 | 242:18-22 -- 402; 403; MIL; CON |

**Jeffrey Clark – (30(b)(6) of HyperBranch) – May 19, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:6-7:4 | 402, 403, 611, IMP, F | | |
| 8:24-9:21 | IA, E | | |
| 9:22-10:7 | | | |
| 11:21-12:12 | | | |
| 13:3-14:2 | 611, V | | |
| 15:12-15 | IA | | |
| 16:6-10 | | 16:11-17 | |
| 18:14-25 | V, F, E, 611 | | |
| 19:12-20:2 | V, F, E, 611 | | |
| 22:10-24 | F, E, 611 | | |
| 28:11-29:13 | IA | | |
| 34:12-35:23 | V, F, 402, 403 | | |
| 37:4-39:3 | F, 402, 403, BE, 1002 | | |
| 39:15-19 | F, 402, 403, BE, 1002 | | |
| 45:7-10 | | | |
| 48:4-19 | CS, F, E, 611 | | |
| 51:2-7 | | | |
| 54:14-25 | 402, 403 | | |
| 65:10-13 | 402, 403, V | | |
| 66:24-67:18 | 402, 403, V | | |
| 68:19-69:3 | 402, 403, V | 69:4-69:16 | |
| 71:6-72:6 | 602, CS | 72:7-9 | |

EXHIBIT 6

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 72:14-25 | | 73:16-75:5 | |
| 75:6-11 | V, 611, CS, 602 | | |
| 75:20-76:16 | V, 611, CS, 602 | 76:17-77:13 | |
| 77:17-78:16 | V, 611, CS, 602 | | |
| 78:20-79:20 | V, 611, CS, 602 | | |
| 90:12-21 | CS, F, V, 602, E | | |
| 90:22-91:3 | CS, F, E, 602 | | |

**Stuart Rogers – (Vice-President, HyperBranch) – March 25, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 14:7-16 | | | |
| 17:13-23 | | | |
| 19:4-9 | | 19:4-17 | |
| 19:22-25 | | 19:4-17; 20:2-7 | |
| 21:6-22:1 | | | |
| 22:3-25 | CS, 611 | 23:2-17 | |
| 23:23-24:6 | V | 23:18-22; 24:11-14; 24:24-25:7 | |
| 25:8-20 | E, F, 611, V | 24:11-24; 24:24-25:7; 25:8-10; 25:15-20 | |
| 26:21-24 | | | |
| 27:2-4 | IA, 402 | | |
| 28:14-29:6 | F, 402, 611 | 25:24-26:9; 29:7-15 | |
| 30:3-17 | V, 611 | | |
| 30:25-31:8 | F, V | | |
| 33:19-34:7 | IA | | |
| 35:9-17 | CS | | |
| 37:6-25 | V, F, E, CS, 611, 602 | 36:19-37:5 | |
| 38:10-25 | | | |
| 39:21-40:2 | | | |
| 41:2-6 | | | |
| 41:14-25 | 611 | | |
| 42:16-43:5 | V, E, 611 | | |
| 43:19-44:5 | | | |
| 44:18-24 | | | |
| 50:9-23 | V, F | 49:11-50:8; 50:24-51:6 | |
| 51:12-20 | CS, 611, E | 49:11-50:8; 50:9-23; 50:24-51:6; 51:7-11 | |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 77:13-78:5 | V, F, 611, E | 76:8-77:12; 86:21-87:9; 87:18-87:25 | |
| 90:17-91:5 | V, F, 611, E, CS | 91:9-92:2 | |
| 102:20-25 | IA, E, F, 611 | 100:11-101:2; 102:20-103:7 | |
| 123:9-124:1 | V, F, 611, CT, AA | | |
| 186:13-16 | V, F, CS, 602, CT, E, IA, 402, AA | 185:18-188:3 | |
| 186:3-188:1 | V, F, CS, 602, CT, E, IA, 402, AA | 185:18-188:3 | |

**Michael A. Carnahan – (30(b)(6) of HyperBranch) – March 22, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 10:13-17 | | | |
| 12:20-24 | 402, 403, 602 | | |
| 18:19-25 | | | |
| 40:2-8 | | 90:3-16; 114:20-115:1; 121:17-20 | 114:20-115:1 – DIFF, NR, 611; 701 121:17-20 – DIFF |
| 51:18-25 | | 114:20-115:1 | 114:20-115:1 – DIFF; NR; 611; 701 |
| 62:25-63:18 | IA; 602; CS | 63:19-20 (completeness); 81:24-82:14 | |
| 63:16-64:5 | CS | 68:3-19; 81:24-82:14 | 68:3-19 – NR; 611; 701 81:24-82:14 – DIFF |
| 64:6-24 | | 64:25-65:3; 68:3-19 | 68:3-19 – NR; 611; 701 |
| 82:22-83:19 | | 81:24-82:14; 83:25-84:21 | |
| 84:22-85:6 | | 81:24-82:14 | |
| 104:4-18 | IA | 104:19-20 (completeness) | 104:19-20 – S; Designation is complete question and answer |
| 104:21-105:11 | | | |
| 107:20-108:8 | IA | 107:16-19 (completeness); 108:9-11 | |
| 110:11-19 | | 108:9-11; 109:25-110:10 | 108:9-11 – DIFF 109:25-110:10 – DIFF; NR; 402 |
| 118:6-23 | | 119:25-120:3 | |

23

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 121:7-16 | | 121:17-20 | |
| 122:24-123:7 | IA | 122:21-23 (completeness); 121:17-20 | |
| 127:25-128:21 | | 121:17-20 | 121:7-20 -- DIFF |
| 140:11-141:18 | 602 | | |
| 142:14-143:6 | IA; CS | 143:7-8 (completeness) | 143:8 – New question |
| 142:3-6 | IA | 143:7 (completeness) | |
| 152:11-16 | | 152:17-153:11; 188:19-189:3; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 152:17-153:11 – DIFF<br><br>188:19-189:3 – DIFF; 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>202:6-18 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF<br><br>226:5-10 – DIFF; IN<br><br>232:20-233:4 – DIFF |
| 155:24-156:14 | | 172:18-173:3; 188:19-189:3; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 188:19-189:3 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>202:6-18 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 226:5-10 – DIFF; IN<br><br>232:20-233:4 – DIFF |
| 160:7-14 | | 172:18-173:3; 188:19-189:3; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 188:19-189:3 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>202:6-18 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF<br><br>226:5-10 – DIFF; IN<br><br>232:20-233:4 – DIFF |
| 168:23-169:13 | IA | 169:14 (completeness); 169:25-170:4; 170:8-12; 170:13-25; 173:8-14; 188:19-189:3; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 188:19-189:3 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>202:6-18 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF<br><br>226:5-10 – DIFF; IN<br><br>232:20-233:4 – DIFF |
| 184:21-185:13 | | 185:14-186:1; 188:19-189:3; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10 | 188:19-189:3 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 202:6-18 – DIFF; 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| | | | 209:11-210:2 – NR; 611; 402; 403; |
| | | | 214:16-25 – DIFF |
| | | | 226:5-10 – DIFF; IN |
| | | | 232:20-233:4 – DIFF |
| 186:14-18 | | 186:19-187:15; 188:19-189:3; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 188:19-189:3 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| | | | 202:6-18 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| | | | 209:11-210:2 – NR; 611; 402; 403; |
| | | | 214:16-25 – DIFF |
| | | | 226:5-10 – DIFF; IN |
| | | | 232:20-233:4 – DIFF |
| 187:16-188:3 | | 186:19-187:15; 188:19-189:3; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 188:19-189:3 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| | | | 202:6-18 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |
| | | | 209:11-210:2 – NR; 611; 402; 403; |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 214:16-25 – DIFF 226:5-10 – DIFF; IN 232:20-233:4 – DIFF |
| 200:2-8 | IA | 121:17-20; 199:22-200:1 (completeness); 200:9-11 (completeness); ; 200:12-16; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 202:12-16 -- MIS 202:6-18 – DIFF; 402; 403; 611; 701; MIL; CON (see DI 555, pp. 16 and n.11) 209:11-210:2 – NR; 611; 402; 403; 214:16-25 – MIS 226:5-10 – IN; MIS 232:20-233:4 – MIS |
| 200:8-11 | | 121:17-20; 200:12-16; 202:6-18; 2; 214:16-2509:11-210:2; 226:5-10; 232:20-233:4 | 202:12-16 -- MIS 202:6-18 – DIFF; 402; 403; 611; 701; MIL; CON (see DI 555, pp. 16 and n.11) 209:11-210:2 – NR; 611; 402; 403; 214:16-25 – MIS 226:5-10 – IN; MIS 232:20-233:4 – MIS |
| 200:17-201:6 | | 200:12-16; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 202:12-16 -- MIS 202:6-18 – DIFF; 402; 403; 611; 701; MIL; CON (see DI 555, pp. 16 and n.11) 209:11-210:2 – NR; 611; 402; 403; |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 214:16-25 – MIS<br><br>226:5-10 – IN; MIS<br><br>232:20-233:4 – MIS |
| 203:7-204:10 | | 200:12-16; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 202:12-16 – DIFF; MIS<br><br>202:6-18 – DIFF; 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF; MIS<br><br>226:5-10 – DIFF; IN; MIS<br><br>232:20-233:4 – DIFF; MIS |
| 204:17-205:19 | | 200:12-16; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 202:12-16 – DIFF; MIS<br><br>202:6-18 – DIFF; 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF; MIS<br><br>226:5-10 – DIFF; IN; MIS<br><br>232:20-233:4 – DIFF; MIS |
| 207:3-208:1 | | | |
| 213:19-214:5 | | 200:12-16; 202:6-18; 209:11-210:2; 214:16- | 202:12-16 – DIFF; MIS |

## EXHIBIT 6

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | 25; 226:5-10; 232:20-233:4 | 202:6-18 – DIFF; 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF; MIS<br><br>226:5-10 – DIFF; IN; MIS<br><br>232:20-233:4 – DIFF; MIS |
| 216:8-217:8 | | | |
| 218:3-24 | | 200:12-16; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 202:12-16 – DIFF; MIS<br><br>202:6-18 – DIFF; 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – DIFF;MIS<br><br>226:5-10 – DIFF; IN; MIS<br><br>232:20-233:4 – DIFF; MIS |
| 220:12-17 | 402 | | |
| 222:5-224:3 | | | |
| 226:22-227:15 | | 200:12-16; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:20-233:4 | 202:12-16 – MIS<br><br>202:6-18 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403; |

**EXHIBIT 6**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | | 214:16-25 – MIS<br><br>226:5-10 – IN; MIS<br><br>232:20-233:4 – MIS |
| 230:4-17 | | 200:12-16; 202:6-18; 209:11-210:2; 214:16-25; 226:5-10; 232:12-19; 232:20-233:4 | 202:12-16 – MIS<br><br>202:6-18 – 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11)<br><br>209:11-210:2 – NR; 611; 402; 403;<br><br>214:16-25 – MIS<br><br>226:5-10 – IN; MIS<br><br>232:20-233:4 – MIS |
| 251:14-17 | 701; LC | 251:18-24; 252:8-20; 253:25-254:5 | |
| 253:13-18 | 701; LC | 251:18-24; 252:8-20; 253:25-254:5 | |
| 256:14-257:4 | | | |
| 268:8-13 | 402 | | |

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>          Plaintiffs,<br><br>     v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>          Defendant. | C.A. No.  15-819-LPS-CJB |

**DEFENDANT HYPERBRANCH MEDICAL TECHNOLOGY, INC'S**
**CASE-IN-CHIEF DEPOSITION DESIGNATIONS**

Defendant HyperBranch Medical Technology, Inc. ("HyperBranch") provides the following case-in-chief deposition designations, which are based on the parties' pleadings, documentary and testimony evidence, and on HyperBranch's current understanding of Plaintiffs' claims and defenses and the Court's rulings to date.  Pursuant to Fed. R. Civ. P. 26(a)(3) and agreement of the parties, HyperBranch submits the attached statement of contested facts. HyperBranch reserve the right to revise, amend, supplement, or modify their case-in-chief deposition designations based upon any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments.[1]   HyperBranch further reserves the right to

---

[1] Plaintiffs similarly reserve the right to revise, amend, supplement, or modify their deposition counter designations based upon any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any revisions to the current designations by Defendant (including but not limited to any additions or eliminations of current designations) any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments.

1

supplement these designations to rebut or otherwise address deposition designations, exhibits, or other facts identified by Plaintiffs.  All irrelevant and redundant material, including objections and colloquy of counsel will be eliminated from the deposition designations below when the designations are read to or viewed by the jury.  HyperBranch further reserves the right to designate any portion of the deposition transcripts of Plaintiffs' 30(b)(6) representatives, officers, or employees should they fail to be in attendance at trial in this matter.  HyperBranch further reserves the right to later provide designations from any deposition for use in its rebuttal case and to use any portion of any deposition transcript for purposes of impeachment.

**Steven Bennett – January 15, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 101:10-102:10 | TEX51 | | |
| 114:17-115:11 | TEX55 | | |
| 116:1-116:11 | TEX56 | | |
| 122:12-122:21 | TEX56 | | |
| 132:20-134:13 | TEX58 | | |
| 134:14-135:6 | TEX58 | | |
| 135:7-135:21 | TEX58 | | |
| 137:17-137:20 | TEX58 | 137:21-138:5 | |
| 138:8-138:17 | TEX58 | | |
| 139:1-139:9 | TEX59 | 140:10-140:19 | |
| 140:20-141:1 | TEX59 | | |
| 141:7-141:9 | TEX59 | | |
| 144:22-145:15 | TEX 50, 55, 60 | | |
| 146:11-147:11 | | 147:12-147:15; 147:15 | |
| 152:22-153:12 | TEX58 | 153:15-154:5 | |
| 154:17-155:18 | TEX58 | 156:6-156:9 | |
| 156:18-158:15 | TEX60 | | |
| 159:2-159:16 | TEX61 | | |
| 161:22-162:13 | TEX61 | 161:7-161:15; 162:14-163:17; 166:12-166:20; 166:22; 171:18-171:20; 171:22-172:8 | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 172:9-172:20 | TEX60 | | |
| 173:7-174:15 | TEX60; IM (Lawyer cut witness off and did not let him complete his answer); 403 | 174:16-174:17 | |
| 184:21-185:4 | | | |
| 185:13-185:16 | | 185:17-186:3 | |
| 186:20-187:10 | | 187:15-188:9 | |
| 191:6-191:19 | TEX64 | | |
| 192:19-193:7 | TEX64 | | |
| 193:16-193:20 | TEX64 | 193:21-194:13 | |
| 196:6-196:12 | | 196:13-197:2 | |
| 197:4-197:7 | | 197:12-197:15 | |
| 198:19-198:22 | | | |
| 198:19-199:15 | | 199:16-199:19; 200:2-200:5; 200:7-200:15; 203:7-203:9; 203:11-203:13; 205:5-205:8; 205:10-205:15; 227:9-227:13; 227:15-227:18 231:21-232:16 | |
| 208:7-208:19 | | | |
| 209:2-209:4 | | | |
| 222:18-223:4 | | | |
| 224:20-225:15 | TEX67 | 226:13-226:18; 227:9-227:13; 227:15-227:18; 227:22-228:2; 228:5-228:10 | |
| 241:11-242:8 | | | |
| 45:17-46:12 | TEX51 | | |
| 49:1-50:20 | TEX51 | 243:8-243:12; 243:22-244:6 | |
| 51:16-51:19 | | 51:20-52:4 | |
| 73:11-73:14 | TEX51 | | |
| 9:17-9:20 | | | |
| 99:3-100:3 | TEX51 | | |

