## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTEGRA LIFESCIENCES CORP., INTEGRA
LIFESCIENCES SALES LLC, CONFLUENT
SURGICAL, INC., AND INCEPT LLC,

      Plaintiffs,

      v.

HYPERBRANCH MEDICAL TECHNOLOGY,
INC.,

      Defendant.

Civil Action No.  15-819-LPS-CJB

**REDACTED - PUBLIC VERSION**

## EXHIBIT 1 TO
## PLAINTIFFS' MOTION FOR REDACTIONS TO THE TRANSCRIPT
## OF THE MAY 15, 2018 FINAL PRETRIAL CONFERNCE

*Of Counsel:*

Robert F. Altherr, Jr.
Christopher B. Roth
**BANNER & WITCOFF, LTD.**
1100 13th Street NW
Suite 1200
Washington, DC 20005
Telephone: (202) 824-3000

John P. Iwanicki
**BANNER & WITCOFF, LTD.**
28 State Street, Suite 1800
Boston, MA 02109
Telephone: (617) 720-9600

Jason S. Shull
Matthew P. Becker
**BANNER & WITCOFF, LTD.**
Ten South Wacker
Suite 3000
Chicago, IL 60606
Telephone (312) 463-5000

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

Karen L. Pascale (#2903) [kpascale@ycst.com]
James L. Higgins (#5021) [jhiggins@ycst.com]
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600

*Attorneys for Plaintiffs, Integra LifeSciences
Corp., Integra LifeSciences Sales LLC, Confluent
Surgical, Inc., and Incept LLC*

August 6, 2018

Redacted Version:   August 13, 2018

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE


INTEGRA LIFESCIENCES CORP.      )
INTEGRA LIFESCIENCES SALES, LLC,)
CONCLUENT SURGICAL, INC., and   )
INCEPT, LLC,                    )
                                )
          Plaintiffs,           )
                                ) Case No.
v.                              ) 15-819-LPS-CJB
                                )
HYPERBRANCH MEDICAL TECHNOLOGY, )
INC.,                           )
                                )
          Defendant.            )



                  Tuesday, May 15, 2018
                  8:38 a.m.
                  Courtroom 6B


                  844 King Street
                  Wilmington, Delaware



BEFORE:  THE HONORABLE LEONARD P. STARK
           United States Chief District Court Judge
```

APPEARANCES:


          YOUNG CONAWAY STARGATT & TAYLOR
          BY:  KAREN PASCALE, ESQ.

               -and-

          BANNER & WITCOFF, LTD
          BY:  ROBERT F. ALTHERR, JR., ESQ.
          BY:  JOHN P. IWANICKI, ESQ.
          BY:  CHRISTOPHER ROTH, ESQ.


               Counsel for the Plaintiffs




          MORRIS NICHOLS ARSHT & TUNNELL, LLP
          BY:  THOMAS C. GRIMM, ESQ.
          BY:  JEREMY TIGAN, ESQ.

               -and-

          COOLEY, LLP
          BY:  JONATHAN GRAVES, ESQ.
          BY:  ADAM PIVOVAR, ESQ.
          BY:  STEPHEN CRENSHAW, ESQ.


               Counsel for the Defendant

```
 1                    THE COURT:  Good morning, everybody.
 2      Please be seated.  I'll have you start by putting
 3      your appearances on the record for us, please.
 4                    MS. PASCALE:  Good morning, Your
 5        Honor.
 6                    THE COURT:  Good morning.
 7                    MS. PASCALE:  Karen Pascale from
 8      Young Conaway for the plaintiffs.  If I may
 9      introduce from Banner & Witcoff, this is Robert
10      Altherr, John Iwanicki and Christopher Roth.
11                    THE COURT:  Good morning.
12                    MR. GRIMM:  Good morning, Your
13      Honor.  Thomas Grimm, Morris, Nichols, Arsht &
14      Tunnell for defendant HyperBranch.  My partner,
15      Jeremy Tigan is with me this morning as are our
16      colleagues from the Cooley firm who you have met
17      before, Jonathan Graves, Adam Pivovar and
18      Stephen Crenshaw.
19                    THE COURT:  Welcome again to all
20        of you.
21                    So we're here for the pretrial
22      conference for the jury trial that is going to
23      begin on May 29th.  And we have a pretty busy
24      agenda at least from my end this morning.  Let
```

1    me tell you the order in which I generally plan

2    to raise the various issues that I'm aware of

3    and, of course, you'll have a chance to raise

4    any other issues provided we have time after all

5    of this.

6              I want to first talk about the

7    whole set of claim construction questions and

8    whether or not anybody is trying to admit

9    opinions or evidence inconsistent with the

10   Court's claim construction.  After that, I want

11   to talk about the defendant's motion to sever

12   and stay the proceedings with respect to claim

13   10 of the '034 patent.

14             I want to talk after that about

15   the plaintiff's motion for reconsideration of

16   certain aspects of our rulings on the motions in

17   limine.

18             Then we'll talk about the

19   defendant's objections to the R&R regarding

20   summary judgment related to claim 10 of the '034

21   patent.

22             Most likely after that we'll go

23   through the list of other issues that I

24   identified in my order the other day that we saw

```
 1     as open issues after reviewing the pretrial
 2     order.  We'll talk about some of the mechanics
 3     of how we'll run the courtroom and what the
 4     trial will look like, and we'll see if you all
 5     have other issues besides those that I have
 6     identified.
 7                 Before we jump into that, any
 8     questions from the plaintiff?
 9                 MR. ALTHERR:  No, Your Honor.
10                 THE COURT:  And how about from the
11     defendant?
12                 MR. GRAVES:  No, Your Honor.
13                 THE COURT:  Okay.  Then let's
14     start on these claim construction questions.  We
15     got the submission yesterday.  And I guess let's
16     first start with the issues that the plaintiffs
17     have raised where they think the defendants are
18     going to offer evidence and argument that is
19     inconsistent with the Court's claim
20     construction.
21                 And just as an initial matter, let
22     me confirm with the defendants, do you intend to
23     offer evidence and argument that the plaintiffs
24     have identified, because if you don't, that will
```

1        cut the discussion short?

2                    MR. PIVOVAR:  I can address that

3        briefly, Your Honor.

4                    THE COURT:  Sure.

5                    MR. PIVOVAR:  The answer to that

6        really is yes because how we took your order of

7        Friday was to essentially help you identify

8        specific issues that have been disputed between

9        the parties already and for which there has been

10       some resolution by the Court of a claim

11       construction dispute that had been adverse one

12       side or the other that would sweep all of a

13       certain expert's opinion into that camp.

14                   And what's really happened here,

15       Your Honor, is they've essentially identified

16       everything that our expert has on

17       noninfringement of these predetermined thickness

18       claims.  And there are a lot of different claim

19       constructions there.

20                   If you look at the order from

21       Judge Burke on the Daubert issue, he said your

22       expert applied the same thing and you look at

23       one little small thing.  They have taken that as

24       we can take a run at knocking out all the

```
1     opinions on noninfringement and invalidity for

2     the entirety of everything your experts have

3     there.  So we think it's become kind of an

4     overreach from plaintiffs on that.  We do intend

5     to pursue that.

6               THE COURT:  All right.  Let me get

7     somebody from the plaintiffs up here and let me

8     make sure I understand what it is you think the

9     defendants are going to do that is inconsistent.

10    And first let me say, even though it was pretty

11    lengthy what you put together for us, at the end

12    of the day it seemed to me that everything

13    you're challenging relates to the predetermined

14    thickness limitation.  Is that correct?

15              MR. IWANICKI:  Well, for the most

16    part, Your Honor, there is one indefiniteness

17    rejection with respect to claim 10.  And let me

18    -- it's at section C, defendant's opinion that

19    claim 10 of the '034 patent is indefinite is not

20    consistent with the Court's claim construction.

21              THE COURT:  Other than that,

22    everything else in those eleven pages relates to

23    predetermined thickness; is that right?

24              MR. IWANICKI:  Yes, Your Honor.
```

```
 1                    THE COURT:  Let's talk about

 2      predetermined thickness and we'll come to your

 3      other one after we talk through this one.

 4                    MR. IWANICKI:  Certainly, Your

 5      Honor.  We took Your Honor's order to provide

 6      precision and to the best we could we did

 7      provide precision in going through the relief

 8      that we had requested as well as the plaintiff's

 9      Daubert relief that was sought in the Court's

10      rulings.  And it's quite clear that in

11      determining what the predetermined thickness

12      limitations mean, the observable change and

13      predetermined thickness, the way that was

14      interpreted by the expert, Dr. Lowman, was that

15      three things, it required a categorical change

16      in color or a specific color or a specific

17      thickness, or color matching from memory.

18                    THE COURT:  You say that's three

19      different things.  He's saying that only one of

20      those three need to be found.  Is that correct?

21      That is your understanding of their expert's

22      opinion.

23                    MR. IWANICKI:  They have different

24      opinions based upon these particular aspects of
```

```
 1    what they think the observable change is and the

 2    predetermined thickness is.  And what we did,

 3    Your Honor, was to go through the report and

 4    particularly identify those paragraphs where

 5    their experts provide an opinion as to what they

 6    think observable change and predetermined

 7    thickness means.  And it's one of those three.

 8    And the Court says it's none of those three.

 9                THE COURT:  So, first, I want to

10    make sure we're all on the same page here so we

11    have to move slowly.  The claim talks about

12    predetermined thickness; correct?

13                MR. IWANICKI:  Yes.

14                THE COURT:  Observable change, is

15    that in the claim as well?

16                MR. IWANICKI:  It is in the

17    predetermined thickness claims, yes, Your Honor.

18                THE COURT:  And so we construed

19    some of this language and your argument is that

20    the defendant's experts have added on additional

21    limitations to what we said these claim

22    limitations require.  Correct?

23                MR. IWANICKI:  That's correct.

24    And the opinions that are presented in
```

```
 1        Dr. Lowman's reports.

 2                    THE COURT:  And in particular, one

 3        of the things you say the defendants have read

 4        into these claims that is not there is a

 5        requirement that one of three things be present,

 6        and then you listed three.  Am I following you?

 7                    MR. IWANICKI:  Yes.

 8                    THE COURT:  Okay.  Tell me those

 9        three things again that you're saying the

10        defendant's experts saying need to be present.

11                    MR. IWANICKI:  Okay.  A

12        categorical change in color.  That's number one.

13        Number two, it's the position that there must be

14        a specific color for a specific thickness.  The

15        user must understand that there is a specific

16        color for a specific thickness.  And number

17        three, the user must be able to match from

18        memory the initial color to the final color

19        indicating predetermined thickness.

20                    THE COURT:  So I had thought that

21        the defendant's experts were accused by you of

22        requiring all three of those things in order --

23        that you would have to prove all three of those

24        things in order to prove infringement.  Is that
```

1    your understanding of what the defendant's

2    experts are arguing, or is it not?

3                    MR. IWANICKI:  I think what the

4    defendant's experts are arguing, certainly they

5    think we can link number two and number three

6    together to a certain extent, the specific color

7    for a specific thickness because essentially

8    what they're saying is first of all, you need to

9    have a specific color for a specific thickness

10   and you need to color match from memory.  And

11   because they don't -- they believe that they

12   don't do that or that's not a feature of the

13   accused hydrogels, that they do not infringe the

14   claims.

15                   THE COURT:  All right.  So in

16   other words what it is, you don't think any of

17   those three things are required by the claims;

18   correct?

19                   MR. IWANICKI:  That's correct,

20   Your Honor.  I'm sorry if I misunderstood your

21   question.  Yes, absolutely.

22                   And, Your Honor, their

23   construction also narrows the predetermined

24   thickness to a single thickness and not a range

```
 1          as the Court had held.

 2                    THE COURT:  Okay.

 3                    MR. IWANICKI:  And so what we did,

 4          Your Honor, is we went through and we identified

 5          the paragraphs where Dr. Lowman is opining with

 6          respect to the particular requirements we just

 7          talked about, and I'll give you as an example, a

 8          human must match a specific color, and this is

 9          on the noninfringement, this is number one on

10          our list, their noninfringement positions.  A

11          human must match a specific color or

12          transparency of the hydrogel at a predetermined

13          thickness from memory.  That is what Dr. Lowman

14          says is required in order to infringe the

15          claims.  And the Court held that is not

16          required.  So if they're intending on bringing a

17          position of noninfringement based on that,

18          that's inconsistent with the Court's claim

19          construction.

20                    THE COURT:  So is it your view

21          that if I agree with you that there is -- there

22          are no noninfringement or invalidity opinions

23          left that their experts can present.

24                    MR. IWANICKI:  I think that's
```

1    correct, Your Honor, because Dr. Lowman did not

2    provide an alternative to something other than

3    his own understanding of what the claims mean

4    when opining on noninfringement or on the many

5    different invalidity positions.

6               And it's quite clear, Your Honor,

7    that they're relying on these inconsistent

8    opinions because what you can essentially see is

9    what we have done is we have taken the actual

10   headings from Dr. Lowman's report and, for

11   example, we'll go to one of them here, it's at

12   page seven, opinion that the predetermined

13   thickness claims are invalid for lack of

14   enablement and lack of written description

15   because there is no disclosure in the

16   specification teaching how any of the disclosed

17   visualization agents could cause an categorical

18   observable change in color to indicate a

19   predetermined thickness of hydrogel.  That is

20   the opinion that's in his expert report, one of

21   the opinions on indefiniteness.

22               Another one, the predetermined

23   thickness claims are invalid for lack of

24   enablement because a human cannot perform the

1    claimed color or transparency memory match.  So

2    they're saying that's a requirement of the

3    claim, and because the specification doesn't

4    teach one of ordinary skill in the art how to do

5    that, it lacks enablement.  And so on --

6                    THE COURT:  I think I understand.

7    Let me hear from the defendant now.

8                    MR. PIVOVAR:  Your Honor, I wanted

9    to touch on this categorical change thing first

10   because I think that the plaintiffs are grossly

11   mischaracterizing Dr. Lowman's position.  So

12   there is two aspects to this.  You have

13   infringement where you look at the whole scope

14   of the claim.  And what the Court faulted

15   Dr. Lowman and Dr. Flombaum for is using wording

16   that could potentially be used to narrow that.

17                    So the ranges that they're saying

18   that our experts are opining there is full scope

19   of this claim and maybe there is like some

20   possibility that they narrowed it down.  But

21   there is no dispute at all that these particular

22   features of requiring categorical change or the

23   other things fall within the scope of the claim.

24                    And when you look at exactly what

```
1     is at page seven of the submission last night,

2     or yesterday, you'll see that -- you'd see, Your

3     Honor, they say oh, Dr. Lowman, he relies on an

4     understanding of predetermined thickness claims

5     that requires a categorical change.  But let's

6     look at the quotations they have for his expert

7     report.  The quotation doesn't say that.  It

8     says they include a categorical change.  So

9     there is a difference between --

10              THE COURT:  Are you saying you

11    only want to put your expert on to say that hey,

12    we would also infringe if we had a categorical

13    change.  We don't have categorical change, but

14    I'm not opining that we don't infringe because

15    we lack a categorical change?

16              MR. PIVOVAR:  That's essentially

17    right because the full scope of the claim meets

18    a categorical change requirement and there is no

19    teaching of that part of the claim.  But our

20    argument about noninfringement is not related to

21    there not being a categorical change.

22              THE COURT:  You agree that no

23    categorical change is required in order to

24    practice these claims?
```

16

1              MR. PIVOVAR:  Yes.  It's not

2      required.  So it's not necessary.

3              THE COURT:  If you have a

4      categorical change and everything else, you

5      infringe.

6              MR. PIVOVAR:  You would infringe.

7      That's the difference, we say this is one

8      embodiment that you can have within the full

9      scope of the claim that isn't enabled and there

10     is no written description for so it's invalid,

11     but that doesn't mean if you don't practice that

12     small part you don't necessarily infringe.

13             THE COURT:  So it's an invalidity

14     opinion, it's not a noninfringement opinion?

15             MR. PIVOVAR:  Exactly.  That's why

16     it's says includes, not exclusive --

17             THE COURT:  Do you propose to

18     offer your experts to talk at all about

19     categorical change in the context of

20     noninfringement?

21             MR. PIVOVAR:  No.  And we have to

22     understand exactly, I think if we could put this

23     into a little bit of context, we can explain why

24     it is -- can you please, go all the way up to

1  slide one.  Has Your Honor viewed any of these

2  videos of how this product works?  I don't want

3  to go on a big detour, but it's really important

4  --

5  THE COURT:  We're not going to go

6  on a big detour whether I have looked at it or

7  not, but you can go on a short detour.

8  MR. PIVOVAR:  Thank you, Your

9  Honor.

10  When these materials are applied,

11  what you're going to see here, hopefully, is

12  that when it comes out of the sprayer, it's

13  going to be green.  You're going to see it.  He

14  sprays it, it's green.  It's a dark green color

15  and then this video shows putting down layers

16  where it's a nice even green color at the first

17  layer.  A nice even green color at the second

18  layer.  And according to their experts, that's

19  too thin.  That's not the one millimeter

20  predetermined thickness.  So he puts down more.

21  Still a nice even green layer.  Here is some

22  more, nice even green layer.  You can see it's a

23  controlled spray that's taking a lot of time to

24  form a seal.  Then he goes again.  Then he goes

1     again.

2                    So that's what the product looks

3     like.  And our arguments for noninfringement are

4     all responsive to what they say those first two

5     green colors, those are below the one to two

6     millimeter predetermined thickness.  It's that

7     third layer that falls within that one to two

8     millimeters.

9                    So what we say is, when you look

10    at that, can you actually see and discriminate

11    in real time whether there is a color change at

12    that point and can you see a difference, because

13    it's not just that there is an observable

14    change, it's not just that there is an

15    observable change that's happening at all

16    thicknesses, what this is as Dr. Mays, he says

17    it's applied several times.  With each

18    application the color of the green mixture turns

19    a deeper green color.  So if the observable

20    change is getting darker green, that's happening

21    at all thicknesses.

22                    And then he says also the

23    visibility of the segmented line becomes reduced

24    or obscured with all applications.  So again,

19

1        the obscurity is happening at all thicknesses.

2        So the observable change cannot be a generic

3        it's getting darker green or it's getting more

4        cloudier.  That's because that's what the claim

5        construction require.  It says you have to be

6        looking at a change in color or transparency of

7        the hydrogel and it has to be correlated with a

8        thickness of hydrogel such that the change can

9        be used to indicate the crosslinked so you have

10       your predetermined thickness.

11                  So our experts looked at this,

12       they looked at their allegations, all of their

13       opinions are related to what they have accused

14       which is a one to two millimeter predetermined

15       thickness range.

16                  THE COURT:  All right.  So in your

17       view, the darker green is not enough to be

18       infringement?

19                  MR. PIVOVAR:  So you have to

20       connect it all up, if you let me go through a

21       couple of slides.

22                  THE COURT:  I'll give you a

23       couple.  You made these arguments for months,

24       and I'm still having trouble following them.

```
 1                    MR. PIVOVAR:  Right.  Go to the

 2        next slide.  So here, this is a thickness and

 3        color.  Go to the next slide.  So you have your

 4        one to two millimeter predetermined thickness.

 5        Go to the next slide.  This is the observable

 6        change in the predetermined thickness range, so

 7        it's getting darker all through here, but you

 8        need to have the changes that are happening

 9        here.  But there are observable changes

10        happening below and above.

11                    So the point is if you're going to

12        say that you're going to find an observable

13        change that's in the one to two millimeter

14        range, it has to be this particular range, not

15        up here that's outside the predetermined

16        thickness and not down here that is outside the

17        predetermined thickness.

18                    So what we talk about our experts

19        say if you're doing this and you're going to

20        actually apply the claim, you have to be able to

21        match this particular range of colors across

22        that thickness in multiple applications.  And I

23        can see that, I don't want to keep on going with

24        this.  That's our position.  I just want to make
```

```
 1        sure you understood it.

 2                    THE COURT:  Well, I'm not sure.

 3        So can it be a darkening shade of green or can

 4        it not in your expert's opinion?

 5                    MR. PIVOVAR:  It can be the

 6        darkening shades of green that occur within the

 7        predetermined thickness.  So the answer --

 8                    THE COURT:  What if they're

 9        occurring in other thicknesses as well?

10                    MR. PIVOVAR:  So when you say

11        they're occurring, do you mean the specific

12        shades of green?

13                    THE COURT:  Yes.

14                    MR. PIVOVAR:  So this is one

15        application.  So I just have one, we have what

16        happens there.  If you go to the next slide.  Go

17        to the next slide.  Go to the next slide.

18        Right.

19                    So what we have here is there is a

20        correlation requirement.  So in this, you have a

21        changing shade of green that's happening in a

22        certain range, you get thicker, if it doesn't

23        happen the same way, if you see these colors

24        that you're looking for and they occur above two
```

1    millimeters, then there is no correlation.  And

2    if I was looking for these colors when I applied

3    this, I wouldn't know where to stop.  I would

4    stop somewhere up here which is not in the

5    predetermined thickness range.  And if it's down

6    here it's too thin.  That's how we looked at

7    this is that there is a subset of a shade of

8    greens that falls within the one to two

9    millimeter range, and then that's what needs to

10   be correlated and that's what you need to look

11   for.

12            THE COURT:  Do you understand what

13   just said to be the -- I got it here as the

14   fourth argument that the plaintiffs are saying

15   you're making that is inconsistent with claim

16   construction, that is whether you narrowed the

17   predetermined range to a single thickness?

18            MR. PIVOVAR:  No, because the

19   predetermined thickness range for our experts is

20   one to two millimeters, so we're not narrowing

21   it to any single thing, we're saying it's this

22   range.

23            THE COURT:  I'm just asking if you

24   understand what you're arguing now to line up

```
 1     with the fourth argument that the plaintiffs

 2     made?

 3                    MR. PIVOVAR:  No.

 4                    THE COURT:  So it's a whole

 5     separate issue.

 6                    MR. PIVOVAR:  Can you go to the

 7     next slide, maybe.  So what our expert said was

 8     such a color change indicates a predetermined

 9     thickness of one to two millimeters.  We are

10     talking about the range and all the colors

11     within that range, so we haven't narrowed it,

12     for our noninfringement argument we haven't

13     narrowed it to a single range.

14                    THE COURT:  Let's come back to the

15     plaintiff's argument.  They're saying your

16     expert is requiring a categorical change in

17     color in order to show infringement.  You've

18     already told me we're not going to offer a

19     noninfringement to say that we don't have a

20     categorical change in color.  Is that correct?

21                    MR. PIVOVAR:  That's correct.

22                    THE COURT:  They say that your

23     expert is requiring a specific color for a

24     specific thickness and the user must understand
```

```
 1      that.  Are you going to offer that as a basis

 2      for noninfringement?

 3                  MR. PIVOVAR:  So what we are

 4      offering, if you go back to the previous slide.

 5                  THE COURT:  Can you first try to

 6      answer yes or no, are you going to offer that

 7      opinion or no?

 8                  MR. PIVOVAR:  So the answer -- I'm

 9      sorry, can you just -- I got hung up on a just a

10      little word of that how it was phrased.

11                  THE COURT:  I was just

12      paraphrasing.  You heard the argument, I think

13      you're pretty familiar with it at this point.

14      They say that your expert is reading in a

15      requirement of a specific color for a specific

16      thickness and that the user must understand it.

17      Is that going to be any part of your

18      noninfringement opinion?

19                  MR. PIVOVAR:  No.  It's going to

20      be that range.

21                  THE COURT:  And then they also say

22      that your expert is going to say that the user

23      must match from memory how the initial color

24      changes to a final color.  Is that part of your
```

```
 1    noninfringement case?

 2                MR. PIVOVAR:  Part of our

 3    noninfringement case is that for the claims to

 4    have an indication of a predetermined thickness,

 5    you have to know that you're in the range when

 6    you have the observable change.  So it's not a

 7    match to a specific color, it's a match against

 8    the range of colors that you can see against one

 9    to two millimeters.

10                THE COURT:  So yes, that is part

11    of what you're going to argue is missing from

12    your product and therefore is a basis for

13    finding of noninfringement?

14                MR. PIVOVAR:  Not a singular

15    color, it's the range of colors that could be

16    between one and two millimeters if you could

17    show a correlation.

18                THE COURT:  Is the user going to

19    have to match from memory?

20                MR. PIVOVAR:  The user should know

21    prior to application what the visual change will

22    be once the predetermined thickness is matched.

23                THE COURT:  And you want to argue

24    at this trial that if the user doesn't know that
```

1    with respect to your product, then you do not

2    infringe?

3                    MR. PIVOVAR:  That's right, Your

4    Honor.

5                    THE COURT:  So this third one, you

6    are hoping to offer these opinions; correct?

7                    MR. PIVOVAR:  That's right.

8                    THE COURT:  Now, what about for

9    invalidity, let's go through all three of them

10   again.  For invalidity you do want to argue that

11   the patent is invalid somehow on one or more

12   bases because of something related to this

13   categorical change in color requirement.  Right?

14                   MR. PIVOVAR:  That's right.

15                   THE COURT:  And for which opinions

16   is that going to be relevant?

17                   MR. PIVOVAR:  It's relevant to

18   lack of enablement and I believe there is a lack

19   -- so it's the 112 issues, there is a lack of

20   written description for.

21                   THE COURT:  Okay.  How about this

22   opinion about the specific color for a specific

23   thickness that the user must understand, is that

24   part of your invalidity case?

```
 1                    MR. PIVOVAR:  I believe that that

 2          would be part of the full scope of the claims,

 3          but it's not strictly something that's required.

 4                    THE COURT:  It's not required?

 5                    MR. PIVOVAR:  No, for our

 6          opinions.  So what you just mentioned is one of

 7          the full scope of the embodiments, but our

 8          arguments are a little bit broader.

 9                    THE COURT:  So is it fair to say

10          for this, whatever was articulated as the second

11          thing that the plaintiffs say that the

12          defendants want to do is inconsistent with the

13          claim construction is not part of this case,

14          defendants aren't offering that as basis for

15          noninfringement and it's not being offered as a

16          basis for invalidity?

17                    MR. PIVOVAR:  We don't believe so,

18          Your Honor.

19                    THE COURT:  You don't believe

20          you're offering it or you don't believe you are

21          offering it?

22                    MR. PIVOVAR:  And I apologize if I

23          didn't --

24                    THE COURT:  Let me put it this
```

1     way.  If they articulated a second addition to

2     the claims that they say your experts are

3     reading in that isn't there, if I understood you

4     correctly, you're saying that's not part of our

5     noninfringement and now you're saying it's not

6     part of our invalidity case.  So I take it you

7     don't object to me entering an order saying your

8     experts are not going to opine and you're not

9     going to offer evidence with respect to what

10    they have identified as the second thing that

11    you have added to the claim.

12              MR. PIVOVAR:  I just want to make

13    sure, the second thing we have added to the

14    claims.  It's the specific color at a specific

15    thickness?

16              MR. ALTHERR:  Yes, Your Honor.

17    The second one, the way we read Dr. Lowman's

18    report is that he's requiring the user apply a

19    standard of a specific thickness or a specific

20    -- a specific color to achieve a specific

21    thickness in order to meet the observable change

22    in the predetermined thickness limitation of the

23    claim, not a range of thicknesses, not a range

24    of colors, because that's not in his expert

```
 1        report.
 2                    THE COURT:  All right.
 3                    MR. PIVOVAR:  So listening to that
 4        again, it's a question of what is required by
 5        the claim and what is allowed by the claim.  And
 6        that embodiment that they just described is
 7        actually allowed and described explicitly in the
 8        specification, where it says the user applies a
 9        test application, looks at the color and then in
10        use applies it to that color.  That's one part
11        of it.
12                    The second part is the
13        predetermined thickness construction says a
14        singular or a range of thicknesses.  So one
15        embodiment of all of that is you have a single
16        thickness and you have this apply a test
17        application and then you stop when you see the
18        color.  When you meet those two up, that falls
19        within the scope of the claim.  From an
20        inclusion standpoint, yes.  From a requirement
21        of the claims standpoint, no, Your Honor.
22                    THE COURT:  So as I understand
23        that, it's not going to be part of your
24        noninfringement case, but it is part of your 112
```

```
 1    invalidity case.

 2                    MR. PIVOVAR:  Exactly.  Thank you,

 3    Your Honor.

 4                    THE COURT:  And then this third

 5    one, though, about matching from memory the

 6    initial color to the final color, that is part

 7    of your noninfringement case, and I think also

 8    part of your invalidity case.  Do I have that

 9    right?

10                    MR. PIVOVAR:  So it would

11    follow -- for the invalidity it would follow the

12    example I just talked about in the specification

13    where is said the user does a test and the user

14    applies the material until the test color is

15    achieved.  That's the part for invalidity.

16                    For noninfringement it really is

17    just with respect to what the R&R order said

18    about the user must know prior to application

19    what will be the visual change caused by the

20    visualization agent once the predetermined

21    thickness is reached.

22                    So the claims require that it has

23    to be used as an indication of a predetermined

24    thickness.  Obviously if you don't know what I'm
```

1      looking for, it can't indicate to me that I'm

2      there.

3                    THE COURT:  That's not obvious to

4      me.  Don't we see things all the time that you

5      weren't aware before you saw them that what they

6      were going to mean to us when we saw them?

7                    MR. PIVOVAR:  I think that is true

8      -- so, also, if it said a relative thickness and

9      we want to say it's getting thicker, you can see

10     that.  You don't have to do multiple

11     applications.  But I don't know how it can be

12     used -- if you're going to have a visually

13     observable change which is a change in color or

14     transparency to hydrogel in the context of the

15     accused products where it is continuously

16     changing both below and above the predetermined

17     thickness range, that you could use either of

18     those metrics to tell you when you're within the

19     range.  If you don't know if you're looking at a

20     visual change that's below one to two or above

21     two, you have to be able to know that you're

22     actually in that range.  And the only way you

23     can know that is if you knew what you were

24     looking for before.  Which I think is why Judge

1       Burke came to this conclusion about what the

2       claim means in this R&R order.

3                    THE COURT:  All right.  Did you

4       understand there to be anything further that the

5       plaintiffs are accusing you of trying to make

6       part of your noninfringement or invalidity case

7       that is inconsistent in their view with the

8       claim construction, other than these at least

9       three issues that we have sort of just talked

10      through.

11                   MR. PIVOVAR:  The paragraphs that

12      I identified in the submission for you yesterday

13      go way beyond these issues, Your Honor, way

14      beyond.  We have issues, if you recall, there

15      were three different aspects to the claim

16      construction that Mr. Iwanicki raised, and as

17      part of what Judge Burke said in his order, is

18      he said there is these three requirements, and

19      in light of this, I don't find that how

20      Dr. Lowman, our expert, described these three

21      things as inconsistent with the Court's

22      construction.

23                   So what it is, there is a

24      causation requirement, the visualization agent

1    has to cause the visually observable change.

2    They're looking now in all the paragraphs they

3    identified to you to throw all of those out.

4    Even experiments that Dr. Lowman performed that

5    have nothing to do with claim construction, Your

6    Honor, they're looking to throw out.

7              If we look -- what I have done

8    here is I have taken and highlighted all of the

9    places that the plaintiffs are asking to be

10   stricken.  It's just essentially everything

11   about our invalidity defenses.  And if you look

12   at Dr. Lowman, he provided a set of experiments.

13   He said I made hydrogels using these products

14   because I wanted to show that it's the air

15   bubbles that are causing the visual changes that

16   you're looking at, not the dye.

17              So this is only a dispute about

18   what is the visualization agent.  It doesn't

19   have anything to do with the predetermined

20   thickness.  What you see, Your Honor, is they,

21   the plaintiffs, want to strike that opinion.

22   They want to strike these experiments that we

23   rely on.  And they just have page after page,

24   and so much of this is not even directed to any

1        of these predetermined thickness issues, they're

2        directed to other aspects of the claims.

3                    So I understand from their request

4        is they're essentially asking you to throw out

5        every single aspect of what our experts have

6        done on any predetermined thickness claim, not

7        just with respect to the issues that we raised

8        here today.

9                    THE COURT:  Let me bring them back

10       here.  Thank you.

11                   Mr. Iwanicki, if you could come

12       back.  First of all, I didn't even think we had

13       come to the visualization agent yet.  Are you

14       asking me for some relief with respect to their

15       opinions on visualization agent?

16                   MR. IWANICKI:  Your Honor, the

17       three things are linked together.  You can't

18       have an observable change without a

19       visualization agent and the observable change is

20       used to indicate a predetermined thickness.  So

21       they are all tied together to a certain extent.

22                   But I did want to look

23       specifically with -- Your Honor, this issue of

24       whether something is inside the scope of the

1     claim within the scope of the claim for purposes

2     of enablement or written description or whether

3     it's required by the claim is a red herring.  I

4     mean, you can have -- you can get a patent on an

5     automobile comprising a steering wheel, chassis,

6     four wheels and an engine and you can enable

7     that and you can provide a written description

8     for that.  They come along and say wait a

9     second, a Maserati is within the scope of the

10    claim.  There is nothing in there with respect

11    to a description of a Maserati.  We don't have

12    to enable a Maserati, you enable what the claim

13    is and look at whether or not it provides an

14    adequate written description that teaches one of

15    ordinary skill in the art how to practice that

16    claim.

17              THE COURT:  That might be a fine

18    argument on the merits, but let's pick up I

19    guess where they left off.

20              MR. IWANICKI:  Sure, Your Honor.

21              THE COURT:  On infringement, they

22    tell me if I understand them correctly, they're

23    not offering either of the first two

24    requirements that you identified as a basis for

1    noninfringement.  That seems like a pretty clear

2    representation.  It seems to me, therefore,

3    there is nothing to strike with respect to their

4    offered opinions on noninfringement with respect

5    to those first two purported additional

6    limitations.  Do you agree with that?

7              MR. IWANICKI:  Yes, Your Honor, if

8    their representation is that they will not

9    bring -- if they will not bring opinions whether

10   it's based on those, but based on the first one,

11   the categorical change theory and the specific

12   thickness or a specific color for a specific

13   thickness, Your Honor, I would agree with you

14   that if that's their representation, then we

15   won't expect to see the portions of the expert

16   report being repeated by Dr. Lowman up on the

17   stand with respect to those opinions.

18             THE COURT:  With respect to those

19   opinions for purposes of noninfringement?

20             MR. IWANICKI:  For purposes of

21   noninfringement, yes.

22             THE COURT:  Now, the third one

23   they say they are, at least as I understand it,

24   reserving the right to offer it as a basis for

```
 1      noninfringement about the matching from memory.
 2                  MR. IWANICKI:  Okay.
 3                  THE COURT:  So I guess respond to
 4      that.
 5                  MR. IWANICKI:  Sure.  The color
 6      matching from memory, Your Honor, was the
 7      creation of Dr. Flombaum.  And he's the one who
 8      is providing the opinion on which Dr. Lowman
 9      provides his opinion that there must be a color
10      matching from memory.  In other words, you have
11      to have a specific color in mind and you have to
12      observe when that specific color is reached.
13                  From what I understand on the
14      motion to strike, Dr. Flombaum's report is
15      mostly stricken and he will not be able to
16      provide an opinion with respect to color
17      matching from memory.  With that in mind,
18      Dr. Lowman isn't going to be able to provide an
19      opinion with respect to color matching from
20      memory because he relies on what Dr. Flombaum
21      has said.
22                  So it gets to the issue of do they
23      have anything left after Dr. Flombaum's --
24                  THE COURT:  That's a whole
```

38

```
1        separate issue it seems to me, but if they do
2        have something left, why should I find that it
3        is adding a limitation to the claims that aren't
4        really there to say look, you have to have some
5        understanding of what you're looking for in
6        order to know what you're seeing.
7                    MR. IWANICKI:  I think, Your
8        Honor, that to a certain extent, yes, you need
9        to be able to understand whether or not you have
10       a -- you reached a predetermined thickness based
11       upon an observable change.  What the Court has
12       said with respect to that is the Court recently
13       explained in resolving the parties' summary
14       judgment motion regarding the predetermined
15       thickness claims, a reasonable juror could agree
16       with Dr. Mays' application of relative
17       constructions and view a change in color of the
18       hydrogel observable to the human eye as being
19       satisfied by a hydrogel that goes from a green
20       tint with gaps to an even green color.
21                    And so to a certain extent when
22       you're applying this and looking at it when
23       applying it, you can go from a green tint with
24       gaps to an even green color and that is the
```

1      observable change that indicates the

2      predetermined thickness.  So you don't

3      necessarily need to have this colored matching

4      from memory requirement in the claims.  And if

5      it is a requirement of the claims, they're

6      saying that the user has to understand that

7      that's my starting point and that's my end

8      point, the Court did not require that at all of

9      the claims and that's -- that position is

10     inconsistent with what the Court said the claims

11     mean.

12                 Then the Court continued:  It does

13     not jive with Dr. Lowman's requirement for the

14     matching of a specific color or a transparency

15     to another color or transparency because

16     Dr. Mays' articulation does not necessarily

17     describe a change to one specific shade of

18     green.

19                 The Court concludes that because

20     expert testimony is inconsistent with the

21     Court's claim construction it's unreliable.  The

22     Court concludes that Dr. Flombaum's opinions

23     narrow the predetermined thickness requirements

24     beyond the Court's construction and they are

```
 1    stricken.
 2                 THE COURT:  So to the extent their
 3    expert wants to opine that you need to have some
 4    understanding of what you're looking for, which
 5    includes by implication some understanding
 6    before you even start what it is you're going to
 7    be looking for to see if you're within the
 8    scopes of the claims as you start practicing,
 9    you say that that is something that's not in the
10    claims or that is something that's in the
11    claims?
12                 MR. IWANICKI:  Yes, Your Honor,
13    the visualization agent causes an observable
14    change.  You have to see what it was before and
15    what it is after and that indicates a
16    predetermined thickness.  That's what we have
17    been saying all along.
18                 What they're saying is that no,
19    it's even narrower than that.  And besides,
20    Dr. Lowman doesn't have such an opinion in his
21    report.  All of his opinions are based on the
22    three narrowed claim constructions that we talk
23    about in order to avoid infringement.
24                 THE COURT:  What about this fourth
```

```
1     thing that you think you identified about the
2     range versus the single point, where are we on
3     that?  Do you think they're trying to offer that
4     based on what you heard?
5                  MR. IWANICKI:  I'm not sure I
6     understand what they're offering with respect to
7     the range because certainly the Court concluded
8     that it doesn't have to be a specific thickness,
9     it could be a range of thicknesses where you
10    reached the predetermined thickness.
11                 THE COURT:  Okay.  And so that's
12    infringement.  On invalidity, if I understand
13    correctly, they are going to argue that all
14    three of these are pertinent to invalidity
15    analysis at least for 112 purposes.  Your view
16    is that that's not a meritorious defense, but
17    are you also arguing that it's somehow
18    inconsistent with the Court's claim
19    construction?
20                 MR. IWANICKI:  Yes.
21                 THE COURT:  Help me to understand
22    that.
23                 MR. IWANICKI:  Because the Court
24    did not provide an opinion that says that
```

```
 1        categorical change is inside the scope of the
 2        claim, it did not provide an opinion that color
 3        matching from memory is inside the scope of the
 4        claim.
 5                    THE COURT:  Did we provide an
 6        opinion somewhere that those things are not
 7        within the scope of the claim?
 8                    MR. IWANICKI:  Yes, I think in
 9        determining what the claim meant, that's what
10        they argued it meant, and the Court said no, no,
11        no, those required unnecessary limitation so I'm
12        not going to require those to be in the scope of
13        the claim.
14                    THE COURT:  I don't think I
15        followed that.  In general what I thought we
16        were arguing is that they were trying to add
17        limitations that would narrow the scope of your
18        claims to a narrower -- to make them narrower
19        than they really are.  Isn't that part of what
20        you're arguing?
21                    MR. IWANICKI:  Yes.
22                    THE COURT:  If I agree with you
23        that some of what they were trying to do perhaps
24        would narrow your claim scope, to narrow then
```

```
1    what you really possess, how is that finding in

2    any way a finding that some of the embodiment

3    that they say are within the scope of your

4    claims for invalidity purposes are not actually

5    part of the scope of your claims?

6             MR. IWANICKI:  I think it goes to

7    the issue becomes one of whether or not they're

8    setting up these species if you will, and

9    they're saying that you have to enable these

10   species.  And what I'm saying by species are

11   those narrower limitations of the claim which

12   the Court said we're not allowed.  So the

13   position that they have is the claim is invalid

14   because it doesn't teach those particular

15   species, but the claim is much broader, we don't

16   have to teach these species, we don't have to

17   enable those species.

18             THE COURT:  Why isn't that an

19   argument about what I should tell the jury on

20   enablement as opposed to whether or not the

21   expert is doing something inconsistent with the

22   claim construction?

23             MR. IWANICKI:  Because they do not

24   have an alternate opinion.  They do not have
```

```
 1        Dr. Lowman's words saying otherwise.

 2                   THE COURT:  All right.  Thank you.

 3                   Anything further you want to say

 4        on this?

 5                   MR. PIVOVAR:  If I could briefly,

 6        Your Honor.

 7                   THE COURT:  Yes.

 8                   MR. PIVOVAR:  I just wanted to

 9        come back to one thing about the Dr. Flombaum

10        and Dr. Lowman about how they have interpreted

11        the claims and whether they have narrowed it,

12        because they keep on saying it's been narrowed

13        to a single color and single thickness.  If you

14        look at what we submitted, this was in our

15        objections, you can see how Dr. Flombaum

16        explained what Dr. Lowman explained to him about

17        what the scope of the claim is.  He's talking

18        about it's the range of colors that indicate

19        that the appropriate thickness has been

20        achieved.  He's saying the accusation of

21        infringement, he's saying it's the range of

22        colors, range of colors and that range of

23        thickness.

24                   You can see when they're applying
```

1     this, the words have been distorted as part of

2     what they're saying and respectfully what Judge

3     Burke opined, they are not limiting the claim

4     for noninfringement in the way that they're

5     saying, they're taking that all into account.

6           The second point I would like to

7     make, Your Honor, is that nothing -- they

8     haven't really said anything about what their

9     actual infringement opinions are with respect to

10    the observable change they're pointing to in the

11    accused products.  And it's just a cornucopia of

12    different things.  They say well, it's the even

13    deep green color, so we respond to that and say

14    well, it can't be just any deep green color, it

15    has to be the ones that are in the predetermined

16    thickness range.

17          Then they talk about the even

18    green color and Mr. Iwanicki pointed out that we

19    have this opinion and Dr. Mays said this.  In

20    response to their summary judgment brief we had

21    counter arguments to noninfringement that didn't

22    necessarily require addressing every argument

23    they made, but if you look at what he said about

24    the even green color, you can see what

 1       Dr. Lowman says in response.  He's got a direct

 2       response to their opinion that the even green

 3       color is the observable change that indicates a

 4       predetermined thickness.  And he goes directly

 5       to that.  That has nothing do with any of these

 6       color matching or memory matching.  He's just

 7       saying you don't have a correlation in the

 8       plaintiff's argument for this even green color.

 9       He says he can't correlate an even green color

10       because you saw the video, it's an even green

11       color at all thicknesses.

12               And they're asking you to strike

13       our exactly responsive noninfringement arguments

14       that have nothing to do with any of this memory

15       match.  It doesn't have anything to do with the

16       single color at a single thickness issue.  This

17       is what they're asking for now.  So I just want

18       to point that particular piece out.

19               And then the rest of the issues

20       that we have, Your Honor, they are all

21       responsive.  There is a range of thicknesses, a

22       range of colors, and we think that they should

23       be allowed to come and actually present their

24       opinions at trial.

```
 1              If Your Honor has no further

 2      questions.

 3              THE COURT:  No.  So you know, I'm

 4      trying my best to help you all have clarity

 5      about what's going to happen at this trial, but

 6      clearly there are limits to how much we can

 7      figure out before trial.  I will say this with

 8      respect to what's already been argued -- you can

 9      have a seat.

10              MR. PIVOVAR:  Thank you.

11              THE COURT:  First as I think I

12      made clear in my order and as I don't think is

13      disputed, if I'm persuaded that a particular

14      opinion or evidence is inconsistent with the

15      Court's claim construction, it will not come in,

16      or it will be stricken.

17              If on the other hand I'm persuaded

18      that certain evidence or opinions are simply

19      disputes over how the claim construction is

20      applied, either for purposes of infringement or

21      invalidity, that's part of what the trial is

22      about and that evidence or opinion will come in.

23              With respect to the specifics that

24      have been argued, as I understand it there were
```

```
 1        four particular identifications where the

 2        plaintiff accuses the defendant of trying to

 3        introduce evidence and opinion that is

 4        inconsistent with the Court's claim

 5        construction, and accuses the defendant of

 6        wanting to do so with respect to both

 7        noninfringement and invalidity.

 8                    Turning first to infringement,

 9        what the plaintiff identified as one and two I

10        now understand are not being offered as a basis

11        for noninfringement, and I hereby order that

12        they will not be offered as a basis for

13        noninfringement.

14                    With respect to number three,

15        which I understand, and number four, which I

16        understand the defendant is at least reserving

17        the right to present evidence and argument as a

18        base for noninfringement on the points three and

19        four, I am going to have to make decisions at

20        trial about those.  It does seem to me that some

21        of what the defendant is proposing to argue as a

22        basis for noninfringement would be not

23        inconsistent with the Court's claim

24        construction.  I'm not prepared to say that they
```

```
 1        can't do any of what they propose to do with

 2        respect to three and four as a basis for

 3        noninfringement.  So we're just going to have to

 4        see.  Obviously we have a procedure, at least

 5        when it comes to the direct testimony that the

 6        defendant will seek to elicit from its expert

 7        that they're going to have to identify the

 8        exhibits in advance that they intend to use,

 9        they're going to have to identify the

10        demonstratives that they intend to use in

11        advance.  The plaintiff can raise objections to

12        those.  If and when the defense experts get on

13        the stand, the plaintiffs have a right to object

14        to specific questions as seeking opinions that

15        are beyond the scope of what was previously

16        disclosed by the expert.  And everyone retains

17        their right to argue that particular evidence in

18        argument is inconsistent with the Court's claim

19        construction ruling.

20                  Beyond that on one through four

21        for infringement, I can't do any better than

22        that today.

23                  With respect to invalidity, I am

24        not ruling out any of what the defendants
```

1    proposed to do on points one through four, which

2    is all we have talked about to this point in the

3    proceeding today.  I am not persuaded at this

4    point that any of what the defendants are

5    proposing to do with respect to those points one

6    through four on invalidity is consistent with

7    the Court's claim construction.

8            A dispute about what is inside the

9    scope of the claims or outside the scope of the

10   claims may come up in the context of what I

11   should instruct the jury as to enablement or

12   other 112 defenses.  And again, all parties have

13   the right to object to particular expert

14   testimony as being outside the scope of what was

15   previously disclosed.  But on this narrow

16   question of are the defendants trying to do

17   something inconsistent with the court's claim

18   construction, I'm not persuaded at this point

19   they are.  And the plaintiff can take another

20   shot in the context of the trial if they think I

21   have gotten that wrong.

22           Let's move on at a greater pace

23   with plaintiffs on to the other things that you

24   think are inconsistent with the claim

```
 1    construction.
 2              MR. IWANICKI:  Your Honor, just
 3    one question.
 4              THE COURT:  Come up to the podium.
 5              MR. IWANICKI:  Sorry.
 6              In view of your order, is
 7    Dr. Flombaum going to be allowed to testify on
 8    the color matching from memory?
 9              THE COURT:  You all are going to
10    have to work on that.  I have done the best I
11    can.
12              MR. IWANICKI:  Thank you, sir.
13              THE COURT:  But stay with us if
14    you want to argue that there are other issues.
15    I think you had claim 10 indefiniteness and
16    visualization, so if you think that there is
17    something that the defendants are seeking to do
18    that's inconsistent with the Court's claim
19    construction on either of those points, let's
20    talk about that.
21              MR. IWANICKI:  Yes, Your Honor.  I
22    think that the position with respect to claim 10
23    and its indefiniteness is based on Dr. Lowman's
24    opinion that in my opinion the separate
```

1    application of two hydrogel formed materials to

2    the tissue would be the only definite way to

3    interpret the claim language.

4              This claim requires a couple of

5    things.  It requires mixing reactive precursor

6    species such that the functional groups

7    crosslink after contact with the tissue, and

8    then the hydrogel is formed within five seconds

9    after contact with tissue.

10             The position that they're

11   advancing with respect to indefiniteness is that

12   the only interpretation that makes sense in that

13   claim is if both components are applied directly

14   to the tissue because that's when crosslinking

15   begins.

16             Now the Court found that that was

17   not an appropriate interpretation of the claim.

18   The Court held that there could be some -- the

19   functional groups of the reactive precursor

20   species are mixed in such a way that some but

21   not necessarily all crosslinking occurs after

22   the composition makes contact with the tissue.

23   So it specifically excluded Dr. Lowman's

24   understanding of the claim on which his

1    indefiniteness position is based.  And it also

2    said that the way you can tell when a hydrogel

3    is formed within five seconds after contact with

4    the substrate is that hydrogel materials form

5    visible and solid aggregate.  And Dr. Lowman

6    testified, on which Judge Burke relied, is the

7    way you determine that is by visual inspection

8    by looking at it.

9              So our position, Your Honor, is

10   the way the Court construed the claim they don't

11   have an indefiniteness opinion or indefiniteness

12   opinion with respect to claim 10 because that's

13   based on their understanding of the two

14   precursors being applied simultaneously or one

15   after the other to the tissue directly.  Since

16   the Court was able to construe the claim, we

17   don't think that they have an indefiniteness

18   position.  And to the extent they want to bring

19   that, that's inconsistent with the Court's claim

20   construction.

21             THE COURT:  Thank you.  Let me

22   hear the response to that.

23             MR. PIVOVAR:  So Your Honor, the

24   indefiniteness positions were spelled out.

1   There was a mixing aspect and then there was

2   what does it mean to form the hydrogel within

3   five seconds.  And the reason for that, you have

4   a five second requirement in claim 10, and so

5   what you need is when do I start and when do I

6   stop, and what's the time for that.

7            So Dr. Lowman looked at the

8   claims, he said well, if you're going to do

9   this, you have to look at it and you have to

10  know when are you mixing and when are you

11  starting the clock.  And the Court has resolved

12  that, yes.  But we have a pending objection on

13  what does it mean on the stop.

14           So from the perspective of what

15  the Court said about what mixing is required and

16  what the start point is, the Court just said it

17  starts when you hit the tissue.  Right?  The

18  question is, when does that end.  So when it

19  comes to the indefiniteness issue, that's what's

20  still pending from our perspective, not the

21  mixing, the Court resolved that.  We obviously

22  disagree, we'll appeal it and all that stuff,

23  but for the purposes of this, we are not going

24  to say there is an indefiniteness issue with the

1    mixing, it's more about how long does it take

2    and what is the hydrogel formation issue, which

3    you had before.

4                 THE COURT:  Right.  That I think

5    is perhaps the most recently briefed set of

6    objections, the ones that relate to claim 10

7    summary judgment; correct?

8                 MR. PIVOVAR:  That's right, Your

9    Honor.

10                THE COURT:  And that's where Judge

11   Burke recommended certain findings of

12   infringement.  And you say if I were to agree

13   with that, then the claim is indefinite; is that

14   right?

15                MR. PIVOVAR:  What we say is --

16   can you put the slides up really quickly?

17                THE COURT:  Let me put it this way

18   and maybe we'll move into that argument next.

19   But if I agree with Judge Burke and adopt that

20   R&R over your objections, do you still have an

21   indefiniteness opinion that you think you can

22   present at trial?

23                MR. PIVOVAR:  So the answer to

24   that is I believe we would, but I think that

1    some additional clarity would maybe resolve it

2    and be helpful for the parties just with respect

3    to what is happening, because there are a lot of

4    technical issues, there are a lot of scientific

5    things and there are some things there that are

6    inconsistent as a technical matter to say that

7    you have a fully cured hydrogel that's a visible

8    solid aggregate, but then pointing to evidence

9    of times that are related to a set time or a gel

10   time, because those are all different things.

11            THE COURT:  It seems to me that

12   perhaps I have to first decide if I'm adopting

13   his R&R on infringement before I can maybe reach

14   this indefiniteness question.

15            MR. PIVOVAR:  That's what I was

16   going to say.  If that's still pending,

17   depending on how that gets resolved, it will

18   depend on whether we have this bookend, but

19   we'll agree that the mixing part we didn't

20   object to that part.  We understand what that

21   is.  It's more on this claim 10 issue, which I

22   think you prioritize that one down.

23            THE COURT:  I will come back to

24   that.

```
 1                    MR. PIVOVAR:  We got pretty
 2      pictures.
 3                    THE COURT:  I see that.  All
 4      right.  You agree that some of these issues are
 5      also tied up in the pending objections with
 6      respect to summary judgment of infringement of
 7      claim 10, do you agree with that?
 8                    MR. IWANICKI:  I do to a certain
 9      extent except that infringement and invalidity
10      are separate issues.  And if, in fact, Judge
11      Burke said that all you need to do in order to
12      be definite to determine whether a hydrogel
13      forms within five seconds after contact with a
14      tissue is visually observe it, we think that's
15      the end.  That's what the judge said.  He said I
16      know how one of skill does that, Dr. Lowman
17      knows how one of skill does that, you look at it
18      and you see if it forms a visible solid
19      aggregate.  That's the issue that we're talking
20      about here.  That's different from to a certain
21      extent the summary judgment of infringement,
22      because they're going to allege that even if
23      there is -- you do agree with Judge Burke that
24      there is infringement there, they are still
```

```
 1        going to come back and say there is this whole
 2        issue with gel time, is it cured, fully cured.
 3        None of that is in the claim, Your Honor.  Judge
 4        Burke decided what the claim meant.
 5                    THE COURT:  All right.  We'll come
 6        back to this when we get to the claim 10 summary
 7        judgment.  Do you have any other arguments?  I
 8        think you referenced visualization agent, either
 9        that or any others, where you see something that
10        the defendant is going to argue at trial that
11        you think is inconsistent with the claim
12        construction?
13                    MR. IWANICKI:  Your Honor, I think
14        we went through all of the headings that are in
15        our submissions and I don't see any other
16        issues, Your Honor.
17                    THE COURT:  Thank you.
18                    Let's give the defendants a chance
19        to come up.  It seemed to me there were maybe
20        two general areas that you thought the
21        plaintiffs were going to argue or present
22        evidence inconsistent with the claim
23        construction.  Am I right at least to that
24        point, are there two?
```

```
1                    MR. PIVOVAR:  There are two.  The

2       first one with respect to whether the hydrogels

3       from the prior art we had as Your Honor is well

4       aware, we had a long detour and a side show of

5       the case that went to this particular issue.

6       When it was resolved, how the Court resolved the

7       claim construction, I think it is pretty

8       straightforward that all of the arguments that

9       their experts had about why the prior art

10      hydrogels were not biocompatible is effectively

11      out.  I don't know whether they disagree or not.

12                   THE COURT:  One of your categories

13      was the biocompatible composition limitation;

14      correct?

15                   MR. PIVOVAR:  That's correct.

16                   THE COURT:  And you believe that

17      they intend to offer something inconsistent with

18      the Court's construction of biocompatible

19      composition?

20                   MR. PIVOVAR:  The expert reports

21      that they have are there.  I would hope that

22      they would.

23                   THE COURT:  Let's stop there.

24      Let's see.  Are we ready to get agreement on
```

60

1    that?

2                    MR. IWANICKI:  No, Your Honor.

3                    THE COURT:  Come tell us what you

4    propose to do.

5                    MR. PIVOVAR:  This is just for the

6    hydrogel part.  We'll get to the barium sulfate

7    issue second; right?

8                    THE COURT:  Okay.

9                    MR. IWANICKI:  Your Honor, I think

10   that one of the tensions with respect to this

11   claim and how it was interpreted is that we're

12   looking at claim 10 and claim 10 says the

13   composition suitable to coated tissue of a

14   patient.  And we originally argued that was a

15   limitation of the claim and that it includes as

16   an aspect a biocompatible hydrogel.  And the

17   Court agreed with us.

18                    And so in Dr. Mays' opening expert

19   report, he talks about biocompatibility.  We get

20   to this next phase of well, what does the term

21   biocompatible hydrogel mean or biocompatible

22   composition, and the Court determined that that

23   meant that a hydrogel or composition formed from

24   crosslinked biocompatible precursors.  And so

1    essentially what the Court did is it said, I'm

2    not going to tell you what biocompatible means,

3    but I'm going to tell that biocompatible

4    composition is formed from biocompatible

5    precursors and turns out it still remains in the

6    claim.  And so one of ordinary skill in the art

7    is going to need to know what that terms means.

8          And so we think it's fair with

9    respect to the term biocompatible as a part to

10    the phrase biocompatible precursor or

11    biocompatible hydrogel or biocompatible

12    composition that we should be able to provide

13    testimony as to what one of ordinary skill in

14    the art would understand that term in the claim

15    to mean.  And so we think that because the claim

16    is in the -- the claim term is within the claim,

17    that the Court did not provide us with any

18    guidance as to a definition of biocompatibility,

19    that we're left to presenting our expert's

20    opinion as to what that means.

21          There is another issue here, Your

22    Honor.  The term simple coated tissue of a

23    patient does not only mean a biocompatible

24    hydrogel, there are also aspects of what makes

1    something suitable coated tissue to the patient,

2    it's adherence.  It's structural integrity.  And

3    all of those opinions that we have relate to --

4    and it's also toxicity of the things that you

5    add in that aren't the precursors.

6              So what they're asking to be

7    stricken wholesale from all of these reports is

8    a lot of stuff related to whether barium sulfate

9    is going to be suitable -- when placed in a

10   hydrogel is suitable to coated tissue of a

11   patient, is it going to provide adherence?  They

12   want that stricken.  Is it going to provide

13   structural integrity?  They want that stricken.

14   It's not limited to simply quote the definition

15   of biocompatibility.

16             I went through yesterday we were

17   provided with all of the citations from Mays'

18   report, all of the citations in his rebuttal

19   report as well as his two other reports and I

20   went through all of them, and I have notes that

21   actually identify -- this has nothing to do with

22   biocompatibility.  It relates to

23   biodegradability.  There is nothing in that

24   paragraph that talks about biocompatibility.

```
 1        And so what they're trying to do is wipe away
 2        this whole aspect of reteaching that it's barium
 3        sulfate and it's thicker than collagen somehow
 4        is not a biocompatible -- or it is a
 5        biocompatible hydrogel when clearly all that is
 6        required for a biocompatible hydrogel is that it
 7        be formed from biocompatible precursors.
 8        Whether you add something like barium sulphate
 9        which is a toxic substance to it, that's not
10        inconsistent with the Court's claim
11        construction.  That's not a biocompatible
12        precursor.  But they're looking to exclude all
13        of that stuff, Your Honor.
14                    THE COURT:  Thank you.  Now I'll
15        give defendant a chance to argue why you think
16        that is inconsistent now that we know that you
17        want to do it.
18                    MR. PIVOVAR:  So we construed the
19        term suitable to coat the tissue of a patient as
20        part of this case, and the Court said that it
21        should be construed as requiring a
22        biocompatibility requirement.  And then the
23        Court construed the biocompatibility
24        requirement.  I just heard him articulate
```

 1     several limitations that aren't included in that

 2     construction.

 3                    THE COURT:  Right.  But

 4     biocompatible is in our construction of

 5     biocompatible.

 6                    MR. PIVOVAR:  Right.  And that was

 7     what we had the whole claim construction dispute

 8     about because they said it should be

 9     biocompatible and we said that's indefinite.

10     And what you're putting on the biocompatible in

11     the context of the patents can't really be

12     discerned because it's some level that we don't

13     even understand.  And that's how we arrived at

14     this construction because of the indefiniteness

15     of the term biocompatible.

16                    So if we're going to drag that

17     back into the case, it seems like it was

18     resolved as part of claim construction, but if

19     that comes back into play, if you look at the

20     briefing on it, that's what it was all about.

21     They said biocompatible means not harmful to the

22     tissue of patients.  And our expert came and

23     said one, what does that mean?  It doesn't make

24     any sense.  Two, what's the objective standard

1        we apply from the specification for that?   And

2        Judge Burke looked at all that and said yeah,

3        there is no -- nothing described that will get

4        you to biocompatible, so he construed the terms

5        we had in dispute as -- with respect to the

6        disputes we were having and said this is the

7        construction I'm arriving at.

8                        So we would have to go back and

9        have a whole fight over indefiniteness of the

10       term biocompatible again which has been

11       resolved.  That's why we think the Court has

12       already said these terms are fixed, they're set.

13       So that's on just the straight here is the

14       biocompatible hydrogel composition issue.

15                       And they contest that there are

16       hydrogels that are applied from the prior art

17       that are made from, their experts admits, from

18       two biocompatible precursors, but they admit

19       they're two biocompatible precursors.   Their

20       opinions are all directed towards the

21       construction they wanted applied that Judge

22       Burke rejected and Your Honor adopted.   Those we

23       think should be out.  From the perspective of

24       doing additional claim construction on this

```
 1        term, I think we have been through it.

 2                    THE COURT:  What about their

 3        barium sulphate?

 4                    MR. PIVOVAR:  So barium sulphate,

 5        the issue with that is it's relatively

 6        straightforward from our perspective, because if

 7        you look at claim 1, so claim 1 is the

 8        independent claim to claim 10 which is in

 9        dispute.  It says a visualization agent.  We

10        look at claim 1 of the '566 patent, there is a

11        word in front of visualization agent, a

12        biocompatible visualization agent.

13                    So the question really becomes is

14        there a reason that one claim requires a

15        visualization agent and the other one requires a

16        biocompatible visualization agent?  In our view

17        they're basically arguing that barium sulfate is

18        not a biocompatible visualization agent, but

19        there is no requirement for that in the claim.

20        And that's the distinction that we feel should

21        be involved in that.  It also folds into it's

22        relying on a construction of biocompatible that

23        would be indefinite.

24                    THE COURT:  All right.  You made
```

1   reference to suitable coated tissue of the

2   patient.  Is there more to say about that and

3   whether what they're trying to do with that is

4   inconsistent with the claim construction?

5              MR. PIVOVAR:  It is, because

6   they're saying that -- we had a whole -- we had

7   a whole dispute about claim construction of what

8   suitable coated tissue of the patient meant.

9   They were willing to say it means biocompatible

10  when they thought they could win that issue and

11  it turns out that they lost.  And now what they

12  want to say is okay, let's take another run at

13  it.  We have some other things we want to build

14  into this particular requirement of this

15  preamble just to try and wiggle around the prior

16  art and get you to go back and redo it.  We have

17  been through claim construction on that term.

18  They could have said at that time it requires a

19  biocompatible hydrogel that has all of these

20  other features that are required.  And we could

21  have pointed out how that was wrong as well.

22  But they didn't.  They wanted to hang their hat

23  on this biocompatibility argument, which they

24  brought up in your rebuttal expert reports for

```
1        the first time, costing us to have a whole
2        secondary round of expert reports, a secondary
3        round of summary judgment, they lose it and now
4        they're saying, oh, we have another argument to
5        make.  And it doesn't seem like something we
6        should be doing two weeks before the trial, Your
7        Honor.
8                    THE COURT:  Do you want to
9        respond?
10                   MR. IWANICKI:  Yes, Your Honor.
11       Plaintiff's expert's opinions about barium
12       sulfate being added to a hydrogel and not
13       resulting in a composition suitable to a coated
14       tissue of a patient has been long standing.
15       Plaintiff's expert's opinions about barium
16       sulfate being toxic and so when added to the
17       composition of suitable coated tissue, a
18       hydrogel would not result in a composition
19       suitable for coated tissue of a patient has been
20       long standing.  And Dr. Lowman's -- Dr. Mays'
21       reports he identifies the conditions for a --
22       for what one of ordinary skill in the art would
23       understand suitable for coated tissue of a
24       patient.
```

```
 1                    With respect to biocompatibility,

 2          that was only one feature that was argued

 3          because -- and asked for specific claim

 4          construction on that issue, nothing else,

 5          because it's quite clear that one of ordinary

 6          skill in the art is going to understand you're

 7          going to have something suitable coated tissue

 8          of a patient, it's going to have to adhere, it's

 9          going to have structural integrity and those are

10          two important features, Your Honor, and there is

11          nothing inconsistent with us offering opinions

12          with respect to barium sulphate as not a

13          precursor, that's not a precursor, so it doesn't

14          affect the visualization agent, not only is it

15          not a visualization agent, it is also not a

16          precursor.  It is not inconsistent with how the

17          Court construed the claim.

18                    And, in fact, Your Honor,

19          biocompatible is a feature of the claim.  We won

20          that.  It's now been the second stage what does

21          that mean and the Court took a circular argument

22          about biocompatible composition of hydrogel

23          means it's formed from biocompatible precursors

24          which is the claim term, so we're left with this
```

```
1        tension here.  And, you know, one of ordinary

2        skill, for purposes of presenting this to the

3        jury, we're going to have to explain what this

4        claim means, not only for those terms construed

5        by the Court, but those that haven't been

6        construed by the Court, Your Honor.

7                     So we think that everything that

8        they have asked to be stricken with respect to

9        barium sulfate or tibular collagen or

10       degradation, there is lots of degradation

11       paragraphs in there, none of that relates to the

12       quote biocompatible issue that they identified

13       in their submission yesterday.

14                     THE COURT:  All right.  Anything

15       further on this from defendants?

16                     MR. PIVOVAR:  No, Your Honor.

17                     THE COURT:  Bear with me a second.

18                     We'll come back to this.  Are

19       there any other plaintiff opinions or evidence

20       that the defendants think they're sure are going

21       to be offered that are inconsistent with the

22       Court's claim construction?

23                     MR. PIVOVAR:  So we suspect that

24       they might have at trial, but we'll reserve our
```

```
 1     right to object at that time.

 2                    THE COURT:  All right.  Let's talk

 3     about the defendant's motion to sever the state

 4     of proceedings with respect to claim 10 of the

 5     '34 patent.  We'll hear from the defendants on

 6     this.

 7                    MR. GRAVES:  Thank you, Your

 8     Honor.  First I would like to thank you for

 9     rescheduling this so that Ms. Pascale and I

10     could go to our respective college graduations

11     for our daughters.

12                    THE COURT:  You're quite welcome.

13                    MR. GRAVES:  Your Honor, the R&R

14     from Judge Burke on claim 10 has made an already

15     interesting and unique situation all that much

16     more of a unicorn, so we're now just two weeks

17     out from trial and we have got a claim held by

18     the patent office as obvious, but also pending

19     Your Honor's review of our objection to the R&R

20     potential claim to be held infringed indirectly

21     by the defendant.  So we think that has tipped

22     the scales in favor of severing out and staying

23     this one claim.

24                    First, in terms of simplification,
```

```
 1        the plaintiffs essentially argue that there is

 2        very little difference between claim 10 and

 3        claim 20.  They're both from the same patent.

 4        Well, these claims are very different.  Claim 20

 5        is a predetermined thickness claim, so it

 6        overlaps significantly with the other

 7        predetermined thickness claims.  Claim 10 on the

 8        other hand is much broader.  It's about

 9        essentially visualization agent like a dye in a

10        hydrogel that forms within five seconds or less.

11                     So that -- those distinctions mean

12        we have completely different issues.  Completely

13        different prior art is asserted by the defendant

14        with respect to claim 10 versus claim 20 or any

15        other asserted claim that remains.  We have

16        completely different sets of inventors with

17        respect to these two claims.  We have different

18        priority dates asserted by the defendants, or by

19        the plaintiffs with respect to these two claims.

20        So they are not the same.  Teaching the jury

21        about the '034 patent in the context of claim 20

22        will not teach the jury about claim 10

23        whatsoever.

24                     THE COURT:  Would it simplify even
```

```
1       further if we sever and stay claim 20 as well?
2       Would you object to that?
3                   MR. GRAVES:  I would think that
4       would not really help because claim 20 is a
5       predetermined thickness claim and we're going to
6       be dealing with those other predetermined
7       thickness claims, so I think we ought to deal
8       with claim 20 while we're at it.
9                   The claim 10 is very unique and
10      distinct and including it in the trial will
11      actually greatly complicate the issues and the
12      complexity of the case for the jury.  So taking
13      it out will certainly simplify the issues.
14                  Plaintiffs say there is very
15      little left to try about claim 10.  We disagree
16      with that.  They mention the R&R of
17      infringement, but they fail to mention that was
18      just as to indirect infringement.  As far as we
19      know they still plan to present a direct
20      infringement case against HyperBranch with
21      respect to claim 10 which will carry its own
22      unique issues as to whether HyperBranch has
23      performed every step of the claim method
24      including forming a hydrogel within five
```

1        seconds.

2                    Also, Your Honor, they claim that

3        we only have one invalidity defense left as to

4        claim 10, specifically anticipation by the Rhee

5        500 reference because the patent office declined

6        to institute IPR on that particular ground.

7        Their argument is that having won at the patent

8        office on obviousness, HyperBranch is now

9        estopped from defending itself against an

10       accusation of infringement in front of the jury.

11       It can no longer even assert that successful

12       combination of obviousness references or any

13       other piece of prior art we could have possibly

14       thrown into the IPR reference other than the

15       Rhee 500 reference.  That strikes me as turning

16       the estoppel provision of the AIA on its head.

17                    THE COURT:  Are you able to cite

18       any authority on that point?  I don't think you

19       have either.  Has any court had to confront this

20       question that you're aware of?

21                    MR. GRAVES:  We're not aware of a

22       court having to confront a defendant

23       successfully invalidating the patent at the

24       patent office and the plaintiff taking the

```
 1     position that there is estoppel that applies.

 2     We found briefing in one case, it's pending now,

 3     it hasn't been decided.  Mr. Crenshaw can deal

 4     with this later in more detail, but I can say

 5     for now, first the language of the statute

 6     doesn't support such a twisted outcome.

 7     Estoppel means that you have taken a position

 8     and lost, so you're barred from relitigating

 9     that lost position.  It doesn't mean if you have

10     won at the patent office you can't defend

11     yourself on the same ground before a jury when

12     faced with an accusation of infringement.

13               And the legislative history of the

14     AIA makes clear that the fundamental purpose of

15     it was to separate out weak patents from the

16     rest.  And here we have the patent office

17     agreeing with us that this is an obvious claim.

18     We should not be estopped from so arguing in

19     front of the jury if it's going to be in the

20     case.

21               Your Honor referenced during the

22     April 6th status call that the possibility of

23     having detailed jury instructions in a special

24     verdict form to try to reduce the possibility of
```

 1    a taint from claim 10 being in the case.  But

 2    the fact of the matter is, Your Honor, with

 3    respect to the damages, taint is possible here.

 4    There won't be any record evidence about claim

 5    by claim allocation of damages.  Neither damages

 6    expert dealt with that.  The plaintiffs say if

 7    one claim is infringed, they get all the same

 8    damages as if all of the asserted claims were

 9    infringed.

10                And in the pretrial order meet and

11    confer process with submissions, you see the

12    plaintiffs made no effort whatsoever to provide

13    any sort of detailed instructions or special

14    verdict questions to try to minimize the

15    possibility, the prejudice, quite the contrary

16    --

17                THE COURT:  So as I understand it,

18    your view would be if I put -- if I don't sever

19    and stay claim 10 and the jury returns a damages

20    verdict based on something like the instructions

21    of the verdict sheet proposed by the plaintiff,

22    and then as you expect on appeal claim 10 is

23    invalidated because the PTAB finding is upheld,

24    you're going to be back here arguing that I need

1    to retry damages because there would be no way

2    to sort out what impact claim 10 infringement

3    had on the jury's finding of damages.  Is that

4    your position?

5              MR. GRAVES:  That's correct.  And

6    even more broadly, Your Honor, we might be back

7    here or the Federal Circuit arguing that the

8    inclusion of claim 10, particularly if the Court

9    adopts the R&R infringement, would just taint

10   the whole proceedings and then prepares we get a

11   reversal on infringement findings of other

12   claims and findings of not invalid.  We think it

13   would be highly prejudicial to allow this claim

14   to stay in the case, particularly in light of

15   the R&R, if that gets adopted.

16             The plaintiffs argued on the other

17   hand they're the ones who are going to be

18   greatly prejudiced if this claim is severed out

19   and stayed.  And they point in support for that

20   to their need for a permanent injunction should

21   they get a judgment of infringement on claim 10.

22             But look at the timing here.  That

23   claim expires in less than six months, so if we

24   go through a jury trial and get a judgment of

```
 1        infringement and not invalid on claim 10, we'll
 2        have JMOL motions.  We also need to schedule and
 3        conduct the separate bench trial on equitable
 4        estoppel which could take some time.  It's quite
 5        likely that the Court will not have sorted
 6        through equitable estoppel and the JMOL motions
 7        by the time this claim expires, so in terms of
 8        the timing here, we think it's highly unlikely
 9        that they would even be at the point of
10        litigating a motion for permanent injunction
11        before this claim 10 expires let alone getting
12        it decided by the court.
13                  THE COURT:  There was a reference
14        to another case or other litigation here.  Did I
15        misunderstand that?
16                  MR. GRAVES:  No, you did catch
17        that correctly.  We brought that up.  There is a
18        second case that the plaintiffs filed on seven
19        patents directed to applicator devices and
20        assemblies that actually spray out or deposit
21        the hydrogels that are at issue in this case.
22        That case is trailing behind this one.  It's set
23        for trial in March of 2020.
24                  THE COURT:  My understanding was
```

1    that you thought if I need another trial say on

2    claim 10 of the '034, one option might be to

3    move that claim over to that case.

4                    MR. GRAVES:  Exactly, Your Honor.

5    And the plaintiffs offered no response on that

6    whatsoever.

7                    THE COURT:  Is there a status

8    problem with your petition that you just

9    prevailed on?

10                   MR. GRAVES:  We don't believe so,

11   Your Honor.  I haven't heard --

12                   THE COURT:  I wasn't sure, but it

13   seemed that perhaps you didn't get institution

14   on all the claims that you asked for.

15                   MR. GRAVES:  There was one claim

16   on which we did not get institution.

17                   THE COURT:  I take it you have not

18   been advised by the PTAB that that in any way is

19   going to impact the finality of the written

20   decision.

21                   MR. GRAVES:  No.  And we had a

22   final written decision before that came out.

23                   THE COURT:  Let me hear from the

24   plaintiff on this motion, please.  Good morning.

```
 1                MR. ALTHERR:  Your Honor, there is
 2      three factors that need to be considered as to
 3      whether or not a case should be stayed.  One,
 4      the stay would simplify the issues for trial.
 5      Two, the status of litigation because the
 6      discovery is complete and the trial date is set.
 7      And three, the prejudice to the nonmoving party.
 8                Now, staying the action will not
 9      simplify the issues at trial.  The Court already
10      considered this at our April 6th status
11      conference and went through in a very cogent way
12      to show that it would not simplify the issues.
13      In their brief they didn't argue that they would
14      simplify the issues.  There is really very
15      little left for trial on the '034 patent.  If
16      the Court adopts the report recommendation for
17      summary judgment infringement, that issue is out
18      of the way.
19                THE COURT:  But if I don't, then
20      you're going to have to prove infringement;
21      correct?
22                MR. ALTHERR:  But we'll still be
23      settling forth all the same limitations that
24      were in the predetermined thickness claims.  The
```

1     predetermined thickness claims add a limitation.

2     All right.  This one is different because it

3     doesn't have the predetermined thickness

4     limitation.  That's all.  But the visualization

5     agent has to be there and all the other

6     limitations that are in those claims.  So you're

7     going to be having all those limitations anyway.

8              THE COURT:  Is visualization agent

9     in some other claim that's going to trial no

10    matter what?

11             MR. ALTHERR:  Yes, Your Honor.

12    Every predetermined thickness claim has the

13    visualization agent in it.  The claim 10 has the

14    visualization agent in it.  So you're going to

15    be going through all those same limitations.

16             The reason like I said that they

17    took out the claim 10 was because it is a

18    broader claim, it has fewer limitations, but all

19    those limitations are encompassed by what's in

20    the predetermined thickness.  They're going to

21    get all that.

22             Additionally, you have the same

23    prosecution history that's involved.  Claim 20

24    of the '034 patent is a predetermined thickness

1   claim.  We're going to be going through that.

2   We are going to be going through the

3   specification.  The jury is going to be taught

4   the specification, the prosecution history, the

5   prior art, the related patents, the '566 and the

6   '418 patents are all related and their

7   prosecution histories are related and have all

8   basically the same or very similar claim

9   limitations.  And so the jury is going to be

10  taught all that.

11              Now, if you stay the case and go

12  up and decide that you're going to have another

13  trial in this, it's going to be a second jury

14  that's going to have to go through all that

15  stuff another time.  All right?

16              So additionally, in addition to

17  the fact that you got all these common claim

18  limitations, all common prior art cited against

19  it, all of the common prosecution histories and

20  specifications, you do have an issue under

21  estoppel under 315(e)(2) estoppel.  And I would

22  like to say just a little bit about that.  I

23  have some slides here if I might pass them to

24  Your Honor.

```
 1              THE COURT:  Yes.  Sure.
 2              MR. ALTHERR:  Now, the first thing
 3      that I like to do, Your Honor, is point out the
 4      language of 315(e)(2).  And where it says, "The
 5      petitioner in an inter partes review of a claim
 6      in a patent under this chapter that results in a
 7      final written decision under Section 318(a), or
 8      the real party in interest or privy of the
 9      petitioner, may not assert either in a civil
10      action arising in whole or in part under Section
11      1338 of the Title 28 or in a proceeding before
12      the International Trade Commission under Section
13      337 of the Tariff Act of 1930 that the claim is
14      invalid on any ground that the petitioner raised
15      or reasonably could have raised during that
16      inter partes review."
17              All of the prior art references
18      they cited against claim 10 in this case,
19      they're saying invalidated, are on the face of
20      either the '034 patent or the '566 patent which
21      is a continuation --
22              THE COURT:  That much I think is
23      not in dispute, but do you have any authority
24      that says your interpretation of estoppel is
```

1     correct in these types of circumstances?

2            MR. ALTHERR:  There is two parts

3     there, Your Honor.  We're not just saying

4     estoppel on the successful part.  If you look at

5     those references, the one that they have, the

6     Jacobs reference, that's an issue that we have

7     in this court right now.  That's a reference

8     that they didn't raise, but they reasonably

9     could have raised it because they knew about it.

10            If you look on the second page,

11     you can see exemplary district court decisions

12     applying the plain meaning of Section 315 to

13     references the party knew or reasonably should

14     have known about, but did not raise in the IPR

15     petition.  The Parallel Networks case --

16            THE COURT:  Are those all could

17     have been raised estoppels?

18            MR. ALTHERR:  Those are all could

19     have been raised estoppels.

20            THE COURT:  Where is the estoppel

21     finding based on what was raised and a final

22     decision?

23            MR. ALTHERR:  What was raised.  Go

24     to the next slide.  Your Honor, there is no

1    deciding decision with regards to what was in

2    fact raised, but there is a pending district

3    court motion right now in the BTG International

4    Limited versus Amneal Pharmaceuticals case

5    pending in the District of New Jersey, and that

6    is pending right now.

7              The only safe harbor that

8    precludes estoppel for references that were

9    known or reasonably should have been known from

10   controlling precedent is referenced theories

11   raised -- is references and theories raised in

12   the IPR petition but not instituted.

13             THE COURT:  So if some court

14   ultimately finds that you're right, that

15   estoppel on its language applied even to what is

16   instituted and the petitioner prevails on it in

17   a final written decision, doesn't that just mean

18   that that is because it was anticipated that

19   either a plaintiff in your position would never

20   want to go to trial on a claim that had just

21   been found to be not patentable by PTAB, or that

22   no court would let the plaintiff do that and of

23   course would stay in a situation like this?

24             MR. ALTHERR:  No, Your Honor, the

1    purpose of this section, the estoppel section,

2    was to give the petitioner one bite at the

3    apple.  You elect what route that you're going

4    to go.  The idea behind the whole act was to

5    limit the amount of litigation.  If you decided

6    you were going to go the IPR route, you were

7    going to be estopped from what you actually

8    raised or could have raised.  The statute is

9    very clear on that.

10                THE COURT:  Wasn't part of the

11   idea also that they wouldn't thereafter have to

12   defend against being an accused infringer of a

13   patent claim that they managed to invalidate at

14   the PTAB?

15                THE WITNESS:  No, Your Honor,

16   because they had the estoppel raised after the

17   final decision, but the final decision is not

18   final until after appeal.  And that distinction

19   is very clear in those cases.

20                THE COURT:  I do think that is

21   clear, but in terms of a discretionary decision

22   as to whether or not this jury should have to

23   make a finding as to whether a patent that the

24   PTO has now said is not valid, why -- you know,

1      I guess come to that broader argument.  I think

2      the estoppel point cuts against you, but putting

3      that aside, why should I exercise my discretion

4      to have this jury decide infringement of a claim

5      that the PTAB has said shouldn't even exist at

6      this point?

7                  MR. ALTHERR:  Because what the

8      Federal Circuit is going to do is entirely

9      speculation.  If you don't go ahead and try the

10     case this time with this jury, all right,

11     they're going to hear all that same evidence,

12     going to be taught all this stuff about the '034

13     patent, and then if it gets reversed and sent

14     down, then you're going to have to try it all

15     again on the '034 patent on claim 10 with a

16     brand-new jury.  The parties are going to have

17     to go ahead and redo witness lists, redo exhibit

18     lists, redo a pretrial order and all those

19     things.  So you're really not going to save --

20     it's speculation as to whether it's going to get

21     reversed or not.

22                  Additionally, you have different

23     standards, as Your Honor very clearly noted, and

24     in saying that you are not going to allow

1    anything to go to the jury regardless of what

2    happens in PTAB, because they're different

3    standards, they shouldn't be confused.  Because

4    of the different standards, that is a very good

5    reason why this jury should be able to hear the

6    issues with respect to the claim 10 of the '034

7    patent.

8              Now, but I do want to reiterate

9    one thing on this 315 estoppel.  Putting the

10   point aside, the points of what the PTAB found,

11   is because the estoppel, they cannot raise the

12   Jacobs issue, that's something they could have

13   raised.  They cannot raise the obviousness over

14   thing, and they cannot raise the -- I guess it

15   was obviousness over Rhee 500 itself.

16             Even if you allow it to go to

17   trial and hear the invalidity evidence, the

18   amount of invalidity evidence is even if you

19   allowed the successful argument, it would be two

20   invalidity grounds on prior art, not the five.

21   So a lot of the case has already been

22   simplified.

23             THE COURT:  What about direct

24   infringement, are you going forward on that?

1          MR. ALTHERR:  No.  Direct

2     infringement on the '034, we are not going to

3     assert vicarious liability, or vicarious

4     infringement.

5          THE COURT:  So you're dropping

6     with prejudice your direct infringement claim on

7     claim 10?

8          MR. ALTHERR:  Yes, Your Honor.

9          THE COURT:  Okay.  Anything else

10    on this stay?

11         MR. ALTHERR:  Well, the other

12    thing is the stage of the proceedings.  As you

13    indicated, that strongly disfavors granting the

14    stay in this case.  The discovery is complete

15    except for the deposition we got going forward

16    of Dr. Mettler tomorrow, but trial is scheduled

17    for May 29th.  So the stay pending the final

18    appeal, the Federal Circuit appeals is not going

19    to promote the interest of justice.

20         Now, look at the prejudice to the

21    plaintiffs.  We are direct competitors, and the

22    -- in our brief we cited to the LifeTech Corp.

23    case and the Cooper Tech versus Thomas & Betts

24    which says that that is a factor which should

90

```
 1      weigh in heavily the prejudice to plaintiffs

 2      when they are direct competitors in staying a

 3      case.  And you should be looking to the

 4      prejudice to the nonmoving party, not what

 5      HyperBranch argues is prejudice to them.

 6                  The second part is the parties

 7      have already expended significant expense and

 8      energy just to get to trial.  We're going to

 9      have to do it all over again if you stay and go

10      out and have another trial.

11                  THE COURT:  What about the risk

12      that I'm going to have to do another trial if I

13      don't stay because of at least the damages

14      issues and the way you all have chosen to

15      present it?

16                  MR. ALTHERR:  I'm sorry.  Could

17      you say that again?

18                  THE COURT:  What about the risk

19      that I'm going to have to do another trial if I

20      don't state because you're asking the jury to

21      return a damages verdict that will be impacted

22      by claim 10 and the jury being told that the

23      defendant infringes and there is a chance, of

24      course it's speculation, but there is a chance
```

1    that the Federal Circuit will agree with the

2    PTAB.

3              MR. ALTHERR:  Your Honor, the jury

4    can be instructed in such a way that claim 10

5    with regard to the issue of infringement was

6    left to the Court, reserved to the Court and

7    they don't have to consider it.

8              As far as on damages and that, in

9    the instructions we put in that, we can tailor

10   the instructions if you believe that that is a

11   threat.  Our damages theory, what is supported

12   by the license for the patents-in-suit, is that

13   the royalties are paid whether one claim is used

14   or all the claims are used.  The royalties is

15   the same amount because the royalties is based

16   upon what the product category is.  These are

17   products that have been approved by the FDA.

18   The one license which is the basis for both

19   experts determining what is a reasonable royalty

20   provided that.

21             If you look at Magistrate Judge

22   Burke said it was appropriate the damages did

23   not have to be apportioned on a claim-by-claim

24   basis.  That was an order --

92

```
 1              THE COURT:  Isn't the bottom line
 2    that the risk of a new trial, a second trial is
 3    at least as great if I do what you want as if I
 4    do what they want?
 5              MR. ALTHERR:  Your Honor, I think
 6    it's pure speculation.
 7              THE COURT:  We're dealing in
 8    speculation, but the odds are good in their
 9    favor just based on statistics that they're
10    going to win their appeal in the Federal
11    Circuit, whereas there is also odds it would
12    seem to me that you win at this trial and you
13    get a damages award that at least based on how
14    you were asking me to instruct the jury and put
15    a verdict sheet in front of them, we'll never
16    know what impact a finding of infringement of
17    claim 10 had on it, meaning I'm going to have to
18    do it all over again.
19              MR. ALTHERR:  No.  The jury
20    instruction could be tailored to specifically
21    ask that question.
22              THE COURT:  Have you given me that
23    instruction?
24              MR. ALTHERR:  No, Your Honor, we
```

```
 1     have not.
 2                  THE COURT:  Wasn't the deadline a
 3     day or two ago for that?
 4                  MR. ALTHERR:  Yes, Your Honor,
 5     that was.
 6                  THE COURT:  Why should I be
 7     confident that you're going to give me that
 8     instruction in the next few days?
 9                  MR. ALTHERR:  The parties still
10     have a number of disputes on the jury
11     instruction.  I know they are going to have to
12     be resolved.  And I'm sure when we get up
13     through the trial there will be issues.
14                  THE COURT:  What about a verdict
15     sheet, are you guys going to be open to a
16     verdict sheet that makes the jury have to break
17     out patent damages on a patent by patent or
18     claim by claim basis?
19                  MR. ALTHERR:  I wouldn't say for
20     all of the patents, Your Honor, we break out
21     claim 10, and that would be very easy for the
22     jury to do.
23                  THE COURT:  So you would not
24     oppose, you think there is some promise there to
```

1    do that?

2                    MR. ALTHERR:  I think that could

3    be done.  That would save everyone a lot of

4    trouble.  That would save a second jury from

5    having to hear all the same evidence over and

6    over again.

7                    THE COURT:  What about this other

8    proceeding and the possibility that if I do have

9    to do something, a second trial, that I might be

10   able to move it over and be part of that other

11   case?

12                   MR. ALTHERR:  Once again, Your

13   Honor, that throws another patent in the case.

14   It makes that case more complex.  All the other

15   patents are related in the case.  There is two

16   families.  They deal with applicators.  They

17   don't deal with the chemistry.  You're

18   complicating the case a lot more by bringing in

19   all these other issues, all the things that

20   we've already battled in this case.  And it

21   would make it very complex for the jury.

22                   THE COURT:  Thank you.  I'll give

23   defendants a chance for rebuttal.

24                   MR. GRAVES:  Your Honor, I think

1    that Mr. Altherr's concession that they're

2    claiming as a matter of damages that they get

3    the same amount of damages whether one claim is

4    infringed or all is really self defeating here,

5    because it points to the lack of true potential

6    prejudice to them from going forward without

7    claim 10 which will likely be found invalid by

8    the Federal Circuit.

9              On the other hand -- and he says

10   well, we can deal with claim 10 separately in

11   the verdict sheet, but they haven't done that

12   yet.  And we don't know how as a practical

13   matter the parties can even present a case to

14   the jury on how to allocate damages on a

15   claim-by-claim basis or just for claim 10 versus

16   all the other claims.  There is just no evidence

17   in the record to support any sort of position

18   like that from either side.  We think it would

19   be impossible.  Sure, we could put a separate

20   question on the verdict form, what are the

21   damages for claim 10 if you find infringement

22   and not invalid, but there would be nothing in

23   the record to guide the jury on how to even

24   answer that question.

1            So I also want to point out the

2    patent owner here did not file a petition for

3    reconsideration at the PTAB on the final written

4    decision, so the clock is ticking on the

5    deadline for notice of appeal.  And that appeal

6    should be well in front of any appeal by any one

7    or both sides here to the Federal Circuit of the

8    ultimate final judgment entered in this case.

9            So we think it's highly likely

10   that the validity of claim 10 will be decided by

11   the Federal Circuit based on the appeal of the

12   PTAB ruling long before we get up to the Federal

13   Circuit from any appeal from this case.

14            So what we have here, Your Honor,

15   I think in short is a situation where if this

16   claim goes forward in the case, we have got

17   really a baked in issue for a reversal and a

18   remanded, we're going to be back here again.

19   Whereas it's much less likely if we sever it and

20   stay, it's never going to come back here because

21   the Federal Circuit would confirm the obvious

22   recall.

23            And the prejudice to us from

24   including it in the trial is enormous.  And the

```
1     prejudice to them of keeping it out is virtually

2     nil, doesn't impact their damages and they're

3     never going to get a permanent injunction based

4     on infringement of this claim.

5               As I explained, and we got no

6     response, there is no way we're going to have a

7     preliminary injunction motion fully adjudicated

8     and decided before this claim expires before

9     November of this year to say nothing of

10    substantial hurdles of irreparable harm.

11              Thank you, Your Honor.

12              THE COURT:  Thank you.  All right.

13    Let's move on now.  I'll hear from defendants

14    first on plaintiff's motion for reconsideration.

15    I think it was filed yesterday.  My simple

16    question is whether the defendants have figured

17    out their position and whether they oppose the

18    motion.

19              MR. CRENSHAW:  Thank you, Your

20    Honor.  Steve Crenshaw on behalf of defendant.

21    We do oppose their motion in two respects.  I

22    think there are three real issues that they

23    raised.  First is Mr. Jarosz's price erosion.

24    We don't contest that that was properly
```

```
 1        disclosed as damages within the United States.

 2        I think there might have been some imprecision

 3        in the wording, so we do not contest that.

 4                    With respect --

 5                    THE COURT:  And is that the full

 6        pool of the relief they're seeking with respect

 7        to Mr. Jarosz?

 8                    MR. CRENSHAW:  No.  They also want

 9        to allow Mr. Jarosz to double dip in effect by

10        asserting a reasonable royalty inside the U.S.

11        on top of their price erosion damages.  And

12        those numbers were never disclosed in

13        Mr. Jarosz's reports.  I'm happy to go into that

14        issue now or would you like me to continue the

15        overview?

16                    THE COURT:  Let's finish the

17        overview.  There is a third issue; right?

18                    MR. CRENSHAW:  There is a third

19        issue with Dr. DiStefano.  I think you heard

20        some argument on Dr. DiStefano's

21        biocompatibility argument.  And his specific

22        infringement opinions were related to the 5,705

23        patent which is no longer in this case, it's

24        out, it's not going to be going before trial.
```

1          We don't believe he had anything

2     disclosed in his report that merits inclusion in

3     the trial now that the 5,705 is out.  And what

4     plaintiffs are arguing is well, Dr. Mays is

5     relying on his opinion related to the 5,705 for

6     interpretation of the 3,705 patent.

7          Dr. DiStefano didn't say that my

8     opinions are related to the 3,705 patent.  He

9     didn't say that they were related to the issues

10    that are still live in trial.  Dr. Mays who is

11    trying to drag back in the 5,705 biodegradable

12    issues so that they can try to put more evidence

13    in the record for appeal purposes.  We don't

14    believe Dr. DiStefano's report has anything in

15    there that is still live and should be addressed

16    at trial, so we do oppose that part of the

17    motion for reconsideration.

18          THE COURT:  Just a little bit

19    more.  So the first thing that you see them

20    asking for with respect to Jarosz's price

21    erosion opinion, say again what it is you don't

22    oppose.

23          MR. CRENSHAW:  We believe that

24    Mr. Jarosz should be able to present his price

```
1    erosion opinion on price erosion inside the
2    United States.  That was fairly disclosed in his
3    August 25th report.  We certainly disagree with
4    just about everything he has to say on it, but
5    we weren't seeking to exclude that in our motion
6    in limine and we don't believe that should be
7    excluded.
8              THE COURT:  So to the extent their
9    motion is seeking me to reconsider and allow him
10   to do what you just said, you think I should
11   grant that.  You don't oppose it.
12             MR. CRENSHAW:  We don't oppose it.
13   I'm not sure that Your Honor's ruling
14   necessarily excluded that, but just for clarity
15   sake, I think it's fair to say Mr. Jarosz can
16   present his price erosion opinions at trial and
17   we will cross-examine him.
18             THE COURT:  With respect to the
19   other part of Jarosz's opinion excluded, you
20   oppose their request for reconsideration.
21             MR. CRENSHAW:  Yes, Your Honor.
22   In terms of reasonable royalties within the
23   United States, we do oppose their motion for
24   reconsideration.  And our primary problem here
```

```
 1        as Your Honor may recall, Mr. Jarosz has

 2        submitted now it will be four or five reports,

 3        expounding very different opinions.

 4                     His first report on August 25th

 5        had three basis for damages, lost profits for

 6        lost sales based on the market share

 7        apportionment theory; lost profits for price

 8        erosion; and finally, a reasonable royalty which

 9        had components both inside the U.S. and outside

10        the U.S.

11                     Because the market share

12        apportionment theory was not disclosed during

13        discovery, the Court struck Mr. Jarosz's opinion

14        and gave him a chance to put in a new opinion if

15        they could credibly do so.

16                     Mr. Jarosz put in a new report on

17        November 24th, and that report replaced his

18        opinions on lost profits for lost sales and his

19        opinions for reasonable royalty.  It didn't

20        touch the price erosion and that's the reason

21        we're not disputing that now.

22                     But for lost profits for lost

23        sales, Mr. Jarosz went all in and said 100

24        percent of sales within the United States would
```

1    be subject to lost profits for lost sales.  And

2    as a result he replaced his reasonable royalty

3    opinion and said reasonable royalties are five

4    percent of outside the U.S. sales and he

5    provided no opinions, no numbers, nothing for

6    reasonable royalties within the United States.

7    And he specifically noted that residual

8    royalties for infringing sales upon which they

9    did not receive lost profits are for accused

10   sales outside the U.S.

11              So we have this shell game now

12   where defendants are trying to go back to

13   Mr. Jarosz's original August 25th report and say

14   that's his true reasonable royalty report

15   despite the fact that Mr. Jarosz had an

16   opportunity to either reaffirm those opinions

17   that he disclosed there or provide alternative

18   theories and he never did that.  So what we have

19   is we have Mr. Jarosz being very clear in one

20   opinion as to what his reasonable royalty

21   opinion was, it was entirely outside the U.S.

22   That opinion was eventually -- the lost profits

23   component of that was eventually struck because

24   he was just not credible.

1          Now they're trying to go back and

2     say well, Mr. Jarosz preserved that because he

3     noted that his opinion was that in the event

4     lost profits damages are found to be inevitable,

5     reasonable royalty damages are to be calculated.

6          Now, plaintiffs aren't saying in

7     their motion for reconsideration Mr. Jarosz that

8     should be able to chose between price erosion

9     and reasonable royalty, they want to double dip.

10    They want to be able to say for United States

11    sales, they're subject to both price erosion and

12    a reasonable royalty.  And that opinion is not

13    disclosed I don't believe anywhere in

14    Mr. Jarosz's report.  It's certainly not

15    disclosed in the November 24th report which

16    directly contradicts that.

17          So the plaintiffs had a choice of

18    damages.  And they are certainly entitled on a

19    finding of infringement of a nonvalid claim to

20    compensation and that compensation must be no

21    less than a reasonable royalty.  What they

22    aren't entitled to is expert testimony that they

23    are entitled to a reasonable royalty in addition

24    to price erosion damages.

```
 1                    Mr. Jarosz's damages theory is
 2     that price erosion inside the U.S. is
 3     compensation for infringement.  And so their
 4     claim that they're entitled to put in expert
 5     opinion on reasonable royalty within the United
 6     States in addition to price erosion compensation
 7     just -- that's not required by the statute.
 8                    THE COURT:  So he did disclose an
 9     opinion on reasonable royalties within the U.S.
10     in the August 25th opinion, but your view is he
11     later in November disclosed a different opinion
12     which has the effect of superseding what he
13     disclosed in August?
14                    MR. GRAVES:  His reasonable
15     royalty opinion for the August 25th report was
16     based on market share apportionment.  His
17     numbers were a percentage of the sales, the
18     percentage of sales that weren't accounted for
19     in his lost profits, lost sales calculations.
20     So now they're not saying that same percentage,
21     they're saying no, all U.S. sales are subject to
22     a reasonable royalty in addition to the price
23     erosion damages.
24                    THE COURT:  And that opinion has
```

1      been disclosed no where?

2                  MR. CRENSHAW:  I don't believe

3      they'll be able to point you to it.  I haven't

4      seen it.  To the extent they're going to point

5      to footnote 541 on page 94, paragraph 260 of

6      Mr. Jarosz's original report, we believe that

7      was superseded by both plaintiff's decision to

8      pursue price erosion damages as compensation for

9      U.S. sales and Mr. Jarosz's subsequent report

10     where he didn't disclose any U.S. royalty

11     numbers and instead relied exclusively on

12     outside the U.S. sales.

13                 So the real problem we have is

14     what are his opinions.  We thought we had one

15     thing, they're now trying to go back to his

16     original report which was stricken in various

17     respects.  And they had a chance to put in a new

18     report that clearly laid all this out, but they

19     didn't want to commit to any of that.  They just

20     gave us a supplemental report that had some

21     notations from the old report, never was able to

22     find what was still operative or not.  And it's

23     precisely this problem we're now facing that

24     shows just how problematic their approach was.

```
 1                    THE COURT:  On the DiStefano, if I
 2          don't grant reconsideration, are you going to
 3          object to Dr. Mays' testimony where he will say,
 4          I guess, part of my opinion is based on this
 5          other expert, DiStefano.
 6                    MR. CRENSHAW:  I don't believe so,
 7          Your Honor.  There doesn't seem to be any reason
 8          to bring Dr. DiStefano on.  Dr. Mays is entitled
 9          to rely on that in forming his expert opinion.
10          He can tell the jury I talked to another doctor
11          who said this.  But Dr. DiStefano's underlying
12          opinion is irrelevant to any issues.
13                    THE COURT:  Thank you.  The
14          plaintiffs response to their motion.
15                    MR. CRENSHAW:  Thank you, Your
16          Honor.
17                    MR. ALTHERR:  Your Honor, I
18          assumed price erosion gets a little closer, we
19          will present that in evidence.
20                    THE COURT:  With respect to that
21          first point on price erosion, I'm granting your
22          motion to reconsider to the extent necessary to
23          allow you to do that.
24                    MR. ALTHERR:  What I would like to
```

1      do is put a little part of the motion for

2      reconsideration.

3                    THE COURT:  Why don't we talk

4      about DiStefano first, because they I thought

5      pretty clearly said in their motion that he was

6      only offered for the 5,705 and you didn't

7      respond to that.  And we relied on your failure

8      to respond.  And now I see you have other things

9      you want to do with him.  Why is that a

10     meritorious basis for reconsideration?

11                   MR. IWANICKI:  Thank you, Your

12     Honor.  Your Honor, Dr. DiStefano's report

13     addressed the limitation resistant enzymatic

14     degradation.  He provided opinions as to what

15     resistant enzymatic degradation means.  He

16     reviewed the accused product.  He reviewed all

17     of the patents in the lawsuit and he provided an

18     opinion as to what resistant enzymatic

19     degradation means and that the accused products

20     meet that limitation.  Now, resistant enzymatic

21     degradation is a limitation found in the 3,705

22     patent.

23                   THE COURT:  This may be all true,

24     but what I found is plaintiffs do not contend

1     that DiStefano's testimony is relevant for any

2     issue that will be the subject of the trial.

3     Where in your response to the motion in limine

4     did you tell me something contrary to that?

5                    MR. IWANICKI:  Your Honor, I'm

6     telling you, I'm telling you now that with

7     respect to resistant enzymatic degradation,

8     Dr. Mays relied on his opinion with respect to

9     the 3,705 patent.

10                   THE COURT:  But when I had to make

11    this decision, I had to rely on what you all

12    argued, and I think, but again, correct me if

13    I'm wrong, I think you didn't make this argument

14    at the time I had to make this decision.  Is

15    that correct?

16                   MR. IWANICKI:  Your Honor, it was

17    what they had presented was an exemplary list,

18    Your Honor, it wasn't a complete list in their

19    motion in limine.  And so, Your Honor, this

20    issue is one where Dr. Mays very clearly in all

21    of his expert reports, there is no surprise

22    here, in all of his expert reports relied on

23    Dr. DiStefano's opinion in order to reach his

24    opinion with respect resistant enzymatic

```
 1    degradation.  It's not limited to the 5,705.  It
 2    is an opinion that is with a consistent claim
 3    limitation between those two patents.
 4              THE COURT:  I'm told that they
 5    will not object to Dr. Mays indicating that he
 6    relied on Dr. DiStefano.  Why at this point do
 7    you need Dr. DiStefano?
 8              MR. IWANICKI:  I think the jury
 9    would benefit from live testimony.  I think
10    that, you know, having someone refer to a piece
11    of paper and say this is what the piece of paper
12    says and I adopt it is probably -- it's going to
13    be better for the jury to hear the live
14    testimony from Dr. DiStefano, sir.
15              THE COURT:  All right.  We'll get
16    Mr. Altherr here.  He's going to talk about the
17    first issue.
18              MR. ALTHERR:  The only issue that
19    we have got left on this end is the extent to
20    which Mr. Jarosz should be able to provide
21    opinion testimony with regard to his calculation
22    of reasonable royalty.  They don't contest that
23    he's allowed to do some reasonable royalty with
24    regard to reasonable royalty outside the United
```

```
 1     States.  They are saying that we superceded our

 2     prior computation of reasonable royalty and

 3     therefore dropped it.  Well, that's not the

 4     case, Your Honor.

 5               What happened was they have tried

 6     a number of times to strike both price erosion

 7     and the reasonable royalty.  The magistrate has

 8     ruled against them.  You ruled against them.

 9     Even after we were allowed to submit the

10     supplemental, we still had to carry forward the

11     price erosion from the August 25th and the

12     reasonable royalty from the August 25th opinion.

13               Now, in that August 25th opinion

14     --

15               THE COURT:  How do we go from a

16     November opinion that he still continued all his

17     reasonable royalty opinions from August?

18               MR. ALTHERR:  This is the November

19     opinion, November 28.  You look at paragraph 22.

20     It says, "For the infringing sales upon which

21     Integra does not receive lost profits, Integra

22     is entitled the reasonable royalty damages."  He

23     ended that one the same way he ended the August

24     25th after he went through, to let it be known
```

1   in some event the lost profits was disallowed

2   which was happening in this case, not allowed to

3   get lost profits for lost sales, that we would

4   rely on reasonable royalty.

5              THE COURT:  Is this the number

6   that he's going to offer at trial in paragraph

7   22?

8              MR. ALTHERR:  What that is, that

9   number relates to the number for the sales

10  outside the United States.

11             THE COURT:  So where is he

12  indicating that he still has an opinion as to

13  reasonable royalties within the United States

14  and what that dollar figure is?

15             MR. ALTHERR:  He did the

16  calculation, Your Honor.  The calculation, that

17  goes back to his August 25th report.

18             THE COURT:  But where in the

19  November opinion, because I think we can see

20  it's not paragraph 23.  Where does he put the

21  defendant on notice that he continues to believe

22  that reasonable royalties are available within

23  the U.S. and here is what they are?

24             MR. ALTHERR:  Because he said for

1    anyone that didn't receive lost profits, he said

2    we're entitled to lost profits.  That's in the

3    opinion.  All right?  And that's what he asked

4    for, where he provided it.  And so we're saying

5    if you don't get lost profits, then you're

6    entitled to a reasonable royalty.  He's only

7    calculated reasonable royalty in one way, except

8    on sales, and that was according to the way he

9    set it out in his August 25th, 2017 report.

10              Now, when he went to the report to

11   claim lost profits from lost sales on the

12   two-player market, there were no U.S. sales

13   because that was all based on U.S. sales.  Once

14   that got knocked out, then you fall back on the

15   infringing sales which he didn't receive lost

16   profits and you apply the same exact

17   calculation.  They're not being prejudiced in

18   any way.  The calculation he put it in in great

19   detail in the first report, he has the reference

20   exactly how to apply it here.  As you can see,

21   he puts down applying the reasonable royalty

22   rate to all accused sales results in reasonable

23   royalty damages at that time ███████ through

24   April 2017 calculated as royalty rate times the

1    total Adherus U.S. and outside U.S. revenues,

2    equals ███████████ times ███████████ equals

3    ████████ and ██████ --

4                THE COURT:  You don't have to read

5    all of this.  I'm still left with the question,

6    this is August; correct?

7                MR. ALTHERR:  This is August, yes.

8                THE COURT:  In and around November

9    through today, or due very recently, how would

10   the defendants had known that that was the

11   opinion that he intended to offer with respect

12   to damages?

13               MR. ALTHERR:  Because as he set

14   forth in there, he had the August 25th report,

15   he still relied on all the parts which had not

16   been stricken.  The whole price erosion is in

17   the August 25th report.  You're allowing that.

18   They're not contesting that.  That's always in

19   the August 25th.  The calculations for a

20   reasonable royalty was in the August 25th report

21   and had not been stricken.  They tried to get it

22   stricken, but they didn't get it stricter.

23               THE COURT:  Why shouldn't they

24   have understood that the supplemental would

```
 1    supercede what he had opined earlier?

 2                MR. ALTHERR:  Because he said in

 3    here on paragraph 22 of the November report that

 4    the infringement sales for which he did not get

 5    lost sales, that you would be able to get a

 6    reasonable royalty.

 7                The patent statute is clear that

 8    you're entitled to damages adequate to

 9    compensate for the infringement.  And many cases

10    have held you can get reasonable royalty and

11    price erosion, which has always been the

12    position all the way through.  Now, when he was

13    taking the position that he was entitled to lost

14    profits from lost sales, which this Court

15    subsequently decided he was not, he still said

16    if you didn't get lost sales, you would get at

17    least reasonable royalty damages.

18                THE COURT:  Thank you.  Do the

19    defendants want to briefly respond?

20                MR. CRENSHAW:  Thank you, Your

21    Honor.  I think Your Honor has it mostly

22    correct.  The November 24th report doesn't

23    disclose anywhere U.S. royalties.  If you look

24    at supplemental tab 3 which is referenced in
```

1    paragraph 22, this is what I was talking about

2    where the numbers for U.S. royalties are zero.

3    So our understanding based on paragraph 22 which

4    says if lost profits are not available then

5    reasonable royalties, lost profits include price

6    erosion.  So Mr. Jarosz in his November 24th

7    report had a lost sales component lost profit

8    and a price erosion component.  He never said if

9    price erosion is not shown, then reasonable

10   royalty.  He said if lost profits are not shown.

11             So our understanding of his

12   opinion was lost profits and lost sales 100

13   percent, price erosion and a reasonable royalty

14   component for outside the U.S.  So I think if

15   Your Honor just looks at tab 3 you will see

16   there is no disclosure of U.S. royalties and

17   then for footnote 37 on paragraph 23, which

18   Mr. Altherr didn't show you says that residual

19   royalties are for outside the U.S. sales.

20             Thank you.

21             THE COURT:  Thank you.  Let's talk

22   briefly about the defendant's objections to that

23   R&R regarding summary judgment of infringement

24   of claim 10 of the '034 patent.  I know we had

```
 1      gone through some of this earlier.  Let's focus

 2      on it.

 3                  MR. PIVOVAR:  I told you we would

 4      be back with the picture.  One of the issues

 5      that comes up with is basically what our

 6      objections fall down to is this.  All of the

 7      evidence that Magistrate Judge Burke relied on

 8      and what was presented to support the idea that

 9      the hydrogel forms within five seconds is all

10      related to a gel time.

11                  THE COURT:  A gel time?

12                  MR. PIVOVAR:  A gel time.  So just

13      to show you how this works.  When you mix two of

14      these things, you have these precursors and they

15      react with each other.  And I know you have seen

16      briefing on it.  They form a reaction mixture

17      after they mix and that initiates a chemical

18      reaction.  And as that chemical reaction

19      proceeds, what you're doing is you're causing

20      these different freestanding components to start

21      to link up.  At some point of that process,

22      you're going to have enough of them connected

23      that they're going to form a three-dimensional

24      network.  There will be other parts that are
```

1     still floating inside that that will then cure

2     over time.

3               You see you have you mix, you go

4     all the way down and at some point you get

5     equilibrium at some point in the future.  What

6     happens, you mix this up, it reacts, then you go

7     to what is known as a gel time which all the

8     experts in the case agree can be measured in

9     lots of different ways and it varies.  And even

10    plaintiff's own expert has evidence they point

11    to where it could be one second or up to

12    four-and-a-half seconds for the accused products

13    which shows you a pretty big stretch.

14              So the argument we had was if

15    you're going to use gel time, which is the very

16    initial point when it gets some kind of metric

17    of being defined as a gel time, there is

18    different ways of measuring it, so there are

19    different ways of getting different times, and

20    that's why we have that indefinite.

21              So Dr. Mays recognized oh, if I go

22    with gel time, it will be problematic.  So

23    during his deposition he said no, I think for

24    claim 10 the requirement has to be a fully cured

1      hydrogel.  You're going to see a solid aggregate

2      at the gel time.  You'll see that.  You'll see

3      solid aggregate from here all the way on.  But

4      he said well, I know there are different ways to

5      measure gel time.  I'm going to say it's a fully

6      cured hydrogel.  A fully cured hydrogel

7      according to Dr. Mays is that all of these

8      components that can link up are there.

9                     So what we have is this issue.

10     This is Jell-O.  I don't mean to be like to

11     pedantic about this, but if you have made

12     Jell-O, you know you have to leave it sit for a

13     really long time, about four hours.  That's what

14     the instructions say.  But if you do it for less

15     amount of time you get a soft set or a firmer

16     set.  So you're going to have a solid aggregate

17     at the set time or the gel time which is two of

18     the things that Magistrate Judge Burke and

19     plaintiffs point to.  But if you want it to be

20     all the way fully cured, you have to wait the

21     four hours.  Hydrogel, Jell-O is a hydrogel.

22     It's got a dye in it.  Different chemistry.

23     You're not going to want to eat it the way these

24     products are used, but the same concept.

1          So we asked Dr. Mays, we asked

2     him, so in the context of claim 10 it says that

3     the hydrogel forms.  Do you see that?  Yes.  Now

4     the hydrogel forms, that means there is a fully

5     cured equilibrated hydrogel.  Yes.  And then we

6     asked him, what does that mean.  He says you

7     react to all the functional groups that can

8     react.

9          I don't want to be rearguing these

10    issues, but it's the clarity that we need is

11    that the order says essentially well, you have a

12    fully cured hydrogel at the gel time and those

13    are just, kind of just scientifically not true,

14    because when you have a fully cured hydrogel,

15    you reacted all the functional groups that can

16    react, not that you're just at the stage where

17    you have enough of them to form a solid.  There

18    is a distinction here and we play this out in a

19    brief.  Can you go back to the next slide.

20         This is the problem we have,

21    regardless of whether you call it gel time, set

22    time or cure time or fully cured gel, it doesn't

23    matter, but each one of those things is a

24    different metric associates with a different

1           time frame on that graphic that we looked at.

2                      What we have now is we have an

3           order from Magistrate Judge Burke that says

4           well, it is a fully cured hydrogel.  But then he

5           says, well, it's a visible solid and then he

6           points to evidence about gel time and set time.

7           So there is a lot of different metrics that are

8           being applied within the context.

9                      So let me just show you one of the

10          distinctions of why this is important in terms

11          of how the products are actually applied.  So

12          this is a gel time measurement.  And before we

13          go into this, I just want to say, one of the

14          things about a gel time measurement is it's

15          controlled so that when you squirt all the

16          material together, so it starts at one time.

17          Remember we talked about the indefiniteness of

18          the claim and I talked about how mixing can take

19          different amounts of time, in this experiment

20          you're controlling this to have everything mix

21          all at once.

22                      If you click on the slide, you

23          have this spinning experiment and then if you

24          squirt everything in all at once and then it

1      stops.  Could we go back and do it again.  It's

2      a short video.  Right.

3                  So you see the little thing in

4      there spinning, it's in a liquid, that's one

5      precursor.  You squirt in the other one and it

6      stops.  Between the time when you squirt it in

7      and it stops, that's the gel time.  What you can

8      see in here in the video, that's a solid

9      aggregate.  Pick it up, there you go.  So that's

10     a gel time measurement.  Is that a fully cured

11     hydrogel?  Is that going to meet the visible

12     solid aggregate part of the claim of how the

13     Court applied it for infringement?  Because that

14     is an experiment that we're going to show to the

15     jury.  If they say it's a fully cured hydrogel,

16     I don't think our expert is going to say that's

17     a fully cured hydrogel because not all of the

18     crosslinks have happened.  And it's the same

19     thing with the accused products, not all of the

20     crosslinks have happened, so it really is just a

21     question of what does this claim mean and that

22     was the issue we had.

23                  THE COURT:  So if I sustain your

24     objection, would I be telling the jury that you

1    need to have a fully cured hydrogel within five

2    seconds?

3              MR. PIVOVAR:  That's right,

4    because our position was, and this is how we

5    briefed it and we reargued it back to Your

6    Honor, if you go with the gel time, you saw that

7    spinning disc and it stopped, that's one

8    measure.  There is lots of other different

9    measures.  All of the experts in the case agree

10    there is different ways you can get gel times

11    and the numbers will change.  So that's where we

12    had our indefiniteness argument if you use a gel

13    time or something initial.

14              THE COURT:  If you don't have an

15    indefiniteness objection, it would tell the jury

16    that you need a fully cured hydrogel within the

17    five seconds?

18              MR. PIVOVAR:  Yes.  And then it

19    comes down to the fully cured hydrogel means

20    that all of the crosslinks have been formed in

21    the hydrogel.

22              THE COURT:  That's what you would

23    propose the instruction is?

24              MR. PIVOVAR:  That's right,

1    according to what their own expert said.  If you

2    go to the slide we had right before the gel time

3    experiment, I think you can see how this plays

4    out.  This is something you have to get numb to,

5    but this is an actual application of what we

6    have, the product, we have a video of this

7    ready.  And that is not it.

8              Right here, Your Honor.  So what

9    you're going to see is the person spraying this

10   over -- I think you probably saw pictures.

11   They're spraying this over the incision site.

12   And it's hitting it and it's setting because you

13   want it to stick.  But if you're going to have a

14   fully cured hydrogel, that's not the fully cured

15   hydrogel yet because they spray more on, and

16   more of it has to crosslink and it's building up

17   a bigger hydrogel.

18              And you can just see from the time

19   of the application getting all the way to the

20   fully cured hydrogel that you have at the end of

21   the application is taking a lot longer than five

22   seconds.  That's the issue that we have is the

23   application process drags that out.

24              So if we did say it's fully cured,

1     it's a fully cured hydrogel, you have to put it

2     at all of the crosslinking has been formed

3     because as you put down more layers you get more

4     crosslinking because you're building it up more.

5     If that's the appropriate construction, then

6     yes, we believe that would be definite.

7                    THE COURT:  Okay.  Thank you.

8                    MR. PIVOVAR:  Thank you, Your

9     Honor.

10                   THE COURT:  I'll hear from

11    plaintiff.

12                   MR. ALTHERR:  Your Honor,

13    Magistrate Judge Burke reconciled the motion for

14    summary judgment.  What HyperBranch is arguing

15    now is that the Court erred in conflating fully

16    cured with gel time.  Fully cured is not a -- or

17    gel time, either one of those, are terms that

18    are in the patent claim.  And they are not what

19    magistrate judge construed the language to mean.

20                   The operative language there is

21    the hydrogel forms within five seconds.

22    Magistrate Burke said that means that you have a

23    visible solid aggregate has been formed which

24    can be determined by way of visual inspection.

1             Now, there is no dispute that that

2     is exactly what they have in the accused

3     product.  HyperBranch's own documents show that

4     it forms a solid aggregate within five seconds.

5             Start down at the very bottom, the

6     Adherus products, polarize to form a hydrogel.

7     Film when sprayed on to the surgical site, an

8     immediate polymerization time ranging between

9     0.96 to 1.47.  The immediate polymerization.

10    That's their chart that shows what their product

11    does.  They also state that the Adherus hydrogel

12    allows for such rapid self polymerization that a

13    watertight barrier is formed within one second.

14    If it's a watertight barrier, it's a visible

15    solid aggregate that's been formed.

16            THE COURT:  Are you saying that

17    it's done reacting and it's complete in these

18    time frames?

19            MR. ALTHERR:  No.  The reaction,

20    they are not saying that it's fully cured or

21    that it's a complete crosslinked reaction.

22    That's not what the claim requires and that's

23    not what Judge Burke said that it meant.  All

24    you had to do was form a solid aggregate as

1     determined by visual inspection.

2             Now, according to that claim

3     construction that he had, which is correct,

4     there is no dispute that their documents meet

5     that, or their products meet that.  Their

6     enablement documents specify that it happens

7     within those amount of times numerous times.

8             THE COURT:  I don't think that's

9     in dispute.  I don't think they're arguing about

10    that at this point.

11           MR. ALTHERR:  Their own expert

12    testified that he uses visual inspection to see

13    if the hydrogel has been formed, to determine if

14    it's there.  So the prior art that they relied

15    on, that U.S. Patent 7,964,217 says that the

16    hydrogel that is formed is visible in solid

17    aggregate.

18           So all of this, all right, is

19    really an attack upon Judge Burke's claim

20    construction, which definitely he is right.

21    Visible solid aggregate has been formed as

22    determined by way of visual inspection.  If you

23    adopt that claim construction that they had,

24    then there is no dispute their product meets the

```
 1    clearance of that claim construction and,

 2    therefore, summary judgment is appropriate.

 3                    THE COURT:  What about what

 4    Dr. Mays said about fully cured?

 5                    MR. ALTHERR:  Dr. Mays has said a

 6    number of things.  They're pulling one part out

 7    of context out of his whole testimony.  If you

 8    look at his whole testimony, he said that when

 9    it forms a solid, you can see it.

10                    THE COURT:  Okay.  But what about

11    the portion where he says, "I mean, fully cured,

12    we have completed all of what we can complete."

13                    MR. ALTHERR:  He didn't mean

14    complete -- he meant fully cured meaning you

15    form the solid aggregate.  He didn't mean

16    crosslinking was completed.  Crosslinking could

17    go on for hours.

18                    THE COURT:  Okay.  Anything

19    further on this?

20                    MR. PIVOVAR:  No.

21                    THE COURT:  Anything further from

22    the plaintiff on this?

23                    MR. ALTHERR:  Your Honor, if I may

24    add one more thing.  One of the things that
```

1     Judge Burke was relying on, too, when he came up

2     with that claim construction was that the -- he

3     said the Court further noted that Dr. Lowman was

4     able to assess by visual observation whether a

5     sufficient amount of crosslinking between

6     functional groups had occurred such that

7     hydrogel was formed.  Even their own expert says

8     you don't have to have it fully cured, just a

9     sufficient amount of crosslinking.

10              THE COURT:  Thank you.  Anything

11    further from the defendant?

12              MR. PIVOVAR:  Briefly, Your Honor.

13    I just wanted to go back to what Dr. Mays'

14    initial report said and what plaintiffs relied

15    on in their opening brief.  And that is you see

16    the gel time here and it's a gel time of less

17    than one second is what he says in the first

18    paragraph.  He comes down, he says I also

19    conducted gel time experiments, and he says a

20    mean gel time of 3.26 seconds and a standard

21    deviation of 1.1.  That's up to almost four

22    seconds.

23              What you heard from plaintiffs

24    just then is it's not all the way fully cured at

1    the gel time.  If you take this evidence in

2    light most favorable to us, that's 4.5 seconds

3    and then it gets to a fully cured hydrogel by

4    five.  If you don't have any other additional

5    questions.

6                    THE COURT:  What about Dr. Lowman

7    apparently talking about sufficient

8    solidification.

9                    MR. PIVOVAR:  So those are taken

10   out of context.  Eventually if you have a solid

11   and you let it go long enough, and look at it,

12   and keep in mind, too, when they point to this

13   other reference it says a visible solid

14   aggregate has been formed which in theory all

15   the crosslinks have been formed.  Because if you

16   wait long enough, it will cure because curing

17   takes time.  And what Dr. Lowman was saying, if

18   I can just put this on, I think I have this on.

19   It's universally accepted among the experts and

20   all the documents that hydrogel forms at the gel

21   point.

22                    So the point being is that what it

23   means to have a hydrogel forming has different

24   connotations.  Are you talking about the

```
 1      hydrogel forming at the gel point?  Are you
 2      talking about having a hydrogel form when it's
 3      fully cured?  And that's the difference.
 4                  And when they say oh, Dr. Lowman
 5      is talking about gel formation, he's talking
 6      about this context of the gel form and the gel
 7      time.  We'll leave it at that.  That's it.
 8                  THE COURT:  Obviously we have got
 9      a lot of R&Rs.  On this one, Judge Burke did his
10      claim construction in connection with ruling and
11      making a recommendation on summary judgment; is
12      that correct?
13                  MR. PIVOVAR:  That's right.
14                  THE COURT:  Did you propose a
15      construction that he rejected.
16                  MR. PIVOVAR:  Yes, we proposed if
17      it's gel time, it's indefinite.  It has to be a
18      fully cured hydrogel at the end point of that
19      graphic, which is all of that crosslinks that
20      can form have formed.
21                  THE COURT:  Thank you very much.
22                  MR. PIVOVAR:  Is there any chance
23      that we can make a request that we can take a
24      short recess?
```

```
 1                      THE COURT:  Yes.  We will do that
 2           in just a moment.  Plaintiff, do you have
 3           anything else on this motion?
 4                      MR. ALTHERR:  No, Your Honor.
 5                      THE COURT:  Let's take a short
 6           recess.
 7                      (A brief recess was taken.)
 8                      THE COURT:  All right.  Let me
 9           tell you where we are.  I have about a half an
10           hour still this morning and then I have to take
11           a break and I'll meet you back here at two
12           o'clock to cover whatever we don't get to
13           between now and when we take a break.
14                      I'm going to give you a ruling on
15           one of the issues that we argued this morning.
16           And then I may have more rulings for you later
17           when we come back.
18                      The issue that I am ready to rule
19           on is the defendant's motion to sever and stay
20           the proceedings with respect to claim 10 of the
21           '034 patent, I have decided to grant this
22           motion.
23                      We have maybe not a unique but
24           certainly unusual situation where we are just a
```

1    couple weeks from trial and we have had a final

2    written decision from PTAB finding that this

3    claim is not patentable and at the same time I

4    have an R&R from the magistrate judge

5    recommending that I grant summary judgment

6    finding that this same claim is infringed.

7                    So this raises an interesting,

8    again, perhaps unique situation and certainly

9    one that I have not found and the parties have

10   not found in any court confronting and deciding

11   to this point.  It presents a discretionary

12   decision and in my view the proper exercise of

13   my discretion looks different now than if did

14   when we talked about what things looked like in

15   early April.

16                    And my view is that my best

17   exercise of my discretion is not to put this

18   claim in front of the jury at that time, May 29.

19                    How did I reach that conclusion?

20   I had considered the simplification factor and I

21   am persuaded that my decision to sever claim 10

22   will simplify this trial.  At a minimum it takes

23   out any argument that the jury should hear about

24   the IPR, the PTAB, and its findings.

```
 1                    Similarly, if I were to adopt
 2      Judge Burke's R&R on claim 10, it takes out the
 3      complications of telling the jury that the
 4      defendant has been adjudicated to be an
 5      infringer while still at the same time asking
 6      them to be open minded and decide that the
 7      defendant is an infringer on other claims.
 8                    It takes out any issues that
 9      remain with respect to infringement and
10      invalidity as to claim 10.  I'm not yet ruling
11      on whether I'm adopting the R&R, so I can't yet
12      say whether there would be something about
13      infringement left to try.
14                    In terms of invalidity, I am at
15      this point not at all persuaded by the
16      plaintiff's argument that the defendant would be
17      estopped from presenting invalidity defenses
18      only to prevail in front of the PTAB, so my
19      belief is that my decision is simplifying the
20      case by removing from the jury's presentation
21      invalidity defenses that otherwise I would have
22      to allow to be put forward by the defendant as
23      part of this trial.  So I do think my decision
24      will simplify the case.
```

1            I recognize that the status of the
2      case is one where I'm making this decision very
3      late in the day and the parties are almost
4      entirely completed in their preparations to try
5      claim 10, but the reality is we got the decision
6      from the PTAB when we did.  We got to the
7      summary judgment issue with respect to claim 10
8      when we did.  And there is still issues related
9      to that that are open since I haven't ruled on
10     the objections.  And while certainly the later
11     in the case an issue like this comes up, the
12     less likely the court is to grant the stay and
13     sever.  That is only one factor, not
14     dispositive, and here I have weighted and the
15     full balance.
16            In terms of prejudice, I recognize
17     the parties are direct competitors.  But this
18     particular claim is due to expire soon, I
19     believe in November of this year, so I'm
20     persuaded by the defendant that even if the
21     plaintiff were to go to trial in May on claim 10
22     and prevail, and there was no decision from the
23     Federal Circuit in the meantime affirming the
24     PTAB, there is enough litigation here that it

1    seems almost impossible to imagine that the

2    plaintiff would persuade me to enter injunctive

3    relief on the basis of this claim before it

4    expired in November.  That's without even

5    considering issues related to the public

6    interest and irreparable harm.

7              Further, I do think it's fair to

8    the prejudice to the defendant, I alluded to how

9    the defendant would be prejudiced, he would be

10   prejudiced if we go forward either by me

11   estopping them from having a jury consider

12   defenses on which they prevailed, which is what

13   the plaintiff asked me to do, or having to

14   defend against a claim on which they have

15   prevailed without the jury hearing anything

16   about those proceedings or how they prevailed.

17   And I don't think that given the full context I

18   should be prejudicing the defendant with respect

19   to this claim in that way.

20             Further, if I look down into the

21   future with respect to the simplification

22   factor, I do think the risk of having to do

23   another trial with you all related to this case

24   is significantly greater if I go forward on

1    claim 10 at this point than if I do not.

2              While it is inherently

3    speculative, the odds seem to me much greater

4    that if we present damages to the jury in the

5    way the plaintiffs have asked me to, in the way

6    they developed their evidence, in the way they

7    have asked me to instruct the jury and the

8    verdict sheet they have asked me to give to the

9    jury, it seems much more likely I would be

10   buying a second trial at least on damages

11   because the odds are that the PTAB decision is

12   going to be affirmed on appeal, so that seems a

13   greater risk.  And to avoid the greater risk

14   than an alternative risk, which I recognize

15   which is that you all may be back here just to

16   try claim 10 of the '034 patent after the

17   Federal Circuit reverses the PTAB, that is a

18   possibility, it seems to me much less likely.

19              And I further say there are issues

20   that have been reserved for a bench trial in

21   this case, there is another case, and you all

22   have thrown at me and Judge Burke an inordinate

23   number of decisions, so I think this case more

24   so than others is one that we're all likely to

```
 1    get to know each other very, very well over the

 2    next many years because it's hard to imagine as

 3    hard as Judge Burke and I try that the Federal

 4    Circuit is going to agree with everything that

 5    we have done, so it seems to me the odds are you

 6    are coming back and we are going to have more

 7    trials in this case regardless, which is all the

 8    more reason for me to do what I think is right

 9    which here I think the correct discretionary

10    decision is to take claim 10 of the '034 patent

11    out.

12                So that's the only ruling I'm

13    giving you.  Now, a number of the other issues

14    that have been argued this morning and some that

15    are still on the agenda are implicated by claim

16    10 of the '034 patent.  I'll ask that during the

17    break you think about what impact this has on

18    any of the other issues that have been argued or

19    the ones that we're about to argue, but if

20    either of you have a position offhand, if you

21    thought through what you would want me to do

22    with respect to other issues that related to

23    claim 10, if in fact as I have now, I have

24    stayed claim 10, I would be happy to hear it.
```

1        Let me ask the defendants first.

2                    MR. CRENSHAW:  Your Honor, one of

3        the issues that we're going to discuss later and

4        that was raised in the pretrial order relates to

5        depositions of German doctors, Dr. Jacobs and

6        Mettler.  Those are currently set to go forward

7        tomorrow.  They relate solely to an invalidity

8        argument related to claim 10.

9                    We have a host of issues with

10       those depositions going forward tomorrow, but I

11       think Your Honor's ruling relieves us of those

12       issues.  I would just say that any depositions

13       of Drs. Jacobs and Mettler would be postponed

14       and we can deal with them in an appropriate

15       manner at an appropriate time.  And I think

16       that's the only other one that we have.

17                    Thank you.

18                    THE COURT:  I guess plaintiff, if

19       you want to respond to that.  Do you object to

20       the depositions not going forward tomorrow?

21                    MR. ALTHERR:  Yes, Your Honor.  We

22       have made substantial arrangements.  Dr. Mettler

23       is in Germany.  Dr. Mettler is very busy.  She's

24       a very aged person.  We want to be able to

1    preserve that testimony.  Now, one way, one

2    possible way that we could moot it is if you

3    would rule that as pursuant to 315(e)(2) that

4    they are estopped from presenting the Jacobs

5    reference because that's a reference that's on

6    the face of the patent, and they knew or -- they

7    either raised it or could have raised it.  And

8    the majority of district courts have held that

9    that is a proper basis for estoppel.  If they

10   would be estopped on that reference then the

11   deposition would not have to go through,

12   however, in order to preserve her testimony, she

13   is an aged woman.

14              THE COURT:  There is two

15   depositions for tomorrow.  Are you asking that

16   both of them go forward?

17              MR. ALTHERR:  I thought it was

18   just Dr. Mettler for tomorrow and -- if Jacobs

19   is going forward, we want that one, too, also,

20   Your Honor, for the same reason.

21              THE COURT:  Let's get this

22   resolved.  Are there two scheduled for tomorrow?

23              MR. CRENSHAW:  Your Honor, it's

24   our understanding they are supposed to go back

```
 1        to back.  I would ask Mr. Altherr to identify

 2        the substantial preparation.  As far as we know,

 3        there will be a conference call, a court

 4        reporter will be sitting in Arizona with the

 5        co-counsel, Mr. Shaw will be taking it

 6        telephonically and the doctor will be in

 7        Germany.  And we don't have any contact

 8        information for my court reporter or any other

 9        personnel in Germany.  We have no way of getting

10        documents that we may want to use on

11        cross-examination with the witnesses.  This has

12        been slapped together and we have been kept in

13        the dark on the preparation.  They hadn't told

14        us how this is going to go forward or how this

15        is going to preserve testimony that could be

16        presented to the jury.  This is a conference

17        call that could be transcribed.  We are not sure

18        what oath will be given if there will be anyone

19        there to administer an oath.  We don't believe

20        substantial preparations have taken place and we

21        have serious, serious concerns about going

22        forward tomorrow.  As Mr. Alter said, he thinks

23        there is only one deposition.

24                    THE COURT:  Can we get some
```

1    clarification from plaintiff?

2                MR. ALTHERR:  Well, Mr. Shaw, who

3    is our co-counsel is handling the depositions is

4    not here.  I would like to during the break be

5    able to contact him on that.

6                As I did say, these are aged

7    people.  They are old.  And if you're going to

8    stay this case for a period of could be a couple

9    of years, and that we may very well lose that

10   testimony.  So the deposition should go forward

11   in order to preserve that, unless Your Honor is

12   willing to say that they are estoped from

13   presenting that evidence which the majority of

14   district case law supports.

15               THE COURT:  Okay.  Thank you.  I

16   don't think the defendants have addressed

17   whether you're estopped from pressing the Jacobs

18   reference.  Who wants to speak to that?

19               MR. GRAVES:  We haven't heard of

20   that argument until yesterday, I believe.  But I

21   haven't seen case law for the proposition that

22   where there is institution on obviousness

23   grounds the patent is held obvious, institutions

24   denied on one particular alleged anticipatory

1    reference, that the petitioners then forever is

2    estopped from asserting any other possible

3    anticipatory reference.  I think that's their

4    argument here.

5              THE COURT:  If I understand it,

6    Jacobs is cited on the face of the patent.

7              MR. GRAVES:  It is.

8              THE COURT:  So it could have been

9    raised as a grounds for institution and

10   invalidity, couldn't it?

11             MR. GRAVES:  It could have based

12   on its appearance on the face of the patent.

13             THE COURT:  Why does that not mean

14   you're estopped?

15             MR. GRAVES:  Well, we haven't

16   gotten to the point -- this patent is going to

17   be, we believe, invalidated in any regard.  So I

18   think with Your Honor's severing and staying

19   claim 10, the issue of IPR estoppel doesn't even

20   need to be addressed right now.  I think it's

21   effectively moot.

22             THE COURT:  That may be, then the

23   plaintiffs are going to want to go forward with

24   the depositions, which you have now requested I

1    not make them go forward with.  They say they're

2    aging and they might well preserve testimony, it

3    likely will be years before we get to try claim

4    10 at this point, so why not preserve this

5    testimony.

6                MR. GRAVES:  We could preserve it,

7    take their depositions next month after the jury

8    trial.  There is no reason to have to go forward

9    tomorrow, particularly since we just got

10   documents from the plaintiffs at the close of

11   business yesterday after we have been asking for

12   them for months regarding these depositions.  We

13   haven't had a chance to prepare and go through

14   those documents.  And as Mr. Crenshaw outlined,

15   there is a lot of question marks about how this

16   procedure is even going down tomorrow, and we

17   have mediation tomorrow and we have trial in two

18   weeks.  We should be devoting our resources to

19   trial on the issues that are going to go

20   forward.  We're happy to take their depositions

21   next month.  I haven't heard testimony that

22   they're so aged, they're sick and won't be

23   around in four to six weeks.

24                THE COURT:  What about the

1    suggestion now not to cancel it forever, but you

2    all have a lot of other things to do.  Why not

3    push it back by a month?

4              MR. ALTHERR:  Your Honor, as I

5    said, it is set to go tomorrow.

6              THE COURT:  All right.  You're not

7    able to tell me about the preparations or the

8    details.  When we come back at two o'clock you

9    let me know because they raised a lot of good

10   questions that in fairness you're not able to

11   answer about what's going to happen tomorrow.

12             MR. ALTHERR:  That is correct,

13   Your Honor.

14             THE COURT:  We'll have the answer

15   at two o'clock.  I would ask during the break

16   also that you all think about whether or not you

17   still want me to recall on all of the other

18   issue about claim 10 that have been argued this

19   morning, so I want your positions on that.

20             With your remaining time before I

21   have to break, let's try to turn to some of the

22   other issues that I identified that I didn't

23   resolve in the earlier order.  We'll start with

24   defendant had a request to depose plaintiff's

```
 1      experts on the content of their supplemental

 2      expert reports.  This was identified around page

 3      20 of the pretrial order.  Let's hear from the

 4      defendants if that's still a ripe issue that I

 5      need to resolve.

 6                 MR. PIVOVAR:  Your Honor, I think

 7      this is probably something that's been mooted by

 8      the Court's claim construction.

 9                 THE COURT:  You're not asking for

10      any relief on this?

11                 MR. PIVOVAR:  No.  At the time we

12      were, but not anymore.

13                 THE COURT:  Fair enough.  Any

14      question about that from plaintiff?

15                 MR. ALTHERR:  No, Your Honor.

16                 THE COURT:  Okay.  Then I was next

17      unclear if plaintiffs had a position on whether

18      they're going to assert a theory of joint

19      infringement or vicarious liability with respect

20      to the direct infringement of claim 10 of the

21      '034 or claim 5 of the '566 patent which is not

22      severed in this case from 10.  And we talked

23      about direct infringement four, that's been

24      dropped as I understand it.  What about claim 4
```

```
 1      of the '566 patent?

 2                   MR. ALTHERR:  We will not -- we

 3      will be asserting direct infringement, but not

 4      vicarious liability.

 5                   THE COURT:  You will be asserting

 6      direct infringement, but not by vicarious

 7      liability?

 8                   MR. ALTHERR:  That's right, Your

 9      Honor.

10                   THE COURT:  Do the defendants have

11      any concerns about that?

12                   MR. TIGAN:  Your Honor, I was

13      going to address this issue, but in light of

14      that, no preference.

15                   THE COURT:  Thank you.  I didn't

16      know about the plaintiff's position about

17      whether you intend to assert doctrine of

18      equivalents infringement to any claims of the

19      3,705 patent?

20                   MR. ALTHERR:  No, just literal

21      infringement on 3,705.

22                   THE COURT:  Any concerns about

23      that from the defendant?

24                   MR. CRENSHAW:  No, Your Honor.
```

```
 1                    THE COURT:  All right.  The

 2      plaintiffs were asking that the defendants be

 3      made to disclose the invalidity theories on

 4      which the defendant intends to proceed at trial.

 5      Given all of the rulings to this point, is there

 6      still an issue with respect to that?

 7                    MR. IWANICKI:  Yes, Your Honor.

 8                    THE COURT:  Come to the podium and

 9      let me know what you're looking for.

10                    MR. IWANICKI:  Your Honor, what

11      we're looking for is for them to tell us what

12      invalidity positions with respect to 112 they're

13      actually going to bring.  They have never done

14      that.  They have never told us for this claim,

15      this is what our 112 defense is going to be.

16      They haven't itemized that, Your Honor.

17                    THE COURT:  Okay.  Let me see what

18      the defendant feels.

19                    MR. CRENSHAW:  Respectfully, Your

20      Honor, we have told them and we have told them

21      in our expert reports and we told them in our

22      disclosure of prior art grounds.

23                    THE COURT:  So you are going

24      forward on all of those defenses you have
```

 1     disclosed?

 2              MR. CRENSHAW:  Based on our

 3     invalidity case especially with respect to 112

 4     issue is necessarily a rebuttal case.  So our

 5     invalidity positions on 112, written

 6     description, enablement and indefiniteness are

 7     going to be based on how they present their

 8     case.  They're not telling us the infringement

 9     theories they're going to go forward on and how

10     their experts are going to be interpreting and

11     specifically going beyond the proper scope of

12     the claims, so we don't know exactly how we're

13     going to present our 112 issues until we have

14     heard what they are going to disclose.  They

15     have the information --

16              THE COURT:  Could you at least

17     tell us, there is however many asserted claims,

18     I have forgotten at the moment, which types of

19     defenses you are going to present to the jury

20     with respect to each of those claims.

21              MR. CRENSHAW:  We have, Your

22     Honor, for the predetermined thickness claims,

23     we have the issue of indefiniteness as

24     Mr. Pivovar pointed out for gel time.  We don't

1    believe there is sufficient disclosure for

2    visualization agent causing a categorical color

3    change.

4                    We have disclosed all of these.

5    We're not sure exactly what they're asking.  If

6    they are asking us and I believe in their

7    submission they're asking us to be held to a

8    specific set of arguments, we have disclosed

9    those arguments.  If they are asking for a list,

10   I mean, I guess we could look through the expert

11   reports and compile the headings.

12                    THE COURT:  I think what they're

13   worried about is that they're going to prepare

14   to respond to all of the defenses and all of

15   your expert reports and then you're going to

16   show up at trial and present a subset of those

17   and they will have wasted their time.

18                    MR. CRENSHAW:  Again, our 112

19   defenses are primarily a backstop against the

20   interpretations that they're going to present at

21   trial.  So to the extent that their experts

22   don't veer outside of what is properly enabled

23   or what we believe has been the scope of the

24   claims, we won't have those to present.  What

 1    they're really asking us to present is they're

 2    asking us to disavowal those defenses ahead of

 3    trial and we're not prepared to do that at this

 4    point in time.

 5              If they agree that they won't

 6    present argument that runs afoul of 112 issues,

 7    then certainly we won't be presenting 112.

 8              THE COURT:  With respect to

 9    obviousness and anticipation, you have disclosed

10    to them specifically which of those defenses you

11    are going to assert?

12              MR. CRENSHAW:  Absolutely, Your

13    Honor.  That's in the pretrial submissions.  It

14    was in the disclosure of prior art grounds.  And

15    I don't think I have heard anything that says we

16    have not complied with the Court's orders in

17    that regard, or that they are somewhat unclear

18    as to what we will be presenting.

19              And I will just note that, Your

20    Honor, that the invalidity case, our invalidity

21    case for claim 10 was a large, large portion of

22    our invalidity case outsized as compared to the

23    other two, so I think we have already

24    significantly narrowed the invalidity issues

```
 1        that we will present at trial.

 2                    THE COURT:  All right.  Does any

 3        of that help?

 4                    MR. IWANICKI:  Your Honor, I think

 5        that it would be helpful for them to provide us

 6        with a list of what their invalidity defenses

 7        are going to be with respect to 112.  I have got

 8        a document here which is the proposed defendant

 9        proposed verdict form and there isn't anything

10        in here identifying what the claim limitations

11        are with respect to what's invalid under 112 and

12        what's not.  So it would be helpful, Your Honor,

13        if they were to provide us with something more

14        than go look in the expert reports and make --

15                    THE COURT:  Well, with respect to

16        anticipation and obviousness, do you have what

17        you need?

18                    MR. IWANICKI:  Yes, Your Honor.

19                    THE COURT:  So we're just talking

20        about 112?

21                    MR. IWANICKI:  Yes.

22                    THE COURT:  All right.  And what

23        about the argument that they need to see what

24        you all do with respect to your interpretation
```

```
 1      of the claims and what you present at trial?
 2                  MR. IWANICKI:  I think, Your
 3      Honor, the interpretations of the claims are --
 4      we received the Court's claim construction, and
 5      so to the extent that they think that there are
 6      issues with respect to the Court's claim
 7      construction, then they should be identifying
 8      those now.
 9                  There are some positions that are
10      weaker than others with respect to those in
11      their expert report, and we have as Your Honor
12      knows, we have got a limited number of time to
13      present issues at trial, and so you know, I
14      think you hit it on the head where we're going
15      to be preparing for everything because they
16      haven't told us that anything is excluded and
17      then they're going to show up with a subset of
18      these things.
19                  In my view, Your Honor, it's just
20      forcing us to do some unnecessary preparation
21      for trial when they should be with respect to
22      their burden identifying, you know, what actual
23      112 invalidity defenses they're going to be
24      bringing by identifying the claim limitations,
```

```
 1      whether they lack written description, whether
 2      they lack enablement, whether it's indefinite,
 3      but they should be able to do that.
 4               THE COURT:  So what you're looking
 5      for is with respect to all of your asserted
 6      claims for them to tell you if they're going
 7      forward on enablement, written description
 8      and/or indefiniteness?
 9               MR. IWANICKI:  And the reason
10      therefor.  I mean, it's indefinite because of
11      this phrase.  It lacks enablement because of
12      this.  We're not asking them to cut and paste
13      whole sections of their expert report, give us a
14      list, tell us what you're going to be proceeding
15      at trial.
16               THE COURT:  All right.  Do you
17      want to respond?
18               MR. CRENSHAW:  Your Honor, we're
19      happy to pull out a list of that on the
20      condition that plaintiffs identify to us what
21      their infringement theories are going to be
22      especially with respect to the visualization
23      agent.  They have had disclosures that the
24      visualization agent is a dye, it's air bubbles,
```

1    it is a dye plus air bubbles.  And they have

2    presented all of those in their expert report.

3    They haven't disavowaled any of those.  And we

4    don't know what those are going to be, so

5    dependent on that issue our 112 issues are going

6    to be impacted.

7              Also, we don't know what exactly

8    what they're going to rely on for the observable

9    change.  Is it obscuring?  Is it a change from

10   pink to green?  Is it a deep green?  Is it an

11   even green?  All of these have been disclosed by

12   plaintiff's expert so we're also shooting at a

13   moving target here.  So our response is

14   necessarily predicated on what they're going to

15   present.  If they disclose to us what those

16   specific issues are, we can happily narrow down

17   our disclosures.  However, we have disclosed to

18   them the basis for indefiniteness, written

19   description and enablement.

20             THE COURT:  Are plaintiffs willing

21   to disclose further what you're going to do on

22   your infringement case consistent with what was

23   just asked for?

24             MR. IWANICKI:  Your Honor, the

```
 1     issue, we're working with the Court's claim

 2     construction with respect to how the Court

 3     construed visualization agent.  If they have a

 4     issue with respect to the indefiniteness of that

 5     claim or lack of written description or lack of

 6     enablement, they do it outside of anything we

 7     present.  I mean, again, you have got this sort

 8     of dichotomy here.  You got infringement and you

 9     got invalidity, and they should be able to

10     identify based upon the Court's claim

11     constructions whether or not they're going to

12     pursue any position with respect to 112

13     invalidity defenses.

14                THE COURT:  Okay.  I'm not

15     granting any relief on this.  Certainly the

16     parties are free to and encouraged to meet and

17     confer as you narrow your case and define what

18     you're going to do.  And if you can work out a

19     mechanism with which you're both comfortable

20     with that you disclose with more specificity to

21     one another to hopefully save each other time

22     and energy preparing for things that are going

23     to be part of trial, that would be great, but

24     I'm not persuaded that plaintiffs are somehow in
```

1    an unfairly prejudicial situation and is

2    entitled to any relief on this score.

3                Certainly nobody is going to be

4    allowed to present something at trail that was

5    not adequately disclosed in discovery and expert

6    reports prior to trial.  And if either side

7    thinks that's what's happening, you should let

8    me know and I will deal with it at that time.

9                A couple more.  Plaintiffs had

10   objections to Dr. Lowman and to Dr. Flombaum.

11   Is that something different than what we have

12   already talked about in connection with all

13   these other motions?  This was at pages 26 and

14   27 of the pretrial order.

15               MR. ALTHERR:  No, Your Honor,

16   that's exactly what we covered, but I'm still

17   uncertain on Dr. Flombaum's position.  Is he

18   going to be permitted to testify?  Because his

19   theory was strictly color matching.  You can't

20   do it from memory to take paint and go pick out

21   in a paint store a specific color you want to

22   match your wall.

23               THE COURT:  Right.  So that again

24   I think is going to require you all to meet and

```
 1    confer and apply my ruling from earlier today

 2    and figuring out if you think there is anything

 3    else for that witness to testify to.  But in any

 4    event, we have discussed I think the issues that

 5    you meant to flag for my attention at pages 26

 6    and 27.  Is that right?

 7                    MR. ALTHERR:  Yes, Your Honor.

 8                    THE COURT:  Defendants, anything

 9    further to say on Flombaum and Lowman?

10                    MR. PIVOVAR:  No, Your Honor.

11                    THE COURT:  Okay.  HyperBranch had

12    objected to plaintiff's identification of

13    Dr. Jacobs and Mettler on the witness list.

14    Those are the same folks that are subject to the

15    deposition tomorrow; is that right?

16                    MR. CRENSHAW:  Yes, Your Honor --

17                    THE COURT:  I think that they're

18    not going to be on the witness list at trial.

19                    MR. CRENSHAW:  Right.  And I think

20    that's wrapped up in all that.  So a slightly

21    different issue, the depositions going forward

22    tomorrow we'll address afterwards, them being on

23    the witness list.  I presume they'll be removed.

24                    THE COURT:  I think that's right.
```

1    I think given my ruling to sever, there is no

2    other basis to put these two witnesses on the

3    witness list for trial.  Is that right?

4              MR. ALTHERR:  That's correct, Your

5    Honor.

6              THE COURT:  How about this,

7    Mr. Thomas Harrison, the defendants object to

8    calling him; right?

9              MR. GRIMM:  I'll speak to this

10   one, Your Honor.  I was prepared yesterday to

11   decide who was going to do what and this one

12   seemed like the simplest and easiest to

13   understand and present, so I was unanimously

14   chosen.

15             The issue really is very simple,

16   Your Honor.  It's whether plaintiff should be

17   permitted to call Thomas Harrison as a witness

18   even though they never disclosed him in the Rule

19   26 disclosures or in response to

20   interrogatories.

21             We think that Your Honor should

22   preclude Mr. Harrison from testifying first

23   because he was not timely identified in their

24   Rule 26 disclosures.  They never supplemented

1     their Rule 26 disclosures at any time.  They

2     never identified in the response to

3     interrogatory answers.

4              And secondly because plaintiff had

5     other witnesses who they did properly identify

6     who could testify about the very same topics of

7     which they proposed Mr. Harrison to testify, and

8     they have these two witnesses who are Mr. Lennox

9     and Ms. Tan on their witness list.

10             THE COURT:  If I recall correctly,

11    part of the issue here seemed to be that there

12    were things that you all elicited from the other

13    two witnesses that you wanted the opportunity to

14    use at trial.  Is that part of the issue here?

15             MR. GRIMM:  I don't know if that's

16    part of the issue or not, Your Honor.  We

17    certainly plan to cross-examine those witnesses

18    when they're called at trial.

19             THE COURT:  Those two witnesses I

20    think testified as 30(b)(6) witnesses?

21             MR. GRIMM:  That's correct, Your

22    Honor.

23             THE COURT:  Do you have any

24    concern, is this implicated at all in this

```
1    dispute, do you have any concern that you would
2    be able to use that testimony at trial for
3    purposes even if I let them call this witness,
4    Harrison?
5              MR. GRIMM:  Well, if they call
6    Lennox and Tan, certainly we can cross-examine
7    them and that won't be a concern.  That concern
8    won't be there.  But it doesn't resolve the
9    issue over the prejudice to us of being
10   confronted with a new witness who was never
11   properly identified.
12             And I think what's important here,
13   Your Honor, is they propose for him to testify
14   about broad topics that other witnesses can
15   testify about.  It's not like they're presenting
16   unique evidence that only his personal knowledge
17   is necessary.  It's not as if a new issue arose
18   in this case towards the end of the scheduling
19   period that caused them to say oh, my gosh, we
20   need to respond to this and only Mr. Harrison
21   has the information to do that.
22             THE COURT:  Thank you.  Let me
23   give the plaintiffs a chance to respond.
24             MR. ALTHERR:  I have some slides
```

1          on this, Your Honor.

2                      THE COURT:  All right.  Well,

3          then, maybe we should put this off.

4                      MR. ALTHERR:  It's just one slide.

5                      THE COURT:  Let's see if we can do

6          it quickly.

7                      MR. ALTHERR:  Your Honor,

8          Mr. Harrison was made known to them.

9                      THE COURT:  His name appears but

10         you never disclosed him as someone having

11         information, did you?

12                     MR. ALTHERR:  Yes, we did, Your

13         Honor, in depositions.

14                     THE COURT:  But you didn't list

15         him in your specific disclosure, right, you

16         implicitly disclosed him.

17                     MR. ALTHERR:  We did not list him

18         on our rule -- our initial information

19         disclosures.  We didn't list him on that.  I

20         don't recall any deposition where they asked to

21         list the witnesses who were going to testify at

22         trial, any interrogatory.  Mr. Harrison was

23         selected, he was one of ten custodians --

24                     THE COURT:  Put all that aside.

1        Why do you need him at this point?

2                    MR. ALTHERR:  As the 30(b)(6)

3        witnesses indicated, they had to go to him to

4        get particular information and consulted with

5        him where he had firsthand information about

6        things that they did not.  And they were

7        relaying what Mr. Harrison had advised them.

8        Mr. Harrison talked about general corporate

9        background in his --

10                   THE COURT:  But you all put up

11       where you did on 30(b)(6), those statements are

12       binding on the plaintiff, those are coming in at

13       trail; correct?

14                   MR. ALTHERR:  They're binding on

15       plaintiff to the extent that they want to use

16       him, they can come in.  As far as what we have

17       to say, if Ms. Tan is up there and said well,

18       Mr. Harrison told me this, I'm sure I'm going to

19       get an objection from them.

20                   THE COURT:  Is that what you're

21       trying to avoid?

22                   MR. ALTHERR:  I want to avoid

23       that.  I want to be able to discern documents

24       that he had input into to be able to explain his

1    input into those documents, and also he was a

2    specific source of factual information for

3    Mr. Jarosz's opinions.

4              They were told multiple times, in

5    the 30(b)(6) deposition he was consulted, he was

6    told in several of Mr. Lennox's declarations

7    that were filed in this case that Mr. Harrison

8    was mentioned, in the Jarosz reports he's

9    mentioned in those as providing the factual

10   information --

11             THE COURT:  Okay.  We're going to

12   need to move on.

13             Mr. Grimm, briefly do you want to

14   respond?

15             MR. GRIMM:  Can I respond from

16   here, Your Honor?

17             THE COURT:  Sure.

18             MR. GRIMM:  The fact that these

19   witnesses consulted Mr. Harrison to testify on

20   30(b)(6) indicates just how broad these topics

21   are and those witnesses can testify about the

22   sale.

23             THE COURT:  What about the hearsay

24   concern, when he puts them on and they want to

```
 1     say here is how I learned things, you all are
 2     going to object.
 3               MR. GRIMM:  I seriously doubt that
 4     it's going to come up how did you learn about
 5     this, because it's going to be questions like
 6     tell us about your marketing strategy, tell us
 7     about the effect of Adherus competition -- he
 8     has not identified anything that Mr. Harrison
 9     was a percipient witness about that would draw
10     that kind of objection, Your Honor, so I don't
11     think that's really an issue.
12               The fact that he was mentioned in
13     expert reports or in documents that were
14     produced, that's certainly not the test for a
15     fair disclosure, Your Honor, otherwise something
16     could show up at trial and put anybody from
17     their company on the witness list.
18               THE COURT:  I'll give it some more
19     thought.  If I need more help, I will give you a
20     chance.  But I will see you all at two o'clock.
21               (A brief recess was taken.)
22               THE COURT:  Good afternoon.
23     Mr. Altherr.  Did you have something you wanted
24     to say?
```

```
 1                    MR. ALTHERR:  Your Honor, you

 2     wanted me to report back about the depositions.

 3                    THE COURT:  Come to the podium.

 4     Thank you.

 5                    MR. ALTHERR:  The deposition is of

 6     just Dr. Mettler, and it is by video conference.

 7     The IT people from our firm had coordinated with

 8     the IT people from the Cooley firm to set up the

 9     video link.  They're testing it today at 3:00

10     p.m. in Germany to make sure it works.  There is

11     a videographer and court reporter who had been

12     set up.  This is exactly how we deposed

13     HyperBranch's witness Dr. Hartlage from the

14     United Kingdom earlier in the case.  It's

15     supposed to start at three o'clock tomorrow.

16                    Dr. Mettler is up in her

17     seventies, but I have talked with Mr. Shaw, he's

18     assured me she is in good enough health we could

19     put this off for six to eight weeks.  I have

20     talked to counsel on the other side.  They have

21     indicated to me that would be acceptable to them

22     if that would be agreeable to Your Honor, we

23     could depose Dr. Mettler in six to eight weeks.

24                    THE COURT:  If the parties have an
```

```
 1        agreement to do that, that's fine by me.  Do we

 2        have an agreement on that point?

 3                    MR. GRAVES:  Yes, Your Honor.

 4                    THE COURT:  That's fine.  You'll

 5        reschedule for six to eight weeks or

 6        thereabouts.  What about the other witness that

 7        the defendant thought was scheduled for

 8        tomorrow?

 9                    MR. ALTHERR:  The other witness

10        has not been scheduled, Your Honor.

11                    THE COURT:  Has not been

12        scheduled?

13                    MR. ALTHERR:  They have contact

14        problems getting in touch with that witness.  If

15        we could get contact, like I said, we could set

16        that up in the six to eight weeks, but the

17        witness is in Germany, too, so it's been

18        difficult.

19                    THE COURT:  All right.  Are the

20        defendants comfortable with the idea that that

21        one, too, would happen in six to eight weeks if

22        we could have contact with the person?

23                    MR. GRAVES:  That would be fine,

24        Your Honor, if we could get logistics and
```

```
 1     contact information ahead of time.

 2                    THE COURT:  Thank you for working

 3     that issue out.  When I left we sort of rushed

 4     through Mr. Harrison.  If either of you want to

 5     say anything more on that, you certainly can.

 6     Mr. Grimm, anything further on that?

 7                    MR. GRIMM:  No, I don't think so,

 8     Your Honor, unless you have a question.

 9                    THE COURT:  No, I don't.

10                    Anything further on Mr. Harrison?

11                    MR. ALTHERR:  The only thing is

12     this, I don't think the defendants should be

13     able to have it both ways.  If they exclude this

14     witness, they shouldn't be able to object to our

15     30(b)(6) witness when they say they found out

16     something from Mr. Harrison.

17                    THE COURT:  I mean, do you

18     reasonably anticipate that you're going to be

19     asking questions of the nature of did you find

20     this out from Mr. Harrison?

21                    MR. ALTHERR:  Yes, there are

22     certain things that Mr. Harrison did on the

23     investigation on his own and they had to get the

24     information from him.
```

```
 1                    THE COURT:  Maybe you could give
 2        me an example because I didn't understand there
 3        was any unique noncumulative evidence that
 4        Mr. Harrison would have that these other two
 5        witnesses wouldn't have.
 6                    MR. ALTHERR:  Mr. Harrison was
 7        directly involved in the acquisition from
 8        Covidien of Confluent and obtaining the rights
 9        to the patent for one thing.  He was also
10        directly involved in preparing certain documents
11        that are used for the basis for both the expert
12        and Mr. Jarosz.  And also we introduced exhibits
13        at the deposition of Mr. Lennox where
14        Mr. Harrison was the one who put those
15        documents, who helped put those documents
16        together and had personal knowledge of the
17        information going into them.
18                    THE COURT:  Okay.  Thank you.
19        Mr. Grimm, some of that sounded new to me.  Do
20        you want to respond to it?
21                    MR. GRIMM:  I'm not sure I got
22        every one of the points that Mr. Altherr was
23        trying to make.  But first with respect to the
24        acquisition of Confluent, I haven't heard
```

1    anything that's unique to his knowledge that

2    he's going to testify.  If it's just that we

3    acquired Confluent and the licenses that came

4    with it, it seems to me that that's corporate

5    knowledge that these other witnesses could

6    testify about.

7              And, in fact, Eva Tan did testify

8    as a 30(b)(6) witness about the acquisition of

9    Confluent.  So apparently they thought she was

10   adequate for that purpose because they put her

11   up as their designee.

12             Mr. Altherr said that Mr. Harrison

13   prepared documents that were used by the

14   experts.  As Your Honor knows, that's very

15   common, and the person preparing the documents

16   doesn't come testify.  The expert, if it's

17   something that an expert can reasonably rely

18   upon under the rule, then he can refer to those

19   documents.  So I haven't heard why it's

20   necessary for Mr. Harrison to talk about those

21   documents at trial.

22             THE COURT:  Do you think I am to

23   apply the Pennypack factors to this dispute?

24             MR. GRIMM:  Yes, Your Honor.

1          THE COURT:  And have you all been

2     surprised and prejudiced in a material way by

3     this late disclosure?

4          MR. GRIMM:  I think so.  You know,

5     any time -- trial is all about strategy, and you

6     base your strategy based upon the disclosures

7     from the other side.  They had every opportunity

8     to disclose this individual.  He has been head

9     of their marketing -- he has a higher position

10    than that -- from the beginning of this case.

11    They didn't put him on their Rule 26

12    disclosures.  It's very easy to supplement Rule

13    26 disclosures.  They didn't use him as a

14    corporate designee, so it does come as a

15    surprise to us.

16          And often times when there is a

17    critical witness that comes forward at the last

18    moment, the court will permit the other side,

19    would be us in this case, to take a deposition

20    to try to cure any prejudice towards us, because

21    the prejudice to the plaintiff in that instance

22    would be quite high to preclude them because

23    it's a critical witness with a critical piece of

24    evidence that's come to light late in the day.

```
 1                    That's not what we have here.
 2        It's not prejudice to them because it's
 3        cumulative, and it is a surprise to us.  Could
 4        we take the deposition?  Sure, we could take the
 5        deposition.  Given the lengthy topics that they
 6        have given us, it might take more than a day for
 7        that deposition.  We're less than two weeks from
 8        trial in a complicated case with several patents
 9        and it's kind of the last thing we want to be
10        doing with our time.  I think the Pennypack
11        factors do favor preclusion in this instance.
12                    THE COURT:  Thank you.
13                    Mr. Altherr, anything further on
14        this?
15                    MR. ALTHERR:  Your Honor, with
16        regard to Pennypack factors, they do have time
17        to depose Mr. Harrison.  All right?  He's going
18        to testify for probably on direct for less than
19        half hour.  The areas that he went, he said that
20        it was a surprise to them.  Eva Tan specifically
21        indicated when she was testifying she went to
22        Mr. Harrison with regard to a number of things
23        with due diligence to acquire the patent and
24        acquire Confluent and the patents-in-suit.
```

1              As far as the point that he made

2      about experts, the expert I understand can rely

3      upon hearsay and go ahead and hear these things

4      out.  However, all the points, laying foundation

5      for documents and things of this sort that come

6      into evidence, and that he should be able to

7      have him do that, the particular ones that he

8      contributed to.  He is named as one of the ten

9      custodians identified for ESI, lots and lots of

10     documents that came out of his record produced

11     in this case.

12             THE COURT:  I'm still struggling

13     with why you didn't just bother putting him in

14     your disclosure at some point.

15             MR. ALTHERR:  We didn't update the

16     disclosures initially, and he had been -- like I

17     say, he had been identified on the depositions,

18     in the document production to us.  This case is

19     a whole lot like the Delaware case that we cite,

20     the International Business Machines versus

21     Priceline that they were put on notice through

22     document production, organization charts,

23     testimony of two deponents, that we had more

24     than that, there was numerous declarations that

1    they refer to Mr. Harrison and the other

2    reports.

3                    THE COURT:  Okay.  Mr. Grimm,

4    anything else?

5                    MR. GRIMM:  I'm sorry to belabor

6    this, if the test was whether somebody's name

7    appears in documents or in the declaration,

8    there would really be no test.  They could bring

9    any employee of Integra to trial without a prior

10   disclosure.

11                   And on the prejudice point, it has

12   always struck me as a bit odd that the way to

13   cure the prejudice is to make the party that

14   didn't cause the prejudice do more work.  I

15   think in this particular case where there is

16   really no prejudice to the plaintiffs, that the

17   fact that we are prejudiced by going through the

18   effort to have to depose this fellow outweighs

19   any of the Pennypack factors.

20                   THE COURT:  Thank you.  Bear with

21   me.

22                   All right.  I honestly forget at

23   this moment who raised this issue, but I am

24   going to strike Mr. Harrison from the

1        plaintiff's witness list.  It's undisputed that

2        he was not identified in the plaintiff's Rule

3        26(a) disclosures, at no point was he expressly

4        disclosed.

5                    The plaintiffs contend that

6        Mr. Harrison could have been identified and

7        known to the defendants given references to him

8        in depositions and the fact that he was a

9        custodian, he searched for and produced

10       documents, he was referenced in expert reports,

11       all of that is true, but I still think in the

12       context of this case the failure to identify him

13       at any point expressly as someone who had

14       relevant information and might be a witness at

15       trial did have the result that where we are now

16       means allowing him to testify would be a

17       surprise, a genuine surprise to the defendants.

18       It would be a little bit prejudicial to them in

19       that they didn't have time to think through when

20       and how they wanted to depose him and then deal

21       with whatever information they learned in the

22       deposition and formulate their strategy on that

23       basis.

24                    I could cure some if not all of

1    the prejudice by allowing the deposition now,

2    but we are within two weeks of trial and you

3    have a lot of other things to do, but I think

4    most fundamentally I'm really not persuaded that

5    this is prejudicial to the plaintiffs.  The

6    plaintiff designated who they designated as

7    their 30(b)(6) witnesses, the witnesses gave

8    testimony that was appropriate under 30(b)(6).

9    The plaintiff says the direct at best would be

10   about a half an hour and it sounds like it's on

11   topics that the 30(b)(6) witnesses have already

12   testified to and are presumed qualified to

13   testify to at trial.

14            The defendant is not going to make

15   any unreasonable objections to that testimony.

16   And I just don't think when I weigh all of that

17   that it is proper at this last minute to allow

18   Mr. Harrison to be added to the witness list.

19            I don't find bad faith, but I'm

20   still scratching my head as to why the plaintiff

21   didn't just bother to expressly identify the

22   witness.

23            Now, I do understand this dispute

24   occurred a month or more ago, so I understand

1        it's not fair to just say we're within two weeks

2        of trial and that's too late.  The plaintiff

3        made efforts and letters were written to me a

4        month or two ago, and I recognize that, but I

5        still think weighing all the factors I'm not

6        going to allow him to testify.

7                    Any questions about that?

8        Plaintiff?

9                    MR. ALTHERR:  No, Your Honor.

10                   THE COURT:  Any questions?

11                   MR. GRIMM:  No, Your Honor.

12                   THE COURT:  So did anybody

13       formulate any view on whether I should go ahead

14       and make decisions on the issues related to

15       claim 10 of the '034 patent now that it has been

16       severed and stayed?  We have argued a number of

17       issues.  There are various issues outstanding.

18       Do you have a view as to whether or not I should

19       resolve those issues?  I guess first from the

20       defendant.

21                   MR. GRAVES:  Thank you, Your

22       Honor.  With respect to the defendants, pending

23       objections to the magistrate judge's report and

24       recommendation, we're comfortable holding that

```
 1    in abeyance without having it decided at this
 2    point.  We've resolved the German doctor
 3    deposition issue as you just heard.  We don't
 4    think there is any point in the Court addressing
 5    anything pending with respect to claim 10 at
 6    this point.
 7                 THE COURT:  The arguments about
 8    testimony being inconsistent with the claim
 9    construction, did any of that relate to claim
10    10?  I simply don't remember.
11                 MR. PIVOVAR:  I believe it's all
12    related to the predetermined thickness.
13                 THE COURT:  Well, I ruled on the
14    predetermined thickness.  I'm talking about your
15    objections to what the plaintiffs wanted to
16    present which I did not rule on.
17                 MR. PIVOVAR:  Actually, I think
18    they might all -- I would have to go back and
19    confirm, I think they might all apply to claim
20    10.
21                 THE COURT:  To the extent they
22    relate to claim 10, do you have a view as to
23    whether I should not rule on that?
24                 MR. GRAVES:  I don't recall that
```

1     there was anything unique to claim 10 in that

2     request of ours.  In other words, I recall the

3     biocompatible hydrogel composition issue, but I

4     don't think we raised anything unique to claim

5     10.

6                THE COURT:  Even if I were to rule

7     on claim 10, I still have to rule on it because

8     of its impact on other claims that are going to

9     trial; correct?

10               MR. GRAVES:  Correct.

11               THE COURT:  But with respect to

12    the objections to the R&R which had to do with

13    the recommendation for the finding of

14    infringement and also the indefiniteness issue,

15    I believe the defendant's view is I need not

16    rule on that at this time.

17               MR. GRAVES:  I think it's

18    discretionary on your part, Your Honor.  We're

19    not urging a ruling on that at this time.  We're

20    comfortable with all of the claim 10 issues

21    being held in abeyance, including the scope of

22    IPR estoppel, if any, given the unique situation

23    we're in right now.

24               THE COURT:  Okay.  Do the

```
1        plaintiffs have a view?

2                    MR. IWANICKI:  Good afternoon,

3        Your Honor.

4                    THE COURT:  Good afternoon.

5                    MR. IWANICKI:  Our view is that we

6        think that you should respectfully if you were

7        so inclined to see the benefit of overruling the

8        objections and adopt the Court recommendation on

9        summary judgment because it would make a more

10       efficient trial.  For example, with respect to

11       claim 10 and with respect to claim 20, we know

12       we identified that they differ in view of the

13       predetermined thickness, the observable change

14       limitation and the predetermined thickness

15       limitation, but they do share a common

16       limitations.  Both share the visualization

17       agent.  Both share crosslinking after contact

18       with tissue to form a hydrogel.  Both share

19       electrophilic functional groups and nucleophilic

20       functional groups.  And both share hydrogel

21       forming within a certain period of time after

22       contact with a substrate.

23                    And if Your Honor were to overrule

24       the objections and adopt the magistrate judge's
```

1    recommendation, we would be able to use that to

2    sort of limit the presentation at trial with

3    respect to infringement of claim 20 because as a

4    matter of law those features would have already

5    been found in the accused products.  We would

6    encourage Your Honor to move forward on that.

7              With respect to the issue of claim

8    10 being severed and stayed, with respect to the

9    inconsistent claim issues -- I'm sorry, with

10   respect to the opinions to be offered and they

11   rely on inconsistent claim constructions, we

12   still have on our side, we had the ones that

13   were related to the predetermined thickness

14   claims, of course, and there was one that

15   related to claim 10 being indefinite.  Now that

16   claim 10 is out, I would think that that -- that

17   issue would be off the table with respect to any

18   inconsistent testimony offered with respect to

19   claim 10 being indefinite because there is going

20   to be no invalidity position presented at trial

21   with respect to claim 10 because it's been

22   severed and stayed.

23              And to the extent that they don't

24   bring up any invalidity of claim 10, of course

1    the positions on -- from Dr. Mays with respect

2    to that rebutting to those invalidity positions,

3    those would be anticipated by Rhee 500, Jacobs

4    obvious over Rhee, obvious over Rhee 500, and

5    Bass obvious over Rhee, those rebuttal opinions

6    would not be at play during the trial.

7              So I think you had asked the

8    question with respect to the portions of the

9    rebuttal reports, Mays' rebuttal report and the

10   other rebuttal report that they have identified

11   that may present issues with respect to

12   inconsistent -- opinions inconsistent with the

13   Court's claim construction.  I think all of

14   those did relate to claim 10 and

15   biocompatibility.  Some were related to the

16   5,705 patent in Dr. Mays' rebuttal report, they

17   had a whole swath of things with respect to the

18   5,705, but that's out -- but the remainder I

19   believe related to claim 10 of the '034 patent.

20   And now that that's out, there isn't anything in

21   those rebuttal reports that should be sort of

22   stricken because the testimony is going to be

23   presumptive.  Did that make sense, Your Honor?

24              THE COURT:  I'm thinking of it

```
 1      more on the arguments for whether certain

 2      evidence or opinions are inconsistent with the

 3      Court's claim construction.  Of course thinking

 4      there were a bunch that the plaintiff raised and

 5      there were a bunch that the defendants raised.

 6                  MR. IWANICKI:  Yes.

 7                  THE COURT:  I had thought I had

 8      ruled on all the ones that you had raised but

 9      for this indefiniteness of claim 10 issue.  So I

10      had understood I was done with ruling on your

11      issues, but with respect to the defendant's

12      issues, I have taken that under advisement and

13      wanted to know to what extent my decision to

14      sever claim 10 impacted that.  And what I'm

15      hearing the defendant say is it doesn't really

16      impact as much because most, if not all, of

17      those issues come up with connection with other

18      asserted claims that are going forth in trial.

19                  MR. IWANICKI:  I don't think

20      that's the case, Your Honor.

21                  THE COURT:  I'm going to need more

22      help from you on understanding exactly what it

23      is that the defendants think you're doing

24      inconsistent with the claim construction.  So
```

1    you're all going to have a chance to meet and

2    confer and help straighten me out on that.  But

3    I understand your position.

4             MR. IWANICKI:  Thank you, Your

5    Honor.

6             THE COURT:  All right.  With

7    respect, the defendants would respond to, you

8    know, claim 20 is going forward, and there is

9    this argument that I should as I understand it

10   now, their position is I should not hold in

11   abeyance my review of Judge Burke's report on

12   claim 10 because in part it would help you all

13   with respect to how this trial is going to look

14   for claim 20.  So do the defendants disagree

15   with that?

16            MR. PIVOVAR:  Your Honor, so there

17   is overlapping language, but I don't know that

18   it makes any -- I don't know that it's going to

19   be material for you to have to resolve anything

20   with respect to claim 10 to reach any dispute

21   claim issues with respect to claim 20.  Claim 20

22   does have a form a hydrogel within 60 seconds.

23   I don't know that there is any dispute between

24   the prior art meeting that limitation or the

     1          contested aspect of how they presented the case

     2          depending on how the Court would construe what a

     3          gel time is or a fully cured hydrogel, that's

     4          one aspect.

     5                    THE COURT:  Doesn't that already

     6          suggest I should just go ahead and rule on the

     7          objections to Judge Burke's report because among

     8          other things he construes that disputed claim

     9          term that seems like it's pertinent to what you

    10          just said?

    11                    MR. PIVOVAR:  That's the one issue

    12          that's actually presented that might actually be

    13          helpful moving forward.

    14                    THE COURT:  Okay.  All right.

    15          Well, with respect to whether the plaintiffs are

    16          offering any opinion or evidence inconsistent

    17          with the plaintiff's claim construction, I'm

    18          trying to refer back to the discussion I had

    19          this morning.  As I suggested, I need some

    20          additional help.  At this point it's not clear

    21          to me what exactly it is that the defendants are

    22          saying is inconsistent with the claim

    23          construction and where I can find it.  So I

    24          don't know.  I don't have what I need yet to

1      give you a decision.  I need some further

2      briefing.

3                    Here is what I'm going to need.

4      We're going to have letter brief due on

5      Thursday, Friday and Saturday of this week.  So

6      by Thursday, no more than five page single space

7      letter brief from the defendant where you

8      identify for me the exact opinions, not just

9      paragraph numbers, but the exact opinions which

10     as I understand it Rivot, DiStefano and/or Mays

11     that you are alleging are inconsistent with the

12     Court's construction of the suitable to coat the

13     tissue of patient term, and/or the biocompatible

14     composition term.  And explain again if you

15     would at that time how it is that in your view

16     those opinions and that evidence is inconsistent

17     with the Court's construction.

18                   The plaintiffs can respond the

19     next day, Friday, with their five-page single

20     space letter.  And then the defendant on

21     Saturday can file a reply up to three pages,

22     single space letter brief.  And hopefully at

23     that point I'll have what I need in connection

24     with the pending objections and the motions in

1    limine all of which touch on these issues of

2    trying to make sure everybody stays within the

3    scope of the claim construction in the evidence

4    and the opinion that they present at trial.

5              I'm not yet ready to rule on

6    whether -- on whether I'm going to rule or if

7    I'm going to rule what the ruling is in the

8    review of that R&R related to claim 10 of the

9    '034 patent.  I think that I have what I need or

10   at least will once I also see the submissions

11   coming that I just ordered.  If I need something

12   further from you all in order to rule on that,

13   if I decide to rule on it, I will let you know.

14             The other issue that has been

15   argued -- and also, make sure to attach those

16   expert reports as the defendants do that, any of

17   the expert reports that have any portion that

18   you're challenging as inconsistent with the

19   Court's construction, please go ahead and give

20   us the expert reports as well.

21             I think the only other thing that

22   you have argued that I haven't decided is the

23   plaintiff's motion for reconsideration of a

24   portion of my motion in limine ruling.  That

1    motion is granted in part and denied in part.

2    What do I mean?  I already granted the first

3    part of it which had to do with part of it in

4    Mr. Jarosz, the defendants said they didn't

5    object to the plaintiff introducing.  I'm also

6    granting it with respect to the other portion of

7    the Jarosz opinion that is on the reasonable

8    royalty paid on sales in the United States.  So

9    Mr. Jarosz will be permitted to testify to that

10   opinion.

11            I have considered the Pennypack

12   factors and I have decided ultimately they do

13   not favor excluding this opinion.  In my view

14   the defendant is not truly surprised or

15   particularly prejudiced by what the defendant --

16   I'm sorry, the plaintiff intends to do through

17   Mr. Jarosz.  His opinion was essentially

18   disclosed in the August 2017 report.  That

19   portion of the report was not ever stricken.

20            The defendant may be a little bit

21   surprised that the plaintiffs are relying on

22   those reasonable royalty opinions, but I find

23   that they are not unfairly prejudiced.  They

24   have an opportunity, I think maybe more than one

1    to depose Mr. Jarosz, of course they will be

2    able to cross-examine him at trial and his

3    opinions will be limited to what has been

4    adequately disclosed.

5              I will acknowledge it was not

6    entirely clear from the November 2017 report

7    that the plaintiffs were going to do what they

8    now have made clear they're going do with

9    Mr. Jarosz.  I still find that the opinion was

10   itself disclosed and it was not ever

11   specifically withdrawn by Mr. Jarosz.

12             I think allowing it will not

13   obstruct the orderly and efficient progress of

14   the trial.  I don't see any bad faith by the

15   plaintiffs.  Clearly this should have been

16   clear, but in context I don't think the fact

17   that they weren't clear enough or the fact that

18   they argued the motion in limine the way they

19   did is not enough overall for me to strike that

20   opinion now that I understand what the

21   plaintiffs are seeking to do.

22             And also very importantly, this is

23   important evidence.  It goes directly to the

24   damages that the plaintiffs are seeking to

1    recover.  So I'm granting reconsideration with

2    respect to Jarosz, however, I'm denying it with

3    respect to DiStefano.

4               The plaintiff's only response in

5    the motion in limine to the request that

6    DiStefano be precluded as an infringement expert

7    was to argue that the 5,705 patent was still in

8    play because the court did not rule on

9    objections to Judge Burke's R&R granting summary

10   judgment of noninfringement of the 5,705 patent.

11              In fact, at the time that you all

12   submitted the pretrial order, I had already

13   adopted that report recommendation, I think it

14   was about August 6 about a month before the

15   parties submitted the pretrial order.  In any

16   event, even if that were not the case, the

17   plaintiffs made no mention of any other reason

18   that DiStefano was still relevant in response to

19   the defendant's motion, so we had no opportunity

20   to consider any other issue at the time we were

21   deciding the motion in limine.  It wasn't until

22   yesterday in the reconsideration motion that any

23   other argument was even made for why DiStefano

24   would still be relevant.

```
 1                    I don't think that it is crucially

 2      important testimony from what I understand

 3      because Dr. Mays is going to be the testifying

 4      expert and he'll be permitted to say that he

 5      relied on and reviewed materials that were

 6      provided through Dr. DiStefano.  So the motion

 7      is denied with respect to DiStefano.

 8                    Any questions about any of that?

 9                    MR. IWANICKI:  No Your Honor.

10                    THE COURT:  Any questions?

11                    MR. CRENSHAW:  Your Honor, just

12      very briefly, Mr. Jarosz's reasonable royalty

13      opinion in the United States, is that an

14      alternative request or is it cumulative to price

15      erosion because that's a bit of clarity I'm

16      still lacking?

17                    THE COURT:  That doesn't sound

18      like the question is directed to me.  I don't

19      know if you can get some clarity from the

20      plaintiff.

21                    MR. ALTHERR:  Your Honor, it's

22      cumulative just like it was in his original

23      report.

24                    MR. CRENSHAW:  Your Honor, if you
```

1    remember in his original report, the footnote

2    said in the event lost profits are not awarded.

3    Here they haven't claimed lost profits, they

4    claimed price erosion, so we understood it was

5    an alternative request and they're trying to

6    shoehorn it in as a cumulative request.  This is

7    the root of our problem.  We'll accept Your

8    Honor's rule, we just want to seek --

9               THE COURT:  You heard what the

10   plaintiff intends to do and all I can say beyond

11   that is when they show you their slides for what

12   they propose to do with the witness, if you

13   think that you have an objection that you can

14   make based on everything that has happened

15   through now and through then, go ahead and make

16   it.  I certainly don't mean to be deciding that

17   particular issue, I'm just granting the

18   reconsideration and not at this time striking

19   that portion of Jarosz' testimony.

20              MR. CRENSHAW:  Thank you, Your

21   Honor.

22              THE COURT:  All right.  Well,

23   let's talk about the pretrial order and then

24   I'll see if you have other issues.

1          So as an initial matter, if the

2     parties did not identify a dispute on a

3     particular issue in this pretrial order and I

4     have not addressed it either in writing or

5     today, we don't talk about it the rest of today,

6     then what you had proposed at that point,

7     jointly proposed is acceptable to the Court and

8     is hereby adopted and will govern unless there

9     is some modification of the order going forward.

10          With respect to uncontested facts,

11     either side may read some or all of those to the

12     jury provided that you give notice to the other

13     side that you're going to do so.  And you will

14     be charged time for the time it takes you to

15     read those to the jury.

16          In terms of the factual issues to

17     be tried and the legal issues to be tried, I

18     think at this point subject to rulings that I

19     have taken under advisement, we're probably

20     hopefully in agreement as to what the subject of

21     this trial is going to be factually.  And with

22     respect to any legal disputes I will handle

23     those in connection with resolving any disputed

24     jury instructions which we will talk about

1     further during trial.

2              Do the plaintiffs feel they know

3     what the issues are going to be factually at

4     trial or do you need something further from me?

5              MR. ALTHERR:  No, Your Honor, we

6     think we know.

7              THE COURT:  And defendant?

8              MR. GRAVES:  We're fine, Your

9     Honor.  We understand.

10             THE COURT:  Okay.  All right.  In

11    terms of exhibits, exhibits that are on the

12    exhibit list and not objected to on the exhibit

13    list are received into evidence by operation of

14    the pretrial order.  Once the exhibit is shown

15    to a witness and offered into evidence and the

16    Court will say at some point that it is

17    admitted.  What that means is for an exhibit

18    that's not objected to in the pretrial order,

19    you don't need to lay a foundation.  There won't

20    be any objections at trial to their admission.

21    But I do require that you take at least a moment

22    in the presence of the jury to show the exhibit

23    to a witness.

24             You'll have disclosed to one

1    another what exhibits it is that you intend to

2    use on direct.  You have the timing in the

3    pretrial order for when you will identify

4    objections to admission of those exhibits.  The

5    time to raise any objections that you have not

6    resolved to the admission of those exhibits is

7    in the morning before the jury comes in on the

8    day that you reasonably anticipate that witness

9    will be called to the stand.

10               If you don't raise those

11   objections with me in the morning of the

12   particular day, then the objections are waived

13   and you should not try to raise them later in

14   the day when the witness is on the stand.

15               When we discuss those objections

16   outside the presence of the jury, I'm going to

17   charge time to each party as they are speaking.

18   So if it's your objection, you'll be charged for

19   the time it takes you to argue your objection.

20   If it's the other side's objection, you'll only

21   be charged for the time it takes you to argue

22   your part.  Whatever time it takes me to explain

23   my decision we'll split 50/50.

24               Even though we will have resolved

1    all of those objections before the jury comes

2    in, at some point during the direct examination

3    of the witness you do have to formally offer the

4    exhibit into evidence.  You can either do it as

5    you show it to the witness or once at the end if

6    you want by the witness, but for the clarity of

7    the record, you need to offer into admission

8    exhibit number and whatever it is.  And for

9    clarity of the record, I will ask the other side

10   whether they object even though we all know that

11   you can't object because I have already ruled on

12   the objections.  When you say you do not object,

13   it is not giving up the fact that you may have

14   objected earlier in the day.  You reserved your

15   rights by objecting earlier in the day.

16            Before you rest your case, I

17   suggest you check with my deputy to make sure

18   that we have noted in our records the admission

19   of everything that you think has been admitted

20   into evidence.

21            Any questions about how we're

22   going to handle the exhibits from the

23   plaintiffs?

24            MR. ALTHERR:  No, Your Honor.

```
 1                    THE COURT:  And from defendants?

 2                    MR. GRAVES:  No, Your Honor.

 3                    THE COURT:  Okay.  In terms of

 4       witnesses, you're going to call various

 5       witnesses by deposition.  We have the process

 6       set out in the pretrial order as I mentioned a

 7       little bit for narrowing the designations and

 8       objections and giving me any disputes in time

 9       for me to resolve before you call that witness.

10                    If you intend to include a running

11       transcript at the bottom of the deposition, if

12       you're showing a video of the deposition to the

13       witness, you do need to disclose to the other

14       side that you intend to show a running

15       transcript so when you are providing your final

16       designations that you're going to use let the

17       other side know so if there is any objection to

18       the use of a running transcript that you all can

19       meet and confer on that and we don't get

20       surprised once the video starts playing.

21                    In terms of objections to expert

22       testimony, as you requested, I will rule on

23       those objections at trial.  For that one type of

24       objection, we will charge all of the time to the
```

1    party that does not prevail.  So if it's an

2    objection that an expert witness is testifying

3    beyond the scope of what has previously been

4    disclosed, whoever prevails on that objection

5    will not been charged any time, and whoever

6    loses on that objection will be charged for both

7    sides' argument as well as the time it takes me

8    to make my decision.

9            Since I'm ruling on these at

10   trial, it's important for you to understand I

11   have not and will not memorize all of your

12   expert reports.  I don't know what's in all of

13   them.  So if you anticipate, as it sounds like

14   you probably should, any objections to your

15   expert that you're putting on, make sure you

16   come to court with extra copies of all the

17   expert reports, all the declarations, all the

18   deposition testimony, anything that you may rely

19   on when the other side says this has not been

20   fairly disclosed, you'll need be able to produce

21   to me a copy of it, at least two copies so that

22   when you tell me exactly where to find that it

23   has been disclosed, I can take a look and make a

24   decision for you.

1                    In general, we limit examination

2          to direct, cross, and redirect without

3          recross-examination.  If you want leave to

4          approach a witness, you need to ask for it.

5          Once per witness.  Once you have asked for leave

6          to approach the witness, you can freely approach

7          that witness for the remainder of your

8          examination.

9                    And I encourage you to make

10         transition statements.  That's often helpful to

11         the jury.  These are just brief non

12         argumentative statements.  You can do it right

13         before you call a witness or even after you have

14         called them but before you start examining them

15         just to give a very brief sense to the jury of

16         where we are in the case and who this person is,

17         how they fit in.

18                    Any questions about witnesses from

19         the plaintiffs?

20                    MR. ALTHERR:  No, Your Honor.

21                    THE COURT:  From defendant?

22                    MR. GRAVES:  No, Your Honor.

23                    THE COURT:  Okay.  There was an

24         issue or maybe not a dispute, but a request

```
 1      about closing the courtroom for portions of
 2      certain witness testimony.  First let me ask,
 3      was there a dispute on that or just something
 4      you wanted to flag for me that you anticipate
 5      being necessary?
 6                MR. ALTHERR:  I don't believe
 7      there is a dispute, Your Honor.  I think they
 8      may be wanting it closed more than we do, but
 9      there are certain times we would like to have it
10      closed, particularly when they're talking
11      financial information.
12                THE COURT:  Do you believe there
13      is a dispute on this at this point?
14                MR. GRAVES:  I don't believe so,
15      Your Honor.  I'm not sure we're going to request
16      closure more than they will, but I don't think
17      we have a dispute.
18                THE COURT:  In terms of general
19      parameters, the more notice you can give me as
20      to which witnesses and roughly which time of
21      day, the better.  We have a lot going on in the
22      building and it helps me to be able to have at
23      least one of the security officers here to help
24      manage the opening and closing of the courtroom.
```

```
1        We try to do it as little as necessary so to the

2        extent you possibly can, if you can segregate

3        the portions of your examination that you are

4        hoping happen in the sealed courtroom so we

5        don't have to open and close the courtroom once

6        per witness or at worse once per direct and once

7        per cross, that would be very helpful.

8                    And, of course, you'll have to

9        make a record when the time comes as to what the

10       proper basis is for asking me to close the

11       courtroom.

12                    Any questions about that?

13                    MR. ALTHERR:  No, Your Honor.

14                    THE COURT:  Any questions?

15                    MR. GRAVES:  No, Your Honor.

16                    THE COURT:  All right.  So the

17       trial is going to be timed as you have seen in

18       the order.  I think that fifteen hours per side

19       is adequate.  I'm willing to hear an argument

20       for up to eighteen hours per side.  Does either

21       side want to argue for something more than

22       fifteen hours?  First from the plaintiffs.

23                    MR. ALTHERR:  Yes, Your Honor.  We

24       would like to get the eighteen hours.  We
```

1     understand that you have cut down quite a bit

2     here taking claim 10 out, but I still think

3     fifteen hours will be too few.  The witnesses

4     listed, there is more than thirty for

5     plaintiffs, and I had thirty-five or thirty-six

6     for defendant.  There is overlap on those, and

7     of course some of them, Jacobs will not be

8     testifying, but we need a little bit more time

9     than fifteen hours.

10                 THE COURT:  What's the defendant's

11    view?

12                 MR. GRAVES:  Well, with claim 10

13    out, Your Honor, we're a lot more comfortable

14    with fifteen than we were yesterday.  I think

15    it's doable, but we don't oppose or request a

16    request for more, we think fifteen would be

17    doable, but another hour or two probably would

18    be helpful.

19                 THE COURT:  Let's do this.  I'm

20    not expecting your positions to change, but I

21    want to give you overnight because a lot has

22    happened here today.  It's at least possible in

23    my mind that you might decide with claim 10 gone

24    and the other decision that, eighteen, maybe

1     we're only asking for seventeen or sixteen, I

2     doubt you're going to ask for fifteen, but just

3     meet and confer on that.  Give it a little bit

4     more thought.  And I'll give you until Thursday.

5     Just send me a letter and tell me what your

6     updated requests are.  If you want to put in any

7     argument, feel free, but it should be brief.

8                    Any questions about that?

9                    MR. ALTHERR:  No, Your Honor.

10                   MR. GRAVES:  No, Your Honor.

11                   THE COURT:  I think this much is

12    clear, but pretty much, I mean, someone will be

13    charged for time when I'm in the courtroom with

14    very limited exceptions, so the whole jury

15    selection process, nobody is being charged for

16    that.  When I read preliminary instructions or

17    final instructions, nobody is being charged for

18    that.  When we have a prayer conference to

19    discuss the remaining disputes and final jury

20    instructions, no one will be charged for that.

21    But other that, I can't think of anything else

22    that will happen during trial when I am on the

23    bench that someone won't be charged.  So

24    obviously your openings, your closings, your

```
 1      examination of witnesses, arguments over those
 2      objections that we talked about, arguments if
 3      there are any over motions for judgment as a
 4      matter of law, somebody is being charged for all
 5      of that.
 6                   When you play depositions, you'll
 7      need to give us the percentage breakdown per
 8      side.  And we charge all the time it takes to
 9      play that deposition, we split that time up
10      according to the percentages that you give.
11                   Obviously if I think anybody is
12      abusing the other side, for instance,
13      interrupting somebody's non objectionable
14      examination by just constantly objecting and
15      dragging out the time it takes to finish that
16      examination, I reserve the right to shift time
17      or take time away or give additional time to the
18      other side.  I don't expect any of that to
19      happen, but I do have the discretion to do that.
20                   Any questions about any of that,
21      how we're going to keep track of the time?
22                   MR. ALTHERR:  No, Your Honor.
23                   MR. GRAVES:  No, Your Honor.
24                   THE COURT:  All right.  Jury
```

1    selection, just an overview as to how we do

2    this.  On the voir dire I will get that docketed

3    by the morning of jury selection.  I need all of

4    you to be here 8:30 that first day, but whatever

5    times I put on the schedule are for you to be

6    here.  The jury pool is not here until 9:30 on

7    that first day, so we have time to talk about

8    any remaining issues that need to be discussed.

9            Once the jury pool is available,

10    they will be seated in the back of the courtroom

11    across all those benches.  I will read out loud

12    to them the various voir dire questions.  They

13    will all be in the form of yes or no questions.

14    I don't make the jurors stand up or raise their

15    hand or say anything in response to me reading

16    the questions from the bench.  After I have read

17    them all, we will meet individually either at

18    the side-bar or in my jury room with each

19    potential juror that acknowledges to my staff

20    that in their mind they answered yes to at least

21    one of the questions.

22            Once we bring that juror in, I

23    will try to explore with them what they answered

24    yes to and then each side will have a chance for

```
 1    brief follow-up if necessary to figure out

 2    better what that the juror was concerned with

 3    and wanted us to know.  Once the juror leaves

 4    our presence, I'll see if either side has a

 5    motion to strike the juror for cause, and then

 6    we'll move on to the next one.

 7                Once we finish all of that, we'll

 8    make sure we are on the same page as to who is

 9    left in the jury pool and we will randomly draw

10    fourteen potential jurors.  We'll seat them in

11    the jury box and each side will have three

12    preemptory strikes.

13                The way we exercise those strikes

14    is through the silent passing of the clipboard

15    back and forth from plaintiff to defendant.

16    You'll each note who you are striking and we'll

17    take turns and we will remove the six that have

18    been struck.  We'll have a jury of eight.  I

19    don't treat any as alternates, so if eight are

20    here or seven are here when the case is ready

21    for deliberation, all eight or all seven will be

22    part of the jury.

23                Any questions about jury?

24                MR. ALTHERR:  No, Your Honor.
```

```
1                    MR. GRAVES:  No, Your Honor.

2                    THE COURT:  All right.  In terms

3       of the final jury instructions, I will need you

4       to submit another version in light of some of

5       the rulings I have already made and there may be

6       some additional rulings coming.  As of now --

7       and we can revisit this when we start trial, but

8       as of now for getting me a revised form of final

9       instructions by that first Thursday of trial,

10      because we'll need time to review them and plan

11      a time to discuss with you any remaining

12      disputes.

13                   I think I can work with the voir

14      dire and preliminary instructions that you have

15      already submitted even though there has been

16      some changes with what's at issue in the case.

17      If I need some further assistance from you, I'll

18      let you know.

19                   Any questions about that?

20                   MR. ALTHERR:  No, Your Honor.

21                   MR. GRAVES:  No, Your Honor.

22                   THE COURT:  All right.  Any issues

23      that the plaintiff wanted to raise that I

24      haven't gotten to?
```

```
 1              MR. ALTHERR:  Can I confer?

 2              THE COURT:  Sure.  Take your time.

 3              MR. ALTHERR:  If I may, Your

 4    Honor, this is just one issue that relates to

 5    the use of depositions of HyperBranch's 30(b)(6)

 6    witnesses and their officers who by making

 7    admissions are making admissions on behalf of

 8    the party.  So they're party admissions which we

 9    plan to introduce some in our case in chief.

10              I understand that the deposition

11    designations on those should have enough of what

12    they want to put in for completeness, but they

13    should not be able to put their whole case

14    through and our case in chief with all the

15    designations they want.  I wanted to ask you how

16    you rule on that, Your Honor.

17              THE COURT:  So you're concerned

18    that when you tell them here is our specific

19    designations of the 30(b)(6) that we want to

20    play, that they will counter-designate more than

21    is necessary and you'll be forced to play it

22    during your case in chief, that's the concern?

23              MR. ALTHERR:  Yes, Your Honor.

24              THE COURT:  Okay.  Do defendants
```

1      want to address that?

2                      MR. GRAVES:  Each of those

3      witnesses will be coming to Wilmington to

4      testify live.  If they don't want to call a

5      witness live, they want to do a 30(b)(6)

6      deposition clip, that's fine.  We just want the

7      ability to provide reasonable

8      counter-designations for context and clarity.

9                      We intend to call each of those

10     three witnesses live in our case in chief so we

11     have no interest in filling up a deposition

12     designation clip with their testimony ad

13     nauseam.

14                     THE COURT:  Okay.  Mr. Altherr,

15     I'm not sure I can do more than just be alerted

16     to the issue that you have raised because there

17     is the process whereby you'll specifically

18     designate what it is you want to use trial time

19     for and they'll counter-designate and you'll

20     meet and confer.  I'll get a chance to give it

21     thought in that specific context.  If there is

22     something more you think I can do more than

23     that, given what we have just heard, feel free

24     to come back.  Is there more that I can do for

1      you on that?

2                  MR. ALTHERR:  No, Your Honor,

3      reasonable counter-designations should not be a

4      problem.

5                  THE COURT:  Any other issue

6      plaintiff want to raise?

7                  MR. ALTHERR:  No, Your Honor.

8                  THE COURT:  How about defendants?

9                  MR. GRAVES:  One issue, again, on

10     live witnesses, the fact witnesses on the

11     plaintiff's list, Integra employees, they're

12     designated as being called live if they're

13     coming at all.  We have issued trial subpoenas

14     to those four witnesses because we would like to

15     call each of them in our case in chief, Ms. Tan,

16     Mr. Lenox, Dr. Bennett and Dr. Sawhney.  I

17     understand from talking to Mr. Altherr that

18     their present intention is to call each of those

19     witnesses during their case in chief and he's

20     going to talk to the witnesses about their

21     speculative schedule and planning to work

22     together to try to minimize inconvenience to the

23     witnesses, but I wasn't sure if the Court had

24     any preference in terms of someone is called

```
1        live by the plaintiffs, should we take care of

2        their entire examination at that time or just

3        cross on the scope and direct and call the

4        witness back in our case in chief.

5                    THE COURT:  So my first preference

6        is that you all work it out.  So if you do work

7        it out either by calling them multiple times or

8        just doing it once, I can't imagine I will have

9        a problem with it.  If you don't work it out,

10       then I would just ask that you bring the dispute

11       to me as soon as you can so that I can have

12       whatever I need in order to resolve it.

13                   MR. GRAVES:  That's fine.  Our

14       main concern is making sure these four people

15       are in Wilmington to testify live.  And I

16       believe that's going to be the case from

17       Mr. Altherr.

18                   THE COURT:  Is there any doubt

19       about that, or that's --

20                   MR. ALTHERR:  No.  I have

21       contacted all the witnesses and we expect them

22       here at least sometime.

23                   THE COURT:  Okay.  If you see an

24       issue that emerges, you'll just have to let me
```

1  know.

2      Anything else from defendant.

3      MR. GRAVES:  No, Your Honor.

4      THE COURT:  Okay.  Just a few tiny

5  little last remarks from me.  If you do have

6  submissions after the trial day or on weekends,

7  and I think also we have the holiday, Memorial

8  Day around your trial, please make sure to email

9  our chamber's email address.  If you don't have

10  that, Mr. Looby can get it to you, but make sure

11  to serve a courtesy copy on us through that

12  chamber email address to make sure we don't

13  overlook anything.  That was all I have.

14      Nothing else from plaintiff?

15      MR. ALTHERR:  Nothing else, Your

16  Honor.

17      THE COURT:  Nothing else from

18  defendant?

19      MR. GRAVES:  No, Your Honor.

20      THE COURT:  Thank you all very

21  much.  We'll be in recess.

22      (Court recessed at 3:00 p.m.)

23

24

```
 1    State of Delaware )
                        )
 2    New Castle County )

 3

 4

 5                   CERTIFICATE OF REPORTER

 6

 7           I, Dale C. Hawkins, Registered Merit

 8    Reporter, Certified Shorthand Reporter, and Notary

 9    Public, do hereby certify that the foregoing record,

10    is a true and accurate transcript of my stenographic

11    notes taken on May 15, 2018, in the above-captioned

12    matter.

13

14           IN WITNESS WHEREOF, I have hereunto set my

15    hand and seal this 16th day of May 2018, at

16    Wilmington.

17

18

19               /s/ Dale C. Hawkins

20             Dale C. Hawkins, RMR

21

22

23

24
```



## $



## '

**'034** [21] - 4:13, 4:20, 7:19, 72:21, 79:2, 80:15, 81:24, 83:20, 87:12, 87:15, 88:6, 89:2, 115:24, 131:21, 136:16, 137:10, 137:16, 145:21, 176:15, 181:19, 186:9
**'34** [1] - 71:5
**'418** [1] - 82:6
**'566** [5] - 66:10, 82:5, 83:20, 145:21, 146:1

## /

**/s** [1] - 212:19

## 0

**0.96** [1] - 125:9

## 1

**1** [3] - 66:7, 66:10
**1.1** [1] - 128:21
**1.47** [1] - 125:9
**10** [98] - 4:13, 4:20, 7:17, 7:19, 51:15, 51:22, 53:12, 54:4, 55:6, 56:21, 57:7, 58:6, 60:12, 66:8, 71:4, 71:14, 72:2, 72:7, 72:14, 72:22, 73:9, 73:15, 73:21, 74:4, 76:1, 76:19, 76:22, 77:2, 77:8, 77:21, 78:1, 78:11, 79:2, 81:13, 81:17, 83:18, 87:15, 88:6, 89:7, 90:22, 91:4, 92:17, 93:21, 95:7, 95:10, 95:15, 95:21, 96:10, 115:24, 117:24, 119:2, 131:20, 132:21, 133:2, 133:10, 134:5, 134:7, 134:21, 136:1, 136:16, 137:10, 137:16, 137:23, 137:24, 138:8, 142:19, 143:4, 144:18, 145:20, 145:22, 150:21, 176:15, 177:5, 177:10, 177:20, 177:22, 178:1, 178:5, 178:7, 178:20, 179:11, 180:8, 180:15, 180:16, 180:19, 180:21, 180:24, 181:14, 181:19, 182:9, 182:14, 183:12, 183:20, 186:8, 201:2, 201:12, 201:23
**100** [2] - 101:23, 115:12
**112** [18] - 26:19, 29:24, 41:15, 50:12, 147:12, 147:15, 148:3, 148:5, 148:13, 149:18, 150:6, 150:7, 151:7, 151:11, 151:20, 152:23, 154:5, 155:12
**1338** [1] - 83:11
**15** [2] - 1:13, 212:11

## 2

**20** [15] - 72:3, 72:4, 72:14, 72:21, 73:1, 73:4, 73:8, 81:23, 145:3, 179:11, 180:3, 183:8, 183:14, 183:21
**2017** [4] - 112:9, 112:24, 187:18, 188:6
**2018** [3] - 1:13, 212:11, 212:15
**2020** [1] - 78:23
**22** [5] - 110:19, 111:7, 114:3, 115:1, 115:3
**23** [2] - 111:20, 115:17
**24th** [4] - 101:17, 103:15, 114:22, 115:6
**25th** [15] - 100:3, 101:4, 102:13, 104:10, 104:15, 110:11, 110:12, 110:13, 110:24, 111:17, 112:9, 113:14, 113:17, 113:19, 113:20
**26** [7] - 156:13, 157:5, 158:19, 158:24, 159:1, 170:11, 170:13
**26(a** [1] - 174:3
**260** [1] - 105:5
**27** [2] - 156:14, 157:6
**28** [2] - 83:11, 110:19
**29** [1] - 132:18
**29th** [2] - 3:23, 89:17

## 3

**3** [2] - 114:24, 115:15
**3,705** [6] - 99:6, 99:8, 107:21, 108:9, 146:19, 146:21
**3.26** [1] - 128:20
**30(b)(6** [12] - 159:20, 162:2, 162:11, 163:5, 163:20, 167:15, 169:8, 175:7, 175:11, 207:5, 207:19, 208:5
**30(b)(6)** [1] - 175:8
**315** [2] - 84:12, 88:9
**315(e)(2** [2] - 82:21, 139:3
**315(e)(2)** [1] - 83:4
**318(a** [1] - 83:7
**337** [1] - 83:13
**37** [1] - 115:17
**3:00** [2] - 165:9, 211:22

## 4

**4** [1] - 145:24
**4.5** [1] - 129:2

## 5

**5** [1] - 145:21
**5,705** [40] - 98:22, 99:3, 99:5, 99:11,

**15-819-LPS-CJB** [1] - 1:8
**16th** [1] - 212:15
**1930** [1] - 83:13

107:6, 109:1, 181:16, 181:18, 189:7, 189:10
**50/50** [1] - 194:23
**500** [5] - 74:5, 74:15, 88:15, 181:3, 181:4
**541** [1] - 105:5

## 6

**6** [1] - 189:14
**60** [1] - 183:22
**6B** [1] - 1:14
**6th** [2] - 75:22, 80:10

## 7

**7,964,217** [1] - 126:15



## 8

**844** [1] - 1:15
**8:30** [1] - 204:4
**8:38** [1] - 1:13

## 9

**94** [1] - 105:5
**9:30** [1] - 204:6

## A

**a.m** [1] - 1:13
**abeyance** [3] - 177:1, 178:21, 183:11
**ability** [1] - 208:7
**able** [36] - 10:17, 20:20, 31:21, 37:15, 37:18, 38:9, 53:16, 61:12, 74:17, 88:5, 94:10, 99:24, 103:8, 103:10, 105:3, 105:21, 109:20, 114:5, 128:4, 138:24, 141:5, 144:7, 144:10, 153:3, 155:9, 160:2, 162:23, 162:24, 167:13, 167:14, 172:6, 180:1, 188:2, 197:20, 199:22, 207:13
**above-captioned** [1] - 212:11
**absolutely** [2] - 11:21, 150:12
**abusing** [1] - 203:12
**accept** [1] - 191:7
**acceptable** [2] - 165:21, 192:7
**accepted** [1] - 129:19
**according** [6] - 17:18, 112:8, 118:7, 123:1, 126:2, 203:10
**account** [1] - 45:5
**accounted** [1] - 104:18
**accurate** [1] - 212:10
**accusation** [3] - 44:20, 74:10, 75:12
**accused** [14] - 10:21, 11:13, 19:13,

31:15, 45:11, 86:12, 102:9, 107:16, 107:19, 112:22, 117:12, 121:19, 125:2, 180:5

**accuses** [2] - 48:2, 48:5

**accusing** [1] - 32:5

**achieve** [1] - 28:20

**achieved** [2] - 30:15, 44:20

**acknowledge** [1] - 188:5

**acknowledges** [1] - 204:19

**acquire** [2] - 171:23, 171:24

**acquired** [1] - 169:3

**acquisition** [3] - 168:7, 168:24, 169:8

**Act** [1] - 83:13

**act** [1] - 86:4

**action** [2] - 80:8, 83:10

**actual** [4] - 13:9, 45:9, 123:5, 152:22

**ad** [1] - 208:12

**ADAM** [1] - 2:15

**Adam** [1] - 3:17

**add** [5] - 42:16, 62:5, 63:8, 81:1, 127:24

**added** [6] - 9:20, 28:11, 28:13, 68:12, 68:16, 175:18

**adding** [1] - 38:3

**addition** [5] - 28:1, 82:16, 103:23, 104:6, 104:22

**additional** [8] - 9:20, 36:5, 56:1, 65:24, 129:4, 184:20, 203:17, 206:6

**additionally** [3] - 81:22, 82:16, 87:22

**address** [6] - 6:2, 146:13, 157:22, 208:1, 211:9, 211:12

**addressed** [5] - 99:15, 107:13, 141:16, 142:20, 192:4

**addressing** [2] - 45:22, 177:4

**adequate** [4] - 35:14, 114:8, 169:10, 200:19

**adequately** [2] - 156:5, 188:4

**adhere** [1] - 69:8

**adherence** [2] - 62:2, 62:11

**Adherus** [4] - 113:1, 125:6, 125:11, 164:7

**adjudicated** [2] - 97:7, 133:4

**administer** [1] - 140:19

**admission** [5] - 193:20, 194:4, 194:6, 195:7, 195:18

**admissions** [3] - 207:7, 207:8

**admit** [2] - 4:8, 65:18

**admits** [1] - 65:17

**admitted** [2] - 193:17, 195:19

**adopt** [6] - 55:19, 109:12, 126:23, 133:1, 179:8, 179:24

**adopted** [4] - 65:22, 77:15, 189:13, 192:8

**adopting** [2] - 56:12, 133:11

**adopts** [2] - 77:9, 80:16

**advance** [2] - 49:8, 49:11

**advancing** [1] - 52:11

**adverse** [1] - 6:11

**advised** [2] - 79:18, 162:7

**advisement** [2] - 182:12, 192:19

**affect** [1] - 69:14

**affirmed** [1] - 136:12

**affirming** [1] - 134:23

**afoul** [1] - 150:6

**afternoon** [3] - 164:22, 179:2, 179:4

**afterwards** [1] - 157:22

**aged** [4] - 138:24, 139:13, 141:6, 143:22

**agenda** [2] - 3:24, 137:15

**agent** [26] - 30:20, 32:24, 33:18, 34:13, 34:15, 34:19, 40:13, 58:8, 66:9, 66:11, 66:12, 66:15, 66:16, 66:18, 69:14, 69:15, 72:9, 81:5, 81:8, 81:13, 81:14, 149:2, 153:23, 153:24, 155:3, 179:17

**agents** [1] - 13:17

**aggregate** [16] - 53:5, 56:8, 57:19, 118:1, 118:3, 118:16, 121:9, 121:12, 124:23, 125:4, 125:15, 125:24, 126:17, 126:21, 127:15, 129:14

**aging** [1] - 143:2

**ago** [3] - 93:3, 175:24, 176:4

**agree** [17] - 12:21, 15:22, 36:6, 36:13, 38:15, 42:22, 55:12, 55:19, 56:19, 57:4, 57:7, 57:23, 91:1, 117:8, 122:9, 137:4, 150:5

**agreeable** [1] - 165:22

**agreed** [1] - 60:17

**agreeing** [1] - 75:17

**agreement** [4] - 59:24, 166:1, 166:2, 192:20

**ahead** [9] - 87:9, 87:17, 150:2, 167:1, 172:3, 176:13, 184:6, 186:19, 191:15

**AIA** [2] - 74:16, 75:14

**air** [3] - 33:14, 153:24, 154:1

**alerted** [1] - 208:15

**allegations** [1] - 19:12

**allege** [1] - 57:22

**alleged** [1] - 141:24

**alleging** [1] - 185:11

**allocate** [1] - 95:14

**allocation** [1] - 76:5

**allow** [9] - 77:13, 87:24, 88:16, 98:9, 100:9, 106:23, 133:22, 175:17, 176:6

**allowed** [10] - 29:5, 29:7, 43:12, 46:23, 51:7, 88:19, 109:23, 110:9, 111:2, 156:4

**allowing** [4] - 113:17, 174:16, 175:1, 188:12

**allows** [1] - 125:12

**alluded** [1] - 135:8

**almost** [3] - 128:21, 134:3, 135:1

**alone** [1] - 78:11

**alter** [1] - 140:22

**alternate** [1] - 43:24

**alternates** [1] - 205:19

**alternative** [5] - 13:2, 102:17, 136:14, 190:14, 191:5

**altherr** [6] - 109:16, 140:1, 171:13, 208:14, 209:17, 210:17

**Altherr** [5] - 3:10, 115:18, 164:23,

168:22, 169:12

**ALTHERR** [90] - 2:6, 5:9, 28:16, 80:1, 80:22, 81:11, 83:2, 84:2, 84:18, 84:23, 85:24, 87:7, 89:1, 89:8, 89:11, 90:16, 91:3, 92:5, 92:19, 92:24, 93:4, 93:9, 93:19, 94:2, 94:12, 106:17, 106:24, 109:18, 110:18, 111:8, 111:15, 111:24, 113:7, 113:13, 114:2, 124:12, 125:19, 126:11, 127:5, 127:13, 127:23, 131:4, 138:21, 139:17, 141:2, 144:4, 144:12, 145:15, 146:2, 146:8, 146:20, 156:15, 157:7, 158:4, 160:24, 161:4, 161:7, 161:12, 161:17, 162:2, 162:14, 162:22, 165:1, 165:5, 166:9, 166:13, 167:11, 167:21, 168:6, 171:15, 172:15, 176:9, 190:21, 193:5, 195:24, 198:20, 199:6, 200:13, 200:23, 202:9, 203:22, 205:24, 206:20, 207:1, 207:3, 207:23, 209:2, 209:7, 210:20, 211:15

**altherr's** [1] - 95:1

**Amneal** [1] - 85:4

**amount** [8] - 86:5, 88:18, 91:15, 95:3, 118:15, 126:7, 128:5, 128:9

**amounts** [1] - 120:19

**analysis** [1] - 41:15

**answer** [8] - 6:5, 21:7, 24:6, 24:8, 55:23, 95:24, 144:11, 144:14

**answered** [2] - 204:20, 204:23

**answers** [1] - 159:3

**anticipate** [4] - 167:18, 194:8, 197:13, 199:4

**anticipated** [2] - 85:18, 181:3

**anticipation** [3] - 74:4, 150:9, 151:16

**anticipatory** [2] - 141:24, 142:3

**anyway** [1] - 81:7

**apologize** [1] - 27:22

**appeal** [12] - 54:22, 76:22, 86:18, 89:18, 92:10, 96:5, 96:6, 96:11, 96:13, 99:13, 136:12

**appeals** [1] - 89:18

**appearance** [1] - 142:12

**APPEARANCES** [1] - 2:1

**appearances** [1] - 3:3

**apple** [1] - 86:3

**application** [12] - 18:18, 21:15, 25:21, 29:9, 29:17, 30:18, 38:16, 52:1, 123:5, 123:19, 123:21, 123:23

**applications** [3] - 18:24, 20:22, 31:11

**applicator** [1] - 78:19

**applicators** [1] - 94:16

**applied** [13] - 6:22, 17:10, 18:17, 22:2, 47:20, 52:13, 53:14, 65:16, 65:21, 85:15, 120:8, 120:11, 121:13

**applies** [4] - 29:8, 29:10, 30:14, 75:1

**apply** [9] - 20:20, 28:18, 29:16, 65:1, 112:16, 112:20, 157:1, 169:23, 177:19

**applying** [5] - 38:22, 38:23, 44:24, 84:12, 112:21

**apportioned** [1] - 91:23

**apportionment** [3] - 101:7, 101:12, 104:16
**approach** [4] - 105:24, 198:4, 198:6
**appropriate** [8] - 44:19, 52:17, 91:22, 124:5, 127:2, 138:14, 138:15, 175:8
**approved** [1] - 91:17
**April** [4] - 75:22, 80:10, 112:24, 132:15
**areas** [2] - 58:20, 171:19
**argue** [17] - 25:11, 25:23, 26:10, 41:13, 48:21, 49:17, 51:14, 58:10, 58:21, 63:15, 72:1, 80:13, 137:19, 189:7, 194:19, 194:21, 200:21
**argued** [15] - 42:10, 47:8, 47:24, 60:14, 69:2, 77:16, 108:12, 131:15, 137:14, 137:18, 144:18, 176:16, 186:15, 186:22, 188:18
**argues** [1] - 90:5
**arguing** [13] - 11:2, 11:4, 22:24, 41:17, 42:16, 42:20, 66:17, 75:18, 76:24, 77:7, 99:4, 124:14, 126:9
**argument** [39] - 5:18, 5:23, 9:19, 15:20, 22:14, 23:1, 23:12, 23:15, 24:12, 35:18, 43:19, 45:22, 46:8, 48:17, 49:18, 55:18, 67:23, 68:4, 69:21, 74:7, 87:1, 88:19, 98:20, 98:21, 108:13, 117:14, 122:12, 132:23, 133:16, 138:8, 141:20, 142:4, 150:6, 151:23, 183:9, 189:23, 197:7, 200:19, 202:7
**argumentative** [1] - 198:12
**arguments** [13] - 18:3, 19:23, 27:8, 45:21, 46:13, 58:7, 59:8, 149:8, 149:9, 177:7, 182:1, 203:1, 203:2
**arising** [1] - 83:10
**Arizona** [1] - 140:4
**arose** [1] - 160:17
**arrangements** [1] - 138:22
**arrived** [1] - 64:13
**arriving** [1] - 65:7
**ARSHT** [1] - 2:11
**Arsht** [1] - 3:13
**art** [20] - 14:4, 35:15, 59:3, 59:9, 61:6, 61:14, 65:16, 67:16, 68:22, 69:6, 72:13, 74:13, 82:5, 82:18, 83:17, 88:20, 126:14, 147:22, 150:14, 183:24
**articulate** [1] - 63:24
**articulated** [2] - 27:10, 28:1
**articulation** [1] - 39:16
**aside** [3] - 87:3, 88:10, 161:24
**aspect** [6] - 34:5, 54:1, 60:16, 63:2, 184:1, 184:4
**aspects** [6] - 4:16, 8:24, 14:12, 32:15, 34:2, 61:24
**assemblies** [1] - 78:20
**assert** [6] - 74:11, 83:9, 89:3, 145:18, 146:17, 150:11
**asserted** [7] - 72:13, 72:15, 72:18, 76:8, 148:17, 153:5, 182:18
**asserting** [4] - 98:10, 142:2, 146:3, 146:5
**assess** [1] - 128:4

**assistance** [1] - 206:17
**associates** [1] - 119:24
**assumed** [1] - 106:18
**assured** [1] - 165:18
**attach** [1] - 186:15
**attack** [1] - 126:19
**attention** [1] - 157:5
**August** [21] - 100:3, 101:4, 102:13, 104:10, 104:13, 104:15, 110:11, 110:12, 110:13, 110:17, 110:23, 111:17, 112:9, 113:6, 113:7, 113:14, 113:17, 113:19, 113:20, 187:18, 189:14
**authority** [2] - 74:18, 83:23
**automobile** [1] - 35:5
**available** [3] - 111:22, 115:4, 204:9
**avoid** [4] - 40:23, 136:13, 162:21, 162:22
**award** [1] - 92:13
**awarded** [1] - 191:2
**aware** [5] - 4:2, 31:5, 59:4, 74:20, 74:21

## B

**background** [1] - 162:9
**backstop** [1] - 149:19
**bad** [2] - 175:19, 188:14
**baked** [1] - 96:17
**balance** [1] - 134:15
**Banner** [1] - 3:9
**BANNER** [1] - 2:5
**bar** [1] - 204:18
**barium** [1] - 60:6, 62:8, 63:2, 63:8, 66:3, 66:4, 66:17, 68:11, 68:15, 69:12, 70:9
**barred** [1] - 75:8
**barrier** [2] - 125:13, 125:14
**base** [2] - 48:18, 170:6
**based** [28] - 8:24, 12:17, 36:10, 38:10, 40:21, 41:4, 51:23, 53:1, 53:13, 76:20, 84:21, 91:15, 92:9, 92:13, 96:11, 97:3, 101:6, 104:16, 106:4, 112:13, 115:3, 142:11, 148:2, 148:7, 155:10, 170:6, 191:14
**bases** [1] - 26:12
**basis** [23] - 24:1, 25:12, 27:14, 27:16, 35:24, 36:24, 48:10, 48:12, 48:22, 49:2, 91:18, 91:24, 93:18, 95:15, 101:5, 107:10, 135:3, 139:9, 154:18, 158:2, 168:11, 174:23, 200:10
**Bass** [1] - 181:5
**battled** [1] - 94:20
**bear** [2] - 70:17, 173:20
**become** [1] - 7:3
**becomes** [3] - 18:23, 43:7, 66:13
**BEFORE** [1] - 1:18
**begin** [1] - 3:23
**beginning** [1] - 170:10
**begins** [1] - 52:15

**behalf** [2] - 97:20, 207:7
**behind** [2] - 78:22, 86:4
**belabor** [1] - 173:5
**belief** [1] - 133:19
**below** [4] - 18:5, 20:10, 31:16, 31:20
**bench** [4] - 78:3, 136:20, 202:23, 204:16
**benches** [1] - 204:11
**benefit** [1] - 109:9, 179:7
**Bennett** [1] - 209:16
**best** [5] - 8:6, 47:4, 51:10, 132:16, 175:9
**better** [4] - 49:21, 109:13, 199:21, 205:2
**Betts** [1] - 89:23
**between** [11] - 6:8, 15:9, 25:16, 72:2, 103:8, 109:3, 121:6, 125:8, 128:5, 131:13, 183:23
**beyond** [8] - 32:13, 32:14, 39:24, 49:15, 49:20, 148:11, 191:10, 197:3
**big** [3] - 17:3, 17:6, 117:13
**bigger** [1] - 123:17
**binding** [2] - 162:12, 162:14
**biocompatibility** [11] - 60:19, 61:18, 62:15, 62:22, 62:24, 63:22, 63:23, 67:23, 69:1, 98:21, 181:15
**biocompatible** [43] - 59:10, 59:13, 59:18, 60:16, 60:21, 60:24, 61:2, 61:3, 61:4, 61:9, 61:10, 61:11, 61:23, 63:4, 63:5, 63:6, 63:7, 63:11, 64:4, 64:5, 64:9, 64:10, 64:15, 64:21, 65:4, 65:10, 65:14, 65:18, 65:19, 66:12, 66:16, 66:18, 66:22, 67:9, 67:19, 69:19, 69:22, 69:23, 70:12, 178:3, 185:13
**biodegradability** [1] - 62:23
**biodegradable** [1] - 99:11
**bit** [12] - 16:23, 27:8, 82:22, 99:18, 173:12, 174:18, 187:20, 190:15, 196:7, 201:1, 201:8, 202:3
**bite** [1] - 86:2
**bookend** [1] - 56:18
**bother** [2] - 172:13, 175:21
**bottom** [3] - 92:1, 125:5, 196:11
**box** [1] - 205:11
**brand** [1] - 87:16
**brand-new** [1] - 87:16
**break** [8] - 93:16, 93:20, 131:11, 131:13, 137:17, 141:4, 144:15, 144:21
**breakdown** [1] - 203:7
**brief** [14] - 45:20, 80:13, 89:22, 119:19, 128:15, 131:7, 164:21, 185:4, 185:7, 185:22, 198:11, 198:15, 202:7, 205:1
**briefed** [2] - 55:5, 122:5
**briefing** [4] - 64:20, 75:2, 116:16, 185:2
**briefly** [7] - 6:3, 44:5, 114:19, 115:22, 128:12, 163:13, 190:12
**bring** [10] - 34:9, 36:9, 53:18, 106:8, 147:13, 173:8, 180:24, 204:22, 210:10
**bringing** [3] - 12:16, 94:18, 152:24
**broad** [2] - 160:14, 163:20
**broader** [5] - 27:8, 43:15, 72:8, 81:18, 87:1
**broadly** [1] - 77:6

brought [2] - 67:24, 78:17
BTG [1] - 85:3
bubbles [3] - 33:15, 153:24, 154:1
build [1] - 67:13
building [3] - 123:16, 124:4, 199:22
bunch [2] - 182:4, 182:5
burden [1] - 152:22
Burke [24] - 6:21, 32:1, 32:17, 45:3, 53:6, 55:11, 55:19, 57:11, 57:23, 58:4, 65:2, 65:22, 71:14, 91:22, 116:7, 118:18, 120:3, 124:13, 124:22, 125:23, 128:1, 130:9, 136:22, 137:3
Burke's [5] - 126:19, 133:2, 183:11, 184:7, 189:9
business [1] - 143:11
Business [1] - 172:20
busy [2] - 3:23, 138:23
buying [1] - 136:10
BY [7] - 2:3, 2:6, 2:7, 2:11, 2:12, 2:14, 2:15

# C

calculated [3] - 103:5, 112:7, 112:24
calculation [5] - 109:21, 111:16, 112:17, 112:18
calculations [2] - 104:19, 113:19
camp [1] - 6:13
cancel [1] - 144:1
cannot [5] - 13:24, 19:2, 88:11, 88:13, 88:14
captioned [1] - 212:11
care [1] - 210:1
carry [2] - 73:21, 110:10
case [97] - 25:1, 25:3, 26:24, 27:13, 28:6, 29:24, 30:1, 30:7, 30:8, 32:6, 59:5, 63:20, 64:17, 73:12, 73:20, 75:2, 75:20, 76:1, 77:14, 78:14, 78:18, 78:21, 78:22, 79:3, 80:3, 82:11, 83:18, 84:15, 85:4, 87:10, 88:21, 89:14, 89:23, 90:3, 94:11, 94:13, 94:14, 94:15, 94:18, 94:20, 95:13, 96:8, 96:13, 96:16, 98:23, 110:4, 111:2, 117:8, 122:9, 133:20, 133:24, 134:2, 134:11, 135:23, 136:21, 136:23, 137:7, 141:8, 141:14, 141:21, 145:22, 148:3, 148:4, 148:8, 150:20, 150:21, 150:22, 154:22, 155:17, 160:18, 163:7, 165:14, 170:10, 170:19, 171:8, 172:11, 172:18, 172:19, 173:15, 174:12, 182:20, 184:1, 189:16, 195:16, 198:16, 205:20, 206:16, 207:9, 207:13, 207:14, 207:22, 208:10, 209:15, 209:19, 210:4, 210:16
Case [1] - 1:7
cases [2] - 86:19, 114:9
Castle [1] - 212:2
catch [1] - 78:16
categorical [21] - 8:15, 10:12, 13:17,

14:9, 14:22, 15:5, 15:8, 15:12, 15:13, 15:15, 15:18, 15:21, 15:23, 16:4, 16:19, 23:16, 23:20, 26:13, 36:11, 42:1, 149:2
categories [1] - 59:12
category [1] - 91:16
causation [1] - 32:24
caused [2] - 30:19, 160:19
causes [1] - 40:13
causing [3] - 33:15, 116:19, 149:2
certain [17] - 4:16, 6:13, 11:6, 21:22, 34:21, 38:8, 38:21, 47:18, 55:11, 57:8, 57:20, 167:22, 168:10, 179:21, 182:1, 199:2, 199:9
certainly [18] - 8:4, 11:4, 41:7, 73:13, 100:3, 103:14, 103:18, 131:24, 132:8, 134:10, 150:7, 155:15, 156:3, 159:17, 160:6, 164:14, 167:5, 191:16
CERTIFICATE [1] - 212:5
Certified [1] - 212:8
certify [1] - 212:9
challenging [2] - 7:13, 186:18
chamber [1] - 211:12
chamber's [1] - 211:9
chance [15] - 4:3, 58:18, 63:15, 90:23, 90:24, 94:23, 101:14, 105:17, 130:22, 143:13, 160:23, 164:20, 183:1, 204:24, 208:20
change [57] - 8:12, 8:15, 9:1, 9:6, 9:14, 10:12, 13:18, 14:9, 14:22, 15:5, 15:8, 15:13, 15:15, 15:18, 15:21, 15:23, 16:4, 16:19, 18:11, 18:14, 18:15, 18:20, 19:2, 19:6, 19:8, 20:6, 20:13, 23:8, 23:16, 23:20, 25:6, 25:21, 26:13, 28:21, 30:19, 31:13, 31:20, 33:1, 34:18, 34:19, 36:11, 38:11, 38:17, 39:1, 39:17, 40:14, 42:1, 45:10, 46:3, 122:11, 149:3, 154:9, 179:13, 201:20
changes [5] - 20:8, 20:9, 24:24, 33:15, 206:16
changing [2] - 21:21, 31:16
chapter [1] - 83:6
charge [3] - 194:17, 196:24, 203:8
charged [11] - 192:14, 194:18, 194:21, 197:5, 197:6, 202:13, 202:15, 202:17, 202:20, 202:23, 203:4
chart [1] - 125:10
charts [1] - 172:22
chassis [1] - 35:5
check [1] - 195:17
chemical [2] - 116:17, 116:18
chemistry [2] - 94:17, 118:22
chief [7] - 207:9, 207:14, 207:22, 208:10, 209:15, 209:19, 210:4
Chief [1] - 1:19
choice [1] - 103:17
chose [1] - 103:8
chosen [2] - 90:14, 158:14
CHRISTOPHER [1] - 2:7

Circuit [13] - 77:7, 87:8, 89:18, 91:1, 92:11, 95:8, 96:7, 96:11, 96:13, 96:21, 134:23, 136:17, 137:4
circular [1] - 69:21
circumstances [1] - 84:1
citations [2] - 62:17, 62:18
cite [2] - 74:17, 172:19
cited [4] - 82:18, 83:18, 89:22, 142:6
civil [1] - 83:9
claim [298] - 4:7, 4:10, 4:12, 4:20, 5:14, 5:19, 6:10, 6:18, 7:17, 7:19, 7:20, 9:11, 9:15, 9:21, 12:18, 14:3, 14:14, 14:19, 14:23, 15:17, 15:19, 16:9, 19:4, 20:20, 22:15, 27:13, 28:11, 28:23, 29:5, 29:19, 32:2, 32:8, 32:15, 33:5, 34:6, 35:1, 35:3, 35:10, 35:12, 35:16, 39:21, 40:22, 41:18, 42:2, 42:4, 42:7, 42:9, 42:13, 42:24, 43:11, 43:13, 43:15, 43:22, 44:17, 45:3, 47:15, 47:19, 48:4, 48:23, 49:18, 50:7, 50:17, 50:24, 51:15, 51:18, 51:22, 52:3, 52:4, 52:13, 52:17, 52:24, 53:10, 53:12, 53:16, 53:19, 54:4, 55:6, 55:13, 56:21, 57:7, 58:3, 58:4, 58:6, 58:11, 58:22, 59:7, 60:11, 60:12, 60:15, 61:6, 61:14, 61:15, 61:16, 63:10, 64:7, 64:18, 65:24, 66:7, 66:8, 66:10, 66:14, 66:19, 67:4, 67:7, 67:17, 69:3, 69:17, 69:19, 69:24, 70:4, 70:22, 71:4, 71:14, 71:17, 71:20, 71:23, 72:2, 72:3, 72:4, 72:5, 72:7, 72:14, 72:15, 72:21, 72:22, 73:1, 73:4, 73:5, 73:8, 73:9, 73:15, 73:21, 73:23, 74:2, 74:4, 75:17, 76:1, 76:4, 76:5, 76:7, 76:19, 76:22, 77:2, 77:8, 77:13, 77:18, 77:21, 77:23, 78:1, 78:7, 78:11, 79:2, 79:3, 79:15, 81:9, 81:12, 81:13, 81:17, 81:18, 81:23, 82:1, 82:8, 82:17, 83:5, 83:13, 83:18, 85:20, 86:13, 87:4, 87:15, 88:6, 89:6, 89:7, 90:22, 91:4, 91:13, 91:23, 92:17, 93:18, 93:21, 95:3, 95:7, 95:10, 95:15, 95:21, 96:10, 96:16, 97:4, 97:8, 103:19, 104:4, 109:2, 112:11, 115:24, 117:24, 119:2, 120:18, 121:12, 121:21, 124:18, 125:22, 126:2, 126:19, 126:23, 127:1, 128:2, 130:10, 131:20, 132:3, 132:6, 132:18, 132:21, 133:2, 133:10, 134:5, 134:7, 134:18, 134:21, 135:3, 135:14, 135:19, 136:1, 136:16, 137:10, 137:15, 137:23, 137:24, 138:8, 142:19, 143:3, 144:18, 145:8, 145:20, 145:21, 145:24, 147:14, 150:21, 151:10, 152:4, 152:6, 152:24, 155:1, 155:5, 155:10, 176:15, 177:5, 177:8, 177:9, 177:19, 177:22, 178:1, 178:4, 178:7, 178:20, 179:11, 180:3, 180:7, 180:9, 180:11, 180:15, 180:16, 180:19, 180:21, 180:24, 181:13, 181:14, 181:19, 182:3, 182:9, 182:14, 182:24, 183:8, 183:12,

183:14, 183:20, 183:21, 184:8,
184:17, 184:22, 186:3, 186:8, 201:2,
201:12, 201:23
**claim-by-claim** [2] - 91:23, 95:15
**claimed** [3] - 14:1, 191:3, 191:4
**claiming** [1] - 95:2
**claims** [60] - 6:18, 9:17, 10:4, 11:14,
11:17, 12:15, 13:3, 13:13, 13:23, 15:4,
15:24, 25:3, 27:2, 28:2, 28:14, 29:21,
30:22, 34:2, 38:3, 38:15, 39:4, 39:5,
39:9, 39:10, 40:8, 40:10, 40:11, 42:18,
43:4, 43:5, 44:11, 50:9, 50:10, 54:8,
72:4, 72:7, 72:17, 72:19, 73:7, 76:8,
77:12, 79:14, 80:24, 81:1, 81:6, 91:14,
95:16, 133:7, 146:18, 148:12, 148:17,
148:20, 148:22, 149:24, 152:1, 152:3,
153:6, 178:8, 180:14, 182:18
**clarification** [1] - 141:1
**clarity** [9] - 47:4, 56:1, 100:14, 119:10,
190:15, 190:19, 195:6, 195:9, 208:8
**clear** [17] - 8:10, 13:6, 36:1, 47:12, 69:5,
75:14, 86:9, 86:19, 86:21, 102:19,
114:7, 184:20, 188:6, 188:8, 188:16,
188:17, 202:12
**clearance** [1] - 127:1
**clearly** [7] - 47:6, 63:5, 87:23, 105:18,
107:5, 108:20, 188:15
**click** [1] - 120:22
**clip** [2] - 208:6, 208:12
**clipboard** [1] - 205:14
**clock** [2] - 54:11, 96:4
**close** [3] - 143:10, 200:5, 200:10
**closed** [2] - 199:8, 199:10
**closer** [1] - 106:18
**closing** [2] - 199:1, 199:24
**closings** [1] - 202:24
**closure** [1] - 199:16
**cloudier** [1] - 19:4
**co** [2] - 140:5, 141:3
**co-counsel** [2] - 140:5, 141:3
**coat** [2] - 63:19, 185:12
**coated** [11] - 60:13, 61:22, 62:1, 62:10,
67:1, 67:8, 68:13, 68:17, 68:19, 68:23,
69:7
**cogent** [1] - 80:11
**collagen** [2] - 63:3, 70:9
**colleagues** [1] - 3:16
**college** [1] - 71:10
**color** [71] - 8:16, 8:17, 10:12, 10:14,
10:16, 10:18, 11:6, 11:9, 11:10, 12:8,
12:11, 13:18, 14:1, 17:14, 17:16,
17:17, 18:11, 18:18, 18:19, 19:6, 20:3,
23:8, 23:17, 23:20, 23:23, 24:15,
24:23, 24:24, 25:7, 25:15, 26:13,
26:22, 28:14, 28:20, 29:9, 29:10,
29:18, 30:6, 30:14, 31:13, 36:12, 37:5,
37:9, 37:11, 37:12, 37:16, 37:19,
38:17, 38:20, 38:24, 39:14, 39:15,
42:2, 44:13, 45:13, 45:14, 45:18,
45:24, 46:3, 46:6, 46:8, 46:9, 46:11,

46:16, 51:8, 149:2, 156:19, 156:21
**colored** [1] - 39:3
**colors** [12] - 18:5, 20:21, 21:23, 22:2,
23:10, 25:8, 25:15, 28:24, 44:18,
44:22, 46:22
**combination** [1] - 74:12
**comfortable** [5] - 155:19, 166:20,
176:24, 178:20, 201:13
**coming** [6] - 137:6, 162:12, 186:11,
206:6, 208:3, 209:13
**Commission** [1] - 83:12
**commit** [1] - 105:19
**common** [5] - 82:17, 82:18, 82:19,
169:15, 179:15
**company** [1] - 164:17
**compared** [1] - 150:22
**compensate** [1] - 114:9
**compensation** [5] - 103:20, 104:3,
104:6, 105:8
**competition** [1] - 164:7
**competitors** [3] - 89:21, 90:2, 134:17
**compile** [1] - 149:11
**complete** [7] - 80:6, 89:14, 108:18,
125:17, 125:21, 127:12, 127:14
**completed** [3] - 127:12, 127:16, 134:4
**completely** [3] - 72:12, 72:16
**completeness** [1] - 207:12
**complex** [2] - 94:14, 94:21
**complexity** [1] - 73:12
**complicate** [1] - 73:11
**complicated** [1] - 171:8
**complicating** [1] - 94:18
**complications** [1] - 133:3
**complied** [1] - 150:16
**component** [4] - 102:23, 115:7, 115:8,
115:14
**components** [4] - 52:13, 101:9, 116:20,
118:8
**composition** [15] - 52:22, 59:13, 59:19,
60:13, 60:22, 60:23, 61:4, 61:12,
65:14, 68:13, 68:17, 68:18, 69:22,
178:3, 185:14
**comprising** [1] - 35:5
**computation** [1] - 110:2
**CONAWAY** [1] - 2:3
**Conaway** [1] - 3:8
**concept** [1] - 118:24
**concern** [7] - 159:24, 160:1, 160:7,
163:24, 207:22, 210:14
**concerned** [2] - 205:2, 207:17
**concerns** [3] - 140:21, 146:11, 146:22
**concession** [1] - 95:1
**concluded** [1] - 41:7
**concludes** [2] - 39:19, 39:22
**CONCLUENT** [1] - 1:5
**conclusion** [2] - 32:1, 132:19
**condition** [1] - 153:20
**conditions** [1] - 68:21
**conduct** [1] - 78:3

**conducted** [1] - 128:19
**confer** [8] - 76:11, 155:17, 157:1, 183:2,
196:19, 202:3, 207:1, 208:20
**conference** [6] - 3:22, 80:11, 140:3,
140:16, 165:6, 202:18
**confident** [1] - 93:7
**confirm** [3] - 5:22, 96:21, 177:19
**conflating** [1] - 124:15
**Confluent** [5] - 168:8, 168:24, 169:3,
169:9, 171:24
**confront** [2] - 74:19, 74:22
**confronted** [1] - 160:10
**confronting** [1] - 132:10
**confused** [1] - 88:3
**connect** [1] - 19:20
**connected** [1] - 116:22
**connection** [5] - 130:10, 156:12,
182:17, 185:23, 192:23
**connotations** [1] - 129:24
**consider** [3] - 91:7, 135:11, 189:20
**considered** [4] - 80:2, 80:10, 132:20,
187:11
**considering** [1] - 135:5
**consistent** [4] - 7:20, 50:6, 109:2,
154:22
**constantly** [1] - 203:14
**construction** [71] - 4:7, 4:10, 5:14, 5:20,
6:11, 7:20, 11:23, 12:19, 19:5, 22:16,
27:13, 29:13, 32:8, 32:16, 32:22, 33:5,
39:21, 39:24, 41:19, 43:22, 47:15,
47:19, 48:5, 48:24, 49:19, 50:7, 50:18,
51:1, 51:19, 53:20, 58:12, 58:23, 59:7,
59:18, 63:11, 64:2, 64:4, 64:7, 64:14,
64:18, 65:7, 65:21, 65:24, 66:22, 67:4,
67:7, 67:17, 69:4, 70:22, 124:5, 126:3,
126:20, 126:23, 127:1, 128:2, 130:10,
130:15, 145:8, 152:4, 152:7, 155:2,
177:9, 181:13, 182:3, 182:24, 184:17,
184:23, 185:12, 185:17, 186:3, 186:19
**constructions** [5] - 6:19, 38:17, 40:22,
155:11, 180:11
**construe** [2] - 53:16, 184:2
**construed** [11] - 9:18, 53:10, 63:18,
63:21, 63:23, 65:4, 69:17, 70:4, 70:6,
124:19, 153:3
**construes** [1] - 184:8
**consulted** [3] - 162:4, 163:5, 163:19
**contact** [13] - 52:7, 52:9, 52:22, 53:3,
57:13, 140:7, 141:5, 166:13, 166:15,
166:22, 167:1, 179:17, 179:22
**contacted** [1] - 210:21
**contend** [2] - 107:24, 174:5
**content** [1] - 145:1
**contest** [4] - 65:15, 97:24, 98:3, 109:22
**contested** [1] - 184:1
**contesting** [1] - 113:18
**context** [17] - 16:19, 16:23, 31:14,
50:10, 50:20, 64:11, 72:21, 119:2,
120:8, 127:7, 129:10, 130:6, 135:17,
174:12, 188:16, 208:8, 208:21

**continuation** [1] - 83:21
**continue** [1] - 98:14
**continued** [2] - 39:12, 110:16
**continues** [1] - 111:21
**continuously** [1] - 31:15
**contradicts** [1] - 103:16
**contrary** [2] - 76:15, 108:4
**contributed** [1] - 172:8
**controlled** [2] - 17:23, 120:15
**controlling** [2] - 85:10, 120:20
**COOLEY** [1] - 2:14
**Cooley** [2] - 3:16, 165:8
**Cooper** [1] - 89:23
**coordinated** [1] - 165:7
**copies** [2] - 197:16, 197:21
**copy** [2] - 197:21, 211:11
**cornucopia** [1] - 45:11
**CORP** [1] - 1:4
**Corp** [1] - 89:22
**corporate** [3] - 162:8, 169:4, 170:14
**correct** [30] - 7:14, 8:20, 9:12, 9:22,
  9:23, 11:18, 11:19, 13:1, 23:20, 23:21,
  26:6, 55:7, 59:14, 59:15, 77:5, 80:21,
  84:1, 108:12, 108:15, 113:6, 114:22,
  126:3, 130:12, 137:9, 144:12, 158:4,
  159:21, 162:13, 178:9, 178:10
**correctly** [5] - 28:4, 35:22, 41:13, 78:17,
  159:10
**correlate** [1] - 46:9
**correlated** [2] - 19:7, 22:10
**correlation** [4] - 21:20, 22:1, 25:17, 46:7
**costing** [1] - 68:1
**Counsel** [2] - 2:8, 2:16
**counsel** [3] - 140:5, 141:3, 165:20
**counter** [5] - 45:21, 207:20, 208:8,
  208:19, 209:3
**counter-designate** [2] - 207:20, 208:19
**counter-designations** [2] - 208:8, 209:3
**County** [1] - 212:2
**couple** [6] - 19:21, 19:23, 52:4, 132:1,
  141:8, 156:9
**course** [9] - 4:3, 85:23, 90:24, 180:14,
  180:24, 182:3, 188:1, 200:8, 201:7
**court** [16] - 74:19, 74:22, 78:12, 84:7,
  84:11, 85:3, 85:13, 85:22, 132:10,
  134:12, 140:3, 140:8, 165:11, 170:18,
  189:8, 197:16
**COURT** [298] - 1:2, 3:1, 3:6, 3:11, 3:19,
  5:10, 5:13, 6:4, 7:6, 7:21, 8:1, 8:18,
  9:9, 9:14, 9:18, 10:2, 10:8, 10:20,
  11:15, 12:2, 12:20, 14:6, 15:10, 15:22,
  16:3, 16:13, 16:17, 17:5, 19:16, 19:22,
  21:2, 21:8, 21:13, 22:12, 22:23, 23:4,
  23:14, 23:22, 24:5, 24:11, 24:21,
  25:10, 25:18, 25:23, 26:5, 26:8, 26:15,
  26:21, 27:4, 27:9, 27:19, 27:24, 29:2,
  29:22, 30:4, 31:3, 32:3, 34:9, 35:17,
  35:21, 36:18, 36:22, 37:3, 37:24, 40:2,
  40:24, 41:11, 41:21, 42:5, 42:14,
  42:22, 43:18, 44:2, 44:7, 47:3, 47:11,

51:4, 51:9, 51:13, 53:21, 55:4, 55:10,
55:17, 56:11, 56:23, 57:3, 58:5, 58:17,
59:12, 59:16, 59:23, 60:3, 60:8, 63:14,
64:3, 66:2, 66:24, 68:8, 70:14, 70:17,
71:2, 71:12, 72:24, 74:17, 76:17,
78:13, 78:24, 79:7, 79:12, 79:17,
79:23, 80:19, 81:8, 83:1, 83:22, 84:16,
84:20, 85:13, 86:10, 86:20, 88:23,
89:5, 89:9, 90:11, 90:18, 92:1, 92:7,
92:22, 93:2, 93:6, 93:14, 93:23, 94:7,
94:22, 97:12, 98:5, 98:16, 99:18,
100:8, 100:18, 104:8, 104:24, 106:1,
106:13, 106:20, 107:3, 107:23,
108:10, 109:4, 109:15, 110:15, 111:5,
111:11, 111:18, 113:4, 113:8, 113:23,
114:18, 115:21, 116:11, 121:23,
122:14, 122:22, 124:7, 124:10,
125:16, 126:8, 127:3, 127:10, 127:18,
127:21, 128:10, 129:6, 130:8, 130:14,
130:21, 131:1, 131:5, 131:8, 138:18,
139:14, 139:21, 140:24, 141:15,
142:5, 142:8, 142:13, 142:22, 143:24,
144:6, 144:14, 145:9, 145:13, 145:16,
146:5, 146:10, 146:15, 146:22, 147:1,
147:8, 147:17, 147:23, 148:16,
149:12, 150:8, 151:2, 151:15, 151:19,
151:22, 153:4, 153:16, 154:20,
155:14, 156:23, 157:8, 157:11,
157:17, 157:24, 158:6, 159:10,
159:19, 159:23, 160:22, 161:2, 161:5,
161:9, 161:14, 161:24, 162:10,
162:20, 163:11, 163:17, 163:23,
164:18, 164:22, 165:3, 165:24, 166:4,
166:11, 166:19, 167:2, 167:9, 167:17,
168:1, 168:18, 169:22, 170:1, 171:12,
172:12, 173:3, 173:20, 176:10,
176:12, 177:7, 177:13, 177:21, 178:6,
178:11, 178:24, 179:4, 181:24, 182:7,
182:21, 183:6, 184:5, 184:14, 190:10,
190:17, 191:9, 191:22, 193:7, 193:10,
196:1, 196:3, 198:21, 198:23, 199:12,
199:18, 200:14, 200:16, 201:10,
201:19, 202:11, 203:24, 206:2,
206:22, 207:2, 207:17, 207:24,
208:14, 209:5, 209:8, 210:5, 210:18,
210:23, 211:4, 211:17, 211:20
**Court** [56] - 1:19, 6:10, 9:8, 12:1, 12:15,
14:14, 38:11, 38:12, 39:8, 39:10,
39:12, 39:19, 39:22, 41:7, 41:23,
42:10, 43:12, 52:16, 52:18, 53:10,
53:16, 54:11, 54:15, 54:16, 54:21,
59:6, 60:17, 60:22, 61:1, 61:17, 63:20,
63:23, 65:11, 69:17, 69:21, 70:5, 70:6,
77:8, 78:5, 80:9, 80:16, 91:6, 101:13,
114:14, 121:13, 124:15, 128:3, 155:2,
177:4, 179:8, 184:2, 192:7, 193:16,
209:23, 211:22
**court's** [1] - 50:17
**Court's** [30] - 4:10, 5:19, 7:20, 8:9,
12:18, 32:21, 39:21, 39:24, 41:18,
42:22, 43:18, 44:2, 44:7, 47:3, 47:11,

53:19, 59:18, 63:10, 70:22, 145:8,
150:16, 152:4, 152:6, 155:1, 155:10,
181:13, 182:3, 185:12, 185:17, 186:19
**courtesy** [1] - 211:11
**courtroom** [8] - 5:3, 199:1, 199:24,
200:4, 200:5, 200:11, 202:13, 204:10
**Courtroom** [1] - 1:14
**courts** [1] - 139:8
**cover** [1] - 131:12
**covered** [1] - 156:16
**Covidien** [1] - 168:8
**creation** [1] - 37:7
**credible** [1] - 102:24
**credibly** [1] - 101:15
**CRENSHAW** [25] - 2:15, 97:19, 98:8,
98:18, 99:23, 100:12, 100:21, 105:2,
106:6, 106:15, 114:20, 138:2, 139:23,
146:24, 147:19, 148:2, 148:21,
149:18, 150:12, 153:18, 157:16,
157:19, 190:11, 190:24, 191:20
**Crenshaw** [4] - 3:18, 75:3, 97:20,
143:14
**critical** [3] - 170:17, 170:23
**cross** [8] - 100:17, 140:11, 159:17,
160:6, 188:2, 198:2, 200:7, 210:3
**cross-examination** [1] - 140:11
**cross-examine** [4] - 100:17, 159:17,
160:6, 188:2
**crosslink** [2] - 52:7, 123:16
**crosslinked** [3] - 19:9, 60:24, 125:21
**crosslinking** [9] - 52:14, 52:21, 124:2,
124:4, 127:16, 128:5, 128:9, 179:17
**crosslinks** [5] - 121:18, 121:20, 122:20,
129:15, 130:19
**crucially** [1] - 190:1
**cumulative** [4] - 171:3, 190:14, 190:22,
191:6
**cure** [6] - 117:1, 119:22, 129:16, 170:20,
173:13, 174:24
**cured** [35] - 56:7, 58:2, 117:24, 118:6,
118:20, 119:5, 119:12, 119:14,
119:22, 120:4, 121:10, 121:15,
121:17, 122:1, 122:16, 122:19,
123:14, 123:20, 123:24, 124:1,
124:16, 125:20, 127:4, 127:11,
127:14, 128:8, 128:24, 129:3, 130:3,
130:18, 184:3
**curing** [1] - 129:16
**custodian** [1] - 174:9
**custodians** [2] - 161:23, 172:9
**cut** [3] - 6:1, 153:12, 201:1
**cuts** [1] - 87:2


**D**

**Dale** [3] - 212:7, 212:19, 212:20
**damages** [37] - 76:3, 76:5, 76:8, 76:19,
77:1, 77:3, 90:13, 90:21, 91:8, 91:11,
92:2, 92:13, 93:17, 95:2, 95:3, 95:14,

95:21, 97:2, 98:1, 98:11, 101:5, 103:4, 103:5, 103:18, 103:24, 104:1, 104:23, 105:8, 110:22, 112:23, 113:12, 114:8, 114:17, 136:4, 136:10, 188:24

**dark** [2] - 17:14, 140:13

**darkening** [2] - 21:3, 21:6

**darker** [4] - 18:20, 19:3, 19:17, 20:7

**date** [1] - 80:6

**dates** [1] - 72:18

**Daubert** [2] - 6:21, 8:9

**daughters** [1] - 71:11

**days** [1] - 93:8

**deadline** [2] - 93:2, 96:5

**deal** [8] - 73:7, 75:3, 94:16, 94:17, 95:10, 138:14, 156:8, 174:20

**dealing** [2] - 73:6, 92:7

**dealt** [1] - 76:6

**decide** [7] - 56:12, 82:12, 87:4, 133:6, 158:11, 186:13, 201:23

**decided** [11] - 58:4, 75:3, 78:12, 86:5, 96:10, 97:8, 114:15, 131:21, 177:1, 186:22, 187:12

**deciding** [4] - 85:1, 132:10, 189:21, 191:16

**decision** [29] - 79:20, 79:22, 83:7, 84:22, 85:1, 85:17, 86:17, 86:21, 96:4, 105:7, 108:11, 108:14, 132:2, 132:12, 132:21, 133:19, 133:23, 134:2, 134:5, 134:22, 136:11, 137:10, 182:13, 185:1, 194:23, 197:8, 197:24, 201:24

**decisions** [4] - 48:19, 84:11, 136:23, 176:14

**declaration** [1] - 173:7

**declarations** [3] - 163:6, 172:24, 197:17

**declined** [1] - 74:5

**deep** [3] - 45:13, 45:14, 154:10

**deeper** [1] - 18:19

**defeating** [1] - 95:4

**defend** [3] - 75:10, 86:12, 135:14

**defendant** [45] - 3:14, 5:11, 14:7, 48:2, 48:5, 48:16, 48:21, 49:6, 58:10, 63:15, 71:21, 72:13, 74:22, 90:23, 97:20, 111:21, 128:11, 133:4, 133:7, 133:16, 133:22, 134:20, 135:8, 135:9, 135:18, 144:24, 146:23, 147:4, 147:18, 151:8, 166:7, 175:14, 176:20, 182:15, 185:7, 185:20, 187:14, 187:15, 187:20, 193:7, 198:21, 201:6, 205:15, 211:2, 211:18

**Defendant** [2] - 1:10, 2:16

**defendant's** [15] - 4:11, 4:19, 7:18, 9:20, 10:10, 10:21, 11:1, 11:4, 71:3, 115:22, 131:19, 178:15, 182:11, 189:19, 201:10

**defendants** [43] - 5:17, 5:22, 7:9, 10:3, 27:12, 27:14, 49:24, 50:4, 50:16, 51:17, 58:18, 70:15, 70:20, 71:5, 72:18, 94:23, 97:13, 97:16, 102:12, 113:10, 114:19, 138:1, 141:16, 145:4, 146:10, 147:2, 157:8, 158:7, 166:20,

167:12, 174:7, 174:17, 176:22, 182:5, 182:23, 183:7, 183:14, 184:21, 186:16, 187:4, 196:1, 207:24, 209:8

**defending** [1] - 74:9

**defense** [4] - 41:16, 49:12, 74:3, 147:15

**defenses** [14] - 33:11, 50:12, 133:17, 133:21, 135:12, 147:24, 148:19, 149:14, 149:19, 150:2, 150:10, 151:6, 152:23, 155:13

**define** [1] - 155:17

**defined** [1] - 117:17

**definite** [3] - 52:2, 57:12, 124:6

**definitely** [1] - 126:20

**definition** [2] - 61:18, 62:14

**degradation** [8] - 70:10, 107:14, 107:15, 107:19, 107:21, 108:7, 109:1

**DELAWARE** [1] - 1:2

**Delaware** [3] - 1:16, 172:19, 212:1

**deliberation** [1] - 205:21

**demonstratives** [1] - 49:10

**denied** [3] - 141:24, 187:1, 190:7

**denying** [1] - 189:2

**dependent** [1] - 154:5

**deponents** [1] - 172:23

**depose** [6] - 144:24, 165:23, 171:17, 173:18, 174:20, 188:1

**deposed** [1] - 165:12

**deposit** [1] - 78:20

**deposition** [25] - 89:15, 117:23, 139:11, 140:23, 141:10, 157:15, 161:20, 163:5, 165:5, 168:13, 170:19, 171:4, 171:5, 171:7, 174:22, 175:1, 177:3, 196:5, 196:11, 196:12, 197:18, 203:9, 207:10, 208:6, 208:11

**depositions** [17] - 138:5, 138:10, 138:12, 138:20, 139:15, 141:3, 142:24, 143:7, 143:12, 143:20, 157:21, 161:13, 165:2, 172:17, 174:8, 203:6, 207:5

**deputy** [1] - 195:17

**describe** [1] - 39:17

**described** [4] - 29:6, 29:7, 32:20, 65:3

**description** [12] - 13:14, 16:10, 26:20, 35:2, 35:7, 35:11, 35:14, 148:6, 153:1, 153:7, 154:19, 155:5

**designate** [3] - 207:20, 208:18, 208:19

**designated** [3] - 175:6, 209:12

**designation** [1] - 208:12

**designations** [7] - 196:7, 196:16, 207:11, 207:15, 207:19, 208:8, 209:3

**designee** [2] - 169:11, 170:14

**despite** [1] - 102:15

**detail** [2] - 75:4, 112:19

**detailed** [2] - 75:23, 76:13

**details** [1] - 144:8

**determine** [3] - 53:7, 57:12, 126:13

**determined** [4] - 60:22, 124:24, 126:1, 126:22

**determining** [3] - 8:11, 42:9, 91:19

**developed** [1] - 136:6

**deviation** [1] - 128:21

**devices** [1] - 78:19

**devoting** [1] - 143:18

**dichotomy** [1] - 155:8

**differ** [1] - 179:12

**difference** [5] - 15:9, 16:7, 18:12, 72:2, 130:3

**different** [36] - 6:18, 8:19, 8:23, 13:5, 32:15, 45:12, 56:10, 57:20, 72:4, 72:12, 72:13, 72:16, 72:17, 81:2, 87:22, 88:2, 88:4, 101:3, 104:11, 116:20, 117:9, 117:18, 117:19, 118:4, 118:22, 119:24, 120:7, 120:19, 122:8, 122:10, 129:23, 132:13, 156:11, 157:21

**difficult** [1] - 166:18

**diligence** [1] - 171:23

**dimensional** [1] - 116:23

**dip** [2] - 98:9, 103:9

**dire** [3] - 204:2, 204:12, 206:14

**direct** [20] - 46:1, 49:5, 73:19, 88:23, 89:1, 89:6, 89:21, 90:2, 134:17, 145:20, 145:23, 146:3, 146:6, 171:18, 175:9, 194:2, 195:2, 198:2, 200:6, 210:3

**directed** [5] - 33:24, 34:2, 65:20, 78:19, 190:18

**directly** [7] - 46:4, 52:13, 53:15, 103:16, 168:7, 168:10, 188:23

**disagree** [5] - 54:22, 59:11, 73:15, 100:3, 183:14

**disallowed** [1] - 111:1

**disavowal** [1] - 150:2

**disavowaled** [1] - 154:3

**disc** [1] - 122:7

**discern** [1] - 162:23

**discerned** [1] - 64:12

**disclose** [10] - 104:8, 105:10, 114:23, 147:3, 148:14, 154:15, 154:21, 155:20, 170:8, 196:13

**disclosed** [32] - 13:16, 49:16, 50:15, 98:1, 98:12, 99:2, 100:2, 101:12, 102:17, 103:13, 103:15, 104:11, 104:13, 105:1, 148:1, 149:4, 149:8, 150:9, 154:11, 154:17, 156:5, 158:18, 161:10, 161:16, 174:4, 187:18, 188:4, 188:10, 193:24, 197:4, 197:20, 197:23

**disclosure** [10] - 13:15, 115:16, 147:22, 149:1, 150:14, 161:15, 164:15, 170:3, 172:14, 173:10

**disclosures** [11] - 153:23, 154:17, 158:19, 158:24, 159:1, 161:19, 170:6, 170:12, 170:13, 172:16, 174:3

**discovery** [4] - 80:6, 89:14, 101:13, 156:5

**discretion** [4] - 87:3, 132:13, 132:17, 203:19

**discretionary** [4] - 86:21, 132:11, 137:9, 178:18

**discriminate** [1] - 18:10
**discuss** [4] - 138:3, 194:15, 202:19, 206:11
**discussed** [2] - 157:4, 204:8
**discussion** [2] - 6:1, 184:18
**disfavors** [1] - 89:13
**dispositive** [1] - 134:14
**dispute** [25] - 6:11, 14:21, 33:17, 50:8, 64:7, 65:5, 66:9, 67:7, 83:23, 125:1, 126:4, 126:9, 126:24, 160:1, 169:23, 175:23, 183:20, 183:23, 192:2, 198:24, 199:3, 199:7, 199:13, 199:17, 210:10
**disputed** [4] - 6:8, 47:13, 184:8, 192:23
**disputes** [7] - 47:19, 65:6, 93:10, 192:22, 196:8, 202:19, 206:12
**disputing** [1] - 101:21
**DiStefano** [16] - 98:19, 99:7, 106:1, 106:5, 106:8, 107:4, 109:6, 109:7, 109:14, 185:10, 189:3, 189:6, 189:18, 189:23, 190:6, 190:7
**DiStefano's** [6] - 98:20, 99:14, 106:11, 107:12, 108:1, 108:23
**distinct** [1] - 73:10
**distinction** [3] - 66:20, 86:18, 119:18
**distinctions** [2] - 72:11, 120:10
**distorted** [1] - 45:1
**district** [4] - 84:11, 85:2, 139:8, 141:14
**DISTRICT** [2] - 1:2, 1:2
**District** [2] - 1:19, 85:5
**doable** [2] - 201:15, 201:17
**docketed** [1] - 204:2
**doctor** [3] - 106:10, 140:6, 177:2
**doctors** [1] - 138:5
**doctrine** [1] - 146:17
**document** [3] - 151:8, 172:18, 172:22
**documents** [21] - 125:3, 126:4, 126:6, 129:20, 140:10, 143:10, 143:14, 162:23, 163:1, 164:13, 168:10, 168:15, 169:13, 169:15, 169:19, 169:21, 172:5, 172:10, 173:7, 174:10
**dollar** [1] - 111:14
**done** [10] - 13:9, 33:7, 34:6, 51:10, 94:3, 95:11, 125:17, 137:5, 147:13, 182:10
**double** [2] - 98:9, 103:9
**doubt** [3] - 164:3, 202:2, 210:18
**down** [18] - 14:20, 17:15, 17:20, 20:16, 22:5, 56:22, 87:14, 112:21, 116:6, 117:4, 122:19, 124:3, 125:5, 128:18, 135:20, 143:16, 154:16, 201:1
**Dr** [90] - 8:14, 10:1, 12:5, 12:13, 13:1, 13:10, 14:11, 14:15, 15:3, 18:16, 28:17, 32:20, 33:4, 33:12, 36:16, 37:7, 37:8, 37:14, 37:18, 37:20, 37:23, 38:16, 39:13, 39:16, 39:22, 40:20, 44:1, 44:9, 44:10, 44:15, 44:16, 45:19, 46:1, 51:7, 51:23, 52:23, 53:5, 54:7, 57:16, 60:18, 68:20, 89:16, 98:19, 98:20, 99:4, 99:7, 99:10, 99:14, 106:3, 106:8, 106:11, 107:12, 108:8, 108:20

108:23, 109:5, 109:6, 109:7, 109:14, 117:21, 118:7, 119:1, 127:4, 127:5, 128:3, 128:13, 129:6, 129:17, 130:4, 138:5, 138:22, 138:23, 139:18, 156:10, 156:17, 157:13, 165:6, 165:13, 165:16, 165:23, 181:1, 181:16, 190:3, 190:6, 209:16
**drag** [2] - 64:16, 99:11
**dragging** [1] - 203:15
**drags** [1] - 123:23
**draw** [2] - 164:9, 205:9
**dropped** [2] - 110:3, 145:24
**dropping** [1] - 89:5
**Drs** [1] - 138:13
**due** [4] - 113:9, 134:18, 171:23, 185:4
**during** [13] - 75:21, 83:15, 101:12, 117:23, 137:16, 141:4, 144:15, 181:6, 193:1, 195:2, 202:22, 207:22, 209:19
**dye** [5] - 33:16, 72:9, 118:22, 153:24, 154:1

# E

**early** [1] - 132:15
**easiest** [1] - 158:12
**easy** [2] - 93:21, 170:12
**eat** [1] - 118:23
**effect** [3] - 98:9, 104:12, 164:7
**effectively** [2] - 59:10, 142:21
**efficient** [2] - 179:10, 188:13
**effort** [2] - 76:12, 173:18
**efforts** [1] - 176:3
**eight** [8] - 165:19, 165:23, 166:5, 166:16, 166:21, 205:18, 205:19, 205:21
**eighteen** [3] - 200:20, 200:24, 201:24
**either** [24] - 31:17, 35:23, 47:20, 51:19, 58:8, 74:19, 83:9, 83:20, 85:19, 95:18, 102:16, 124:17, 135:10, 137:20, 139:7, 156:6, 167:4, 192:4, 192:11, 195:4, 200:20, 204:17, 205:4, 210:7
**elect** [1] - 86:3
**electrophilic** [1] - 179:19
**eleven** [1] - 7:22
**elicit** [1] - 49:6
**elicited** [1] - 159:12
**email** [1] - 211:8, 211:9, 211:12
**embodiment** [4] - 16:8, 29:6, 29:15, 43:2
**embodiments** [1] - 27:7
**emerges** [1] - 210:24
**employee** [1] - 173:9
**employees** [1] - 209:11
**enable** [4] - 35:6, 35:12, 43:9, 43:17
**enabled** [2] - 16:9, 149:22
**enablement** [14] - 13:14, 13:24, 14:5, 26:18, 35:2, 43:20, 50:11, 126:6, 148:6, 153:2, 153:7, 153:11, 154:19, 155:6

**encompassed** [1] - 81:19
**encourage** [2] - 180:6, 198:9
**encouraged** [1] - 155:16
**end** [10] - 3:24, 7:11, 39:7, 54:18, 57:15, 109:19, 123:20, 130:18, 160:18, 195:5
**ended** [2] - 110:23
**energy** [2] - 90:8, 155:22
**engine** [1] - 35:6
**enormous** [1] - 96:24
**enter** [1] - 135:2
**entered** [1] - 96:8
**entering** [1] - 28:7
**entire** [1] - 210:2
**entirely** [4] - 87:8, 102:21, 134:4, 188:6
**entirety** [1] - 7:2
**entitled** [11] - 103:18, 103:22, 103:23, 104:4, 106:8, 110:22, 112:2, 112:6, 114:8, 114:13, 156:2
**enzymatic** [6] - 107:13, 107:15, 107:18, 107:20, 108:7, 108:24
**equals** [2] - 113:2
**equilibrated** [1] - 119:5
**equilibrium** [1] - 117:5
**equitable** [2] - 78:3, 78:6
**equivalents** [1] - 146:18
**erosion** [27] - 97:23, 98:11, 99:21, 100:1, 100:16, 101:8, 101:20, 103:8, 103:11, 103:24, 104:2, 104:6, 104:23, 105:8, 106:18, 106:21, 110:6, 110:11, 113:16, 114:11, 115:6, 115:8, 115:9, 115:13, 190:15, 191:4
**erred** [1] - 124:15
**ESI** [1] - 172:9
**especially** [2] - 148:3, 153:22
**ESQ** [9] - 2:3, 2:6, 2:6, 2:7, 2:11, 2:12, 2:14, 2:15, 2:15
**essentially** [12] - 6:7, 6:15, 11:7, 13:8, 15:16, 33:10, 34:4, 61:1, 72:1, 72:9, 111:9, 187:17
**estopped** [10] - 74:9, 75:18, 86:7, 133:17, 139:4, 139:10, 141:12, 141:17, 142:2, 142:14
**estoppel** [20] - 74:16, 75:1, 75:7, 78:4, 78:6, 82:21, 83:24, 84:4, 84:20, 85:8, 85:15, 86:1, 86:16, 87:2, 88:9, 88:11, 139:9, 142:19, 178:22
**estoppels** [2] - 84:17, 84:19
**estopping** [1] - 135:11
**Eva** [1] - 169:7
**eva** [1] - 171:20
**event** [5] - 103:3, 111:1, 157:4, 189:16, 191:2
**eventually** [3] - 102:22, 102:23, 129:10
**evidence** [40] - 4:9, 5:18, 5:23, 28:9, 47:14, 47:18, 47:22, 48:3, 48:17, 49:17, 56:8, 58:22, 70:19, 76:4, 87:11, 88:17, 88:18, 94:5, 95:16, 99:12, 106:19, 116:7, 117:10, 120:6, 129:1, 136:6, 141:13, 160:16, 168:3, 170:24, 172:6, 182:2, 184:16, 185:16, 186:3,

188:23, 193:13, 193:15, 195:4, 195:20
**exact** [3] - 112:16, 185:8, 185:9
**exactly** [16] - 14:24, 16:15, 16:22, 30:2, 46:13, 79:4, 112:20, 125:2, 148:12, 149:5, 154:7, 156:16, 165:12, 182:22, 184:21, 197:22
**examination** [10] - 140:11, 195:2, 198:1, 198:3, 198:8, 200:3, 203:1, 203:14, 203:16, 210:2
**examine** [4] - 100:17, 159:17, 160:6, 188:2
**examining** [1] - 198:14
**example** [5] - 12:7, 13:11, 30:12, 168:2, 179:10
**except** [3] - 57:9, 89:15, 112:7
**exceptions** [1] - 202:14
**exclude** [3] - 63:12, 100:5, 167:13
**excluded** [5] - 52:23, 100:7, 100:14, 100:19, 152:16
**excluding** [1] - 187:13
**exclusive** [1] - 16:16
**exclusively** [1] - 105:11
**exemplary** [2] - 84:11, 108:17
**exercise** [4] - 87:3, 132:12, 132:17, 205:13
**exhibit** [8] - 87:17, 193:12, 193:14, 193:17, 193:22, 195:4, 195:8
**exhibits** [8] - 49:8, 168:12, 193:11, 194:1, 194:4, 194:6, 195:22
**exist** [1] - 87:5
**expect** [4] - 36:15, 76:22, 203:18, 210:21
**expecting** [1] - 201:20
**expended** [1] - 90:7
**expense** [1] - 90:7
**experiment** [4] - 120:19, 120:23, 121:14, 123:3
**experiments** [4] - 33:4, 33:12, 33:22, 128:19
**expert** [63] - 6:16, 6:22, 8:14, 13:20, 15:6, 15:11, 23:7, 23:16, 23:23, 24:14, 24:22, 28:24, 32:20, 36:15, 39:20, 40:3, 43:21, 49:6, 49:16, 50:13, 59:20, 60:18, 64:22, 67:24, 68:2, 76:6, 103:22, 104:4, 106:5, 106:9, 108:21, 108:22, 117:10, 121:16, 123:1, 126:11, 128:7, 145:2, 147:21, 149:10, 149:15, 151:14, 152:11, 153:13, 154:2, 154:12, 156:5, 164:13, 168:11, 169:16, 169:17, 172:2, 174:10, 186:16, 186:17, 186:20, 189:6, 190:4, 196:21, 197:2, 197:12, 197:15, 197:17
**expert's** [6] - 6:13, 8:21, 21:4, 61:19, 68:11, 68:15
**experts** [29] - 7:2, 9:5, 9:20, 10:10, 10:21, 11:2, 11:4, 12:23, 14:18, 16:18, 17:18, 19:11, 20:18, 22:19, 28:2, 28:8, 34:5, 49:12, 59:9, 65:17, 91:19, 117:8, 122:9, 129:19, 145:1, 148:10, 149:21, 169:14, 172:2

**expire** [1] - 134:18
**expired** [1] - 135:4
**expires** [4] - 77:23, 78:7, 78:11, 97:8
**explain** [5] - 16:23, 70:3, 162:24, 185:14, 194:22
**explained** [4] - 38:13, 44:16, 97:5
**explicitly** [1] - 29:7
**explore** [1] - 204:23
**expounding** [1] - 101:3
**expressly** [3] - 174:3, 174:13, 175:21
**extent** [19] - 11:6, 34:21, 38:8, 38:21, 40:2, 53:18, 57:9, 57:21, 100:8, 105:4, 106:22, 109:19, 149:21, 152:5, 162:15, 177:21, 180:23, 182:13, 200:2
**extra** [1] - 197:16
**eye** [1] - 38:18

# F

**face** [4] - 83:19, 139:6, 142:6, 142:12
**faced** [1] - 75:12
**facing** [1] - 105:23
**fact** [17] - 57:10, 69:18, 76:2, 82:17, 85:2, 102:15, 137:23, 163:18, 164:12, 169:7, 173:17, 174:8, 188:16, 188:17, 189:11, 195:13, 209:10
**factor** [4] - 89:24, 132:20, 134:13, 135:22
**factors** [7] - 80:2, 169:23, 171:11, 171:16, 173:19, 176:5, 187:12
**facts** [1] - 192:10
**factual** [3] - 163:2, 163:9, 192:16
**factually** [2] - 192:21, 193:3
**fail** [1] - 73:17
**failure** [2] - 107:7, 174:12
**fair** [7] - 27:9, 61:8, 100:15, 135:7, 145:13, 164:15, 176:1
**fairly** [2] - 100:2, 197:20
**fairness** [1] - 144:10
**faith** [2] - 175:19, 188:14
**fall** [3] - 14:23, 112:14, 116:6
**falls** [3] - 18:7, 22:8, 29:18
**familiar** [1] - 24:13
**families** [1] - 94:16
**far** [5] - 73:18, 91:8, 140:2, 162:16, 172:1
**faulted** [1] - 14:14
**favor** [4] - 71:22, 92:9, 171:11, 187:13
**favorable** [1] - 129:2
**FDA** [1] - 91:17
**feature** [3] - 11:12, 69:2, 69:19
**features** [4] - 14:22, 67:20, 69:10, 180:4
**Federal** [13] - 77:7, 87:8, 89:18, 91:1, 92:10, 95:8, 96:7, 96:11, 96:12, 96:21, 134:23, 136:17, 137:3
**fellow** [1] - 173:18
**few** [3] - 93:8, 201:3, 211:4
**fewer** [1] - 81:18

201:9, 201:14, 201:16, 202:2
**fight** [1] - 65:9
**figure** [3] - 47:7, 111:14, 205:1
**figured** [1] - 97:16
**figuring** [1] - 157:2
**file** [2] - 96:2, 185:21
**filed** [3] - 78:18, 97:15, 163:7
**filling** [1] - 208:11
**film** [1] - 125:7
**final** [19] - 10:18, 24:24, 30:6, 79:22, 83:7, 84:21, 85:17, 86:17, 86:18, 89:17, 96:3, 96:8, 132:1, 196:15, 202:17, 202:19, 206:3, 206:8
**finality** [1] - 79:19
**finally** [1] - 101:8
**financial** [1] - 199:11
**findings** [4] - 55:11, 77:11, 77:12, 132:24
**fine** [7] - 35:17, 166:1, 166:4, 166:23, 193:8, 208:6, 210:13
**finish** [3] - 98:16, 203:15, 205:7
**firm** [3] - 3:16, 165:7, 165:8
**firmer** [1] - 118:15
**first** [42] - 4:6, 5:16, 7:10, 9:9, 11:8, 14:9, 17:16, 18:4, 24:5, 34:12, 35:23, 36:5, 36:10, 47:11, 48:8, 56:12, 59:2, 68:1, 71:8, 71:24, 75:5, 83:2, 97:14, 97:23, 99:19, 101:4, 106:21, 107:4, 109:17, 112:19, 128:17, 138:1, 158:22, 168:23, 176:19, 187:2, 199:2, 200:22, 204:4, 204:7, 206:9, 210:5
**firsthand** [1] - 162:5
**fit** [1] - 198:17
**five** [21] - 52:8, 53:3, 54:3, 54:4, 57:13, 72:10, 73:24, 88:20, 101:2, 102:3, 113:2, 116:9, 122:1, 122:17, 123:21, 124:21, 125:4, 129:4, 185:6, 185:19, 201:5
**five-page** [1] - 185:19
**fixed** [1] - 65:12
**flag** [2] - 157:5, 199:4
**floating** [1] - 117:1
**Flombaum** [8] - 14:15, 37:7, 37:20, 44:9, 44:15, 51:7, 156:10, 157:9
**Flombaum's** [4] - 37:14, 37:23, 39:22, 156:17
**focus** [1] - 116:1
**folds** [1] - 66:21
**folks** [1] - 157:14
**follow** [3] - 30:11, 205:1
**follow-up** [1] - 205:1
**followed** [1] - 42:15
**following** [2] - 10:6, 19:24
**footnote** [3] - 105:5, 115:17, 191:1
**FOR** [1] - 1:2
**forced** [1] - 207:21
**forcing** [1] - 152:20
**foregoing** [1] - 212:9
**forever** [2] - 142:1, 144:1

**forget** [1] - 173:22
**forgotten** [1] - 148:18
**form** [19] - 17:24, 53:4, 54:2, 75:24, 95:20, 116:16, 116:23, 119:17, 125:6, 125:24, 127:15, 130:2, 130:6, 130:20, 151:9, 179:18, 183:22, 204:13, 206:8
**formally** [1] - 195:3
**formation** [2] - 55:2, 130:5
**formed** [19] - 52:1, 52:8, 53:3, 60:23, 61:4, 63:7, 69:23, 122:20, 124:2, 124:23, 125:13, 125:15, 126:13, 126:16, 126:21, 128:7, 129:14, 129:15, 130:20
**forming** [5] - 73:24, 106:9, 129:23, 130:1, 179:21
**forms** [10] - 57:13, 57:18, 72:10, 116:9, 119:3, 119:4, 124:21, 125:4, 127:9, 129:20
**formulate** [2] - 174:22, 176:13
**forth** [4] - 80:23, 113:14, 182:18, 205:15
**forward** [29] - 88:24, 89:15, 95:6, 96:16, 110:10, 133:22, 135:10, 135:24, 138:6, 138:10, 138:20, 139:16, 139:19, 140:14, 140:22, 141:10, 142:23, 143:1, 143:8, 143:20, 147:24, 148:9, 153:7, 157:21, 170:17, 180:6, 183:8, 184:13, 192:9
**foundation** [2] - 172:4, 193:19
**four** [17] - 35:6, 48:1, 48:15, 48:19, 49:2, 49:20, 50:1, 50:6, 101:2, 117:12, 118:13, 118:21, 128:21, 143:23, 145:23, 209:14, 210:14
**four-and-a-half** [1] - 117:12
**fourteen** [1] - 205:10
**fourth** [3] - 22:14, 23:1, 40:24
**frame** [1] - 120:1
**frames** [1] - 125:18
**free** [3] - 155:16, 202:7, 208:23
**freely** [1] - 198:6
**freestanding** [1] - 116:20
**Friday** [3] - 6:7, 185:5, 185:19
**front** [7] - 66:11, 74:10, 75:19, 92:15, 96:6, 132:18, 133:18
**full** [8] - 14:18, 15:17, 16:8, 27:2, 27:7, 98:5, 134:15, 135:17
**fully** [35] - 56:7, 58:2, 97:7, 117:24, 118:5, 118:6, 118:20, 119:4, 119:12, 119:14, 119:22, 120:4, 121:10, 121:15, 121:17, 122:1, 122:16, 122:19, 123:14, 123:20, 123:24, 124:1, 124:15, 124:16, 125:20, 127:4, 127:11, 127:14, 128:8, 128:24, 129:3, 130:3, 130:18, 184:3
**functional** [7] - 52:6, 52:19, 119:7, 119:15, 128:6, 179:19, 179:20
**fundamental** [1] - 75:14
**fundamentally** [1] - 175:4
**future** [2] - 117:5, 135:21

# G

**game** [1] - 102:11
**gaps** [2] - 38:20, 38:24
**gel** [39] - 56:9, 58:2, 116:10, 116:11, 116:12, 117:7, 117:15, 117:17, 117:22, 118:2, 118:5, 118:17, 119:12, 119:21, 119:22, 120:6, 120:12, 120:14, 121:7, 121:10, 122:6, 122:10, 122:12, 123:2, 124:16, 124:17, 128:16, 128:19, 128:20, 129:1, 129:20, 130:1, 130:5, 130:6, 130:17, 148:24, 184:3
**general** [5] - 42:15, 58:20, 162:8, 198:1, 199:18
**generally** [1] - 4:1
**generic** [1] - 19:2
**genuine** [1] - 174:17
**German** [2] - 138:5, 177:2
**Germany** [5] - 138:23, 140:7, 140:9, 165:10, 166:17
**given** [10] - 92:22, 135:17, 140:18, 147:5, 158:1, 171:5, 171:6, 174:7, 178:22, 208:23
**gosh** [1] - 160:19
**govern** [1] - 192:8
**graduations** [1] - 71:10
**grant** [5] - 100:11, 106:2, 131:21, 132:5, 134:12
**granted** [2] - 187:1, 187:2
**granting** [7] - 89:13, 106:21, 155:15, 187:6, 189:1, 189:9, 191:17
**graphic** [2] - 120:1, 130:19
**GRAVES** [40] - 2:14, 5:12, 71:7, 71:13, 73:3, 74:21, 77:5, 78:16, 79:4, 79:10, 79:15, 79:21, 94:24, 104:14, 141:19, 142:7, 142:11, 142:15, 143:6, 166:3, 166:23, 176:21, 177:24, 178:10, 178:17, 193:8, 196:2, 198:22, 199:14, 200:15, 201:12, 202:10, 203:23, 206:1, 206:21, 208:2, 209:9, 210:13, 211:3, 211:19
**Graves** [1] - 3:17
**great** [3] - 92:3, 112:18, 155:23
**greater** [5] - 50:22, 135:24, 136:3, 136:13
**greatly** [2] - 73:11, 77:18
**green** [33] - 17:13, 17:14, 17:16, 17:17, 17:21, 17:22, 18:5, 18:18, 18:19, 18:20, 19:3, 19:17, 21:3, 21:6, 21:12, 21:21, 38:19, 38:20, 38:23, 38:24, 39:18, 45:13, 45:14, 45:18, 45:24, 46:2, 46:8, 46:9, 46:10, 154:10, 154:11
**greens** [1] - 22:8
**GRIMM** [15] - 2:11, 3:12, 158:9, 159:15, 159:21, 160:5, 163:15, 163:18, 164:3, 167:7, 168:21, 169:24, 170:4, 173:5, 176:11

**Grimm** [5] - 3:13, 163:13, 167:6, 168:19, 173:3
**grossly** [1] - 14:10
**ground** [3] - 74:6, 75:11, 83:14
**grounds** [5] - 88:20, 141:23, 142:9, 147:22, 150:14
**groups** [7] - 52:6, 52:19, 119:7, 119:15, 128:6, 179:19, 179:20
**guess** [5] - 5:15, 35:19, 37:3, 87:1, 88:14, 106:4, 138:18, 149:10, 176:19
**guidance** [1] - 61:18
**guide** [1] - 95:23
**guys** [1] - 93:15

# H

**half** [4] - 117:12, 131:9, 171:19, 175:10
**hand** [6] - 47:17, 72:8, 77:17, 95:9, 204:15, 212:15
**handle** [2] - 192:22, 195:22
**handling** [1] - 141:3
**hang** [1] - 67:22
**happily** [1] - 154:16
**happy** [4] - 98:13, 137:24, 143:20, 153:19
**harbor** [1] - 85:7
**hard** [2] - 137:2, 137:3
**harm** [2] - 97:10, 135:6
**harmful** [1] - 64:21
**Harrison** [30] - 158:7, 158:17, 158:22, 159:7, 160:4, 160:20, 161:8, 161:22, 162:7, 162:8, 162:18, 163:7, 163:19, 164:8, 167:4, 167:10, 167:16, 167:20, 167:22, 168:4, 168:6, 168:14, 169:12, 169:20, 171:17, 171:22, 173:1, 173:24, 174:6, 175:18
**Hartlage** [1] - 165:13
**hat** [1] - 67:22
**Hawkins** [2] - 212:7, 212:19, 212:20
**head** [4] - 74:16, 152:14, 170:8, 175:20
**headings** [3] - 13:10, 58:14, 149:11
**health** [1] - 165:18
**hear** [16] - 14:7, 53:22, 71:5, 79:23, 87:11, 88:5, 88:17, 94:5, 97:13, 109:13, 124:10, 132:23, 137:24, 145:3, 172:3, 200:19
**heard** [15] - 24:12, 41:4, 63:24, 79:11, 98:19, 128:23, 141:19, 143:21, 148:14, 150:15, 168:24, 169:19, 177:3, 191:9, 208:23
**hearing** [2] - 135:15, 182:15
**hearsay** [2] - 163:23, 172:3
**heavily** [1] - 90:1
**held** [10] - 12:1, 12:15, 52:18, 71:17, 71:20, 114:10, 139:8, 141:23, 149:7, 178:21
**help** [11] - 6:7, 41:21, 47:4, 73:4, 151:3, 164:19, 182:22, 183:2, 183:12, 184:20, 199:23

helped [1] - 168:15
helpful [7] - 56:2, 151:5, 151:12, 184:13, 198:10, 200:7, 201:18
helps [1] - 199:22
hereby [3] - 48:11, 192:8, 212:9
hereunto [1] - 212:14
herring [1] - 35:3
high [1] - 170:22
higher [1] - 170:9
highlighted [1] - 33:8
highly [3] - 77:13, 78:8, 96:9
histories [2] - 82:7, 82:19
history [3] - 75:13, 81:23, 82:4
hit [2] - 54:17, 152:14
hitting [1] - 123:12
hold [1] - 183:10
holding [1] - 176:24
holiday [1] - 211:7
honestly [1] - 173:22
Honor [208] - 3:5, 3:13, 5:9, 5:12, 6:3, 6:15, 7:16, 7:24, 8:5, 9:3, 9:17, 11:20, 11:22, 12:4, 13:1, 13:6, 14:8, 15:3, 17:1, 17:9, 26:4, 27:18, 28:16, 29:21, 30:3, 32:13, 33:6, 33:20, 34:16, 34:23, 35:20, 36:7, 36:13, 37:6, 38:8, 40:12, 44:6, 45:7, 46:20, 47:1, 51:2, 51:21, 53:9, 53:23, 55:9, 58:3, 58:13, 58:16, 59:3, 60:2, 60:9, 61:22, 63:13, 65:22, 68:7, 68:10, 69:10, 69:18, 70:6, 70:16, 71:8, 71:13, 74:2, 75:21, 76:2, 77:6, 79:4, 79:11, 80:1, 81:11, 82:24, 83:3, 84:3, 84:24, 85:24, 86:15, 87:23, 89:8, 91:3, 92:5, 92:24, 93:4, 93:20, 94:13, 94:24, 96:14, 97:11, 97:20, 100:21, 101:1, 106:7, 106:16, 106:17, 107:12, 108:5, 108:16, 108:18, 108:19, 110:4, 111:16, 114:21, 115:15, 122:6, 123:8, 124:9, 124:12, 127:23, 128:12, 131:4, 138:2, 138:21, 139:20, 139:23, 141:11, 144:4, 144:13, 145:6, 145:15, 146:9, 146:12, 146:24, 147:7, 147:10, 147:16, 147:20, 148:22, 150:13, 150:20, 151:4, 151:12, 151:18, 152:3, 152:11, 152:19, 153:18, 154:24, 156:15, 157:7, 157:10, 157:16, 158:5, 158:10, 158:16, 158:21, 159:16, 159:22, 160:13, 161:1, 161:7, 161:13, 163:16, 164:10, 164:15, 165:1, 165:22, 166:3, 166:10, 166:24, 167:8, 169:14, 169:24, 171:15, 176:9, 176:11, 176:22, 178:18, 179:3, 179:23, 180:6, 181:23, 182:20, 183:5, 183:16, 190:9, 190:11, 190:21, 190:24, 191:21, 193:5, 193:9, 195:24, 196:2, 198:20, 198:22, 199:7, 199:15, 200:13, 200:15, 200:23, 201:13, 202:9, 202:10, 203:22, 203:23, 205:24, 206:1, 206:20, 206:21, 207:4, 207:16, 207:23, 209:2, 209:7, 211:3, 211:16, 211:19

Honor's [6] - 8:5, 71:19, 100:13, 138:11, 142:18, 191:8
HONORABLE [1] - 1:18
hope [1] - 59:21
hopefully [4] - 17:11, 155:21, 185:22, 192:20
hoping [2] - 26:6, 200:4
host [1] - 138:9
hour [4] - 131:10, 171:19, 175:10, 201:17
hours [9] - 118:13, 118:21, 127:17, 200:18, 200:20, 200:22, 200:24, 201:3, 201:9
human [4] - 12:8, 12:11, 13:24, 38:18
hung [1] - 24:9
hurdles [1] - 97:10
Hydrogel [1] - 118:21
hydrogel [71] - 12:12, 13:19, 19:7, 19:8, 31:14, 38:18, 38:19, 52:1, 52:8, 53:2, 53:4, 54:2, 55:2, 56:7, 57:12, 60:6, 60:16, 60:21, 60:23, 61:11, 61:24, 62:10, 63:5, 63:6, 65:14, 67:19, 68:12, 68:18, 69:22, 72:10, 73:24, 116:9, 118:1, 118:6, 118:21, 119:3, 119:4, 119:5, 119:12, 119:14, 120:4, 121:11, 121:15, 121:17, 122:1, 122:16, 122:19, 122:21, 123:14, 123:15, 123:17, 123:20, 124:1, 124:21, 125:6, 125:11, 126:13, 126:16, 128:7, 129:3, 129:20, 129:23, 130:1, 130:2, 130:18, 178:3, 179:18, 179:20, 183:22, 184:3
hydrogels [6] - 11:13, 33:13, 59:2, 59:10, 65:16, 78:21
HyperBranch [7] - 3:14, 73:20, 73:22, 74:8, 90:5, 124:14, 157:11
HYPERBRANCH [1] - 1:9
HyperBranch's [3] - 125:3, 165:13, 207:5

## I

idea [4] - 86:4, 86:11, 116:8, 166:20
identification [1] - 157:12
identifications [1] - 48:1
identified [24] - 4:24, 5:6, 5:24, 6:15, 12:4, 28:10, 32:12, 33:3, 35:24, 41:1, 48:9, 70:12, 144:22, 145:2, 158:23, 159:2, 160:11, 164:8, 172:9, 172:17, 174:2, 174:6, 179:12, 181:10
identifies [1] - 68:21
identify [14] - 6:7, 9:4, 49:7, 49:9, 62:21, 140:1, 153:20, 155:10, 159:5, 174:12, 175:21, 185:8, 192:2, 194:3
identifying [4] - 151:10, 152:7, 152:22, 152:24
imagine [3] - 135:1, 137:2, 210:8
immediate [2] - 125:8, 125:9
impact [7] - 77:2, 79:19, 92:16, 97:2, 137:17, 178:8, 182:16

impacted [3] - 90:21, 154:6, 182:14
implicated [2] - 137:15, 159:24
implication [1] - 40:5
implicitly [1] - 161:16
important [7] - 17:3, 69:10, 120:10, 160:12, 188:23, 190:2, 197:10
importantly [1] - 188:22
impossible [2] - 95:19, 135:1
imprecision [1] - 98:2
IN [2] - 1:2, 212:14
INC [2] - 1:5, 1:9
INCEPT [1] - 1:6
incision [1] - 123:11
inclined [1] - 179:7
include [3] - 15:8, 115:5, 196:10
included [1] - 64:1
includes [3] - 16:16, 40:5, 60:15
including [4] - 73:10, 73:24, 96:24, 178:21
inclusion [3] - 29:20, 77:8, 99:2
inconsistent [44] - 4:9, 5:19, 7:9, 12:18, 13:7, 22:15, 27:12, 32:7, 32:21, 39:10, 39:20, 41:18, 43:21, 47:14, 48:4, 48:23, 49:18, 50:17, 50:24, 51:18, 53:19, 56:6, 58:11, 58:22, 59:17, 63:10, 63:16, 67:4, 69:11, 69:16, 70:21, 177:8, 180:9, 180:11, 180:18, 181:12, 182:2, 182:24, 184:16, 184:22, 185:11, 185:16, 186:18
inconvenience [1] - 209:22
indefinite [10] - 7:19, 55:13, 64:9, 66:23, 117:20, 130:17, 153:2, 153:10, 180:15, 180:19
indefiniteness [26] - 7:16, 13:21, 51:15, 51:23, 52:11, 53:1, 53:11, 53:17, 53:24, 54:19, 54:24, 55:21, 56:14, 64:14, 65:9, 120:17, 122:12, 122:15, 148:6, 148:23, 153:8, 154:18, 155:4, 178:14, 182:9
independent [1] - 66:8
indicate [5] - 13:18, 19:9, 31:1, 34:20, 44:18
indicated [4] - 89:13, 162:3, 165:21, 171:21
indicates [5] - 23:8, 39:1, 40:15, 46:3, 163:20
indicating [3] - 10:19, 109:5, 111:12
indication [2] - 25:4, 30:23
indirect [1] - 73:18
indirectly [1] - 71:20
individual [1] - 170:8
individually [1] - 204:17
inevitable [1] - 103:4
information [15] - 140:8, 148:15, 160:21, 161:11, 161:18, 162:4, 162:5, 163:2, 163:10, 167:1, 167:24, 168:17, 174:14, 174:21, 199:11
infringe [8] - 11:13, 12:14, 15:12, 15:14, 16:5, 16:6, 16:12, 26:2
infringed [5] - 71:20, 76:7, 76:9, 95:4,

132:6

**infringement** [62] - 10:24, 14:13, 19:18, 23:17, 35:21, 40:23, 41:12, 44:21, 45:9, 47:20, 48:8, 49:21, 55:12, 56:13, 57:6, 57:9, 57:21, 57:24, 73:17, 73:18, 73:20, 74:10, 75:12, 77:2, 77:9, 77:11, 77:21, 78:1, 80:17, 80:20, 87:4, 88:24, 89:2, 89:4, 89:6, 91:5, 92:16, 95:21, 97:4, 98:22, 103:19, 104:3, 114:4, 114:9, 115:23, 121:13, 133:9, 133:13, 145:19, 145:20, 145:23, 146:3, 146:6, 146:18, 146:21, 148:8, 153:21, 154:22, 155:8, 178:14, 180:3, 189:6

**infringer** [3] - 86:12, 133:5, 133:7

**infringes** [1] - 90:23

**infringing** [3] - 102:8, 110:20, 112:15

**inherently** [1] - 136:2

**initial** [9] - 5:21, 10:18, 24:23, 30:6, 117:16, 122:13, 128:14, 161:18, 192:1

**initiates** [1] - 116:17

**injunction** [4] - 77:20, 78:10, 97:3, 97:7

**injunctive** [1] - 135:2

**inordinate** [1] - 136:22

**input** [2] - 162:24, 163:1

**inside** [9] - 34:24, 42:1, 42:3, 50:8, 98:10, 100:1, 101:9, 104:2, 117:1

**inspection** [5] - 53:7, 124:24, 126:1, 126:12, 126:22

**instance** [3] - 170:21, 171:11, 203:12

**instead** [1] - 105:11

**institute** [1] - 74:6

**instituted** [2] - 85:12, 85:16

**institution** [4] - 79:13, 79:16, 141:22, 142:9

**institutions** [1] - 141:23

**instruct** [3] - 50:11, 92:14, 136:7

**instructed** [1] - 91:4

**instruction** [5] - 92:20, 92:23, 93:8, 93:11, 122:23

**instructions** [13] - 75:23, 76:13, 76:20, 91:9, 91:10, 118:14, 192:24, 202:16, 202:17, 202:20, 206:3, 206:9, 206:14

**Integra** [4] - 110:21, 173:9, 209:11

**INTEGRA** [2] - 1:4, 1:5

**integrity** [3] - 62:2, 62:13, 69:9

**intend** [10] - 5:22, 7:4, 49:8, 49:10, 59:17, 146:17, 194:1, 196:10, 196:14, 208:9

**intended** [1] - 113:11

**intending** [1] - 12:16

**intends** [3] - 147:4, 187:16, 191:10

**intention** [1] - 209:18

**inter** [2] - 83:5, 83:16

**interest** [4] - 83:8, 89:19, 135:6, 208:11

**interesting** [2] - 71:15, 132:7

**International** [3] - 83:12, 85:3, 172:20

**interpret** [1] - 52:3

**interpretation** [5] - 52:12, 52:17, 83:24, 99:6, 151:24

**interpretations** [2] - 149:20, 152:3

**interpreted** [3] - 8:14, 44:10, 60:11

**interpreting** [1] - 148:10

**interrogatories** [1] - 158:20

**interrogatory** [2] - 159:3, 161:22

**interrupting** [1] - 203:13

**introduce** [3] - 3:9, 48:3, 207:9

**introduced** [1] - 168:12

**introducing** [1] - 187:5

**invalid** [11] - 13:13, 13:23, 16:10, 26:11, 43:13, 77:12, 78:1, 83:14, 95:7, 95:22, 151:11

**invalidate** [1] - 86:13

**invalidated** [3] - 76:23, 83:19, 142:17

**invalidating** [1] - 74:23

**invalidity** [48] - 7:1, 12:22, 13:5, 16:13, 26:9, 26:10, 26:24, 27:16, 28:6, 30:1, 30:8, 30:11, 30:15, 32:6, 33:11, 41:12, 41:14, 43:4, 47:21, 48:7, 49:23, 50:6, 57:9, 74:3, 88:17, 88:18, 88:20, 133:10, 133:14, 133:17, 133:21, 138:7, 142:10, 147:3, 147:12, 148:3, 148:5, 150:20, 150:22, 150:24, 151:6, 152:23, 155:9, 155:13, 180:20, 180:24, 181:2

**inventors** [1] - 72:16

**investigation** [1] - 167:23

**involved** [4] - 66:21, 81:23, 168:7, 168:10

**IPR** [8] - 74:6, 74:14, 84:14, 85:12, 86:6, 132:24, 142:19, 178:22

**irrelevant** [1] - 106:12

**irreparable** [2] - 97:10, 135:6

**issue** [79] - 6:21, 23:5, 34:23, 37:22, 38:1, 43:7, 46:16, 54:19, 54:24, 55:2, 56:21, 57:19, 58:2, 59:5, 60:7, 61:21, 65:14, 66:5, 67:10, 69:4, 70:12, 78:21, 80:17, 82:20, 84:6, 88:12, 91:5, 96:17, 98:14, 98:17, 98:19, 108:2, 108:20, 109:17, 109:18, 118:9, 121:22, 123:22, 131:18, 134:7, 134:11, 142:19, 144:18, 145:4, 146:13, 147:6, 148:4, 148:23, 154:5, 155:1, 155:4, 157:21, 158:15, 159:11, 159:14, 159:16, 160:9, 160:17, 164:11, 167:3, 173:23, 177:3, 178:3, 178:14, 180:7, 180:17, 182:9, 184:11, 186:14, 189:20, 191:17, 192:3, 198:24, 206:16, 207:4, 208:16, 209:5, 209:9, 210:24

**issued** [1] - 209:13

**issues** [76] - 4:2, 4:4, 4:23, 5:1, 5:5, 5:16, 6:8, 26:19, 32:9, 32:13, 32:14, 34:1, 34:7, 46:19, 51:14, 56:4, 57:4, 57:10, 58:16, 72:12, 73:11, 73:13, 73:22, 80:4, 80:9, 80:12, 80:14, 88:6, 90:14, 93:13, 94:19, 97:22, 99:9, 99:12, 106:12, 116:4, 119:10, 131:15, 133:8, 134:8, 135:5, 136:19, 137:13, 137:18, 137:22, 138:3, 138:9, 138:12, 143:19, 144:23, 148:13, 150:6

150:24, 152:6, 152:13, 154:5, 154:16, 157:4, 176:14, 176:17, 176:19, 178:20, 180:9, 181:11, 182:11, 182:12, 182:17, 183:21, 186:1, 191:24, 192:16, 192:17, 193:3, 204:8, 206:22

**IT** [2] - 165:7, 165:8

**itemized** [1] - 147:16

**itself** [3] - 74:9, 88:15, 188:10

**Iwanicki** [4] - 3:10, 32:16, 34:11, 45:18

**IWANICKI** [56] - 2:6, 7:15, 7:24, 8:4, 8:23, 9:13, 9:16, 9:23, 10:7, 10:11, 11:3, 11:19, 12:3, 12:24, 34:16, 35:20, 36:7, 36:20, 37:2, 37:5, 38:7, 40:12, 41:5, 41:20, 41:23, 42:8, 42:21, 43:6, 43:23, 51:2, 51:5, 51:12, 51:21, 57:8, 58:13, 60:2, 60:9, 68:10, 107:11, 108:5, 108:16, 109:8, 147:7, 147:10, 151:4, 151:18, 151:21, 152:2, 153:9, 154:24, 179:2, 179:5, 182:6, 182:19, 183:4, 190:9

## J

**Jacobs** [11] - 84:6, 88:12, 138:5, 138:13, 139:4, 139:18, 141:17, 142:6, 157:13, 181:3, 201:7

**Jarosz** [23] - 98:7, 98:9, 99:24, 100:15, 101:1, 101:16, 101:23, 102:15, 102:19, 103:2, 103:7, 109:20, 115:6, 163:8, 168:12, 187:4, 187:7, 187:9, 187:17, 188:1, 188:9, 188:11, 189:2

**Jarosz'** [1] - 191:19

**Jarosz's** [12] - 97:23, 98:13, 99:20, 100:19, 101:13, 102:13, 103:14, 104:1, 105:6, 105:9, 163:3, 190:12

**Jell** [3] - 118:10, 118:12, 118:21

**Jell-O** [3] - 118:10, 118:12, 118:21

**JEREMY** [1] - 2:12

**Jeremy** [1] - 3:15

**Jersey** [1] - 85:5

**jive** [1] - 39:13

**JMOL** [2] - 78:2, 78:6

**JOHN** [1] - 2:6

**John** [1] - 3:10

**joint** [1] - 145:18

**jointly** [1] - 192:7

**JONATHAN** [1] - 2:14

**Jonathan** [1] - 3:17

**JR** [1] - 2:6

**judge** [3] - 57:15, 124:19, 132:4

**Judge** [29] - 1:19, 6:21, 31:24, 32:17, 45:2, 53:6, 55:10, 55:19, 57:10, 57:23, 58:3, 65:2, 65:21, 71:14, 91:21, 116:7, 118:18, 120:3, 124:13, 125:23, 126:19, 128:1, 130:9, 133:2, 136:22, 137:3, 183:11, 184:7, 189:9

**judge's** [2] - 176:23, 179:24

**judgment** [21] - 4:20, 38:14, 45:20, 55:7,

57:6, 57:21, 58:7, 68:3, 77:21, 77:24,
80:17, 96:8, 115:23, 124:14, 127:2,
130:11, 132:5, 134:7, 179:9, 189:10,
203:3
**jump** [1] - 5:7
**juror** [6] - 38:15, 204:19, 204:22, 205:2,
205:3, 205:5
**jurors** [2] - 204:14, 205:10
**jury** [73] - 3:22, 43:19, 50:11, 70:3,
72:20, 72:22, 73:12, 74:10, 75:11,
75:19, 75:23, 76:19, 77:24, 82:3, 82:9,
82:13, 86:22, 87:4, 87:10, 87:16, 88:1,
88:5, 90:20, 90:22, 91:3, 92:14, 92:19,
93:10, 93:16, 93:22, 94:4, 94:21,
95:14, 95:23, 106:10, 109:8, 109:13,
121:15, 121:24, 122:15, 132:18,
132:23, 133:3, 135:11, 135:15, 136:4,
136:7, 136:9, 140:16, 143:7, 148:19,
192:12, 192:15, 192:24, 193:22,
194:7, 194:16, 195:1, 198:11, 198:15,
202:14, 202:19, 203:24, 204:3, 204:6,
204:9, 204:18, 205:9, 205:11, 205:18,
205:22, 205:23, 206:3
**jury's** [2] - 77:3, 133:20
**justice** [1] - 89:19

## K

**Karen** [1] - 3:7
**KAREN** [1] - 2:3
**keep** [4] - 20:23, 44:12, 129:12, 203:21
**keeping** [1] - 97:1
**kept** [1] - 140:12
**kind** [5] - 7:3, 117:16, 119:13, 164:10,
171:9
**King** [1] - 1:15
**Kingdom** [1] - 165:14
**knocked** [1] - 112:14
**knocking** [1] - 6:24
**knowledge** [4] - 160:16, 168:16, 169:1,
169:5
**known** [8] - 84:14, 85:9, 110:24, 113:10,
117:7, 161:8, 174:7
**knows** [3] - 57:17, 152:12, 169:14

## L

**lack** [12] - 13:13, 13:14, 13:23, 15:15,
26:18, 26:19, 95:5, 153:1, 153:2,
155:5
**lacking** [1] - 190:16
**lacks** [2] - 14:5, 153:11
**laid** [1] - 105:18
**language** [8] - 9:19, 52:3, 75:5, 83:4,
85:15, 124:19, 124:20, 183:17
**large** [2] - 150:21
**last** [5] - 15:1, 170:17, 171:9, 175:17,
211:5
**late** [4] - 134:3, 170:3, 170:24, 176:2

**law** [4] - 141:14, 141:21, 180:4, 203:4
**lawsuit** [1] - 107:17
**lay** [1] - 193:19
**layer** [5] - 17:17, 17:18, 17:21, 17:22,
18:7
**layers** [2] - 17:15, 124:3
**laying** [1] - 172:4
**learn** [1] - 164:4
**learned** [2] - 164:1, 174:21
**least** [20] - 3:24, 32:8, 36:23, 41:15,
48:16, 49:4, 58:23, 90:13, 92:3, 92:13,
114:17, 136:10, 148:16, 186:10,
193:21, 197:21, 199:23, 201:22,
204:20, 210:22
**leave** [4] - 118:12, 130:7, 198:3, 198:5
**leaves** [1] - 205:3
**left** [15] - 12:23, 35:19, 37:23, 38:2,
61:19, 69:24, 73:15, 74:3, 80:15, 91:6,
109:19, 113:5, 133:13, 167:3, 205:9
**legal** [2] - 192:17, 192:22
**legislative** [1] - 75:13
**lengthy** [2] - 7:11, 171:5
**Lennox** [3] - 159:8, 160:6, 168:13
**Lennox's** [1] - 163:6
**Lenox** [1] - 209:16
**LEONARD** [1] - 1:18
**less** [10] - 72:10, 77:23, 96:19, 103:21,
118:14, 128:16, 134:12, 136:18,
171:7, 171:18
**letter** [5] - 185:4, 185:7, 185:20, 185:22,
202:5
**letters** [1] - 176:3
**level** [1] - 64:12
**liability** [4] - 89:3, 145:19, 146:4, 146:7
**license** [2] - 91:12, 91:18
**licenses** [1] - 169:3
**LIFESCIENCES** [2] - 1:4, 1:5
**LifeTech** [1] - 89:22
**light** [6] - 32:19, 77:14, 129:2, 146:13,
170:24, 206:4
**likely** [10] - 4:22, 78:5, 95:7, 96:9, 96:19,
134:12, 136:9, 136:18, 136:24, 143:3
**limine** [9] - 4:17, 100:6, 108:3, 108:19,
186:1, 186:24, 188:18, 189:5, 189:21
**limit** [3] - 86:5, 180:2, 198:1
**limitation** [15] - 7:14, 28:22, 38:3, 42:11,
59:13, 60:15, 81:1, 81:4, 107:13,
107:20, 107:21, 109:3, 179:14,
179:15, 183:24
**limitations** [18] - 8:12, 9:21, 9:22, 36:6,
42:17, 43:11, 64:1, 80:23, 81:6, 81:7,
81:15, 81:18, 81:19, 82:9, 82:18,
151:10, 152:24, 179:16
**limited** [5] - 62:14, 109:1, 152:12, 188:3,
202:14
**Limited** [1] - 85:4
**limiting** [1] - 45:3
**limits** [1] - 47:6
**line** [3] - 18:23, 22:24, 92:1

**linked** [1] - 34:17
**liquid** [1] - 121:4
**list** [23] - 4:23, 12:10, 108:17, 108:18,
149:9, 151:6, 153:14, 153:19, 157:13,
157:18, 157:23, 158:3, 159:9, 161:14,
161:17, 161:19, 161:21, 164:17,
174:1, 175:18, 193:12, 193:13, 209:11
**listed** [2] - 10:6, 201:4
**listening** [1] - 29:3
**lists** [2] - 87:17, 87:18
**literal** [1] - 146:20
**litigating** [1] - 78:10
**litigation** [4] - 78:14, 80:5, 86:5, 134:24
**live** [11] - 99:10, 99:15, 109:9, 109:13,
208:4, 208:5, 208:10, 209:10, 209:12,
210:1, 210:15
**LLC** [2] - 1:5, 1:6
**LLP** [2] - 2:11, 2:14
**logistics** [1] - 166:24
**Looby** [1] - 211:10
**look** [54] - 5:4, 6:20, 6:22, 14:13, 14:24,
15:6, 18:9, 22:10, 33:7, 33:11, 34:22,
35:13, 38:4, 44:14, 45:23, 54:9, 57:17,
64:19, 66:7, 66:10, 77:22, 84:4, 84:10,
89:20, 91:21, 110:19, 114:23, 127:8,
129:11, 135:20, 149:10, 151:14,
183:13, 197:23
**looked** [8] - 17:6, 19:11, 19:12, 22:6,
54:7, 65:2, 120:1, 132:14
**looking** [20] - 19:6, 21:24, 22:2, 31:1,
31:19, 31:24, 33:2, 33:6, 33:16, 38:5,
38:22, 40:4, 40:7, 53:8, 60:12, 63:12,
90:3, 147:9, 147:11, 153:4
**looks** [4] - 18:2, 29:9, 115:15, 132:13
**lose** [2] - 68:3, 141:9
**loses** [1] - 197:6
**lost** [40] - 67:11, 75:8, 75:9, 101:5,
101:6, 101:7, 101:18, 101:22, 102:1,
102:9, 102:22, 103:4, 104:19, 110:21,
111:1, 111:3, 112:1, 112:2, 112:5,
112:11, 112:15, 114:5, 114:13,
114:14, 114:16, 115:4, 115:5, 115:7,
115:10, 115:12, 191:2, 191:3
**loud** [1] - 204:11
**Lowman** [25] - 8:14, 12:5, 12:13, 13:1,
14:15, 15:3, 32:20, 33:4, 33:12, 36:16,
37:8, 37:18, 40:20, 44:10, 44:16, 46:1,
53:5, 54:7, 57:16, 128:3, 129:6,
129:17, 130:4, 156:10, 157:9
**Lowman's** [9] - 10:1, 13:10, 14:11,
28:17, 39:13, 44:1, 51:23, 52:23,
68:20
**LTD** [1] - 2:5

## M

**Machines** [1] - 172:20
**Magistrate** [5] - 91:21, 116:7, 118:18,
120:3, 124:13

**magistrate** [6] - 110:7, 124:19, 124:22, 132:4, 176:23, 179:24
**main** [1] - 210:14
**majority** [2] - 139:8, 141:13
**manage** [1] - 199:24
**managed** [1] - 86:13
**manner** [1] - 138:15
**March** [1] - 78:23
**market** [4] - 101:6, 101:11, 104:16, 112:12
**marketing** [2] - 164:6, 170:9
**marks** [1] - 143:15
**Maserati** [3] - 35:9, 35:11, 35:12
**match** [12] - 10:17, 11:10, 12:8, 12:11, 14:1, 20:21, 24:23, 25:7, 25:19, 46:15, 156:22
**matched** [1] - 25:22
**matching** [14] - 8:17, 30:5, 37:1, 37:6, 37:10, 37:17, 37:19, 39:3, 39:14, 42:3, 46:6, 51:8, 156:19
**material** [4] - 30:14, 120:16, 170:2, 183:19
**materials** [4] - 17:10, 52:1, 53:4, 190:5
**matter** [11] - 5:21, 56:6, 76:2, 81:10, 95:2, 95:13, 119:23, 180:4, 192:1, 203:4, 212:12
**Mays** [16] - 18:16, 45:19, 99:4, 99:10, 106:8, 108:8, 108:20, 109:5, 117:21, 118:7, 119:1, 127:4, 127:5, 181:1, 185:10, 190:3
**Mays'** [9] - 38:16, 39:16, 60:18, 62:17, 68:20, 106:3, 128:13, 181:9, 181:16
**mean** [33] - 8:12, 13:3, 16:11, 21:11, 31:6, 35:4, 39:11, 54:2, 54:13, 60:21, 61:15, 61:23, 64:23, 69:21, 72:11, 75:9, 85:17, 118:10, 119:6, 121:21, 124:19, 127:11, 127:13, 127:15, 128:20, 142:13, 149:10, 153:10, 155:7, 167:17, 187:2, 191:16, 202:12
**meaning** [3] - 84:12, 92:17, 127:14
**means** [18] - 9:7, 32:2, 61:2, 61:7, 61:20, 64:21, 67:9, 69:23, 70:4, 75:7, 107:15, 107:19, 119:4, 122:19, 124:22, 129:23, 174:16, 193:17
**meant** [8] - 42:9, 42:10, 58:4, 60:23, 67:8, 125:23, 127:14, 157:5
**meantime** [1] - 134:23
**measure** [2] - 118:5, 122:8
**measured** [1] - 117:8
**measurement** [3] - 120:12, 120:14, 121:10
**measures** [1] - 122:9
**measuring** [1] - 117:18
**mechanics** [1] - 5:2
**mechanism** [1] - 155:19
**mediation** [1] - 143:17
**MEDICAL** [1] - 1:9
**meet** [15] - 28:21, 29:18, 76:10, 107:20, 121:11, 126:4, 126:5, 131:11, 155:16, 156:24, 183:1, 196:19, 202:3, 204:17

208:20
**meeting** [1] - 183:24
**meets** [2] - 15:17, 126:24
**Memorial** [1] - 211:7
**memorize** [1] - 197:11
**memory** [19] - 8:17, 10:18, 11:10, 12:13, 14:1, 24:23, 25:19, 30:5, 37:1, 37:6, 37:10, 37:17, 37:20, 39:4, 42:3, 46:6, 46:14, 51:8, 156:20
**mention** [3] - 73:16, 73:17, 189:17
**mentioned** [5] - 27:6, 163:8, 163:9, 164:12, 196:6
**Merit** [1] - 212:7
**meritorious** [2] - 41:16, 107:10
**merits** [2] - 35:18, 99:2
**met** [1] - 3:16
**method** [1] - 73:23
**metric** [2] - 117:16, 119:24
**metrics** [2] - 31:18, 120:7
**Mettler** [10] - 89:16, 138:6, 138:13, 138:22, 138:23, 139:18, 157:13, 165:6, 165:16, 165:23
**might** [14] - 35:17, 70:24, 77:6, 79:2, 82:23, 94:9, 98:2, 143:2, 171:6, 174:14, 177:18, 177:19, 184:12, 201:23
**millimeter** [6] - 17:19, 18:6, 19:14, 20:4, 20:13, 22:9
**millimeters** [6] - 18:8, 22:1, 22:20, 23:9, 25:9, 25:16
**mind** [5] - 37:11, 37:17, 129:12, 201:23, 204:20
**minded** [1] - 133:6
**minimize** [2] - 76:14, 209:22
**minimum** [1] - 132:22
**minute** [1] - 175:17
**mischaracterizing** [1] - 14:11
**missing** [1] - 25:11
**misunderstand** [1] - 78:15
**misunderstood** [1] - 11:20
**mix** [5] - 116:13, 116:17, 117:3, 117:6, 120:20
**mixed** [1] - 52:20
**mixing** [8] - 52:5, 54:1, 54:10, 54:15, 54:21, 55:1, 56:19, 120:18
**mixture** [2] - 18:18, 116:16
**modification** [1] - 192:9
**moment** [5] - 131:2, 148:18, 170:18, 173:23, 193:21
**month** [6] - 143:7, 143:21, 144:3, 175:24, 176:4, 189:14
**months** [3] - 19:23, 77:23, 143:12
**moot** [2] - 139:2, 142:21
**mooted** [1] - 145:7
**morning** [16] - 3:1, 3:4, 3:6, 3:11, 3:12, 3:15, 3:24, 79:24, 131:10, 131:15, 137:14, 144:19, 184:19, 194:7, 194:11, 204:3
**MORRIS** [1] - 2:11

**most** [6] - 4:22, 7:15, 55:5, 129:2, 175:4, 182:16
**mostly** [2] - 37:15, 114:21
**motion** [37] - 4:11, 4:15, 37:14, 38:14, 71:3, 78:10, 79:24, 85:3, 97:7, 97:14, 97:18, 97:21, 99:17, 100:5, 100:9, 100:23, 103:7, 106:14, 106:22, 107:1, 107:5, 108:3, 108:19, 124:13, 131:3, 131:19, 131:22, 186:23, 186:24, 187:1, 188:18, 189:5, 189:19, 189:21, 189:22, 190:6, 205:5
**motions** [6] - 4:16, 78:2, 78:6, 156:13, 185:24, 203:3
**move** [9] - 9:11, 50:22, 55:18, 79:3, 94:10, 97:13, 163:12, 180:6, 205:6
**moving** [2] - 154:13, 184:13
**MR** [298] - 3:12, 5:9, 5:12, 6:2, 6:5, 7:15, 7:24, 8:4, 8:23, 9:13, 9:16, 9:23, 10:7, 10:11, 11:3, 11:19, 12:3, 12:24, 14:8, 15:16, 16:1, 16:6, 16:15, 16:21, 17:8, 19:19, 20:1, 21:5, 21:10, 21:14, 22:18, 23:3, 23:6, 23:21, 24:3, 24:8, 24:19, 25:2, 25:14, 25:20, 26:3, 26:7, 26:14, 26:17, 27:1, 27:5, 27:17, 27:22, 28:12, 28:16, 29:3, 30:2, 30:10, 31:7, 32:11, 34:16, 35:20, 36:7, 36:20, 37:2, 37:5, 38:7, 40:12, 41:5, 41:20, 41:23, 42:8, 42:21, 43:6, 43:23, 44:5, 44:8, 47:10, 51:2, 51:5, 51:12, 51:21, 53:23, 55:8, 55:15, 55:23, 56:15, 57:1, 57:8, 58:13, 59:1, 59:15, 59:20, 60:2, 60:5, 60:9, 63:18, 64:6, 66:4, 67:5, 68:10, 70:16, 70:23, 71:7, 71:13, 73:3, 74:21, 77:5, 78:16, 79:4, 79:10, 79:15, 79:21, 80:1, 80:22, 81:11, 83:2, 84:2, 84:18, 84:23, 85:24, 87:7, 89:1, 89:8, 89:11, 90:16, 91:3, 92:5, 92:19, 92:24, 93:4, 93:9, 93:19, 94:2, 94:12, 94:24, 97:19, 98:8, 98:18, 99:23, 100:12, 100:21, 104:14, 105:2, 106:6, 106:15, 106:17, 106:24, 107:11, 108:5, 108:16, 109:8, 109:18, 110:18, 111:8, 111:15, 111:24, 113:7, 113:13, 114:2, 114:20, 116:3, 116:12, 122:3, 122:18, 122:24, 124:8, 124:12, 125:19, 126:11, 127:5, 127:13, 127:20, 127:23, 128:12, 129:9, 130:13, 130:16, 130:22, 131:4, 138:2, 138:21, 139:17, 139:23, 141:2, 141:19, 142:7, 142:11, 142:15, 143:6, 144:4, 144:12, 145:6, 145:11, 145:15, 146:2, 146:8, 146:12, 146:20, 146:24, 147:7, 147:10, 147:19, 148:2, 148:21, 149:18, 150:12, 151:4, 151:18, 151:21, 152:2, 153:9, 153:18, 154:24, 156:15, 157:7, 157:10, 157:16, 157:19, 158:4, 158:9, 159:15, 159:21, 160:5, 160:24, 161:4, 161:7, 161:12, 161:17, 162:2, 162:14, 162:22, 163:15, 163:18, 164:3, 165:1, 165:5, 166:3, 166:9, 166:13, 166:23, 167:7,

167:11, 167:21, 168:6, 168:21,
169:24, 170:4, 171:15, 172:15, 173:5,
176:9, 176:11, 176:21, 177:11,
177:17, 177:24, 178:10, 178:17,
179:2, 179:5, 182:6, 182:19, 183:4,
183:16, 184:11, 190:9, 190:11,
190:21, 190:24, 191:20, 193:5, 193:8,
195:24, 196:2, 198:20, 198:22, 199:6,
199:14, 200:13, 200:15, 200:23,
201:12, 202:9, 202:10, 203:22,
203:23, 205:24, 206:1, 206:20,
206:21, 207:1, 207:3, 207:23, 208:2,
209:2, 209:7, 209:9, 210:13, 210:20,
211:3, 211:15, 211:19
**MS** [2] - 3:4, 3:7
**multiple** [4] - 20:22, 31:10, 163:4, 210:7
**must** [12] - 10:13, 10:15, 10:17, 12:8,
12:11, 23:24, 24:16, 24:23, 26:23,
30:18, 37:9, 103:20

## N

**name** [2] - 161:9, 173:6
**named** [1] - 172:8
**narrow** [8] - 14:16, 39:23, 42:17, 42:24,
50:15, 154:16, 155:17
**narrowed** [8] - 14:20, 22:16, 23:11,
23:13, 40:22, 44:11, 44:12, 150:24
**narrower** [4] - 40:19, 42:18, 43:11
**narrowing** [2] - 22:20, 196:7
**narrows** [1] - 11:23
**nature** [1] - 167:19
**nauseam** [1] - 208:13
**necessarily** [8] - 16:12, 39:3, 39:16,
45:22, 52:21, 100:14, 148:4, 154:14
**necessary** [8] - 16:2, 106:22, 160:17,
169:20, 199:5, 200:1, 205:1, 207:21
**need** [52] - 8:20, 10:10, 11:8, 11:10,
20:8, 22:10, 38:8, 39:3, 40:3, 54:5,
57:11, 61:7, 76:24, 77:20, 78:2, 79:1,
80:2, 109:7, 119:10, 122:1, 122:16,
142:20, 145:5, 151:17, 151:23,
160:20, 162:1, 163:12, 164:19,
178:15, 182:21, 184:19, 184:24,
185:1, 185:3, 185:23, 186:9, 186:11,
193:4, 193:19, 195:7, 196:13, 197:20,
198:4, 201:8, 203:7, 204:3, 204:8,
206:3, 206:10, 206:17, 210:12
**needs** [1] - 22:9
**network** [1] - 116:24
**Networks** [1] - 84:15
**never** [15] - 85:19, 92:15, 96:20, 97:3,
98:12, 102:18, 105:21, 115:8, 147:13,
147:14, 158:18, 158:24, 159:2,
160:10, 161:10
**new** [8] - 87:16, 92:2, 101:14, 101:16,
105:17, 160:10, 160:17, 168:19
**New** [2] - 85:5, 212:2
**next** [18] - 20:2, 20:3, 20:5, 21:16,

21:17, 23:7, 55:18, 60:20, 84:24, 93:8,
119:19, 137:2, 143:7, 143:21, 145:16,
185:19, 205:6
**nice** [4] - 17:16, 17:17, 17:21, 17:22
**NICHOLS** [1] - 2:11
**Nichols** [1] - 3:13
**night** [1] - 15:1
**nil** [1] - 97:2
**nobody** [3] - 156:3, 202:15, 202:17
**non** [2] - 198:11, 203:13
**noncumulative** [1] - 168:3
**none** [3] - 9:8, 58:3, 70:11
**noninfringement** [39] - 6:17, 7:1, 12:9,
12:10, 12:17, 12:22, 13:4, 15:20,
16:14, 16:20, 18:3, 23:12, 23:19, 24:2,
24:18, 25:1, 25:3, 25:13, 27:15, 28:5,
29:24, 30:7, 30:16, 32:6, 36:1, 36:4,
36:19, 36:21, 37:1, 45:4, 45:21, 46:13,
48:7, 48:11, 48:13, 48:18, 48:22, 49:3,
189:10
**nonmoving** [2] - 80:7, 90:4
**nonvalid** [1] - 103:19
**Notary** [1] - 212:8
**notations** [1] - 105:21
**note** [2] - 150:19, 205:16
**noted** [5] - 87:23, 102:7, 103:3, 128:3,
195:18
**notes** [2] - 62:20, 212:11
**nothing** [17] - 33:5, 35:10, 36:3, 45:7,
46:5, 46:14, 62:21, 62:23, 65:3, 69:4,
69:11, 95:22, 97:9, 102:5, 211:14,
211:15, 211:17
**notice** [5] - 96:5, 111:21, 172:21,
192:12, 199:19
**November** [15] - 97:9, 101:17, 103:15,
104:11, 110:16, 110:18, 110:19,
111:19, 113:8, 114:3, 114:22, 115:6,
134:19, 135:4, 188:6
**nucleophilic** [1] - 179:19
**numb** [1] - 123:4
**number** [20] - 10:12, 10:13, 10:16, 11:5,
12:9, 48:14, 48:15, 93:10, 110:6,
111:5, 111:9, 127:6, 136:23, 137:13,
152:12, 171:22, 176:16, 195:8
**numbers** [7] - 98:12, 102:5, 104:17,
105:11, 115:2, 122:11, 185:9
**numerous** [2] - 126:7, 172:24

## O

**o'clock** [5] - 131:12, 144:8, 144:15,
164:20, 165:15
**oath** [2] - 140:18, 140:19
**object** [16] - 28:7, 49:13, 50:13, 56:20,
71:1, 73:2, 106:3, 109:5, 138:19,
158:7, 164:2, 167:14, 187:5, 195:10,
195:11, 195:12
**objected** [4] - 157:12, 193:12, 193:18,
195:14

**objecting** [2] - 195:15, 203:14
**objection** [15] - 54:12, 71:19, 121:24,
122:15, 162:19, 164:10, 191:13,
194:18, 194:19, 194:20, 196:17,
196:24, 197:2, 197:4, 197:6
**objectionable** [1] - 203:13
**objections** [32] - 4:19, 44:15, 49:11,
55:6, 55:20, 57:5, 115:22, 116:6,
134:10, 156:10, 175:15, 176:23,
177:15, 178:12, 179:8, 179:24, 184:7,
185:24, 189:9, 193:20, 194:4, 194:5,
194:11, 194:12, 194:15, 195:1,
195:12, 196:8, 196:21, 196:23,
197:14, 203:2
**objective** [1] - 64:24
**obscured** [1] - 18:24
**obscuring** [1] - 154:9
**obscurity** [1] - 19:1
**observable** [26] - 8:12, 9:1, 9:6, 9:14,
13:18, 18:13, 18:15, 18:19, 19:2, 20:5,
20:9, 20:12, 25:6, 28:21, 31:13, 33:1,
34:18, 34:19, 38:11, 38:18, 39:1,
40:13, 45:10, 46:3, 154:8, 179:13
**observation** [1] - 128:4
**observe** [2] - 37:12, 57:14
**obstruct** [1] - 188:13
**obtaining** [1] - 168:8
**obvious** [6] - 31:3, 71:18, 75:17, 96:21,
141:23, 181:4, 181:5
**obviously** [6] - 30:24, 49:4, 54:21,
130:8, 202:24, 203:11
**obviousness** [7] - 74:8, 74:12, 88:13,
88:15, 141:22, 150:9, 151:16
**occur** [2] - 21:6, 21:24
**occurred** [2] - 128:6, 175:24
**occurring** [2] - 21:9, 21:11
**occurs** [1] - 52:21
**odd** [1] - 173:12
**odds** [2] - 92:8, 92:11, 136:3, 136:11,
137:5
**OF** [2] - 1:2, 212:5
**offer** [15] - 5:18, 5:23, 16:18, 23:18,
24:1, 24:6, 26:6, 28:9, 36:24, 41:3,
59:17, 111:6, 113:11, 195:3, 195:7
**offered** [10] - 27:15, 36:4, 48:10, 48:12,
70:21, 79:5, 107:6, 180:10, 180:18,
193:15
**offering** [8] - 24:4, 27:14, 27:20, 27:21,
35:23, 41:6, 69:11, 184:16
**offhand** [1] - 137:20
**office** [5] - 71:18, 74:5, 74:8, 74:24,
75:10, 75:16
**officers** [2] - 199:23, 207:6
**often** [2] - 170:16, 198:10
**old** [2] - 105:21, 141:7
**once** [20] - 25:22, 30:20, 94:12, 112:13,
120:21, 120:24, 186:10, 193:14,
195:5, 196:20, 198:5, 200:5, 200:6,
204:9, 204:22, 205:3, 205:7, 210:8
**one** [137] - 6:11, 6:23, 7:16, 8:3, 8:19,

9:7, 10:2, 10:5, 10:12, 12:9, 13:11, 13:20, 13:22, 14:4, 16:7, 17:1, 17:19, 18:5, 18:7, 19:14, 20:4, 20:13, 21:14, 21:15, 22:8, 22:20, 23:9, 25:8, 25:16, 26:5, 26:11, 27:6, 28:17, 29:10, 29:14, 30:5, 31:20, 35:14, 36:10, 36:22, 37:7, 39:17, 43:7, 44:9, 48:9, 49:20, 50:1, 50:5, 51:3, 53:14, 56:22, 57:16, 57:17, 59:2, 59:12, 60:10, 61:6, 61:13, 64:23, 66:14, 66:15, 68:22, 69:2, 69:5, 70:1, 71:23, 74:3, 75:2, 76:7, 78:22, 79:2, 79:15, 80:3, 81:2, 84:5, 86:2, 88:9, 91:13, 91:18, 95:3, 96:6, 102:19, 105:14, 108:20, 110:23, 112:7, 116:4, 117:11, 119:23, 120:9, 120:13, 120:16, 121:4, 121:5, 122:7, 124:17, 125:13, 127:6, 127:24, 128:17, 130:9, 131:15, 132:9, 134:2, 134:13, 136:24, 138:2, 138:16, 139:1, 139:19, 140:23, 141:24, 155:21, 158:10, 158:11, 161:4, 161:23, 166:21, 168:9, 168:14, 168:22, 172:8, 180:14, 184:4, 184:11, 187:24, 193:24, 196:23, 199:23, 202:20, 204:21, 205:6, 207:4, 209:9

ones [7] - 45:15, 55:6, 77:17, 137:19, 172:7, 180:12, 182:8

open [5] - 5:1, 93:15, 133:6, 134:9, 200:5

opening [3] - 60:18, 128:15, 199:24

openings [1] - 202:24

operation [1] - 193:13

operative [2] - 105:22, 124:20

opine [2] - 28:8, 40:3

opined [2] - 45:3, 114:1

opining [4] - 12:5, 13:4, 14:18, 15:14

opinion [78] - 6:13, 7:18, 8:22, 9:5, 13:12, 13:20, 16:14, 21:4, 24:7, 24:18, 26:22, 33:21, 37:8, 37:9, 37:16, 37:19, 40:20, 41:24, 42:2, 42:6, 43:24, 45:19, 46:2, 47:14, 47:22, 48:3, 51:24, 53:11, 53:12, 55:21, 61:20, 99:5, 99:21, 100:1, 100:19, 101:13, 101:14, 102:3, 102:20, 102:21, 102:22, 103:3, 103:12, 104:5, 104:9, 104:10, 104:11, 104:15, 104:24, 106:4, 106:9, 106:12, 107:18, 108:8, 108:23, 108:24, 109:2, 109:21, 110:12, 110:13, 110:16, 110:19, 111:12, 111:19, 112:3, 113:11, 115:12, 184:16, 186:4, 187:7, 187:10, 187:13, 187:17, 188:9, 188:20, 190:13

opinions [49] - 4:9, 7:1, 8:24, 9:24, 12:22, 13:8, 13:21, 19:13, 26:6, 26:15, 27:6, 34:15, 36:4, 36:9, 36:17, 36:19, 39:22, 40:21, 45:9, 46:24, 47:18, 49:14, 62:3, 65:20, 68:11, 68:15, 69:11, 70:19, 98:22, 99:8, 100:16, 101:3, 101:18, 101:19, 102:5, 102:16, 105:14, 107:14, 110:17, 163:3, 180:10, 181:5, 181:12, 182:2, 185:8,

185:9, 185:16, 187:22, 188:3

opportunity [5] - 102:16, 159:13, 170:7, 187:24, 189:19

oppose [10] - 93:24, 97:17, 97:21, 99:16, 99:22, 100:11, 100:12, 100:20, 100:23, 201:15

opposed [1] - 43:20

option [1] - 79:2

order [46] - 4:1, 4:24, 5:2, 6:6, 6:20, 8:5, 10:22, 10:24, 12:14, 15:23, 23:17, 28:7, 28:21, 30:17, 32:2, 32:17, 38:6, 40:23, 47:12, 48:11, 51:6, 57:11, 76:10, 87:18, 91:24, 108:23, 119:11, 120:3, 138:4, 139:12, 141:11, 144:23, 145:3, 156:14, 186:12, 189:12, 189:15, 191:23, 192:3, 192:9, 193:14, 193:18, 194:3, 196:6, 200:18, 210:12

ordered [1] - 186:11

orderly [1] - 188:13

orders [1] - 150:16

ordinary [7] - 14:4, 35:15, 61:6, 61:13, 68:22, 69:5, 70:1

organization [1] - 172:22

original [5] - 102:13, 105:6, 105:16, 190:22, 191:1

originally [1] - 60:14

otherwise [3] - 44:1, 133:21, 164:15

ought [1] - 73:7

outcome [1] - 75:6

outlined [1] - 143:14

outside [17] - 20:15, 20:16, 50:9, 50:14, 101:9, 102:4, 102:10, 102:21, 105:12, 109:24, 111:10, 113:1, 115:14, 115:19, 149:22, 155:6, 194:16

outsized [1] - 150:22

outstanding [1] - 176:17

outweighs [1] - 173:18

overall [1] - 188:19

overlap [1] - 201:6

overlapping [1] - 183:17

overlaps [1] - 72:6

overlook [1] - 211:13

overnight [1] - 201:21

overreach [1] - 7:4

overrule [1] - 179:23

overruling [1] - 179:7

overview [3] - 98:15, 98:17, 204:1

own [8] - 13:3, 73:21, 117:10, 123:1, 125:3, 126:11, 128:7, 167:23

owner [1] - 96:2

## P

p.m [2] - 165:10, 211:22

pace [1] - 50:22

page [11] - 9:10, 13:12, 15:1, 33:23, 84:10, 105:5, 145:2, 185:6, 185:19, 205:8

pages [4] - 7:22, 156:13, 157:5, 185:21

paid [2] - 91:13, 187:8

paint [2] - 156:20, 156:21

paper [2] - 109:11

paragraph [11] - 62:24, 105:5, 110:19, 111:6, 111:20, 114:3, 115:1, 115:3, 115:17, 128:18, 185:9

paragraphs [5] - 9:4, 12:5, 32:11, 33:2, 70:11

Parallel [1] - 84:15

parameters [1] - 199:19

paraphrasing [1] - 24:12

part [55] - 7:16, 15:19, 16:12, 24:17, 24:24, 25:2, 25:10, 26:24, 27:2, 27:13, 28:4, 28:6, 29:10, 29:12, 29:23, 29:24, 30:6, 30:8, 30:15, 32:6, 32:17, 42:19, 43:5, 45:1, 47:21, 56:19, 56:20, 60:6, 61:9, 63:20, 64:18, 83:10, 84:4, 86:10, 90:6, 94:10, 99:16, 100:19, 106:4, 107:1, 121:12, 127:6, 133:23, 155:23, 159:11, 159:14, 159:16, 178:18, 183:12, 187:1, 187:3, 194:22, 205:22

partes [2] - 83:5, 83:16

particular [23] - 8:24, 10:2, 12:6, 14:21, 20:14, 20:21, 43:14, 46:18, 47:13, 48:1, 49:17, 50:13, 59:5, 67:14, 74:6, 134:18, 141:24, 162:4, 172:7, 173:15, 191:17, 192:3, 194:12

particularly [6] - 9:4, 77:8, 77:14, 143:9, 187:15, 199:10

parties [14] - 6:9, 50:12, 56:2, 87:16, 90:6, 93:9, 95:13, 132:9, 134:3, 134:17, 155:16, 165:24, 189:15, 192:2

parties' [1] - 38:13

partner [1] - 3:14

parts [3] - 84:2, 113:15, 116:24

party [9] - 80:7, 83:8, 84:13, 90:4, 173:13, 194:17, 197:1, 207:8

PASCALE [3] - 2:3, 3:4, 3:7

Pascale [2] - 3:7, 71:9

pass [1] - 82:23

passing [1] - 205:14

paste [1] - 153:12

patent [59] - 4:13, 4:21, 7:19, 26:11, 35:4, 66:10, 71:5, 71:18, 72:3, 72:21, 74:5, 74:7, 74:23, 74:24, 75:10, 75:16, 80:15, 81:24, 83:6, 83:20, 86:13, 86:23, 87:13, 87:15, 88:7, 93:17, 94:13, 96:2, 98:23, 99:6, 99:8, 107:22, 108:9, 114:7, 115:24, 124:18, 131:21, 136:16, 137:10, 137:16, 139:6, 141:23, 142:6, 142:12, 142:16, 145:21, 146:1, 146:19, 168:9, 171:23, 176:15, 181:16, 181:19, 186:9, 189:7, 189:10

Patent [1] - 126:15

patentable [1] - 85:21, 132:3

patents [12] - 64:11, 75:15, 78:19, 82:5, 82:6, 91:12, 93:20, 94:15, 107:17, 109:3, 171:8, 171:24

patents-in-suit [2] - 91:12, 171:24

patient [12] - 60:14, 61:23, 62:1, 62:11, 63:19, 67:2, 67:8, 68:14, 68:19, 68:24, 69:8, 185:13
patients [1] - 64:22
pedantic [1] - 118:11
pending [13] - 54:12, 54:20, 56:16, 57:5, 71:18, 75:2, 85:2, 85:5, 85:6, 89:17, 176:22, 177:5, 185:24
Pennypack [5] - 169:23, 171:10, 171:16, 173:19, 187:11
people [4] - 141:7, 165:7, 165:8, 210:14
per [7] - 198:5, 200:6, 200:7, 200:18, 200:20, 203:7
percent [4] - 101:24, 102:4, 113:2, 115:13
percentage [4] - 104:17, 104:18, 104:20, 203:7
percentages [1] - 203:10
percipient [1] - 164:9
perform [1] - 13:24
performed [2] - 33:4, 73:23
perhaps [5] - 42:23, 55:5, 56:12, 79:13, 132:8
period [3] - 141:8, 160:19, 179:21
permanent [3] - 77:20, 78:10, 97:3
permit [1] - 170:18
permitted [4] - 156:18, 158:17, 187:9, 190:4
person [5] - 123:9, 138:24, 166:22, 169:15, 198:16
personal [2] - 160:16, 168:16
personnel [1] - 140:9
perspective [4] - 54:14, 54:20, 65:23, 66:6
persuade [1] - 135:2
persuaded [9] - 47:13, 47:17, 50:3, 50:18, 132:21, 133:15, 134:20, 155:24, 175:4
pertinent [2] - 41:14, 184:9
petition [4] - 79:8, 84:15, 85:12, 96:2
petitioner [5] - 83:5, 83:9, 83:14, 85:16, 86:2
petitioners [1] - 142:1
Pharmaceuticals [1] - 85:4
phase [1] - 60:20
phrase [2] - 61:10, 153:11
phrased [1] - 24:10
pick [3] - 35:18, 121:9, 156:20
picture [1] - 116:4
pictures [2] - 57:2, 123:10
piece [5] - 46:18, 74:13, 109:10, 109:11, 170:23
pink [1] - 154:10
PIVOVAR [76] - 2:15, 6:2, 6:5, 14:8, 15:16, 16:1, 16:6, 16:15, 16:21, 17:8, 19:19, 20:1, 21:5, 21:10, 21:14, 22:18, 23:3, 23:6, 23:21, 24:3, 24:8, 24:19, 25:2, 25:14, 25:20, 26:3, 26:7, 26:14, 26:17, 27:1, 27:5, 27:17, 27:22, 28:12, 29:3, 30:10, 31:7, 32:11, 44:5, 44:8,

47:10, 53:23, 55:8, 55:15, 55:23, 56:15, 57:1, 59:1, 59:15, 59:20, 60:5, 63:18, 64:6, 66:4, 67:5, 70:16, 70:23, 116:3, 116:12, 122:3, 122:18, 122:24, 124:8, 127:20, 128:12, 129:9, 130:13, 130:16, 130:22, 145:6, 145:11, 157:10, 177:11, 177:17, 183:16, 184:11
pIVOVAR [1] - 30:2
Pivovar [2] - 3:17, 148:24
place [1] - 140:20
placed [1] - 62:9
places [1] - 33:9
plain [1] - 84:12
plaintiff [39] - 5:8, 48:2, 48:9, 49:11, 50:19, 70:19, 74:24, 76:21, 79:24, 85:19, 85:22, 124:11, 127:22, 131:2, 134:21, 135:2, 135:13, 138:18, 141:1, 145:14, 158:16, 159:4, 162:12, 162:15, 170:21, 175:6, 175:9, 175:20, 176:2, 176:8, 182:4, 187:5, 187:16, 190:20, 191:10, 205:15, 206:23, 209:6, 211:14
plaintiff's [20] - 4:15, 8:8, 23:15, 46:8, 68:11, 68:15, 97:14, 105:7, 117:10, 133:16, 144:24, 146:16, 154:12, 157:12, 174:1, 174:2, 184:17, 186:23, 189:4, 209:11
Plaintiffs [2] - 1:7, 2:8
plaintiffs [62] - 3:8, 5:16, 5:23, 7:4, 7:7, 14:10, 22:14, 23:1, 27:11, 32:5, 33:9, 33:21, 49:13, 50:23, 58:21, 72:1, 72:19, 73:14, 76:6, 76:12, 77:16, 78:18, 79:5, 89:21, 90:1, 99:4, 103:6, 103:17, 106:14, 107:24, 118:19, 128:14, 128:23, 136:5, 142:23, 143:10, 145:17, 147:2, 153:20, 154:20, 155:24, 156:9, 160:23, 173:16, 174:5, 175:5, 177:15, 179:1, 184:15, 185:18, 187:21, 188:7, 188:15, 188:21, 188:24, 189:17, 193:2, 195:23, 198:19, 200:22, 201:5, 210:1
plan [5] - 4:1, 73:19, 159:17, 206:10, 207:9
planning [1] - 209:21
play [8] - 64:19, 119:18, 181:6, 189:8, 203:6, 203:9, 207:20, 207:21
player [1] - 112:12
playing [1] - 196:20
plays [1] - 123:3
plus [1] - 154:1
podium [3] - 51:4, 147:8, 165:3
point [61] - 18:12, 20:11, 24:13, 39:7, 39:8, 41:2, 45:6, 46:18, 50:2, 50:4, 50:18, 54:16, 58:24, 74:18, 77:19, 78:9, 83:3, 87:2, 87:6, 88:10, 96:1, 105:3, 105:4, 106:21, 109:6, 116:21, 117:4, 117:5, 117:10, 117:16, 118:19, 119:2, 119:12, 129:12, 129:22,

130:1, 130:18, 132:11, 133:15, 136:1, 142:16, 143:4, 147:5, 150:4, 162:1, 166:2, 172:1, 172:14, 173:11, 174:3, 174:13, 177:2, 177:4, 177:6, 184:20, 185:23, 192:6, 192:18, 193:16, 195:2, 199:13
pointed [3] - 45:18, 67:21, 148:24
pointing [2] - 45:10, 56:8
points [9] - 48:18, 50:1, 50:5, 51:19, 88:10, 95:5, 120:6, 168:22, 172:4
polarize [1] - 125:6
polymerization [3] - 125:8, 125:9, 125:12
pool [4] - 98:6, 204:6, 204:9, 205:9
portion [7] - 127:11, 150:21, 186:17, 186:24, 187:6, 187:19, 191:19
portions [4] - 36:15, 181:8, 199:1, 200:3
position [30] - 10:13, 12:17, 14:11, 20:24, 39:9, 43:13, 51:22, 52:10, 53:1, 53:9, 53:18, 75:1, 75:7, 75:9, 77:4, 85:19, 95:17, 97:17, 114:12, 114:13, 122:4, 137:20, 145:17, 146:16, 155:12, 156:17, 170:9, 180:20, 183:3, 183:10
positions [10] - 12:10, 13:5, 53:24, 144:19, 147:12, 148:5, 152:9, 181:1, 181:2, 201:20
possess [1] - 43:1
possibility [6] - 14:20, 75:22, 75:24, 76:15, 94:8, 136:18
possible [4] - 76:3, 139:2, 142:2, 201:22
possibly [2] - 74:13, 200:2
postponed [1] - 138:13
potential [4] - 71:20, 95:5, 204:19, 205:10
potentially [1] - 14:16
practical [1] - 95:12
practice [3] - 15:24, 16:11, 35:15
practicing [1] - 40:8
prayer [1] - 202:18
preamble [1] - 67:15
precedent [1] - 85:10
precisely [1] - 105:23
precision [2] - 8:6, 8:7
preclude [2] - 158:22, 170:22
precluded [1] - 189:6
precludes [1] - 85:8
preclusion [1] - 171:11
precursor [8] - 52:5, 52:19, 61:10, 63:12, 69:13, 69:16, 121:5
precursors [9] - 53:14, 60:24, 61:5, 62:5, 63:7, 65:18, 65:19, 69:23, 116:14
predetermined [65] - 6:17, 7:13, 7:23, 8:2, 8:11, 8:13, 9:2, 9:6, 9:12, 9:17, 10:19, 11:23, 12:12, 13:12, 13:19, 13:22, 15:4, 17:20, 18:6, 19:10, 19:14, 20:4, 20:6, 20:15, 20:17, 21:7, 22:5, 22:17, 22:19, 23:8, 25:4, 25:22, 28:22, 29:13, 30:20, 30:23, 31:16, 33:19,

34:1, 34:6, 34:20, 38:10, 38:14, 39:2, 39:23, 40:16, 41:10, 45:15, 46:4, 72:5, 72:7, 73:5, 73:6, 80:24, 81:1, 81:3, 81:12, 81:20, 81:24, 148:22, 177:12, 177:14, 179:13, 179:14, 180:13
**predicated** [1] - 154:14
**preemptory** [1] - 205:12
**preference** [3] - 146:14, 209:24, 210:5
**prejudice** [21] - 76:15, 80:7, 89:6, 89:20, 90:1, 90:4, 90:5, 95:6, 96:23, 97:1, 134:16, 135:8, 160:9, 170:20, 170:21, 171:2, 173:11, 173:13, 173:14, 173:16, 175:1
**prejudiced** [8] - 77:18, 112:17, 135:9, 135:10, 170:2, 173:17, 187:15, 187:23
**prejudicial** [4] - 77:13, 156:1, 174:18, 175:5
**prejudicing** [1] - 135:18
**preliminary** [2] - 97:7, 202:16, 206:14
**preparation** [3] - 140:2, 140:13, 152:20
**preparations** [3] - 134:4, 140:20, 144:7
**prepare** [2] - 143:13, 149:13
**prepared** [4] - 48:24, 150:3, 158:10, 169:13
**prepares** [1] - 77:10
**preparing** [4] - 152:15, 155:22, 168:10, 169:15
**presence** [3] - 193:22, 194:16, 205:4
**present** [33] - 10:5, 10:10, 12:23, 46:23, 48:17, 55:22, 58:21, 73:19, 90:15, 95:13, 99:24, 100:16, 106:19, 136:4, 148:7, 148:13, 148:19, 149:16, 149:20, 149:24, 150:1, 150:6, 151:1, 152:1, 152:13, 154:15, 155:7, 156:4, 158:13, 177:16, 181:11, 186:4, 209:18
**presentation** [2] - 133:20, 180:2
**presented** [8] - 9:24, 108:17, 116:8, 140:16, 154:2, 180:20, 184:1, 184:12
**presenting** [8] - 61:19, 70:2, 133:17, 139:4, 141:13, 150:7, 150:18, 160:15
**presents** [1] - 132:11
**preserve** [7] - 139:1, 139:12, 140:15, 141:11, 143:2, 143:4, 143:6
**preserved** [1] - 103:2
**pressing** [1] - 141:17
**presume** [1] - 157:23
**presumed** [1] - 175:12
**presumptive** [1] - 181:23
**pretrial** [16] - 3:21, 5:1, 76:10, 87:18, 138:4, 145:3, 150:13, 156:14, 189:12, 189:15, 191:23, 192:3, 193:14, 193:18, 194:3, 196:6
**pretty** [9] - 3:23, 7:10, 24:13, 36:1, 57:1, 59:7, 107:5, 117:13, 202:12
**prevail** [3] - 133:18, 134:22, 197:1
**prevailed** [4] - 79:9, 135:12, 135:15, 135:16
**prevails** [2] - 85:16, 197:4
**previous** [1] - 24:4
**previously** [3] - 49:15, 50:15, 197:3

**price** [27] - 97:23, 98:11, 99:20, 99:24, 100:1, 100:16, 101:7, 101:20, 103:8, 103:11, 103:24, 104:2, 104:6, 104:22, 105:8, 106:18, 106:21, 110:6, 110:11, 113:16, 114:11, 115:5, 115:8, 115:9, 115:13, 190:14, 191:4
**Priceline** [1] - 172:21
**primarily** [1] - 149:19
**primary** [1] - 100:24
**prioritize** [1] - 56:22
**priority** [1] - 72:18
**privy** [1] - 83:8
**problem** [8] - 79:8, 100:24, 105:13, 105:23, 119:20, 191:7, 209:4, 210:9
**problematic** [2] - 105:24, 117:22
**problems** [1] - 166:14
**procedure** [2] - 49:4, 143:16
**proceed** [1] - 147:4
**proceeding** [4] - 50:3, 83:11, 94:8, 153:14
**proceedings** [6] - 4:12, 71:4, 77:10, 89:12, 131:20, 135:16
**proceeds** [1] - 116:19
**process** [6] - 76:11, 116:21, 123:23, 196:5, 202:15, 208:17
**produce** [1] - 197:20
**produced** [3] - 164:14, 172:10, 174:9
**product** [10] - 17:2, 18:2, 25:12, 26:1, 91:16, 107:16, 123:6, 125:3, 125:10, 126:24
**production** [2] - 172:18, 172:22
**products** [12] - 31:15, 33:13, 45:11, 91:17, 107:19, 117:12, 118:24, 120:11, 121:19, 125:6, 126:5, 180:5
**profit** [1] - 115:7
**profits** [24] - 101:5, 101:7, 101:18, 101:22, 102:1, 102:9, 102:22, 103:4, 104:19, 110:21, 111:1, 111:3, 112:1, 112:2, 112:5, 112:11, 112:16, 114:14, 115:4, 115:5, 115:10, 115:12, 191:2, 191:3
**progress** [1] - 188:13
**promise** [1] - 93:24
**promote** [1] - 89:19
**proper** [5] - 132:12, 139:9, 148:11, 175:17, 200:10
**properly** [4] - 97:24, 149:22, 159:5, 160:11
**propose** [7] - 16:17, 49:1, 60:4, 122:23, 130:14, 160:13, 191:12
**proposed** [8] - 50:1, 76:21, 130:16, 151:8, 151:9, 159:7, 192:6, 192:7
**proposing** [2] - 48:21, 50:5
**proposition** [1] - 141:21
**prosecution** [4] - 81:23, 82:4, 82:7, 82:19
**prove** [3] - 10:23, 10:24, 80:20
**provide** [20] - 8:5, 8:7, 9:5, 13:2, 35:7, 37:16, 37:18, 41:24, 42:2, 42:5, 61:12,

109:20, 151:5, 151:13, 208:7
**provided** [10] - 4:4, 33:12, 62:17, 91:20, 102:5, 107:14, 107:17, 112:4, 190:6, 192:12
**provides** [2] - 35:13, 37:9
**providing** [3] - 37:8, 163:9, 196:15
**provision** [1] - 74:16
**PTAB** [17] - 76:23, 79:18, 85:21, 86:14, 87:5, 88:2, 88:10, 91:2, 96:3, 96:12, 132:2, 132:24, 133:18, 134:6, 134:24, 136:11, 136:17
**PTO** [1] - 86:24
**Public** [1] - 212:9
**public** [1] - 135:5
**pull** [1] - 153:19
**pulling** [1] - 127:6
**pure** [1] - 92:6
**purported** [1] - 36:5
**purpose** [3] - 75:14, 86:1, 169:10
**purposes** [10] - 35:1, 36:19, 36:20, 41:15, 43:4, 47:20, 54:23, 70:2, 99:13, 160:3
**pursuant** [1] - 139:3
**pursue** [3] - 7:5, 105:8, 155:12
**push** [1] - 144:3
**put** [38] - 7:11, 15:11, 16:22, 27:24, 55:16, 55:17, 76:18, 91:9, 92:14, 95:19, 99:12, 101:14, 101:16, 104:4, 105:17, 107:1, 111:20, 112:18, 124:1, 124:3, 129:18, 132:17, 133:22, 158:2, 161:3, 161:24, 162:10, 164:16, 165:19, 168:14, 168:15, 169:10, 170:11, 172:21, 202:6, 204:5, 207:12, 207:13
**puts** [3] - 17:20, 112:21, 163:24
**putting** [7] - 3:2, 17:15, 64:10, 87:2, 88:9, 172:13, 197:15

## Q

**qualified** [1] - 175:12
**questions** [26] - 4:7, 5:8, 5:14, 47:2, 49:14, 76:14, 129:5, 144:10, 164:5, 167:19, 176:7, 176:10, 190:8, 190:10, 195:21, 198:18, 200:12, 200:14, 202:8, 203:20, 204:12, 204:13, 204:16, 204:21, 205:23, 206:19
**quickly** [2] - 55:16, 161:6
**quite** [8] - 8:10, 13:6, 69:5, 71:12, 76:15, 78:4, 170:22, 201:1
**quotation** [1] - 15:7
**quotations** [1] - 15:6
**quote** [2] - 62:14, 70:12

## R

**R&R** [17] - 4:19, 30:17, 32:2, 55:20, 56:13, 71:13, 71:19, 73:16, 77:9, 77:15, 15:23, 132:4, 133:2, 133:11,

178:12, 186:8, 189:9
**R&Rs** [1] - 130:9
**raise** [14] - 4:2, 4:3, 49:11, 84:8, 84:14, 88:11, 88:13, 88:14, 194:5, 194:10, 194:13, 204:14, 206:23, 209:6
**raised** [29] - 5:17, 32:16, 34:7, 83:14, 83:15, 84:9, 84:17, 84:19, 84:21, 84:23, 85:2, 85:11, 86:8, 86:16, 88:13, 97:23, 138:4, 139:7, 142:9, 144:9, 173:23, 178:4, 182:4, 182:5, 182:8, 208:16
**raises** [1] - 132:7
**randomly** [1] - 205:9
**range** [35] - 11:24, 19:15, 20:6, 20:14, 20:21, 21:22, 22:5, 22:9, 22:17, 22:19, 22:22, 23:10, 23:11, 23:13, 24:20, 25:5, 25:8, 25:15, 28:23, 29:14, 31:17, 31:19, 31:22, 41:2, 41:7, 41:9, 44:18, 44:21, 44:22, 45:16, 46:21, 46:22
**ranges** [1] - 14:17
**ranging** [1] - 125:8
**rapid** [1] - 125:12
**rate** [2] - 112:22, 112:24
**reach** [4] - 56:13, 108:23, 132:19, 183:20
**reached** [4] - 30:21, 37:12, 38:10, 41:10
**react** [4] - 116:15, 119:7, 119:8, 119:16
**reacted** [1] - 119:15
**reacting** [1] - 125:17
**reaction** [5] - 116:16, 116:18, 125:19, 125:21
**reactive** [2] - 52:5, 52:19
**reacts** [1] - 117:6
**read** [8] - 10:3, 28:17, 113:4, 192:11, 192:15, 202:16, 204:11, 204:16
**reading** [3] - 24:14, 28:3, 204:15
**ready** [5] - 59:24, 123:7, 131:18, 186:5, 205:20
**reaffirm** [1] - 102:16
**real** [4] - 18:11, 83:8, 97:22, 105:13
**reality** [1] - 134:5
**really** [26] - 6:6, 6:14, 17:3, 30:16, 38:4, 42:19, 43:1, 45:8, 55:16, 64:11, 66:13, 73:4, 80:14, 87:19, 95:4, 96:17, 118:13, 121:20, 126:19, 150:1, 158:15, 164:11, 173:8, 173:16, 175:4, 182:15
**reargued** [1] - 122:5
**rearguing** [1] - 119:9
**reason** [11] - 54:3, 66:14, 81:16, 88:5, 101:20, 106:7, 137:8, 139:20, 143:8, 153:9, 189:17
**reasonable** [47] - 38:15, 91:19, 98:10, 100:22, 101:8, 101:19, 102:2, 102:3, 102:6, 102:14, 102:20, 103:5, 103:9, 103:12, 103:21, 103:23, 104:5, 104:9, 104:14, 104:22, 109:22, 109:23, 109:24, 110:2, 110:7, 110:12, 110:17, 110:22, 111:4, 111:13, 111:22, 112:6, 112:7, 112:21, 112:22, 113:20, 114:6

114:10, 114:17, 115:5, 115:9, 115:13, 187:7, 187:22, 190:12, 208:7, 209:3
**reasonably** [7] - 83:15, 84:8, 84:13, 85:9, 167:18, 169:17, 194:8
**rebuttal** [10] - 62:18, 67:24, 94:23, 148:4, 181:5, 181:9, 181:10, 181:16, 181:21
**rebutting** [1] - 181:2
**receive** [4] - 102:9, 110:21, 112:1, 112:15
**received** [2] - 152:4, 193:13
**recently** [3] - 38:12, 55:5, 113:9
**recess** [5] - 130:24, 131:6, 131:7, 164:21, 211:21
**recessed** [1] - 211:22
**recognize** [4] - 134:1, 134:16, 136:14, 176:4
**recognized** [1] - 117:21
**recommendation** [7] - 80:16, 130:11, 176:24, 178:13, 179:8, 180:1, 189:13
**recommended** [1] - 55:11
**recommending** [1] - 132:5
**reconciled** [2] - 124:13
**reconsider** [2] - 100:9, 106:22
**reconsideration** [14] - 4:15, 96:3, 97:14, 99:17, 100:20, 100:24, 103:7, 106:2, 107:2, 107:10, 186:23, 189:1, 189:22, 191:18
**record** [10] - 3:3, 76:4, 95:17, 95:23, 99:13, 172:10, 195:7, 195:9, 200:9, 212:9
**records** [1] - 195:18
**recover** [1] - 189:1
**recross** [1] - 198:3
**recross-examination** [1] - 198:3
**red** [1] - 35:3
**redirect** [1] - 198:2
**redo** [4] - 67:16, 87:17, 87:18
**reduce** [1] - 75:24
**reduced** [1] - 18:23
**refer** [4] - 109:10, 169:18, 173:1, 184:18
**reference** [15] - 67:1, 74:5, 74:14, 74:15, 78:13, 84:6, 84:7, 112:19, 129:13, 139:5, 139:10, 141:18, 142:1, 142:3
**referenced** [5] - 58:8, 75:21, 85:10, 114:24, 174:10
**references** [7] - 74:12, 83:17, 84:5, 84:13, 85:8, 85:11, 174:7
**regard** [7] - 91:5, 109:21, 109:24, 142:17, 150:17, 171:16, 171:22
**regarding** [4] - 4:19, 38:14, 115:23, 143:12
**regardless** [3] - 88:1, 119:21, 137:7
**regards** [1] - 85:1
**Registered** [1] - 212:7
**reiterate** [1] - 88:8
**rejected** [2] - 65:22, 130:15
**rejection** [1] - 7:17
**relate** [6] - 55:6, 62:3, 138:7, 177:9,

**related** [27] - 4:20, 15:20, 19:13, 26:12, 56:9, 62:8, 82:5, 82:6, 82:7, 94:15, 98:22, 99:5, 99:8, 99:9, 116:10, 134:8, 135:5, 135:23, 137:22, 138:8, 176:14, 177:12, 180:13, 180:15, 181:15, 181:19, 186:8
**relates** [7] - 7:13, 7:22, 62:22, 70:11, 111:9, 138:4, 207:4
**relative** [2] - 31:8, 38:16
**relatively** [1] - 66:5
**relaying** [1] - 162:7
**relevant** [6] - 26:16, 26:17, 108:1, 174:14, 189:18, 189:24
**relied** [11] - 53:6, 105:11, 107:7, 108:8, 108:22, 109:6, 113:15, 116:7, 126:14, 128:14, 190:5
**relief** [8] - 8:7, 8:9, 34:14, 98:6, 135:3, 145:10, 155:15, 156:2
**relies** [1] - 15:3, 37:20
**relieves** [1] - 138:11
**relitigating** [1] - 75:8
**rely** [9] - 33:23, 106:9, 108:11, 111:4, 154:8, 169:17, 172:2, 180:11, 197:18
**relying** [5] - 13:7, 66:22, 99:5, 128:1, 187:21
**remain** [1] - 133:9
**remainder** [2] - 181:18, 198:7
**remaining** [4] - 144:20, 202:19, 204:8, 206:11
**remains** [2] - 61:5, 72:15
**remanned** [1] - 96:18
**remarks** [1] - 211:5
**remember** [3] - 120:17, 177:10, 191:1
**remove** [1] - 205:17
**removed** [1] - 157:23
**removing** [1] - 133:20
**repeated** [1] - 36:16
**replaced** [2] - 101:17, 102:2
**reply** [1] - 185:21
**report** [58] - 9:3, 13:10, 13:20, 15:7, 28:18, 29:1, 36:16, 37:14, 40:21, 60:19, 62:18, 62:19, 80:16, 99:2, 99:14, 100:3, 101:4, 101:16, 101:17, 102:13, 102:14, 103:14, 103:15, 104:15, 105:6, 105:9, 105:16, 105:18, 105:20, 105:21, 107:12, 111:17, 112:9, 112:10, 112:19, 113:14, 113:17, 113:20, 114:3, 114:22, 115:7, 128:14, 152:11, 153:13, 154:2, 165:2, 176:23, 181:9, 181:10, 181:16, 183:11, 184:7, 187:18, 187:19, 188:6, 189:13, 190:23, 191:1
**REPORTER** [1] - 212:5
**reporter** [3] - 140:4, 140:8, 165:11
**Reporter** [2] - 212:8
**reports** [28] - 10:1, 59:20, 62:7, 62:19, 67:24, 68:2, 68:21, 98:13, 101:2, 102:11, 108:22, 145:2, 147:21, 149:11, 149:15, 151:14, 156:6, 163:8, 164:13, 173:2, 174:10, 181:9, 181:21,

186:16, 186:17, 186:20, 197:12, 197:17

**representation** [3] - 36:2, 36:8, 36:14

**request** [13] - 34:3, 100:20, 130:23, 144:24, 178:2, 189:5, 190:14, 191:5, 191:6, 198:24, 199:15, 201:15, 201:16

**requested** [3] - 8:8, 142:24, 196:22

**requests** [1] - 202:6

**require** [8] - 9:22, 19:5, 30:22, 39:8, 42:12, 45:22, 156:24, 193:21

**required** [15] - 8:15, 11:17, 12:14, 12:16, 15:23, 16:2, 27:3, 27:4, 29:4, 35:3, 42:11, 54:15, 63:6, 67:20, 104:7

**requirement** [17] - 10:5, 14:2, 15:18, 21:20, 24:15, 26:13, 29:20, 32:24, 39:4, 39:5, 39:13, 54:4, 63:22, 63:24, 66:19, 67:14, 117:24

**requirements** [4] - 12:6, 32:18, 35:24, 39:23

**requires** [7] - 15:5, 52:4, 52:5, 66:14, 66:15, 67:18, 125:22

**requiring** [6] - 10:22, 14:22, 23:16, 23:23, 28:18, 63:21

**reschedule** [1] - 166:5

**rescheduling** [1] - 71:9

**reserve** [2] - 70:24, 203:16

**reserved** [3] - 91:6, 136:20, 195:14

**reserving** [2] - 36:24, 48:16

**residual** [2] - 102:7, 115:18

**resistant** [6] - 107:13, 107:15, 107:18, 107:20, 108:7, 108:24

**resolution** [1] - 6:10

**resolve** [8] - 56:1, 144:23, 145:5, 160:8, 176:19, 183:19, 196:9, 210:12

**resolved** [12] - 54:11, 54:21, 56:17, 59:6, 64:18, 65:11, 93:12, 139:22, 177:2, 194:6, 194:24

**resolving** [2] - 38:13, 192:23

**resources** [1] - 143:18

**respect** [106] - 4:12, 7:17, 12:6, 26:1, 28:9, 30:17, 34:7, 34:14, 35:10, 36:3, 36:4, 36:17, 36:18, 37:16, 37:19, 38:12, 41:6, 45:9, 47:8, 47:23, 48:6, 48:14, 49:2, 49:23, 50:5, 51:22, 52:11, 53:12, 56:2, 57:6, 59:2, 60:10, 61:9, 65:5, 69:1, 69:12, 70:8, 71:4, 72:14, 72:17, 72:19, 73:21, 76:3, 88:6, 98:4, 98:6, 99:20, 100:18, 106:20, 108:7, 108:8, 108:24, 113:11, 131:20, 133:9, 134:7, 135:18, 135:21, 137:22, 145:19, 147:6, 147:12, 148:3, 148:20, 150:8, 151:7, 151:11, 151:15, 151:24, 152:6, 152:10, 152:21, 153:5, 153:22, 155:2, 155:4, 155:12, 168:23, 176:22, 177:5, 178:11, 179:10, 179:11, 180:3, 180:7, 180:8, 180:10, 180:17, 180:18, 180:21, 181:1, 181:8, 181:11, 181:17, 182:11, 183:7, 183:13, 183:20, 183:21, 184:15, 187:6, 189:2, 189:3, 190:7, 192:10, 192:22

**respectfully** [3] - 45:2, 147:19, 179:6

**respective** [1] - 71:10

**respects** [2] - 97:21, 105:17

**respond** [16] - 37:3, 45:13, 68:9, 107:7, 107:8, 114:19, 138:19, 149:14, 153:17, 160:20, 160:23, 163:14, 163:15, 168:20, 183:7, 185:18

**response** [14] - 45:20, 46:1, 46:2, 53:22, 79:5, 97:6, 106:14, 108:3, 154:13, 158:19, 159:2, 189:4, 189:18, 204:15

**responsive** [3] - 18:4, 46:13, 46:21

**rest** [4] - 46:19, 75:16, 192:5, 195:16

**result** [3] - 68:18, 102:2, 174:15

**resulting** [1] - 68:13

**results** [2] - 83:6, 112:22

**retains** [1] - 49:16

**reteaching** [1] - 63:2

**retry** [1] - 77:1

**return** [1] - 90:21

**returns** [1] - 76:19

**revenues** [1] - 113:1

**reversal** [2] - 77:11, 96:17

**reversed** [2] - 87:13, 87:21

**reverses** [1] - 136:17

**review** [6] - 71:19, 83:5, 83:16, 183:11, 186:8, 206:10

**reviewed** [3] - 107:16, 190:5

**reviewing** [1] - 5:1

**revised** [1] - 206:8

**revisit** [1] - 206:7

**Rhee** [7] - 74:4, 74:15, 88:15, 181:3, 181:4, 181:5

**rights** [2] - 168:8, 195:15

**ripe** [1] - 145:4

**risk** [7] - 90:11, 90:18, 92:2, 135:22, 136:13, 136:14

**Rivot** [1] - 185:10

**RMR** [1] - 212:20

**Robert** [1] - 3:9

**ROBERT** [1] - 2:6

**room** [1] - 204:18

**root** [1] - 191:7

**ROTH** [1] - 2:7

**Roth** [1] - 3:10

**roughly** [1] - 199:20

**round** [2] - 68:2, 68:3

**route** [2] - 86:3, 86:6

**royalties** [15] - 91:13, 91:14, 91:15, 100:22, 102:3, 102:6, 102:8, 104:9, 111:13, 111:22, 114:23, 115:2, 115:5, 115:16, 115:19

**royalty** [39] - 91:19, 98:10, 101:8, 101:19, 102:2, 102:14, 102:20, 103:5, 103:9, 103:12, 103:21, 103:23, 104:5, 104:15, 104:22, 105:10, 109:22, 109:23, 109:24, 110:2, 110:7, 110:12, 110:17, 110:22, 111:4, 112:6, 112:7, 112:21, 112:23, 112:24, 113:20, 114:6, 114:10, 114:17, 115:10,

115:13, 187:8, 187:22, 190:12

**Rule** [6] - 158:18, 158:24, 159:1, 170:11, 170:12, 174:2

**rule** [19] - 131:18, 139:3, 161:18, 169:18, 177:16, 177:23, 178:6, 178:7, 178:16, 184:6, 186:5, 186:6, 186:7, 186:12, 186:13, 189:8, 191:8, 196:22, 207:16

**ruled** [6] - 110:8, 134:9, 177:13, 182:8, 195:11

**ruling** [16] - 49:19, 49:24, 96:12, 100:13, 130:10, 131:14, 133:10, 137:12, 138:11, 157:1, 158:1, 178:19, 182:10, 186:7, 186:24, 197:9

**rulings** [7] - 4:16, 8:10, 131:16, 147:5, 192:18, 206:5, 206:6

**run** [3] - 5:3, 6:24, 67:12

**running** [3] - 196:10, 196:14, 196:18

**runs** [1] - 150:6

**rushed** [1] - 167:3

**S**

**safe** [1] - 85:7

**sake** [1] - 100:15

**sale** [1] - 163:22

**SALES** [1] - 1:5

**sales** [32] - 101:6, 101:18, 101:23, 101:24, 102:1, 102:4, 102:8, 102:10, 103:11, 104:17, 104:18, 104:19, 104:21, 105:9, 105:12, 110:20, 111:3, 111:9, 112:8, 112:11, 112:12, 112:13, 112:15, 112:22, 114:4, 114:5, 114:14, 114:16, 115:7, 115:12, 115:19, 187:8

**satisfied** [1] - 38:19

**Saturday** [2] - 185:5, 185:21

**save** [4] - 87:19, 94:3, 94:4, 155:21

**saw** [6] - 4:24, 31:5, 31:6, 46:10, 122:6, 123:10

**Sawhney** [1] - 209:16

**scales** [1] - 71:22

**schedule** [3] - 78:2, 204:5, 209:21

**scheduled** [5] - 89:16, 139:22, 166:7, 166:10, 166:12

**scheduling** [1] - 160:18

**scientific** [1] - 56:4

**scientifically** [1] - 119:13

**scope** [30] - 14:13, 14:18, 14:23, 15:17, 16:9, 27:2, 27:7, 29:19, 34:24, 35:1, 35:9, 42:1, 42:3, 42:7, 42:12, 42:17, 42:24, 43:3, 43:5, 44:17, 49:15, 50:9, 50:14, 148:11, 149:23, 178:21, 186:3, 197:3, 210:3

**scopes** [1] - 40:8

**score** [1] - 156:2

**scratching** [1] - 175:20

**seal** [2] - 17:24, 212:15

**sealed** [1] - 200:4

**searched** [1] - 174:9

**seat** [2] - 47:9, 205:10
**seated** [3] - 3:2, 204:10
**second** [24] - 17:17, 27:10, 28:1, 28:10, 28:13, 28:17, 29:12, 35:9, 45:6, 54:4, 60:7, 69:20, 70:17, 78:18, 82:13, 84:10, 90:6, 92:2, 94:4, 94:9, 117:11, 125:13, 128:17, 136:10
**secondary** [2] - 68:2
**secondly** [1] - 159:4
**seconds** [17] - 52:8, 53:3, 54:3, 57:13, 72:10, 74:1, 116:9, 117:12, 122:2, 122:17, 123:22, 124:21, 125:4, 128:20, 128:22, 129:2, 183:22
**section** [3] - 7:18, 86:1
**Section** [4] - 83:7, 83:10, 83:12, 84:12
**sections** [1] - 153:13
**security** [1] - 199:23
**see** [58] - 5:4, 13:8, 15:2, 17:11, 17:13, 17:22, 18:10, 18:12, 20:23, 21:23, 25:8, 29:17, 31:4, 31:9, 33:20, 36:15, 40:7, 40:14, 44:15, 44:24, 45:24, 49:4, 57:3, 57:18, 58:9, 58:15, 59:24, 76:11, 84:11, 99:19, 107:8, 111:19, 112:20, 115:15, 117:3, 118:1, 118:2, 119:3, 121:3, 121:8, 123:3, 123:9, 123:18, 126:12, 127:9, 128:15, 147:17, 151:23, 161:5, 164:20, 179:7, 186:10, 188:14, 191:24, 205:4, 210:23
**seeing** [1] - 38:6
**seek** [2] - 49:6, 191:8
**seeking** [7] - 49:14, 51:17, 98:6, 100:5, 100:9, 188:21, 188:24
**seem** [5] - 48:20, 68:5, 92:12, 106:7, 136:3
**segmented** [1] - 18:23
**segregate** [1] - 200:2
**selected** [1] - 161:23
**selection** [3] - 202:15, 204:1, 204:3
**self** [2] - 95:4, 125:12
**send** [1] - 202:5
**sense** [4] - 52:12, 64:24, 181:23, 198:15
**sent** [1] - 87:13
**separate** [7] - 23:5, 38:1, 51:24, 57:10, 75:15, 78:3, 95:19
**separately** [1] - 95:10
**serious** [2] - 140:21
**seriously** [1] - 164:3
**serve** [1] - 211:11
**set** [22] - 4:7, 33:12, 55:5, 56:9, 65:12, 78:22, 80:6, 112:9, 113:13, 118:15, 118:16, 118:17, 119:21, 120:6, 138:6, 144:5, 149:8, 165:8, 165:12, 166:15, 196:6, 212:14
**sets** [1] - 72:16
**setting** [2] - 43:8, 123:12
**settling** [1] - 80:23
**seven** [5] - 13:12, 15:1, 78:18, 205:20, 205:21
**seventeen** [1] - 202:1
**seventies** [1] - 165:17

**sever** [10] - 4:11, 71:3, 73:1, 76:18, 96:19, 131:19, 132:21, 134:13, 158:1, 182:14
**several** [4] - 18:17, 64:1, 163:6, 171:8
**severed** [5] - 77:18, 145:22, 176:16, 180:8, 180:22
**severing** [1] - 71:22, 142:18
**shade** [4] - 21:3, 21:21, 22:7, 39:17
**shades** [2] - 21:6, 21:12
**share** [8] - 101:6, 101:11, 104:16, 179:15, 179:16, 179:17, 179:18, 179:20
**Shaw** [3] - 140:5, 141:2, 165:17
**sheet** [6] - 76:21, 92:15, 93:15, 93:16, 95:11, 136:8
**shell** [1] - 102:11
**shift** [1] - 203:16
**shoehorn** [1] - 191:6
**shooting** [1] - 154:12
**short** [6] - 6:1, 17:7, 96:15, 121:2, 130:24, 131:5
**Shorthand** [1] - 212:8
**shot** [1] - 50:20
**show** [17] - 23:17, 25:17, 33:14, 59:4, 80:12, 115:18, 116:13, 120:9, 121:14, 125:3, 149:16, 152:17, 164:16, 191:11, 193:22, 195:5, 196:14
**showing** [1] - 196:12
**shown** [3] - 115:9, 115:10, 193:14
**shows** [4] - 17:15, 105:24, 117:13, 125:10
**sick** [1] - 143:22
**side** [24] - 6:12, 59:4, 95:18, 156:6, 165:20, 170:7, 170:18, 180:12, 192:11, 192:13, 195:9, 196:14, 196:17, 197:19, 200:18, 200:20, 200:21, 203:8, 203:12, 203:18, 204:18, 204:24, 205:4, 205:11
**side's** [1] - 194:20
**side-bar** [1] - 204:18
**sides** [1] - 96:7
**sides'** [1] - 197:7
**significant** [1] - 90:7
**significantly** [3] - 72:6, 135:24, 150:24
**silent** [1] - 205:14
**similar** [1] - 82:8
**similarly** [1] - 133:1
**simple** [3] - 61:22, 97:15, 158:15
**simplest** [1] - 158:12
**simplification** [3] - 71:24, 132:20, 135:21
**simplified** [1] - 88:22
**simplify** [8] - 72:24, 73:13, 80:4, 80:9, 80:12, 80:14, 132:22, 133:24
**simplifying** [1] - 133:19
**simply** [3] - 47:18, 62:14, 177:10
**simultaneously** [1] - 53:14
**single** [14] - 11:24, 22:17, 22:21, 23:13, 29:15, 34:5, 41:2, 44:13, 46:16, 185:6,

**singular** [2] - 25:14, 29:14
**sit** [1] - 118:12
**site** [2] - 123:11, 125:7
**sitting** [1] - 140:4
**situation** [7] - 71:15, 85:23, 96:15, 131:24, 132:8, 156:1, 178:22
**six** [9] - 77:23, 143:23, 165:19, 165:23, 166:5, 166:16, 166:21, 201:5, 205:17
**sixteen** [1] - 202:1
**skill** [9] - 14:4, 35:15, 57:16, 57:17, 61:6, 61:13, 68:22, 69:6, 70:2
**slapped** [1] - 140:12
**slide** [14] - 17:1, 20:2, 20:3, 20:5, 21:16, 21:17, 23:7, 24:4, 84:24, 119:19, 120:22, 123:2, 161:4
**slides** [15] - 19:21, 55:16, 82:23, 160:24, 191:11
**slightly** [1] - 157:20
**slowly** [1] - 9:11
**small** [2] - 6:23, 16:12
**soft** [1] - 118:15
**solely** [1] - 138:7
**solid** [20] - 53:5, 56:8, 57:18, 118:1, 118:3, 118:16, 119:17, 120:5, 121:8, 121:12, 124:23, 125:4, 125:15, 125:24, 126:16, 126:21, 127:9, 127:15, 129:10, 129:13
**solidification** [1] - 129:8
**someone** [6] - 109:10, 161:10, 174:13, 202:12, 202:23, 209:24
**sometime** [1] - 210:22
**somewhat** [1] - 150:17
**somewhere** [2] - 22:4, 42:6
**soon** [2] - 134:18, 210:11
**sorry** [7] - 11:20, 24:9, 51:5, 90:16, 173:5, 180:9, 187:16
**sort** [9] - 32:9, 76:13, 77:2, 95:17, 155:7, 167:3, 172:5, 180:2, 181:21
**sorted** [1] - 78:5
**sought** [1] - 8:9
**sound** [1] - 190:17
**sounded** [1] - 168:19
**sounds** [2] - 175:10, 197:13
**source** [1] - 163:2
**space** [3] - 185:6, 185:20, 185:22
**speaking** [1] - 194:17
**special** [2] - 75:23, 76:13
**species** [8] - 43:8, 43:10, 43:15, 43:16, 43:17, 52:6, 52:20
**specific** [45] - 6:8, 8:16, 10:14, 10:15, 10:16, 11:6, 11:7, 11:9, 12:8, 12:11, 21:11, 23:23, 23:24, 24:15, 25:7, 26:22, 28:14, 28:19, 28:20, 36:11, 36:12, 37:11, 37:12, 39:14, 39:17, 41:8, 49:14, 69:3, 98:21, 149:8, 154:16, 156:21, 161:15, 163:2, 207:18, 208:21
**specifically** [10] - 34:23, 52:23, 74:4, 92:20, 102:7, 148:11, 150:10, 171:20, 188:11, 208:17

**specification** [7] - 13:16, 14:3, 29:8, 30:12, 65:1, 82:3, 82:4
**specifications** [1] - 82:20
**specificity** [1] - 155:20
**specifics** [1] - 47:23
**specify** [1] - 126:6
**speculation** [5] - 87:9, 87:20, 90:24, 92:6, 92:8
**speculative** [2] - 136:3, 209:21
**spelled** [1] - 53:24
**spinning** [3] - 120:23, 121:4, 122:7
**split** [2] - 194:23, 203:9
**spray** [3] - 17:23, 78:20, 123:15
**sprayed** [1] - 125:7
**sprayer** [1] - 17:12
**spraying** [2] - 123:9, 123:11
**sprays** [1] - 17:14
**squirt** [4] - 120:15, 120:24, 121:5, 121:6
**staff** [1] - 204:19
**stage** [3] - 69:20, 89:12, 119:16
**stand** [3] - 36:17, 49:13, 194:9, 194:14, 204:14
**standard** [3] - 28:19, 64:24, 128:20
**standards** [3] - 87:23, 88:3, 88:4
**standing** [2] - 68:14, 68:20
**standpoint** [2] - 29:20, 29:21
**STARGATT** [1] - 2:3
**STARK** [1] - 1:18
**start** [13] - 3:2, 5:14, 5:16, 40:6, 40:8, 54:5, 54:16, 116:20, 125:5, 144:23, 165:15, 198:14, 206:7
**starting** [2] - 39:7, 54:11
**starts** [3] - 54:17, 120:16, 196:20
**state** [3] - 71:3, 90:20, 125:11
**State** [1] - 212:1
**statements** [3] - 162:11, 198:10, 198:12
**STATES** [1] - 1:2
**States** [13] - 1:19, 98:1, 100:2, 100:23, 101:24, 102:6, 103:10, 104:6, 110:1, 111:10, 111:13, 187:8, 190:13
**statistics** [1] - 92:9
**status** [5] - 75:22, 79:7, 80:5, 80:10, 134:1
**statute** [4] - 75:5, 86:8, 104:7, 114:7
**stay** [17] - 4:12, 51:13, 73:1, 76:19, 77:14, 80:4, 82:11, 85:23, 89:10, 89:14, 89:17, 90:9, 90:13, 96:20, 131:19, 134:12, 141:8
**stayed** [6] - 77:19, 80:3, 137:24, 176:16, 180:8, 180:22
**staying** [4] - 71:22, 80:8, 90:2, 142:18
**stays** [1] - 186:2
**steering** [1] - 35:5
**stenographic** [1] - 212:10
**step** [1] - 73:23
**STEPHEN** [1] - 2:15
**Stephen** [1] - 3:18
**Steve** [1] - 97:20
**stick** [1] - 123:13

**still** [40] - 17:21, 19:24, 54:20, 55:20, 56:16, 57:24, 61:5, 73:19, 80:22, 93:9, 99:10, 99:15, 105:22, 110:10, 110:16, 111:12, 113:5, 113:15, 114:15, 117:1, 131:10, 133:5, 134:8, 137:15, 144:17, 145:4, 147:6, 156:16, 172:12, 174:11, 175:20, 176:5, 178:7, 180:12, 188:9, 189:7, 189:18, 189:24, 190:16, 201:2
**stop** [6] - 22:3, 22:4, 29:17, 54:6, 54:13, 59:23
**stopped** [1] - 122:7
**stops** [3] - 121:1, 121:6, 121:7
**store** [1] - 156:21
**straight** [1] - 65:13
**straighten** [1] - 183:2
**straightforward** [2] - 59:8, 66:6
**strategy** [4] - 164:6, 170:5, 170:6, 174:22
**Street** [1] - 1:15
**stretch** [1] - 117:13
**stricken** [14] - 33:10, 37:15, 40:1, 47:16, 62:7, 62:12, 62:13, 70:8, 105:16, 113:16, 113:21, 113:22, 181:22, 187:19
**stricter** [1] - 113:22
**strictly** [2] - 27:3, 156:19
**strike** [9] - 33:21, 33:22, 36:3, 37:14, 46:12, 110:6, 173:24, 188:19, 205:5
**strikes** [2] - 74:15, 205:12, 205:13
**striking** [2] - 191:18, 205:16
**strongly** [1] - 89:13
**struck** [4] - 101:13, 102:23, 173:12, 205:18
**structural** [3] - 62:2, 62:13, 69:9
**struggling** [1] - 172:12
**stuff** [5] - 54:22, 62:8, 63:13, 82:15, 87:12
**subject** [7] - 102:1, 103:11, 104:21, 108:2, 157:14, 192:18, 192:20
**submission** [5] - 5:15, 15:1, 32:12, 70:13, 149:7
**submissions** [5] - 58:15, 76:11, 150:13, 186:10, 211:6
**submit** [2] - 110:9, 206:4
**submitted** [5] - 44:14, 101:2, 189:12, 189:15, 206:15
**subpoenas** [1] - 209:13
**subsequent** [1] - 105:9
**subsequently** [1] - 114:15
**subset** [3] - 22:7, 149:16, 152:17
**substance** [1] - 63:9
**substantial** [4] - 97:10, 138:22, 140:2, 140:20
**substrate** [2] - 53:4, 179:22
**successful** [3] - 74:11, 84:4, 88:19
**successfully** [1] - 74:23
**sufficient** [4] - 128:5, 128:9, 129:7, 149:1
**suggest** [2] - 184:6, 195:17

**suggestion** [1] - 144:1
**suit** [2] - 91:12, 171:24
**suitable** [13] - 60:13, 62:1, 62:9, 62:10, 63:19, 67:1, 67:8, 68:13, 68:17, 68:19, 68:23, 69:7, 185:12
**sulfate** [7] - 60:6, 62:8, 63:3, 66:17, 68:12, 68:16, 70:9
**sulphate** [4] - 63:8, 66:3, 66:4, 69:12
**summary** [17] - 4:20, 38:13, 45:20, 55:7, 57:6, 57:21, 58:6, 68:3, 80:17, 115:23, 124:14, 127:2, 130:11, 132:5, 134:7, 179:9, 189:9
**supercede** [1] - 114:1
**superceded** [1] - 110:1
**superseded** [1] - 105:7
**superseding** [1] - 104:12
**supplement** [1] - 170:12
**supplemental** [5] - 105:20, 110:10, 113:24, 114:24, 145:1
**supplemented** [1] - 158:24
**support** [4] - 75:6, 77:19, 95:17, 116:8
**supported** [1] - 91:11
**supports** [1] - 141:14
**supposed** [2] - 139:24, 165:15
**surgical** [1] - 125:7
**SURGICAL** [1] - 1:5
**surprise** [6] - 108:21, 170:15, 171:3, 171:20, 174:17
**surprised** [4] - 170:2, 187:14, 187:21, 196:20
**suspect** [1] - 70:23
**sustain** [1] - 121:23
**swath** [1] - 181:17
**sweep** [1] - 6:12

**T**

**tab** [2] - 114:24, 115:15
**table** [1] - 180:17
**tailor** [1] - 91:9
**tailored** [1] - 92:20
**taint** [3] - 76:1, 76:3, 77:9
**talks** [3] - 9:11, 60:19, 62:24
**Tan** [6] - 159:9, 160:6, 162:17, 169:7, 171:20, 209:15
**target** [1] - 154:13
**Tariff** [1] - 83:13
**taught** [3] - 82:3, 82:10, 87:12
**TAYLOR** [1] - 2:3
**teach** [4] - 14:4, 43:14, 43:16, 72:22
**teaches** [1] - 35:14
**teaching** [3] - 13:16, 15:19, 72:20
**Tech** [1] - 89:23
**technical** [2] - 56:4, 56:6
**TECHNOLOGY** [1] - 1:9
**telephonically** [1] - 140:6
**ten** [2] - 161:23, 172:8
**tension** [1] - 70:1
**tensions** [1] - 60:10

term [14] - 60:20, 61:9, 61:14, 61:16, 61:22, 63:19, 64:15, 65:10, 66:1, 67:17, 69:24, 184:9, 185:13, 185:14

terms [19] - 61:7, 65:4, 65:12, 70:4, 71:24, 78:7, 86:21, 100:22, 120:10, 124:17, 133:14, 134:16, 192:16, 193:11, 196:3, 196:21, 199:18, 206:2, 209:24

test [7] - 29:9, 29:16, 30:13, 30:14, 164:14, 173:6, 173:8

testified [4] - 53:6, 126:12, 159:20, 175:12

testify [21] - 51:7, 156:18, 157:3, 159:6, 159:7, 160:13, 160:15, 161:21, 163:19, 163:21, 169:2, 169:6, 169:7, 169:16, 171:18, 174:16, 175:13, 176:6, 187:9, 208:4, 210:15

testifying [5] - 158:22, 171:21, 190:3, 197:2, 201:8

testimony [32] - 39:20, 49:5, 50:14, 61:13, 103:22, 106:3, 108:1, 109:9, 109:14, 109:21, 127:7, 127:8, 139:1, 139:12, 140:15, 141:10, 143:2, 143:5, 143:21, 160:2, 172:23, 175:8, 175:15, 177:8, 180:18, 181:22, 190:2, 191:19, 196:22, 197:18, 199:2, 208:12

testing [1] - 165:9

THE [301] - 1:2, 1:2, 1:18, 3:1, 3:6, 3:11, 3:19, 5:10, 5:13, 6:4, 7:6, 7:21, 8:1, 8:18, 9:9, 9:14, 9:18, 10:2, 10:8, 10:20, 11:15, 12:2, 12:20, 14:6, 15:10, 15:22, 16:3, 16:13, 16:17, 17:5, 19:16, 19:22, 21:2, 21:8, 21:13, 22:12, 22:23, 23:4, 23:14, 23:22, 24:5, 24:11, 24:21, 25:10, 25:18, 25:23, 26:5, 26:8, 26:15, 26:21, 27:4, 27:9, 27:19, 27:24, 29:2, 29:22, 30:4, 31:3, 32:3, 34:9, 35:17, 35:21, 36:18, 36:22, 37:3, 37:24, 40:2, 40:24, 41:11, 41:21, 42:5, 42:14, 42:22, 43:18, 44:2, 44:7, 47:3, 47:11, 51:4, 51:9, 51:13, 53:21, 55:4, 55:10, 55:17, 56:11, 56:23, 57:3, 58:5, 58:17, 59:12, 59:16, 59:23, 60:3, 60:8, 63:14, 64:3, 66:2, 66:24, 68:8, 70:14, 70:17, 71:2, 71:12, 72:24, 74:17, 76:17, 78:13, 78:24, 79:7, 79:12, 79:17, 79:23, 80:19, 81:8, 83:1, 83:22, 84:16, 84:20, 85:13, 86:10, 86:15, 86:20, 88:23, 89:5, 89:9, 90:11, 90:18, 92:1, 92:7, 92:22, 93:2, 93:6, 93:14, 93:23, 94:7, 94:22, 97:12, 98:5, 98:16, 99:18, 100:8, 100:18, 104:8, 104:24, 106:1, 106:13, 106:20, 107:3, 107:23, 108:10, 109:4, 109:15, 110:15, 111:5, 111:11, 111:18, 113:4, 113:8, 113:23, 114:18, 115:21, 116:11, 121:23, 122:14, 122:22, 124:7, 124:10, 125:16, 126:8, 127:3, 127:10, 127:18, 127:21, 128:10, 129:6, 130:8, 130:14, 130:21, 131:1, 131:5, 131:8, 138:18,

139:14, 139:21, 140:24, 141:15, 142:5, 142:8, 142:13, 142:22, 143:24, 144:6, 144:14, 145:9, 145:13, 145:16, 146:5, 146:10, 146:15, 146:22, 147:1, 147:8, 147:17, 147:23, 148:16, 149:12, 150:8, 151:2, 151:15, 151:19, 151:22, 153:4, 153:16, 154:20, 155:14, 156:23, 157:8, 157:11, 157:17, 157:24, 158:6, 159:10, 159:19, 159:23, 160:22, 161:2, 161:5, 161:9, 161:14, 161:24, 162:10, 162:20, 163:11, 163:17, 163:23, 164:18, 164:22, 165:3, 165:24, 166:4, 166:11, 166:19, 167:2, 167:9, 167:17, 168:1, 168:18, 169:22, 170:1, 171:12, 172:12, 173:3, 173:20, 176:10, 176:12, 177:7, 177:13, 177:21, 178:6, 178:11, 178:24, 179:4, 181:24, 182:7, 182:21, 183:6, 184:5, 184:14, 190:10, 190:17, 191:9, 191:22, 193:7, 193:10, 196:1, 196:3, 198:21, 198:23, 199:12, 199:18, 200:14, 200:16, 201:10, 201:19, 202:11, 203:24, 206:2, 206:22, 207:2, 207:17, 207:24, 208:14, 209:5, 209:8, 210:5, 210:18, 210:23, 211:4, 211:17, 211:20

theories [6] - 85:10, 85:11, 102:18, 147:3, 148:9, 153:21

theory [8] - 36:11, 91:11, 101:7, 101:12, 104:1, 129:14, 145:18, 156:19

thereabouts [1] - 166:6

thereafter [1] - 86:11

therefor [1] - 153:10

therefore [4] - 25:12, 36:2, 110:3, 127:2

they've [1] - 6:15

thicker [3] - 21:22, 31:9, 63:3

thickness [89] - 6:17, 7:14, 7:23, 8:2, 8:11, 8:13, 8:17, 9:2, 9:7, 9:12, 9:17, 10:14, 10:16, 10:19, 11:7, 11:9, 11:24, 12:13, 13:13, 13:19, 13:23, 15:4, 17:20, 18:6, 19:8, 19:10, 19:15, 20:2, 20:4, 20:6, 20:16, 20:17, 20:22, 21:7, 22:5, 22:17, 22:19, 23:9, 23:24, 24:16, 25:4, 25:22, 26:23, 28:15, 28:19, 28:21, 28:22, 29:13, 29:16, 30:21, 30:24, 31:8, 31:17, 33:20, 34:1, 34:6, 34:20, 36:12, 36:13, 38:10, 38:15, 39:2, 39:23, 40:16, 41:8, 41:10, 44:13, 44:19, 44:23, 45:16, 46:4, 46:16, 72:5, 72:7, 73:5, 73:7, 80:24, 81:1, 81:3, 81:12, 81:20, 81:24, 148:22, 177:12, 177:14, 179:13, 179:14, 180:13

thicknesses [9] - 18:16, 18:21, 19:1, 21:9, 28:23, 29:14, 41:9, 46:11, 46:21

thin [2] - 17:19, 22:6

thinking [2] - 181:24, 182:3

thinks [2] - 140:22, 156:7

third [6] - 18:7, 26:5, 30:4, 36:22, 98:17, 98:18

thirty [3] - 201:4, 201:5

thirty-five [1] - 201:5

thirty-six [1] - 201:5

THOMAS [1] - 2:11

Thomas [4] - 3:13, 89:23, 158:7, 158:17

threat [1] - 91:11

three [3] - 8:15, 8:18, 8:20, 9:7, 9:8, 10:5, 10:6, 10:9, 10:17, 10:22, 10:23, 11:5, 11:17, 26:9, 32:9, 32:15, 32:18, 32:20, 34:17, 40:22, 41:14, 48:14, 48:18, 49:2, 80:2, 80:7, 97:22, 101:5, 116:23, 165:15, 185:21, 205:11, 208:10

three-dimensional [1] - 116:23

throw [3] - 33:3, 33:6, 34:4

thrown [2] - 74:14, 136:22

throws [1] - 94:13

Thursday [4] - 185:5, 185:6, 202:4, 206:9

tibular [1] - 70:9

ticking [1] - 96:4

tied [2] - 34:21, 57:5

TIGAN [2] - 2:12, 146:12

Tigan [1] - 3:15

timed [1] - 200:17

timely [1] - 158:23

timing [3] - 77:22, 78:8, 194:2

tint [2] - 38:20, 38:23

tiny [1] - 211:4

tipped [1] - 71:21

tissue [23] - 52:2, 52:7, 52:9, 52:14, 52:22, 53:15, 54:17, 57:14, 60:13, 61:22, 62:1, 62:10, 63:19, 64:22, 67:1, 67:8, 68:14, 68:17, 68:19, 68:23, 69:7, 179:18, 185:13

Title [1] - 83:11

today [9] - 34:8, 49:22, 50:3, 113:9, 157:1, 165:9, 192:5, 201:22

together [8] - 7:11, 11:6, 34:17, 34:21, 120:16, 140:12, 168:16, 209:22

tomorrow [17] - 89:16, 138:7, 138:10, 138:20, 139:15, 139:18, 139:22, 140:22, 143:9, 143:16, 143:17, 144:5, 144:11, 157:15, 157:22, 165:15, 166:8

took [4] - 6:6, 8:5, 69:21, 81:17

top [1] - 98:11

topics [5] - 159:6, 160:14, 163:20, 171:5, 175:11

total [1] - 113:1

touch [4] - 14:9, 101:20, 166:14, 186:1

towards [3] - 65:20, 160:18, 170:20

toxic [2] - 63:9, 68:16

toxicity [1] - 62:4

track [1] - 203:21

Trade [1] - 83:12

trail [2] - 156:4, 162:13

trailing [1] - 78:22

transcribed [1] - 140:17

transcript [4] - 196:11, 196:15, 196:18, 212:10

transition [1] - 198:10
transparency [6] - 12:12, 14:1, 19:6, 31:14, 39:14, 39:15
treat [1] - 205:19
trial [105] - 3:22, 5:4, 25:24, 46:24, 47:5, 47:7, 47:21, 48:20, 50:20, 55:22, 58:10, 68:6, 70:24, 71:17, 73:10, 77:24, 78:3, 78:23, 79:1, 80:4, 80:6, 80:9, 80:15, 81:9, 82:13, 85:20, 88:17, 89:16, 90:8, 90:10, 90:12, 90:19, 92:2, 92:12, 93:13, 94:9, 96:24, 98:24, 99:3, 99:10, 99:16, 100:16, 108:2, 111:6, 132:1, 132:22, 133:23, 134:21, 135:23, 136:10, 136:20, 143:8, 143:17, 143:19, 147:4, 149:16, 149:21, 150:3, 151:1, 152:1, 152:13, 152:21, 153:15, 155:23, 156:6, 157:18, 158:3, 159:14, 159:18, 160:2, 161:22, 164:16, 169:21, 170:5, 171:8, 173:9, 174:15, 175:2, 175:13, 176:2, 178:9, 179:10, 180:2, 180:20, 181:6, 182:18, 183:13, 186:4, 188:2, 188:14, 192:21, 193:1, 193:4, 193:20, 196:23, 197:10, 200:17, 202:22, 206:7, 206:9, 208:18, 209:13, 211:6, 211:8
trials [1] - 137:7
tried [4] - 110:5, 113:21, 192:17
trouble [2] - 19:24, 94:4
true [7] - 31:7, 95:5, 102:14, 107:23, 119:13, 174:11, 212:10
truly [1] - 187:14
try [19] - 24:5, 67:15, 73:15, 75:24, 76:14, 87:9, 87:14, 99:12, 133:13, 134:4, 136:16, 137:3, 143:3, 144:21, 170:20, 194:13, 200:1, 204:23, 209:22
trying [19] - 4:8, 32:5, 41:3, 42:16, 42:23, 47:4, 48:2, 50:16, 63:1, 67:3, 99:11, 102:12, 103:1, 105:15, 162:21, 168:23, 184:18, 186:2, 191:5
Tuesday [1] - 1:13
TUNNELL [1] - 2:11
Tunnell [1] - 3:14
turn [1] - 144:21
turning [2] - 48:8, 74:15
turns [4] - 18:18, 61:5, 67:11, 205:17
twisted [1] - 75:6
two [65] - 10:13, 11:5, 14:12, 18:4, 18:5, 18:7, 19:14, 20:4, 20:13, 21:24, 22:8, 22:20, 23:9, 25:9, 25:16, 29:18, 31:20, 31:21, 35:23, 36:5, 48:9, 52:1, 53:13, 58:20, 58:24, 59:1, 62:19, 64:24, 65:18, 65:19, 68:6, 69:10, 71:16, 72:17, 72:19, 80:5, 84:2, 88:19, 93:3, 94:15, 97:21, 109:3, 112:12, 116:13, 118:17, 131:11, 139:14, 139:22, 143:17, 144:8, 144:15, 150:23, 158:2, 159:8, 159:13, 159:19, 164:20, 168:4, 171:7, 172:23, 175:2, 176:1, 176:4, 197:21, 201:17
two-player [1] - 112:12

type [1] - 196:23
types [2] - 84:1, 148:18

U

U.S [23] - 98:10, 101:9, 101:10, 102:4, 102:10, 102:21, 104:2, 104:9, 104:21, 105:9, 105:10, 105:12, 111:23, 112:12, 112:13, 113:1, 114:23, 115:2, 115:14, 115:16, 115:19, 126:15
ultimate [1] - 96:8
ultimately [2] - 85:14, 187:12
unanimously [1] - 158:13
uncertain [1] - 156:17
unclear [2] - 145:17, 150:17
uncontested [1] - 192:10
under [11] - 82:20, 82:21, 83:6, 83:7, 83:10, 83:12, 151:11, 169:18, 175:8, 182:12, 192:19
underlying [1] - 106:11
understood [5] - 21:1, 28:3, 113:24, 182:10, 191:4
undisputed [1] - 174:1
unfairly [2] - 156:1, 187:23
unicorn [1] - 71:16
unique [11] - 71:15, 73:9, 73:22, 131:23, 132:8, 160:16, 168:3, 169:1, 178:1, 178:4, 178:22
UNITED [1] - 1:2
United [14] - 1:19, 98:1, 100:2, 100:23, 101:24, 102:6, 103:10, 104:5, 109:24, 111:10, 111:13, 165:14, 187:8, 190:13
universally [1] - 129:19
unless [3] - 141:11, 167:8, 192:8
unlikely [1] - 78:8
unnecessary [2] - 42:11, 152:20
unreasonable [1] - 175:15
unreliable [1] - 39:21
unusual [1] - 131:24
up [53] - 7:7, 16:24, 19:20, 20:15, 22:4, 22:24, 24:9, 29:18, 35:18, 36:16, 43:8, 50:10, 51:4, 55:16, 57:5, 58:19, 67:24, 78:17, 82:12, 93:12, 96:12, 116:5, 116:21, 117:6, 117:11, 118:8, 121:9, 123:16, 124:4, 128:1, 128:21, 134:11, 149:16, 152:17, 157:20, 162:10, 162:17, 164:4, 164:16, 165:8, 165:12, 165:16, 166:16, 169:11, 180:24, 182:17, 185:21, 195:13, 200:20, 203:9, 204:14, 205:1, 208:11
update [1] - 172:15
updated [1] - 202:6
upheld [1] - 76:23
urging [1] - 178:19
user [15] - 10:15, 10:17, 23:24, 24:16, 24:22, 25:18, 25:20, 25:24, 26:23, 28:18, 29:8, 30:13, 30:18, 39:6
uses [1] - 126:12

V

valid [1] - 86:24
validity [1] - 96:10
varies [1] - 117:9
various [5] - 4:2, 105:16, 176:17, 196:4, 204:12
veer [1] - 149:22
verdict [12] - 75:24, 76:14, 76:20, 76:21, 90:21, 92:15, 93:14, 93:16, 95:11, 95:20, 136:8, 151:9
version [1] - 206:4
versus [6] - 41:2, 72:14, 85:4, 89:23, 95:15, 172:20
vicarious [5] - 89:3, 145:19, 146:4, 146:6
video [9] - 17:15, 46:10, 121:2, 121:8, 123:6, 165:6, 165:9, 196:12, 196:20
videographer [1] - 165:11
videos [1] - 17:2
view [22] - 12:20, 19:17, 32:7, 38:17, 41:15, 51:6, 66:16, 76:18, 104:10, 132:12, 132:16, 152:19, 176:13, 176:18, 177:22, 178:15, 179:1, 179:5, 179:12, 185:15, 187:13, 201:11
viewed [1] - 17:1
virtually [1] - 97:1
visibility [1] - 18:23
visible [10] - 53:5, 56:7, 57:18, 120:5, 121:11, 124:23, 125:14, 126:16, 126:21, 129:13
visual [10] - 25:21, 30:19, 31:20, 33:15, 53:7, 124:24, 126:1, 126:12, 126:22, 128:4
visualization [28] - 13:17, 30:20, 32:24, 33:18, 34:13, 34:15, 34:19, 40:13, 51:16, 58:8, 66:9, 66:11, 66:12, 66:15, 66:16, 66:18, 69:14, 69:15, 72:9, 81:4, 81:8, 81:13, 81:14, 149:2, 153:22, 153:24, 155:3, 179:16
visually [3] - 31:12, 33:1, 57:14
voir [3] - 204:2, 204:12, 206:13

W

wait [3] - 35:8, 118:20, 129:16
waived [1] - 194:12
wall [1] - 156:22
wants [2] - 40:3, 141:18
wasted [1] - 149:17
watertight [2] - 125:13, 125:14
ways [6] - 117:9, 117:18, 117:19, 118:4, 122:10, 167:13
weak [1] - 75:15
weaker [1] - 152:10
week [1] - 185:5
weekends [1] - 211:6
weeks [13] - 68:6, 71:16, 132:1, 143:18,

143:23, 165:19, 165:23, 166:5, 166:16, 166:21, 171:7, 175:2, 176:1
**weigh** [2] - 90:1, 175:16
**weighing** [1] - 176:5
**weighted** [1] - 134:14
**welcome** [2] - 3:19, 71:12
**whatsoever** [3] - 72:23, 76:12, 79:6
**wheel** [1] - 35:5
**wheels** [1] - 35:6
**whereas** [2] - 92:11, 96:19
**whereby** [1] - 208:17
**WHEREOF** [1] - 212:14
**whole** [22] - 4:7, 14:13, 23:4, 37:24, 58:1, 63:2, 64:7, 65:9, 67:6, 67:7, 68:1, 77:10, 83:10, 86:4, 113:16, 127:7, 127:8, 153:13, 172:19, 181:17, 202:14, 207:13
**wholesale** [1] - 62:7
**wiggle** [1] - 67:15
**willing** [4] - 67:9, 141:12, 154:20, 200:19
**Wilmington** [4] - 1:16, 208:3, 210:15, 212:16
**win** [3] - 67:10, 92:10, 92:12
**wipe** [1] - 63:1
**Witcoff** [1] - 3:9
**WITCOFF** [1] - 2:5
**withdrawn** [1] - 188:11
**witness** [46] - 87:17, 157:3, 157:13, 157:18, 157:23, 158:3, 158:17, 159:9, 160:3, 160:10, 164:9, 164:17, 165:13, 166:6, 166:9, 166:14, 166:17, 167:14, 167:15, 169:8, 170:17, 170:23, 174:1, 174:14, 175:18, 175:22, 191:12, 193:15, 193:23, 194:8, 194:14, 195:3, 195:5, 195:6, 196:9, 196:13, 197:2, 198:4, 198:5, 198:6, 198:7, 198:13, 199:2, 200:6, 208:5, 210:4
**WITNESS** [2] - 86:15, 212:14
**witnesses** [34] - 140:11, 158:2, 159:5, 159:8, 159:13, 159:17, 159:19, 159:20, 160:14, 161:21, 162:3, 163:19, 163:21, 168:5, 169:5, 175:7, 175:11, 196:4, 196:5, 198:18, 199:20, 201:3, 203:1, 207:6, 208:3, 208:10, 209:10, 209:14, 209:19, 209:20, 209:23, 210:21
**woman** [1] - 139:13
**won** [3] - 69:19, 74:7, 75:10
**word** [2] - 24:10, 66:11
**wording** [2] - 14:15, 98:3
**words** [5] - 11:16, 37:10, 44:1, 45:1, 178:2
**works** [3] - 17:2, 116:13, 165:10
**worried** [1] - 149:13
**worse** [1] - 200:6
**wrapped** [1] - 157:20
**writing** [1] - 192:4
**written** [18] - 13:14, 16:10, 26:20, 35:2, 35:7, 35:14, 79:19, 79:22, 83:7, 85:1...

96:3, 132:2, 148:5, 153:1, 153:7, 154:18, 155:5, 176:3

## Y

**year** [2] - 97:9, 134:19
**years** [3] - 137:2, 141:9, 143:3
**yesterday** [11] - 5:15, 15:2, 32:12, 62:16, 70:13, 97:15, 141:20, 143:11, 158:10, 189:22, 201:14
**YOUNG** [1] - 2:3
**Young** [1] - 3:8
**yourself** [1] - 75:11

## Z

**zero** [1] - 115:2

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on August 13, 2018, I caused to be

electronically filed a true and correct copy of the foregoing document with the Clerk of the Court

using CM/ECF (which will send notification that such filing is available for viewing and

downloading to all registered counsel), and in addition caused true and correct copies of the

foregoing document to be served upon the following counsel of record by e-mail:

---

*For Defendant HyperBranch Medical Technology, Inc.:*

| | |
|---|---|
| Thomas C. Grimm | tgrimm@mnat.com |
| Jeremy A. Tigan | jtigan@mnat.com |
| Stephen J. Kraftschik | skraftschik@mnat.com |

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

COOLEY LLP                    zHyperBranchIntegra@cooley.com

Jonathan Graves
Stephen C. Crenshaw
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656

Adam Pivovar
Nicholas G. Lockhart
James P. Hughes
Naina Soni
Lisa Schwier
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004

---

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903) [kpascale@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
*Attorneys for Plaintiffs*

01:17776460.1