**Jason Fortier – February 11, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 98:15-98:19 | | | |
| 8:11-8:18 | | | |
| 40:3-40:7 | 402; 403; V; C; CS | | |
| 40:10-41:4 | 402; 403; V; C; CS | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 39:17-39:21 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 38:14-39:11 | 402; 403 | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 33:3-33:4 | 402; 403; V; C; AA | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 32:2-32:5 | 402; 403; V; C; LC | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 32:19-32:22 | 402; 403; V; C; AA | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 32:11-32:15 | 402; 403; V; C :13-15 – also AA | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 31:3-31:8 | 402; 403; V; C | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 31:18-32:1 | :18-19 – 402; 403; V; C | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 31:13-31:16 | 402; 403; V; C | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 30:4-30:4 | 402; 403; LC | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 30:14-30:17 | 402; 403; V; C | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 29:9-29:14 | 402; 403; LC | | |
| 29:17-29:21 | 402; 403; LC | | |
| 28:21-29:3 | 402; 403; LC | | |
| 26:14-26:16 | 402; 403; LO | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 26:1-26:12 | 402; 403 26:1-6 and 11-12 – also LO | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 25:5-25:15 | 402; 403 25:14-15 – also LO | 187:12-188:20; 193:5-199:16; 204:9-205:6 | |
| 25:17-25:22 | 402; 403 25:17 – also LO | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 24:22-25:2 | 402; 403 | 187:12-188:20; 189:20-190:180 193:5-199:16; 204:9-205:6 | |
| 21:20-23:8 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 21:11-21:17 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 20:18-20:20 | 402; 403; S; AFN | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 20:12-20:16 | 402; 403; S; AFN | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 20:1-20:8 | 402; 403 | 18:5-19:2 187:12-188:20; | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | 189:20-190:10 193:11-194:11 | |
| 189:20-190:2 | 402; 403 | 190:3-10; 190:16-18; 193:5-7 | |
| 18:2-18:16 | | 193:11-194:11 | |
| 167:6-167:12 | TEX238 | | |
| 166:21-167:3 | TEX237; 611; AA | 165:22-167:3 | |
| 166:15-166:18 | TEX237; 611; AA | 165:22-167:3 | |
| 161:20-162:9 | TEX237; S | | |
| 159:22-160:6 | TEX237 | | |
| 157:21-158:4 | TEX237 | | |
| 153:20-155:3 | TEX235 | | |
| 140:4-140:18 | 402; 403; V | 137:2-138:16 | |
| 140:1-140:2 | 402; 403; V | 137:2-138:16 | |
| 128:9-129:14 | | 129:15-130:15 | |
| 122:12-122:16 | TEX231 | | |
| 119:13-120:4 | TEX230 | | |
| 47:9-47:17 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 54:3-54:12 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 54:22-55:6 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 56:3-56:8 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 60:15-61:3 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 75:5-75:10 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 76:2-76:13 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | 204:9-205:6 | |
| 78:14-79:1 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 82:2-82:6 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 83:3-83:7 | 402; 403; 801; 802 | 83:8-17 | |
| 90:13-90:19 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 91:1-91:3 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 96:1-96:13 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 99:18-100:8 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 101:1-101:8 | 402; 403; S; LC | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 103:10-103:18 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 105:19-106:11 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 107:20-108:16 | 402; 403 | 108:21-109:9; 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 109:12-109:21 | 402; 403 | 187:12-188:20; | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 117:16-118:17 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 123:18-124:10 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 134:4-134:12 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 135:1-135:7 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 135:11-136:2 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 138:17-139:2 | 402; 403 | | |
| 144:11-145:6 | 402; 403 | 145:7-14; 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 146:11-146:22 | 402; 403 | 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 152:3-152:16 | 402; 403 | 152:17-153:3; 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 155:6-155:16 | 402; 403 | 156:15-157:12 187:12-188:20; 189:20-190:18 193:5-199:16; 204:9-205:6 | |
| 158:5-158:10 | 402; 403 | 187:12-188:20; | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| | | 189:20-190:18 193:5-199:16; 204:9-205:6 | |

**Dr. John Tew, Jr. – March 21, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 14:9-14:17 | | 13:22-14:8 | |
| 27:7-27:18 | 402; 403, 701, MIL; CON (see DI 555, pp. 16 and n.11) | 26:2-27:6; 27:24-29:16 | |
| 6:7-6:10 | | | |
| 15:6-15:18 | | 17:6-18:3 | |
| 42:11-42:22 | | 39:16-42:23; 42:23-45:17 | |
| 33:4-33:8 | | 30:8-33:4 | |
| 25:15-25:25 | 402; 403, 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 34:19-34:20 | | | |
| 34:22-35:5 | | | |
| 39:16-40:20 | | | |
| 62:16-62:20 | 701 | 62:21-63:5; 68:14-69-12 | |

**Dr. Alexander West – March 24, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 16:12-16:16 | | 16:21-23; 17:17-20 | |
| 14:10-14:17 | | 14:2-14:9 | |
| 26:4-26:23 | 402; 403, 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 17:25-18:14 | | 22:19-23:9; 23:21-24:14 | |
| 15:24-16:3 | | 16:8-11 | |
| 15:14-15:19 | | | |
| 4:23-5:1 | | | |
| 15:2-15:13 | | | |
| 34:7-34:13 | | | |
| 26:24-27:12 | | | |
| 32:21-33:5 | | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 33:16-33:18 | | | |
| 36:19-36:25 | | | |
| 37:18-38:10 | | | |
| 44:24-45:12 | | | |

**Carl Hardwidge, M.D. – April 18, 2016**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 30:11-30:13 | | | |
| 14:11-15:5 | | 15:6-16 | |
| 10:10-11:4 | | | |
| 22:9-22:16 | | 19:22-23:18 | |
| 12:9-12:12 | | | |
| 6:8-6:10 | | | |
| 21:7-21:19 | | 19:22-23:18 | |
| 18:6-18:11 | 701; F | 18:6-21 | |
| 29:4-29:19 | | | |
| 28:3-28:13 | | | |
| 23:19-24:9 | | 19:22-23:18 | |
| 19:17-19:21 | | 19:22-23:18 | |
| 16:16-18:5 | | 16:9-14 | |
| 13:22-14:10 | | | |
| 11:16-12:1 | | | |
| 7:20-8:6 | | | |
| 19:1-19:4 | | | |
| 27:21-28:2 | | | |
| 29:21-30:7 | | | |
| 30:14-31:14 | 402; 403, 611, 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 31:21-32:2 | | | |

**Madelyn Uy – (30(b)(6) Severn) – April 11, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:6-6:10 | | 7:7-17; 9:6-11:24; 22:24-24:4; 33:19-22 | |
| 59:5-59:17 | TEX103; 602; 801 and 802; F | 7:7-17; 9:6-11:24; 22:24-24:4; 33:19-22 | |
| 59:20-59:20 | TEX103; 602; 801 and 802; F | | |

10

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
|  |  |  |  |
| 58:25-59:2 | TEX103; 602; 801 and 802; F |  |  |
| 55:17-56:11 | TEX103; 602; 801 and 802; F | 57:15-58:6 |  |
| 53:16-53:17 | TEX103; 602; 801 and 802; F |  |  |
| 53:10-53:13 | TEX103; 602; 801 and 802; F |  |  |
| 50:8-50:10 |  | 50:9-20 |  |
| 50:23-52:7 | TEX103; 602; 801 and 802; F |  |  |
| 49:10-49:12 |  |  |  |
| 48:9-48:11 |  |  |  |
| 41:22-42:8 |  |  |  |

**Kost Elisevich – (30(b)(6) Spectrum Health) – April 25, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 70:14-71:14 |  |  |  |
| 7:9-7:12 |  |  |  |
| 67:3-67:8 |  | 67:9-12 |  |
| 65:17-66:8 | 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |  |  |
| 64:23-65:7 | 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) |  |  |
| 52:23-53:7 |  |  |  |
| 50:25-52:10 | 602; 701; CS; F; 801 | 38:6-39:20; 42:19-22; 76:11-77:12 |  |
| 24:14-24:20 |  | 25:12-27:15; 27:23-28:8; 30:8-13; 31:4-33:13 |  |
| 10:14-12:2 |  |  |  |

**Brett Pfeiffle – (Spectrum Health) – April 25, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 12:12-12:24 | | | |
| 11:10-11:16 | | | |
| 8:9-8:15 | | | |
| 23:8-23:11 | | | |
| 6:7-6:11 | | | |
| 13:6-13:13 | | | |
| 30:5-30:20 | | 28:7-25; 29:5-7; 29:21-30:3 | |
| 23:23-24:2 | | | |
| 13:21-13:25 | | | |
| 12:25-13:5 | | | |
| 9:25-10:7 | | | |
| 9:15-9:20 | | | |
| 8:24-9:14 | | | |
| 7:3-7:20 | | | |
| 14:2-14:4 | | | |

**Africa Carbone – (Spectrum Health) – April 26, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 30:12-31:2 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 9:11-9:13 | | | |
| 18:25-19:2 | | | |
| 18:18-18:21 | | | |
| 9:16-10:2 | | 10:3-9 | |
| 7:22-7:25 | | | |
| 6:16-6:19 | | | |

**Terry Maxwell – (30(b)(6) St. Joseph's Hospital) – April 26, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 8:5-8:12 | | | |
| 6:16-6:18 | | | |
| 50:3-50:17 | | | |
| 46:4-46:10 | | | |
| 46:18-48:4 | | 48:13-49:11 | |
| 45:9-46:3 | | | |
| 42:10-43:2 | | | |
| 41:20-41:25 | IN | | |
| 29:16-30:14 | | | |

**Hoi Sang U – (MD at UCSD) – May 1, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 8:15-8:18 | | | |
| 8:10-8:11 | | | |
| 7:11-7:15 | | | |
| 57:3-57:8 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 57:22-58:7 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 57:14-57:17 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 57:11-57:12 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 56:5-56:6 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 56:18-57:1 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 55:25-56:2 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 55:16-55:16 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 55:12-55:14 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 52:7-52:9 | | | |
| 52:12-52:16 | | | |
| 50:25-51:3 | | | |
| 35:8-35:22 | | | |
| 35:23-36:2 | 402; 403; S | 36:4-37:1 | |
| 29:12-30:3 | | 31:22-32:19; 33:3-34:3 | |
| 26:25-27:8 | | 27:9-14; 27:23-29:11 | |

**Kerry Potter – (30(b)(6) of Southwest Surgical) – May 2, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 65:2-65:13 | | 65:14-23 | |
| 65:24-66:9 | | 66:10-68-20 | |
| 62:20-63:4 | | 63:4-64:23 | |
| 61:19-62:7 | | | |
| 6:15-6:17 | | | |
| 45:25-47:23 | | | |
| 45:19-45:24 | | | |
| 37:19-37:25 | | | |
| 29:4-29:24 | | | |
| 24:7-24:12 | | | |
| 24:20-25:3 | | | |
| 24:13-24:19 | | | |
| 139:22-140:14 | 402; 403; 801 and 802 | | |
| 135:7-135:13 | 402; 403; 801 and 802 | | |
| 134:4-134:12 | 402; 403; 801 and 802 | | |
| 134:19-135:4 | 402; 403; 801 and 802 | | |
| 134:13-134:16 | 402; 403; 801 and 802 | | |
| 133:22-133:25 | 402; 403; 801 and 802 | | |
| 133:18-133:21 | 402; 403; 801 and 802 | | |
| 133:12-133:15 | 402; 403; 801 and 802 | | |
| 13:14-13:20 | | | |
| 129:4-129:21 | 402; 403; 801 and 802 | | |
| 129:22-130:14 | 402; 403; 801 and 802 | | |
| 128:22-128:25 | 402; 403 | | |
| 127:6-127:11 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 127:5-127:5 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 127:14-127:20 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 126:7-126:14 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 126:18-127:5 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 126:18-127:2 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 12:10-12:21 | | | |

14

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 112:24-113:2 | 402; 403; 801; 802 | | |

**John Nail – (30(b)(6) Armamentarium) – May 10, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 48:9-48:14 | | 48:15-22 | |
| 42:5-42:7 | | | |
| 42:13-42:18 | | | |
| 41:2-41:17 | | | |
| 41:20-41:24 | | | |
| 152:4-153:3 | 402; 403; 801 and 802 | 151:8-152:3; 144:4-22; 153:4-154:24 | |
| 15:19-16:5 | | | |
| 142:16-143:5 | 402; 403; 801 and 802 | 144:25-145:5; 145:9-16; 147:5-149:21; 150:10-15; 151:8-152:3 | |
| 141:19-142:15 | 402; 403; 801 and 802 | 144:25-145:5; 145:9-16; 147:5-149:21; 150:10-15 | |
| 139:4-139:9 | TEX176; 402; 403; 801 and 802 | 144:25-145:5; 145:9-16; 147:5-149:21; 150:10-15 | |
| 139:12-139:21 | TEX176; 402; 403; 801 and 802 | 144:25-145:5; 145:9-16; 147:5-149:21; 150:10-15 | |
| 136:1-136:2 | TEX175; 402; 403; 801 and 802 | 144:25-145:5; 145:9-16; 147:5-149:21; 150:10-15 | |
| 135:7-135:10 | TEX175; 402; 403; 801 and 802 | 144:25-145:5; 145:9-16; 147:5-149:21; 150:10-15 | |
| 135:13-135:25 | TEX175; 402; 403; 801 and 802 | 144:25-145:5; 145:9-16; 147:5-149:21; 150:10-15 | |
| 13:15-13:19 | | | |
| 124:7-124:18 | 402; 403; CS; F | | |

15

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 124:21-124:23 | 402; 403; CS; F | | |
| 123:23-124:4 | 402; 403; CS; F | | |
| 123:16-123:20 | 402; 403; CS; F | | |
| 122:5-122:13 | 402; 403; 801 and 802 | | |
| 122:22-123:15 | 402; 403; 801 and 802; CS | | |
| 122:14-122:20 | 402; 403; 801 and 802 | | |
| 121:22-122:2 | 402; 403; 801 and 802 | | |
| 121:21-121:21 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 121:11-121:18 | 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 120:25-121:8 | 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 118:17-119:5 | 402; 403; 801 and 802 | | |
| 118:11-118:14 | 402; 403; 801 and 802 | | |
| 115:7-117:5 | (Objections to 115:22-117:5) 402; 403; 801 and 802 | | |
| 109:2-109:12 | | | |
| 108:5-108:9 | | | |
| 106:9-106:13 | | | |
| 106:24-107:19 | (Objections to 107:7-19) 402; 403; 801 and 802 | 107:21-108:4 | |
| 106:16-106:16 | (Objections to 107:7-19) 402; 403; 801 and 802 | | |

**Dr. Jay Howington – May 16, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 22:12-22:15 | 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 21:9-21:12 | 402; 403; 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 19:8-20:5 | | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 25:3-25:3 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 23:16-24:21 | | 22:19-23:15 | |
| 22:18-22:18 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 21:24-22:2 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 21:14-21:21 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 5:19-7:23 | | | |
| 4:23-4:25 | | | |
| 17:1-18:23 | | | |
| 16:1-16:19 | | | |
| 24:22-24:25 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 25:13-25:16 | | | |
| 26:24-27:17 | 402; 403 | 27:18-28:10 | |
| 30:22-31:17 | 402; 403 | | |
| 31:24-32:21 | | 33:10-16; 46:17-47:22 | |
| 50:24-51:7 | | | |
| 51:22-52:1 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | 50:6-16; 50:24-51:18; 53:13-55:4 | |

**Peter Edelman – May 23, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 90:22-91:8 | | | |
| 86:8-86:8 | | | |
| 86:2-86:5 | | | |
| 85:25-85:25 | | | |
| 85:18-85:22 | | | |
| 84:24-84:24 | | | |
| 84:19-84:21 | | | |
| 49:21-50:3 | 402; 403 | | |
| 49:15-49:18 | 402; 403 | | |
| 47:10-48:8 | 402; 403 | | |
| 214:20-215:1 | | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 213:10-213:25 | | 210:5-213:25 | |
| 133:4-134:1 | | | |
| 113:25-114:6 | | | |
| 113:17-113:22 | | | |
| 109:4-109:10 | | | |
| 109:2-109:2 | | | |
| 107:25-108:24 | | | |
| 107:18-107:22 | | | |
| 105:2-105:8 | | | |
| 104:4-104:4 | | | |
| 104:21-104:23 | | | |
| 103:21-104:1 | | | |
| 103:15-103:18 | | | |
| 102:14-102:20 | | | |
| 102:1-102:13 | | | |
| 101:18-101:19 | | | |
| 101:15-101:16 | | | |
| 101:11-101:12 | | | |
| 100:8-100:10 | | | |
| 100:13-100:21 | | | |

**Curtis Herbert – May 25, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 6:11-6:14 | | | |
| 44:2-44:8 | 402; 403 | | |
| 40:15-41:1 | TEX307; 402; 403 | | |
| 39:11-40:10 | TEX307; 402; 403 | | |
| 35:16-36:3 | TEX307; 402; 403 | 36:4-9 | |
| 31:10-34:9 | TEX306; 402; 403 | | |
| 30:24-31:3 | TEX305; 402; 403 | | |
| 30:1-30:17 | TEX305; 402; 403 | | |
| 29:3-29:13 | TEX305; 402;403 | | |
| 28:14-28:21 | TEX305; 402; 403 | 28:3-7 | |

**William Delaney – June 20, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 22:21-23:10 | 402; 403 | | |
| 16:15-16:24 | | | |
| 15:20-16:5 | | | |
| 7:18-7:20 | | | |

18

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 11:1-11:9 | | | |
| 80:9-81:16 | | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 57:9-57:21 | TEX400 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 34:2-34:23 | TEX393 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 33:4-33:22 | TEX393 | 108:21-109:3; 109:12-23; 110:15-22;111:19-112:7 | |
| 26:21-27:8 | | | |
| 30:24-31:10 | TEX393 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 34:24-35:16 | IM (complete question and answer not designated); 403 | 35:17-36:7; 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 54:14-56:3 | TEX399 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 76:23-77:7 | | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 81:20-84:10 | | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 84:18-85:7 | | 83:13-84:7; 108:21-109:3; 109:12-23; 111:19-112:7 | |
| 37:8-37:22 | TEX067 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 41:13-41:21 | TEX063 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 43:22-44:6 | TEX061 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 47:14-48:4 | 402, 403 | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 48:6-48:21 | TEX049 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 50:5-50:11 | TEX062 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 52:1-52:16 | 402, 403 | | |
| 52:17-53:19 | 402; 403; TEX062 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 60:13-60:24 | TEX045 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 62:3-62:19 | 402; 403; TEX045 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 62:21-63:3 | TEX073 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 63:9-65:3 | 402; 403; TEX073 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 65:8-65:21 | TEX044 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 66:17-66:25 | TEX074 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 71:21-72:5 | TEX078 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 87:6-87:19 | TEX076 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 89:14-90:11 | 402; 403; TEX076 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 92:5-92:19 | 402; 403; TEX076 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 93:20-94:9 | 402; 403; TEX076 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 94:21-95:5 | 402; 403; TEX076 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 95:7-95:19 | TEX070 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 96:24-97:7 | TEX071 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 98:17-98:22 | 402; 403; S; TEX071 | 98:24-100:18; 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 98:24-100:18 | 402; 403; S; TEX071 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |
| 100:20-101:5 | TEX077 | 108:21-109:3; 109:12-23; 110:15-22; 111:19-112:7 | |

**Christine L'Heureux  (30(b)(6) Designee of St. Francis Hospital) – May 30, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 5:8-5:11 | | | |
| 8:7-8:13 | | | |
| 21:6-21:13 | | 21:14-16 | |
| 15:19-16:6 | | 19:17-21:8; 22:6-18 | |
| 14:20-15:3 | TEX3; 402; 403; 802; 803 | 19:17-20:24; 22:6-18 | |
| 6:19-6:24 | | | |
| 8:3-8:4 | | | |

**Sasha Bartlett – (30(b)(6) Severn) – June 14, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 12:7-12:13 | | | |
| 9:6-9:22 | | | |
| 7:4-7:7 | | | |
| 21:22-22:4 | | | |
| 8:17-9:5 | | | |
| 13:2-13:4 | | | |
| 42:5-42:15 | 701; 802; 803 | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 40:9-40:16 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 24:22-24:25 | | | |
| 31:19-32:21 | | 31:5-13 | |
| 32:22-33:6 | | | |
| 39:21-40:4 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 40:20-40:25 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE | | |

**Paul Grundy – (30(b)(6) University Hospital, UK) – June 15, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 18:12-18:22 | | | |
| 14:8-14:24 | | | |
| 29:4-29:9 | | | |
| 21:4-21:12 | | | |
| 20:20-20:25 | | 21:14-23:25 | |
| 16:21-17:11 | | 17:14-17:25 | |
| 15:16-16:3 | | 16:6-19 | |
| 8:18-8:22 | | | |
| 7:22-8:2 | | | |
| 6:21-6:23 | | | |
| 52:3-52:11 | S; IM (doesn't designate entire question /answer); 403 | | |
| 47:12-47:15 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | 47:20-48:5 | |
| 42:10-42:18 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 42:5-42:7 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 41:12-41:12 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | 41:15-42:3 | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 41:6-41:9 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | 41:15-42:3 | |
| 40:5-40:17 | | | |
| 37:7-37:12 | 402; 611 | | |
| 37:2-37:4 | 402; 611 | | |
| 33:8-33:14 | | | |
| 42:21-42:21 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 47:18-47:19 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | 47:20-48:5 | |
| 49:20-49:25 | IM (doesn't designated entire question/answer) | | |

**George Strang – (30(b)(6) Severn) – June 12, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 7:11-7:13 | | | |
| 13:10-13:23 | | | |
| 31:7-31:24 | | | |
| 10:5-10:12 | | | |
| 7:5-7:7 | | | |
| 14:4-14:10 | | | |
| 9:4-9:10 | | | |
| 20:17-22:18 | | | |
| 12:23-13:9 | | | |
| 9:24-10:4 | | | |
| 9:15-9:23 | | | |
| 7:20-7:24 | | | |
| 6:2-6:5 | | | |
| 56:2-56:8 | S, 701, 802 | | |
| 55:8-55:20 | S; 701; 802 | | |
| 54:8-54:10 | 402; 403; 701; 802 | | |
| 53:12-53:15 | 402; 403; 802 | | |
| 51:7-51:11 | C | | |
| 40:12-40:16 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE | 29:22-30:20; 31:7-32:7; 36:9-37:3 | |
| 36:12-37:3 | | | |
| 34:12-34:21 | | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 28:17-29:6 | | | |
| 33:19-33:24 | | | |
| 34:22-35:22 | | | |
| 39:13-39:19 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 39:24-40:7 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 40:19-40:21 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11); BE | 29:22-30:20; 31:7-32:7; 36:9-37:3 | |
| 40:23-42:12 | | | |
| 50:25-51:4 | C | | |
| 51:14-51:17 | | | |
| 51:18-52:3 | | | |
| 53:18-54:6 | 402;403;802 | | |
| 54:13-54:24 | 402; 402; 701; 802 | | |
| 55:21-55:23 | S; 802 | | |

**Emad Shenouda – (MD at University Hospital, UK) – June 21, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 30:12-30:16 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | 31:16-32:7 | |
| 24:12-24:18 | | | |
| 29:9-29:12 | 402; 403; 611; MIL; 701; BE | 31:16-27 | |
| 25:9-25:11 | C; IN (additional question asked at 25:3-4) | 25:21-23; 33:23-34:3 | |
| 6:8-6:10 | | | |
| 22:7-22:14 | | 23:15-21 | |
| 18:7-18:19 | | | |
| 25:5-25:6 | C; IN(additional question asked at 25:3-4) | 25:21-23; 33:23-34:3 | |
| 22:3-22:4 | | | |
| 7:18-7:21 | | | |
| 25:24-26:4 | | | |

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 26:18-26:23 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 26:25-27:9 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | | |
| 30:19-30:25 | 402; 403, 611; 701, MIL; CON (see DI 555, pp. 16 and n.11) | 31:16-32:7 | |

**Lawrence Dunn – June 23, 2017**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 7:24-8:23 | | | |
| 7:16-7:22 | | | |
| 24:18-24:22 | | | |
| 24:11-24:16 | | | |
| 23:4-23:6 | | | |
| 21:10-21:18 | | 21:19-22:5 | |
| 20:3-20:9 | | | |
| 20:14-20:18 | | | |
| 20:11-20:13 | | | |
| 18:22-19:2 | | | |
| 18:2-18:7 | | | |
| 18:11-18:17 | | | |
| 17:6-17:25 | | | |
| 16:25-17:5 | | | |
| 16:11-16:18 | | | |
| 15:3-15:10 | | | |
| 15:24-16:3 | | | |
| 15:11-15:22 | | | |
| 14:9-14:14 | | | |
| 14:23-15:2 | | | |
| 14:2-14:7 | | | |
| 14:17-14:21 | | | |
| 13:5-13:17 | | | |
| 13:19-13:24 | | | |
| 12:3-12:8 | | | |
| 12:11-12:14 | | | |
| 11:17-11:18 | | | |
| 10:8-10:18 | | | |
| 10:19-10:23 | | | |

**Chandrashekar Pathak – (Inventor) – February 7, 2018**

| Designation | Objection | Counter Designation | Objection to Counter Designation |
|---|---|---|---|
| 5:1-2 | | | |
| 11:17-21 | | | |
| 12:16-13:6 | | | |
| 15:19-22 | | 15:23-16:11 | |
| 17:8-18 | | 15:23-16:11 | |
| 19:8-22 | | 19:23-20:6 | |

# EXHIBITS 8 AND 9

## REDACTED IN THEIR ENTIRETY

# EXHIBIT 10

EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>HYPERBRANCH MEDICAL TECHNOLOGY, INC.,<br><br>        Defendant. | C.A. No.  15-819-LPS-CJB |

## PLAINTIFFS' ITEMIZATION OF DAMAGES

The following plaintiffs' itemization of damages is based on the parties' pleadings, documentary and testimony evidence, and on Plaintiffs' current understanding of HyperBranch's claims and defenses and the Court's rulings to date.  Pursuant to Fed. R. Civ. P. 26(a)(3) and agreement of the parties, Plaintiffs submit the attached itemization of damages statement of contested facts.   Plaintiffs reserve the right to revise, amend, supplement, or modify their itemization of damages based upon any pretrial rulings by the Court and/or to address any additional issues, arguments, evidence or other developments in the case, including edits to the draft pretrial order, any meet and confers or other negotiations between the parties, pending and anticipated motions, and similar developments.

## I.    ITEMIZATION OF DAMAGES

Subject to the above, Plaintiffs hereby provide their itemization of damages based on its own information and information provided by HyperBranch through the end of March 2018. Plaintiffs further reserve the right to provide an account for their itemization of damages currently identified as TBD as appropriate as this matter proceeds.

1

**EXHIBIT 10**



<hr />

[1] This calculation is through April 2017.  Plaintiffs reserve the right to update this calculation and the calculation projected through May 28, 2018 based on the new sales information provided by the parties including that provided by HyperBranch on April 6, 2018 (HBMT0662865-868) to account for any final Court decision regarding Plaintiffs' claims of lost profits.

[2] Plaintiffs reserve the right to supplement this calculation based on the update the parties' updated sales information based on any further rulings by Judge Burke or Judge Stark.

# EXHIBIT 11(a)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

    v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

        Defendant.

C.A. No.  15-819-LPS-CJB

HIGHLY CONFIDENTIAL—
OUTSIDE COUNSEL EYES ONLY

## PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE UNDISCLOSED
## NON-INFRINGEMENT AND INVALIDITY DEFENSES

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

March 5, 2018

Plaintiffs move *in limine* for an Order to preclude HyperBranch from offering evidence, testimony, or argument supporting a non-infringement or invalidity defense on any claim limitation not specifically identified in either HyperBranch's final invalidity contentions, or its response to a non-infringement contention interrogatory, or its expert reports.

The Court's Scheduling Order required HyperBranch to provide final invalidity contentions limiting them to "24 total prior art grounds (anticipation and/or obviousness)." D.I. #173, ¶ 7(f).  HyperBranch served its Final Invalidity Contentions with 24 prior art grounds. *See* D.I. 364, ex. 1, at 90-92.  Invalidity contentions are considered to be "initial disclosures" under Federal Rule of Civil Procedure 26(a). *See* D. Del. Default Standard for Discovery, § 4(d). Under Fed. R. Civ. P. 37(c)(1), a failure to disclose or supplement pursuant to Rule 26(a) or (e) may lead to the exclusion of the information to supply evidence at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  LR 1.3 provides that "[s]anctions may be imposed, at the discretion of the Court" for violation of "any order of the Court," which includes this Court's order regarding final invalidity contentions.   Further, a court has the inherent power to sanction parties and exclude evidence for failure to comply with the rules. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-631 (1962).  Pursuant to this Court's order, the invalidity grounds were reduced to 16 on November 7, 2016.  On October 7, 2016, Plaintiffs served HyperBranch with Interrogatory No. 1, seeking HyperBranch's non-infringement contentions. HyperBranch initially responded on November 10, 2016, (Ex. 1), and served three supplemental responses. *See* Exs. 2-4.

Fed. R. Civ. P. 26(a)(2)(A) requires disclosure of expert witnesses accompanied by an report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." HyperBranch served two expert reports (Dr. Lowman and Dr. Flombaum) setting forth its non-infringement positions. *See* D.I. 398, Exs. 3 and 4. Neither expert provided a

supplemental expert report on non-infringement.

The Federal Rules of Civil Procedure "are designed to narrow and clarify the issues and to give the parties mutual knowledge of all relevant facts, thereby preventing surprise." *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978); *Erskine v. Consolidated Rail Corp.*, 814 F.2d 266, 272 (6th Cir. 1987) (describing a primary objective of discovery as the elimination of surprise in civil trials). The Fed. R. Civ. P. impose an affirmative duty on a party to seasonably amend its Rule 26(a) disclosures (including expert reports) and interrogatory responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect..." Fed. R. Civ. P. 26(e)(1); *see* Fed. R. Civ. P. 26(e)(2)(A). The Federal Rules penalize a party for failing to amend discovery responses by not allowing the use of undisclosed evidence at trial. Fed. R. Civ. P. 37(c)(1). This is because the purpose of modern discovery procedure is to narrow issues, eliminate surprise, and achieve substantial justice. *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968).

Courts routinely exclude previously undisclosed invalidity evidence when there is no justification for its late disclosure because the opposing party would be unable to formulate an adequate response. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998) (affirming exclusion of a prior art reference that was disclosed after the discovery deadline and only one month before the pretrial conference); *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, C.A. No. 05-132-JJF, 2007 WL 521894 (D. Del. Feb. 15, 2017) (granting motion to strike where invalidity contentions were due August 11, 2006, fact discovery closed October 10, 2006, and new prior art references were added on December 14, 2006); *In re Omeprazole Patent Litigation*, No. M-21-81, 2002 WL 287785 (S.D.N.Y. Feb. 27, 2002); *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp. 2d 1045, 1061–62 & 1064 (D. Minn.1999); *see also Server Technology, Inc. v. Am. Power Conversion Corp.*, No. 3:06-cv-00698-LRH, 2014 WL 1308617, *5 (D. Nev. Mar. 31,

2014).  Precluding new invalidity evidence, argument, and testimony is also consistent with this Court's prior warning: "To the extent that, in the future, Defendant attempts to use a reference not listed in the chart of 24 Invalidity Grounds to establish disclosure of a claim limitation in the prior art, it will be precluded from doing so."  *See* October 27, 2017 Oral Order.

This Court should exclude the presentation of evidence, testimony, and argument regarding any non-infringement or invalidity defense not previously disclosed in HyperBranch's interrogatory responses, final invalidity contentions, or expert reports.[1]  HyperBranch's failure to identify all of its non-infringement and invalidity positions during discovery and expert discovery is neither justified or harmless.  Indeed, Plaintiffs would be unfairly prejudiced by HyperBranch's reliance on undisclosed non-infringement or invalidity theories as Plaintiffs would not have an opportunity to take follow-up discovery, develop rebuttal evidence, or allow its experts to review and opine on any new non-infringement or invalidity theory. *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d. 604, 614-15 (D. Del. 2007) (precluding expert from addressing infringement issues not in his report); *CIBA Vision Corp. v. Bausch & Lomb, Inc.*, 2:99-CV-0034-RWS, 2003 WL 25774307, *3 (N.D. Ga. Dec. 22, 2003) (granting motion *in limine* precluding defendant from raising previously unasserted defenses, due to substantial prejudice on the plaintiff from not being able to conduct discovery and prepare its case in contemplation of new defenses).

Thus, the Court should preclude HyperBranch from offering at trial any evidence or argument on all previously undisclosed non-infringement and invalidity defenses.

---

[1] This includes but is not limited to Defendants' invalidity defense based on the Jacobs reference that is the subject of the pending Plaintiffs' Motion to Strike the New Invalidity Theory in the First Supplemental Expert Report of Dr. Lowman Regarding Biocompatibility (D.I. 510), filed February 21, 2018.

Dated:  March 5, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

# EXHIBITS 1-4

## REDACTED IN THEIR ENTIRETY

# EXHIBIT 11(b)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP.,
INTEGRA LIFESCIENCES SALES LLC,          )
CONFLUENT SURGICAL, INC., and            )
INCEPT LLC,                              )
                                         )
                    Plaintiffs,          )
                                         )     C.A. No. 15-819 (LPS) (CJB)
            v.                           )
                                         )     CONFIDENTIAL
HYPERBRANCH MEDICAL                      )
TECHNOLOGY, INC.,                        )
                                         )
                    Defendant.           )

## HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S
## OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jeremy A. Tigan (#5239)
OF COUNSEL:                         Stephen J. Kraftschik (#5623)
                                    1201 North Market Street
Jonathan G. Graves                  P.O. Box 1347
COOLEY LLP                          Wilmington, DE 19899-1347
One Freedom Square                  (302) 658-9200
Reston Town Center                  tgrimm@mnat.com
11951 Freedom Drive                 jtigan@mnat.com
Reston, VA 20190                    skraftschik@mnat.com
(703) 456-8000

Adam M. Pivovar                     *Attorneys for HyperBranch*
Stephen C. Crenshaw                 *Medical Technology, Inc.*
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 19, 2018

Plaintiffs' first motion *in limine* seeks to preclude HyperBranch from presenting "evidence, testimony, or argument supporting a non-infringement or invalidity defense on any claim limitation not specifically identified in either HyperBranch's [1] final invalidity contentions, or [2] its response to a non-infringement contention interrogatory, or [3] its expert reports." (Parties' Final Pretrial Order ("PTO"), Ex. 11a at 1 (numbering added).)  Plaintiffs fail to identify any allegedly new "evidence, testimony, or argument" beyond HyperBranch's reliance on the Jacobs reference disclosed in Dr. Lowman's First Supplemental Expert.  (*See id.* at 3 n.1.)  But HyperBranch's identification of Jacobs was in direct response to Plaintiffs' identification and development of their new "biocompatible" hydrogel theory and was presented to Plaintiffs in Court-ordered expert reports to which Plaintiffs responded with not one but two subsequent rebuttal reports.  Moreover, Plaintiffs' motion *in limine* is essentially a repackaging of their pending Motion to Strike HyperBranch's reliance on Jacobs,[1] (D.I. 510), in addition to reprising issues addressed in Plaintiffs' previously-denied motions to strike HyperBranch's invalidity theories.  (*See* 10/27/2017 Oral Order denying D.I. 354; 12/14/2017 Oral Order denying D.I. 388.)  As explained in HyperBranch's Opposition to Plaintiffs' motion to strike, the *Pennypack* factors weigh against excluding Jacobs.[2] Accordingly, Plaintiffs' motion *in limine* should be denied.

Plaintiffs assert that HyperBranch's reliance on Jacobs should have been "specifically identified in either HyperBranch's [1] final invalidity contentions, or [2] its response to a non-infringement contention interrogatory, or [3] its expert reports."[3] (PTO, Ex. 11a at 1.) As discussed

---

[1] Accordingly, HyperBranch incorporates the arguments presented within its Opposition to Plaintiffs' Motion to Strike.  (*See* D.I. 517.)

[2] Additionally, Dr. Lowman has been made available for deposition on his supplemental expert reports regarding Plaintiffs' new "biocompatible" hydrogel theories.

[3] As an initial matter, it is undisputed that Plaintiffs were aware of Jacobs and HyperBranch's contention that Jacobs was relevant prior art by virtue of HyperBranch's Initial Invalidity Contentions in November 2016. (D.I. 547 at 1.) Furthermore, Jacobs is cited on the face of the '034

in HyperBranch's Opposition to Plaintiffs' motion to strike, (*see* D.I. 517), HyperBranch's Final Invalidity Contentions were served months before Plaintiffs raised both their new "biocompatible" hydrogel theory and the new claim scope Plaintiffs seek to impose onto the claims under that theory—a claim construction dispute that is presently pending before the Court.  (*Compare* D.I. 364-1, Ex. 1 (served June 1, 2017) *with* D.I. 382, Ex. 11 at 4 (admitting that Plaintiffs did not develop their new theory until late September 2017).)  Similarly, HyperBranch's responses to Plaintiffs' non-infringement contention interrogatory were due at the close of fact discovery on May 26, 2017, months before Plaintiffs' new theory was developed.  (*See* 5/5/2017 Oral Order adopting HyperBranch's proposed revised schedule (D.I. 278 at 5-6).)  Thus, HyperBranch could not have known that Jacobs was relevant to the new "biocompatible" theory when it served its Final Invalidity Contentions or its responses to Plaintiffs' interrogatories.

More importantly, and contrary to Plaintiffs' assertions, HyperBranch's reliance on Jacobs was disclosed in an expert report ***contemplated under the Court's supplemental schedule for addressing Plaintiffs' new biocompatible hydrogel theory***.  (*See* 2/5/2018 Oral Order adopting briefing and report schedule set forth at D.I. 500 at 2.)  Dr. Lowman identified Jacobs as relevant prior art in his First Supplemental Expert Report in direct response to Dr. Mays' reliance on similar references directed to the "hydrogel composition known as SprayGel" in his Opening Supplemental Expert Report served on January 17, 2018.  (*See* D.I. 517, Ex. A ¶ 19; *see also* D.I. 517 at 3.)  Dr. Lowman's reliance on Jacobs is an appropriate and timely rebuttal to Dr. Mays' new identification and reliance on these references as alleged prior art disclosing the use and knowledge of SprayGel in support of Plaintiffs' new "biocompatible" hydrogel theories.

As discussed in depth in HyperBranch's Opposition to Plaintiffs' Motion to Strike, the

---

patent, was produced in discovery, and was undeniably in Plaintiffs' possession well before they

*Pennypack* analysis weighs against excluding HyperBranch's reliance on Jacobs.  (*See* D.I. 517 at
3-5.)  Under the first two *Pennypack* factors, Plaintiffs cannot be prejudiced by HyperBranch's
reliance on Jacobs when that reliance stems from Plaintiffs' own delayed disclosures of their
biocompatible hydrogel theory (and the Court's subsequent required construction of the preambles
of certain asserted claims) and Plaintiffs' admission that the prior art SprayGel references are
embodiments of asserted claims.  Excluding Jacobs would unfairly prejudice HyperBranch, because
Jacobs anticipates such asserted claims under Plaintiffs' new theory—a theory which was first
introduced into this case through Plaintiffs' ***responsive*** expert reports.

Moreover, HyperBranch has not acted in bad faith or in a manner that willfully disregarded
the Court's scheduling order by introducing Jacobs at this point in the case under the fourth
*Pennypack* factor.  Indeed, HyperBranch is complying with the Court-ordered schedule and
addressing ***Plaintiffs' new argument*** that was never disclosed during fact discovery.  This Court
has previously stated that new evidence may be cited in rebuttal reports if it "is offered to directly
contradict or rebut the opposing party's expert," as HyperBranch has done here with Jacobs.
*Withrow v. Spears*, 967 F. Supp. 2d 982, 1001–02 (D. Del. 2013) (internal quotations omitted).

Finally, it would be categorically unfair to allow Plaintiffs to inject a new theory into the
case in the middle of expert discovery more than four months after the close of fact discovery and
preclude HyperBranch from fully responding to that new theory and new claim scope thereunder.

Proper analysis of the *Pennypack* factors counsels denial of Plaintiffs' Motion to Strike
Dr. Lowman's reliance on Jacobs.  Plaintiffs should not be permitted to avoid this result by simply
repackaging their motion to strike as a motion *in limine* on the same evidence.

---

advanced their late-disclosed biocompatibility theory.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch Medical
Technology, Inc.*

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 19, 2018
11755077

- 4 -

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were caused to be served on

March 19, 2018 upon the following individuals in the manner indicated:

Karen L. Pascale, Esquire                                                       *BY E-MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

Robert F. Altherr, Jr., Esquire                                                 *BY E-MAIL*
Christopher B. Roth, Esquire
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005-4051
(202) 824-3000

Matthew P. Becker, Esquire                                                      *BY E-MAIL*
Jason S. Shull, Esquire
Christopher Galfano, Esquire
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 300
Chicago, IL 60606-7407
(312) 463-5000

John P. Iwanicki, Esquire                                                       *BY E-MAIL*
BANNER & WITCOFF, LTD.
28 State Street, Suite 1800
Boston, MA 02109-1705
(617) 720-9600

*/s/ Jeremy A. Tigan*
Jeremy A. Tigan (#5239)

# EXHIBIT 11(c)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

   v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

      Defendant.

C.A. No.  15-819-LPS-CJB

HIGHLY CONFIDENTIAL—
OUTSIDE COUNSEL EYES ONLY

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 1 TO EXCLUDE UNDISCLOSED NON-INFRINGEMENT AND INVALIDITY DEFENSES

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

March 26, 2018

The Court should grant Plaintiffs' motion *in limine* No. 1 and preclude HyperBranch from offering evidence, testimony, or argument supporting a non-infringement or invalidity defense on any claim limitation not specifically identified in HyperBranch's final invalidity contentions, response to a non-infringement contention interrogatory, or its expert reports.

HyperBranch does ***not*** contest that it should be precluded at trial from raising undisclosed invalidity or non-infringement defenses. Instead, HyperBranch raises only one argument in opposition to this motion: that Dr. Lowman's reliance on the Jacobs reference should not be excluded. Of course, whether that opinion should be excluded is the subject of a different motion (*Plaintiffs' Motion to Strike the New Invalidity Theory in the First Supplemental Expert Report of Dr. Lowman Regarding Biocompatibility*, D.I. 510).[1] Plaintiffs will not repeat its arguments from that Motion here.

As explained in its opening motion paper, HyperBranch's failure to identify all of its non-infringement and invalidity positions during discovery and expert discovery is neither justified nor harmless, and Plaintiffs would be unfairly prejudiced by HyperBranch's reliance on undisclosed non-infringement or invalidity theories. Granting Plaintiffs' motion will prevent HyperBranch from wasting the jury's time, the Court's time, and the parties' resources on arguments not properly disclosed during discovery.

Thus, the Court should preclude HyperBranch from offering at trial any evidence or argument on all previously undisclosed non-infringement and invalidity defenses.

---

[1] Plaintiffs will be filing Objections to the March 23, 2018 Memorandum Order (D.I. 601) denying D.I. 510.

Dated:  March 26, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on March 26, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

---

*For Defendant HyperBranch Medical Technology, Inc.:*

Thomas C. Grimm                                    tgrimm@mnat.com
Jeremy A. Tigan                                        jtigan@mnat.com
Stephen J. Kraftschik                        skraftschik@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

COOLEY LLP                         zHyperBranchIntegra@cooley.com

Jonathan Graves
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656

Adam M. Pivovar
James P. Hughes
Stephen C. Crenshaw
Lisa F. Schwier
Naina Soni
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004

---

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,
Integra LifeSciences Sales LLC, Confluent Surgical
Inc., and Incept LLC*

# EXHIBIT 12(a)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

    v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

        Defendant.

C.A. No.  15-819-LPS-CJB

HIGHLY CONFIDENTIAL—
OUTSIDE COUNSEL EYES ONLY

**PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE OPINIONS INCONSISTENT
WITH THE COURT'S CLAIM CONSTRUCTION**

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

March 5, 2018

Plaintiffs move *in limine* for an Order to preclude HyperBranch from offering evidence, testimony, or argument supporting any non-infringement or invalidity defense that is inconsistent with the Court's claim construction.  In this case, HyperBranch has offered the opinions of Dr. Flombaum and Dr. Lowman on non-infringement and invalidity for the presently asserted "pre-determined thickness" claims of the '034, '566, and '418 patents based on a claim construction that is inconsistent with the Court's claim construction. Particularly with respect to the "predetermined thickness claims", the Court issued its opinion with respect to the following claim constructions:

- "predetermined thickness" means "a thickness (which can be a singular thickness or a range of thickness), determined before application of the hydrogel, for a particular application"

- "observable change" means "change in the color or transparency of the hydrogel observable to the human eye"

- "the visualization agent causes a visually observable change that indicates that a crosslinked hydrogel having a predetermined thickness has been formed" means "the visualization agent causes a visually observable change that is correlated with a thickness of hydrogel, such that the change can be used to indicate that a crosslinked hydrogel having a predetermined thickness has been formed"

- "the visualization agent has a predetermined concentration that indicates a predetermined thickness of the hydrogel as deposited on the substrate" means "the visualization agent has a predetermined concentration, where the visualization agent at said concentration causes an observable change that is correlated with a thickness of hydrogel, such that the change can be used to indicate that a predetermined thickness of the hydrogel has been deposited on the substrate"

- "visualization agent for the polymer composition so that when the hydrogel is applied onto a substrate to reach an average predetermined thickness of the hydrogel, an observable change occurs indicating the predetermined thickness of hydrogel has been deposited on the substrate" means "visualization agent for the polymer composition so that, when the hydrogel is applied onto a substrate to reach an average predetermined thickness of the hydrogel, there is an observable change that is correlated with an average thickness of the hydrogel, such that the change indicates that the predetermined thickness of hydrogel has been deposited on the substrate"

*See* D.I. 307 (adopted by Judge Stark without revision; *see* D.I. 379).

Notwithstanding the Court's express claim construction of these terms, both Dr. Lowman and Dr. Flombaum rely on additional alleged "requirements" for their invalidity and non-infringement opinions that are not found in the Court's claim construction of the terms in the "Predetermined Thickness Claims."  Rather than rely on the Court's claim constructions, Dr. Lowman, for example, states "the predetermined thickness claims have three requirements related to my opinions: (1) the 'visualization agent' causes the 'observable change'; (2) a 'Correlation Requirement'; and (3) a 'Naked Eye Indication Requirement.'" Dr. Lowman then further explains in his report what these "requirements" entail:[1]

- The claims "require a precise and distinctive change in color (or transparency) that is observable to the human eye and correlates with a distinct thickness of the deposited material so that the change in color (or transparency) can be used to indicate to the user that a thickness (which can be a singular thickness of a range of thickness) has been formed."

- The claims require "a categorical change in color" meaning "an actual change between different colors – i.e., changes between white, blue, green, red, yellow . . . etc. – as opposed to simply changes in the shade or intensity of an individual color."

- "[t]he claims thus require a user to be able to observe and discriminate in real-time and from memory colors or transparencies as the thickness of the hydrogel increases and know, from memory, when the 'test' color or transparency has been observed to indicate the 'predetermined thickness has been achieved and to stop applying additional thickness" and the claims "require a user to be able to very accurately and consistently perform color (or transparency) matching from memory" – i.e., "[t]he same color matching that one cannot perform in buying paint to match the color of one's walls from memory."

- the claim require "match[ing] a specific color (transparency) to another color (or transparency) that represents the color (or transparency) of the hydrogel at a 'predetermined thickness' from memory."

---

[1] Dr. Lowman and Dr. Flombaum also rely on a construction of "visualization agent" that excludes air bubbles (*see* D.I. 398, Ex. 4, ¶ 79, Ex. 3, ¶¶ 159, 161) which is inconsistent with the Court's claim construction that air bubbles **alone** are not a visualization agent (*see* D.I. 307 at p. 13), thus also requiring exclusion of their opinions of invalidity and noninfringement with respect to the "Predetermined Thickness Claims."

(*See* D.I. 398, Ex. 1, ¶¶ 388-391, 393-396, 399, 402; Ex. 3, ¶¶ 136, 170-211 Ex 6, ¶¶ 263, 264, 266, and 267; *see also* Ex. 2, ¶¶ 17-20; Ex. 4, ¶¶ 13, 77, 79; Ex. 7, ¶¶ 6-7.[2])

Pursuant to F.R.E. 401, 402, and 403, the Court should exclude "expert testimony inconsistent with the Court's claim construction [because it] is unreliable and unhelpful to the finder of fact." *EMC Corporation v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109-110 (D. Del. Feb. 11, 2016) *quoting Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014); *see also Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).  Such testimony is also irrelevant and likely to mislead and confuse a jury. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) ("expert testimony [that] ignored the court's claim construction 'is irrelevant to the question of infringement'"); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n. 2 (Fed. Cir. 2006); *Sprint Commc'ns Co. L.P. v. Cox Commc'ns Inc.*, C.A. No. 12-487-JFB-CJB, 2017 WL 5196378, at *19 (D. Del. Nov. 9, 2017) (granting in part a party's motion to exclude portions of an expert report involving contrary expert testimony to the court's claim construction as likely to "mislead and confuse a jury"); *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 822 (N.D. Il. 2010) ("Expert opinions that conflict with a courts established claim construction tend only to create confusion and are thus unhelpful to the jury.").

For these reasons, the Court should exclude at trial any opinion evidence regarding non-infringement or invalidity defense proffered on a claim construction inconsistent with the Court's claim construction.

---

[2] Dr. Flombaum testified that his understanding of the claims was based on what Dr. Lowman told him.  *See, e.g.*, D.I. 398, Ex. 2, ¶¶ 19-20; Ex. 4, ¶ 77; Ex. 7, ¶ 7; and Ex. 9, pp. 29:2-33:8.

Dated:  March 5, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Karen L. Pascale, Esquire, hereby certify that on March 5, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

| | |
|---|---|
| *For Defendant HyperBranch Medical Technology, Inc.:* | |
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | |
| 1201 North Market Street | |
| P.O. Box 1347 | |
| Wilmington, DE 19899-1347 | |
| | |
| COOLEY LLP | zHyperBranchIntegra@cooley.com |
| Jonathan Graves | |
| One Freedom Square | |
| Reston Town Center | |
| 11951 Freedom Drive | |
| Reston, VA 20190-5656 | |
| Adam M. Pivovar | |
| James P. Hughes | |
| Stephen C. Crenshaw | |
| Lisa F. Schwier | |
| Naina Soni | |
| 1299 Pennsylvania Avenue, NW | |
| Suite 700 | |
| Washington, DC 20004 | |

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

# EXHIBIT 12(b)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP.,
INTEGRA LIFESCIENCES SALES LLC,            )
CONFLUENT SURGICAL, INC., and              )
INCEPT LLC,                                )
                                           )
                    Plaintiffs,            )
                                           )    C.A. No. 15-819 (LPS) (CJB)
            v.                             )
                                           )    CONFIDENTIAL
HYPERBRANCH MEDICAL                        )
TECHNOLOGY, INC.,                          )
                                           )
                    Defendant.             )

**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S**
**OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 2**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
OF COUNSEL:                             Jeremy A. Tigan (#5239)
                                        Stephen J. Kraftschik (#5623)
Jonathan G. Graves                      1201 North Market Street
COOLEY LLP                              P.O. Box 1347
One Freedom Square                      Wilmington, DE 19899-1347
Reston Town Center                      (302) 658-9200
11951 Freedom Drive                     tgrimm@mnat.com
Reston, VA 20190                        jtigan@mnat.com
(703) 456-8000                          skraftschik@mnat.com

Adam M. Pivovar
Stephen C. Crenshaw                     *Attorneys for HyperBranch*
James P. Hughes                         *Medical Technology, Inc.*
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 19, 2018

The parties agree that, as a general principle, the Court should exclude evidence, testimony, or argument inconsistent with the Court's claim construction.  (*See* Proposed Joint Pre-Trial Order ("PTO")*,* Ex. 11b (Pls.' 2nd MIL); *see also id.*, Ex. 12a (HyperBranch's 1st MIL).)  Plaintiffs' motion, however, twists this principle to exclude proper argument and testimony simply ***applying*** the Court's constructions.  Moreover, Plaintiffs' motion merely reprises the arguments raised in Plaintiffs' pending *Daubert* motion.[1]  Unlike Plaintiffs' experts' reinterpretation and contradiction of the Court's constructions, HyperBranch's experts' opinions are squarely within the province of expert witness testimony under *Daubert*. Accordingly, Plaintiffs' motion should be denied.

**Predetermined Thickness Claims:**  Plaintiffs argue that Dr. Lowman and Dr. Flombaum "rely on additional alleged 'requirements'" not found in the Court's claim constructions for the Predetermined Thickness Claims.  (PTO, Ex. 11b at 2.)  But these opinions are entirely consistent with the Court's claim constructions and simply provide necessary analysis and application of the constructions to the facts at hand.  This testimony is unquestionably relevant, designed to assist the fact-finder, and thus admissible.  *See, e.g.*, *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, No. 14-cv-62369, 2016 WL 9402395, at *7 (S.D. Fla. May 3, 2016) (opinions of expert who put "a gloss on the terms" the court construed were admissible because "they bear on application of the constructions rather than on the constructions themselves").

Notably, Plaintiffs have failed to explain how the identified "requirements" (or the quoted portions of Dr. Lowman's and Dr. Flombaum's reports) are inconsistent with or contradict the Court's claim construction.  Nor can they identify any such issues because Dr. Lowman and Dr. Flombaum simply apply the Court's claim constructions and analyze the outcome.  Analysis and application of the Court's claim constructions that uses different words than the constructions

---

[1] Accordingly, HyperBranch incorporates its Opposition to that motion.  (*See* D.I. 445.)

1

themselves—but does not change the substance of the claims—is permissible. *See, e.g.*, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1377-78 (Fed. Cir. 2008) (error to exclude expert testimony because expert's "failure to use the district court's exact words does not change the substance of his testimony or render it inapplicable.").

Indeed, none of the statements that Plaintiffs identify are inconsistent the Court's claim constructions. Dr. Lowman's opinion that the claims "require a precise and distinctive change in color (or transparency) that is observable to the human eye," (PTO, Ex. 11b at 2 (quoting D.I. 398, Ex. 1 ¶ 388)), is simply emphasizing the Court's construction that an "observable change" must be "observable to the human eye." Logically, changes in color or transparency that are imprecise or that are not distinctive would not be visible to the human eye, as the Court's construction requires. Similarly, Dr. Lowman's recitation of a "categorical change in color," (PTO, Ex. 11b at 2 (quoting D.I. 398, Ex. 1 ¶¶ 389-91)), is an explanation of the *full scope* of an "observable change" under the Court's construction for purposes of lack of written description and enablement. Nothing in the patents-in-suit or the Court's construction restricts the color change to changes in shade of one color. Thus, Dr. Lowman points out that a "change in the color . . . of the hydrogel observable to the human eye" must also encompass changes from one color to another.

Dr. Lowman's and Dr. Flombaum's opinions on matching a color from memory also represent an explanation of the claim language, not a contradiction. (*See* PTO, Ex. 11b (third bullet, quoting D.I. 398, Ex. 4 ¶ 77; fourth bullet, quoting D.I. 398, Ex. 1 ¶ 402).) These statements simply explain the HyperBranch experts' view that a user would be unable to consistently match the color associated with a "change in the color . . . of the hydrogel observable to the human eye" "such that *the change can be used to indicate that a crosslinked hydrogel having a predetermined thickness* has been formed," which are express aspects of the Court's constructions.

**Air Bubbles:**  Plaintiffs argue that "Dr. Lowman and Dr. Flombaum also rely on a construction of 'visualization agent' that excludes air bubbles . . . which is inconsistent with the Court's claim construction that air bubbles **alone** are not a visualization agent."  (PTO, Ex. 11b, 2 n.1.)  But this position—that air bubbles are not a "visualization agent"—is an accurate recitation of the Court's construction.  First, "[t]he Court's claim construction orders explained that 'air or air bubbles alone' could not constitute a visualization agent."  (D.I. 555 at 6 (quoting D.I. 307 at 13); *see also* D.I. 379 at 6 n.3 ("Because air is invisible, it cannot be detected by the human eye before or after mixing with a reactive precursor series.  Moreover, as Judge Burke found, 'Plaintiffs have not pointed to anything in the intrinsic record discussing air bubbles as constituting a visualization agent.'") (quoting D.I. 307 at 13).)  Second, in adopting Judge Burke's claim construction for "visualization agent," Judge Stark took this position a step further and ***explicitly rejected*** Plaintiffs' argument that ***a combination of air bubbles and dye*** is a "visualization agent":

> Integra argues that the air bubbles from the sprayer combine with the dye to form a visualization agent.  (D.I. 311 at 7-8)  ***The Court agrees with Judge Burke's rejection of this argument***, as "the '034 patent is clear that: (1) the visualization agent described therein was the dye and (2) the patentees were not making reference to the presence of any air bubbles in the hydrogel in describing what the visualization agent was." (D.I. 307 at 12)

(D.I. 379 at 5-6 (emphasis added).)  Given this explicit rejection of Plaintiffs' theory, it is ***Plaintiffs'*** continued reliance on the combination of dye and air bubbles as a "visualization agent" that contradicts the claim construction and ***not*** HyperBranch's argument that air bubbles cannot literally be part of the accused "visualization agent."

Given that Dr. Lowman's and Dr. Flombaum's offered opinions merely explain the claims under the Court's claim constructions and that Plaintiffs have failed to show how any of the identified expert opinions actually contradict the Court's claim construction, HyperBranch respectfully requests that the Court deny Plaintiffs' second motion *in limine*.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch Medical*
*Technology, Inc.*

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 19, 2018
11755078

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing were caused to be served on

March 19, 2018 upon the following individuals in the manner indicated:

Karen L. Pascale, Esquire                                                     *BY E-MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

Robert F. Altherr, Jr., Esquire                                               *BY E-MAIL*
Christopher B. Roth, Esquire
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005-4051
(202) 824-3000

Matthew P. Becker, Esquire                                                    *BY E-MAIL*
Jason S. Shull, Esquire
Christopher Galfano, Esquire
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 300
Chicago, IL 60606-7407
(312) 463-5000

John P. Iwanicki, Esquire                                                     *BY E-MAIL*
BANNER & WITCOFF, LTD.
28 State Street, Suite 1800
Boston, MA 02109-1705
(617) 720-9600

/s/ Jeremy A. Tigan
Jeremy A. Tigan (#5239)

# EXHIBIT 12(c)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

    v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

        Defendant.

C.A. No.  15-819-LPS-CJB

HIGHLY CONFIDENTIAL—
OUTSIDE COUNSEL EYES ONLY

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2 TO EXCLUDE
OPINIONS INCONSISTENT WITH THE COURT'S CLAIM CONSTRUCTION**

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

March 26, 2018

HyperBranch's experts are not, as it contends, "simply *applying*" the Court's claim construction or providing "opinions . . . entirely consistent with the Court's claim constructions." Instead, HyperBranch's experts add "requirements" to, and deviate from, the Court's claim construction as explained in Plaintiffs' motion *in limine* No. 2.  Indeed, Judge Burke's recent Report and Recommendation ("R&R") rejected HyperBranch's arguments as to the "Predetermined Thickness" because those arguments added "requirements" to the Court's claim construction. In particular, Judge Burke rejected HyperBranch argument that the correlation between an observable change and a predetermined thickness requires an exact color match:

> Moreover, **HyperBranch's argument** that Plaintiffs have not shown that "the color of the hydrogel [in HyperBranch's videos] is *the same* between [] applications at any thickness . . . *is off the mark* in another respect. It sounds like HyperBranch is suggesting that, pursuant to the Court's claim construction, the hydrogel has to turn a specific, single shade of green once it has been deposited to between 1-2 mm on any patient, under any circumstances. **But that reads too much into the construction.**
>
> . . .
>
> It is a reasonable inference, then, that neurosurgeons would know what the hydrogel's color and transparency should look like when the hydrogel is applied to a patient and reaches the desired range of thickness (1-2 mm).  **But the Court did not say (and does not find)** that the articulated result of the observable change had to be the *exact same color* in all applications on all patients.

D.I. 555, at 18-19 (bold italics emphasis added).

This example typifies HyperBranch's arguments and opinions that materially alter the Court's claim constructions, rendering them inadmissible.  As such, the Court should exclude at trial any opinion evidence proffered on a claim construction inconsistent with the Court's claim construction, including HyperBranch's misplaced "exact same color" argument.

Dated:  March 26, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on March 26, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

*For Defendant HyperBranch Medical Technology, Inc.:*

| | |
|---|---|
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Cooley LLP                                  zHyperBranchIntegra@cooley.com

Jonathan Graves
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656

Adam M. Pivovar
James P. Hughes
Stephen C. Crenshaw
Lisa F. Schwier
Naina Soni
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004

/s/ Karen L. Pascale

Karen L. Pascale (#2903) [kpascale@ycst.com]
**Young Conaway Stargatt & Taylor LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

01:17886261.1

# EXHIBIT 13(a)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

    v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

        Defendant.

C.A. No.  15-819-LPS-CJB

---

**PLAINTIFFS' MOTION IN LIMINE NO. 3**
**TO EXCLUDE ARGUMENT OR EVIDENCE**
**RELATING TO BRIEFING SUBMITTED TO OR RULINGS BY THE COURT**

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

March 5, 2018

Plaintiffs move *in limine* for an Order to exclude HyperBranch from offering argument or evidence regarding the Court's previous or future pre-trial rulings and the associated briefing thereto, including Plaintiffs' preliminary injunction motion, the Court's discovery rulings, the Court's claim construction rulings (except for the Court's actual claim construction and other judicial rulings necessary for the jury to perform its function), rulings on summary judgment motions, motions to strike, motions *in limine*, and forthcoming evidentiary rulings.

The admission of prior judicial opinions into evidence is highly prejudicial. *St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, C.A. No. 01-557-JJF, slip op. at 3.g (D. Del. Feb. 11, 2003); *Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 898 F. Supp. 1334, 1343 (N.D. Iowa 1995); *see also CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 144 F.3d 35, 45 (1st Cir. 1998); *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1995); *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1568 (Fed. Cir. 1993). Indeed, "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993). Prior judicial opinions have an "undue tendency to suggest a decision [to a jury] on [an improper] basis." *Mendenhall*, 5 F.3d at 1568. "Deferential weight on a legal conclusion, not evidentiary weight on facts in dispute, must be given to the prior decision." *Id.*, at 1570.

Factual inquiries should be left to the province of the jury—based on the actual evidence presented during trial—without the bias or prejudice of prior judicial opinions. Allowing HyperBranch to present or characterize the Court's judicial opinions will improperly influence the jury's factual determinations as that decision may be based on facts that were incomplete at the time and potentially on facts properly excluded from the jury's consideration. Further, the jury may give undue weight to the Court's decision in favor of a party and therefore be inclined

to find that additional arguments from that party are "right" merely because the Court agreed with that party on another issue. In this regard, the jury is likely to give exaggerated weight to the Court's Opinion. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185-86 (E.D. Pa. 1980). Accordingly, any probative value of the Court's judicial opinions is outweighed by the potential prejudice and jury confusion and should be excluded at trial. F. R. E. 403.

For example, in denying Plaintiffs' motion for a preliminary injunction, the Court made a number of findings based only on the preliminary record developed at the time of the hearing (and necessarily not including the more complete record developed during discovery). *See, e.g.*, D.I. 164, at 31, 34, and 41. Since the findings of fact and conclusion of law made by a court in deciding a preliminary injunction motion "are not binding at trial on the merits" (*see University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)), they should not be presented to the jury. Permitting HyperBranch to point to the Court's preliminary injunction determinations in this matter would introduce irrelevant material, unfairly prejudice Plaintiffs, confuse the issues, and mislead the jury. *See Lue v. Moore,* 89 F.3d 841 (Table) (8th Cir. 1996) (affirming district court's decision to exclude evidence regarding the preliminary injunction as unduly prejudicial and confusing); *Reyes v. Transamerica Life Ins. Co.*, Case No. CV-15-3452-DMG, 2016 WL 9137532 (C.D. Cal. June 28, 2016) (excluding evidence regarding TRO and preliminary injunction order); *Park West Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 323-24 (S.D.N.Y. 2009) (excluding preliminary injunction ruling, finding "any references to the Court's Preliminary Injunction Ruling are likely to unduly influence the jury"); Fed. R. Evid. 403.

For the same reasons, multiple courts have excluded other pre-trial rulings and associated briefing from the jury's consideration. *See, e.g.*, *Hewlett-Packard Co. v. Mustek Systems, Inc.*, No. 99-351, 2001 WL 36166855 at *4 (S.D. Cal. June 11, 2001) (granting the motions in limine,

"exclude[ing] reference to any statement, finding, or ruling in the Court's summary judgment orders" and further instructing that "[t]he parties shall not refer to any of the Court's prior orders or rulings."); *3Com Corp. v. Realtek Semiconductor Corp.*, No. 03-2177, 2008 WL 783383, at *4 (N.D. Cal. Mar. 24, 2008) (granting motion in limine "to preclude [party] from referring to or introducing evidence relating to patents and claims [...] dismissed [prior to trial]"); *Digital Reg. of Tex., LLC v. Adobe Sys.*, Case No. CV-12-1971, 2014 WL 4090550, *13 (N.D. Cal. Aug. 19, 2014); *GPNE Corp. v. Apple, Inc.*, Case No. 5:12-cv-02885, Dkt. No. 319 at 1 (N.D. Cal. June 24, 2014) ("Neither party may refer to discovery disputes, motion practice, or rulings in this case ... These issues are not relevant to what the jury has to decide."); *Nemir v. Mitsubishi Motors Corp.*, No. 96-75380, 2002 WL 482557, at *2 (E.D. Mich. Mar. 11, 2002) (granting motion in limine to preclude discussion of dismissed claims and allegations because the Court's rulings, statements, and opinions relating to a "discussion of dismissed claims is neither probative nor relevant to the determination [of a party's remaining claims]."); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98-3852, 2002 WL 1613724, at *1 (N.D. Ill. July 17, 2002)(issues resolved on summary judgment are not before the jury, they "ha[ve] no further purpose or place [at trial]."); *Elston v. UPMC-Presbyterian Shadyside*, No. 06-329, 2008 WL 682494, at *2 (W.D. Pa. Mar. 7, 2008).

For at least these reasons, HyperBranch should be barred from referencing or offering argument or evidence regarding the Court's pre-trial rulings in this matter and the associated briefing thereto, including (1) Plaintiffs' preliminary injunction motion; (2) the Court's various discovery rulings; (3) the Court's claim construction rulings (except for the Court's actual claim construction and other rulings from the Court necessary for the jury to perform its function); (4) rulings on summary judgment motions; (5) motions to strike; (6) motions in limine; and (7) the Court's forthcoming evidentiary rulings.

Dated:  March 5, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Karen L. Pascale, Esquire, hereby certify that on March 5, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

<table>
<tr><td colspan="2">*For Defendant HyperBranch Medical Technology, Inc.:*</td></tr>
<tr><td>Thomas C. Grimm</td><td>tgrimm@mnat.com</td></tr>
<tr><td>Jeremy A. Tigan</td><td>jtigan@mnat.com</td></tr>
<tr><td>Stephen J. Kraftschik</td><td>skraftschik@mnat.com</td></tr>
<tr><td>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347</td><td></td></tr>
<tr><td>Cooley LLP</td><td>zHyperBranchIntegra@cooley.com</td></tr>
<tr><td>Jonathan Graves<br>One Freedom Square<br>Reston Town Center<br>11951 Freedom Drive<br>Reston, VA 20190-5656</td><td></td></tr>
<tr><td>Adam M. Pivovar<br>James P. Hughes<br>Stephen C. Crenshaw<br>Lisa F. Schwier<br>Naina Soni<br>1299 Pennsylvania Avenue, NW<br>Suite 700<br>Washington, DC 20004</td><td></td></tr>
</table>

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
**Young Conaway Stargatt & Taylor llp**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

# EXHIBIT 13(b)

CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP.,
INTEGRA LIFESCIENCES SALES LLC,      )
CONFLUENT SURGICAL, INC., and        )
INCEPT LLC,                          )
                                     )
                Plaintiffs,          )
                                     )   C.A. No. 15-819 (LPS) (CJB)
        v.                           )
                                     )   CONFIDENTIAL
HYPERBRANCH MEDICAL                  )
TECHNOLOGY, INC.,                    )
                                     )
                Defendant.           )

**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S
OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
OF COUNSEL:                         Stephen J. Kraftschik (#5623)
                                    1201 North Market Street
Jonathan G. Graves                  P.O. Box 1347
COOLEY LLP                          Wilmington, DE 19899-1347
One Freedom Square                  (302) 658-9200
Reston Town Center                  tgrimm@mnat.com
11951 Freedom Drive                 jtigan@mnat.com
Reston, VA 20190                    skraftschik@mnat.com
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw                 *Attorneys for HyperBranch*
James P. Hughes                     *Medical Technology, Inc.*
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 19, 2018

Plaintiffs' third motion *in limine* seeks to preclude HyperBranch "from offering argument or evidence regarding the Court's previous or future pre-trial rulings and the associated briefing thereto." (Parties' Final Pretrial Order, Ex. 11c at 1.)  HyperBranch does not dispute that the Court's rulings and opinions are not evidence that may be presented at trial.  However, several of the Court's orders (addressing issues such as claim construction, whether new expert opinions ought to be stricken, and preliminary injunction) touch on issues that HyperBranch must address at trial, including Plaintiffs' experts' interpretation and application of the Court's claim constructions, the credibility of Plaintiffs' expert witnesses, and willful infringement.  Plaintiffs' motion should be denied as it will otherwise preclude HyperBranch from putting on a fulsome defense.

First, HyperBranch must be permitted to rely on the Court's claim construction orders when rebutting Plaintiffs' experts on infringement and validity.  As one example, Dr. Mays' reports include a theory of infringement under the doctrine of equivalents wherein the combination of dye and air bubbles in the accused hydrogels forms the "visualization agent" of the Predetermined Thickness Claims.  (*See, e.g.*, D.I. 400, Ex. 90 ¶¶ 52, 53, 69 ("[F]or the Adherus Dural Sealant (with AutoSpray applicator), the visualization agent requirement is also met by the combination of the air bubbles and green color dye formed through the mixture of the above blue and yellow color dyes and the air bubbles generated by the [Adherus applicator] . . .").)  Dr. Mays' opinion directly contradicts the Court's Report and Recommendations, which states:

> The Court disagrees that these references [to the patent specification] suggest that "air" plays any meaningful role in the definition of a "visualization agent." For one thing, the '034 patent describes an exemplary embodiment that actually utilizes an air-assisted sprayer (like the sprayer discussed in the '201 patent). And when it does, the '034 patent is clear that: (1) the visualization agent described therein was the dye and (2) the patentees were not making reference to the presence of any air bubbles in the hydrogel in describing what the visualization agent was.

(D.I. 307 at 12.)  Further, in adopting the Court's Report and Recommendations, Judge Stark's order

notes that "Integra argues that the air bubbles from the sprayer combine with the dye to form a visualization agent. ***The Court agrees with judge Burke's rejection of this argument*** . . . ." (D.I. 379 at 5 (emphasis added).)  At minimum, HyperBranch is entitled to confront Dr. Mays with the Court's opinions to confirm that he did not consider—or consciously disregarded—the Court's ruling that the combination of dye and air bubbles cannot constitute a "visualization agent."

Second, HyperBranch is also entitled to confront Plaintiffs' experts with evidence of their prior inconsistent statements made during the course of this litigation.[1]  *See United States v. Hale*, 422 U.S. 171, 176 (1975) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness.").  This includes, for example, questioning Plaintiffs' damages expert, Mr. Jarosz, on the differences in the opinions he offered during the preliminary injunction phase of this litigation and those opinions he offered in his expert reports during the liability phase.  Notably, the Court struck Mr. Jarosz's opinions regarding a multi-player market. (*See, e.g.*, D.I. 345 (moving to strike Plaintiffs' new damages theories as presented in Mr. Jarosz's report); D.I. 384 (granting-in-part D.I. 345); D.I. 554 (adopting D.I. 384).)  As another example, HyperBranch is entitled to show that during the preliminary injunction phase, Dr. Mays argued that PEI constitutes the "second" precursor, yet Dr. Mays now argues that the "second" precursor is "a compound within" PEI and that PEI constitutes "at least two precursors."  (*Compare* D.I. 10-6 ¶ 50

---

[1] Plaintiffs have submitted numerous declarations from fact and expert witnesses as part of their briefing on the motions brought before the Court.  (*See, e.g.*, Lenox declarations (D.I. 10, Ex. 3; D.I. 35, Ex. 2; D.I. 122, Ex. 21); Jarosz declarations (D.I. 10, Ex. 4; D.I. 122, Ex. 22); Dr. Mays declarations/reports (D.I. 10, Ex. 13; D.I. 122, Ex. 6; D.I. 242, Ex. 14).)  Plaintiffs' overbroad motion *in limine* improperly seeks to prevent HyperBranch from confronting Plaintiffs' witnesses with statements made in these declarations, solely because the declarations were attached to motions presented to the Court.  Plaintiffs should not be permitted to arbitrarily exclude prior inconsistent statements of witnesses on the sole basis that such statements were included in "the associated briefing" of Court orders.  Indeed, the Court has already noted that Dr. Mays' report and Dr. Bennett's declaration submitted as part of the preliminary injunction briefing are "evidence that HyperBranch might use at trial."  (D.I. 512 at 14 n.10.)

("The second precursor is a synthetic polyethyleneimine (PEI)") *with* D.I. 400, Ex. 90 ¶¶ 46 ("The second precursor is a compound within synthetic polyethyleneimine (PEI)"), 212 ("Therefore, the PEI in the Adherus products includes at least two precursors . . .").)  Plaintiffs' motion to exclude "argument or evidence regarding the Court's previous or future pre-trial rulings and the associated briefing thereto" is overbroad and would potentially prevent HyperBranch from presenting any evidence related to Mr. Jarosz's or Dr. Mays' previous statements solely because they were previously addressed by this Court or included in declarations attached to motion brief.  That is not a proper basis for exclusion.  In the interest of fairness, HyperBranch should be permitted to use Mr. Jarosz's previous statements to challenge the credibility of his new, contradictory opinions regarding a two-party market.  Similarly, HyperBranch is entitled to confront Dr. Mays and Plaintiffs' other experts with evidence of any inconsistency in their statements throughout this litigation, regardless of whether those opinions have been addressed in motions or orders.

Finally, under Plaintiffs' motion, HyperBranch would be precluded from discussing the Court's adoption of HyperBranch's claim constructions and the USPTO's institution of *Inter Partes* Review of claim 10 of the '034 Patent, both of which are directly relevant to HyperBranch's good faith belief of non-infringement and invalidity of the patents-in-suit for willful infringement.  *See, e.g.*, *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008) (affirming finding of no willful infringement despite rejecting defendant's claim construction where that construction was reasonable "in light of the specification and prosecution history.").

Accordingly, HyperBranch requests that Plaintiffs' third motion *in limine* be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch Medical
Technology, Inc.*

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 19, 2018
11755077

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were caused to be served on

March 19, 2018 upon the following individuals in the manner indicated:

Karen L. Pascale, Esquire                                      *BY E-MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

Robert F. Altherr, Jr., Esquire                               *BY E-MAIL*
Christopher B. Roth, Esquire
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005-4051
(202) 824-3000

Matthew P. Becker, Esquire                                    *BY E-MAIL*
Jason S. Shull, Esquire
Christopher Galfano, Esquire
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 300
Chicago, IL 60606-7407
(312) 463-5000

John P. Iwanicki, Esquire                                     *BY E-MAIL*
BANNER & WITCOFF, LTD.
28 State Street, Suite 1800
Boston, MA 02109-1705
(617) 720-9600

*/s/ Jeremy A. Tigan*
Jeremy A. Tigan (#5239)

# EXHIBIT 13(c)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

    v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

        Defendant.

C.A. No.  15-819-LPS-CJB

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 3
TO EXCLUDE ARGUMENT OR EVIDENCE
RELATING TO BRIEFING SUBMITTED TO OR RULINGS BY THE COURT**

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

March 26, 2018

HyperBranch agrees that: "the Court's rulings and opinions are not evidence that may be presented at trial." Yet, HyperBranch opposition to Plaintiffs' motion *in limine* No. 3 shows that they intend to do just that. In particular, HyperBranch cites the Report and Recommendation (D.I. 307) on claim construction and the Order adopting it (D.I. 379) and argues that it can use ***discussion*** from those opinions to cross-examine Dr. Mays. HyperBranch's intended use of the Court's opinions is improper. The Court's ultimate claim construction of claim terms is relevant because the jury will be instructed to apply those constructions to decide issues of infringement and validity. The Court's discussion and analysis of the claim construction disputes, however, is not relevant. Permitting HyperBranch to cherry pick isolated passages from the Court's opinions to cross-examine would undoubtedly confuse or mislead the jury and unduly prejudice Plaintiffs.

HyperBranch argues that it should be permitted to question Plaintiffs' experts regarding allegedly inconsistent statements made during this litigation.  Plaintiffs do not disagree—Plaintiffs' motion *in limine* does *not* seek to exclude arguments or testimony relating to factual positions taken in declarations.  Rather, Plaintiffs' motion seeks to exclude argument or evidence relating to the parties "briefing," which contain the parties' arguments. Plaintiffs also do not seek to exclude, as HyperBranch suggests, argument of alleged inconsistencies if "those opinions have been addressed in motions or orders." HyperBranch is free to explore alleged inconsistencies, but they cannot use the Court's Opinions (excepting final claim constructions) or parties' briefs to do so.

Further, IPR proceedings involving the '034 Patent should be excluded "because of the different standards, procedures and presumptions applicable to IPR proceedings, evidence concerning the proceedings is irrelevant and highly prejudicial to the jury's determination of the validity of the patents." *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2014 WL 5023098, at *2 (W.D. Wis. Oct. 8, 2014); *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009).

01:23024316.1

Dated:  March 26, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on March 26, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

| | |
|---|---|
| **For Defendant HyperBranch Medical Technology, Inc.:** | |
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | |
| 1201 North Market Street | |
| P.O. Box 1347 | |
| Wilmington, DE 19899-1347 | |
| | |
| COOLEY LLP | zHyperBranchIntegra@cooley.com |
| Jonathan Graves | |
| One Freedom Square | |
| Reston Town Center | |
| 11951 Freedom Drive | |
| Reston, VA 20190-5656 | |
| | |
| Adam M. Pivovar | |
| James P. Hughes | |
| Stephen C. Crenshaw | |
| Lisa F. Schwier | |
| Naina Soni | |
| 1299 Pennsylvania Avenue, NW | |
| Suite 700 | |
| Washington, DC 20004 | |

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

# EXHIBIT 14(a)

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| INTEGRA LIFESCIENCES CORP., | ) | |
| INTEGRA LIFESCIENCES SALES LLC, | ) | |
| CONFLUENT SURGICAL, INC., and | ) | |
| INCEPT LLC, | ) | |
| | ) | C.A. No. 15-819 (LPS) (CJB) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HYPERBRANCH MEDICAL | ) | |
| TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

CONFIDENTIAL
FILED UNDER SEAL

**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S MOTION *IN LIMINE* NO. 1:
EXCLUDE TESTIMONY INCONSISTENT WITH THIS COURT'S CLAIM
CONSTRUCTION**

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch
Medical Technology, Inc.*

HyperBranch moves to exclude any testimony from Plaintiffs' experts that is based on claim constructions that are contrary to this Court's constructions or that render the Court's constructions indefinite.

## I.    CLAIM CONSTRUCTION IS THE PROVINCE OF THE COURT

Claim construction is a matter of law for the Court to decide. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977-78 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing *Markman*, 52 F.3d at 979). Plaintiffs and their experts have taken a number of positions during litigation that are inconsistent with the Court's claim constructions. Allowing such testimony "would usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). As such, the Court should exclude any expert testimony or argument that contradicts the Court's constructions.

## II.    PLAINTIFFS' EXPERTS HAVE APPLIED INCONSISTENT CLAIM CONSTRUCTIONS

To avoid summary judgment on certain issues and to manufacture infringement reads, Plaintiffs and their experts have argued for interpretations of the Court's claim constructions that vitiate the import of the Court's rulings. To avoid confusing the jury, the Court should preclude Plaintiffs from arguing their contrary positions on the following claim terms:

**Precursor.** The Court's construction for "precursor" is "a polymer, functional polymer, macromolecule, small molecule, or crosslinker that can take part in a reaction to form a network of crosslinked molecules." (D.I. 317 at 8.) As detailed fully in HyperBranch's objections to Judge Burke's report and recommendation regarding the "three-precursor" terms, Plaintiffs have created a claim construction dispute that requires Court intervention. (*See* D.I. 534.) Plaintiffs

1.

seek to salvage their infringement claim by asserting that a polymer containing crosslinkers can be one precursor, two precursors, or an indeterminate number of precursors. (*See id.*; *see also* D.I. 403, Ex. 56 (Mays 12/23/2015 Tr.) at 116:4-6 ███████████████████████████ ██████████████████████   ██████████████████████████████████   Because Plaintiffs' interpretation contradicts the clear import of the term as viewed from the perspective of one of ordinary skill in the art and does not provide reasonable certainty as to the scope of the claims, it renders this claim term indefinite. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

**Visualization Agent.** The Court construed the term "visualization agent" to mean "a substance or material that is detectable by the human eye and that imparts a color or obscures the optical clarity of the hydrogel." (D.I. 307 at 55 (emphasis added).) Judge Burke was clear that this term "should not be construed in such a way as to encompass air or air bubbles alone." (*Id.* at 13; *see also* D.I. 379 (adopting D.I. 307 and agreeing with Judge Burke's analysis that "the patentees were ***not*** making reference to the presence of any air bubbles in the hydrogel in describing what the visualization agent was.").) Nevertheless, Plaintiffs and their experts continue to ignore the fact that the air bubbles in HyperBranch's accused products are responsible for obscuring the optical clarity of the hydrogel. (*See* D.I. 443 (Plaintiffs' Opposition to Summary Judgment) at 20-21 (arguing air bubbles do not contribute to change in transparency).) The Court should preclude Plaintiffs from arguing before the jury that these air bubbles qualify as a "visualization agent" that "obscures the optical clarity of the hydrogel" and should hold Plaintiffs to the proper construction, *i.e.*, the only potential "visualization agent" in the accused products is a dye—which does not obscure the optical clarity of the hydrogel.

**Observable Change.** A number of claims contain phrases relating to the "visualization

agent" causing an "observable change" relating to the predetermined thickness of the hydrogel. (*See* D.I. 307 at 46-47 (identifying relevant claims).) The Court construed these phrases to "require a correlation between the visual change caused by the visualization agent and the predetermined thickness" (D.I. 307 at 48 (emphasis added).) Plaintiffs—as they argued during claim construction—seek to ignore this claim construction by removing the correlation requirement and merely requiring that the hydrogels reach a certain thickness. In particular, Plaintiffs' argument that "coverage" of sutures is sufficient to meet this limitation ignores the requirement that the "visual change caused by the visualization agent" must be correlated with the predetermined thickness. (*See, e.g.,* D.I. 403, Ex. 56 (Mays 12/23/2015 Tr.) at 159:22-160:5 ("Q. All right. So that isn't teaching using the color of the gel as a measure of the predetermined thickness, is it? A. Yeah, I would agree with you.").) This line of reasoning clearly contradicts the Court's requirement that the observable change caused by the visualization agent (*i.e.* the green dye in the accused hydrogels) be correlated with the predetermined thickness and thus should be excluded.

**Predetermined Thickness.** The Court construed "predetermined thickness" as "a thickness (which can be a singular thickness or a range of thickness), determined before application of the hydrogel, for a particular application." (D.I. 307 at 55 (emphasis added).) This construction requires a user to determine a thickness before each particular application. Plaintiffs should not be allowed to render the Court's construction superfluous by arguing that a general predetermination (*i.e.*, one that is not tied to a particular application) satisfies this limitation.

## III.   CONCLUSION

Allowing Plaintiffs or their experts to provide testimony and/or argument that contradicts the Court's claim constructions would confuse the issues, mislead the jury, and usurp the Court's role in instructing the jury on the applicable law. For the foregoing reasons, pursuant to Federal

Rules of Evidence 403 and 702, HyperBranch respectfully requests that the Court exclude any

testimony that is inconsistent with the Court's claim construction or renders them indefinite.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 5, 2018
11721036

*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for*
*HyperBranch Medical Technology, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were caused to be served on March 5, 2018 upon the following individuals in the manner indicated:

Karen L. Pascale, Esquire                                          *BY E-MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

Robert F. Altherr, Jr., Esquire                                    *BY E-MAIL*
Christopher B. Roth, Esquire
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005-4051
(202) 824-3000

Jason S. Shull, Esquire                                            *BY E-MAIL*
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 300
Chicago, IL 60606-7407
(312) 463-5000

John P. Iwanicki, Esquire                                          *BY E-MAIL*
BANNER & WITCOFF, LTD.
28 State Street, Suite 1800
Boston, MA 02109-1705
(617) 720-9600


*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)

# EXHIBIT 14(b)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

   v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

        Defendant.

C.A. No.  15-819-LPS-CJB

HIGHLY CONFIDENTIAL—
OUTSIDE COUNSEL EYES ONLY

**PLAINTIFFS' RESPONSE TO HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S
MOTION *IN LIMINE* NO. 1 TO EXCLUDE EXPERT TESTIMONY INCONSISTENT
WITH THIS COURT'S CLAIM CONSTRUCTION**

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

March 19, 2018

Defendant's motion *in limine* No. 1 seeks to exclude any testimony from Plaintiffs' experts that are contrary to this Court's constructions or that render the Court's constructions indefinite.  More specifically, HyperBranch motion addresses the following claim limitations: (i) "precursor", (ii) "visualization agent", (iii) "observable change," and (iv) "predetermined thickness."  HyperBranch premises its motion on misplaced allegations that Plaintiffs' experts have taken positions inconsistent with Court's claim constructions.  HB-MIL#1, at 1.  As explained below, the evidence HyperBranch cites fails to establish any inconsistent position, and, thus, the Court should deny this motion *in limine.  See e.g. Leonard v. Stemtech Health Sciences, Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013) ("The movant bears the burden of demonstrating that the evidence is inadmissable on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded.") (citations omitted).

**Precursor:** HyperBranch's motion *in limine* does not identify which expert's opinion regarding a "precursor" is inconsistent with the Court's claim construction, or explain why. Judge Burke's recent Report and Recommendation ("R&R") evidences that no such inconsistency exists. D.I. 558 (public version).  The R&R addressed evidence Plaintiffs' experts relied on to demonstrate that the accused products "read on the three precursor limitation ***under the Court's construction of 'precursor'.***" D.I. 558, at 9 (emphasis added).  Importantly, Judge Burke found that "the Court construed the term 'precursor' with as much precision as it could," and that the "parties are really ***fighting about fact issues*** relating to the ***application of that construction*** . . . ." D.I. 558, at 13 (emphasis added).  Although HyperBranch filed objections to the R&R, the Court has not ruled on those objections, nor determined that any of Plaintiffs' experts' opinions are inconsistent with its construction of "precursor." As such, it would be

premature to exclude Plaintiffs' experts' testimony on the "precursor" limitation.[1]

**Visualization Agent:** HyperBranch fails to identify any expert opinion that is inconsistent with the Court's construction of "visualization agent." The only alleged "inconsistent" argument/opinion is HyperBranch's citation to Plaintiffs' Opposition to Summary Judgment. HB-MIL#1, at 2 citing D.I. 443, at 20-21. In that Opposition, Plaintiffs' wrote: "Dr. Mays unrebutted testing further demonstrates that ***the green dye causes a change*** in color and transparency of the Adherus hydrogels (with or without air bubbles) . . . ." D.I. 443, at 20 (emphasis added). This makes clear that Plaintiffs' rely on the green dye, and not "air bubbles alone," as the "visualization agent," which is consistent with the Court's claim construction.

At its core, HyperBranch motion raises a ***factual*** issue relating to the application of "visualization agent" as construed by the Court to the accused products: "Plaintiffs and their experts continue to ***ignore the fact*** that the air bubbles in HyperBranch's accused products are responsible for obscuring optical clarity of the hydrogel." HB-MIL#1, at 2 (emphasis added); *id.* (HyperBranch position is the "dye . . . does not obscure the optical clarity of the hydrogel"). This factual dispute does not demonstrate that Plaintiffs' position is inconsistent with the construction of "visualization agent."

**Observable Change.** HyperBranch allegation that Plaintiffs seek to remove the correlation requirement in the "observable change" related limitations is misplaced. HB-MIL#1, at 2. To support its argument, HyperBranch cites solely to deposition testimony questioning Dr. Mays about statements in a particular IFU. *See* HB-MIL#1, at 3; D.I. 403, Ex. 56 at 158:5-160:5. This snippet of testimony does not consist of Dr. Mays comparing the accused products

---

[1] HyperBranch argues that Plaintiffs' claim interpretation (which is the Court's construction) "renders that claim term indefinite." HB-MIL#1, at 2. A motion *in limine* is not the proper vehicle to request that a claim term be found indefinite. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. CIV.A. 09-290, 2012 WL 5451495, at *2 (W.D. Pa. Nov. 7, 2012) ("The purpose of a motion *in limine* is to decide the admissibility of evidence.").

to the claims as construed by the Court. Indeed, nothing in this isolated snippet is, or suggests, an opinion that removes or ignores the correlation requirement from the Court's construction of the "observable change" related limitations.

**Predetermined Thickness.**  HyperBranch again fails to point to any particular expert opinion that is allegedly inconsistent with the Court's construction of the term "predetermined thickness."   HyperBranch's failure to identify specific evidence to exclude justifies denying its motion to exclude.  *See Apotex, Inc. v. Cephalon, Inc.,* Civ. Act. No. 2:06-cv-2768, 2017 WL 2362400, at *7 (E.D. Pa. May 31, 2017) (denying motion *in limine* because "without specific reference to the challenged evidence or an opportunity to review the purpose for which it is presented, [the court] cannot resolve Plaintiff's objections.").   In addition, Magistrate Burke issued a Report and Recommendation ("R&R") on March 13, 2018 recommending the denial of HyperBranch's motion for summary judgment of non-infringement based on the predetermined thickness claims.   D.I. 555.   Judge Burke did not find Plaintiffs' opinions or arguments inconsistent with the Court's claim construction.  If anything, the R&R criticized HyperBranch's interpretation of the Court's claim construction.  *Id.* at 18 ("It sounds like HyperBranch is suggesting that, pursuant to the Court's claim construction, the hydrogel has to turn a specific, single shade of green once it has been deposited to between 1-2 mm on any patient, under any circumstances. But that reads too much into the construction.")

In summary, HyperBranch has failed to identify any argument or opinion Plaintiffs may provide at trial that is truly inconsistent with the Court's construction of the foregoing claim limitations.  Thus, the Court should deny HyperBranch's motion *in limine* No. 1.

Dated:  March 19, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*

_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on March 19, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

| | |
|---|---|
| *For Defendant HyperBranch Medical Technology, Inc.:* | |
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |
| Morris, Nichols, Arsht & Tunnell LLP | |
| 1201 North Market Street | |
| P.O. Box 1347 | |
| Wilmington, DE 19899-1347 | |
| | |
| Cooley LLP | zHyperBranchIntegra@cooley.com |
| Jonathan Graves | |
| One Freedom Square | |
| Reston Town Center | |
| 11951 Freedom Drive | |
| Reston, VA 20190-5656 | |
| | |
| Adam M. Pivovar | |
| James P. Hughes | |
| Stephen C. Crenshaw | |
| Lisa F. Schwier | |
| Naina Soni | |
| 1299 Pennsylvania Avenue, NW | |
| Suite 700 | |
| Washington, DC 20004 | |

/s/ *Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
**Young Conaway Stargatt & Taylor llp**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

01:17886261.1

# EXHIBIT 14(c)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEGRA LIFESCIENCES CORP., | ) | |
| INTEGRA LIFESCIENCES SALES LLC, | ) | |
| CONFLUENT SURGICAL, INC., and | ) | |
| INCEPT LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 15-819 (LPS) (CJB) |
| v. | ) | |
| | ) | |
| HYPERBRANCH MEDICAL | ) | |
| TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1 TO EXCLUDE TESTIMONY INCONSISTENT WITH THIS COURT'S CLAIM CONSTRUCTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)

OF COUNSEL:

1201 North Market Street
Jonathan G. Graves                          P.O. Box 1347
COOLEY LLP                                  Wilmington, DE 19899-1347
One Freedom Square                          (302) 658-9200
Reston Town Center                          tgrimm@mnat.com
11951 Freedom Drive                         jtigan@mnat.com
Reston, VA 20190                            skraftschik@mnat.com
(703) 456-8000

Adam M. Pivovar                             *Attorneys for HyperBranch*
Stephen C. Crenshaw                         *Medical Technology, Inc.*
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 26, 2018

Plaintiffs do not dispute that testimony contrary to this Court's claim constructions or that render them indefinite should be excluded. *See, e.g., Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004); *Sprint Commc'ns Co. v. Cox Commc'ns Inc.*, No. 12-cv-487, at *3 (D. Del. Nov. 20, 2017).

**Visualization Agent:** Plaintiffs' Opposition does not dispute that Dr. Mays intends to argue that the visualization agent in the accused hydrogels can be a <u>combination</u> of green dye and air bubbles. (Opp'n at 2 citing D.I. 443 at 20; D.I. 403, Ex. 18 ¶ 52.) The Court already explicitly rejected Plaintiffs' argument that "the air bubbles from the sprayer combine with the dye to form a visualization agent" during claim construction. (D.I. 379 at 5-6.) Whether green dye alone causes an observable change may be a question of fact but, as a matter of law, the Court's claim construction excludes dye in combination with air bubbles. Plaintiffs should not be allowed to resurrect their lost claim construction arguments through Dr. Mays' trial testimony.

**Observable Change:** Plaintiffs completely ignore HyperBranch's specific critique that Dr. Mays intends to rely on coverage of sutures as the indication that a predetermined thickness has been met. (MIL 1 at 2-3.) In doing so, Dr. Mays obviates the requirement that the observable change is both <u>caused by</u> the visualization agent and <u>correlated with</u> the predetermined thickness. Both of these requirements are inherent in the Court's claim construction (D.I. 307 at 37-40 (causation); *id.* at 46-52 (correlation)).

**Predetermined Thickness:** Plaintiffs' Opposition again sidesteps HyperBranch's critique by ignoring that a predetermined thickness must be determined <u>before</u> application and for a <u>particular</u> application. Dr. Mays' and Dr. Rivet's testimony relying on the IFUs' general instructions to merely cover sutures in all applications is inconsistent with these requirements and should be excluded. (*See, e.g,* D.I. 403, Ex. 19 ¶¶ 34-35; *id.* at Ex. 18 ¶¶ 90, 139, 172, 184.)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch*
*Medical Technology, Inc.*

OF COUNSEL*:*

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 26, 2018
11769338

# EXHIBIT 15(a)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP.,                )
INTEGRA LIFESCIENCES SALES LLC,            )
CONFLUENT SURGICAL, INC., and              )
INCEPT LLC,                                )
                                           )   C.A. No. 15-819 (LPS) (CJB)
                Plaintiffs,                )
                                           )
        v.                                 )   CONFIDENTIAL
                                           )   FILED UNDER SEAL
HYPERBRANCH MEDICAL                        )
TECHNOLOGY, INC.,                          )
                                           )
                Defendant.                 )


**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S MOTION *IN LIMINE* NO. 2:
EXCLUDE EXPERT TESTIMONY OUTSIDE THE SCOPE OF EXPERT REPORTS**

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com


*Attorneys for HyperBranch
Medical Technology, Inc.*

HyperBranch moves to exclude any testimony from Plaintiffs' experts (Dr. Jimmy Mays, Dr. Dennis Rivet, Dr. Mark Distefano, and Mr. John Jarosz) that is outside of the scope of their Rule 26(a) expert reports.

## I.  ARGUMENT

Federal Rule of Civil Procedure 26(a)(2)(b) requires that a party's disclosure of a proposed expert witness is accompanied by a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Excluding expert opinions and testimony that fall outside the scope of those disclosed in reports is proper. *See Endo Pharms. Inc. v. Actavis Inc.*, Civ. A. No. 1:14-cv-1381-RGA, slip op. at 1-2 (D. Del. Feb. 8, 2017) (D.I. No. 173) (granting motion *in limine* precluding expert testimony on issues of non-obviousness outside of expert report); *see also SSL Servs., LLC v. Citrix Sys., Inc.*, Civ. A. No. 2:08-cv-158-JRG, 2012 WL 12906091, at *1 (E.D. Tex. May 24, 2012) ("All expert testimony shall be limited to topics and subject matter actually disclosed in reports or testified to in response to opposing party questions raised during the expert's deposition."); *NXP B.V. v. Blackberry, Ltd.*, No. 6:12-cv-00498-YK, slip op. at 8-9 (M.D. Fla. Mar. 25, 2014) (D.I. No. 420) (granting motion *in limine* precluding opinions outside of expert reports). Accordingly, testimony from each of Plaintiffs' experts should be confined to the opinions contained in their expert reports.

By way of example, Plaintiffs' damages expert, Mr. Jarosz, provided reports containing his opinions on lost profits from lost sales, lost profits from price erosion, and reasonable royalty for sales made outside the United States. The Court should not allow Mr. Jarosz to stray outside these opinions and offer, for example, new damages theories on lost profits or reasonable royalty for sales made inside the United States.

Similarly, Dr. Distefano provided his opinions on infringement of claims containing the

"biodegradable groups of the hydrogel consist of the esters" limitations and on invalidity issues relating to Plaintiffs' late-disclosed "biocompatibility" theory. Judge Burke recently granted summary judgment of non-infringement of the "esters" claims, thereby rendering Dr. Distefano's infringement opinions moot. (*See* D.I. 508.) As such, the Court should preclude Plaintiffs from offering Dr. Distefano as an infringement expert or from having him present invalidity rebuttal testimony outside of the "biocompatibility" issue.

Plaintiffs' technical expert, Dr. Mays, offered a number of opinions touching numerous aspects of this case, including infringement and invalidity. The multitude and variety of Dr. Mays' opinions does not, however, give him *carte blanche* to supplement his testimony at trial with undisclosed theories or argument to bolster his conclusions on, for example, the doctrine of equivalents. The Federal Rules require that Dr. Mays stick to the opinions disclosed in his expert report.

Finally, Dr. Rivet offered his opinions on how he understands HyperBranch's IFUs and his own use of Plaintiffs' DuraSeal. These narrow opinions are the only ones Dr. Rivet can offer at trial.

## II.   CONCLUSION

Allowing Plaintiffs' experts to step outside the bounds of their written reports would run afoul of Federal Rules of Civil Procedure 26 and 37. For all the foregoing reasons, the Court should preclude Plaintiffs' expert witnesses from providing testimony beyond the scope of their expert reports.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Thomas C. Grimm

Thomas C. Grimm (#1098)

OF COUNSEL:

Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

*Attorneys for*
*HyperBranch Medical Technology, Inc.*

March 5, 2018
11721037

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing were caused to be served on March 5, 2018 upon the following individuals in the manner indicated:

Karen L. Pascale, Esquire                                          *BY E-MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

Robert F. Altherr, Jr., Esquire                                    *BY E-MAIL*
Christopher B. Roth, Esquire
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005-4051
(202) 824-3000

Jason S. Shull, Esquire                                            *BY E-MAIL*
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 300
Chicago, IL 60606-7407
(312) 463-5000

John P. Iwanicki, Esquire                                          *BY E-MAIL*
BANNER & WITCOFF, LTD.
28 State Street, Suite 1800
Boston, MA 02109-1705
(617) 720-9600

*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)

# EXHIBIT 15(b)

CONFIDENTIAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

        Plaintiffs,

v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

        Defendant.

C.A. No.  15-819-LPS-CJB

HIGHLY CONFIDENTIAL—
OUTSIDE COUNSEL EYES ONLY

## PLAINTIFFS' RESPONSE TO HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EXPERT TESTIMONY OUTSIDE THE SCOPE OF EXPERT REPORTS

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC*

March 19, 2018

Defendant's motion *in limine* No. 2 seeks to exclude Plaintiffs' experts (Dr. Jimmy Mays, Dr. Dennis Rivet, Dr. Mark Distefano, and Mr. John Jarosz) from offering testimony outside the scope of their Rule 26(a) expert report. Although Plaintiffs agree in principle with HyperBranch that the parties' experts should be limited to the opinions disclosed in their reports, HyperBranch's motion goes too far and seeks to limit testimony that Plaintiffs have properly disclosed. Thus, HyperBranch's motion should be denied.

First, HyperBranch's request to "preclude Dr. Distefano as an infringement expert" is premature. Dr. Distefano submitted an infringement expert report addressing the claim limitation "biodegradable groups of the hydrogel consists of the esters" in the '5705 patent. *See* HB-MIL#2, at 2. Although Judge Burke entered a Report and Recommendation recommending that the Court grant summary judgment of non-infringement as to the '5705 patent, Plaintiffs filed objections (D.I. 529) and the Court has yet to rule on those objections. Accordingly, HyperBranch's motion to preclude Dr. Distefano's infringement testimony is premature.

Second, HyperBranch seeks to preclude Dr. Mays from providing testimony at trial "bolster[ing] his conclusions, on for example, the doctrine of equivalents." HB-MIL#2, at 2. However, an expert witness may expound at trial upon opinions set forth in their expert report.

Next, HyperBranch wrongly characterizes Dr. Rivet's as "narrow opinions" limited to his "understand[ing] of HyperBranch's IFUs and his own use of Plaintiffs' DuraSeal." HB-MIL#2, at 2. Dr. Rivet submitted an expert report on infringement explaining how the "visually observable change indicating a predetermined thickness" is met. D.I. 444, Ex. 14, ¶¶ 4, 27-28, 35-38. Additionally, Dr. Rivet submitted a rebuttal expert report on invalidity explaining why hydrogels containing barium sulfate are not "biocompatible" nor suitable to coat a patient's tissue. D.I. 444, Ex. 9, ¶¶ 19-32. Thus, Dr. Rivet may testify on the full scope of the opinions

contained in his report, and not simply on "how he understands HyperBranch's IFUs and his own use of Plaintiffs' DuraSeal." HB-MIL#2, at 2.

For at least these reasons, HyperBranch's motion *in limine* No. 2 should be denied.

Dated: March 19, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Karen L. Pascale, Esquire, hereby certify that on March 19, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

| | |
|---|---|
| *For Defendant HyperBranch Medical Technology, Inc.:* | |
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | |
| 1201 North Market Street | |
| P.O. Box 1347 | |
| Wilmington, DE 19899-1347 | |
| | |
| COOLEY LLP | zHyperBranchIntegra@cooley.com |
| Jonathan Graves | |
| One Freedom Square | |
| Reston Town Center | |
| 11951 Freedom Drive | |
| Reston, VA 20190-5656 | |
| Adam M. Pivovar | |
| James P. Hughes | |
| Stephen C. Crenshaw | |
| Lisa F. Schwier | |
| Naina Soni | |
| 1299 Pennsylvania Avenue, NW | |
| Suite 700 | |
| Washington, DC 20004 | |

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

01:17886261.1

# EXHIBIT 15(c)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEGRA LIFESCIENCES CORP., | ) | |
| INTEGRA LIFESCIENCES SALES LLC, | ) | |
| CONFLUENT SURGICAL, INC., and | ) | |
| INCEPT LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 15-819 (LPS) (CJB) |
| v. | ) | |
| | ) | |
| HYPERBRANCH MEDICAL | ) | |
| TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S REPLY IN SUPPORT
OF ITS MOTION *IN LIMINE* NO. 2 TO EXCLUDE EXPERT TESTIMONY
<u>OUTSIDE THE SCOPE OF EXPERT REPORTS</u>**

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 26, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch
Medical Technology, Inc.*

Plaintiffs agree "in principle with HyperBranch that the parties' experts should be limited to the opinions disclosed in their reports." (Opp'n at 1.) Yet again, however, Plaintiffs ask the Court to deny HyperBranch's motion and leave open the possibility of improper testimony being presented to the jury. (*Id.* at 1-2.)

Plaintiffs' objections to Magistrate Judge Burke's grant of summary judgment of non-infringement as to the '5,705 patent have no bearing on HyperBranch's motion. Plaintiffs' argument that HyperBranch's motion is premature with respect to Dr. Distefano lacks merit. This Court's Standing Order for Rule 72 Objections highlights that a magistrate judge's rulings are not rendered null and void simply by virtue of the filing of objections. (Standing Order at 3.) Plaintiffs agree that Dr. Distefano's infringement report addressed only the "biodegradable groups of the hydrogel consist of the esters" claim limitation in the '5,705 patent. (Opp'n at 1.) Thus, there is no dispute that Dr. Distefano's testimony is limited to only those infringement opinions—which would be irrelevant if the '5,705 patent is not at issue.

As for Dr. Rivet, to the extent he seeks to testify regarding predetermined thickness, he should be limited to what he disclosed in his report and during deposition and thus prohibited from relying on the combination of air bubbles and dye as a visualization agent. (D.I. 403, Ex. 175 at 249:8-20 (admitting that air bubbles are not a visualization agent).)

HyperBranch's request that Dr. Mays be precluded from providing testimony at trial that was not disclosed in his report embodies the core of Rules 26 and 37. Plaintiffs' assertion that "an expert witness may expound at trial upon opinions" directly contravenes the purpose of these rules and expert discovery. (Opp'n at 1.) Allowing Dr. Mays to provide previously undisclosed testimony may be in line with Plaintiffs' "pattern of untimeliness" (D.I. 601 at 7), but the Federal Rules forbid it.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch*
*Medical Technology, Inc.*

OF COUNSEL*:*

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 26, 2018
11769376

2

# EXHIBIT 16(a)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTEGRA LIFESCIENCES CORP., | ) | |
| INTEGRA LIFESCIENCES SALES LLC, | ) | |
| CONFLUENT SURGICAL, INC., and | ) | |
| INCEPT LLC, | ) | |
| | ) | C.A. No. 15-819 (LPS) (CJB) |
| Plaintiffs, | ) | |
| | ) | CONFIDENTIAL |
| v. | ) | FILED UNDER SEAL |
| | ) | |
| HYPERBRANCH MEDICAL | ) | |
| TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S MOTION *IN LIMINE* NO. 3:
EXCLUDE FACT WITNESSES FROM PROVIDING EXPERT OPINIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

*Attorneys for HyperBranch
Medical Technology, Inc.*

Defendant HyperBranch Medical Technology, Inc. moves to exclude any testimony from Plaintiffs Integra Lifesciences Corp., Integra Lifesciences Sales LLC, Confluent Surgical, Inc., and Incept LLC's fact witnesses consisting of expert opinion testimony within the scope of Federal Rule of Evidence 702 or opinion testimony on issues of law.

## I.      PLAINTIFFS' FACT WITNESSES ARE NOT EXPERTS

Plaintiffs have identified the following fact witnesses that they anticipate will testify live at trial: Thomas Harrison, Curtis Lenox, Steve Bennett, Eva Tan, and Amarpreet Sawhney. None of these witnesses provided the required disclosures for expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2) and, as such, none of these witnesses should be permitted to provide expert opinion testimony at trial.

In spite of the fact that Dr. Sawhney did not provide an expert report and has not been offered as an expert witness, Plaintiffs' damages expert, Mr. John Jarosz, relies on a conversation with Dr. Sawhney to support his argument that the patents-in-suit are "at the core of DuraSeal" and that the "patents-in-suit enable novel features" (*See* D.I. 403, Exs. 176 (Jarosz Opening Rpt.) ¶ 182; 180 (11/03 Jarosz Tr.) at 40:12-41:9.) To the extent Dr. Sawhney seeks to provide opinion testimony as to the alleged patentability of the asserted patents over the prior art and the coverage of the claims—including whether Plaintiffs' DuraSeal product is covered by the patents-in-suit—he was required to do so in a Rule 26(a) report.

## II.     PLAINTIFFS' FACT WITNESSES CANNOT TESTIFY ON LEGAL ISSUES

It is axiomatic that "[t]he Rules of Evidence do not permit expert testimony as to legal conclusions." *Proctor & Gamble Co. v. Teva Pharms. USA, Inc.*, No. Civ.A. 04-940-JJF, 2006 WL 2241018, at *1 (D. Del. Aug. 4, 2006) (citing *Salas by Salas v. Wang,* 846 F.2d 897, 905 n.5 (3d Cir.1988)). It is also black letter law that "[p]riority, conception, and reduction to practice are questions of law which are based on subsidiary factual findings." *Cooper v. Goldfarb,* 154 F.3d

1.

1321, 1327 (Fed. Cir. 1998). As such, it is improper for a witness—expert or otherwise—to opine on the ultimate legal issues of conception and reduction to practice. Despite this prohibition, Plaintiffs recently submitted declarations from supposed fact witnesses that clearly cross this line.

Nine months after the close of fact discovery, three months after the close of expert discovery, and just six weeks before the beginning of trial, Plaintiffs sought to change the priority dates they asserted throughout fact discovery.[1] In support of this change, Plaintiffs submitted declarations from three of the inventors which amount to little more than bare conclusions of law regarding the conception and reduction to practice of the '034 patent:

- **Sawhney and Edelman Declaration:** "Dunn **evidences conception and reduction to practice** of "SprayGel" at least as early as February 2001, which is the publication date of Dunn. However, Dunn **evidences an earlier conception and reduction to practice date** of at least March 27, 2000 (which is the submission date) or September 20, 2000 (which is the acceptance date of Dunn prior to publication). The reduction to practice of the invention occurred in the United States."

- **Pathak Declaration:** "Exhibit A **evidences reduction to practice** of the subject matter claimed in claim 10 of U.S. Patent No. 7,009,034 at least as early as February 2001. The reduction to practice of the invention occurred in the United States."

(D.I. 510-2, Ex. 3(Surreply Suppl. Rpt. of Dr. Mays) ¶¶ 5-6; *id.* at Ex. B (Decl. of Sawhney & Edelman) ¶ 4; *id.* at Ex. C (Pathak Decl.) ¶ 2.)

Rather than provide testimony that lays factual, evidentiary support for a determination of the dates of conception and reduction to practice, these untimely declarations make clear that

---

[1] The factual background for this issue is addressed more fully in HyperBranch's motion to strike. (D.I. 510, 511.) Because Plaintiffs failed to disclose their new priority dates during fact discovery and instead waited until the last minute—when it would be most prejudicial to HyperBranch—HyperBranch believes Plaintiffs should be precluded from relying on their changed dates. *See Personalized User Model, L.L.P. v. Google Inc.*, C.A. No. 09-525-LPS, 2014 WL 977651, at *1-*2 (D. Del. Mar. 6, 2014) (granting motion *in limine* precluding undisclosed design changes).

Plaintiffs intend to have their inventors provide testimony consisting of legal conclusions as to what these dates are. This kind of conclusory legal testimony is well outside the purview of proper fact witness testimony and should be excluded.

## III.   CONCLUSION

Allowing Plaintiffs' fact witnesses to provide opinion testimony—in the form of Rule 702 expert opinion or opinion testimony on legal issues—would confuse the issues, mislead the jury, and usurp the Court's role in instructing the jury on the applicable law. For the foregoing reasons, the Court should preclude Plaintiffs' fact witnesses from providing any such opinion testimony pursuant to Federal Rules of Evidence 403 and 702, as well as Federal Rules of Civil Procedure 26 and 37.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for*
*HyperBranch Medical Technology, Inc.*

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 5, 2018
11721038

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing were caused to be served on March 5, 2018 upon the following individuals in the manner indicated:

Karen L. Pascale, Esquire                                                       *BY E-MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600

Robert F. Altherr, Jr., Esquire                                                 *BY E-MAIL*
Christopher B. Roth, Esquire
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005-4051
(202) 824-3000

Jason S. Shull, Esquire                                                         *BY E-MAIL*
BANNER & WITCOFF, LTD.
Ten South Wacker Drive, Suite 300
Chicago, IL 60606-7407
(312) 463-5000

John P. Iwanicki, Esquire                                                       *BY E-MAIL*
BANNER & WITCOFF, LTD.
28 State Street, Suite 1800
Boston, MA 02109-1705
(617) 720-9600

*/s/ Thomas C. Grimm*
Thomas C. Grimm (#1098)

1.

# EXHIBIT 16(b)

CONFIDENTIAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEGRA LIFESCIENCES CORP., INTEGRA LIFESCIENCES SALES LLC, CONFLUENT SURGICAL, INC., AND INCEPT LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HYPERBRANCH MEDICAL TECHNOLOGY, INC., <br><br> Defendant. | C.A. No.  15-819-LPS-CJB <br><br> HIGHLY CONFIDENTIAL— OUTSIDE COUNSEL EYES ONLY |

**PLAINTIFFS' RESPONSE TO HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE FACT WITNESSES FROM PROVIDING EXPERT OPINIONS**

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences Corp., Integra LifeSciences Sales LLC, Confluent Surgical, Inc., and Incept LLC*

March 19, 2018

Defendant's motion *in limine* No. 3 seeks to (i) exclude fact witnesses from offering expert opinions because the fact witnesses did not provide expert reports and (ii) exclude fact witnesses from testifying on legal issues.  This motion should be denied for the reasons below.

First, HyperBranch merely speculates that fact witnesses ***may*** provide expert opinions, but fails to identify any expert testimony—be it from depositions, declarations, etc.—anticipated from Thomas Harrison, Curtis Lennox, Steve Bennett, and Eva Tan. *See* HB-MIL#3, at 1. For this reason, the motion should be denied with respect to these fact witnesses.  *See e.g. Leonard v. Stemtech Health Sciences, Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013) ("The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded.") (citations omitted).  Any issues with whether the aforementioned fact witnesses' testimony crosses into the realm of expert testimony is best handled through objections at trial.

Similarly, HyperBranch does not identify any specific testimony of Dr. Sawhney that consists of expert opinion as to "patentability" or "claim coverage." *See* HB-MIL#3, at 1. Rather, HyperBranch speculates that he too ***may*** provide such testimony at trial based on a reference in Mr. Jarosz's damages expert report to a conversation Mr. Jarosz had with Dr. Sawhney.  *Id.* ("To the extent Dr. Sawhney seeks to provide opinion testimony . . . ."). Dr. Sawhney is a named inventor on the '034 patent, which resulted from his and his colleague's work relating to the development of the DuraSeal invention.  *See* D.I. 501-2, at 86 of 110, ¶ 1. Of course, Dr. Sawhney may testify as a fact witness about the DuraSeal invention, including how and when it was conceived and developed, how the DuraSeal invention relates to the patents-in-suit, and his belief as to how his invention differed from prior art hydrogels. All of this testimony is either factual in nature, or lay witness opinion that is "rationally based on the witness's

perception." *See* Fed. R. Evid. 701; *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir. 1995) (Rule 701 "requires that a lay opinion witness have a reasonable basis grounded either in experience or specialized knowledge for arriving at the opinion that he or she expresses."); *Piersons v. Quality Archer Designs, Inc.*, 2009 WL 10680314, at *6-7 (N.D.N.Y. Feb. 2, 2009) (declining in part motion to strike inventor's declaration and affidavit on the grounds that it was "riddled with expert opinion," finding that the inventor "possess[ed] the requisite specialized knowledge to offer opinions concerning . . . prior art and the state of the industry at the time of his invention."). The mere fact that the subject matter of the case involves patents does not transform Dr. Sawhney's factual testimony or lay opinion into expert opinion.

Second, HyperBranch improperly seeks to exclude Dr. Sawhney and Dr. Pathak from testifying about facts relating to the conception and reduction of the '034 patent relative to a document entitled "Evaluation of the SprayGel$^{TM}$," which is referred to as the "Dunn" document. D.I. 501-2, at 91 of 110, ¶ 2.  As HyperBranch acknowledged, "conception and reduction to practice are questions of law ***which are based on subsidiary factual findings.***"  HB-MIL#3, at 1 (emphasis added) citing *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). Dr. Sawhney and Dr. Pathak proposed testimony lays factual support for a determination of the dates of conception and reduction to practice.  For example, Dr. Sawhney and Dr. Pathak will testify that:

- Confluent  commissioned a clinical evaluation of "SprayGel" by Dunn's team;

- They directed the clinical evaluation of "SprayGel" described in the Dunn document;

- They provided the "SprayGel" raw materials used by Dunn's team in the clinical evaluation;

- Dunn's team worked under the direction and supervision of Dr. Sawhney and Dr. Pathak;

- The study described in the Dunn document was done on behalf of Confluent; and

- Dunn's team was not involved in the conception of the subject matter disclosed in the Dunn document.

D.I. 501-2, at 92 of 110, ¶ 4. Although their declaration refers to three dates relating to the Dunn document: (1) its publication date (February 2001), (2) its submission date (March 27, 2000), and (3) its acceptance date (September 20, 2000), these references are simply to the dates that frame the timing of Dr. Sawhney and Dr. Pathak's work relative to the timing of the work referred to in the Dunn document. Their proposed testimony is thus neither expert testimony, nor an opinion on a legal issue.

Because HyperBranch failed to identify any "expert" opinions that Plaintiffs' fact witnesses are anticipated to proffer at trial, its motion *in limine* No. 3 should be denied.

Dated:  March 19, 2018

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606
Telephone: (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Karen L. Pascale*
_____
Karen L. Pascale (#2903) [kpascale@ycst.com]
Robert M. Vrana (#5666) [rvrana@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences*
*Corp., Integra LifeSciences Sales LLC, Confluent*
*Surgical, Inc., and Incept LLC*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on March 19, 2018, I caused true and

correct copies of the foregoing document to be served upon the following counsel of record by e-

mail:

| | |
|---|---|
| *For Defendant HyperBranch Medical Technology, Inc.:* | |
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | |
| 1201 North Market Street | |
| P.O. Box 1347 | |
| Wilmington, DE 19899-1347 | |
| | |
| COOLEY LLP | zHyperBranchIntegra@cooley.com |
| Jonathan Graves | |
| One Freedom Square | |
| Reston Town Center | |
| 11951 Freedom Drive | |
| Reston, VA 20190-5656 | |
| Adam M. Pivovar | |
| James P. Hughes | |
| Stephen C. Crenshaw | |
| Lisa F. Schwier | |
| Naina Soni | |
| 1299 Pennsylvania Avenue, NW | |
| Suite 700 | |
| Washington, DC 20004 | |

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs Integra LifeSciences Corp.,*
*Integra LifeSciences Sales LLC, Confluent Surgical*
*Inc., and Incept LLC*

# EXHIBIT 16(c)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP.,           )
INTEGRA LIFESCIENCES SALES LLC,       )
CONFLUENT SURGICAL, INC., and         )
INCEPT LLC,                           )
                                      )
                Plaintiffs,           )
                                      )    C.A. No. 15-819 (LPS) (CJB)
        v.                            )
                                      )
HYPERBRANCH MEDICAL                   )
TECHNOLOGY, INC.,                     )
                                      )
                Defendant.            )

**HYPERBRANCH MEDICAL TECHNOLOGY, INC.'S REPLY IN SUPPORT
OF ITS MOTION *IN LIMINE* NO. 3 TO EXCLUDE FACT WITNESSES
<u>FROM PROVIDING EXPERT OPINIONS</u>**

OF COUNSEL:

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 26, 2018

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch
Medical Technology, Inc.*

Plaintiffs' opposition to HyperBranch's third motion *in limine* ignores the primary purpose of all motions *in limine*: to exclude from consideration evidence that should not be presented to the jury because it would not be admissible for any purpose. *Jonasson v. Lutheran Child and Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Naked legal conclusions and expert opinions from fact witnesses are not admissible evidence.

Plaintiffs' reliance on *Leonard* is misplaced. In *Leonard*, the Court denied a motion *in limine* seeking to exclude broad categories of evidence and argument as irrelevant. *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276-77 (D. Del. 2013). The Court acknowledged that, at the *in limine* stage, it was unable to analyze "the foundation, relevancy, and potential prejudice" of specific pieces of evidence within such a broad category, and thus, could not prematurely exclude them. *Id.* Here, though, HyperBranch has met its "burden of demonstrating that the evidence is inadmissible on any relevant ground," *id.*, because a lay witness' testimony amounting to expert opinion or legal conclusions is never admissible. *Merit Indus., Inc. v. JVL Corp.*, Civ. No. 03-1618, 1008 WL 4678688, at *1 (E.D. Pa. May 28, 2008).

Moreover, contrary to Plaintiffs' assertion, HyperBranch's motion is not directed toward precluding factual predicates. Dr. Sawhney can testify about *facts* relating to DuraSeal, but he cannot offer opinions on legal issues, such as "how the DuraSeal invention relates to the patents-in-suit" and "how his invention differed from prior art hydrogels". (Opp'n at 1.) These constitute improper infringement and invalidity expert opinions. Plaintiffs' admission that Dr. Sawhney will proffer such testimony shows why HyperBranch's motion *in limine* should be granted. Finally, given Judge Burke's recent Order striking Plaintiffs' new priority date contentions, (D.I. 601), any testimony from Drs. Sawhney and Pathak regarding conception and reduction to practice dates for the '034 patent is not only improper opinion testimony, but also irrelevant.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Thomas C. Grimm (#1098)
Jeremy A. Tigan (#5239)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tgrimm@mnat.com
jtigan@mnat.com
skraftschik@mnat.com

*Attorneys for HyperBranch*
*Medical Technology, Inc.*

OF COUNSEL*:*

Jonathan G. Graves
COOLEY LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

Adam M. Pivovar
Stephen C. Crenshaw
James P. Hughes
Nicholas G. Lockhart
Lisa F. Schwier
Naina Soni
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 26, 2018
11769356

2.